UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                    Plaintiff,

      -against-

ALAN GELBSTEIN, *in his official and individual
capacity*, BORSHIRA VAHDATLAMAS, *in her
official and individual capacity, also known as
Bushra Vahdat*, IDA TRASCHEN, *in her official
and individual capacity*, ELIZABETH
PRICKETT-MORGRAN, *in her official and
individual capacity*, JEAN FLANAGAN, *in her
official and individual capacity*, VINCENT
PALMIERI, *in his official and individual
capacity*, DANIELLE CALVO, *in her official
and individual capacity*, SADIQ TAHIR, *in his
individual capacity*, PEC GROUP OF NY, INC.,
DAVID SMART, and JOHN AND JANE DOE,

                    Defendants.
------------------------------------------------------------X

**REPORT & RECOMMENDATION**
**18 CV 2710 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

      Attorney Mario H. Capogrosso, proceeding *pro se*, brings this civil rights action pursuant

to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and New York state law against nine individually

named defendants[1] as well as PEC Group of NY, Inc. and "John and Jane Doe." Plaintiff alleges

that the State Defendants retaliated against him for exercising his First Amendment rights and

deprived him of his constitutionally protected interest in representing clients at the Traffic

Violations Bureau ("TVB") without due process.

      The State Defendants move to dismiss plaintiff's complaint pursuant to Federal Rules of

Civil Procedure ("FRCP") 12(b)(1), 12(b)(5), and 12(b)(6). The Honorable Margo K. Brodie

---

[1] The named defendants are: Alan Gelbstein, Boshra Vahdatlamas, Ida Traschen, Elizabeth Morgan (formerly
Elizabeth Prickett-Morgan), Jean Flanagan, Vincent Palmieri, and Danielle Calvo (hereinafter the "State
Defendants"); plaintiff also names Sadiq Tahir and David Smart who are not state defendants.

referred the motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the State Defendants' motion to dismiss should be granted in part and denied in part.

## BACKGROUND

Plaintiff does not file this civil rights action on a blank slate. Plaintiff and defendants have a contentious history well-documented in plaintiff's prior state court lawsuit. ECF Nos. 45–46. The current motion includes several documents from the prior case. Plaintiff's instant complaint brings three causes of action against the State Defendants. He alleges that the State Defendants violated his constitutional rights by retaliating against him for his protected First Amendment activity. ECF No. 1., Complaint, ("Compl.") ¶¶ 70–75. He further alleges that the State Defendants violated his constitutional rights by depriving him of his property and liberty interest in practicing law at the TVB without due process. Id. ¶¶ 76–85. Finally, plaintiff seeks prospective injunctive relief to enjoin the State Defendants from barring him from representing clients at any TVB location. Id. ¶¶ 86–88.

Plaintiff is an attorney licensed in New York and Connecticut. Id. ¶ 2. The TVB is a division within the Department of Motor Vehicles, an agency of the State of New York; Administrative Law Judges ("ALJs") preside over TVB proceedings. Id. ¶ 4. Between April 2005 and May 11, 2015, plaintiff practiced law at various locations of the TVB, including the Brooklyn South Office ("Brooklyn TVB"). Id. ¶ 3. Plaintiff represented approximately 850 clients in TVB proceedings throughout this time period. Id. ¶ 6.

In 2012, plaintiff was suspended from "practicing his profession" at the TVB Courts due to complaints of misconduct. Id. ¶ 5. According to plaintiff, the complaints of misconduct "were never determined to be true as no hearings were ever held in response thereto and Plaintiff was

2

never given the opportunity to confront his accusers." Id. During his suspension, plaintiff learned that one of his accusers was David Smart, a security guard employed at the TVB. Id. Plaintiff filed an Article 78 proceeding challenging his suspension. The case was settled and plaintiff's suspension was lifted. See generally ECF No. 46-7. Plaintiff returned to representing clients at the TVB after completing an anger management course. Id.; Compl. ¶ 5.

Plaintiff alleges that although security guard Smart was employed by defendant PEC Group of NY, Inc., he was under the "direct supervision and control" of the TVB. Compl. ¶ 7. According to plaintiff, Smart subjected him to "constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance" which disrupted plaintiff's representation of his clients. Id. ¶ 8. Plaintiff reported Smart's conduct to defendant ALJ Alan Gelbstein; however, Gelbstein "refused to take any action on behalf of [plaintiff] to ensure that the disruptive and unlawful behavior of [Smart] would cease[.]" Id. ¶ 9.

On March 20, 2015, plaintiff wrote to New York State Assistant Attorney General defendant Elizabeth Morgan. Id.; ECF No. 46-7 ("Morgan Letter"). He complained about Smart and stated his frustrations with Gelbstein's alleged inaction regarding Smart. Id. Morgan failed to respond to plaintiff's letter or take any action. Id.

Plaintiff alleges that Gelbstein and defendant Danielle Calvo, clerk supervisor at the Brooklyn TVB, approached plaintiff in the Brooklyn TVB attorney's room on May 8, 2015 and said "[c]an't you go practice somewhere else . . . I saw what you wrote about me that I am complicit and incapable." Id. ¶ 10. On May 11, 2015, plaintiff claims that Smart approached him in an "aggressive and threating manner in an attempt to provoke [him] into a physical confrontation." Id. ¶ 11. According to plaintiff, Calvo and several New York City police officers approached plaintiff a few minutes later and told him that "he was no longer allowed at the [TVB] and that

3

[he] was to leave the building immediately." Id. Calvo told plaintiff to call defendant Ida Traschen, Assistant Counsel Legal Bureau for the State of New York Department of Motor Vehicles, for "further instructions." Id.

