UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

MARIO H. CAPOGROSSO,

                              Plaintiff,

              v.

ALAN GELBSTEIN, in his official and individual
capacity, BOSHRA VAHDATLAMAS, in her official
and individual capacity, A/K/A Bushra Vahdat, IDA
TRASCHEN, in her official and individual capacity,
ELIZABETH PRICKETT-MORGAN, in her official
and individual capacity, JEAN FLANAGAN, in her
official and individual capacity, VINCENT PALMIERI,
in his official and individual capacity, DANIELLE
CALVO, in her official and individual capacity, SADIQ
TAHRIR, in his individual capacity, PEC GROUP OF
NY, INC., DAVID SMART, and JOHN and JANE
DOE,

                              Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-2710 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

    Plaintiff Mario H. Capogrosso, proceeding *pro se*, commenced the above-captioned

action on May 8, 2018, against Defendants Alan Gelbstein, Boshra Vahdatlamas, Ida Traschen,

Elizabeth Prickett-Morgan,[1] Jean Flanagan, Vincent Palmieri, Danielle Calvo, Sadiq Tahrir, PEC

Group of NY, Inc., David Smart, and John and Jane Doe.  (Compl., Docket Entry No. 1.)

Plaintiff alleges that Defendants, *inter alia*, violated his constitutional rights when they banned

him from representing clients in New York State traffic court proceedings.  (*Id.* ¶¶ 70–88.)  On

---

    [1]  Defendant Elizabeth Prickett-Morgan has since changed her name to Elizabeth
Morgan.  (Defs. Mem. in Supp. of Defs. Mot. to Dismiss ("Defs. Mem.") 1, Docket Entry No.
44.)  Though Morgan's name has not been changed in the case caption, for the purposes of this
Memorandum and Order, the Court will refer to her as "Morgan."

October 11, 2018, Defendants Gelbstein, Vahdatlamas, Traschen, Morgan, Flanagan, Palmieri, and Calvo (the "State Defendants") moved to dismiss the Complaint for lack of subject matter jurisdiction, failure to state a claim, and insufficient service of process pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(5), and 4(m) of the Federal Rules of Civil Procedure.  (Defs. Mot. to Dismiss ("Defs. Mot."), Docket Entry No. 42; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 44.)  Plaintiff opposes the motion.  (Pl. Opp'n to Defs. Mot. ("Pl. Opp'n"), Docket Entry No. 41.)  On November 5, 2018, the Court referred the motion to Magistrate Judge Lois Bloom for a report and recommendation.  (Order dated Nov. 5, 2018.)  By report and recommendation dated January 30, 2019, Judge Bloom recommended that the Court grant in part and deny in part the State Defendants' motion to dismiss ("R&R").  (R&R, Docket Entry No. 51.)  On February 27, 2019, the parties filed timely objections to the R&R.  (Defs. Obj. to the R&R ("Defs. Obj."), Docket Entry No. 59; Pl. Obj. to the R&R ("Pl. Obj."), Docket Entry No. 60.)

For the reasons set forth below, the Court adopts the R&R and grants in part and denies in part the State Defendants' motion to dismiss.

## I.  Background

Plaintiff is an attorney licensed in New York and Connecticut.[2]  (Compl. ¶ 2.)  Between April of 2005 and May 11, 2015, Plaintiff represented clients at various locations of the Traffic Violations Bureau ("TVB") in the New York City metropolitan area.  (*Id.* ¶ 3.)  The TVB is a division of the Department of Motor Vehicles, an agency of the State of New York; Administrative Law Judges ("ALJs") preside over TVB proceedings.  (*Id.* ¶ 4.)  During this

---

[2]  The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

period, Plaintiff represented "approximately 850" clients at various TVB locations in connection with traffic tickets they had received.  (*Id.* ¶ 6.)

In December of 2011, due to "complaints of misconduct," Plaintiff was temporarily suspended from practicing law in the TVB courts.  (*Id.* ¶ 5.)  Plaintiff was permitted to resume practicing in the TVB courts several months later in accordance with a "Stipulation of Settlement."  (*Id.* ¶ 5.)  At some point during his suspension, Plaintiff learned that one of his "accusers" was David Smart, a security guard employed by a private company that contracts with the TVB.  (*Id.* ¶¶ 5, 7.)

Plaintiff alleges that "for a long period of time . . . [he] had been subjected to constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance" by Smart.  (*Id.* ¶ 8.)  Plaintiff reported this alleged harassment to Alan Gelbstein, the ALJ at the Brooklyn South Office of the TVB.  (*Id.* ¶ 9.)  On March 20, 2015, after ALJ Gelbstein had "refused to take any action" to address Smart's behavior, Plaintiff wrote a "formal letter of complaint" (the "March 2015 Complaint") to Elizabeth Morgan, an Assistant Attorney General in the Office of the New York Attorney General.[3]  (*Id.* ¶ 9; Letter to Elizabeth Morgan dated Mar. 20, 2015, Docket Entry No. 46-7.)  Plaintiff informed Morgan that ALJ Gelbstein "was either complicit, incapable or incompetent to handle the ongoing issues" Plaintiff was experiencing with Smart.  (Compl. ¶ 9.)  Morgan did not respond to the March 2015 Complaint.  (*Id.*)  Plaintiff alleges that Morgan "failed to take any action to abate the harassing and unlawful

---

[3]  The Court considers the March 2015 Complaint in assessing the motion to dismiss because it is integral to the Complaint.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

conduct of Defendant Smart."  (*Id.*)

Plaintiff further alleges that on May 8, 2015, Gelbstein and Danielle Calvo, the clerk supervisor in the Brooklyn South Office, approached Plaintiff while he was sitting in the attorneys' room.  (*Id.* ¶ 10.)  Gelbstein then said to Plaintiff, "[c]an't you go to practice somewhere else[.]  I saw what you wrote about me that I am complicit and incapable."  (*Id.*)

