```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3    ------------------------------------X
                                          :
 4    MARIO H. CAPOGROSSO,                 :
                                          :  18-CV-2710 (MKB)
 5                   Plaintiff,            :
                                          :
 6              v.                         :  225 Cadman Plaza East
                                          :  Brooklyn, New York
 7    ALAN GELBSTEIN, et al.,              :
                                          :  November 14, 2019
 8                   Defendants.           :
      ------------------------------------X
 9

10         TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
                   BEFORE THE HONORABLE LOIS BLOOM
11                 UNITED STATES MAGISTRATE JUDGE

12    APPEARANCES:

13    For the Plaintiff:          MARIO H. CAPOGROSSO, Pro se
                                  21 Sheldrake Place
14                                New Rochelle, New York 10804

15    For the State Defendants:   MARK SIEGMUND, ESQ.
                                  Office of the Attorney General
16                                28 Liberty Street
                                  New York, New York 10005
17
      For David Smart:            DAVID SMART, Pro Se
18                                2875 West 8th Street
                                  Brooklyn, New York 11224
19

20
      Court Transcriber:          RUTH ANN HAGER, C.E.T.**D-641
21                                Typewrite Word Processing Service
                                  211 N. Milton Road
22                                Saratoga Springs, New York 12866

23

24

25


      Proceedings recorded by electronic sound recording, transcript
      produced by transcription service.
```

2

1   (Proceedings began at 12:07 a.m.)

2          THE CLERK:  Civil cause for initial conference,

3   docket number 18-CV-2710, Capogrosso v. Gelbstein, et al.

4   Will the parties please state your names for the record?

5          MR. CAPOGROSSO:  Mario Capogrosso appearing for

6   myself, pro se, 21 Sheldrake Place, New Rochelle, New York

7   10804.

8          MR. SIEGMUND:  Mark Siegmund from the New York State

9   Attorney General's office for the state defendants.  Hello,

10  Your Honor.

11         MR. SMART:  My name is David Smart.

12         THE CLERK:  The Honorable Lois Bloom presiding.

13         THE COURT:  Good afternoon, Mr. Capogrosso,

14  Mr. Siegmund and Mr. Smart.  This is the initial conference in

15  plaintiff's pro se civil rights action, which was filed back

16  in May of 2018.  The state defendants moved to dismiss.  The

17  motion was referred to me.  I issued a report and

18  recommendation granting in part and denying in part the

19  motion.  Judge Brodie has adopted the report and

20  recommendation and plaintiff was granted leave to file an

21  amended complaint.

22         So Mr. Capogrosso got here early, and I was happy

23  that you did.  You got to see me in the prior case.  I am of

24  the firm belief that people bring cases to court because

25  there's a problem that they can't resolve any other way and so

3

1   they bring the case to court to see if they can get a

2   resolution to the problem.  And I'm hopeful that's what you're

3   bringing this case to court for, Mr. Capogrosso.

4           MR. CAPOGROSSO:  Absolutely, Your Honor.  My career

5   is at stake here.  My career as an attorney is at stake --

6           THE COURT:  Okay.

7           MR. CAPOGROSSO:  -- and that's why --

8           THE COURT:  I will give you your chance to talk.

9           MR. CAPOGROSSO:  Yes, Your Honor.

10          THE COURT:  I am just trying to say there are

11  certain things that have happened already that cannot be

12  undone.  I have no magic wand.

13          MR. CAPOGROSSO:  I understand.

14          THE COURT:  I can't wave a magic wand and go back to

15  where it was before all of this happened to you.  Okay?

16          But as an attorney, Mr. Capogrosso, I think it's

17  fair to say that you understand once a court makes a ruling on

18  something that if you try to file the same exact thing again,

19  that you're going to get the same ruling and it's going to

20  waste a lot of resources.

21          So the amended complaint put claims right back that

22  Judge Brodie has -- on her report and rec -- on my report and

23  recommendation and her adoption, has gotten rid of.  And so

24  what that's going to do is create this wheel where they're

25  going to make another motion and you're not going to get a

4

1   different result.

2          I -- you know, I want you to understand, you have

3   the right to appeal at the conclusion of the case when there's

4   a final order.  So if you don't agree that those claims about

5   due process, deprivation of your liberty and property

6   interest, I understand you can disagree, or that these

7   additional people, who were dismissed -- I don't know how to

8   say the name well, Vahdatlamas, Morgan, Flanagan, Palmieri --

9   those people that were already dismissed, you put them back in

10  the amended complaint; they're going to make another motion.

11         And the idea that that's going to slow up us getting

12  to what I think is your aim here, which is to challenge that

13  they have barred you from the TVB, that's the claim that the

14  prospective injunctive relief, that's the claim that I think

15  you really brought the case about.

16         And let me just say two other things.  I understand

17  that you may have no love lost and he may have no love lost

18  for you, Mr. Smart, who was a guard at the TVB, but that

19  you've named two private people:  Tahir and Smart.  And

20  Tahir's conference order setting today's conference bounced

21  back as undeliverable, so I'm forgiving his failure to appear

22  today because our order never reached him.

23         But the idea that we're going to go on these side

24  tracks instead of going for the main thing, which I really

25  think your focus should be on why did they bar you from the

5

1  TVB.

2          MR. CAPOGROSSO:  If I may, I've explained this in my

3  complaint, Your Honor.  I've explained it and defendant Smart

4  is an integral part of this.

5          THE COURT:  Again, he's not a state actor, sir, and

6  that the case was not dismissed against him was because it

7  wasn't raised that he's not a state actor.  He works for a

8  private company that provides security work.  Section 1983

9  does not give you state law claims in and of itself.  You have

10  brought a claim saying he was an integral actor here.

11          He complained about you.  Perhaps he made your life

12  miserable, but you're looking at a man who his job, whether

13  you agree that he did his job, is not your job.  Your job was

14  to represent people at the TVB.  That's what you want to get

15  back to.  He doesn't want to be in this lawsuit.

16          MR. CAPOGROSSO:  Your Honor, he was an integral

17  part.  I understand --

18          THE COURT:  Do you understand --

19          MR. CAPOGROSSO:  I under -- I --

20          THE COURT:  -- that under Section 1983 --

21          MR. CAPOGROSSO:  -- I understand.  I --

22          THE COURT:  -- there must be state action?  And so

23  even though Judge Brodie did not -- dismissed his

24  counterclaims, but did not dismiss the case against him, at

25  the bottom of this case it is a civil rights action saying

6

1 that these individuals who work for the State took action

2 against you that violated your constitutional rights. That's

3 what this case is about.

4       That Mr. Smart may have been involved in that, I

5 don't doubt it, but that you're suing a security guard who's

6 not a state actor, he could not have barred you if his life

7 depended on it.

8       MR. CAPOGROSSO: All right. Your Honor, I need the

9 truth out of Mr. Smart and the only way to get the truth out

10 of Mr. Smart, who approached him on the morning of May 11th

11 and told him to approach me and provoked an incident, I need

12 the truth out of Mr. Smart. That's why he's attached to this

13 claim, number one.

14       Number two, a State pending claim attached to a

15 federal claim. He's an integral part of this. I complained

16 to his security company, PEC.

17       THE COURT: They're not here.

18       MR. CAPOGROSSO: I know, but I complained to them --

19       THE COURT: So let me just talk -- let me just

20 talk -- Mr. Smart, I will hear from you --

21       MR. SMART: Okay.

22       THE COURT: -- but not just yet. Please be

23 seated --

24       MR. SMART: Yes.

25       THE COURT: Mr. Capogrosso, look. I take your

7

1  complaint seriously.  You've represented people.  You're not
2  being let in.  That's what I would like to get us at.  You
3  bringing the amended complaint restoring all of the same
4  claims that Judge Brodie just dismissed is just going to lead
5  to a wheel.  They're going to bring another motion, it's going
6  to take more time, and that's where we're going to go.  So if
7  you will --

8          MR. CAPOGROSSO:  What are you asking me to do, Your
9  Honor, respectfully?

10         THE COURT:  Respectfully, I'm asking you to withdraw
11 any of the claims that have already been dismissed without
12 prejudice to you raising whatever you want to raise on appeal.
13 That doesn't count for Mr. Smart of Mr. Tahir.  I was going to
14 try to convince you that they are not the defendants that you
15 need in the case.  They may have testimony that you want to
16 get, but that doesn't necessarily mean they're defendants in
17 the case.  But, look --

18         MR. CAPOGROSSO:  Your Honor --

19         THE COURT:  -- I can't force anybody to do anything.

20         MR. CAPOGROSSO:  Well, we --

21         THE COURT:  I'm trying to tell you that right now
22 they've already written to Judge Brodie.  Right?  You saw they
23 already wrote to Judge Brodie.  They're going to make the
24 motion again.  They're saying it shouldn't take much time for
25 Judge Brodie.  Do you know that every judge in this court --

1  we are down five judges.  There has not been a new judge

2  appointed -- actually, one just was appointed, but we are down

3  one-third of our judges.

