```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK

-----------------------------X Docket#
CAPOGROSSO,                    : 18-cv-02710-EK-LB
              Plaintiff,       :
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
                               :
                               :
GELBSTEIN, et al.,             : May 5, 2020
              Defendants       : 11:01 AM
-----------------------------X
```

       TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
              BEFORE THE HONORABLE LOIS BLOOM
              UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff:**        **Mario H. Capogrosso, pro se**
                              21 Sheldrake Place
                              New Rochelle, NY 10804


**For the Defendants:**       **James M. Thompson, Esq.**
                              Office of the New York State
                              Attorney General
                              28 Liberty Street
                              New York, NY 10005


**Transcription Service:**    **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Civil Cause for Telephone Status
2   Conference, docket number 18-cv-2710, Capogrosso v.
3   Gelbstein, et al.
4          Will the parties please state your names for
5   the record.
6          MR. CAPOGROSSO:  Mario Capogrosso.
7          MR. THOMPSON:  And James Thompson from the
8   Office of the New York State Attorney General for the
9   state defendants, Ida Traschen, Danielle Calvo, Alan
10  Gelbstein, in their individual capacities, and DMV
11  Commissioner Mark Schroeder in his official capacity.
12         THE CLERK:  The Honorable Lois Bloom presiding.
13         THE COURT:  Good morning, Mr. Capogrosso, Mr.
14  Thompson, and I believe we also have an AG, Mr. Arias
15  (ph.), on the line.  Mr. Arias are you there?
16         MR. ARIAS:  Yes, your Honor.
17         THE COURT:  Very good.
18         MR. ARIAS:  Excuse me, Mr. Arias, also for the
19  State defendants.
20         THE COURT:  Very good.  So this is a status
21  conference in plaintiff's civil rights action, and as you
22  all know, there was a report and recommendation back in
23  September.  Judge Brodie adopted the report and
24  recommendation, and there was an amended complaint filed
25  in October of 2019, which was voluntarily withdrawn

3

Proceedings

during a November 14th court conference.

And at that time I ordered the parties to complete all discovery by May 15th, and to file any pre-motion conference requests by June 5th.

I held the last conference in this matter on December 2nd, and since that time, the case was reassigned to the Honorable Eric Komitee, who is a new district judge, in the Eastern District of New York, and the parties were scheduled to conduct depositions at the Brooklyn courthouse at the end of April.  However, due to the public health crisis posed by COVID-19, I stayed all deadlines, canceled the depositions, and ordered the parties to file a status letter proposing dates and times, for a telephone conference, which they did, which was ECF 125 on the docket.

On March 20th, plaintiff filed a motion for sanctions, and that is ECF number 120, and the state's defendant's counsel did respond to that motion, that's ECF 121, and then Mr. Capogrosso did file a reply which is ECF 123.

And I scheduled today's conference to discuss these filings, and to reset the discovery and pre-motion conference request deadlines.

So Mr. Capogrosso, it's your motion.  I'd like to give you three minutes, to put on the record whatever

4

Proceedings

1    you would like to say.  So, thank you.

2              MR. CAPOGROSSO:  Well, your Honor, I also filed

3    a letter, a status letter dated April 30th --

4              THE COURT:  Yes, I saw that as well.

5              MR. CAPOGROSSO:  -- that I sent to your office,

6    and I --

7              THE COURT:  I saw that.

8              MR. CAPOGROSSO:  -- called your pro -- okay,

9    great.  Thank you.  Because I did call your pro se

10   office, they said it was not received, that it was --

11   that it was not received, and I'm -- thank you, that it

12   was received, and hopefully you had a chance to read it.

13             THE COURT:  Which letter are you talking about,

14   sir, because I have it -- so it's not document 120 and

15   it's not document 123?  Which document was it?

16             MR. CAPOGROSSO:  I --

17             THE COURT:  Let me make sure that I know what

18   you're --

19             MR. CAPOGROSSO:  -- I filed --

20             THE COURT:  -- talking about.  Go ahead.

21             MR. CAPOGROSSO:  It's dated April 30th, 2020 --

22   2020.  It was filed as a status letter in response to

23   your order to me, docket 118.  As I've indicated to this

24   Court, I have given Attorney Thompson my email -- my --

25   not my email address, it was never given to him, I gave

5

Proceedings

1  him my contact information.  I gave you -- him my contact

2  information as my phone number, and as my mailing

3  address.  Now I never gave him my email address, to my

4  knowledge, and I went through all the pleadings, and all

5  the -- and everything -- all the pleadings in this case.

6  My email address was never given to him, to my

7  recollection.  Now I might be mistaken in saying this but

8  I don't recall giving the Attorney General my email

9  address as contact information.

10         Now Attorney Thompson is indicating to me that

11  he refuses to speak to me on the phone, either by text --

12  no, well on the phone.  He refuses to -- to speak to me.

13  He has the option to either text me or call me.  He

14  continually seeks to email me, Judge.

15         Now by doing so, he seeks to prejudice my case,

16  which is very, very important to me because he has used

17  these emails to prejudice my case against me and if I

18  ever get to trial in this case, which hopefully I do,

19  against a potential jury.  So I do not walk to talk to

20  Attorney Thompson by email.  He was given my contact

21  information in my complaint.  He refuses to use it, one.

22         Number two, you ordered that I not be served by

23  electronic service.  You ordered that.  I'm the man who

24  lives by orders.  You give me an order, I obey it.  I

25  don't try to circumvent it.

6

Proceedings

1    Attorney Thompson got upset because I told him
2  he lied.  Well, he did lie to this court.  He lies to me.
3  I refused to -- to -- in my -- when the Attorney General
4  first asked for an extension of time to file my answer --
5  for them to file an answer, I denied that.  I denied
6  that.  I said no.  I was going to give him no
7  professional courtesies.  I've already explained my
8  reasons why.
9    When he called me a second time, I've (sic)
10 already ruled that you would not give an extension of
11 time to file their answer.  You made a ruling on that.
12 He asked me to circumvent that ruling.  Now he made a
13 phone call to me, made a phone call, stating he wanted an
14 extension of time to file his discovery with respect to
15 initial 26(a) discovery demand.  I consented to that.
16 Then I thought to myself, I says you want an extension of
17 time to file the answer, now you were adamant about your
18 ruling.  I call him back, and he says yes.
19    I'm saying to him at this point, now he's
20 misrepresenting facts to this court.  After that, he
21 refused -- he refused to speak to me on the phone.  It's
22 fine.  You don't have to speak to me.  You can text me,
23 but I'm not going to engage in an email correspondence
24 with this attorney, I am not.  It's going to prejudice my
25 case, and I don't believe I have to.

Transcriptions Plus II, Inc.

7

Proceedings

1          Number two, he says he refused to email -- to
2    mail me his -- the filings in this court by U.S. Postal
3    Mail, which you ordered. You ordered that, that I not be
4    allowed -- I don't have to submit to electronic service.
5    You ordered it. He states he's sheltered in place, and
6    he's not going to mail me anything.

7          I've mailed everything to this attorney,
8    everything. I go down to the grocery store. I buy
9    stamps. I go to a mailbox. I put it in the mailbox, so
10   nobody is standing around. I don't see how you get in --
11   you're subjecting yourself to COVID-19 at that point.
12   I've mailed everything, as I was ordered to do, and you
13   ordered no electronic service, and he disobeyed that. He
14   acts in defiance of it. He stands above your court.

