```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

------------------------------X  Docket#
CAPOGROSSO,                    : 18-cv-02710-EK-LB
              Plaintiff,       :
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
                               :
                               :
GELBSTEIN, et al.,             : March 16, 2021
              Defendants       : 11:01 AM
------------------------------X

   TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
          BEFORE THE HONORABLE LOIS BLOOM
          UNITED STATES MAGISTRATE JUDGE
```

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff**:        **Mario H. Capogrosso, pro se**
                              21 Sheldrake Place
                              New Rochelle, NY 10804


**For the Defendants**:       **James M. Thompson, Esq.**
                              Office of the New York State
                              Attorney General
                              28 Liberty Street
                              New York, NY 10005


**For Defendant Smart**:      **David Smart, pro se**
                              2355 Batchelder St.
                              Apartment 3E
                              Brooklyn, NY 11229


**Transcription Service**:    **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1      THE CLERK:  Civil Cause for Telephone Status

2  Conference, docket number 18-cv-2710, Capogrosso v.

3  Gelbstein, et al.

4      Will the parties please state your names for

5  the record?

6      MR. CAPOGROSSO:  Mario Capogrosso, plaintiff,

7  21 Sheldrake Place, New Rochelle, NY 10804.

8      MR. THOMPSON:  Good morning.

9      James Thompson from the Office of the New York

10  State Attorney General for the state defendants and I'm

11  joined by Barbara Montina (ph.) who is in-house counsel

12  for DMV.

13      MR. SMART:  Yeah, my name is Mr. David Smart.

14  I'm here on my behalf.

15      THE CLERK:  The Honorable Lois Bloom presiding.

16      THE COURT:  Good morning, Mr. Capogrosso, Mr.

17  Thompson, Ms. Montina and Mr. Smart.

18      This is a telephone status conference in

19  plaintiff's civil rights action.  I last spoke with  the

20  parties on May 5th, 2020.

21      On December 22nd, 2020, discovery closed in

22  this matter and Mr. Capogrosso, you wrote to the Court

23  and stated that you had served interrogatories on Mr.

24  Smart before the discovery deadline.  However, Mr. Smart

25  never responded.

3

Proceedings

1      And I directed you to provide the
2  interrogatories to the Court to review and I informed the
3  parties that this would be the one exception to the
4  discovery deadline.  That's in ECF entry number 148.

5      I reviewed your interrogatories and I directed
6  Mr. Smart to respond to the interrogatories and I
7  extended his deadline to do so. That's ECF entry number
8  154.

9      When Mr. Smart did not respond, Mr. Capogrosso
10 moved for a default junction and sanctions against Mr.
11 Smart.  That's ECF 157.

12     As Mr. Smart is like Mr. Capogrosso, proceeding
13 pro se, although Mr. Smart is not an attorney like Mr.
14 Capogrosso, I denied the request for default judgment and
15 sanctions and set today's telephone conference to get Mr.
16 Smart to answer the interrogatories orally on the record.
17 That's ECF entry number 159.

18     Mr. Smart has since informed the Court by
19 letter, that he is receiving assistance from the City Bar
20 Justice Center Pro Se project and that he is drafted
21 responses to the interrogatories and the letter was from
22 back in February and he said that they were going to be
23 served.

24     Mr. Capogrosso, have you gotten Mr. Smart's
25 responses to the interrogatories?

4

Proceedings

1       MR. CAPOGROSSO:  I did receive a document.  It
2   is not signed, Judge, and that was one of the comments I
3   wanted to make.  It's not signed by defendant Smart.  So
4   I don't know who wrote it and whether it's relevant or
5   material.  It is also dated after the date that you
6   required defendant Smart to respond by.  It's dated
7   February 24th.  You required him to respond by February
8   12th.

9       There's also -- it replies with the words
10  "information and belief" and according to -- Black's
11  Dictionary indicates information and belief is
12  information not made on firsthand knowledge but based on
13  secondhand knowledge.

14      THE COURT:  So again, as far as the timeliness,
15  Mr. Smart's letter which is ECF 59, requested an
16  extension of time nunc pro tunc to serve his responses
17  and I granted that request at ECF number 162.  And I kept
18  today's conference as scheduled to ensure that you have
19  responses and if you're saying that the responses sent
20  were not signed, I'm sure that's an oversight but in
21  order to correct it, I'm willing to go through this on
22  the record as I intended with Mr. Smart.

