**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

# No. 22-2827

---

Mario H. Capogrosso,
Plaintiff-Counter-Defendant-Appellant,

v.

Alan Gelbstein, in his official and individual capacity, Ida Traschen, in her official
and individual capacity, Danielle Calvo, in her official and individual capacity,
PEC Group of NY, Inc., Mark J.F. Schroeder, Commissioner of the New York State
Department of Motor Vehicles,
Defendants - Appellees,

David Smart, Sadiq Tahir,
Defendants-Counter-Claimants-Appellees,

Boshra Vahdatlamas, in her official and individual capacity, AKA Bushra Vahdat,
Elizabeth Prickett--Morgan, in her official and individual capacity, Jean Flanagan,
in her official and individual capacity, Vincent Palmieri, in his official and
individual capacity, John and Jane Doe,
Defendants.

---

*Appeal from the United States District Court for the
Eastern District of New York, Docket No. 2:18-cv-02710-MKB-LB
From The Order Dated September 29, 2022*

---

**BRIEF OF APPELLANT**

---

Dated: March 7, 2023

Mario H. Capogrosso, Esq.
Appellant, Pro Se
21 Sheldrake Place,
New Rochelle, NY 10804
Tel: 914-806-3692
Email: nry4@aol.com

# TABLE OF CONTENTS

*Table of Authorities*        3

**I. STATEMENT OF THE CASE**        5

**II. JURISDICTIONAL STATEMENT**        6

**III. STATEMENT OF ISSUES**        7

**IV. STATEMENT OF FACTS**        8

**V. PROCEDURAL HISTORY**        14

**VI. SUMMARY OF THE ARGUMENT**        18

**VII. STANDARD OF REVIEW**        19

**VIII. ARGUMENT**        20

    **i. The Court Erred In Granting A Protective Order And Prohibiting The Taking Of Depositions Of Defendants By The Plaintiff**        20

    **ii. The Court Erred In Prohibiting The Plaintiff From Questioning Witnesses**        24

    **iii. The Court Erred In Granting Of Summary Judgment Despite The Genuine Disputes Of Material Facts That Existed**        26

**IX. CONCLUSION**        33

**X. CERTIFICATE OF COMPLIANCE**        34

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).    16

Apicella v. McNeil Labs, 66 F.R.D. 78, 82 (E.D.N.Y. 1975)    15

Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006)    16

Bishop v. Toys "R" Us—NY LLC, 414 F. Supp. 2d 385 (S.D.N.Y. 2006);    18

Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009)    18

Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)    19

Brooks v. Santiago, No. 93 Civ. 206 (HB), 1998 WL 107110, at *4

(S.D.N.Y. Mar. 10, 1998)    19

Dennis v. Sparks, 449 U.S. 24, 27–28 (1980)    19

Dorsett v. Ctv. of Nassau. 732 F.3d 157, 160 (2d Cir. 2013)    6

Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011)    .    15

*Ex parte Young* , 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)    18

First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172,

175-76 (2d Cir. 1998).    15

Guiducci v. Kohl's Dept. Stores, 320 F. Supp. 2d 35, 37-38 (E.D.N.Y. 2004)    18

Harry v. Marchant, 237 F.3d 1315, 1317 (11th Cir. 2001).    2

Heller V. Bedford Cent. Sch. Dist.. 665 Fed. App'x 49,52-53 (2d Cir. 2016)    8

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting

Anderson, 477 U.S. at 248)     16

N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013)     11

Oppenheimer Fund, Inc., 437 U.S. 340, 351 (1978);     12

Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000)     16

Puckett V. Citv of Glen Cove. 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009)     8

Rojas v. Alexander's Dep't Store, Inc., 654 F. Supp. 856, 858 (E.D.N.Y. 1986)     19

Summa v. Hofstra Univ.. 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases);     5

Sims v. Blot, 534 F.3d 117, 132 (2d Cir. 2008)     14

Thomas E. Hoar, Inc. v. Sara Lee Corp., 882 F.2d 682, 687 (2d Cir. 1989)     12

Turkmen v. Hasty, 789 F.3d 218, 226 n.6 (2d Cir. 2015);     11

*VOPA* , 563 U.S. at 254–55, 131 S.Ct. 1632     18

West v. Atkins, 487 U.S. 42, 55-56     19

Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014)     11

**Statutes:**

28 U.S.C. §1331     2

42 U.S.C. § 1983     9

42 U.S.C. § 1988     9

U.S. Const. Amd. I     5

## <u>STATEMENT OF THE CASE</u>

The Appellant appeals an Order granting summary judgment issued by Hon. Eric R. Komitee on September 29, 2022 adopting the report and recommendations of Hon. Louis Bloom issued on February 1, 2022.