Plaintiff contacted Traschen later that day and was informed that he was "permanently barred from representing any clients in the future at any TVB locations throughout the State." Id. Plaintiff alleges that he called Traschen to seek clarification on May 12, 2015, May 26, 2015, August 4, 2015, August 7, 2015, August 10, 2015, August 12, 2015, and August 25, 2015. Id. ¶ 12. Plaintiff also wrote to several agencies but never received any clarification. See id. ¶¶ 13–14.

Plaintiff claims defendants that Bushra Vahdatlamas, Supervisory ALJ, as well as Jean Flanagan and Vincent Palmieri, TVB supervisors, acted with complete or deliberate indifference and/or ratified and condoned the alleged violation of plaintiff's constitutional rights. Id. ¶¶ 46, 55.

Plaintiff alleges that he has been denied due process as he has been barred from representing clients at the TVB since May 11, 2015. Id. ¶ 15. Moreover, plaintiff alleges that he has not been provided with a rationale as to why he is barred nor a list of his accusers and their complaints. Id.

## PROCEDURAL HISTORY

Plaintiff filed the instant complaint against defendants on May 8, 2018. ECF No. 1. Proof of service was filed for Calvo, Gelbstein, Morgan, and Smart on June 8, 2018 and for PEC Group of NY, Traschen, and Vahdatlamas on July 27, 2018. ECF Nos. 10, 24. Defendants Smart and Tahir answered plaintiff's complaint and raised a counterclaim against plaintiff. ECF Nos. 6–7. Smart and Tahir's counterclaims were dismissed on October 17, 2018. ECF No. 50. The instant fully-briefed motion was filed on October 11, 2018. The State Defendants move to dismiss

4

plaintiff's complaint under FRCP 12(b)(1) for lack of standing, under FRCP 12(b)(5) for failure to serve, and under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 44, ("Memo"). Plaintiff opposes the motion, ECF No. 47 ("Opp.") and the State Defendants have filed a reply, ECF No. 49 ("Reply").

## STANDARD OF REVIEW

For the purposes of this motion, the Court accepts the well-pleaded allegations in plaintiff's complaint as true and draws all reasonable inferences in favor of the non-moving party. Hayden v. Paterson, 594 F.3d 150, 157, n.4 (2d Cir. 2010) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

### I.     Federal Rule of Civil Procedure 12(b)(1)

Motions to dismiss for lack of standing are governed by FRCP 12(b)(1). See Fed. R. Civ. P. 12(b)(1) (permitting dismissal for "lack of subject-matter jurisdiction"); Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (noting that a plaintiff must have standing under Article III of the Constitution to invoke a federal court's subject-matter jurisdiction). Plaintiffs bear the burden of proof of establishing that they have standing. Carter, 822 F.3d at 56 (plaintiffs have the burden of "alleg[ing] facts that affirmatively and plausibly suggest that [they] have standing to sue") (internal citations omitted). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice[.]" Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The court may also rely on evidence outside the complaint in deciding a Rule 12(b)(1) motion. Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted).

## II.     Federal Rule of Civil Procedure 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs., L.P. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006) (quoting Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)). Parties may challenge a lack of valid service by moving to dismiss pursuant to FRCP 12(b)(5).

Service of process is governed by FRCP 4. Rule 4(m) provides, in pertinent part, that:

> [i]f a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). A party seeking an extension for good cause "bears a heavy burden of proof." Beauvoir v. U.S. Secret Serv., 234 F.R.D. 55, 56 (E.D.N.Y. 2006) (internal citation omitted). Courts in the Second Circuit determining good cause look to (1) the diligence and reasonableness of the plaintiff's efforts to serve, and (2) prejudice to the defendants from the delay. See Husowitz v. Am. Postal Workers Union, 190 F.R.D. 53, 57 (E.D.N.Y. 1999).

## III.     Federal Rule of Civil Procedure 12(b)(6)

### a.   Legal Standard

The purpose of a motion to dismiss for failure to state a claim under FRCP 12(b)(6) is to test the legal sufficiency of plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." Concord Assocs., L.P. v. Entm't Prop. Tr., 817 F.3d 46, 52 (2d Cir. 2016) (quoting Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d Cir. 2002)).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

### b. Matters Outside the Pleadings

As a threshold matter, the Court cannot consider documents outside the pleadings on a motion to dismiss. Therefore, many documents submitted by the State Defendants in support of their instant motion to dismiss should not be considered. Likewise, many documents attached to plaintiff's opposition should not be considered.

The Court may consider some materials extraneous to the complaint on a Rule 12(b)(6) motion, but "plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough[.]" Chambers, 282 F.3d at 153. "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Commc'n, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).

Here, the State Defendants' motion includes declarations with attached exhibits from Assistant Attorney Generals Mark Siegmund and Barbara Montena. Siegmund's Declaration attaches seven exhibits referencing plaintiff's prior litigation. ECF No. 46, Siegmund Declaration ("Siegmund Decl."). The Court may consider the exhibits from the prior state court proceeding, but not for the truth of the matters asserted. Ferrari v. Cty. of Suffolk, 790 F. Supp. 2d 34, 38, n.4

7

(E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."). Moreover, as plaintiff relies upon the Morgan Letter for his First Amendment retaliation claim, Compl. ¶¶ 42, 59, the Court may consider the letter. Chambers, 282 F.3d at 153 (a Court may consider a document that is integral to the complaint and that plaintiff relied upon in framing the complaint.).