On May 11, 2015, three days after the confrontation with Gelbstein and Calvo, Smart approached Plaintiff "in an aggressive and threatening manner in an attempt to provoke . . . a physical confrontation."  (*Id.* ¶ 11.)  Plaintiff "refused to . . . engage . . . Smart."  (*Id.*)  Calvo then came over to Plaintiff, accompanied by several officers from the New York Police Department, and told Plaintiff "that he was no longer allowed at the [TVB] and that [he] was to leave the building immediately."  (*Id.*)  Calvo directed Plaintiff to place a telephone call to Ida Traschen, Assistant Counsel for the Legal Bureau of the DMV.  (*Id.*)  Plaintiff called Traschen that same day, who informed him that he "was permanently barred from representing any clients in the future at any of the TVB locations throughout the State."  (*Id.*)

After their May 22, 2015 telephone conversation, Plaintiff placed a number of "follow[-]up calls" to Traschen to seek further clarification of the ban, but she did not answer his calls.  (*Id.* ¶ 12.)  In addition to his telephone calls, Plaintiff wrote letters to Traschen, as well as to various states agencies seeking an explanation as to why he had been banned from representing clients at all TVB locations.  (*Id.* ¶ 13.)  In response to his inquiries, Plaintiff was told that the agencies he contacted were either unable or unwilling to provide him with any clarification.  (*Id.* ¶ 14.)

Plaintiff alleges that Vahdatlamas, a supervisory ALJ, "was in consultation with" other Defendants regarding Plaintiff's complaints about Smart and Gelbstein and "treated the violation

of Plaintiff's constitutional rights . . . with complete indifference and/or ratified and condoned

said unconstitutional acts as a supervisory person." (*Id.* ¶¶ 45–46.) Plaintiff further alleges that

Defendants Flanagan and Palmieri, TVB supervisors, failed to conduct any further inquiries into

Calvo's conduct after learning that Plaintiff had been barred from the TVB courts "due to an

alleged 'work place violence incident,'" and "reacted to the violations of Plaintiff's

constitutional rights with deliberate indifference and/or condoned and ratified . . .

unconstitutional conduct." (*Id.* ¶¶ 54–55.)

Plaintiff asserts that he "was never provided with the reasons or rationale" for his ban

from representing clients at all TVB locations, which has remained in place since May 11, 2015,

and "was not provided with any documentation as to the identity of his accusers, the particulars

or the nature of any complaints against him, [or] . . . the opportunity to participate in a . . .

hearing." (*Id.* ¶ 15.)

Based on these allegations, Plaintiff asserts three causes of actions against the State

Defendants. First, Plaintiff alleges that the State Defendants violated his First Amendment rights

by banning him form the TVB courts in retaliation for his March 2015 Complaint to Morgan.

(*Id.* ¶¶ 70–75.) Second, he alleges that the State Defendants violated his Fourteenth Amendment

rights by depriving him of his liberty and property interest in practicing law at the TVB courts

without due process. (*Id.* ¶¶ 76–85.) Third, Plaintiff seeks prospective injunctive relief

enjoining the State Defendants from barring him from practicing law at any TVB location in

New York State. (*Id.* ¶¶ 86–88.) Plaintiff brings these claims pursuant to 42 U.S.C. §§ 1983,

1985, and 1986. (*Id.* ¶ 1.)

As relief for these alleged violations, Plaintiff seeks (1) a declaratory judgment that the

State Defendants have violated his First and Fourteenth Amendment rights;[4] (2) prospective injunctive relief enjoining the State Defendants from prohibiting Plaintiff from practicing law at the TVB courts in New York State; and (3) compensatory and punitive damages. (*Id.* ¶¶ 21–22.)

## II. Report and recommendation

By report and recommendation dated January 30, 2019, Judge Bloom recommended that the Court grant in part and deny in part the State Defendants' motion to dismiss. (R&R 2.)

First, Judge Bloom recommended that the Court deny the State Defendants' motion to dismiss for lack of standing under Article III because their "conclusory statement that [P]laintiff's injury . . . was not due to 'any illegal action by any of the State Defendants' is insufficient to defeat [P]laintiff's proffer of standing." (*Id.* at 10.)

Second, Judge Bloom recommended that the Court grant the motion to dismiss as to Palmieri and Flanagan for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure because neither Defendant was ever served. (*Id.* at 11.)

Third, Judge Bloom recommended that the Court grant the motion to dismiss Plaintiffs' section 1983 claims as to Vahdatlamas and Morgan for failure to allege that either Defendant was personally involved in the alleged violations of Plaintiffs' rights. (*Id.* at 12–15.)

Fourth, Judge Bloom recommended that the Court deny the motion to dismiss Plaintiff's First Amendment retaliation claim as to Gelbstein, Calvo, and Traschen for failure to state a claim upon which relief can be granted. (*Id.* at 19.) Judge Bloom found that Plaintiff had satisfied, for purposes of a motion to dismiss, the three elements of a First Amendment

---

[4]  The Complaint also seeks a declaratory judgment that the State Defendants violated Plaintiff's Fourth and Fifth Amendment rights. (Compl. ¶¶ 21, 77.) Because Plaintiff has not made any factual allegations to support either claim, to the extent Plaintiff brings such claims, the Court dismisses them for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

retaliation claim. (*Id.* at 16–18.)

Fifth, Judge Bloom recommended that the Court grant the motion to dismiss Plaintiff's procedural due process claim because Plaintiff has not alleged that Defendants deprived him of a constitutionally protected liberty or property interest. (*Id.* at 20–21.) In the alternative, Judge Bloom concluded that Plaintiff had an adequate post-deprivation opportunity to be heard, because he could have challenged the ban in an available state court proceeding. (*Id.* at 21–22.)

Sixth, Judge Bloom recommended that the Court deny the motion to dismiss Plaintiff's claim for prospective injunctive relief because Plaintiff's request "satisfies the requirements for the exception to Eleventh Amendment immunity set forth in *Ex Parte Young*," and because the "instant motion cannot establish that the State Defendants' decision to ban plaintiff from representing clients at all TVB Courts was reasonable and necessary." (*Id.* at 23.)

Seventh, Judge Bloom recommended that the Court grant the motion to dismiss Plaintiff's conspiracy claims under section 1985 and section 1986 because Plaintiff "fails to allege facts to establish that the State Defendants[] acted with any class-based discriminatory animus." (*Id.* at 25.)

Eighth, Judge Bloom recommended that the Court deny the motion to dismiss on qualified immunity grounds because the State Defendants "fail to articulate the 'clearly established right' upon which they base their qualified immunity affirmative defense." (*Id.* at 26–27.)