4          So Judge Brodie yesterday scheduled a trial for June

5  or July 2020, saying that it's not going to take her much

6  time.  Every motion goes in a queue.  Whether it's a hard or

7  easy motion, it goes in a queue.  So your bringing the same

8  claims that were just dismissed, I don't understand it.

9          MR. CAPOGROSSO:  I --

10          THE COURT:  I'm here to talk to you about it as one

11  person to another.  I understand that you want to get at why

12  did they bar you and how can we fix this.

13          MR. CAPOGROSSO:  Respectfully, Your Honor, the

14  reason I amended that complaint because it's -- you gave me

15  leave to amend it.  The Court gave me a leave --

16          THE COURT:  Judge Brodie gave you leave, but that --

17          MR. CAPOGROSSO:  -- to amend it.

18          THE COURT:  -- means to change what you've alleged

19  and you alleged the same thing.  You -- in fact, I've marked

20  it up, sir.  There were some parts of it where you took

21  verbatim what you said before and put in the same thing.

22          MR. CAPOGROSSO:  I --

23          THE COURT:  It's not --

24          MR. CAPOGROSSO:  I changed my complaint with respect

25  to the decision of Judge Brodie, which indicated there were

9

1  not sufficient facts to -- not sufficient facts to sustain my

2  claim against defendants Vahdat and Morgan.

3          THE COURT:  So can I just say, I'm reading from your

4  amended complaint --

5          MR. CAPOGROSSO:  Both of them.

6          THE COURT:  -- and this is what you said, "Vahdat

7  was" -- just because you called -- it's a her?

8          MR. CAPOGROSSO:  It's a lady, yes, Your Honor.

9          THE COURT:  Okay.  You call her Vahdat so I'll call

10 her Vahdat because I'm not good at pronouncing her last name

11 either.  This starts on page 11 of document 74.  You say, "At

12 all times she was in consultation with one or more of the

13 defendants concerning the issues, at all relevant times was

14 acting in her administrative capacity," that you spoke with

15 her in 2014 about the harassment from Smart, that she didn't

16 do anything.  As a result of that -- I'm skipping down.  I'm

17 not reading line by line.  You continued to suffer harassment.

18 Then following your ban you attempted to call and speak with

19 her and your letters told her that -- and that even though she

20 received the letters, she didn't do anything.  That's what you

21 say.

22         MR. CAPOGROSSO:  Respectfully, Your Honor, if I may.

23 I filed grievances with the inspector general's office

24 concerning defendant Vahdat and defendant Morgan with the

25 grievance committee.  I filed grievances.  I filed complaints

1   with the Appellate Division, Third Department, Commission for

2   Professional Standards.  I filed complaints with the Inspector

3   General's Office, with the DMV.  I got --

4           THE COURT:  Mr. Capogrosso, I'm not --

5           MR. CAPOGROSSO:  I got --

6           THE COURT:  -- trying to dispute any of that.

7           MR. CAPOGROSSO:  Well, what I'm saying --

8           THE COURT:  I'm trying to say, now you have a judge

9   paying attention to you --

10          MR. CAPOGROSSO:  But you're not holding these judges

11  accountable.  Vahdat --

12          THE COURT:  Wait, wait, wait, wait, wait.

13          MR. CAPOGROSSO:  You're not --

14          THE COURT:  You filed grievances.  You filed

15  requests for them to do X, Y or Z, investigate.  That's what

16  the Department of Investigation does.  That's what grievances

17  do.

18          Here you have filed a civil rights complaint, 42

19  U.S.C. Section 1983 says, every person acting under color of

20  state law who violates, who causes a violation of your

21  constitutional rights, you can bring a claim in court.  Those

22  allegations that I just read to you do not rise to the level

23  of a constitutional violation.  She ignored your complaints.

24  That's not a constitutional violation.

25          So if you want to, you can go the same path and

11

1   continue and they'll bring the motion.  And what I'm trying to

2   say to you, Mr. Capogrosso, you have my attention.

3           MR. CAPOGROSSO:  Yes, I'm sorry, Judge.  I'm sorry,

4   Judge.

5           THE COURT:  I wrote a long opinion.

6           MR. CAPOGROSSO:  Yes, you did, and so did Judge

7   Brodie.

8           THE COURT:  and I basically -- and Judge Brodie

9   agreed --

10          MR. CAPOGROSSO:  Yes, you did.

11          THE COURT:  -- think that they did not give you

12  every process regarding the injunction that you deserved.  So

13  if you want to get at that, we can move to that, but not if

14  you're going to continue with all the claims that have

15  previously been dismissed because if you're going to continue

16  with all those claims, I have to let them go through their

17  motion practice again.

18          This is -- look.  Mr. Capogrosso, you have so many

19  more skills than most of the people I deal with.  You came

20  early,  You saw.  I had two people who were biologists.

21  You're a lawyer.  I'm telling you that the conclusory

22  allegations you put in your amended complaint did not fix the

23  claims against those people and they have the right to move

24  again against your amended complaint and then I'll be seeing

25  you whenever that decision comes down.

12

1    MR. CAPOGROSSO:  Just two points, if I may, Judge,

2    just to -- once again, I respectfully -- Judge Brodie and

3    yourself gave me leave to amend, which is why I amended it.  I

4    amended it with respect to Vahdat and Morgan be --

5    THE COURT:  But that doesn't mean that when you

6    filed the amended complaint that they're not going to have the

7    option --

8    MR. CAPOGROSSO:  I understand.

9    THE COURT:  -- to move against it again, so they're

10   going to move against it again.

11   MR. CAPOGROSSO:  I'm in compliance with what the

12   Court allowed me to do.  Now --

13   THE COURT:  I'm not saying you're not in

14   compliance --

15   MR. CAPOGROSSO:  Okay.

16   THE COURT:  -- Mr. Capogrosso.

17   MR. CAPOGROSSO:  Okay.

18   THE COURT:  I am not the person that you need to

19   butt heads with.

20   MR. CAPOGROSSO:  I understand.

21   THE COURT:  Okay?

22   MR. CAPOGROSSO:  And the last point -- Your Honor,

23   if I could, the last point -- and I do understand your point

24   and I do understand the caseload that you bear.

25   THE COURT:  That's not why I'm saying this.

13

```
1            MR. CAPOGROSSO:  Well, that's --
2            THE COURT:  I'm saying because you have a choice to
3    make as a litigant.
4            MR. CAPOGROSSO:  I understand, and I will.
5            THE COURT:  If you put the same claims before the
6    Court that have already been dismissed, even though the Court
7    gave you the chance to amend them, I am telling you, you're
8    going to get the same result and they're entitled to make the
9    motion.
10            MR. CAPOGROSSO:  I understand.  Okay.
11            And just the last point, if I could.  You did grant
12    my -- well, Judge Brodie, and it was in your report and
13    recommendation did indicate that -- and this is the only point
14    I would -- the last point I would like to make to the Court
15    concerning this.
16            THE COURT:  I bet it's not the last, Mr. Capogrosso.
17            MR. CAPOGROSSO:  Well --
18            THE COURT:  I just met you today --
19            MR. CAPOGROSSO:  -- Your Honor, with respect, this
20    is my --
21            THE COURT:  -- but I bet it's not the last --
22            MR. CAPOGROSSO:  -- career.  I respectfully state --
23            THE COURT:  I am trying to get you to --
24            MR. CAPOGROSSO:  All right.
25            THE COURT:  -- focus on what you need
```

14

1          MR. CAPOGROSSO:  I understand.

2          THE COURT:  -- to get done here.

3          MR. CAPOGROSSO:  But if I could -- if I may, "The

4 Court denies without prejudice the motion to dismiss on

5 qualified immunity grounds" --

6          THE COURT:  Yes.

7          MR. CAPOGROSSO:  -- "with respect to defendant

8 Gelbstein."  He was an ALJ.

9          THE COURT:  Yeah.

10          MR. CAPOGROSSO:  Now, Defendant Vahdat was in a ALJ.

11 The ability to determine the extent of involvement of

12 defendant Vahdat in this matter can only be brought out to

13 this court -- that would be my last point to this Court --

14          THE COURT:  So can I tell you --

15          MR. CAPOGROSSO:  -- through discovery.

16          THE COURT:  -- how Section 1983 works?  There has to

17 be personal involvement and it can't be conclusory.  It can't

18 just be because Vahdat is another ALJ there and because she

19 complained in 2014 about things and she didn't do anything

20 about it, that she becomes a defendant.  You think she might

21 have information?  You could subpoena her and depose her.