15          Now, most importantly, Defendant Smart has to
16   be served on this case, he does. I have an obligation to
17   serve him. Attorney Thompson has an attorney to serve
18   him. Defendant Smart, there's no email address. So
19   how's Attorney Thompson going to serve Defendant Smart?
20   I've mailed everything to Defendant Smart. I don't know
21   if he's getting it, but -- I don't know if he's getting
22   it, because he uses the DMV as his mailing address, but
23   I've mailed everything to him. That is the basis -- the
24   basis for my letter of seeking sanctions, and a direct --
25   and I'm seeking a directive from your court as to how I

8

                              Proceedings

1   am to proceed.  You give me an order, I'm going to obey

2   it.  I've obeyed every order you have given me, your

3   Honor, every order.  I've not gone to the DMV.  I have

4   not -- Judge Brodie told me not to speak Defendant Smart

5   via voicemail, or trying to call him.  I have to send all

6   my -- all my correspondence to the DMV.  I've obeyed

7   every order you have given me.

8            There's -- Attorney Thompson did not motion to

9   your court.  Your last order was that I receive no

10  electronic service.  Now he disobeyed that order, and he

11  should be sanctioned because I did have to file a letter

12  of opposition, I did have to file a reply.  It did cost

13  me time.  It did cost me money.  I had to make two trips

14  down to the -- your courthouse to file it.  So do I seek

15  sanctions?  Yes.  That's what I want to say about the

16  letter motion, Judge.

17           THE COURT:  Mr. Capogrosso, I want to be sure

18  that I'm understanding.  There's something that you sent

19  since the last two letters that I referenced, because I

20  had told you I had gotten something.  I thought you were

21  referring to -- you have a March 26th letter that's

22  addressed to both Judges Komitee and myself, and then you

23  have a March 20th letter.  Was there something else?

24           MR. CAPOGROSSO:  Yes.  Yes, your Honor.  Yes, I

25  filed it April 30th.  It was stamped April 31st by your

9

Proceedings

1    night -- your night representative, your night security

2    guard, and I don't --

3            MR. THOMPSON:  Your Honor, we have not received

4    a copy of that.

5            THE COURT:  And I have not gotten that either.

6            MR. CAPOGROSSO:  I mailed it.

7            THE COURT:  I haven't gotten that either, sir.

8    So do you want to put on the record what's in there, so

9    that we're all up to speed?

10           MR. CAPOGROSSO:  Sure.  Would you like me to

11   read it to you?  I mailed it to Attorney Thompson, and I

12   mailed it to Defendant Smart, I mailed it to both.  I

13   have affidavits of service on both, but I will read it to

14   you, if you --

15           THE COURT:  Mr. Capogrosso, I am not doubting

16   that.  I'm just saying that we haven't received it, and

17   if it's -- as long as the other letters that you've

18   written, I'd prefer that you boil it down, sir --

19           MR. CAPOGROSSO:  I will.

20           THE COURT:  -- rather than reading it all.

21   Thank you.

22           MR. CAPOGROSSO:  I will, Judge.  Well, Judge, I

23   actually -- because I called your pro se office last

24   night -- yesterday.  I asked them if they received it.

25   They told me it was -- and I have a stamped copy that was

10

Proceedings

1    stamped April --

2              THE COURT:  I'm not doubting that.  I'm not

3    doubting that you did, Mr. Capogrosso.

4              MR. CAPOGROSSO:  All right.

5              THE COURT:  I am saying that I misspoke --

6              MR. CAPOGROSSO:  All right.

7              THE COURT:  -- because I thought you were

8    referring to these two letters that I have indicated have

9    been filed documents 120, and 123.  I do not have a

10   letter that's dated April 31st.  I'm not doubting that

11   you did bring it down, but I don't have it.

12             MR. CAPOGROSSO:  Oh.

13             THE COURT:  So if you want to boil it down for

14   me, that would be great.

15             MR. CAPOGROSSO:  I will, Judge, but it was also

16   -- I also re-delivered it yesterday.  I went down last

17   night, just so you're aware of all the facts.  I put it

18   in the -- your night drop box last night at about 8:00,

19   and I have a stamped copy of that.

20             THE COURT:  Thank you.

21             MR. CAPOGROSSO:  So it should be in your drop

22   box this morning, but I will read it to you quickly, and

23   I will summarize.

24             THE COURT:  Okay.

25             MR. CAPOGROSSO:  And I have a cover letter

11

Proceedings

1  states because you --

2          THE COURT:  Please don't read it to me.

3          MR. CAPOGROSSO:  -- if you would like --

4          THE COURT:  Please just summarize.  Thank you,

5  sir.

6          MR. CAPOGROSSO:  I will.  All right.  So the

7  cover letters, "Please see the attached report."  The

8  attached report indicates that it was date stamped April

9  30th, 2020.  That I had a conversation with your pro se

10  office clerk on May 4th, 2020.  He confirmed -- and he

11  confirms that it was never docketed by your clerk, my

12  attached letter of April 30th.  It's a letter to Judge

13  Komitee and yourself, your Honor.

14          It states, In compliance with your status

15  letter request, that I serve a status report.  I indicate

16  that in compliance with your order, that I am unemployed,

17  sheltering in place.  I can be present for any telephone

18  conference at any date, time or place.  And I ask that

19  you please look at my motion, with respect to defendant's

20  Attorney James Thompson's position, and request that you

21  re-look at my request for relief as dated in my letters

22  of March 20th, and March 26th.

23          First paragraph I state, and I summarize,

24  unemployed, sheltering in place due to COVID-19.  I

25  received no paychecks at this point.  I have applied for

12

Proceedings

1    unemployment, not received it.

2             I have demanded that Attorney Thompson contact

3    me by my phone number, by text or message.  He chooses

4    not to speak to me.  I will reply all by U.S. Postal

5    mail.

6             Two, my second para -- my complaint is clear, I

7    gave him my contact information, my signature page, I

8    attached it as Exhibit A.  It gives my phone number that

9    he may text or phone call, and my mailing address.  He

10   continues to speak to me by email correspondence, and my

11   mailing address.  He continues to speak to me by email

12   correspondence.

13            I state third paragraph, I'm a pro se

14   plaintiff.  I happen to be a lawyer, but I'm a pro se

15   plaintiff.  You, Judge Bloom, have already ordered that I

16   not receive any electronic service.  Attorney Thompson

17   continues to seek to contact me by email.  he states that

18   in his text messages to me.  He refuses to obey your

19   court order, as I stated.  Attorney Thompson continually

20   tries to email me, as opposed to contact me as set forth

21   in my complaint.

22            I state fourth paragraph, I operate by a flip

23   phone, I do.  I do.  I talked and text only.  I'm not an

24   app guy, I am not.  I don't write that but I'm not an app

25   -- I don't know what -- I'm not an app person.