23      Mr. Smart?

24      MR. SMART:  Yeah.

25      THE COURT:  Are you willing today to answer

5

Proceedings

1  some of these questions on the record, so that we could

2  get this matter completed?

3            MR. SMART:  Yeah.

4            THE COURT:  Okay, sir.  So Mr. Smart, I am

5  going to ask you to raise your right hand, please.

6            MR. SMART:  Yeah.

7  D A V I D   S M A R T ,

8       having been first duly sworn, was examined and

9       testified as follows:

10           THE COURT:  And can you state your full name,

11 sir?

12           MR. SMART:  Yeah, my name is David Smart.

13           THE COURT:  And Mr.  Smart, were you employed

14 at the Brooklyn South Traffic Violations Bureau located

15 at 2875 West 8th Street in Brooklyn, New York, sir?

16           MR. SMART:  Yeah, I was once employed there but

17 I am no longer there.

18           THE COURT:  Okay.  So that answers question 1

19 and 2.  What was your job when you were working there,

20 sir?

21           MR. SMART:  I was a security guard.

22           THE COURT:  And who was your employer?  Who

23 paid your wages when you were employed there?

24           MR. SMART:  Yeah, the -- I started with a

25 company called PEC, started -- I started on 2/7 to '16,

Transcriptions Plus II, Inc.

6

Proceedings

1   2016.  I was there the 2015 when this (indiscernible)

2   occurred with PEC.  And then I resumed -- when PEC left,

3   I resumed working with Explorer (ph.) from 2/20 to --

4   2/2016 to October 8, 2020.

5           THE COURT:  So you're not currently working at

6   Brooklyn South Traffic Violations Bureau; is that

7   correct, sir?

8           MR. SMART:  No, yes, it's correct because I

9   left there since October 20, 2020 -- October 8th, sorry,

10  October 8th, 2020.

11          THE COURT:  So October 8th of 2020, you stopped

12  working at the Brooklyn South Traffic Violations?

13          MR. SMART:  Yeah, yeah, I was working for

14  Explorer at the -- at that time.

15          THE COURT:  Okay.  And from -- I think you said

16  2016 until 2020, you were working at the Brooklyn South

17  Traffic Violations Bureau; is that correct?

18          MR. SMART:  Yeah, with Explorer Company, a

19  different company, not PEC.  PEC left and we were -- they

20  were replaced by Explorer, a security company located on

21  the 151st Street -- 60 51st Street in Manhattan.

22          THE COURT:  So you're basically saying there

23  were different names of the employer because different

24  security firms got the contract but you were there from

25  2015 until 2020; is that --

7

Proceedings

1    MR. SMART:  Yeah, yes, yes.  It's how we did --
2    we had -- we had about five -- five different security
3    companies, replacing one another.
4            THE COURT:  Okay.  So now I am going to ask you
5    the question that Mr. Capogrosso wrote at number 5, this
6    is on document 149-1.  He asked, who told you to approach
7    Mario Capogrosso on the morning of May 11th, 2015?
8            MR. SMART:  Nobody -- nobody told me anything.
9    He was -- he was -- he -- he -- he came in.  I was really
10   by the door, he came in -- he came in aggressively,
11   raised his hand up and went to the line and then
12   continuously looking at me, you know?
13           So I am looking and looking, we were looking at
14   each other, and so -- and I say -- I say, wait a minute,
15   let me do -- what's going on here?  So I went -- I said
16   oh, why are you looking at me?  You see, I'm the one that
17   looking at him.  I said you are looking at me so like you
18   want to start something.  He say I was -- I was the one
19   that was looking at him.
20           You know, all of the sudden -- all of the
21   sudden, I was shocked though because I was knowing -- I
22   was knowing for a long time.  I was shocked.  He just
23   punched me in the chest and I had to hold onto the rail.
24   I had to hold onto the rail and then some police officer
25   came, everybody came around.  Then they say hey, you ave

8

Proceedings

1  to do something about this guy.  So I -- I say no, I'm
2  going to go and -- Danielle (ph.) came to me and said
3  what happened.  I said, my -- my response was say well go
4  61 on him, so I went to 6-0, I got 6-1 on him and two
5  police officers came with me, not too long, they came
6  with me.  Then they wanted to talk to him and he was
7  nowhere around.  They waited for quite a while and trying
8  to be -- they look around.  I checked -- they checked the
9  restroom.  They checked many other places.  He wasn't
10  anywhere on the ground.  He was gone.