In this case alleging violations of civil rights pursuant to 42 U.S.C. §§ 1983 and 1988, the Appellant argues that the Court wrongfully granted summary judgment in favor of the Defendants and wrongfully concluded that the Plaintiff failed to satisfy the standards for overcoming summary judgment on the basis of lack of sufficient evidence; however, a part of the reason that the Appellant was able to overcome the initial motion to dismiss was due to the sufficient evidence that existed in the instant matter as identified by Judge Louis Bloom in her Report and Recommendation denying in-part Defendants' motion to dismiss, ECF No. 51, and which was adopted by Order of the Court. ECF. No. 71. . To that end, the Court also erred in prohibiting the Appellant from conducting depositions and also erred in prohibiting the Appellant from being able to question witnesses which directly impacted the ability of the Appellant to obtain evidence in support of his position. Nonetheless, based on the evidence available on the record, the Appellant argues that there was sufficient evidence to overcome summary judgment and that the lower court erred in its granting of summary judgment thereby warranting reversal on appeal.

## **JURISDICTIONAL STATEMENT**

Subject matter jurisdiction is proper under 28 U.S.C. §1331 because this action involves claims brought raising federal questions involving the 14th Amendment of the U.S. Constitution as it applies to governmental entities, state actors, and even some private individuals acting under the color of state law as described in Rojas v. Alexander's Dep't Store, Inc., 654 F. Supp. 856, 858 (E.D.N.Y. 1986). Appellate jurisdiction is proper under 28 U.S.C. § 1291 since this appeal is taken from a final order issued in the United States District Court for the Eastern District of New York.

Summary dismissal of a claim through a motion for summary judgment review is de novo. The court accepts all allegations of the complaint as true and construes the facts in the light most favorable to the plaintiff. Harry v. Marchant, 237 F.3d 1315, 1317 (11th Cir. 2001).

## <u>STATEMENT OF ISSUES</u>

1. Did the U.S. District Court Commit Legal Error In Preventing The Appellant From Taking Depositions?

2. Did the U.S. District Court Commit Legal Error In Preventing The Appellant From Being Able To Question Witnesses?

3. Did the U.S. District Court Commit Legal Error In Granting Summary Judgment Against The Appellant And Dismissing The Action?

**STATEMENT OF FACTS**

Attorney Mario H. Capogrosso, proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that defendants retaliated against him for exercising his constitutional rights by permanently barring him from the Traffic Violations Bureau ("TVB") in May of 2015.

Between on or about April 2005 and May 11, 2015, Plaintiff practiced law almost exclusively in what is known as the Traffic Violations Bureau in the metropolitan New York City area, including the Brooklyn South office of that Bureau. The instant action arises out of plaintiff's bar from the Traffic Violations Bureau ("TVB") in May 2015. Compl. ¶¶ 5, 11. Plaintiff began representing motorists at the TVB in 2005. Compl. ¶ 3; ECF No. 221, Plaintiff's Deposition Transcript, ("Pl. Dep."), 18:13–18, 21:15–23.7 The TVB is a division within the Department of Motor Vehicles ("DMV"), an agency of New York State, and proceedings within the TVB are overseen by Administrative Law Judges ("ALJs"). See generally, N.Y. Traffic Law §§ 225 et seq.

In December 2011, Plaintiff was temporarily suspended from practicing his profession in the Traffic Violations Bureau Courts as a result of complaints of misconduct, which were never determined to be true as no hearings were ever held in response thereto and Plaintiff was never given the opportunity to confront his accusers. Plaintiff was restored, as a result of a Stipulation of Settlement, several

months later and all of his rights and privileges were also restored. At the time that Plaintiff was temporarily suspended, he was advised that one of his accusers was Security Guard, David Smart, who is a Defendant in this action.