The Siegmund and Montena Declarations as well as the exhibits attached to Montena's Declaration cannot be considered on the instant motion. These exhibits include complaints regarding plaintiff, copies of work place incident reports, an internal memorandum regarding plaintiff's conduct at the TVB, and an NYPD Incident Information Slip. See ECF No. 45, ("Montena Decl."). The State Defendants contend that all of the exhibits are "integral to Plaintiff's allegations that he was barred from the TVB[.]" Memo at 10, n.1. However, for a document to be considered "integral," the complaint must rely "heavily upon its terms and effect." Chambers, 282 F.3d at 153. "Merely mentioning a document in the complaint will not satisfy this standard; indeed even offering limited quotations from the documents is not enough." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (internal quotations and citations omitted). Although plaintiff mentions "complaints of misconduct" on one occasion, the Court cannot consider the exhibits that the State Defendants proffer on the instant motion. Accordingly, the Court declines to consider Exhibits 12–27 attached to the Montena Declaration. Chambers, 282 F.3d at 153.

With regard to plaintiff's response to the State Defendants' exhibits, courts generally do not consider matters raised for the first time in opposition to a motion to dismiss. Friedl v. City of N.Y., 210 F.3d 79, 83–84 (2d Cir. 2000). Accordingly, the Court does not consider the exhibits attached to plaintiff's declaration in opposition to the motion.

8

## IV.     Plaintiff is an Attorney

Although plaintiff filed this action *pro se*, he is an attorney and therefore he is not entitled to the solicitude afforded to *pro se* litigants. Leeds v. Meltz, 898 F. Supp. 146, 149 (E.D.N.Y. 1995), aff'd, 85 F.3d 51(2d Cir. 1996) (*pro se* attorney not entitled to liberality normally afforded to *pro se* litigants); Bliven v. Hunt, 478 F. Supp. 2d 332, 334 (E.D.N.Y. 2007) (same).

## DISCUSSION

## I.     Standing

The State Defendants contend that plaintiff does not have standing to bring this action. Standing is a "threshold question in every federal case" which "determin[es] the power of the court to entertain the suit." Davis v. Hain Celestial Grp., 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). The "irreducible constitutional minimum of standing" contains three elements that plaintiff must satisfy. Lujan, 504 U.S. at 560. First, plaintiff must show that he suffered an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical." Id. (internal citation and quotation marks omitted). Second, plaintiff must show that there is a "causal connection between the injury and the conduct complained of," or, in other words, that his injury is "fairly . . . traceable to the challenged action of [defendants.]" Id. (internal citation and quotation marks omitted). Third, plaintiff must show that his alleged injury "will be redressed by a favorable decision." Id. at 561 (internal citation and quotation marks omitted).

The State Defendants do not challenge that plaintiff satisfies the injury in fact or redressability elements of standing. See Memo at 20–21. The parties dispute whether plaintiff meets the causation element. The State Defendants argue that plaintiff lacks standing to seek

9

damages and injunctive relief because plaintiff was the primary cause of his own alleged injury. Id.

"Not every infirmity in the causal chain deprives a plaintiff of standing." St. Pierre v. Dyer, 208 F.3d 394, 402 (2d Cir. 2000). Although courts have denied standing in some cases because the injury was solely attributable to the plaintiff,

> [s]tanding is not defeated merely because the plaintiff has in some sense contributed
> to his own injury. . . . Standing is defeated only if it is concluded that the injury is
> so completely due to the plaintiff's own fault as to break the causal chain.

13 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3531.5 (3d ed. 2018). The causal chain can be broken where a plaintiff's self-inflicted injury results from his "unreasonable decision . . . to bring about a harm that he knew to be avoidable." St. Pierre, 208 F.3d at 403. However, "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing[.]" Id. at 402 (internal citation omitted).

Here, the State Defendants' conclusory statement that plaintiff's injury, being permanently barred from representing clients at any TVB location, was not due to "any illegal action by any of the State Defendants" is insufficient to defeat plaintiff's proffer of standing. Memo at 20. Although the State Defendants may argue that plaintiff caused his own injury, the Court cannot say on the instant record that plaintiff's injury is so completely due to plaintiff's own fault that his proffer of standing is defeated. Accordingly, the State Defendants' motion to dismiss for lack of standing under Rule 12(b)(1) should be denied.

## II.      Service of Process on Flanagan and Palmieri

Next, the State Defendants argue that Flanagan and Palmieri were not timely served with process. Memo at 19–20. Plaintiff filed his action on May 8, 2018. See Compl. Plaintiff was

required to serve process on defendants by August 6, 2018. <u>See</u> Fed. R. Civ. P. 4(m); <u>see also</u> ECF No. 4 (order regarding the Rule 4(m) August 6, 2018 deadline). The Court's record does not reflect that defendants Flanagan and Palmieri were properly served within the Rule 4(m) deadline.

Plaintiff asserts that proof of service on Flanagan was filed on May 8, 2018. Opp. at 2. However, review of the Court's record shows that plaintiff is mistaken; no such affidavit of service was filed. In fact, the State Defendants reminded plaintiff to serve Flanagan and Palmieri, but plaintiff failed to do so. ECF No. 20 at 1, n.1 (notifying plaintiff that as of July 13, 2018, Flanagan and Palmieri had not yet been served and that perhaps plaintiff had served a different person named Jean Flanagan).

Plaintiff does not dispute that Palmieri was not served. Although plaintiff contends that Flanagan was served, the Court should grant the State Defendants' motion to dismiss this action against Flanagan and Palmieri for failure to properly and timely serve them. <u>See</u> <u>Thomas v. N.Y.C.</u> <u>Dept. of Educ.</u>, 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal citation omitted); <u>Hertzner v. U.S.P.S.</u>, No. 05 CV 2371, 2007 WL 869585, at *6 (E.D.N.Y. Mar. 20, 2007) (holding that plaintiff's failure to timely serve defendants deprived the Court of personal jurisdiction where "it was the attorney's inadvertence, neglect, mistake or misplaced reliance that resulted in service not being effected in a timely manner."). Accordingly, the State Defendants' motion to dismiss plaintiff's complaint under FRCP 12(b)(5) should be granted as to Palmieri and Flanagan.[2]

---

[2] In the alternative, the Court should *sua sponte* dismiss plaintiff's claims against Palmieri and Flanagan pursuant to FRCP 4(m).