Finally, Judge Bloom recommended that the Court deny Plaintiff leave to amend his claims against Flanagan and Palmieri, as well as his due process claim and his claims under sections 1985 and 1986, as amendment of these claims would be futile. (*Id.* at 29.)

### III. Discussion

#### a. Standards of review

##### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id*.; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain de novo review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758, (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

##### ii. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate

it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir.

2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*,

718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d

635, 638 (2d Cir. 2005)); *see also Chau v. S.E.C.*, 665 F. App'x 67, 70 (2d Cir. 2016). The

plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether

the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true

and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown

affirmatively, and that showing is not made by drawing from the pleadings inferences favorable

to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir.

2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of

the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*,

712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

### iii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the

complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*,

884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d

Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v.*

*N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this

tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.[5]

### b.  Objections to the R&R

Plaintiff objects to Judge Bloom's recommendation that the Court dismiss his claims

against Vahdatlamas and Morgan for failure to plausibly allege that they were personally

involved in the alleged violations of Plaintiff's rights.  (Pl. Obj. ¶¶ 7–18, 28–29.)  In addition,

Plaintiff objects to Judge Bloom's recommendations that the Court: (1) dismiss Plaintiff's due

process claim, (*id.* ¶¶ 19–24); (2) dismiss Plaintiff's section 1985 claim, (*id.* ¶¶ 25–26, 31); and

(3) deny Plaintiff leave to amend his First Amendment and civil rights claims, (*id.* ¶¶ 10, 30).[6]

The State Defendants object to Judge Bloom's recommendation that the Court deny their

motion to dismiss for lack of standing.  (Defs. Obj. 2–5.)  In addition, the State Defendants

object to Judge Bloom's recommendations that the Court: (1) deny the motion to dismiss

Plaintiff's First Amendment retaliation claim as to Gelbstein, Calvo, and Traschen, (*id.* at 5–9),

(2) deny the motion to dismiss on qualified immunity grounds, (*id.* at 10–13), and (3) deny the

---

[5]  Generally, in reviewing a *pro se* complaint, the Court must be mindful that a plaintiff's
pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers."
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S.
97, 104–05 (1976)).  However, Plaintiff is an attorney.  (Compl. ¶ 2.)  Because "the rules
afforded *pro se* litigants are not relaxed when that litigant is also an attorney . . . the Court need
not construe [such a] plaintiff's pleadings liberally to raise the strongest arguments they
suggest."  *Harris v. Queens Cty. Dist. Attorney's Office*, No. 08-CV-1703, 2009 WL 3805457, at
*3 (E.D.N.Y. Nov. 9, 2009) (citations and internal quotation marks omitted).

[6]  Plaintiff also purports to "object to [the R&R] taking the Defendants' representations of
. . . fact as true."  (Pl. Obj. ¶¶ 5–6.)  However, as Plaintiff's objection is in fact to the Judge
Bloom's recitation of Defendants' arguments and not to a finding or recommendation, it is not a
valid objection and the Court declines to address it.  Plaintiff also argues Vahdatlamas and
Morgan are not entitled to qualified immunity, but as Judge Bloom did not find they were, this is
similarly not a valid objection to the R&R and the Court therefore declines to address it.  (*Id.* ¶
27; R&R 14–15 n.5, 25–29.)

motion to dismiss Plaintiff's claim for prospective injunctive relief, (*id.* at 13–14).

The Court reviews these recommendations *de novo*.

### c.   Unopposed findings and recommendations in the R&R

No party has objected to Judge Bloom's recommendation that the Court dismiss Plaintiff's claims against Flanagan and Palmieri for insufficient service of process.  The Court therefore reviews this recommendation for clear error.  Having reviewed the relevant portions of the R&R and finding no clear error, the Court adopts the recommendation pursuant to 28 U.S.C. § 636(b)(1).  Accordingly, the Court dismisses Plaintiff's claims against Flanagan and Palmieri.

### d.   Standing

The State Defendants argue that Plaintiff lacks standing under Article III because Plaintiff's own conduct — not the State Defendants' — caused him to be banned from practicing in the TVB courts.  (Defs. Mem. 11.)

In order to show standing, a plaintiff must establish three things: (1) an "injury in fact — an invasion of a legally protected interest which is . . . concrete and particularized and actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) redressability of the injury "by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see Pincus v. Nat'l R.R. Passenger Corp.*, 581 F. App'x 88, 89 (2d Cir. 2014) (describing the three elements of standing (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("[A] plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." (citing *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009))).  "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim."  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citations and internal quotation marks

omitted).

"[A] plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) (citing *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000)). "An injury is 'self-inflicted' so as to defeat standing only if 'the injury is so completely due to the plaintiff's own fault as to break the causal chain.'" *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (citation omitted) (quoting *St. Pierre*, 208 F.3d at 402). However, "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing." *St. Pierre*, 208 F.3d at 402 (quoting 13 Charles A. Wright et al., *Federal Practice and Procedure* § 3531.5 at 461 (2d ed. 1984)); *see also Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at *10 n.5 (E.D.N.Y. Sept. 9, 2013) ("Self-inflicted injury that results from a plaintiff's personal choices rather than a defendant's conduct will not confer standing." (citing *McConnell v. FEC*, 540 U.S. 93, 228 (2003), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010)) (citation omitted)); *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) ("A plaintiff cannot establish Article III standing to pursue a cause of action where that plaintiff is the primary cause of its own alleged injury." (citations omitted)).