22 That doesn't make her a defendant.

23          So you're arguing to me about my area of expertise.

24 I wouldn't pretend that I know anything about your area of

25 expertise.  But in my area of expertise, if you've gotten

15

1   something from a judge that says, this claim/that claim, this

2   claim/that claim, they go by the wayside, these are the claims

3   you can move ahead on.  This is your choice.

4           You were entitled to amend and the reason why Judge

5   Brodie gave you that chance to amend is, if this opinion --

6   the lightbulb went over your head and you said, "Oh, my God, I

7   forgot to tell them about what happened on May 5th, June 3rd.

8   Now I have to put all of that in because I forgot to tell them

9   about all of that."  So we gave you that chance and guess

10  what?  About Vahdat, you're coming back with the same

11  information.

12          MR. CAPOGROSSO:  I agree, but from a global

13  perspective, who's holding this court accountable?  Your

14  Honor, respectfully.

15          THE COURT:  Who's holding which court?

16          MR. CAPOGROSSO:  This TVB.

17          THE COURT:  Oh, please.

18          MR. CAPOGROSSO:  All right.

19          THE COURT:  I am talking to you --

20          MR. CAPOGROSSO:  Which is one of the reasons --

21          THE COURT:  I am talking about --

22          MR. CAPOGROSSO:  -- I'm before a criminal court

23  judge.

24          THE COURT:  -- trying to get at what happened here,

25  but if you want to go through motion practice, that is your

16

1  prerogative.  You're a grown person, you're an attorney.  You

2  filed an amended complaint that I'm telling you will not pass

3  muster on the claims that you have repled against the

4  previously dismissed people.

5           Let me also say, if you were careful,

6  Mr. Capogrosso, some of the claims Judge Brodie did not give

7  you leave to amend and you still threw those back in, so

8  you're like still trying to pursue claims that she did not

9  give you leave to amend.  So for all of those reasons, I'm in

10 this situation with you.  This is not how -- I would like to

11 get at the prospective injunctive relief.  I would like to

12 talk about why.  And three people would be left in the case.

13 Three, correct?

14           MR. CAPOGROSSO:  Well, I --

15           MR. SIEGMUND:  Three for the state defendants, yes,

16 Your Honor.  Yes.

17           THE COURT:  Yes, three for the state defendants and

18 then I'd talk to you separately about Smart and Tahir, but

19 three for the state defendants:  Gelbstein, Traschen and --

20           MR. SIEGMUND:  Calvo.

21           THE COURT:  -- Calvo.

22           MR. CAPOGROSSO:  And there's also PEC Security, Your

23 Honor, for I've received a for -- who has not appeared on this

24 matter.

25           THE COURT:  And what I want to say to you on that

17

1  is, sir, what do you think is going to happen with that?

2  Let's talk about that for a second.

3          MR. CAPOGROSSO:  Well, my motion for default --

4          THE COURT:  And get this, okay?

5          MR. CAPOGROSSO:  Yes, Judge.

6          THE COURT:  Let's say you get a default.

7          MR. CAPOGROSSO:  Yes.

8          THE COURT:  Then you have to move for a default

9  judgment and that's when the judge looks to see if you can

10  meet the elements of everything that you're pleading, whether

11  that would entitle you to a judgment, even when they're not

12  here.

13          MR. CAPOGROSSO:  And I would --

14          THE COURT:  This is a Section 1983 case.  It is a

15  case that requires there to be state action, a person acting

16  under color of state law.  And, again, you would have to show

17  that PEC Group, by having a contract to provide security

18  services at the TVB, was a state actor.  You think that's

19  going to work out?

20          MR. CAPOGROSSO:  Well, Your Honor, respectfully, can

21  I not attack state pending claims through a federal court

22  action?

23          THE COURT:  Again, if you're asking for a default

24  judgment on a pending claim, a supplementary claim -- these

25  are choices you're making.  I can't tell you how they're going

18

1   to come out, Mr. Capogrosso.  But again, I think -- again,

2   something bad happened to you.  You're trying to get at it and

3   you are striking out in all sorts of ways that may or may not

4   get at what your problem is.  So when I'm looking at your

5   amended complaint and I'm looking at what you're alleging

6   against PEC, point me to exactly where it is.  I think it's on

7   Page 23.

8           MR. CAPOGROSSO:  Nothing changed from my original

9   complaint concerning PEC, Your Honor.

10          THE COURT:  I understand.  I think it's on Page 23,

11  so that's where we are.  So what kind of claim do you think

12  this is?

13          MR. CAPOGROSSO:  It's a negligent -- negligence

14  supervision, negligence in hiring, Your Honor.

15          THE COURT:  Oh, you think you're going to win a big

16  case against PEC Security --

17          MR. CAPOGROSSO:  They --

18          THE COURT:  -- under -- where is the state law that

19  you've cited to me?  Where is it?

20          MR. CAPOGROSSO:  The law or the claim, Your Honor?

21          THE COURT:  Show me where the law is.  Where is the

22  law?  Is it under -- what portion of the law are you suing

23  under?  It's a tort?  Is that what you're telling me?

24          MR. CAPOGROSSO:  It's a tort, Your Honor, yes.

25          THE COURT:  Where is it?  In the state law, where is

19

1  the section of law that you want me to apply here?

2          MR. CAPOGROSSO:  It's negligence and hiring

3  negligence and supervision.

4          THE COURT:  And what are the elements of that claim,

5  Mr. Capogrosso?

6          MR. CAPOGROSSO:  They had a duty.  They had a duty

7  to supervise.  There was a standard of care and that standard

8  of care was not met.

9          THE COURT:  And we're talking about things that

10 happened in 2014 because that's what you're specifically

11 alleging --

12         MR. CAPOGROSSO:  Well --

13         THE COURT:  -- that you complained to Scott

14 Benish [ph.] in 2014 and they didn't take any action.  That's

15 what you think is going to win --

16         MR. CAPOGROSSO:  Well, Your Honor, respectfully --

17         THE COURT:  -- a federal lawsuit?

18         MR. CAPOGROSSO:  -- what is an attorney expected to

19 do in a situation which I was thrust into?  What is an att --

20         THE COURT:  Mr. Capogrosso, I'm not telling you what

21 to do, sir.  Please, do whatever you think is the right thing

22 to do.

23         I'm trying to point out to you, because this is what

24 I do for a living, that your complaint is taken seriously

25 here.  I would like to get at the things that I think are the

20

1   viable parts of the complaint.  You want to go -- move for a

2   default judgment against PEC and try to make out the state law

3   claim, knock yourself out, sir.  Maybe it will be referred to

4   me.  Maybe Judge Brodie will get to it a year from now.  I

5   have no idea.  But I am not worried about that piece of your

6   claim.  I am not.

7           I'm trying to get at the prospective injunctive

8   relief that Judge Brodie and I both believe there may be a

9   claim because you were taken out of the TVB and got no

10  process.  How's that?