13

Proceedings

1          I've made this known to Attorney Thompson that
2   I operate in this matter.  He continues contrast -- to
3   contact me by email.
4          I state fifth paragraph, this is not frivolous.
5   Attorney Thompson has already used his email
6   correspondence to -- before your court to prejudice my
7   case.  You've indicated in court not to establish a
8   record, and he's trying to do this, to jeopardize my case
9   before not only you, or Judge Komitee, but before a jury,
10  if I ever get to trial.  Not appropriate for the Attorney
11  General.
12         Sixth paragraph, I have reviewed all the
13  pleadings and correspondence.  I don't see where I ever
14  gave Attorney Thompson my permission to use my email.  I
15  don't know how he appropriated it.  Now I've gone through
16  it all.  I'm not trying to misdirect it -- I'm not trying
17  to -- I'm trying to be transparent here.  I don't recall
18  giving it to him, but he has used the power to mine -- of
19  his office to obtain my email, it is wrong, and
20  unacceptable.
21         I have made known to Attorney Thompson via
22  voicemail that he's leaving messages on my voicemail, and
23  by leaving messages on his voicemail, whether he has no
24  permission to use my email, none.  And any implied
25  permission he might have, I have revoked.  I don't want

14

Proceedings

1  an email correspondence created that's going to

2  jeopardize my case.

3          As late as April 20th, via his text message to

4  me, he has indicated that he is attempting to use my

5  email, and had to re-serve me with any pleadings in this

6  case, and your order, and you've already ruled on this

7  matter (indiscernible) --

8          THE COURT:  Mr. Capogrosso --

9          MR. CAPOGROSSO:  -- contacting --

10          THE COURT:  I'm sorry, sir?

11          MR. CAPOGROSSO:  Yes.

12          THE COURT:  I have other conferences today.  I

13  was trying to get you to summarize --

14          MR. CAPOGROSSO:  Well, that's --

15          THE COURT:  -- that we didn't get the letter --

16          MR. CAPOGROSSO:  -- the summary.

17          THE COURT:  -- and not know what was in the

18  letter, and have had this conference, and I wanted to

19  give you the opportunity --

20          MR. CAPOGROSSO:  Well, that's --

21          THE COURT:  -- to be heard, since you made the

22  effort to get this letter.  Now, is there anything else

23  that you want to add?

24          MR. CAPOGROSSO:  There's just one more point,

25  just one more point that occurred now.  Defendant

Proceedings

1    Thompson is indicating that because he's sheltering in

2    place, he can't send out a -- he can't send out any

3    mailings.

4            The last point I have to make is that Defendant

5    Smart has to be served, not by myself, but also by

6    Attorney Thompson, and that he gives no email address, so

7    where is the merit to this argument in this position?

8    Because you can't serve Defendant Smart by email because

9    he's given none.

10           I go on to say a couple of other things.  I ask

11   for your relief.

12           THE COURT:  Is there anything else, sir, that's

13   in there?

14           MR. CAPOGROSSO:  That's a summary of the -- of

15   the -- that letter, which was given -- which was again

16   submitted, and I mailed it to Attorney Thompson, and it

17   was submitted again to your drop box last night, Judge.

18   It should be there this morning.

19           THE COURT:  So Mr. Capogrosso, I have listened

20   to your argument.  I've read all the papers.  Let me just

21   say, sir, that I do want litigants to obey the orders of

22   the Court.  And I don't believe that Mr. Thompson

23   violated my order because he did send you the last

24   letter.

25           Now one of the things that I really want you to

16

Proceedings

1  hear is that since we had that last conference, the world
2  has changed, and the world is now living with a pandemic
3  that is threatening people's lives, and the reason why
4  you're drop box mailing from April 31st, which you went
5  down and put in the drop box last night is not on the
6  docket is because the clerk's office of the court is also
7  working remotely on staggered schedule, and if what
8  you're saying is you do not want electronic service by
9  the Court, or by defendant AG, Mr. Thompson is not the
10 defendant here, this is your case to hold the TVB
11 accountable.  I am so clear about what your case is, and
12 I'm also so clear about what it is not.

13          This is not a case against Mr. Thompson, and
14 for all of the mailings that you have taken the effort to
15 send to the Court, or to bring down to the Court, that's
16 your choice, Mr. Capogrosso.  That's the way you choose
17 to live, and litigate, that you're running down to file
18 these things last night, that's what you want to do,
19 that's your choice, but I am not going to make everybody
20 else live by your choice.

21          So you don't want him to electronically contact
22 you, he doesn't have to call you.  I won't even make him
23 send the letters to you.  You'll get the mail from the
24 Court when the clerk's office, which is on a staggered
25 schedule, gets the mail out to you.  That's your choice,

17

Proceedings

1  if that's what you want, it will be mailed to you by the

2  Court.  It will not be mailed to you by the AG.  He has

3  no requirement to mail you anything, unless he is told,

4  and he did mail that last piece that he was told to mail

5  to you, and that's it.  We're done with this.

6         Your motion did not comply with the procedural

7  safe harbor provisions in Federal Rule of Civil Procedure

8  11.  You also failed to demonstrate that defendant's

9  counsel is acting in bad faith or objectively

10  unreasonable.  So sanctions are not warranted under

11  either Rule 11 or the Court's inherent power.

12         Even though I understand this case is important

13  to you, Mr. Capogrosso, and I am trying, even though I

14  have 570 cases, and Mr. Thompson, I am sure has more than

15  this case, I am trying to make it, I won't say easy for

16  you, but as you know, I ruled that all of the depositions

17  would be at the courthouse.  Well, the courthouse is

18  closed, sir.  It's not closed for business.  We're doing

19  business remotely, but everything is being done by

20  telephone.  We do not have any ability to have

21  depositions at the courthouse.  We do not have any

22  ability to bring jurors to the courthouse.  We are not

23  doing business as usual.

24         And you have the choice which you're making

25  clear that you don't want the Court to give you anything

18

Proceedings

1  by email, and you don't want Mr. Thompson to send you

2  anything by email, that's your choice, sir, but that

3  doesn't mean that there are sanctions warranted against

4  Mr. Thompson, and that this whole pile of papers that you

5  created is your choice in how to litigate.  You've

6  already been warned by Judge Brodie in her prior orders.

7          I will remind you she, in her August 2nd

8  conference transcript, says there is no basis -- she said

9  there's absolutely no basis for me to impose sanctions

10  here.  She said the attorney, who at that time was the

11  Assistant Attorney General Siegmund, didn't act

12  inappropriately in anyway, and I am not -- I'm not going

13  to tolerate any false accusations.

14          And she went onto say you've brought a lawsuit,

15  so let the lawsuit take place, but it doesn't help when

16  you accuse your adversary of doing things

17  inappropriately.

18          So I am echoing Judge Brodie's concerns which

19  were stated in the August 2nd conference, and I am

20  telling you, Mr. Capogrosso, don't put your health at

21  stake here by running down to the courthouse to file

22  letters which are repeating the same argument that you

23  filed in your documents 121 and 123 -- I'm sorry, 120 and

24  123.  When you put on the record what your April 31st

25  letter says, it's exactly what you've already said, sir.

19

Proceedings

1      MR. CAPOGROSSO:  But --

2      THE COURT:  So you're --

3      MR. CAPOGROSSO:  -- you're making -- making me

4 out to be the villain --

5      THE COURT:  -- (indiscernible) --

6      MR. CAPOGROSSO:  -- and I'm not.  There was an

7 order by your court --

8      THE COURT:  Excuse me, sir --

9      MR. CAPOGROSSO:  Am I allowed to speak?

10     THE COURT:  -- I'm not done.  I am not done.

11     MR. CAPOGROSSO:  Oh.

12     THE COURT:  I'm not making you out to be a

13 villain.  I'm trying to refocus your energy and attention

14 on your case, which is to hold the TVB accountable.