11          THE COURT:  Okay.

12          MR. SMART:  And then they told me that the only
13  thing I can do, I can contact the One Police Plaza.  I
14  went back to the 6-0 and they gave me a form to fill out
15  and I sent out the -- the -- to One Police Plaza and One
16  Police Plaza sent me a response that -- they -- they
17  going to have a conversation with him or I was going to
18  say, or they're going to send me a letter and the rest
19  was history.

20          THE COURT:  Mr. Smart, I'm going to ask you
21  question number 6 which is similar to question number 5.
22  Did defendant Alan Gelbstein, defendant Ida Trachin,
23  defendant Danielle Calvo and/or Boshra Vahdat, tell you
24  to approach Mr. Capogrosso on the morning of May 11th,
25  2015?

9

                    Proceedings

1          MR. SMART:  No way.  No way.

2          THE COURT:  Thank you, sir.

3          MR. SMART:  They were not even -- they were not

4   even near.

5          THE COURT:  Thank you.  Thank you, sir.  Thank

6   you.  So I have gotten Mr. Smart to answer the

7   interrogatories under oath.  I will get a copy of this

8   conference transcript made part of the record and that in

9   my mind, Mr. Capogrosso, has eliminated this issue which

10  has caused some consternation and I do know that Judge

11  Komitee has set a scheduled for the defendant's summary

12  judgment motion which means that they're going to serve

13  you with their motion on March 31st of 2021 and you have

14  until April 30th of 2021 to serve your opposition and

15  that they will reply and both sides should file their

16  portions of the motion on May 10th, 2021.

17         Let me just mention, Mr. Thompson, that there

18  is a special notice provision under 56.2 of the Local

19  Rules which although Mr. Capogrosso is an attorney and he

20  is not entitled to the special solicitude that pro se

21  litigants are entitled to, it may be smart for you to

22  just to include the notice, so that for any determination

23  to be made, you've gone above and beyond what your duty

24  is and provided him special notice of how to oppose a

25  motion for summary judgment.

10

Proceedings

1          And Mr. Capogrosso, because you are an
2   attorney, you are expected to look at Local Rule 56.1 and
3   to file a counter statement to whatever 56.1 statement is
4   filed by the defendants.
5          Mr. Smart, I know that you're still working
6   with the City Bar and that they were looking for limited
7   scope pro bono counsel for the purpose of moving on your
8   behalf for summary judgment.  Is that correct, sir?
9          MR. SMART:  Yeah, I was called yesterday by Kat
10  Ataka (ph.) and they say that she is looking for one to
11  represent me.
12         THE COURT:  Okay.
13         MR. SMART:  And she is going to let me know as
14  soon as possible.
15         THE COURT:  So you please stay in touch, so
16  that when the motion is made to Judge Komitee, he'll have
17  everybody's motion at the same time, okay?
18         MR. SMART:  Yeah.
19         THE COURT:  Mr. Capogrosso, do you have any
20  questions for the Court before we adjourn?
21         MR. CAPOGROSSO:  I do.  I do.
22         THE COURT:  Yes.
23         MR. CAPOGROSSO:  I do and I will keep it short
24  because I will waste the Court's time and I don't want to
25  do that but I do have several questions.  Number one,

11

Proceedings

1    will I be getting a copy of this deposition, your Honor?

2              THE COURT:  Are you going to get a copy of the

3    transcript of today's --

4              MR. CAPOGROSSO:  Of the transcript --

5              THE COURT:  -- conference?

6              MR. CAPOGROSSO:  -- yes.

7              THE COURT:  Yes, you are sir.

8              MR. CAPOGROSSO:  Yes, thank you.

9         May I ask Attorney Thompson concerning my

10   deposition which I have not received yet and I've sent

11   him a copy of mine.