The reason behind why Defendant David Smart engaged in this course of conduct is not due to any genuine upholding of law; instead, it was to retaliate against the Appellant regarding an incident where one of the Appellant's clients appeared for a traffic hearing while knowing that there was an outstanding balance in the amount of $80.00 to be paid to the Appellant; upon appearing at the DMV and not finding the Appellant there, the Client was approached by Defendant Smart who told the client to pay him the $80.00 and that he would give it to the client. At the following hearing, the Appellant and the Client appeared at the DMV for a hearing and the client claimed to have paid the Appellant in full which the Appellant disputed; the client then stated that they gave the outstanding balance to "that person over there" and pointed to Defendant Smart. An investigation was conducted and Defendant Smart admitted that the $80.00 was taken and instead claimed that he gave it to the Appellant, which never took place, and ever since then Defendant Smart began engaging in the harassing and menacing conduct described in the Plaintiff's complaint. ECF No. 1

Plaintiff continued to practice in the Brooklyn South TVB mid-2012 and soon after, he and David Smart, a security guard at TVB, employed by the private

security firm PEC Group of NY, Inc. ("PEC"), made complaints against one another. ECF Nos. 202 and ECF No. 204. The Defendant Smart walked up to the Plaintiff and stood within 3 inches away from the Plaintiff's face; when asked by the Plaintiff "What's your problem?", Defendant responded "F*** You, you are the problem.". This is the beginning of a long history of Defendant Smart engaging in this type of harassing and menacing conduct to retaliate against the Plaintiff for reporting him for the incident involving the wrongful taking of money from one of the Plaintiff's clients. Defendant Gelbstein, Administrative Judge at the time, had the matter investigated and Defendant Smart admitted to the taking of the funds described herein; but Defendant Smart was permitted by Defendant Gelbstein to remain in his position which gave rise to the subsequent incidents of harassment and retaliation complained of.

Plaintiff contends that Smart manufactured the confrontation under the tacit consent of Gelbstein to utilize the incident as a pretext to initiate administrative action against the Plaintiff. On March 20, 2015, plaintiff sent a letter (hereinafter, "the AG Letter") to Assistant Attorney General ("AAG") Elizabeth Prickett-Morgan of the New York State Office of the Attorney General, complaining that, inter alia, Smart was tampering with plaintiff's files, that Smart had "gotten in [his] face, stared and glared," and that Smart had gestured in plaintiff's direction. ECF No 227. Plaintiff's letter further complained that

Gelbstein failed to respond to complaints about Smart. Id. Gelbstein and Traschen became aware of the letter but did not respond to it or take any action.

Here, protected speech refers to his March 20, 2015 letter to Morgan stating his frustration with Gelbstein's administration of the Brooklyn TVB and alleging Smart's harassment. ECF No. 1 and ECF 227. For the purposes of this motion, plaintiffs letter to Morgan is protected by the First Amendment. plaintiff alleges that Gelbstein and Calvo were aware of the Morgan Letter. ECF No.1 and EF 227. Plaintiff further alleges that Gelbstein and Calvo used the May 11,2015 incident with Smart as a pretext for prohibiting plaintiff from representing clients at the TVB in order to retaliate against him for his protected speech. Id The Complaint alleges that Gelbstein, Calvo, and Traschen barred plaintiff from the TVB a month and a half after he sent the letter to Morgan. Id. Although there is no bright line rule regarding temporal proximity, a month and a half falls within the temporal range sufficient to raise a plausible inference of a retaliatory motive. Summa v. Hofstra Univ.. 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases); cf Maco v. Baldwin Union Free School Dist.. 726 Fed. App'x 37, 39 (2d Cir. 2018) (summary order) (discussing that a lapse of ten months does not support an inference of causation). Moreover, plaintiff alleges that Gelbstein and Calvo knew about his letter to Morgan and stated,

"[c]an't you go practice somewhere else ... I saw what you wrote about me that I am complicit and incapable." ECF No. 1.

Plaintiff alleges that the State Defendants barred him from representing clients at all TVB locations based on retaliation. ECF No. 1. Plaintiff sufficiently alleges that the State Defendants' retaliatory conduct adversely affected him. Dorsett v. Cty. of Nassau. 732 F.3d 157, 160 (2d Cir. 2013)

On May 5, 2015, plaintiff was involved in an incident at the TVB, which was not initiated by the Appellant, but for which the Appellant was blamed. Less than a week later, on May 11, 2015, Plaintiff and Defendant Smart engaged in his regular course of harassing and menacing conduct by aggressively targeting the Appellant which prompted the objection of the Plaintiff; Smart left the scene and filed a false report with the police complaining about the incident. See ECF Nos. 214–16.

Plaintiff strictly denies that this incident took place, but states that "Smart approached [plaintiff] for no reason" and that plaintiff "tried to avoid an altercation."; Plaintiff denies that the incident was caused by the Plaintiff and instead argues that Smart manufactured the confrontation under the tacit consent of Gelbstein to utilize the incident as a pretext to initiate administrative action against the Plaintiff. There were no witnesses to this event; and there was no security footage that was retrieved to corroborate the allegations of the Defendants. ECF

No. 235-5. Defendant Gelbstein stated during his deposition that he was not present on the morning of May 11, 2015. ECF No. 235-2.