### III. Claims Under 42 U.S.C. § 1983

Plaintiff alleges that the State Defendants violated his constitutional rights by retaliating against him for his protected speech when they permanently barred him from representing clients at any TVB location throughout the state. Compl. ¶ 11. The State Defendants raise several grounds for dismissal including that plaintiff fails to plausibly allege defendants retaliated against him for any protected First Amendment activity, that plaintiff's conduct is not protected by the First Amendment, that there is no constitutional right to represent clients at the TVB, that plaintiff has no property or liberty interest subject to due process protection, and that defendants are entitled to absolute and/or qualified immunity. Memo at 16–33.

#### a. Personal Involvement

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). To assert a Section 1983 claim "a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015) (internal citation and quotation marks omitted).

A plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation in order to state a claim for relief under Section 1983. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; Fowlkes v. Rodriguez,

12

584 F. Supp. 2d 561, 572 (E.D.N.Y. 2008) (discussing the necessity of personal involvement for damage claims against state officials) (citation omitted).

A supervisory official may be deemed to have been personally involved under Section 1983 in five circumstances: (1) if that official directly participated in the infraction; (2) if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong; (3) if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or (4) if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) if he or she was deliberately indifferent by failing to act on information that unconstitutional acts were continuing. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted); Raffaele v. City of N.Y., 144 F. Supp. 3d 365, 377 (E.D.N.Y. 2015) (citing the Colon factors). Supervisors may not be held liable under Section 1983 on the basis of respondeat superior. Iqbal, 556 U.S. at 676.

Here, plaintiff fails to plausibly allege that defendants Vahdatlamas and Morgan were personally involved in the decision to bar him from representing clients at the TVB.[3] Plaintiff's complaint alleges only that Gelbstein, Calvo, and Traschen were personally involved in the actions resulting in the injury he claims, being barred from representing clients at the TVB. See Compl. ¶¶ 38, 58. Plaintiff alleges that Gelbstein "actively participated in the decision to permanently bar plaintiff"; "ignored plaintiff's complaint about the conduct of Defendant Smart, [and] in fact encouraged Defendant Smart to continue to confront the Plaintiff in an attempt to 'bait the Plaintiff' into a physical response"; conspired with Calvo to summon the NYPD to remove plaintiff; and was motivated to take retaliatory action against plaintiff for the Morgan Letter. Id.

---

[3] As the Court recommends that defendants Flanagan and Palmieri should be dismissed on Rule 12(b)(5) grounds, Discussion, Part I, supra, the Court need not further consider plaintiff's claims against Flanagan and Palmieri. However, had Flanagan and Palmieri been properly and timely served, the claims against them would have been subject to dismissal for lack of personal involvement.

¶¶ 38, 40–42. Plaintiff alleges that Calvo "personally confronted" him with the decision to bar him and was motivated by retaliatory animus for plaintiff's comments in the Morgan Letter. Id. ¶¶ 58–59. Plaintiff alleges that Traschen "actively participated in the violation" by directly informing plaintiff that he was barred. Id. ¶ 49.

However, plaintiff alleges only that Vahdatlamas "in consultation" with the other State Defendants acted with "deliberate indifference and/or condoned and ratified said unconstitutional acts" Id. ¶ 46. The Court finds that the complaint fails to plausibly allege that Vahdatlamas was personally involved in the violation of plaintiff's rights.[4] Although plaintiff argues that "the Complaint makes clear that, without the actions of all the Defendants, the decision to bar him would not have been made," Opp. at 11, his allegations regarding Vahdatlamas are conclusory. See Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (conclusory allegations that a supervisor failed to monitor the actions of his subordinates is insufficient to establish personal involvement to support a finding of liability under Section 1983).

Similarly, the Court finds that plaintiff's allegations against Morgan fail to establish Morgan's personal involvement in the violation of plaintiff's rights. Plaintiff alleges that Morgan "failed to take any action to respond to [plaintiff's letter]," that she "conspired" with the other State Defendants to violate plaintiff's constitutional rights, and that she "treated the violation of Plaintiff's said constitutional rights with deliberate indifference and/or condoned and ratified the violation[s.]" Compl. ¶¶ 9, 52. These allegations are conclusory and fail to plausibly allege Morgan's personal involvement in the decision to bar plaintiff from representing clients at the TVB.[5] See Ridgeview Partners, LLC v. Entwhistle, 227 Fed. App'x 80, 81–82 (2d Cir. 2007)

---

[4] Similarly, plaintiff alleges only that Flanagan and Palmieri acted with "deliberate indifference and/or condoned and ratified the unconstitutional conduct." Compl. ¶ 55.

[5] Moreover, although the State Defendants assert that Morgan is entitled to absolute immunity, plaintiff only alleges Morgan's title in the Complaint, that she was an Assistant Attorney General for the State New York. On the instant

(summary order) (an official's refusal to consider or act upon a grievance is not conduct that violates the First Amendment.). Therefore, the State Defendants' motion to dismiss Vahdatlamas and Morgan should be granted as plaintiff's complaint against them fails to state a claim upon which relief can be granted.

## IV.    First Amendment Retaliation

"Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" Lane v. Franks, 573 U.S. 228, 235–36 (2014) (quoting Roth v. United States, 354 U.S. 476, 484 (1957)). The elements of a First Amendment claim under Section 1983 depend on the factual context of the case before the district court. Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008). To determine the elements required to state a First Amendment claim under Section 1983, the Court must first consider whether the claim is being made by a public employee or a private citizen. Compare Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (plaintiff was a private citizen) with Johnson v. Ganim, 342 F.2d 105, 112 (2d Cir. 2003) (plaintiff was a public employee). Although the elements of a public employee's claims are different than a private citizen's claims, many First Amendment cases muddle the standards. Moreover, the majority of First Amendment retaliation cases occur in the public employment context and a large number of private citizens' First Amendment retaliation cases concern land use. Plaintiff is a private citizen, but this is neither a public employment nor a land use First Amendment retaliation case. Compl. ¶¶ 18, 71.