Plaintiff contends that Defendants banned him from the TVB in direct response to his protected First Amendment activity. (Compl. ¶¶ 71, 74.) The State Defendants argue that Plaintiff lacks Article III standing because his ban from the TVB courts was "not because of any illegal action by any of the State Defendants," but rather was a result of Plaintiff's "violent, threatening and unprofessional conduct." (Defs. Mem. 11.) To support this argument, the State Defendants point to "the voluminous record of contemporaneous complaints and statements

12

regarding Plaintiff's conduct,"[7] (*id.*; *see also* Exs. 1–28, annexed to Decl. of Barbara Montena, Docket Entry Nos. 45-1–28), which they argue "demonstrates that [Plaintiff] was barred from the [TVB] because of his continued violent, threatening and unprofessional conduct, not in retaliation for his letter to defendant Morgan," (Defs. Obj. 2).  The State Defendants further assert that the "record demonstrates that Plaintiff was banned from the TVB . . . as a direct result of[] his physical confrontation with security guard Smart," which was "the culmination of a long and well-documented history of violent and offensive behavior by Plaintiff."  (*Id.* at 2–3.)  In addition, in their objections to the R&R, Defendants rely on *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016), to assert that "Plaintiff may not merely 'rely on the allegations of the [complaint]' in responding to evidence showing lack of Article III standing," and argue that "Plaintiff's inability to 'come forward with evidence of [his] own to controvert' the . . . evidence that his ban . . . was caused by his own . . . conduct confirms that he lacks Article III standing." (*Id.* at 3 (citing *Carter*, 822 F.3d at 57 (citations omitted)).)  However, *Carter* provides no support for Defendants' position.  In *Carter*, the Second Circuit held that "plaintiffs are entitled to rely on the allegations in the [complaint] if the evidence proffered by the defendant . . . does not contradict plausible allegations that are themselves sufficient to show standing."  *Carter*, 822 F.3d at 57.  While the statements proffered by the State Defendants may be used to support an alternate theory of why the State Defendants banned Plaintiff from the TVB courts, they do not directly contradict Plaintiff's plausible allegations that he was injured by the State Defendants.

At this stage of the proceedings, and on the current record, the Court cannot conclude that Plaintiff's injury "is so completely due to [his] . . . own fault as to break the causal chain."  *St.*

---

[7]  Because the Court is assessing whether it has subject matter jurisdiction, it may rely on documents outside the Complaint.  *See M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

*Pierre*, 208 F.3d at 402. Accordingly, the Court denies the State Defendants' motion to dismiss for lack of standing.

### e. Section 1983 claims

Plaintiff asserts two causes of action under section 1983 against the State Defendants for alleged violations of his constitutional rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment.

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Before discussing each claim, the Court determines whether Plaintiff has alleged personal involvement of the State Defendants.

### i. Personal involvement/supervisory liability

The State Defendants argue that Plaintiff fails to state a claim under section 1983 against Vahdatlamas, Traschen, and Morgan because Plaintiff has not adequately alleged that they were personally involved in violating his constitutional rights.[8] (Defs. Mem. 20–21.)

---

[8] The State Defendants also argue that Plaintiff has failed to adequately allege Palmieri and Flanagan's personal involvement in violating his rights. (Defs. Mem. 20–21.) Because the Court dismisses the claims against Palmieri and Flanagan on other grounds, the Court does not address whether Plaintiff has plausibly alleged their personal involvement in violating his constitutional rights.

"[T]he 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[A]ny complaint under [s]ection 1983 must plead specific facts that allege the personal involvement of each individual charged with violating [the plaintiff's] civil rights." *Doe v. City of New York*, No. 11-CV-3978, 2011 WL 3876990, at *2 (E.D.N.Y. Sept. 1, 2011) (citation omitted). "A defendant's supervisory authority is insufficient in itself to demonstrate liability under [section] 1983." *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)).

A plaintiff can demonstrate the personal involvement of a supervisory defendant by showing that:

> (1) [he or she] participated directly in the alleged constitutional violation, (2) [he or she], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) [he or she] created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom, (4) [he or she] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) [he or she] exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Brandon v. Kinter*, --- F.3d ---, ---, 2019 WL 4263361, at *10 (2d Cir. Sept. 10, 2019) (alterations in original) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Accordingly, "[i]n a damages suit brought pursuant to [section] 1983, supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." *Lewis v. Rawson*, 180 F. App'x 239, 240

15

(2d Cir. 2006) (internal quotation marks omitted) (quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)); *see also Cooper v. City of New York*, No. 17-CV-1517, 2019 WL 3642996, at \*10 (E.D.N.Y. Aug. 5, 2019) (quoting same).

Plaintiff has not plausibly alleged that Morgan and Vahdatlamas were personally involved in the alleged violations of his constitutional rights.  Plaintiff alleges that Morgan "failed to respond to Plaintiff's written complaint . . . [or] take any action to abate the [Plaintiff's harassment] by Defendant Smart," but the Complaint contains no factual allegations as to Morgan's involvement in the alleged response to the letter, i.e., Plaintiff's ban from the TVB, that is the basis for Plaintiff's section 1983 claims.  (Compl. ¶ 9.)  Plaintiff further alleges that after receiving the letter, Morgan "conspired with [other Defendants] . . . to cause or contribute to the violation of Plaintiff's [constitutional rights]," or, "[a]lternatively . . . treated the violation of Plaintiff's . . . constitutional rights with deliberate indifference and/or condoned and ratified the violation[s]."  (*Id.*)  These legal conclusions do not plausibly state a claim that Morgan was personally involved in the alleged violations of Plaintiff's constitutional rights.[9]

As to Vahdatlamas, Plaintiff alleges only that she "was in consultation" with other State Defendants regarding Plaintiff's complaints of Smart and Gelbstein's "misconduct," and "treated the violation of Plaintiff's constitutional rights . . . with complete indifference and/or ratified and condoned said unconstitutional acts as a supervisory person."  (*Id.* ¶ 46.)  Like the allegations against Morgan, these bare legal conclusions do not plausibly state a claim that Vahdatlamas was personally involved in the alleged violations of Plaintiff's constitutional rights.

---

[9]  The State Defendants also argue that Morgan is entitled to absolute immunity because "as an attorney in the Office of the New York Attorney General, she has absolute immunity from any civil liability."  (Defs. Mem. 22.)  Because the Court dismisses the claims against Morgan on other grounds, the Court declines to address whether Morgan is entitled to absolute immunity.

Because Plaintiff has failed to plausibly allege that Morgan and Vahdatlamas were personally involved in violating Plaintiff's constitutional rights, the Court dismisses the claims against them.

As to Traschen, the Court finds that Plaintiff has adequately alleged her personal involvement. The State Defendants suggest that Plaintiff has only alleged that Traschen "ignored Plaintiff's phone calls and letters." (Defs. Mem. 21.) However, the Complaint specifically alleges that Traschen "actively participated in the violation of Plaintiff's constitutional rights . . . by directly informing . . . Plaintiff that he was no longer allowed to practice law in the TVB [c]ourts." (Compl. ¶ 49.) On a motion to dismiss, these allegations are sufficient to show that Traschen directly participated in the alleged violation. The Court therefore denies the State Defendants' motion as to this claim against Traschen.