11          MR. CAPOGROSSO:  Well, Judge, my claim goes beyond

12  prospective injunctive --

13          THE COURT:  Then, Mr. Capogrosso, let's just get the

14  motion scheduled.  Let them make their motion and you'll

15  file --

16          MR. CAPOGROSSO:  Well, Judge, what I'm hearing --

17          THE COURT:  -- your opposition to it.

18          MR. CAPOGROSSO:  -- for right now is that my amended

19  complaint is not going to hold water with you, so I'll --

20          THE COURT:  It's not with me, sir.

21          MR. CAPOGROSSO:  Yes.

22          THE COURT:  I am not your enemy here.

23          MR. CAPOGROSSO:  Yes.

24          THE COURT:  I didn't create any of this for you.

25  I'm trying to tell you that you're making choices and the

1  choices you make will have consequences for how this action

2  proceeds through the court.  That's what I'm trying to tell

3  you so that when you try to say that I should be recused

4  because I have it out against you, I have nothing against you.

5          I want you to understand my job is to give you

6  process.  You're a lawyer so you should understand the process

7  more than other people do and I'm trying to say, you are now

8  at a crossroad.  You want to keep the amended complaint as is,

9  then, fine.  They'll make their motion and Judge Brodie will

10  deal with the motion.  If you want to withdraw the claims that

11  have already been dismissed from the amended complaint and

12  knowing that I'm saying whatever you put in that's extra --

13  I'm sorry, I don't know exactly allegation against Vahdat --

14          MR. CAPOGROSSO:  Vahdat and Morgan are the only

15  claims I amended, the only factual that --

16          THE COURT:  And neither of them did anything for

17  you, sir.  And then you still put in the claims against the

18  other people that have already been dismissed that you weren't

19  given any leave to amend.

20          So can I just posit a thought?  Again, if you

21  weren't a lawyer this would be less onerous here, but you are

22  a lawyer.  So when you're word processing from your old

23  document and you don't delete those claims that have already

24  been dismissed without being given leave to amend, you're

25  creating your own situation here, sir.  That's what you did.

22

```
1   You gave me the same complaint.  You word processed it, didn't
2   take out one of the claims that Judge Brodie has already
3   dismissed and you expect to get a different result.
4          So, as I say, these are choices that people make.
5   I --
6          MR. CAPOGROSSO:  My amended complaint is withdrawn
7   Your Honor, respectfully.
8          THE COURT:  Is that what you would like to do?
9          MR. CAPOGROSSO:  That is what I would like to do,
10  but my claims stay -- stand as written and decided by Judge
11  Brodie in a decision and order, against --
12         THE COURT:  Well, again, wait, wait, wait, wait.
13  Calm down.  If you're going to get rid of the amended
14  complaint and withdraw it, then we can get to the prospective
15  injunctive relief, which is what I think you really want to
16  get at.
17         MR. CAPOGROSSO:  No.
18         THE COURT:  You don't?
19         MR. CAPOGROSSO:  No, I do want to get to the
20  prospective injunctive, but this case is more than that, Your
21  Honor.  I was put out of work.  Put out of work.  I had 850 or
22  950 clients that --
23         THE COURT:  And will have a chance to prove all
24  that, Mr. Capogrosso, and they'll have the chance to depose
25  you and get evidence from you, and you'll have a chance to get
```

1   evidence from them.

2           Now we get to move into discovery.  I just want to

3   make clear for the record, please.  I don't want you to say

4   that I forced you to do something.  I want you to say, what is

5   your decision here?

6           MR. CAPOGROSSO:  Well, do my claims stand against

7   defendant Smart and against defendant PEC?

8           THE COURT:  They have not been dismissed by the

9   Court.

10          MR. CAPOGROSSO:  They have not been dismissed.

11          THE COURT:  They have not been dismissed.

12          MR. CAPOGROSSO:  And do my claims stand against

13  defendant Tahir?

14          THE COURT:  It has not been dismissed.

15          MR. CAPOGROSSO:  And my claims stand against the

16  state defendants Gelbstein, Traschen, and Calvo?

17          THE COURT:  To the extent as Judge Brodie allowed

18  them to proceed.

19          MR. CAPOGROSSO:  As long as those claims against

20  those defendants are not dismissed, against defendant Smart,

21  against defendant PEC, against defendant Tahir, and against

22  the state defendants Traschen and Calvo and Gelbstein --

23          THE COURT:  Again, the claims, to the extent set

24  forth in Judge Brodie's order.  The claims were not entirely

25  kept in against them because you had a due process claim that

24

1  was dismissed.  So I want to be clear with you that Judge

2  Brodie's order gave you a chance to amend.  We just discussed

3  and you admitted that you word processed the same complaint.

4  You just added a couple of allegations against two of the

5  defendants, but you left in all the rest of it that had

6  already been dismissed, and that is why the defendants were

7  going to move again against the complaint.  And if your

8  decision is that you're voluntarily withdrawing the amended

9  complaint then we can move forward.

10          MR. CAPOGROSSO:  I will move forward, Your Honor.  I

11  will subpoena --

12          THE COURT:  No, I need to hear, "I voluntarily

13  withdraw" --

14          MR. CAPOGROSSO:  I --

15          THE COURT:  -- "the amended complaint."

16          MR. CAPOGROSSO:  I vol -- I'm sorry -- I voluntarily

17  withdraw the amended complaint --

18          THE COURT:  Okay.

19          MR. CAPOGROSSO:  -- and I'll stand on the decision

20  and order of Judge Brodie --

21          THE COURT:  That's fine.

22          MR. CAPOGROSSO:  -- as rendered on --

23          THE COURT:  That's fine.

24          MR. CAPOGROSSO:  Okay.

25          THE COURT:  So look.  Smart, Tahir, and PEC Group

25

1  have not yet answered, right?

2          MR. CAPOGROSSO:  No.

3          THE COURT:  Because they moved and their motion was

4  denied.  That was part of Judge Brodie's decision.

5          Now, again, Mr. Smart, I know you want to be heard.

6  I know you do.  You need to file an answer and there's a *pro*

7  *se* office downstairs that can give you instructions how to do

8  that, sir.  Okay?  And there's also -- we'll give you a flyer.

9  There's a clinic downstairs that you can make an appointment

10  with.  They could help you draw up an answer.  Okay?

11          I again say to you that I would urge you to

12  reconsider going against people who are not state actors, even

13  though they didn't raise this ground in their motion, that

14  under Title 42, U.S.C. Section 1983, if they're not state

15  actors they shouldn't be named as part of a Section 1983

16  lawsuit.  And your claim that you're suing them under state

17  law, again I'm looking at your amended complaint, I'm looking

18  at your original complaint, I don't know that you need any

19  element of any state law claim against them.  They're in.  I

20  didn't dismiss them.  Judge Brodie didn't dismiss them.

21  They're in.  I'm just trying to say, put all of your energy

22  towards what you really need to accomplish here.

23          MR. CAPOGROSSO:  Your Honor, my accomplishment --

24  what I'm trying to accomplish is damages, as well as

25  prospective injunctive relief.  I have been damaged

26

1  financially.  My reputation has been damaged.  Any court I try

2  to enter from this point going forward, I have to explain the

3  situation, and --

4          THE COURT:  I'm sorry, Mr. Smart, you already did

5  file an answer.  My law clerk tells me.

6          MR. CAPOGROSSO:  -- so --

7          MR. SMART:  Yeah, I did.

8          THE COURT:  So it's there already.

9          MR. SMART:  Yeah.

10         THE COURT:  I'm sorry, I was incorrect.

11         MR. SMART:  Yeah.

12         THE COURT:  You don't need --

13         MR. SMART:  Yeah, I did amended response --

14         THE COURT:  Answer.

15         MR. SMART:  Yeah, [indiscernible].

16         THE COURT:  You're fine.

17         MR. SMART:  Yeah.

18         THE COURT:  You're fine.

19         MR. CAPOGROSSO:  So this case is more about me going

20  back to to TVB, which I don't want to go back to.  It's more

21  about -- it's more than that, and I was trying to make it more

22  than that because this is a tribunal that has no

23  accountability, none.  None.

24         I can't go to the Inspector GENERAL's Office.  They

25  don't give you a reply.  I can't go to the Appellate Division

27

1  and Commission on Professional Standards.  They don't give you

2  a reply.  I can't file a grievance.  These judges are immune.