15          You don't want him to email you, okay, he won't

16 email you, but that means that you're going to wait

17 longer to get things because the Court is on a staggered

18 schedule in the clerk's office, and if I am mailing

19 things to you, and you're not consenting to getting it by

20 email, that is your choice.  It has nothing to do with

21 anything else except you choosing -- and I frankly don't

22 understand your choice, but since you're making that

23 choice, I'll respect it, I don't understand why you think

24 that it would jeopardize your case to allow Mr. Thompson

25 to communicate with you by email.

20

Proceedings

1          MR. CAPOGROSSO:  May I respond?

2          THE COURT:  If you would like to.

3          MR. CAPOGROSSO:  You gave an order -- you gave

4    an order.  You gave an order.  The man refused to obey

5    your order.

6          THE COURT:  He abided -- he --

7          MR. CAPOGROSSO:  I don't know --

8          THE COURT:  -- abided the order.

9          MR. CAPOGROSSO:  I can't -- Judge, I have to

10   obey your orders.

11         THE COURT:  Sent -- he sent --

12         MR. CAPOGROSSO:  You're not allowing me to

13   finish, Judge.  You gave --

14         THE COURT:  Can I --

15         MR. CAPOGROSSO:  -- an order.

16         THE COURT:  He sent the March 19th order to you

17   by mail.  He sent it to you by mail, and the Court has

18   now said he no longer has to do that --

19         MR. CAPOGROSSO:  All right, fine, there's a new

20   order.

21         THE COURT:  -- because --

22         MR. CAPOGROSSO:  There's a new order.

23         THE COURT:  -- because --

24         MR. CAPOGROSSO:  I'll obey your order.

25         THE COURT:  That's right.  Because the world

21

Proceedings

1   has changed here --

2           MR. CAPOGROSSO:  Well, fine, I don't know that.

3           THE COURT:  -- (indiscernible) not need --

4           MR. CAPOGROSSO:  I can't read your mind, Judge.

5   You gave an order, I obeyed it.  I expected Attorney

6   Thompson to obey it.  If you change your order, I will

7   obey your new order.

8           THE COURT:  Mr. Capogrosso --

9           MR. CAPOGROSSO:  The world has changed, but I

10  don't know what the judge's perspective is on the world

11  changing.

12          THE COURT:  Mr. Capogrosso --

13          MR. CAPOGROSSO:  The order you give, I obey.

14  So now if the order --

15          THE COURT:  I (indiscernible) --

16          MR. CAPOGROSSO:  -- is he doesn't have to

17  observe me, then I will accept electronic service of any

18  pleadings because I do have a right to see them.  Do I

19  want to correspond with this --

20          THE COURT:  This is not a --

21          MR. CAPOGROSSO:  -- attorney by email?

22          THE COURT:  This is not a pleading, sir.  The

23  pleadings in the case are the complaint, and the answer,

24  and then if there's a motion made, but that's not what

25  these are.  These are just minute orders of the Court

22

Proceedings

1   reflecting what was done at a conference, and if you had

2   allowed electronic service, it would've alleviated the

3   burden on you, quite frankly, and not created this whole

4   mess with Mr. Thompson.

5           I'm not making anybody into a villain, and I'm

6   also not going to allow you to say that you're a victim.

7   You're not.  You made this choice.  You're a grown man.

8   You're an attorney.  I don't understand --

9           MR. CAPOGROSSO:  This is (indiscernible) what

10  you're doing to me at this point.

11          THE COURT:  -- what (indiscernible) --

12          MR. CAPOGROSSO:  There was an order that

13  nobody's obeying.  I'll obey any order you have from this

14  point.  I've obeyed every order you have given me.

15          THE COURT:  Mr. Capogrosso --

16          MR. CAPOGROSSO:  Attorney Thompson has not.

17  The world has changed, I understand that, but I am not

18  going to be told that I'm the -- I'm perpetuating this

19  argument.  I am not.  I've obeyed every order of this

20  court from day one.

21          THE COURT:  Mr. Capogrosso?

22          MR. CAPOGROSSO:  Attorney Thompson has used

23  this -- this COVID-19 to --

24          THE COURT:  Mr. Capogrosso?

25          MR. CAPOGROSSO:  -- to disobey your order.  Now

Proceedings

1   if there's a new order, I will obey it.

2          THE COURT:  Mr. Capogrosso, I appreciate that

3   but I do not appreciate being screamed at.  I'm doing my

4   job --

5          MR. CAPOGROSSO:  I'm not screaming, I'm stating

6   my position.

7          THE COURT:  Sir, I'm doing my job to the best

8   of my ability, and I am telling you that if you do not

9   want anybody to give you anything by email, that's a

10  choice, but that means it will take longer for things to

11  get to you.

12         If what you are saying is now in light of the

13  Court's new order, you will agree to accepting by email,

14  please make yourself clear because I am

15  (indiscernible) --

16         MR. CAPOGROSSO:  Fine, I will make myself

17  clear.

18         THE COURT:  Good.

19         MR. CAPOGROSSO:  Fine.  And based on your new

20  order, based on your last order, I was in obedience to

21  your last order.  Based on your new order, he doesn't

22  have to serve me by physical mail, fine, I'll accept

23  email but I'm not going to correspond with him.

24         THE COURT:  Email --

25         MR. CAPOGROSSO:  I'll correspond with me -- he

24

Proceedings

1   can -- he can --

2           THE COURT:  That's fine --

3           MR. CAPOGROSSO:  Let me finish, Judge, please.

4           THE COURT:  -- Mr. Capogrosso.

5           MR. CAPOGROSSO:  He can email me, and I will

6   call him back, and leave a voicemail.  I don't text real

7   well.  So yes, he can email me whatever he wants to email

8   me, but I'm not going to have an email correspondence

9   with him because he's not going to prejudice my case.

10          Now how am I going to communicate with

11  Defendant Smart --

12          THE COURT:  I have no idea.

13          MR. CAPOGROSSO:  -- who doesn't have an idea.

14          THE COURT:  I have no idea.  I'm sending things

15  by mail to Mr. Smart.

16          MR. CAPOGROSSO:  Well, how am I supposed to

17  communicate with him then?

18          THE COURT:  I don't have on the line, sir, so I

19  can't help you there, okay?  I --

20          MR. CAPOGROSSO:  Fine.  So the new order is

21  that he is going to send me all -- everything by email,

22  but any correspondence, I'm not going to write it out for

23  him, I'll call him up, and leave a voicemail because I'm

24  not going to create a email correspondence that he can

25  use against me.

25

Proceedings

1          In terms of what was in the past, I'm not
2   trying to cause any trouble for this Court, I am not.  I
3   laid out the facts, and I've been truthful with laying
4   out the facts, as I have from day one with this court.  I
5   have been extremely truthful.
6          I've explained everything in my -- in those
7   letters.  I want to be truthful with this court.  Maybe
8   it's novel with attorneys, but I am as truthful as they
9   come.
10          So I will accept email correspondence from this
11   attorney.  I will, based on your new order.  I will obey
12   your new order, as I've obeyed every order you have given
13   me.  I will.
14          THE COURT:  Very good.  Very good.
15          MR. CAPOGROSSO:  And --
16          THE COURT:  And so --
17          MR. CAPOGROSSO:  -- any order you give me, I
18   will obey.
19          THE COURT:  So again, I also think you should
20   consider, Mr. Capogrosso, signing up for electronic
21   service from the court.  Perhaps that way, you will not
22   have to be rushing down to the court, to inconvenience
23   yourself, and also to expose yourself.  I'm trying to
24   make this --
25          MR. CAPOGROSSO:  Fine, I understand.