12             THE COURT:  Mr. Thompson?

13             MR. CAPOGROSSO:  And when am I going to get it?

14             THE COURT:  Mr. Thompson, can you get Mr.

15   Capogrosso a copy of his deposition transcript please?

16             MR. THOMPSON:  Certainly, we can do that.

17             MR. CAPOGROSSO:  When am I going to get it and

18   is it going to be a hard copy or an electronic file?  I

19   sent you a hard copy.

20             MR. THOMPSON:  If you would like, I can email

21   you a digital copy this afternoon.

22             MR. CAPOGROSSO:  I don't want a digital copy, I

23   want a hard copy.  I sent you a hard copy.  I would like

24   a hard copy (indiscernible).

25             THE COURT:  Sir, sir, sir?

12

Proceedings

1      MR. CAPOGROSSO:  Yes.

2      THE COURT:  Nobody is in their office, so if

3  what you're asking for him to print it in a printer and

4  put it in the mail to you, it's going to take longer.

5  Don't you have a printer at your home where he could

6  email it to you and you could print it out for yourself?

7      MR. CAPOGROSSO:  Judge, I would like it the way

8  I sent it to Attorney Thompson. That's how I would like

9  it, hard copy.

10      THE COURT:  Mr. Thompson, is there a way that

11  you could get it printed in your office and sent to Mr.

12  Capogrosso?

13      MR. THOMPSON:  We could but what I would ask in

14  return, it's much more useful for us to have copies of

15  transcripts in digital formats because when he sends

16  things to us in hard copy, we have to have someone go

17  through page-by-page and scan it.

18          So what I would say is if we're going to print

19  out a hard copy for him, I would request a digital copy

20  of the transcripts he's taken.

21      MR. CAPOGROSSO:  That's fine.  That's fine.

22  That's fine.

23      THE COURT:  So Mr. Capogrosso --

24      MR. CAPOGROSSO:  That's fine.

25      THE COURT:  -- they will print out a copy for

Transcriptions Plus II, Inc.

13

Proceedings

1   you because that's your preference and he said could you

2   please email him --

3           MR. CAPOGROSSO:  Absolutely.

4           THE COURT:  -- a digital copy of the

5   depositions that you took, okay?

6           MR. CAPOGROSSO:  Well, normally the court

7   reporter prints out a hard copy.  I've done this for a

8   while.  A hard copy, they do, they send you a hard copy

9   of (indiscernible).  So that's fine.  We'll make a hard

10  copy and as soon as I get a hard copy, I'll send you a

11  digital copy.

12          In terms of the deposition, Judge, this is the

13  Court's deposition, am I allowed to (indiscernible) any

14  question?

15          THE COURT:  No.

16          MR. CAPOGROSSO:  I am not.

17          THE COURT:  You're done.  You're done.

18          MR. CAPOGROSSO:  All right.  Okay.

19  (Indiscernible).

20          THE COURT:  Was there anything else today, Mr.

21  Capogrosso before we adjourn?

22          MR. CAPOGROSSO:  When will I get the hard copy,

23  Attorney Thompson?

24          MR. THOMPSON:  I -- let me check and see.  I

25  will try to get it in the mail for you by the end of the

14

Proceedings

1  wee, does that work?

2           MR. CAPOGROSSO:  That's fine.  That will be

3  great.

4           THE COURT:  And likewise, I'll get the court

5  reporter's to transcribe today's conference and I will

6  endeavor to get it to you by the end of next week, Mr.

7  Capogrosso.

8           MR. CAPOGROSSO:  All right.  I'm not wanting to

9  waste the Court's time but I have one more comment that I

10  would like to ask Attorney Thompson and as well as the

11  attorney for the DMV.  This was brought up at the

12  deposition of defendant Gelbstein.  May I ask Attorney

13  Thompson?

14           THE COURT:  Go ahead, Mr. Capogrosso.

15           MR. CAPOGROSSO:  Fine.  At the attorney of

16  Attorney Gelbstein, you testified that there were no

17  ticket brokers in his office.  Defendant Calvo indicated

18  he saw ticket brokers in his office.