Later that day, Gelbstein and Traschen discussed the incident and concluded that plaintiff

should be permanently barred from the TVB; Plaintiff claims defendants barred him from the TVB in retaliation for his exercise of his constitutional rights [to] criticize the way [Gelbstein] administered his official office." ECF No. 1. Gelbstein and Traschen state that plaintiff's letter to the AG "played no role in this decision to bar the Plaintiff from [TVB] practice; but the Plaintiff argues that this was a motivating factor in this decision and was the motive behind the Defendant's retaliation against the Plaintiff.

## PROCEDURAL HISTORY

Plaintiff filed the instant complaint against defendants on May 8, 2018. ECF No. 1. Proof of service was filed for Calvo, Gelbstein, Morgan, and Smart on June 8, 2018 and for Traschen, Vahdatlamas, and PEC Group of NY, Inc. ("PEC"), on July 27, 2018. ECF Nos. 10, 24.15 Pro se defendants Smart and Tahir answered plaintiff's complaint and raised a counterclaim against plaintiff. ECF Nos. 6–7. Smart and Tahir's counterclaims were dismissed on October 17, 2018. ECF No. 50.

The State Defendants moved to dismiss plaintiff's complaint, ECF No. 42, and Judge Brodie referred the motion to me for a Report and Recommendation. See Nov. 5, 2018 Order. recommended that the State Defendants' motion should be granted in part and denied in part and the Court adopted the Report and Recommendation. ECF Nos. 51 and 71. Specifically, the Court pointed to 'the close proximity' between the retaliation and the protected activity in ruling as it did by describing as follows:

- Here, plaintiff alleges that Gelbstein and Calvo were aware of the Morgan Letter. ECF No. 1. Plaintiff further alleges that Gelbstein and Calvo used the May 11,2015 incident with Smart as a pretext for prohibiting plaintiff from representing clients at the TVB in order to retaliate against him for his protected speech. Id The Complaint alleges that Gelbstein, Calvo, and Traschen barred plaintiff from the TVB a month and a half after he sent the

letter to Morgan. Id. Although there is no bright line rule regarding temporal proximity, a month and a half falls within the temporal range sufficient to raise a plausible inference of a retaliatory motive. Summa v. Hofstra Univ.. 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases); cf Maco v. Baldwin Union Free School Dist.. 726 Fed. App'x 37, 39 (2d Cir. 2018) (summary order) (discussing that a lapse of ten months does not support an inference of causation). Moreover, plaintiff alleges that Gelbstein and Calvo knew about his letter to Morgan and stated, "[c]an't you go practice somewhere else ... I saw what you wrote about me that I am complicit and incapable." ECF No. 1.

- Here, plaintiff alleges that the State Defendants barred him from representing clients at all TVB locations based on retaliation. ECF No. 1. Plaintiff sufficiently alleges that the State Defendants' retaliatory conduct adversely affected him. Dorsett v. Ctv. of Nassau. 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled speech is not the sine qua non of a First Amendment claim."); Puckett V. City of Glen Cove. 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (discussing that in a private citizen context, "[w]here the retaliation is alleged to have caused an injury separate from any chilling effect... an allegation as to a chilling effect is not necessary to state a claim.").

- Defendant's reliance on Heller is misplaced. In Heller, plaintiffs alleged speech constituted threats and posed a risk of physical harm that was not protected by the First Amendment. Heller V. Bedford Cent. Sch. Dist.. 665 Fed. Apex 49,52-53 (2d Cir. 2016) (summary order). ("A review of the record confirms that defendants were interested in [plaintiffs] communications only insofar as they raised the prospect of a shooting spree at the high school."). The facts of this case are distinguishable. Plaintiff's allegedly threatening conduct is entirely separate from the protected speech he alleges: the Morgan Letter.

- Taken together and construing all reasonable inferences in plaintiffs favor, as the Court must, defendant Gelbstein, Calvo, and Traschen's motion to dismiss plaintiffs First Amendment retaliation cause of action for failure to state a claim upon which relief can be granted should be denied

Plaintiff filed an amended complaint, ECF No. 74, but voluntarily withdrew the amended complaint and the Court set a deadline for the parties to complete discovery. ECF No. 82.20 Plaintiff requested that the Court order defendant Commissioner Schroeder be produced for a deposition and that defendant Smart be ordered to respond to his interrogatories. ECF No. 147. The Court granted defendant Schroeder's request for a protective order pursuant to Federal Rule

of Civil Procedure 26(c), ECF No. 146, and directed plaintiff to provide his outstanding interrogatories to the Court for review. ECF No. 148. Discovery closed on December 22, 2020.