---

record, the Court cannot determine whether Morgan would be entitled to absolute immunity. As the State Defendants' absolute immunity argument is only raised with regard to Morgan, and plaintiff's claims against Morgan should be dismissed for lack of personal involvement, the State Defendants' motion to dismiss based on absolute immunity should be denied without prejudice.

Where a private citizen asserts a First Amendment claim against a public official, the private citizen must allege: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right." Curley, 268 F.3d at 73. Retaliation claims that are "unsupported, speculative, and conclusory" may be dismissed on the pleadings. Corely v. City of N.Y., No. 14 Civ. 3202, 2017 WL 4357662, at *19 (S.D.N.Y. Sept. 28, 2017) (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)).

The State Defendants argue that plaintiff fails to plausibly allege retaliation for any speech protected by the First Amendment. They argue that plaintiff's claim of retaliation is "unsupported, speculative, and conclusory" and add that plaintiff admitted that he knew that complaints had been made against him and that he would sometimes "throw a punch" in the TVB. Memo at 22. However, as plaintiff correctly argues, his protected speech refers to his March 20, 2015 letter to Morgan stating his frustration with Gelbstein's administration of the Brooklyn TVB and alleging Smart's harassment. Opp. at 6; Compl. ¶ 72. For the purposes of this motion, plaintiff's letter to Morgan is protected by the First Amendment. See McDonald v. Smith, 472 U.S. 479, 482 (1985) (The right to petition the government to redress grievances is "cut from the same cloth as the other guarantees of [the First Amendment] and is an assurance of a particular freedom of expression."); Velez v. Levy, 401 F.3d 75, 97 (2d Cir. 2005) ("the Supreme Court has said 'that speech critical of the exercise of the State's power lies at the very center of the First Amendment'") (quoting Gentile v. State Bar of Nev., 501 U.S. 1030, 1034 (1991)).

Turning to the second element of a retaliation claim, "[t]o establish a causal connection sufficient to survive a motion to dismiss, the 'allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action.'" Davis v. Goord, 320 F.3d 346, 354

16

(2d Cir. 2003) (discussing First Amendment retaliation in a non-public employee context). A causal connection is often shown circumstantially, through allegations that the retaliation occurred in "close temporal proximity" to the protected activity. See id. "[D]irect evidence of retaliation may consist of 'conduct or statements by persons involved in the decisionmaking [sic] process that may be viewed as directly reflecting the alleged retaliatory attitude.'" McAvey v. Orange–Ulster BOCES, 805 F. Supp. 2d 30, 40 (S.D.N.Y. 2011) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir. 1997) (brackets omitted)).

Here, plaintiff alleges that Gelbstein and Calvo were aware of the Morgan Letter. Compl. ¶¶ 9–10, 39–41. Plaintiff further alleges that Gelbstein and Calvo used the May 11, 2015 incident with Smart as a pretext for prohibiting plaintiff from representing clients at the TVB in order to retaliate against him for his protected speech. Id. The Complaint alleges that Gelbstein, Calvo, and Traschen barred plaintiff from the TVB a month and a half after he sent the letter to Morgan. Id. Although there is no bright line rule regarding temporal proximity, a month and a half falls within the temporal range sufficient to raise a plausible inference of a retaliatory motive. Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases); cf. Maco v. Baldwin Union Free School Dist., 726 Fed. App'x 37, 39 (2d Cir. 2018) (summary order) (discussing that a lapse of ten months does not support an inference of causation). Moreover, plaintiff alleges that Gelbstein and Calvo knew about his letter to Morgan and stated, "[c]an't you go practice somewhere else . . . I saw what you wrote about me that I am complicit and incapable." Compl. ¶ 10.

The third element of a retaliation claim requires a plaintiff to allege that the retaliatory "official conduct actually deprived them of that right" by either silencing them or having some "actual, non-speculative chilling effect on [their] speech." See Williams, 535 F.3d at 78 (internal

citation omitted). While "private citizens claiming retaliation for their criticism of public officials have [generally] been required to show that they suffered an 'actual chill' in their speech as a result[,] . . . in limited contexts, other forms of harm have been accepted in place of this 'actual chilling requirement.'" Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011) (citing Spear v. Town of W. Hartford, 954 F.3d 63, 68 (2d Cir. 1992) and Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002)); see also Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 431 (S.D.N.Y. 2013) ("Thus, while a plaintiff asserting a First Amendment retaliation claim must allege some sort of harm, it is not necessary for that harm to be a chilling of speech in every case.") (internal citation and quotation marks omitted).

Here, plaintiff alleges that the State Defendants barred him from representing clients at all TVB locations based on retaliation. Compl. ¶¶ 11, 15. Plaintiff sufficiently alleges that the State Defendants' retaliatory conduct adversely affected him. Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled speech is not the *sine qua non* of a First Amendment claim."); Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (discussing that in a private citizen context, "[w]here the retaliation is alleged to have caused an injury separate from any chilling effect . . . an allegation as to a chilling effect is not necessary to state a claim.").

Defendants reliance on Heller is misplaced. In Heller, plaintiff's alleged speech constituted threats and posed a risk of physical harm that was not protected by the First Amendment. Heller v. Bedford Cent. Sch. Dist., 665 Fed. App'x 49, 52–53 (2d Cir. 2016) (summary order). ("A review of the record confirms that defendants were interested in [plaintiff's] communications only insofar as they raised the prospect of a shooting spree at the high school."). The facts of this case are distinguishable. Plaintiff's allegedly threatening conduct is entirely separate from the protected speech he alleges: the Morgan Letter.