### ii. First Amendment retaliation claim

The State Defendants argue that Plaintiff has failed to plausibly allege that they retaliated against him for any protected First Amendment activity. (Defs. Mem. 12–13.)

To prevail on a First Amendment retaliation claim, a plaintiff must show that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New* York, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Eyshinskiy v. Kendall*, 692 F. App'x 677, 677–78 (2d Cir. 2017); *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citation omitted); *Maco v. Baldwin Union Free Sch. Dist.*, 249 F. Supp. 3d 674, 678 (E.D.N.Y. 2017) ("Private citizens alleging retaliation for their criticism of public officials are generally required to show that they engaged in protected speech, persons acting under color

of state law took adverse action against them in retaliation for that speech, and

the retaliation resulted in actual chilling of their exercise of their constitutional right to free

speech." (citation and internal quotation marks omitted)), *aff'd*, 726 F. App'x 37 (2d Cir. 2018).

### 1.  Protected speech

The First Amendment protects "the right of the people . . . to petition the government for

the redress of grievances."  U.S. Const. amend. I.  "The right to petition is . . . implicit in '[t]he

very idea of [republican] government," *McDonald v. Smith*, 472 U.S. 479, 482 (1985) (quoting

*United States v. Cruikshank*, 92 U.S. 542, 552 (1876)), and "allows citizens to express their

ideas, hopes, and concerns to their government and their elected representatives," *Borough of*

*Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011).  "A petition conveys the special concerns of

its author to the government and, in its usual form, requests action by the government to address

those concerns."  *Id.* at 388–89.  Because "speech critical of the exercise of the State's power lies

at the very center of the First Amendment," *Velez v. Levy*, 401 F.3d 75, 97 (2d Cir. 2005) (quoting

*Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991)), "'a section 1983 claim will lie where

the government takes negative action against an individual because of his exercise of rights

guaranteed' by the First Amendment," *Velez*, 401 F.3d at 97 (quoting *Friedl v. City of New York.*,

210 F.3d 79, 86–87 (2d Cir. 2000)); *see also Safepath Sys. LLC v. N.Y.C. Dep't of Educ.*, 563 F.

App'x 851, 857 (2d Cir. 2014) ("The rights to complain to public officials and to seek

administrative and judicial relief from their actions are protected by the First Amendment."

(quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir.

2002))).

Plaintiff plausibly alleges that he engaged in protected speech.  Plaintiff alleges that he

was banned from the TVB courts in response to his March 2015 Complaint to Morgan in her

capacity as an Assistant Attorney General in the New York State Office of the Attorney General.[10]  The March 2015 Complaint detailed Plaintiff's complaints about Smart and Gelbstein, both individuals employed at an office of a state agency.  (Mar. 2015 Compl.)  In the March 2015 Complaint, Plaintiff requested that Morgan "take any and all action to expedite and resolve these issues."  (*Id.*)  Plaintiff's March 2015 Complaint, in which he outlined his grievances against a state agency and asked a government official to address those grievances, is speech protected by the First Amendment.[11]  *See Safepath Sys. LLC*, 563 F. App'x at 857 (finding that plaintiff contractors engaged in protected speech when they "complain[ed] to" to the New York City Department of Investigation and the New York State Attorney General about city agency defendants' failure to comply with legal mandates).

---

[10]  The Complaint also asserts that "[a]t the time that Plaintiff published his letter of complaint . . . Plaintiff had an interest protected by the First Amendment, [i.e.,] . . . a right to practice his profession in the TVB court free from harassment, threat, and threat of violence." (Compl. ¶ 72.)  The Court agrees with the State Defendants that Plaintiff does not have a First Amendment right to practice law in the TVB courts.  *See Jacob & Meyers, LLP v. Presiding Justices of the First, Second, Third, and Fourth Judicial Dep'ts, Appellate Div. of the Supreme Court of the State of N.Y.*, 852 F.3d 178, 187–89 (2d Cir. 2017) ("Clients have First Amendment expressive rights for which litigation may provide a vehicle . . . . We are not aware of any judicial recognition of such an interest, however, when it comes to the lawyer's generic act of pursuing litigation on behalf of any client . . . . Of course, we do not question the right to petition a court, with the aid of a lawyer, for redress.  But in the context of for-profit law firms that serve their clients' interests as a business, that right belongs to the client, not the attorney.").  To the extent Plaintiff asserts a First Amendment retaliation claim on the basis that he has a constitutionally protected right to practice law in the TVB courts, the Court dismisses the claim.

[11]  The State Defendants argue that Plaintiff did not have a right protected by the First Amendment because the "violent and threatening behavior for which Plaintiff was banned is not protected by the First Amendment."  (Defs. Mem. 14.)  As Plaintiff's retaliation claim alleges that he was banned in response to the letter he sent to Morgan, the Court does not address this argument on the motion to dismiss.

## 2. Causation

The second element of a First Amendment retaliation claim requires a plaintiff to show that "the defendant's actions were motivated or substantially caused" by the plaintiff's First Amendment activity.  *Dorsett*, 732 F.3d at 160.  "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action."  *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)); *see also Hampshire Recreation, LLC v. Vill. of Mamaroneck*, 664 F. App'x 98, 100 (2d Cir. 2016) (holding, in First Amendment retaliation case, that a "causal connection [is] established where protected activity is closely followed in time by [an] adverse action" (internal quotation marks omitted) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001))); *Gogol v. City of New York*, No. 15-CV-5703, 2017 WL 3449352, at *9 (finding, in a First Amendment retaliation case, that "temporal proximity is strong evidence of improper intent" (citation omitted)). "[D]irect evidence of retaliation may consist of 'conduct or statements by persons involved in the decision[-]making process that may be viewed as directly reflecting the alleged [retaliatory] attitude.'"  *McAvey v. Orange-Ulster BOCES*, 805 F. Supp. 2d 30, 40 (S.D.N.Y. 2011) (alteration in original) (citation omitted) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997)).  The Second Circuit "has declined to draw a bright line as to how close in time the [protected activity and the adverse action] must be" to establish the causation element of a First Amendment retaliation claim, and has "instead called on courts to exercise 'judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.'"  *Brandon*, --- F.3d at ---, 2019 WL 4263361, at *14 (quoting *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2009)).