3  I can't go to the Commission of Judicial Conduct.  These

4  judges -- they have *carte blanche* to do what they like.

5          And I explained to you the situation is that I saw

6  and experienced over ten years of my career down there what

7  these judges are doing.  So I come to federal court hoping

8  that there's some type of judicial review of it.  This Court

9  has decided that that is not the parameters of my complaint.

10 I will accept that.  But I was trying to look at the bigger

11 picture of it, but I'll accept it, but I'm give -- want more

12 than just prospective injunctive relief.  I don't want to go

13 back to that tribunal.  I'm seeing what I'm dealing with and I

14 don't like it.  I don't like judges to tell me I don't get a

15 piece of the action or have [indiscernible] because I don't

16 know what they do for a living or I make a complaint I guess

17 personal course for a lawyer for ten years down there, and I

18 complained to the judge, and when I complained to the district

19 attorney and then she's removed, all of a sudden they said,

20 "Who are you, Don Quixote?"  Or when I go into the GE and I

21 see a drug [indiscernible] cases and pleading people guilty

22 before another charge.  I don't like it, or when I have a

23 conflict with another attorney who says, "I'm coming to

24 case -- defendant Gelbstein, I don't like it.  Or when I

25 complain about defendant Smart to Judge Gelbstein [ph.].  His

1 reply to me is -- and I respect that in his courtroom laughed

2 and giggled and tells me "a spade is a spade." Those are the

3 responses I am getting from that tribunal. I don't want to go

4 back. So this is more than that. This is about my career, my

5 reputation, my name, and it is about damages.

6      THE COURT: Yes, Mr. Smart?

7      MR. SMART: Your Honor, really [indiscernible]

8 because Mr. Capogrosso here 2015, points me in my chest,

9 actually point me in my chest. I now went to 6-0

10 [indiscernible] I put in 61, and then we're coming in with the

11 police. Unfortunately, [indiscernible] disappear for three

12 years. Unfortunately they took us up here. They took us up

13 here for three years. And that originally -- you know, you

14 guys [indiscernible] to this court against me, when he the one

15 that punched me in the chest. I never even touched him.

16      MR. CAPOGROSSO: Your Honor, that's not -- if we're

17 going to talk defenses --

18      THE COURT: Nobody interrupted you.

19      MR. CAPOGROSSO: Yes, Judge.

20      THE COURT: You will not interrupt him.

21      MR. SMART: This is what has happened. You know,

22 actually I -- I was shocked, you know. I didn't want to press

23 charges against you or going to court or whatever, but I give

24 the report to the police department to process. They give me

25 all the reports and we have all kind of people here stating

29

1  some orders say, for example, him that he did to them, and you

2  have 61 on him also.  I wasn't the only one.  Many people at

3  TVB, they have 61 on Mario here before me.

4          THE COURT:  So, Mr. Smart, thank you.

5          MR. CAPOGROSSO:  Well, I --

6          THE COURT:  Wait.  I haven't heard from somebody

7  here.

8          Mr. Siegmund, if the amended complaint is withdrawn

9  we're now going to move into discovery --

10         MR. SIEGMUND:  Yes, Your Honor.

11         THE COURT:  -- and so you're required with

12 Mr. Capogrosso to come up with a plan for discovery.

13         And, Mr. Capogrosso, discovery is you pay your own

14 way.  So you're going to have to get a court reporter, notice

15 depositions, everything within the deadlines that I set.  And

16 as far as you making your claim for damages, again, Judge

17 Brodie has left in what is left and I -- I'm just reminding

18 you that you should look at what is left.  We're going to have

19 to try to find a new address for Mr. Tahir because he did not

20 get the conference orders.  He is an attorney, too.  I again

21 don't know what he and Mr. Smart need to be in the case about,

22 but this is your case.  It's not my case.

23         Again, the prospective injunctive relief was what I

24 thought you really wanted.  I know that you also want 80

25 million dollars.

30

1      MR. CAPOGROSSO:  Twenty million, Your Honor.  Oh,
2  80, I'm sorry, yes.
3      THE COURT:  I'm not --
4      MR. CAPOGROSSO:  I'm sorry.  I'm sorry, Judge.
5      THE COURT:  Mr. Capogrosso --
6      MR. CAPOGROSSO:  It was cumulative, Judge.  It was
7  20 for each defendant.  I apologize.
8      THE COURT:  I'm just trying to say to you, you're in
9  front of a court that does read the papers --
10      MR. CAPOGROSSO:  I do also, Your Honor.
11      THE COURT:  -- that does try to allow people the
12  chance to speak.  I understand that this happened to you and I
13  understand that you believe that there's a lot of things wrong
14  with the TVB.
15      Again, I think people create their own path in life,
16  and the idea that you're keeping the case going against
17  Mr. Smart, it's not something I would recommend to you.  It
18  isn't.  I understand you think he needs to be a witness
19  because you complained about him, but what does that have to
20  do with how the judges dealt with it?  What does that have to
21  do with it?  You have yourself as the witness that you
22  complained about him.
23      MR. CAPOGROSSO:  I'm not releasing defendant Smart
24  and defendant -- defendant Smart -- if I can reply, just like
25  with a federal court judge, but there is a police report --

1          THE COURT:  Please sit.  Please sit.  I do not allow

2   anybody to call somebody else in the courtroom a liar.  Okay?

3   You want to start with that kind of behavior, you're going to

4   get this kind of result.  Do not.

5          MR. CAPOGROSSO:  Am I allowed --

6          THE COURT:  That's really what I want.  I want

7   everybody to start pointing fingers at each other --

8          MR. CAPOGROSSO:  I'm not pointing fing --

9          THE COURT:  -- and calling each other liars.  Do not

10  do it again.

11         MR. CAPOGROSSO:  All right.

12         THE COURT:  I will not accept it.

13         MR. CAPOGROSSO:  Well, the --

14         THE COURT:  Stop.

15         MR. CAPOGROSSO:  I won't call him a liar.

16         THE COURT:  Stop.  I'm going to schedule discovery

17  cutoff and send everybody on their way.

18         And as far as Tahir goes, you want to start making

19  motions for default and motions for default judgment, you

20  know, Mr. Capogrosso, again, I've given you my attention and

21  time and Judge Brodie will give you attention and time, and I

22  do think that you made a better choice to withdraw the amended

23  complaint because you were putting back in all the claims that

24  had already been dismissed.  And as you said on the record,

25  you only enhanced the claims against Prickett-Morgan and

1 Vahdat and all that you basically said against them was the

2 same, that you had written to them and that they didn't

3 respond.  That is not a constitutional violation.

4        This is a court that deals with constitutional

5 violations, so that's why when you were ex-communicated, so to

6 speak, from the TVB both Judge Brodie and I believe that there

7 had to be something more than one person telling you, you

8 can't come in.  That's can't be it.

9        So that's what I was asking you about, Mr. Siegmund.

10 Has there been any thought given to how this all happened?

11        MR. SEIGMUND:  Well --

12        THE COURT:  Taking Mr. Capogrosso's complaint as

13 true that the TVB basically said you're banned and sent him a

14 letter saying he's banned --

15        MR. CAPOGROSSO:  Well --

16        MR. SIEGMUND:  Your Honor, the only claim, other

17 than the prospective injunctive relief claim that has survived

18 discovery is their first amendment retaliation claim, so the

19 procedural due process claim was dismissed with prejudice.

20 So, you know, respectfully, what's going to be tried --

21        THE COURT:  But the first amendment retaliation

22 claim is that he was barred from proceeding in his line of

23 work.  I understand it's not old liberty or property interest

24 due process claim, but he's going to say he lost X amount of

25 money because he couldn't represent his clients.  It's the

1  same damages.

2          MR. SIEGMUND:  Right, right, but discovery won't

3  concern -- I mean, if there's a trial, it won't concern the

4  procedures by which he was banned.  It will concern whether he

5  can prove that he was banned in retaliation for complaining of

6  harassment by defendants Smart and Gelbstein.