26

Proceedings

1          THE COURT:  You know, you are an attorney.  You

2  could get electronic service, and --

3          MR. CAPOGROSSO:  Fine.

4          THE COURT:  -- you didn't consent to it.  I

5  wasn't going to force it on you, Mr. Capogrosso, but in

6  light of the changed circumstances, it would seem to me

7  that it would be in your interest, and so again, I

8  appreciate that you will abide by the orders of the

9  Court, and now we need to discuss what's going to happen

10 regarding discovery here.

11         MR. THOMPSON:  Your Honor, may --

12         THE COURT:  So -- yes?

13         MR. THOMPSON:  May I briefly speak?

14         THE COURT:  Yes, of course.

15         MR. THOMPSON:  There are just three quick

16 things that I wanted to put on the record in case there

17 is an objection, or in case there's, you know, any

18 further review of this discussion.

19         First of all, I just want to emphasize, we

20 obtained Mr. Capogrosso's email address from his publicly

21 available New York State attorney registration.  We

22 didn't abuse the power of the Attorney General's Office,

23 whatever that would be.  We didn't hack or misappropriate

24 his email, as Mr. Capogrosso suggested in a voicemail

25 last week.  It was available online, publicly listed, by

Proceedings

1   Mr. Capogrosso himself on his attorney registration.

2           The second point, regarding the allegation that

3   I somehow disobeyed an order, I'm not aware of any order.

4   Your Honor exempted Mr. Capogrosso from taking part in

5   the ECF system, of course, but I'm not aware of there

6   ever having been an order not to communicate with him by

7   email.  And in fact, Mr. Capogrosso has communicated with

8   me by email, 40 separate times, including serving papers.

9           Lastly, a third point, I think it's important

10  that there be a distinction made between court filings,

11  and filings that go on the docket, and communications

12  between counsel, and between parties.  Obviously, there

13  are rules regarding filings on the docket, and serving

14  those, including on Mr. Smart.

15          That's a different question from communications

16  between two sets of lawyers that are informal, that are

17  not a filing.  And it's regular in cases for attorneys

18  from some parties to communicate without every party

19  receiving it.  So not every email that goes between us

20  needs to be shared with Mr. Smart.  Two parties can

21  communicate absent another party quite regularly.

22          Going forward, you know, as Mr. Capogrosso

23  suggested, one of the reasons that we wanted to

24  communicate on email as much as possible, is so that

25  there would be a record of what the parties said to each

28

Proceedings

1  other, because we have, as plaintiff pointed out, run

2  into a number of situations where there's been a he said-

3  he said, or a dispute as to what was actually said in a

4  verbal conversation.  The great thing about email is

5  there's no ambiguity, and you can see what a person said

6  and when.  And so to the extent that we have favored,

7  email, that's been the reason for it.

8            THE COURT:  Thank you --

9            MR. CAPOGROSSO:  In response, your Honor --

10            THE COURT:  -- Mr. Thompson.

11            MR. CAPOGROSSO:  -- if I may?  In response --

12            THE COURT:  Excuse me.

13            MR. CAPOGROSSO:  He might have hit --

14            THE COURT:  Can I get a word in edgewise --

15            MR. CAPOGROSSO:  Yes.

16            THE COURT:  -- Mr. Capogrosso?  I --

17            MR. CAPOGROSSO:  I thought I was allowed --

18            THE COURT:  Mr. Thompson, I thank you for your

19  clarifications, and especially on that last point.  Mr.

20  Capogrosso, there has to be a way for parties to

21  communicate.  Even if you weren't an attorney, sir,

22  you're representing yourself in this matter.  I oversee

23  more pro se cases than any of my colleagues in the court,

24  and there has to be a way for defendant's counsel to

25  communicate with you, and there is a distinction between

Proceedings

1 court filings, and communications between the parties.

2 Not every communication between the parties gets filed on

3 the docket.

4           So how do we resolve this, Mr. Capogrosso,

5 because Mr. Thompson, whatever the past has been, is

6 still representing the defendants in this matter, and we

7 need a way for you, and Mr. Thompson to be able to

8 communicate.

9           Now I know you say he could email you, but then

10 you're going to leave voicemails for him.  Well again,

11 sir, can we figure out a way -- I really don't understand

12 why the use of email will --

13           MR. CAPOGROSSO:  Well --

14           THE COURT:  -- jeopardize your case.  Things

15 that are said between the attorneys on a case don't

16 generally get submitted into the Court as evidence of

17 anything.  It's two attorneys talking about how to move a

18 case forward.  Why is that going to jeopardize your case?

19           MR. CAPOGROSSO:  In reply, first of all, he --

20 he obtained my email but I didn't give him any consent to

21 use my email.  So there is a distinction.  It is listed.

22 It doesn't mean you given consent to use it.  Okay?

23           THE COURT:  Can you move on that because I'm

24 not interested --

25           MR. CAPOGROSSO:  Well, I would like to  --

30

Proceedings

1        THE COURT:  -- in that point.

2        MR. CAPOGROSSO:  -- reply to his comment.  In

3   terms of emails --

4        THE COURT:  I'm not interested.

5        MR. CAPOGROSSO:  I will, Judge.  I will.

6        THE COURT:  I'm not interested.

7        MR. CAPOGROSSO:  I will.

8        THE COURT:  Thank you.

9        MR. CAPOGROSSO:  Well, he was given no consent

10  to use it.  My consent to use my contact information --

11       THE COURT:  I heard you.

12       MR. CAPOGROSSO:  -- was giving my complaint.

13       THE COURT:  And you moved on --

14       MR. CAPOGROSSO:  Now in terms of email, he has

15  -- I've already made (indiscernible) at this point.  He's

16  already used emails to prejudice my case before you.

17            He's introduced emails in terms of his

18  correspondence with the Court, and in filings with the

19  Court, he's used our emails.  I don't need it used before

20  a jury.

21       THE COURT:  How does it prejudice you?  Why

22  does it prejudice you --

23       MR. CAPOGROSSO:  I --

24       THE COURT:  -- for him to --

25       MR. CAPOGROSSO:  -- don't want to talk to this

Proceedings

1    -- why can't he talk to me on voicemail, if he has to

2    talk, and you asked me how I can resolve it, I told you.

3    I think he will introduce it before a jury --

4              THE COURT:  He won't be able to introduce

5    emails between you and him to a jury, sir.

6              MR. CAPOGROSSO:  Well, I don't know that.  He's

7    already introduced it to your court.

8              THE COURT:  (Indiscernible), sir, sir.  This

9    case is about what happened to you in the TVB.  This is

10   what happened in 2012, and in 2015.  It is not about what

11   is going on 2020 between you and Mr. Thompson.

12             I want you to focus because Mr. Capogrosso, I

13   understand this case is important to you, sir.

14             MR. CAPOGROSSO:  Yes, it is.

15             THE COURT:  But this case is to hold the TVB

16   accountable.  It is not about your communications with an

17   Assistant Attorney General in 2020 during a worldwide

18   pandemic.  I do not understand why you cannot communicate

19   with him by email, but again, you've already said that he

20   can send you things by email.  You may refuse to

21   correspond back with him.  I don't know what that means

22   but again, I'm going to move forward here because I don't

23   think Mr. Thompson, I'm going to be able to resolve Mr.