19           THE COURT:  I'm having a difficult time, Mr.

20  Capogrosso, understanding --

21           MR. CAPOGROSSO:  Fine.

22           THE COURT:  -- what you're saying.  I don't

23  know if it's the line or you're speaking not into the

24  phone but please, you are asking Mr. Thompson a question

25  about Gelbstein's deposition, so what is the question?

Proceedings

1      MR. CAPOGROSSO:  Yes.  The question is at his

2  deposition, I'm speaking into the phone now, he indicated

3  that there were no ticket brokers in his office, Jewish

4  ticket brokers in his office.  Defendant Calvo indicated

5  that there were.  She saw them.  I saw them. I was there

6  ten years.  He indicated that he was not pleading

7  motorists guilty on a sidebar with Judge Bloomstein.  I

8  indicated I saw that.  He indicated that he might have --

9  might have --

10      THE COURT:  What is the question that you have,

11  Mr. Capogrosso?

12      MR. CAPOGROSSO:  The question is is this, your

13  Honor.  Your Honor, the question is this.  These are

14  allegations of wrongdoing on behalf of -- by Defendant

15  Gelbstein by myself on behalf -- by defendant Gelbstein

16  by myself.  Has the Attorney General's office opened up

17  an investigation concerning these allegations of

18  wrongdoing with respect to defendant Gelbstein?

19      THE COURT:  Mr. Capogrosso, sir, with all due

20  respect --

21      MR. CAPOGROSSO:  Yes.

22      THE COURT:  -- you are an attorney.  If you

23  want to ask a FOIA request of the State regarding any

24  investigation, you could do that but Mr. Thompson is not

25  going to have to answer your questions today and again,

16

Proceedings

1   as far as the summary judgment goes, if there are
2   inconsistencies in the testimony of the witnesses, you
3   could use that for whatever purpose is, you could use for
4   whatever purpose you believe will help you sustain your
5   burden as the plaintiff in this civil rights action but
6   that's not the purpose of today's call.
7           So I am not going to have Mr. Thompson have to
8   answer whether there's an investigation into these
9   allegations.  You say there was testimony that
10  contradicted Gelbstein's testimony.  You can point that
11  out in your papers to the Court and make your best
12  argument but that is not for Mr. Thompson today and if
13  you want to file a FOIL request with the State to find
14  out if there has been an investigation, you're an
15  attorney, sir, you're free to do that.
16          MR. CAPOGROSSO:  I understand that.
17          THE COURT:  Okay?
18          MR. CAPOGROSSO:  One more -- I don't want to
19  waste the Court's time, I'll take one more minute.
20          THE COURT:  Yes, sir.
21          MR. CAPOGROSSO:  With respect to your
22  questioning of defendant Smart, now I would ask that a
23  more precise question because part of the question was
24  who told defendant Smart -- who told you to approach me,
25  approach, the word was approach.

17

Proceedings

1          THE COURT:  He said no one did.

2          MR. CAPOGROSSO:  Now defendant Smart --

3          THE COURT:  He said no one did.  And he clearly

4   talked about that you walked in, were staring at him, he

5   was staring at you, because you were staring at him and

6   that's why he approached you.  That's what his sworn

7   testimony was.

8          MR. CAPOGROSSO:  He didn't say that he

9   approached me.

10         THE COURT:  Yes, he did.

11         MR. CAPOGROSSO:  That's the question I want

12  more precise answer.  He never said he approached me.

13         THE COURT:  He said he approached you.  He said

14  he approached you --

15         MR. CAPOGROSSO:  All right.  I'll look at the

16  deposition.

17         THE COURT:  -- for staring at him.

18         MR. CAPOGROSSO:  I'll look at the transcript.

19         THE COURT:  Okay.

20         MR. CAPOGROSSO:  All right.  Fine.  Thank you,

21  Judge.

22         THE COURT:  Okay. Anything else, Mr. Thompson

23  before we adjourn today?

24         MR. THOMPSON:  Yes, your Honor, one quick

25  matter and it may be for Judge Komitee.  I noticed in Mr.

18

Proceedings

1  Smart's submission that he's contemplating filing his own

2  motion for summary judgment which would presumably go on

3  a different and alter timetable than ours.