Defendant Smart and the State Defendants moved for summary judgment, ECF Nos. 178–79, and plaintiff opposed the motions, ECF Nos. 246, 258. The Court granted the motions for summary judgment on the basis of absolute immunity with regards to the state defendants acting in a judicial capacity and that Defendant smart who was employed by a private security company was not a state actor sufficient enough to impose liability under 42 U.S.C. § 1983. The Plaintiff's remaining state law claims were dismissed without prejudice. Subsequently, the Plaintiff filed objections to the report and recommendations; nonetheless, the trial court adopted the report and recommendations on September 29, 2022 thereby giving rise to the instant appeal.

## <u>SUMMARY OF THE ARGUMENT</u>

The Appellant argues that the Court wrongfully granted summary judgment in favor of the Defendants and wrongfully concluded that the Plaintiff failed to satisfy the standards for overcoming summary judgment on the basis of lack of sufficient evidence. To that end, the Court also erred in prohibiting the Appellant from conducting depositions and also erred in prohibiting the Appellant from being able to question witnesses which directly impacted the ability of the Appellant to obtain evidence in support of their position. Nonetheless, based on the evidence available on the record, the Appellant argues that there was sufficient evidence to overcome summary judgment and that the lower court erred in its granting of summary judgment thereby warranting reversal on appeal.

## <u>STANDARD OF REVIEW</u>

This Court "review[s] de novo the summary dismissal of a complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." <u>N.J. Carpenters</u> <u>Health Fund v. Royal Bank of Scotland Grp., PLC</u>, 709 F.3d 109, 119 (2d Cir. 2013) (citation omitted).

Thus, factual disputes are inappropriate for resolution on a motion for summary judgment. <u>Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC</u>, 783 F.3d 395, 405 (2d Cir. 2015). Courts are "fundamentally unsuited to undertake," and in fact are not permitted to undertake, "credibility assessments" at the summary judgment stage. <u>Turkmen v. Hasty</u>, 789 F.3d 218, 226 n.6 (2d Cir. 2015); accord <u>Wood v. Moss</u>, 134 S. Ct. 2056, 2065 n.5 (2014) "In ruling on a motion for summary judgment, we have instructed, courts 'must take all of the factual allegations of the non-moving party as true. (quoting Iqbal, 556 U.S. at 678).

## ARGUMENT

### i. The Court Erred In Granting A Protective Order And Prohibiting The Taking Of Depositions Of Defendants By The Plaintiff

Fed. R. Civ. P. 26(b)(1) describes the scope of, and limitations on, discovery in civil litigation: In General. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii). Fed. R. Civ. P. 26(b)(1).

"Relevance" under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." Oppenheimer Fund, Inc., 437 U.S. 340, 351 (1978); Thomas E. Hoar, Inc. v. Sara Lee Corp., 882 F.2d 682, 687 (2d Cir. 1989) (holding that "the broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy").

This Court has held that the "right of litigants to discover and present relevant evidence in civil litigations is given great weight in federal courts."

Apicella v. McNeil Labs, 66 F.R.D. 78, 82 (E.D.N.Y. 1975). In Apicella, this Court

further noted that the "liberal" discovery rules tend "toward admitting as much

evidence as possible so that the facts may be more accurately determined." Id. The

lawyers have the right to question a witness for the other party, under oath, before a

court reporter, with no judge present, as part of the "discovery" phase of a lawsuit.

(governed under CPLR Article 31). Interrogatories are insufficient as an alternative

to depositions because interrogatories are normally prepared by attorneys whereas

depositions allow for counsel to examine the character and demeanor of the

deponent and their responses directly which is what makes depositions entirely

different than interrogatories and interrogatories not a sufficient alternative to

depositions. Under CPLR 3117, deposition transcripts may be used at trial: 1. For

impeachment of the deponent when testifying as a witness at trial (CPLR

3117(a)(1)); which is a critical part of the Plaintiff's ability to present evidence in

support of their case.

 The Second Circuit explained the standard for entering a protective order:

The district court has broad discretion to determine whether an order should be

entered protecting a party from disclosure of information claimed to be privileged

or confidential. Galella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973). Where, as

here, the documents are relevant, the burden is upon the party seeking

non-disclosure or a protective order to show good cause. Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 391 (2d Cir. 1981) (citations omitted).