18

Taken together and construing all reasonable inferences in plaintiff's favor, as the Court must, defendant Gelbstein, Calvo, and Traschen's motion to dismiss plaintiff's First Amendment retaliation cause of action for failure to state a claim upon which relief can be granted should be denied. The motion should be granted with respect to defendants Vahdatlamas and Morgan.

## V.    Due Process

Plaintiff alleges that the State Defendants violated his right to due process because they deprived him of a "property and/or liberty interest" in representing clients at the TVB and failed to afford him a due process hearing or make his accusers known to him. Compl. ¶¶ 76–85. The State Defendants raise several grounds for dismissal including plaintiff does not have a due process right to practice law at the TVB, that plaintiff had an adequate post-deprivation opportunity to be heard, and that they are entitled to either absolute or qualified immunity. Memo at 16–19.

The Due Process Clause of Fourteenth Amendment provides that the state may not deprive an individual of property or liberty without due process. See U.S. Const. amend. XIV. To prevail on a due process claim, plaintiff must identify a constitutionally protected property or liberty interest and demonstrate that the government has deprived him of that interest without due process of law. Weinstein v. Albright, 261 F.3d 127, 134 (2d Cir. 2001). The due process clause of the Fourteenth Amendment protects one's liberty to pursue an occupation from certain kinds of state infringement. Cityspec, Inc. v. Smith, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009) ("The liberty interests protected by the Fourteenth Amendment include the freedom 'to engage in any of the common occupations of life.'") (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 572 (1972)).

19

### a. Property Interest

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577. To possess a property right in a benefit, there must be a "legitimate claim of entitlement to it," more than an abstract desire for it. Id. The Court discerns no legitimate claim to a property right here. As plaintiff does not have any type of contract to practice law at the TVB, nor does he cite to any statutory or constitutional authority establishing employment at the TVB, his expectation to continue representing clients at the TVB was subjective and insufficient to establish a property right. See Schwartz v. Mayor's Cmte. on the Judiciary of the City of New York, 816 F.2d 54, 57 (2d Cir. 1987) (holding that plaintiff's "subjective expectation" of reappointment to the judicial bench did not to establish a protected property right). Accordingly, plaintiff fails to establish that he has a protected property interest in representing clients at the TVB.

### b. Liberty Interest

As to a potential liberty interest, the Fourteenth Amendment secures the liberty to follow a trade, profession, or other calling. Cityspec, 617 F. Supp. 2d at 169. The Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. See Conn v. Gabbert, 526 U.S. 286, 291 (1999) (discussing that due process is implicated only if plaintiff is deprived of a "liberty interest in practicing law"). The Due Process Clause does not stretch so far as to secure the right to specific jobs. Cityspec, 617 F. Supp. 2d at 169 (The liberty interest conferred by the Fourteenth Amendment "is not broad as to protect the right to a particular job."). "It is well settled that one must have no ability to practice one's

profession at all in order to state a claim for deprivation of a liberty interest." Rodriguez v. Margotta, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999) (citations omitted).

Here, plaintiff's ban from the TVB did not prevent him from practicing law. Plaintiff's claim that the "right and ability to practice at the TVB is the equivalent of depriving him of the right to continue in his chosen profession" is without merit. Opp. at 8. Defendants did not deprive plaintiff of his license to practice; he was at liberty to continue his law practice elsewhere. Accordingly, plaintiff fails to establish that defendants deprived him of a protected liberty interest. See Roth, 408 U.S. at 575 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another.") (citing Cafeteria and Rest. Workers Union v. McElroy, 367 U.S. 886, 895–96 (1961)).

### c. Post-Deprivation Opportunity to be Heard

Moreover, although plaintiff was not given a hearing prior to being barred from representing clients at the TVB, he could have challenged the bar by filing an Article 78 petition. "The opportunity to pursue an Article 78 proceeding in New York State Supreme Court constitutes a wholly adequate post-deprivation hearing for due process purposes." Rubin v. Swarts, No. 10 CV 4119, 2011 WL 1004838, at *4 (E.D.N.Y. Mar. 18, 2011) (discussing that an Article 78 proceeding in state court was the "proper forum" for a due process claim against the DMV). Although an Article 78 proceeding may not allow plaintiff to seek monetary damages, such a proceeding has still been held to "constitute[] a wholly adequate post-deprivation hearing for due process purposes." Locurto v. Safir, 264 F.3d 154, 176 (2d Cir. 2001) (dismissing Section 1983 claim alleging wrongful termination and seeking "monetary and injunctive relief" because plaintiffs could have brought an Article 78 proceeding). "[Plaintiff] cannot resuscitate its due process claim simply because an Article 78 proceeding is now barred by Article 78's four-month

statute of limitations." Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 881 (2d Cir. 1996).

Here, plaintiff could have commenced an Article 78 proceeding to contest his TVB ban. He clearly knew that such a proceeding was available to him as he had pursued an Article 78 proceeding after his suspension in 2011. He simply chose not to do so. Accordingly, even if the Court were to find that plaintiff had a protected property or liberty interest, plaintiff's due process claim would still be dismissed as he had the opportunity to pursue an adequate post-deprivation hearing by way of an Article 78 proceeding. Rubin, 2011 WL 1004838, at *4, n.4 (fact that plaintiff failed to commence an Article 78 proceeding within the four-month statute of limitations, "does not prevent this Court from taking into account the availability of such proceedings when determining whether he has been afforded due process.") (citation omitted).

## VI.    Prospective Injunctive Relief

Plaintiff seeks prospective injunctive relief enjoining the State Defendants, in their official capacities, from excluding plaintiff from representing clients at the TVB Courts. Compl. ¶ 88. The State Defendants argue that because plaintiff's underlying substantive claims should be dismissed, plaintiff's third cause of action should also be dismissed. Memo at 33.