20

For purposes of the motion to dismiss, Plaintiff has established a causal link between his protected First Amendment activity and the State Defendants' actions banning him from the TVB courts. Plaintiff alleges that on May 8, 2015, seven weeks after Plaintiff sent the March 2015 Complaint, Gelbstein and Calvo approached him at the Brooklyn South Office of the TVB. (Compl. ¶ 10.) Gelbstein then stated, "[c]an't you go practice somewhere else[.] I saw what you wrote about me that I am complicit and incapable," (*id.*) — comments that not only indicate that Gelbstein and Calvo were aware of Plaintiff's letter and its contents, but that also "may be viewed as directly reflecting the alleged [retaliatory] attitude," *McAvey*, 805 F. Supp. at 40. Three days later, on May 11, 2015, Plaintiff was approached by Smart, who "attempt[ed] to provoke . . . Plaintiff into a physical confrontation." (*Id.* ¶ 11.) Despite Plaintiff's "refus[al] to engage" in a physical confrontation with Smart, Plaintiff was then approached by Calvo, who asked him to leave the building and informed him that he was no longer allowed at any TVB locations. (*Id.*) Later that same day, Plaintiff spoke to Traschen, who told him that he was "permanently barred from representing any clients in the future at any of the TVB locations." (*Id.*) Based on the circumstances of this case as alleged in the Complaint, the temporal proximity between Plaintiff's March 2015 Complaint and being banned from representing clients at all TVB locations is sufficient, on a motion to dismiss, to establish causation between Plaintiff's protected First Amendment activity and the State Defendants' actions.

In their objections to the R&R, the State Defendants argue that "neither temporal proximity nor Plaintiff's allegation regarding . . . [Gelbstein's] purported comment" are "sufficient to render his claim . . . plausible." (Defs. Obj. 5.) With respect to both claims, the State Defendants rely heavily on Plaintiff's "admitted physical confrontation with Smart," arguing that it was an "intervening event" that negates any inference of causation, and that "the

only plausible inference . . . is that, when Plaintiff was informed that he was being banned from the TVB because of his 'physical confrontation'" with Smart, that was "not mere pretext" but "the actual reason." (*Id.* at 6, 9.)

The State Defendants misconstrue the allegations in the Complaint. Plaintiff explicitly denies that he and Smart had a physical confrontation on the day Plaintiff was banned from the TVB courts, alleging instead that he "refused to engage" with Smart's attempt to bait him into a confrontation. (Compl. ¶ 11.) Furthermore, Plaintiff does not allege that he was ever told he was being banned because of an altercation with Smart. To the contrary, the Complaint states numerous times that Plaintiff was never given a reason for the ban, despite his efforts to obtain an explanation. (*Id.* ¶¶ 12–15, 83.)[12]

---

[12]  The State Defendants also argue that there can be no inference of causation based on temporal proximity, because Plaintiff was previously banned from the TVB. (Defs. Obj. 7.) In support of this proposition, the State Defendants cite a few cases in which courts in this Circuit have found, in the employment context, that an inference based on temporal proximity is undercut where adverse employment actions began prior to a plaintiff's protected speech. (*Id.*) Primarily, the State Defendants cite a Second Circuit case, in which the Court of Appeals found no inference of retaliation where "the adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline' which began when [the employer] . . . diminished [the plaintiff's] . . . job responsibilities *a full five months prior* to his filing of the EEOC charges." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (emphasis in original). However, the cases cited by the State Defendants are distinguishable from the facts before the Court.

Plaintiff was previously suspended from the TVB courts in response to complaints of misconduct, and then subsequently permitted to resume his practice after fulfilling the agreed-upon terms. (Compl. ¶ 5.) Unlike in *Slatterly*, where the employee filed his complaint amid continuously escalating adverse consequences, Plaintiff sent the March 2015 Complaint several years after his prior disciplinary action had been settled. 248 F.3d at 95. The State Defendants' suggestion that Plaintiff's 2011 ban categorically and indefinitely precludes him from establishing causation based on temporal proximity in a retaliation claim such as this one is unpersuasive.

### 3. Injury

The third element of a First Amendment retaliation claim requires a plaintiff to show that "the defendant's actions caused [plaintiff] some injury." *Dorsett*, 732 F.3d at 160 (citing *Curley v. Vill. of Suffern*, 286 F.3d 65, 73 (2d Cir. 2001)). A plaintiff is not required to show that his "speech has been adversely affected by the government retaliation," and can instead show "that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160.

Plaintiff has plausibly alleged that the State Defendants' actions caused him injury. Plaintiff "practiced law almost exclusively" in the TVB courts over a ten-year period. (Compl. ¶ 3.) As a result of the State Defendants' actions, Plaintiff has been barred indefinitely from representing clients in any of the TVB courts across the State of New York. This is a concrete harm for the purposes of a First Amendment retaliation claim.

The Court finds that Plaintiff has plausibly alleged a First Amendment retaliation claim as to Gelbstein, Calvo, and Traschen. Accordingly, the Court denies the motion to dismiss Plaintiff's First Amendment retaliation claim as to these Defendants.

### iii. Due process claim

Plaintiff also raises a procedural due process claim, claiming that he "enjoyed a property and/or liberty interest in his right to practice law and earn a living" in the TVB courts. (*Id.* ¶ 78.) Plaintiff asserts that the State Defendants deprived him of that protected interest without due process when they "failed to adequately apprise [him] of the reasons for his arbitrary dismissal . . . [or] to inform [him] that he was entitled to a hearing and [to] confront any accusers." (*Id.* ¶ 83.)

The State Defendants argue that Plaintiff cannot state a due process claim because he "does not have a protected liberty or property interest in continuing to practice law at the TVB." (Defs. Mem. 17.)  In addition, the State Defendants argue that even if Plaintiff did have a

23

protected interest in his TVB court practice, the DMV's "exercise of discretion" in enforcing its regulation against Plaintiff cannot support a due process claim and, further, Plaintiff had an adequate post-deprivation opportunity to be heard because he could have pursued an available remedy in the state courts. (*Id.* at 17–19.)