7          THE COURT:  So you don't think there needs to be any

8  closer look at why or how they did this?  Why, I take it, is

9  they're going to have an answer for it.  How they did it,

10  there's no procedures for this.  This is not something that's

11  ever been --

12          MR. SIEGMUND:  Well, this is a very unique case that

13  TVB doesn't come across repeatedly belligerent and hostile

14  attorneys like Mr. Capogrosso.

15          MR. CAPOGROSSO:  I object to that.

16          THE COURT:  I know you do, but --

17          MR. SIEGMUND:  -- over the years.

18          THE COURT:  -- he didn't say you lied.  He's just

19  giving his characterization of what he --

20          MR. SIEGMUND:  This is my understanding from

21  conversations with my client and the papers that I've read,

22  many of which I submitted on the motion to dismiss.

23          So it's -- this isn't a situation where attorneys

24  are banned every year.  This is a very unique situation.

25  There isn't a policy that's written for this kind of a

1   situation and Mr. Capogrosso knew full well why he was banned.

2   We introduced into our motion papers letters from our office

3   which represented the DMV in his 2012 state court Article 78

4   proceeding.  And in two of those letters it was explained to

5   him that if he repeated any future -- any misconduct in the

6   future that would be grounds for permanently banning him from

7   TVB.  And he did repeat this --

8           MR. CAPOGROSSO:  That was --

9           MR. SIEGMUND:  -- misconduct in the future.  He

10  pushed Mr. Smart, the police were called.  And again, this is

11  all based on the record that I've reviewed, not my personal

12  knowledge.

13          So in terms of procedure, you know, there wasn't a

14  requirement that this be in writing and it was -- it was --

15  under his --

16          THE COURT:  Even though the due process claim has

17  been dismissed with prejudice, what I'm going to suggest to

18  you, Mr. Siegmund, so you can imagine, there may be many

19  people who come to the court -- this court who likewise may

20  have had issues.  We have people who are what we call

21  "frequent filers," who may bring multiple or serial claims,

22  sometimes against the same entity, sometimes against different

23  entities.

24          And I understand it's a little bit different because

25  you're a state, you're not the federal court system, but the

1  Circuit has made clear that there has to be notice and an

2  opportunity to address what happens, not if ever in the future

3  you do something we have the right to ban you forever.

4        I mean, I can tell you that curbing abuse is

5  something that the court has had to deal with because there

6  are people who are going to bring claims for reasons that the

7  court does not think are proper reasons.

8        This is a little bit different because Mr.

9  Capogrosso is saying he's having run-ins with somebody who's

10  employed by a company that the State does business with --

11  that's boiling it all down -- and nobody will take his part

12  and he is making complaints to people and nobody will hear him

13  out.  And maybe he had something in 2012, but these events

14  didn't happen in 2012.  We're talking three years later and

15  then he's out the door.

16        MR. SIEGMUND:  Right.  Well, the other point I'll

17  make about the procedures that were followed is, again, and he

18  was banned for the first time in 2011, and I under -- to my

19  knowledge he wasn't given any kind of a formal notice that

20  he's complaining about in this case, but that didn't stop him

21  from filing a timely Article 78 proceeding in state court

22  challenging that ban in 2012.  He could have done so in that

23  case and courts --

24        THE COURT:  Well, that was raised here.

25        MR. SIEGMUND:   Right, and federal courts have

36

1  consistently recognized that an Article 78 is an

2  appropriate --

3          THE COURT:  Except that in Article 78 --

4          MR. SIEGMUND:  -- procedure to remedy --

5          THE COURT:  -- Mr. Capogrosso will tell you, will

6  not give him money damages.

7          MR. SIEGMUND:  No, but he's not entitled to money

8  damages.  He could have --

9          MR. CAPOGROSSO:  Well, that's not true.

10          MR. SIEGMUND:  -- immediately commenced an

11  Article 78 if it was found that he should not have been

12  banned.  He could have immediately gone back to practice.

13  There's no basis for any money damages.

14          THE COURT:  Now Mr. Capogrosso.

15          MR. CAPOGROSSO:  Well, two points, if I may, Judge.

16  Judge Brodie's decision indicates the following, "The court

17  denies without prejudice the motion to dismiss on qualified

18  immunity grounds."  Now, counsel keeps indicating that the

19  only claim that has survived is the First Amendment

20  retaliation claim, but that's not true.  "The court denies

21  without prejudice the motion to dismiss on qualified immunity

22  grounds," which means --

23          THE COURT:  Yes, but -- wait, wait, wait, wait.  The

24  qualified --

25          MR. CAPOGROSSO:  Page 33.

1       THE COURT:  -- immunity ground was only regarding

2  Gelbstein and that was regarding the First Amendment

3  retaliation claim because you have to look at their papers to

4  see what they were moving to dismiss.  You have a claim

5  against three people going forward, at three state actors

6  going forward -- Traschen, Calvo, and Gelbstein -- and that is

7  about you basically in your complaint said that Calvo, I

8  believe, said to you or Gelbstein said, "I know that you

9  called me" -- I forget what the word was --

10      MR. CAPOGROSSO:  No, what I indicated to --

11      THE COURT:  -- incompetent.

12      MR. CAPOGROSSO:  No, incompetent.  I was making a

13  complaint to defendant Gelbstein and I wrote my letter of

14  March 20th, 2015.

15      THE COURT:  So that's what the First Amendment claim

16  goes to, so they said that he's not entitled to qualified

17  immunity on that claim.  It's not giving you more than that.

18  You have your First Amendment retaliation claim, you have your

19  claim that you're entitled to prospective injunctive relief to

20  enjoin the State from barring you from representing clients at

21  any TVB, not just at this TVB.  And that's what going forward,

22  sir.  That's what's in your complaint.

23      And I understand that you want 800 mill -- 80

24  million in compensation, and so you're going to be subject to

25  discovery and they'll be subject to discovery.  You'll be able

1   to depose the defendants and they'll be able to depose you,

2   and they'll also be able to ask you for proof that you were

3   making the amount that you were making and that you serviced

4   that many clients and all of that because that's what you've

5   brought up in this.

6        MR. CAPOGROSSO:  Well, part of those damages are

7   punitive, Your Honor, and --

8        THE COURT:  Well, again, sir, I'm telling you what

9   discovery will be like.

10       MR. CAPOGROSSO:  That's fine.  I --

11       THE COURT:  I don't know that in TVB cases that you

12  have Rules 26 through 37 of the Federal Rules of Civil

13  Procedure.  That's what discovery is.  And if you're noticing

14  somebody for a deposition you have to give them reasonable

15  notice in writing under Rule 30.  And if you're sending

16  requests to somebody for them to answer, they get 30 days from

17  the date they receive it to respond to it.

18       MR. CAPOGROSSO:  Your Honor --

19       THE COURT:  And you should keep copies.

20       And this goes for you, Mr. Smart as well.  Anything

21  that you send to him or anything that you send to anybody in

22  the case, the court, you need to keep a copy for yourself.

23       MR. CAPOGROSSO:  Your Honor, I will only be deposing

24  Mr. Smart.  I'm not wasting any money on this case deposing --

25  everyone else I will question at trial.

1    THE COURT:  You won't get to trial if that's all

2    you're going to do, I'm sorry to say.  You think that you have

3    enough evidence for the case to go to trial with your

4    allegations.  I'm sorry.  If that's your choice, the case will

5    go to summary judgment and with just Judge -- just Mr. Smart's

6    testimony, he does not have the power to bar you from

7    anything.

8         So, look, I'll analogize this for you, okay.  In

9    employment cases frequently somebody will say, "That never

10   happened," or "That was not how it went down."  And if the

11   employer fires you because they think somebody complained

12   about you, even if the complaint wasn't true, it's not

13   necessarily going to be a winable case if all you're going to

14   do is depose Mr. Smart.  Two percent, two percent of cases

15   filed in federal court go to trial.  Two percent.  That means

16   98 percent do not go to trial.  And if you're saying you're

17   going to conduct one deposition and that's it, well --

18        MR. CAPOGROSSO:  You can just -- Your Honor, you're

19   going to dismiss my case if I fail to hold depositions of all

20   the defendants?