24   Capogrosso's concerns.

25             MR. CAPOGROSSO:  Well --

32

Proceedings

1     THE COURT:  I know that emails between

2   attorneys, or between a pro se plaintiff and the attorney

3   is generally never going to be introduced as evidence in

4   court, because what is it evidence of?

5     MR. CAPOGROSSO:  Well, you know, Judge --

6     THE COURT:  I also understand that Mr.

7   Capogrosso has his concerns, so I am going to move on

8   because I do have other conferences, and I cannot spend

9   all day on the topic of whether or not Mr. Capogrosso

10   will email with the Assistant Attorney General assigned

11   to the case.

12     So we've gotten some progress made.  If you

13   want to change and make life easier for yourself, Mr.

14   Capogrosso, you should register with the Court for ECF,

15   so that you could file things by ECF, and that way you

16   would not need to come down to the courthouse, and I

17   would give you permission to do that, Mr. Capogrosso.

18     And Mr. Thompson does have permission to email

19   you, and whether or not you're going to email him back is

20   your decision.

21     So now let's move on.  The motion to --

22     MR. CAPOGROSSO:  Well, Judge, may I -- just --

23   just so I understand your order, in terms of --

24     THE COURT:  Sir, sir --

25     MR. CAPOGROSSO:  -- conversation with --

33

Proceedings

1        THE COURT:  -- I (indiscernible) --

2        MR. CAPOGROSSO:  I don't understand the order.

3   So I have -- have to clarify it because I don't want to

4   be mistaken over your order.  Please, I don't want to be

5   mistaken.

6        THE COURT:  Go ahead.

7        MR. CAPOGROSSO:  I am a man who lives on -- you

8   give me an order, and I obey it, so I do want to be clear

9   about it.  I don't want to establish an email

10  correspondence with this attorney, I do not.  Now

11  attorney -- now Defendant Smart indicated -- made one

12  statement to Judge Brodie that I'm not allowed to write

13  to him at his home address, and that was sufficient.

14  That was all that had to be said by --

15        THE COURT:  Sir, sir.

16        MR. CAPOGROSSO:  -- Defendant Smart.

17        THE COURT:  Sir, sir, sir, sir.

18        MR. CAPOGROSSO:  Now, I don't want to email

19  correspondence --

20        THE COURT:  Please --

21        MR. CAPOGROSSO:  -- with this attorney, I do

22  not.

23        THE COURT:  I just said -- I just said, he can

24  send you things by email, and you will choose whether or

25  not you are going to respond to him by email, I am moving

34

Proceedings

1    on.

2                MR. CAPOGROSSO:  Fine.

3                THE COURT:  Did you understand that, sir?

4                MR. CAPOGROSSO:  I will text -- then I just

5    want Attorney Thompson because he doesn't want to talk to

6    me on the phone, which I don't understand, that I will

7    text him back my reply, or I will leave a voicemail.  I

8    don't -- I want Attorney to understand -- Attorney

9    Thompson to understand, I will not get engaged in an

10   email correspondence with this attorney.  I will not.

11               THE COURT:  You think --

12               MR. CAPOGROSSO:  If that's in compliance with

13   your order --

14               THE COURT:  -- (indiscernible) --

15               MR. CAPOGROSSO:  -- then I will obey that

16   order, Judge.

17               THE COURT:  No.  No, no, no, no, that is not my

18   order that you will not correspond with him, and I am not

19   telling you to text him.  That's ridiculous.  That's

20   ridiculous.  It's your --

21               MR. CAPOGROSSO:  I will leave a voicemail.

22               THE COURT:  -- (indiscernible).

23               MR. CAPOGROSSO:  I will leave a voicemail,

24   Judge.  That's what I feel comfortable with.  That is my

25   position.  That is what I feel comfortable with this

35

Proceedings

1   attorney.

2           THE COURT:  But that is not the Court's --

3           MR. CAPOGROSSO:  Yes.

4           THE COURT:  -- order, sir, so don't tell me

5   that you're --

6           MR. CAPOGROSSO:  All right.

7           THE COURT:  -- abiding by my order because I am

8   not telling you to leave a voicemail.  Am I clear?

9           MR. CAPOGROSSO:  Yes.

10          THE COURT:  So let's move on.

11          MR. CAPOGROSSO:  Fine.

12          THE COURT:  So the Court has denied the motion

13  for sanctions.  It's denied as without any basis in law

14  or in fact, and I will cite to Castro v. Mitchell, 727

15  F.Supp 2d 302 at 305 to 306, (SDNY 2010) collecting cases

16  where the Court denied motions for sanctions for failure

17  to comply with Rule 11 safe harbor provision.  And I will

18  also find that there is no basis for the Court to order

19  sanctions under its inherent powers.

20          MR. THOMPSON:  Thank you, your Honor.

21          THE COURT:  I am also going to talk about what

22  we are doing here discovery-wise.  Now again, I have no

23  idea when you're going to be able to conduct depositions

24  in the courthouse, Mr. Capogrosso, and I am not telling

25  you that you must conduct them remotely, but of course if

36

Proceedings

1  you decided to discuss them remotely, that would speed

2  things along, and it wouldn't mean that you'd have more

3  of a cost, it would be the same or less of a cost because

4  we would have to do it in some way where there would be a

5  court reporter, because the court reporter has to swear

6  the witnesses to the truth of the testimony.

7          I am not ruling that you must do it remotely,

8  but if you're not going to do it remotely, I'm going to

9  continue to stay all the deadlines because we have no

10 dates for when we're going to be able to do things in

11 person.

12         MR. CAPOGROSSO:  Really, Judge, I'm being

13 truthful with you, I operate by a flip phone.  I don't --

14 I haven't -- I don't really understand what apps are, I

15 don't.  What apps do I use?

16         THE COURT:  I (indiscernible) understand --

17         MR. CAPOGROSSO:  Well, how do I use it

18 remotely?

19         THE COURT:  Can I ask -- well again, sir, I

20 take it that you do have a computer because you have an

21 email.

22         MR. CAPOGROSSO:  Yes, I do.

23         THE COURT:  And so there are different -- and

24 I'm quite confident that there might be court reporters

25 that would be able to give you a Zoom meeting number to

37

Proceedings

1   plug into where you would then have a video and the court
2   reporter would have a video, and the witness would have a
3   video, but I'm not going to tell you you have to do that,
4   Mr. Capogrosso.  I'm trying to tell you, I have no power
5   to move this case in person until it's safe to do so.
6   I'm not going to jeopardize anybody's health for a case
7   about things that happened some time ago.
8           So if you want to consider conducting these
9   depositions in any other manner than we can talk about
10  moving the case forward.  If not, then I will just get
11  another status letter filed in another 45 days or so, and
12  we'll see where we are.
13          MR. CAPOGROSSO:  In light of your order or
14  recommendation, yes, I will do these by video.  Yes.
15  Based on this, yes.  I don't know how --
16          THE COURT:  You're --
17          MR. CAPOGROSSO:  -- I am going to try this
18  case.  I would like to get to trial.  How this case is
19  going to be tried, I don't know, in light of everything
20  that's going on.
21          THE COURT:  We're far -- Mr. Capogrosso, we're
22  far from a trial in this case.
23          MR. CAPOGROSSO:  Right.
24          THE COURT:  It's almost guaranteed after
25  discovery closes, I'm not trying to tell you that I know,

38

Proceedings

1  but I have experience from 19 years being on the bench,

2  there will be a motion for summary judgment, and they

3  will say that you will not be able to prove any of your

4  claims.  So you do need to collect whatever evidence it

5  is.  The first cause of action is proceeding against

6  Gelbstein, Calvo and Traschen in their individual

7  capacities.  That's for First Amendment retaliation.