4          THE COURT:  Hopefully not, hopefully not.

5  Hopefully, whoever is filing for him will be able to file

6  something short and sweet within the time frame set by

7  the Court and if not, they'll make the application to

8  Judge Komitee.

9          MR. THOMPSON:  Okay.  Our request was just that

10  we, you know -- our time table be harmonized with that

11  one but we can see what happens then.

12          THE COURT:  Stay with your time table unless

13  you need an extension of time and then you should

14  approach Mr. Capogrosso before approaching Judge Komitee.

15          MR. THOMPSON:  Thank you, your Honor.

16          THE COURT:  Anything further, Mr. Smart, before

17  we adjourn here today?

18          MR. SMART:  No, what I -- what I would like to

19  say to Mr. Capogrosso is that I have known him -- your

20  Honor, I have known Mario, I used to work for Alexanders

21  and that was how the whole thing started and I was

22  talking him and I say oh, he used to work for Alexanders

23  also.  At what part --

24          MR. CAPOGROSSO:  No, this is off the record.

25          MR. SMART:  No, no, no, no this is very --

Proceedings

1    THE COURT:  No, we're still on the record.

2    MR. SMART:  This is very -- this is very

3  important.  This is very important because that is where

4  you and me became we're talking about this and then we're

5  talking about Alexanders and all those kind of stuff and

6  then -- then he also told me that he's so lonely where he

7  lives and he would like to find a place, a club or some

8  sort.  So I told him about Log Cabin, that was a club on

9  23rd Street and Avenue Z and -- Town Coffee (ph.) on 20 -

10 - on 18th Street and Avenue Z.  And we went on -- that

11 went on, he carry on and you impressed me for introduce

12 you to those clubs.  So you know, I am just shocked that

13 this nonsense will come to this kind of a area which I

14 wasn't expecting and that's all I have to say because I'm

15 very shocked.

16    MR. CAPOGROSSO:  Well, this is nonsense.  I'm

17 out of work.  My career has been ruined, David, ruined.

18 I don't have to explain --

19    THE COURT:  Again --

20    MR. CAPOGROSSO:  -- (indiscernible) the things

21 that you created, (indiscernible) stopped.

22    THE COURT:  Mr. Capogrosso --

23    MR. CAPOGROSSO:  There was all kinds of

24 nonsense.

25    THE COURT:  Mr. Capogrosso, again --

20

Proceedings

1       MR. CAPOGROSSO:  Yes, Judge.

2       THE COURT:  -- you're litigating the case --

3       MR. CAPOGROSSO:  I understand.

4       THE COURT:  -- Mr. Smart just stated on the

5  record that he's shocked.  It has nothing to do with the

6  merits of the case.  He's shocked.

7       MR. CAPOGROSSO:  Fine, Judge.

8       THE COURT:  He's entitled to his feelings.

9       Is there anything else that anybody needs to

10  address today, otherwise I am adjourning the conference.

11  All discovery is closed.

12       MR. CAPOGROSSO:  Okay, David.

13       THE COURT:  The defendants have gotten

14  permission from Judge Komitee to move for summary

15  judgment and the schedule has been set by Judge Komitee

16  and any alteration of that schedule should only be made

17  on application to Judge Komitee after the parties have

18  spoken about it if they need any extension of time.  That

19  works on both sides, Mr. Capogrosso.  If you need more

20  time, you need to contact Mr. Thompson.  If Mr. Thompson

21  needs more time, he needs to contact you and the Court

22  could always grant it even if one side or the other says

23  no.

24       So again, I am saying that the summary judgment

25  schedule remains in effect.  I have said to look at the

21

Proceedings

1  Local Rules, Mr. Thompson, to make sure that you're

2  complying with them, that goes for you as well, Mr.

3  Capogrosso.  They'll get you the transcript of the

4  deposition.  You'll get them the transcripts.  I will get

5  the record made from today's conference and make that

6  transcript available to you, Mr. Capogrosso and with

7  that, we are adjourned.

8          MR. CAPOGROSSO:  Thank you.

9          THE COURT:  Thank you everybody very much.

10         MR. SMART:  Thank you, your Honor.

11              (Matter Concluded)

12                  -o0o-

13

14

15

16

17

18

19

20

21

22

23

24

25

22

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **17th** day of **March** 2021.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.