Plaintiff requested that the Court order defendant Commissioner Schroeder be produced for a deposition and that defendant Smart be ordered to respond to his interrogatories. ECF No. 147. The Court granted defendant Schroeder's request for a protective order pursuant to Federal Rule of Civil Procedure 26(c), and directed plaintiff to provide his outstanding

interrogatories to the Court for review. ECF No. 148.

Here, the Court wrongfully and unjustly granted Defendant Schroeder's protective order precluding him from being deposed by the Plaintiff all-together. ECF Nos. 148. The Court failed to follow the standards for granting a protective order as well as the standards for discovery in general which provide 'great weight' to the right of litigants to discover and present relevant evidence in civil litigations Apicella v. McNeil Labs, 66 F.R.D. 78, 82 (E.D.N.Y. 1975). The Court refused to grant Defendant's Smart's request for counsel throughout the course of proceedings, which would have included his appearance and representation at his oral deposition by the Appellant, but appointed him an attorney for the purpose of summary judgment only. As ordered, the Court ordered that all deposition be taken remotely and electronically but then refused to order defendant Smart to produce

an email so as to afford the taking of such depositions. ECF Nos. 21, 29, 30, 66, 71, 72, 144, 162, 168.

In the granting of a protective order with regards to the deposition of defendant Schroeder, and failing to order defendant Smart to produce an email address, after ordering all depositions be taken remotely and electronically, the Court effectively denied the Appellant the ability to produce the requisite evidence necessary to overcome the defendants' motion for summary judgment. ECF Nos. 118, 131, 148, 154, and 159.

With respect to defendant Schroeder, the Court neither found that the information sought was either privileged or confidential; instead, the Court made an arbitrary and capricious determination in favor of Defendant Schroeder that constituted an abuse of discretion and had a substantial impact on the Appellant's ability to produce evidence to substantiate their position in opposition to summary judgment. It is ironic that afterwards the Court authorized summary dismissal of the Plaintiff's claims on the basis of lack of evidence after the Appellant was unjustly precluded from being able to depose the witnesses pertaining to the instant matter including Defendant Schroeder which constitutes reversible error.

With respect to defendant Smart, defendant's Smart's testimony was critical to this case. Only upon proper examination at oral deposition would Appellant be able to discover whether what involvement defendants Gelbstein, Traschen and

Calvo were involved in the incident of May 11, 2015 which resulted in Appellant's removal from the practice of law at the New York TVBs.

Not given the opportunity to depose defendants Schroeder and Smart was an inappropriate, if not unlawful, application of the federal rules of evidence and discovery and for which, in part, the instant application is brought.

**ii. The Court Erred In Prohibiting The Plaintiff From Questioning Witnesses**

The Court further erred in preventing the Appellant from being able to question witnesses with regards to the incidents described at the instant matter. In the case at hand, the Appellant was barred by the Defendant's from legal practice at the TVB but there was no ban on the Plaintiff from accessing the facility all together. ECF No. 1. In fact, it would be difficult to imagine what the case would be if the Appellant were issued a traffic ticket within the jurisdiction of the TVB and had to appear at the TVB for adjudication pursuant to the due process of law. There was never any ban on the Appellant from entering the TVB specifically; only that the Appellant was prohibited from *practicing* at the TVB.

Nonetheless, the lower court prevented the Appellant from being able to question witnesses at the TVB in what the Appellant argues is an abuse of discretion. )ECF Nos. 94, 104, 108. ("A district court has abused its discretion if it [has] based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or [has] rendered a decision that cannot be located

24

within the range of permissible decisions." Sims v. Blot, 534 F.3d 117, 132 (2d Cir. 2008) (citations, 8 alterations, and internal quotation marks omitted).

Fed. R. Civ. P. 26(b)(1) describes the scope of, and limitations on, discovery in civil litigation: In General. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii). Fed. R. Civ. P. 26(b)(1).

The denial of discovery is reviewed for abuse of discretion, and to the extent that a discovery request was not properly considered, it is subject to de novo review. First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 175-76 (2d Cir. 1998).

This Court has held that the "right of litigants to discover and present relevant evidence in civil litigations is given great weight in federal courts." Apicella v. McNeil Labs, 66 F.R.D. 78, 82 (E.D.N.Y. 1975). In Apicella, this Court further noted that the "liberal" discovery rules tend "toward admitting as much evidence as possible so that the facts may be more accurately determined." Id. In prohibiting the Appellant from being able to question witnesses relevant to the

incidents described in the instant matter, the lower court clearly abused its discretion and exceeded its legal limitations thereby constituting reversible error and warranting reversal on appeal.