Under the Ex Parte Young doctrine, the Eleventh Amendment does not bar a plaintiff from suing a state official acting in his or her official capacity for prospective injunctive relief. Ex Parte Young, 209 U.S. 123, 155 (1908). "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002) (internal citation and quotation marks omitted). The exception to Eleventh

Amendment immunity, however, does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law. Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of Young . . . to claims for retrospective relief") (citations omitted).

To the extent that plaintiff is claiming that he is entitled to retrospective relief, his claims against the State Defendants should be dismissed. However, to the extent that plaintiff is suing Gelbstein, Calvo, and Traschen in their official capacities, his request for prospective injunctive relief "enjoining State Defendants from barring him [from representing clients in TVB Courts] . . . in the future" satisfies the requirements for the exception to Eleventh Amendment immunity set forth in Ex Parte Young.

The State Defendants' motion to dismiss plaintiff's claims for prospective injunctive relief should be denied. On the instant record, the Court cannot dismiss plaintiff's prospective challenge to the bar prohibiting him from representing clients in all TVB Courts throughout the state. Although the State Defendants rely on plaintiff's record of previous disruptions for the bar, this may not be adjudicated on the instant motion. The instant motion cannot establish that the State Defendants' decision to ban plaintiff from representing clients at all TVB Courts was reasonable and necessary.[6]

---

[6] In Barrett v. Volz, No. 16 cv 209, 2016 WL 4082640, at *1 (D. Vt. Aug. 1, 2016), a protestor sought to enjoin defendants from enforcing an order which prohibited the public from attending a hearing regarding a gas pipeline easement. The Court reasoned that "[a]lthough [defendants'] could relatively easily identify the members of the public who have disrupted . . . [public proceedings in the past], [they] cannot prospectively exclude members of the public on that basis." Id. at *7 (quoting Huminski v. Corsones, 396 F.3d 53, 83–84 (2d Cir. 2005) (ruling that state officials' blanket denial of access to court proceedings to a protestor violated the First Amendment)). The Barrett Court stated that "[e]xclusion . . . requires an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Id. (internal citation and quotation marks omitted). The Barrett Court went on to state that the defendants' order prohibiting public attendance at a hearing violated plaintiff's rights because

Accordingly, the State Defendant's motion to dismiss plaintiff's claim for prospective injunctive relief should be denied with regard to Gelbstein, Calvo, and Traschen.[7]

## VII. Conspiracy Under 42 U.S.C. §§ 1985 and 1986

To the extent that plaintiff alleges a conspiracy under Sections 1985 and 1986, the complaint should be dismissed. To state a claim under Section 1985, a plaintiff must allege with particularity "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). Particularly, "the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (citations omitted).

Similar to Section 1983, Section 1985 does not create any substantive rights but provides a "remedy for conspiracies to violate a person's right to equal protection of the laws." Soto v. Schembri, 960 F. Supp. 751, 760 (S.D.N.Y. 1997). see also Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (stating that, to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds[.]") (citation omitted). Although a plaintiff need not plead detailed factual allegations, the allegations in the complaint must be "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A Section 1985 conspiracy claim that is only supported by conclusory assertions cannot survive a motion to dismiss. Brito v. Arthur, 403 F. App'x 620, 621 (2d Cir. 2010) (summary order); Ganthier v. N. Shore-Long Island

---

it "neither target[ted] the previous disruptive behavior nor propose[d] anything other than a blanket prohibition in response to [defendants'] legitimate concerns." Id.

[7] Although the motion should be denied, it is unclear whether Gelbstein, Calvo, and Traschen are the proper state officials to lift the bar prohibiting plaintiff from representing clients at all TVB locations.

Jewish Health Sys., 298 F. Supp. 3d 342, 349 (E.D.N.Y. 2004) (dismissing plaintiff's Section 1985 claim because she failed to allege the elements of a conspiracy claim with particularity).

Plaintiff repeatedly alleges that defendants "conspired" against him, but he fails to allege facts to establish that the State Defendants' acted with any class-based discriminatory animus. See Dolan, 794 F.3d at 296 (dismissing Section 1985 claim because plaintiff did not satisfy the class-based animus requirement). As neither race nor class-based discriminatory animus is alleged, plaintiff's Section 1985 claim must be dismissed.

Moreover, because a Section 1986 claim must be predicated upon a valid Section 1985 claim, plaintiff likewise fails to state a claim under Section 1986. Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993); Gusler v. City of Long Beach, 823 F. Supp. 2d 98, 137 (E.D.N.Y. 2011). Accordingly, the State Defendants' motion to dismiss plaintiff's claims under Sections 1985 and 1986 should be granted.[8]

## VIII.   Qualified Immunity

The State Defendants argue that they cannot be held individually liable for the federal violations alleged because they are entitled to qualified immunity. Plaintiff asserts that the Court must allow him to develop the facts before the Court can make such a determination. Opp. at 13.

Qualified immunity is an affirmative defense which typically "cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ., 33 F. Supp. 3d 158, 174 (E.D.N.Y. 2014) (citing Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983)). A court may find that immunity applies only when "the facts supporting the defense appear on the face of the complaint" and "it appears

---

[8] Plaintiff suggests discovery "shall reveal the extent of collusion between the various Defendants." Opp. at 5. However, "a plaintiff armed with nothing more than conclusions" may "not unlock the doors of discovery." See Iqbal, 556 U.S. 662, 678–79.

beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (citation omitted). Further, "in such situations, [a] 'plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.'" Id. at 437.