The Constitution imposes "constraints," ordinarily in the form of notice and a pre-deprivation hearing, on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause" of the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015) (citing *Mathews*, 424 U.S. at 332). Because the requirements of procedural due process "apply only to the deprivation of interests encompassed by the [Constitution's] protection of liberty and property" and because "the range of interests protected by procedural due process is not infinite," *see Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972), the "first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty,'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). If the court finds that the plaintiff has been deprived of such an interest, it evaluates whether the government's procedures comport with due process. *See id.*

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 576. Such a claim is "created and . . . defined by existing rules or understandings that stem from an independent source such as state law." *Polito v. City of New York*, No. 15-CV-2301, 2016 WL 3676425, at *4 (E.D.N.Y. Jul. 7, 2016) (quoting *Roth*, 408 U.S. at 577).

"The liberty interests protected by the Fourteenth Amendment include the freedom 'to

engage in any of the common occupations of life.'" *Roth*, 408 U.S. at 572 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).  However, "the Supreme Court, [the Second] Circuit, and the other Circuits addressing the issue have all indicated that the right of occupational choice is afforded Due Process protection only when a plaintiff is 'complete[ly] prohibit[ed]' from engaging in his or her chosen profession." *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (alterations in original) (quoting *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)); *see also Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009) ("[I]t is only when the challenged action effectively prohibits one from engaging in a profession, or pursuing any job in a given field that there is a deprivation entitled to protection.").  The Fourteenth Amendment does not "protect the right to a particular job." *Cityspec, Inc.*, 617 F. Supp. 2d at 169.

Plaintiff does not allege facts that would establish either a property or liberty interest. Plaintiff does not suggest any basis for a legitimate claim of entitlement to his continued representation of clients in the TVB courts.  That "the effect of the [ban] . . . is that the Plaintiff's long and chosen career path [—] lawyering at the TVB [—] has been eliminated," (Pl. Opp'n 7), does not establish that he had anything more than "an abstract need . . . desire . . . [or] unilateral expectation" that he be able to continue his traffic court practice. *Roth*, 408 U.S. at 576.

Plaintiff has similarly not established that he has been deprived of a protected liberty interest.  In imposing the TVB ban, the State Defendants did nothing to prohibit Plaintiff from practicing law anywhere other than the TVB courts.  Plaintiff himself notes that "[w]hile he potentially could work elsewhere within the same field, [Plaintiff] has an established client base and has created a career at TVB." (Pl. Opp'n 7–8.)  In his objections to the R&R, Plaintiff states that he "is not a[t] liberty to practice elsewhere" because he will be required to explain the basis for his expulsion from the TVB courts if he seeks admission to practice in any state or federal

jurisdiction, and is unable to do so.  (Pl. Obj. ¶ 22.)  However, Plaintiff does not cite to any

authority to support his claim that this constitutes a complete ban from the profession for the

purposes of due process analysis.

Because Plaintiff has not plausibly alleged a protected property or liberty interest in his

law practice before the TVB courts, the Court grants State Defendants' motion and dismisses the

due process claim.

### f.   Sections 1985 and 1986 conspiracy

The State Defendants argue that Plaintiff's claims under sections 1985 and 1986 should

be dismissed because the allegations are conclusory and because Plaintiff "fails to allege any

class-based, invidiously discriminatory animus."  (Defs. Mem. 13–14.)

In response, Plaintiff argues that his "allegations . . . are more than detailed enough to

assert more than conclusory assertions of discovery," and asserts his belief that "the extent of the

collusion between the various Defendants" will be revealed through discovery.  (Pl. Opp'n 5.)

To state a claim for conspiracy in violation of section 1985(3), a plaintiff must allege (1)

a conspiracy, (2) with the intent or purpose to deprive a person of equal protection of the law, (3)

an act in furtherance of the conspiracy, (4) which results in an injury to a person, or a person's

property, or the deprivation of a federal constitutional right.  *Dolan v. Connolly*, 794 F.3d 290,

296 (2d Cir. 2015); *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000).  "In order

to maintain an action under [s]ection 1985, a plaintiff must provide some factual basis supporting

a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to

achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation and

internal quotation marks omitted).  In addition, a plaintiff must allege that she is a member of a

protected class and that the conspirators acted with class-based discriminatory motivation.  *See*

*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006); *Ali v. Connick*, 136 F. Supp. 3d 270, 277 (E.D.N.Y. 2015).

"[Section] 1986 provides a cause of action against anyone who, 'having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so.'" *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d at 1085, 1088 (2d Cir. 1993) (citation omitted). Thus, "a [section] 1986 claim must be predicated on a valid [section] 1985 claim." *Id.*; *Kalamaras v. Cty. of Nassau*, No. 17-CV-1068, 2019 WL 4452281, at *13 (E.D.N.Y. Sept. 16, 2019) (same).

Plaintiff's conclusory statements that the State Defendants "conspired" against him do not state a claim under sections 1985 or 1986. (Compl. ¶¶ 10, 12, 14.) More fundamentally, Plaintiff does not allege any facts to suggest that the State Defendants acted with any class-based discriminatory motivation. In his objection to the R&R, Plaintiff argues that he has alleged the required discriminatory intent because he is "an Italian American . . . in a Jewish community of lawyers and judges." (Pl. Obj. ¶ 26.) However, Plaintiff has not alleged any facts to suggest that Defendants' conduct was motivated by his identity as an Italian American. *See Radin v. Tun*, No. 12-CV-1393, 2015 WL 4645255, at *12 (E.D.N.Y. Aug. 4, 2015) (adopting report and recommendation) (finding plaintiff failed to state a claim under section 1986 because she did "not allege any discernable connection between her membership in a protected class and her federal claims"). Because Plaintiff has not stated a claim for conspiracy under section 1985, Plaintiff also fails to state a claim under section 1986. Accordingly, the Court dismisses Plaintiff's claims under sections 1985 and 1986.

### g. Prospective injunctive relief

In his third cause of action, Plaintiff seeks prospective injunctive relief enjoining the

State Defendants, in their official capacities, from "excluding . . . [Plaintiff] from practicing law in any TVB [c]ourt in . . . the State of New York."  (Compl. ¶ 88.)