21        THE COURT:  No, no, no, that's not what I'm saying.

22   You're misunderstanding me.

23        MR. CAPOGROSSO:  Yes, I am.

24        THE COURT:  I'm saying, at the motion to dismiss

25   level, okay, all you have to have is enough to satisfy notice

1  pleading.  The level of pleading is not so high.  At summary

2  judgment, you have to show your proof.  It's where you put

3  down your cards --

4          MR. CAPOGROSSO:  I understand that.

5          THE COURT:  -- and you say, "This is the evidence I

6  have that this violated my constitutional rights."

7          Let's assume you're right.  Let's assume that there

8  was no assault and Mr. Smart had it out for you and he made it

9  all up and let's assume that they bought it, hook, line, and

10 sinker.  That establishes a violation of your constitutional

11 rights?  I don't get how.

12         You're an attorney, sir.  You're going to be held to

13 the standards of attorneys.  There will be no liberal

14 construction of your pleadings.  If your whole focus here is

15 to show that Mr. Smart had it out for you --

16         MR. CAPOGROSSO:  No, it's not, Judge.

17         THE COURT:  -- then I can't imagine how you're going

18 to prove --

19         MR. CAPOGROSSO:  No, my case is going --

20         THE COURT:  -- a constitutional violation.

21         MR. CAPOGROSSO:  -- to be this, Judge, that somebody

22 approached him prior to May 11th and was defending Gelbstein

23 in the presence of defendant Calvo and defendant Traschen.

24 And I would submit to this Court defendant Vahdat, and was

25 told to approach me, get within my face, within two inches of

41

1  my face, and I put my hand up.  And there's a police report

2  that says I pushed my -- put my hand up and it wasn't a punch,

3  and provoked this, and that defendant Gelbstein wanted me out

4  because of this letter that I wrote to defendant Morgan --

5           THE COURT:  You're going to have to prove that.

6           MR. CAPOGROSSO:  Well, those --

7           THE COURT:  You're going to have to prove that.

8           MR. CAPOGROSSO:  Those are --

9           THE COURT:  That's what you have to prove and if you

10  think you could prove it by one deposition, God bless you.

11  You're better than any attorney I've ever seen in my life.

12  Mr. Smart, you don't need to --

13           MR. SMART:  Okay.  All right.

14           THE COURT:  -- these, okay?  You don't.

15           MR. SMART:  All right.

16           THE COURT:  It will just prolong this, okay?

17           MR. SMART:  Okay.

18           THE COURT:  I'm going to set deadlines.  I'm telling

19  you, if he contacts you to depose you, the State would be

20  there as well, correct?

21           MR. SIEGMUND:  Yes.

22           THE COURT:  But the State doesn't represent you.

23  Your employer is nowhere to be seen.

24           MR. SMART:  No, they went out of business.

25           THE COURT:  That's possible.

42

```
 1          MR. SMART:  Yeah.

 2          THE COURT:  So he'll get a default judgment if he

 3   gets a judgment against somebody and he'll try to find them.

 4   That's not my issue, that's his issue.  If he sends you a

 5   notice of deposition, if the date he puts is not a good date,

 6   you need to contact him and arrange a date.  It cannot be at

 7   your home.  It must be at a law office.  If you want to make

 8   arrangements, I'm sure the State would give you a conference

 9   room but they won't pay for the court reporter.

10          MR. SIEGMUND:  We would actually prefer to have

11   depositions held in the courthouse due to safety concerns,

12   Your Honor.

13          THE COURT:  Well, if you want to make those

14   arrangements you can.  I'll provide for a room.  You just have

15   to give me the dates that you're looking for the deposition

16   and I'll make sure there's a room at the courthouse --

17          MR. SIEGMUND:  Thank you, Your Honor.

18          THE COURT:  -- so that you could call security if

19   you need to.

20          So again, Mr. Capogrosso, I didn't create this

21   situation.  I understand it's eating you up.  I don't have a

22   quick solution here.  I think that you made a good decision by

23   withdrawing the amended complaint so we could get to

24   discovery.  How long do you think you need to conduct

25   discovery, sir?
```

43

```
 1              MR. CAPOGROSSO:  Six months.

 2              THE COURT:  I usually give like between three and

 3    five months.  You want six months, I'll give you six months.

 4              MR. CAPOGROSSO:  I'll take six months.

 5              THE COURT:  Six months.  Does that sound okay with

 6    you, defendants' counsel?

 7              MR. SIEGMUND:  Sure, but I think probably the first

 8    thing to schedule is we still have to answer the --

 9              THE COURT:  Initial disclosures.

10              MR. SIEGMUND:  -- I guess the original complaint.

11    And just in terms of the immediate future, my last day in the

12    office will actually be next week.  The case will have to be

13    assigned to another Assistant Attorney General.  I'll help in

14    preparing the answer, but we'd like 30 days if possible to

15    answer the complaint.

16              THE COURT:  I'm not giving you 30 days to answer.

17              MR. SIEGMUND:  Twenty days?

18              THE COURT:  Again, because they were prepared to

19    make the motion and not to answer the original complaint, but

20    the answer is the most useless of all documents in federal

21    litigation.  When are you leaving?  I want it filed before you

22    leave.

23              MR. SIEGMUND:  Oh.  Well, okay, there is a review

24    process in my office that does take some time, so it's not

25    just --
```

44

1          THE COURT:  Yes, but if you were given the summons
2   today, you'd have 21 days.
3          MR. SIEGMUND:  Right, so my last day is less than 21
4   days.
5          THE COURT:  So what is it that you're asking for?
6          MR. SIEGMUND:  Well --
7          THE COURT:  What date are you asking to file the
8   answer to the amended complaint?
9          MR. SIEGMUND:  Twenty days from today or --
10         THE COURT:  You didn't file an answer to the
11  original complaint because you moved.
12         MR. SIEGMUND:  We moved to dismiss in its entirety.
13         THE COURT:  So what date are you asking for?
14         MR. SIEGMUND:  Well, 20 days from today would be
15  the -- December 4th.
16         THE COURT:  December 4th it is.
17         MR. SIEGMUND:  Thank you, Your Honor.
18         THE COURT:  So Mr. Tahir and Mr. Smart have already
19  answered the original complaint.  The State defendants will
20  answer by 12/4.  How about initial disclosures by the State
21  defendants?  Can they be served at the same time?  Initial
22  disclosures are just identifying who has information --
23         MR. SIEGMUND:  I think that should be fine, yeah.
24         THE COURT:  -- whether there's insurance, so initial
25  disclosures as well.

45

1          MR. SIEGMUND:  Right, for all parties to --

2          THE COURT:  Yes.

3          MR. SIEGMUND:  -- serve initial disclosures?  Okay.

4          THE COURT:  I'm going to forgive Mr. Smart and

5  Mr. Tahir's initial disclosure but, Mr. Capogrosso, by 12/4

6  you need to serve your initial disclosures --

7          MR. CAPOGROSSO:  By 12 --

8          THE COURT:  -- under Rule 26.

9          MR. CAPOGROSSO:  By 12/4?

10          THE COURT:  By 12/4.  Discovery is between the

11  parties.  It does not get filed with the Court.  You must keep

12  copies of any discovery.  If you're going to notice

13  Mr. Smart's deposition, you have to give notice not only to

14  Mr. Smart, but to whoever replaces Mr. Siegmund in the case.

15  Mr. Siegmund has said that they'd like the depositions to be

16  held at the courthouse.  That can be arranged.  I need dates.

17  It can't just be, "I want to hold a deposition" and not have

18  dates.  Okay?

19          Mr. Capogrosso, I'm giving you the six months that

20  you've asked for.  That puts us to May.  So today is

21  May 14th [*sic*]; by May 15th, 5/15/19 -- '20, sorry, 5/15/20

22  complete all discovery.  Any premotion conference requests

23  within two weeks puts us to -- so again, after discovery the

24  likelihood is if we can't settle the case before then that

25  they'll move for summary judgment.  Summary judgment is

46

1  governed by Rule 56.  It's quite onerous.  There are Local

2  Rules 56.1 that require state and material facts with

3  supporting record cites, so -- and put this down for your --

4  the person after you.