8          The second cause of action was dismissed by

9  Judge Brodie.

10          The third cause of action is proceeding against

11  the Commissioner where you're seeking to enjoin the

12  defendants from barring you from practicing at a TVB

13  court.

14          The fourth cause of action is against Taher,

15  who is to here.  He has not appeared in the action.  He

16  filed an answer back in 2018, and he has not appeared

17  since, and all mail has been returned to the Court, and

18  you may move for a default against that defendant.

19          The fifth cause of action for negligent hiring

20  is also against a defendant who has not appeared, PEC

21  Group, and you may move for a default against that

22  defendant as well.

23          I don't know whether moving for a default

24  against either of those defendants will get you anything

25  in the long run, but that is the process of the Court.

Proceedings

1      So if you're telling me that you would like the

2  opportunity to conduct depositions by remote means, then

3  I will tell you to contact court reporters.  I am

4  suggesting to you that court reporters may be doing this

5  now, and you can look up and see what their rates are,

6  and see if they can get you access to a video service

7  that would serve your ends here.

8          And if you do want to conduct these by video, I

9  will get Mr. Thompson to make his clients available, and

10  we'll make this happen.

11          Do you understand, Mr. Capogrosso?

12          MR. CAPOGROSSO:  Yeah, I agree to that.  I

13  agree to -- I just -- I'm not trying to be unreasonable

14  with this Court, I am not.  I am not trying to be

15  unreasonable with the other side.  I am not.  I've been

16  truthful --

17          THE COURT:  Okay.

18          MR. CAPOGROSSO:  -- in trying to

19  (indiscernible) throughout, and I agree to that.

20          THE COURT:  Okay.  So --

21          MR. CAPOGROSSO:  Based on what's going on, I

22  agree.

23          THE COURT:  -- (indiscernible) how much time do

24  you need to get in touch with court reporter services to

25  see what it is that you could arrange, because I imagine

40

Proceedings

1    that you would like to have it by video conference, not

2    just by phone.  If it's just by phone, again we still

3    have to have a court reporter on the line.  The court

4    reporter has to swear the witness to the truth of their

5    testimony, they have to take down both the questions and

6    the answers, and again Mr. Capogrosso, you'd have to

7    speak slowly, and not talk over anybody else in order to

8    make a good record.

9              And you know, the difficulty in doing the

10   deposition electronically, I will be honest with you, is

11   that if you're using documents, you and defendant's

12   counsel have to agree how that document is going to be

13   presented to the witness.  Are you going to email each

14   other before the deposition, so that they have to -- the

15   exhibits pre-marked for the deposition, so that when

16   you're ready for it, you say I'm asking that the document

17   marked as Exhibit A is shown to the witness now, and I'm

18   going to ask you to read it, and then I'm going to ask

19   you some questions about the document.  Then you have to

20   give them a chance to read the document, just like if you

21   were in person, and then (indiscernible) --

22             MR. CAPOGROSSO:  I know, I've done depositions,

23   your Honor.

24             THE COURT:  -- documents -- but this is

25   remotely, sir.  So I'm saying you can't just present the

Proceedings

1  document on the morning of the deposition, because you're

2  not going to be in the same location as the witness.  Do

3  you understand?

4          MR. CAPOGROSSO:  Yeah, of course, I understand.

5          THE COURT:  Do these are the logistics that

6  would have to be worked out, so that you're not wasting

7  your time, and your money, and the defendants who would

8  be participating in this remotely, would be prepared to

9  respond to your questions.  So you --

10          MR. CAPOGROSSO:  Well, I have no option.  What

11  am I going to do?  I have no option.

12          THE COURT:  When --

13          MR. CAPOGROSSO:  When do you think the Court

14  might be opened?  I could wait.  When do you think --

15  we're opening up other businesses.  When will the Court

16  be opened?  Has a decision been made, so I can hold

17  the --

18          THE COURT:  Mr. Capogrosso --

19          MR. CAPOGROSSO:  -- I can hold my depositions

20  in person.

21          THE COURT:  Mr. Capogrosso -- Mr. Capogrosso,

22  the official position of the court is currently open.  I

23  am on the phone with you in a conference in your civil

24  case.  We are doing business, but we are doing business

25  remotely because it is not safe to conduct court in

42

1   person.  So the court is open but we are resorting to

2   other methods because there is a worldwide health crisis.

3             So if you're asking me to predict when will the

4   worldwide health crisis make it safe for you to do a

5   face-to-face deposition, I cannot answer that question,

6   sir.

7             THE CLERK:  Judge, I'm sorry to interrupt, but

8   we're coming to the end of our time.

9             THE COURT:  Thank you very much.

10            MR. CAPOGROSSO:  All right, well --

11            THE COURT:  So --

12            MR. CAPOGROSSO:  -- based on that, Judge, what

13  I was -- what I would like to do, I think things are

14  going to be opening up, I do.  I would like to have a

15  status conference in a month.  In that month period of

16  time, I will contact reporters, see what their position

17  is on this, doing remote conferences, I would like to

18  have a status in a month --

19            THE COURT:  That sounds --

20            MR. CAPOGROSSO:  -- and maybe --

21            THE COURT:  -- that sounds --

22            MR. CAPOGROSSO:  -- in one month, your Honor --

23            THE COURT:  -- that sounds reasonable, Mr.

24  Capogrosso, let's pick a date.

25            MR. CAPOGROSSO:  Maybe -- maybe in one month,

43

Proceedings

1    the Court will open up its courthouses for depositions,

2    and we can hold depositions in person, six feet removed

3    with masks on, and this would make things easier for

4    everybody.

5                THE COURT:  Mr. Capogrosso --

6                MR. CAPOGROSSO:  Yeah.

7                THE COURT:  -- I just said that sounds

8    reasonable.  Let's put it on for a conference --

9                MR. CAPOGROSSO:  Fine.

10               THE COURT:  -- in about 30 days, okay?

11               MR. THOMPSON:  Your Honor, if I --

12               MR. CAPOGROSSO:  Everything --

13               THE COURT:  Yes, Mr. -- yes, I'm sorry.  I'm

14   sorry, Mr. Thompson.  Yes?

15               MR. THOMPSON:  That's all right.  I will go

16   very quickly.  Just putting on the record on behalf of

17   OAG, we are perfectly willing to do a remote deposition.

18   I don't know how to do one but I understand that it's

19   been done in other cases that we've handled.  We'd be

20   happy to put Gelbstein and Calvo on from Manhattan, and

21   Ms. Traschen on from Albany.

22               In terms of --

23               THE COURT:  And you would work with whoever Mr.

24   Capogrosso contacted if he's getting in touch with a

25   reliable court reporting service to make this work.