### iii. The Court Erred In Granting Of Summary Judgment Despite The Genuine Disputes Of Material Facts That Existed

"Summary judgment is proper only when, construing the evidence in the light most

favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248).

"The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398

(2d Cir. 2000); see also, Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

**a. Denial Of Defendant's Initial Motion To Dismiss**

First and foremost, it is important to note that the Court initially denied the Defendant's motion to dismiss without raising the issues raised by the motion granting summary judgment. Specifically, the Court found that "Here, plaintiff alleges that Gelbstein and Calvo were aware of the Morgan Letter. ECF No. 1 and ECF 227. Plaintiff further alleges that Gelbstein and Calvo used the May 11,2015 incident with Smart as a pretext for prohibiting plaintiff from representing clients at the TVB in order to retaliate against him for his protected speech. Id The Complaint alleges that Gelbstein, Calvo, and Traschen barred plaintiff from the TVB a month and a half after he sent the letter to Morgan. Id Although there is no bright line rule regarding temporal proximity, a month and a half falls within the temporal range sufficient to raise a plausible inference of a retaliatory motive. Summa v. Hofstra Univ.. 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases);"

The Court further found that "plaintiff alleged that Gelbstein and Calvo knew about his letter to Morgan and stated, "[c]an't you go practice somewhere else ... I saw what you wrote about me that I am complicit and incapable." Compl. K 10, ECF Nos. 1 and 227. Here, plaintiff alleges that the State Defendants barred

him from representing clients at all TVB locations based on retaliation. Compl. ECF 1. Plaintiff sufficiently alleges that the State Defendants' retaliatory conduct adversely affected him. <u>Dorsett v. Ctv. of Nassau</u>. 732 F.3d 157, 160 (2d Cir. 2013).

Lastly, the Court concluded that taken together and construing all reasonable inferences in plaintiffs favor, as the Court must, defendant Gelbstein, Calvo, and Traschen's motion to dismiss plaintiffs First Amendment retaliation cause of action for failure to state a claim upon which relief can be granted should be denied.

**b. The Granting Of Summary Judgment Conflicts With Denial Of Motion To Dismiss**

In the instant matter, there exists a genuine dispute of material fact with regards to the incident pertaining to the instant matter. On May 11, 2015, defendant Smart approached plaintiff unproved and initiated an incident with the Appellant. ECF. No. 1 Plaintiff's testimony has been consistent. throughout the proceedings; Plaintiff does not deny that an incident took place, but states that "Smart approached [plaintiff] for no reason" and that plaintiff "tried to avoid an altercation." ECF. No. 1 Plaintiff denies that the incident was caused by the Plaintiff and instead argues that Smart manufactured the confrontation under the tacit consent of Gelbstein to utilize the incident as a pretext to initiate administrative action against the Plaintiff. ECF 236 and 236-1.

If this genuinely disputed material fact is resolved in favor of the Plaintiff, it can reasonably be concluded that the Defendants infringed on the fundamental constitutional rights of the Plaintiff under color of state law thereby warranting the instant action pursuant to 42 U.S.C. § 1983.

Moreover, the lower court incorrectly applied the premise that judges generally have "absolute immunity from suits for money damages for their judicial actions" and thus "even allegations of bad faith or malice cannot overcome judicial immunity." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) but conveniently misses important exceptions to this immunity.

An "important limit" to that rule allows federal suits against state *officials* in certain circumstances. *Id.* at 254–55, 131 S.Ct. 1632. Under the Ex parte Young doctrine, a state official is "stripped of his official or representative character" and thereby deprived of the State's immunity, Ex parte Young , 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), when he commits an "ongoing violation of federal law." *VOPA* , 563 U.S. at 254–55, 131 S.Ct. 1632(quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md. , 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) ). A person who is aggrieved may therefore seek prospective relief by suing him in his official capacity for injunctive relief prohibiting continuation of the ongoing violation of federal law.

Therefore, it was legally incorrect for the Court to conclude that it lacked jurisdiction over the State Defendants and that the State Defendants were immune from suit altogether.

Furthermore, it was also incorrect to conclude that defendant Smart was not a state actor and this decision conflicts with already established case law within this jurisdiction. Private guards may be sued (1) "when they are given the authority of state law" or (2) "if they are willful participants in the joint activity of the State or its agents." Bishop v. Toys "R" Us—NY LLC, 414 F. Supp. 2d 385 (S.D.N.Y. 2006); Guiducci v. Kohl's Dept. Stores, 320 F. Supp. 2d 35, 37-38 (E.D.N.Y. 2004) (collecting cases).