Qualified immunity "shields public officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For a constitutional right to be "clearly established" for purposes of determining whether an official is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*." Mollica v. Volker, 229 F.3d 366, 370–71 (2d Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (emphasis in original). Whether it was objectively reasonable for the official to believe that his or her acts did not violate plaintiff's rights has "its principal focus on the particular facts of the case." Kerman v. City of N.Y., 374 F.3d 93, 104 (2d Cir. 2004) (internal citation and quotation marks omitted). If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).

Here, the State Defendants circularly argue that they did not violate any of plaintiff's clearly established constitutional rights and that it was objectively reasonable for them "to believe that their actions were lawful." Memo at 23–24. The State Defendants fail to articulate the "clearly

26

established right" upon which they base their qualified immunity affirmative defense. Instead, they broadly assert that plaintiff "had *no* constitutional right to practice law at the TVB, to engage in violent or threatening behavior, or to an evidentiary hearing before being barred at the TVB." Memo at 44. Whereas the Court might agree with these assertions by the State Defendants, this does not resolve the question of whether plaintiff has alleged the violation of a clearly established right in this action. The State Defendants must do more than raise qualified immunity as a defense; they must articulate why plaintiff's claim fails to establish the violation of any clearly established law.

Moreover, although the State Defendants proffer voluminous complaints against plaintiff and cite his threatening conduct, these complaints cannot be considered on this motion to dismiss. As such, the Court cannot consider the State Defendants' professed safety concerns regarding plaintiff's conduct on this record. Accordingly, the State Defendants' qualified immunity defense is premature and their motion should be denied. See Pearson v. Callahan, 555 U.S. 223, 239 (2009) ("when qualified immunity is asserted at the pleading stage, the answer to whether there was a violation may depend on a kaleidoscope of facts not yet fully developed.") (internal citation omitted).

Although the State Defendants' list of plaintiff's claims that are not "clearly established law" misses the mark, the Second Circuit has described the "'chronic difficulty' of articulating the [clearly established] right with the appropriate specificity." African Trade & Info. Ctr. Inc. v. Abromaitis, 294 F.3d 355, 360 (2d Cir. 2003) (citing LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998)). "Few issues related to qualified immunity have caused more ink to be spilled than whether a particular right has been clearly established, mainly because courts must calibrate, on a case-by-case basis, how generally or specifically to define the right at issue." Golodner v. Berliner,

27

770 F.3d 196, 206 (2d Cir. 2014). For if the right is defined too narrowly, qualified immunity would be available in any situation. Id. On the other hand, if the right is defined too broadly, qualified immunity would rarely be available. Id.

Plaintiff's retaliation claim wades in the muddy First Amendment delta between public employees and private citizens. The parties do not point us to, nor has the Court found, case law on point with the facts presented herein. As few, if any, First Amendment retaliation cases involve private citizens in similar contexts to plaintiff here, it seems unlikely that the law was clearly established law in 2015 when plaintiff was barred from representing clients at TVB locations state-wide.

The Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." Kisela v. Hughes, 138 S.Ct. 1148, 1153 (2018) (*per curiam*) (internal citation and quotation marks omitted). In the instant case, the clearly established right could not be the very general right to be free from retaliation based on protected speech. See City of Escondido, Cal. v. Emmons, ___ S.Ct. ____ (2019) (*per curiam*) (in the Fourth Amendment context, "the Court of Appeals defined the clearly established right at a level of generality by saying only that the 'right to be free of excessive force' was clearly established . . . the Court of Appeals' formulation of the clearly established right was far too general."). However, the Circuit's decision in Huminski v. Corsones may be instructive.[9] 395 F.3d 53 (2d Cir. 2005) (although courthouses and the adjacent parking lots are non-public forums, notices of trespass barring a non-violent protestor from entering the grounds constituted an unreasonable restriction on plaintiff's First Amendment activity).

---

[9] This case may inform the parties' judgment regarding their qualified immunity arguments going forward.

As it is premature to rule on the State Defendants' entitlement to qualified immunity at this juncture, their motion to dismiss on grounds of qualified immunity should be denied.

### IX.    Leave to Replead

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may dismiss a plaintiff's claim without leave to amend for repeated failure to cure deficiencies by amendments previously allowed or for futility. Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty, 282 F.3d at 88 (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir.1991)).

Here, as plaintiff was not deprived of any property or liberty interest, plaintiff cannot state a due process claim. Moreover, as plaintiff's conspiracy claim is not based on any race or class-based discrimination, he cannot state a claim under Sections 1985 and 1986. Furthermore, plaintiff failed to timely serve Flanagan and Palmieri; plaintiff's claims against these defendants should be dismissed. As any amendment of these claims would be futile, leave to amend these claims should be denied.

However, should plaintiff request leave to amend his other claims against the remaining defendants in light of the Court's ruling, he should be granted leave to do so. See Loreley Financing v. Wells Fargo Secs., 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); Cresci v. Mohawk Valley Cmty. Coll., 693 Fed. App'x 21, 24–25 (2d Cir. 2017) (summary order) (reversing lower court and granting plaintiff, an attorney proceeding *pro se*, the opportunity to replead his First Amendment retaliation claim).

29

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the State Defendants' motion to dismiss should be granted in part and denied in part. The State Defendants' motion to dismiss should be granted as to plaintiff's due process and Sections 1985 and 1986 claims, as well as all claims against Vahdatlamas, Morgan, Flanagan, and Palmieri. The State Defendants' motion to dismiss plaintiff's First Amendment retaliation claim against Gelbstein, Calvo, and Traschen should be denied. Likewise, plaintiff's claims for prospective injunctive relief against Gelbstein, Calvo, and Traschen should be denied. The State Defendants' motion to dismiss based on qualified immunity should be denied without prejudice. Should this Report be adopted, plaintiff should be afforded fourteen days leave to file an amended complaint as set forth herein.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/ Judge Lois Bloom
LOIS BLOOM
United States Magistrate Judge

Dated: January 30, 2019
Brooklyn, New York

30