The Eleventh Amendment bars suits in federal court against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity.  *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States cannot be sued by private individuals in federal court." (citation omitted)); *Browdy v. Karp*, 131 F. App'x 751, 752–53 (2d Cir. 2005) ("To the extent [the plaintiff] sues defendants in their official capacity as employees of [a state agency] his . . . claims for money damages are barred by the Eleventh Amendment." (internal quotation marks omitted) (first citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); and then citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984))).  "However, 'a plaintiff may sue a state official acting in his official capacity [—] notwithstanding the Eleventh Amendment [—] for prospective, injunctive relief from violations of federal law.'"  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)) (finding that plaintiffs' claims for injunctive relief to remedy state defendants' alleged ongoing retaliation for plaintiffs' political affiliation and union membership were not barred by the Eleventh Amendment); *see D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 352 (S.D.N.Y. 2017) ("[T]o the extent that claims are brought here against a defendant in an official capacity, state officers may be properly sued in that capacity for prospective relief under the doctrine of *Ex parte Young*."); *Ali v. Hogan*, No. 12-CV-104, 2013 WL 5503321, at *9 (N.D.N.Y. Sept. 12, 2013) ("[U]nder the doctrine of *Ex Parte Young* . . . a suit may proceed against a state official in his or her official capacity — notwithstanding the Eleventh Amendment — when a plaintiff '(a) alleges an ongoing

violation of federal law and (b) seeks relief properly characterized as prospective.'" (quoting *In re Deposit Ins. Agency*, 482 F.3d at 618)); *see also In re Deposit Ins. Agency*, 482 F.3d at 618 ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))).

The State Defendants argue that Plaintiff's claim for prospective injunctive relief should be dismissed because he has failed to plausibly allege his underlying substantive claims, and therefore does not allege an "ongoing violation of federal law." (Defs. Mem. 24; Defs. Obj. 13–14.) Because the Court finds that Plaintiff has plausibly alleged that Gelbstein, Calvo, and Traschen violated his First Amendment rights when they banned him from the TVB courts, and the ban remains in place indefinitely, Plaintiff has alleged an ongoing violation of federal law and Plaintiff's claim for injunctive relief is proper under *Ex Parte Young*.

Accordingly, the Court denies the motion to dismiss Plaintiff's claim for prospective injunctive relief.

### h. Qualified Immunity

"Qualified immunity protects officers from suit so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) ("Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for

the defendant to believe that his action did not violate such law." (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007))).

Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231–32 (2009)). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion" to dismiss, but "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if 'the facts supporting the defense appear on the face of the complaint.'" *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004)). As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* (quoting *McKenna*, 386 F.3d at 436).

The State Defendants argue that they are entitled to qualified immunity because "to the extent" they were "personally involved in the DMV's decision to permanently ban Plaintiff from the TVB in 2015 for his violent and threatening behavior, they did not violate any of Plaintiff's clearly established constitutional rights." (Defs. Mem. 23.) Defendants further argue that Plaintiff has not "demonstrat[ed] a violation of any clearly established constitutional rights, [because] Plaintiff had *no* constitutional right to practice law at the TVB, to engage in violent and threatening behavior, or to an evidentiary hearing before being barred from the TVB." (*Id.* at 24 (emphasis in original); *see also* Defs. Obj. 11 ("In any event, Plaintiff failed to demonstrate the violation of a clearly established right because the law was clear when Plaintiff was banned

30

from the TVB . . . that no constitutional rights are violated if a person is banned from a judicial or quasi-judicial forum for violent or offensive behavior.").)

The State Defendants' arguments frame the question of whether Plaintiff has alleged a violation of clearly established rights based not on Plaintiff's allegations, as they must on a motion to dismiss, but instead on the State Defendants' view of the facts. Furthermore, the State Defendants' arguments rely on facts not properly before the Court on a motion to dismiss. Beyond referencing the "complaints of misconduct" that led to Plaintiff's temporary suspension from the TVB in 2011, (Compl. ¶ 5), the Complaint contains no facts regarding Plaintiff's alleged history of violent or offensive behavior at the TVB, nor does it rely on any of those complaints of misconduct to state the claims in the Complaint. The appropriate inquiry is whether the Court can find, at this stage of the litigation, that the State Defendants did not violate any of Plaintiff's clearly established constitutional rights when they banned him from the TVB in retaliation for his protected First Amendment speech, as alleged in the Complaint. If Plaintiff succeeds in demonstrating the State Defendants retaliated against him for his protected First Amendment speech, the Court may find at that point that the State Defendants violated Plaintiff's clearly established constitutional right. *See Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 342 (S.D.N.Y. 2015) ("[The] right imperiled by [Defendants] . . . was well-ingrained at the time of disputed conduct. Retaliation claims have long been a fixture of First Amendment law.")

Because the Court cannot determine based on the Complaint that the State Defendants' conduct did not violate clearly established law of which a reasonable person would have known, the Court denies without prejudice the motion to dismiss on qualified immunity grounds.

### i. Leave to amend

Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely

give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283). However, motions to amend "should generally be denied in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

The Court grants Plaintiff leave to amend the Complaint as to Morgan's and Vahdatlamas's personal involvement in the alleged violation of Plaintiff's First Amendment rights, as well as to Plaintiff's claims against Palmieri and Flanagan. The Court finds that amendment would be futile as to Plaintiff's due process and conspiracy claims against all State Defendants. Accordingly, the Court denies Plaintiff leave to amend these claims. Plaintiff must file any amended complaint within thirty (30) days of this Memorandum and Order.

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part the State Defendants' motion to dismiss. The Court grants the motion to dismiss as to Plaintiff's due process and section 1985 and section 1986 claims, as well as all claims against Vahdatlamas, Morgan, Flanagan, and Palmieri. The Court denies the motion to dismiss for lack of standing. The Court also denies the motion to dismiss Plaintiff's First Amendment retaliation claim and claim for prospective injunctive relief against Gelbstein, Calvo, and Traschen. Finally, the Court

denies without prejudice the motion to dismiss on qualified immunity grounds.  The Court grants

Plaintiff leave to file an amended complaint within thirty (30) days of this Memorandum and

Order.

Dated: September 25, 2019
        Brooklyn, New York

                                            SO ORDERED:


                                            _____s/ MKB_____
                                            MARGO K. BRODIE
                                            United States District Judge