5          Even though he's an attorney and even though the

6  Circuit will treat him as an attorney, I would advise to give

7  Local Rule 56.2 notice.  That's for *pro se* litigants.  That

8  way you've got the belt and suspenders because even though

9  they -- the Circuit treats attorneys representing themselves

10  as attorneys, not as *pro se* litigants, the Local Rule does not

11  say, "except for attorneys."  It says, "any motion against a

12  *pro se* litigant," so make sure that they give the 56.2 notice.

13          MR. SIEGMUND:  I'll make a note of that, Your Honor.

14          THE COURT:  And the pre-motion conference request

15  will be due on June 5th, so by 6/5/20 any pre-motion

16  conference request.

17          Mr. Capogrosso, did you get the manual when you

18  filed the case here?  I hear it's available online.

19          MR. CAPOGROSSO:  No, I did not.

20          THE COURT:  There's a manual that's available in the

21  clerk's office if you want to pay for the manual.  If you

22  don't, you can look it up online.  It's on the website.  Okay?

23          MR. CAPOGROSSO:  Yes.

24          THE COURT:  Do you have any other questions?

25          MR. CAPOGROSSO:  Well, just concerning your orders,

47

1   are you ordering at this point that in order to survive

2   summary judgment I'm going to have to have depositions of all

3   the parties?

4           THE COURT:  No, that's not an order at all, sir.

5           MR. CAPOGROSSO:  Well, that's what --

6           THE COURT:  I was talking with you about your claim.

7           MR. CAPOGROSSO:  I understand.

8           THE COURT:  I was trying to give you the benefit of

9   my experience in this court.  Okay?

10          MR. CAPOGROSSO:  Well, can I not do that through

11  interrogatories, Your Honor, which I've normally done?

12          THE COURT:  Sir, I am not here to tell you how to

13  litigate your case.

14          MR. CAPOGROSSO:  I don't expect that.

15          THE COURT:  I am trying to make a point to you that,

16  again -- you know, I'm sorry.  I didn't ask you the most

17  important question.  What is it that you want to accomplish?

18          MR. CAPOGROSSO:  I want prospective injunctive

19  relief.  I want a decision as to why I was removed.  I want

20  damages for the damage to my reputation and for the clients

21  that have been lost and I want to shed light and clear my name

22  as to why I was removed.  I was improperly removed.

23          And it will be my contention at court, if I ever get

24  to trial on this case before a jury, which I would like on

25  this case and I demanded it on it, to prove that defendant

1  Gelbstein put defendant Smart up to it, to approach me on the

2  morning of May 11th, to provoke an incident where I put my

3  hand up, and there was a police report to that effect, that he

4  took a front back like this, and that there's no evidence on

5  it because they destroyed it, and that they had me removed and

6  I was set up.  And that's what I'm going to prove to this

7  Court and to that jury, if I ever get the opportunity.

8         THE COURT:  Okay.  So by December 4th the State

9  defendants will answer.  Both plaintiff and the State

10 defendants will exchange initial disclosures.  I'm setting the

11 deadline to complete all discovery May 15th, 2020, and the

12 deadline for any pre-motion conference request is June 5th.

13        I've alerted everybody that they should speak to

14 each other about dates for depositions.  If you want help to

15 schedule it at the courthouse we need a date.  That might save

16 you money, although you still have to get a court reporter for

17 any deposition you want to take.  And if the State defendants

18 are going to insist on the same, likewise, you have to notify

19 everybody else, try to come up with dates, and then contact my

20 chambers so I could try to make arrangements.

21        Yes, Mr. Smart?

22        MR. SMART:  The police report does state that Mario

23 actually punched me in my chest.

24        MR. CAPOGROSSO:  It does not.

25        MR. SMART:  Yeah, he said I didn't punch him with

49

1  fist -- fist -- that I punched him with open arm.

2          THE COURT:  Mr. Smart, this case is about many

3  different things.  I understand that you have your version of

4  events and Mr. Capogrosso has his version of the events.  I

5  appreciate that this has caused difficulty for you.  I will

6  have my law clerk give you the flier so you can know what

7  resources are available, but today is not the trial and I am

8  not taking any evidence today.

9          MR. SMART:  Okay.

10          THE COURT:  Okay?

11          MR. SMART:  Thank you.

12          MR. CAPOGROSSO:  May I move for a -- may I make a

13  motion for prospective injunctive relief prior to discovery or

14  like --

15          THE COURT:  You mean can you make a preliminary

16  injunction motion?

17          MR. CAPOGROSSO:  Yes.

18          THE COURT:  Please look at Rule 65 and follow that

19  and you would have to make any request following the Rules.

20  So again, sir, the Court is not going to try to tell you --

21          MR. CAPOGROSSO:  I understand.  Well --

22          THE COURT:  -- in -- no, you can't make an oral

23  motion.

24          MR. CAPOGROSSO:  No.

25          THE COURT:  There is no such thing as an oral

50

1  motion.

2           MR. CAPOGROSSO:  Well, I'm not -- I'm asking, the

3  Court decision indicated that I was not granted that, so I

4  don't know if the Court was not allowing me to make such a

5  motion.

6           THE COURT:  Sir, you have to make a showing and if

7  you can't have the evidence to support it, and at this point

8  in time, again, I'm telling you to try to focus on building

9  your case so that you can -- I wasn't the one that asked for

10 six months.  You asked for six months.  Build your case --

11          MR. CAPOGROSSO:  I will.

12          THE COURT:  -- in that six months.

13          MR. CAPOGROSSO:  And may we hold all depositions on

14 the same date?

15          THE COURT:  No.

16          MR. CAPOGROSSO:  I cannot do that?

17          THE COURT:  Depositions are seven hours and you get

18 seven hours to question somebody under oath and there is no

19 way that they're going to agree to hold your deposition on the

20 same day as Gelbstein or whatever, Traschen or --

21          MR. SIEGMUND:  That's correct, Your Honor.

22          THE COURT:  -- they're not going to agree.

23          MR. CAPOGROSSO:  No, can I depose all State's

24 defendants and defendant Smart on the same day?  I'm not going

25 to need seven hours.

1    THE COURT:  Again, sir, you could notice them for

2 the same day, but if you weren't able to reach the questions

3 for all of them, then you have already spent your hand.  You

4 can't call everybody on the same day and then not complete

5 their depositions on the same day.

6    MR. CAPOGROSSO:  I'll complete their depositions in

7 one day.

8    THE COURT:  Again, if you intend to do shorter than

9 seven hours of deposition and you just want to hire the court

10 reporter for one day, there's no rule that says you can't call

11 them.  But I will tell you, you must be Oliver Wendell Holmes

12 because I would never call four people.  I would never call

13 two people in one day.  But that's your own prerogative, okay?

14    MR. CAPOGROSSO:  Yes, it is.

15    THE COURT:  Anything else today, sir?

16    MR. CAPOGROSSO:  Yeah, last question.  This case is

17 still set down for a jury trial, Your Honor?

18    THE COURT:  You made a jury demand.  I've told you

19 that two percent of cases go to jury trial, but, yes, your

20 jury demand is on record.  Anything else, sir?

21    MR. CAPOGROSSO:  No.

22    THE COURT:  Anything on behalf of the State

23 defendants?

24    MR. SIEGMUND:  No, thank you, Your Honor.

25    THE COURT:  Anything else, Mr. Smart?

52

1          MS. SMART:  No.

2          THE COURT:  We're going to give you a flier in case

3   you want to make an appointment --

4          MR. SMART:  Yeah, I have one.

5          THE COURT:  Oh, you have it already?

6          MR. SMART:  Yes, yeah.

7          THE COURT:  Okay, very good.  So I have set the

8   deadlines.  I will send out an order.  Mr. Capogrosso has

9   withdrawn the amended complaints, so we're moving on the

10  original complaint and Judge Brodie's order, so Judge Brodie's

11  order has limited those claims but we're moving forward

12  through discovery.  I've set the deadlines.  And with that, I

13  wish everybody a happy Thanksgiving.  This matter is

14  adjourned.

15         MR. SIEGMUND:  Thank you, Your Honor.

16  (Proceedings concluded at 1:08 p.m.)

17                        *  *  *  *  *

18

19

20

21

22

23

24

25

53

1          I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5

6    _____

7          Ruth Ann Hager, C.E.T.**D-641

8    Dated:  November 20, 2019

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25