44

Proceedings

1           MR. THOMPSON:  Of course.

2           THE COURT:  Okay.  What else?

3           MR. THOMPSON:  If we were to go to --

4           MR. CAPOGROSSO:  Well, your Honor --

5           MR. THOMPSON:  Oh, I'm sorry.

6           THE COURT:  Wait, don't interrupt.

7           MR. CAPOGROSSO:  I'm not.

8           THE COURT:  What -- Mr. Thompson?

9           MR. THOMPSON:  If we were to go forward in

10    person, given the concerns that we've previously put Ms.

11    Traschen and --

12          THE COURT:  Mr. Thompson?

13          MR. THOMPSON:  -- Ms. Gelbstein -- yep?

14          THE COURT:  I am not ruling on that at this

15    moment.  I read your letter.

16          MR. THOMPSON:  Of course.

17          THE COURT:  I would -- I think I've made myself

18    clear to Mr. Capogrosso today, that I will not jeopardize

19    anybody's health because of a lawsuit that's pending in a

20    civil matter.  We have many cases where we are being

21    faced with huge life and death issues in criminal

22    matters.  I will not jeopardize somebody's health.  So we

23    can revisit in 30 days where the Court is at, where Mr.

24    Capogrosso is, regarding whether these can be done

25    remotely, and if they're done remotely, Mr. Thompson,

45

Proceedings

1   then we don't have to raise any health issues, okay?

2              MR. CAPOGROSSO:  Well, Judge, one question has

3   to be addressed, and I think the Court -- Defendant Smart

4   has to be depose.  I have to depose Defendant Smart.  I

5   don't think this man has --

6              THE COURT:  Mr. --

7              MR. CAPOGROSSO:  -- I just have to get it out.

8              THE COURT:  Mr. Thompson does not --

9              MR. CAPOGROSSO:  I understand.

10             THE COURT:  -- Mr. Thompson does not represent

11  Mr. Smart.

12             MR. CAPOGROSSO:  I understand that, but if --

13             THE COURT:  I have no idea -- I have no idea

14  where Mr. Smart is, but I will mail a copy of this order

15  setting the next conference, so that he has the phone,

16  okay?

17             MR. CAPOGROSSO:  Well, Judge, just so -- I'm

18  trying to anticipate.  How do I do a remote conference

19  with Defendant Smart?  I pretty -- I am pretty sure he's

20  not going to have that ability --

21             THE COURT:  Again, sir --

22             MR. CAPOGROSSO:  Go ahead.

23             THE COURT:  -- all that you're agreeing with me

24  now is to set another status conference with the court.

25             MR. CAPOGROSSO:  Fine.

46

1        THE COURT:  You're not agreeing to anything

2   else now, Mr. Capogrosso.  How --

3        MR. CAPOGROSSO:  Well, I think Defendant Smart

4   has to be privy to our next status conference because I

5   do have to depose this man.

6        THE COURT:  I will make sure he gets notice of

7   the conference, Mr. Capogrosso.

8        MR. THOMPSON:  And I would just say, I did

9   speak to Mr. Smart and let him know about that, the

10  conference last Thursday or Friday.  I'm not sure why

11  he's not on.

12       THE COURT:  Well, that's his choice.  He is a

13  grown person, as well.  Can we put this on at 11 o'clock

14  on Tuesday, June 9th?  That's about a month from now, Mr.

15  Capogrosso, and Mr. Thompson.

16       MR. CAPOGROSSO:  Right.

17       THE COURT:  I would imagine that we should have

18  more of an idea of what's happening both in the world,

19  and you'll do your investigation, Mr. Capogrosso --

20       MR. CAPOGROSSO:  I will.

21       THE COURT:  -- about whether --

22       MR. CAPOGROSSO:  I will.

23       THE COURT:  -- or not you want to do this

24  remotely, and I'm also telling you if you do want to

25  register for ECF, which I will permit, that would save

47

Proceedings

1    you, Mr. Capogrosso --

2             MR. CAPOGROSSO:  Fine.

3             THE COURT:  -- in having to come down to the

4    court, and that is different from court filings which can

5    be filed by ECF, and communications.  And I've said that

6    Mr. Thompson may communicate with you by email, and that

7    will make it quicker for you to get his communications,

8    and you have said that you will not communicate with him

9    by email, that's your choice.

10            So 11 o'clock on --

11            MR. THOMPSON:  Your Honor?

12            THE COURT:  Yes.

13            MR. THOMPSON:  My apologies.  In terms of the

14   June 9th date, I am scheduled to be serving as our

15   office's emergency attorney that day --

16            THE COURT:  You need another day?

17            MR. THOMPSON:  Yeah, could we do either the

18   week before or the week after?

19            THE COURT:  We'll -- so are you on the entire

20   week?

21            MR. THOMPSON:  Yes, it basically means if

22   someone seeks a TRO or a PI against the State, you know,

23   I will be going to whatever court it's being sought at.

24            THE COURT:  Mr. Capogrosso, would it be okay

25   with you to put it on for Tuesday, June 16th instead?

48

Proceedings

1          MR. CAPOGROSSO:  That's fine.

2          THE COURT:  Tuesday, June 16th.

3          MR. CAPOGROSSO:  Yeah, June 16th, 11 a.m.,

4   Tuesday, and -- how do I reach you, Judge, same phone

5   number, same contact information?

6          THE COURT:  Yes, and it will all be in the

7   order, sir, okay?

8          MR. CAPOGROSSO:  And can I ask Attorney

9   Thompson, how are you contacting the Defendant Smart?

10          MR. THOMPSON:  He called me.

11          MR. CAPOGROSSO:  He called you.

12          MR. THOMPSON:  So --

13          MR. CAPOGROSSO:  All right.

14          MR. THOMPSON:  Yeah.

15          MR. CAPOGROSSO:  Fine.

16          MR. THOMPSON:  I had his (indiscernible) --

17          THE COURT:  So in any case --

18          MR. CAPOGROSSO:  All right.

19          THE COURT:  -- in any case, I have ruled on th

20   motion.  I have hopefully set the parties up for moving

21   the case forward.  We are going to adjourn the case until

22   Tuesday, June 16th at 11 a.m. by telephone.  I will give

23   you the same phone numbers in an order.

24          Was there anything else that needed to be

25   addressed on behalf of plaintiff, Mr. Capogrosso?

49

Proceedings

1              MR. CAPOGROSSO:  So is the Court going to be

2  sending me orders or anything from the Court, or do I

3  have to go call the court clerk to receive it --

4              THE COURT:  Again, sir, you need --

5              MR. CAPOGROSSO:  -- if I don't sign up for ECF.

6              THE COURT:  If you don't sign up for ECF, then

7  you're just going to wait to get it in the mail whenever

8  it --

9              MR. CAPOGROSSO:  Fine.  I will sign up for ECF

10  -- all right.  I understand the Court's position.

11             THE COURT:  Okay?

12             MR. CAPOGROSSO:  Got it.  All right.  Thank

13  you.

14             THE COURT:  Anything else on behalf of the

15  State defendant?

16             MR. THOMPSON:  No, your Honor, thank you.

17             THE COURT:  Then this matter is adjourned until

18  June 16th at 11 a.m.  Thank you.  Good luck and good

19  health to everybody.

20                   (Matter Concluded)

21                      -o0o-

22

23

24

25

50

# C  E  R  T  I  F  I  C  A  T  E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **14th** day of **May**, 2020.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.