For example, a private security guard may act under state law if he is delegated state authority as a deputized "special patrolman," see Rojas v. Alexander's Dep't Store, Inc., 654 F. Supp. 856, 858 (E.D.N.Y. 1986), or if he acts in tandem with police officers, see Brooks v. Santiago, No. 93 Civ. 206 (HB), 1998 WL 107110, at *4 (S.D.N.Y. Mar. 10, 1998).

Indeed, private action may be deemed governmental when (1) private actors are jointly engaged with state actors to deprive a person of constitutional rights, Dennis v. Sparks, 449 U.S. 24, 27–28 (1980); (2) where the state compels the act, Blum v. Yaretsky, 457 U.S. 991, 1004 (1982); (3) or when the state delegates a public function to a private entity, West v. Atkins, 487 U.S. 42, 55-56.

Here, Defendant Smart is not a 'layperson' who made a complaint to the Administrative Judge that resulted in the wrongful and unconstitutional ban of the Plaintiff from practicing in the TPV; but rather, the Defendant was specifically employed and acting under the guidance and instruction of the Administrative Law Judge in this matter as a actor in tandem with the Court itself.

This does not even consider the fact that the Appellant alleges that defendant Smart conspired with defendant Gelbstein based on the circumstantial events prior to the manufactured incident between the Appellant and defendant Smart where the defendant Gelbstein told the Appellant "can't you go practice somewhere else"; ECF. No. 1 the facts and circumstances pertaining to this matter, if believed to be true as they are required to be during the evaluation of a motion for summary judgment are certainly indicative of some sort of potential for conspiracy between the Defendants in the present matter to deprive the Appellant of his constitutional rights by manufacturing a pretext to cause the Appellant to become administratively barred from practicing in the TVB through the incident described in the present matter. There were no witnesses to this event; and there was no security footage that was retrieved to corroborate the allegations of the Defendants. ECF No. 235-2, 235-3 and 235-5. Defendant Gelbstein stated during his deposition that he was not present on the morning of May 11, 2015. ECF. No. 235-2. Defendant Gelbstein also stated that the allegations made against the Plaintiff were

31

never investigated; and yet the administrative ban of the Plaintiff was instituted nonetheless. ECF No. 235-2.

There is sufficient proof to establish motive and desire by the defendants to have Appellant removed from the practice of law at New York TVBs. Appellant faithfully served the motorists of the State of New York for ten years, April 2005 to May 2015, ECF 48 pages 90-94, and ECF No. 1. During this time Appellant observed numerous inappropriate, if not unlawful, actions by judge, attorneys and clerical staff at the Brooklyn TVB. ECF Nos.247, 190, 236, 236-1, 235-2, 235-3, 235-5.

The evidence shows a premeditated deliberate action on the part of the defendants to have Appellant removed from the Brooklyn TVB on May 11, 2015, motivated by personal bias and prejudice as well as in retaliation against the Appellant for his letter of March 20, 2015 ECF. No. 227.

In sum, the lower court incorrectly cited inapplicable and distinguishable case law distinguishing between when private action may or may not be deemed governmental and committed legal error in concluding that the actions of Defendant Smart was not deemed governmental thereby warranting reversal on appeal.

## VI. CONCLUSION

WHEREFORE, for the foregoing reasons, the Appellant request that this Court   REVERSE AND REMAND the decision entered by the lower court granting summary judgment in the instant matter as well as the granting of the protective order, that unjustly prohibited the Appellant from being able to depose and question relevant witnesses pursuant to the reasons and authorities cited herein and allow the Appellant the ability to properly produce defendant Smart upon oral examination, allow Appellant to depose additional witnesses as needed, and allow Appellant to enter the Brooklyn TVB or any New York TVB for the sole purpose to gather evidence and question witnesses in this instant matter

For the Appellant/Plaintiff,

Dated: March 7, 2023

Mario H. Capogrosso, Esq.
Appellant, Pro Se
21 Sheldrake Place,
New Rochelle, NY 10804
Tel: 914-806-3692
Email: nry4@aol.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that: 1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,185 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). 2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

For the Appellant/Plaintiff,

Dated: March 7, 2023

Mario H. Capogrosso, Esq.
Appellant, Pro Se
21 Sheldrake Place,
New Rochelle, NY 10804
Tel: 914-806-3692
Email: nry4@aol.com