## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# No. 22-2827

Mario H. Capogrosso,
Plaintiff-Counter-Defendant-Appellant,

v.

Alan Gelbstein, in his official and individual capacity, Ida Traschen, in her official and individual capacity, Danielle Calvo, in her official and individual capacity, PEC Group of NY, Inc., Mark J.F. Schroeder, Commissioner of the New York State Department of Motor Vehicles,
Defendants - Appellees,

David Smart, Sadiq Tahir,
Defendants-Counter-Claimants-Appellees,

Boshra Vahdatlamas, in her official and individual capacity, AKA Bushra Vahdat, Elizabeth Prickett--Morgan, in her official and individual capacity, Jean Flanagan, in her official and individual capacity, Vincent Palmieri, in his official and individual capacity, John and Jane Doe,
Defendants.

*Appeal from the United States District Court for the Eastern District of New York, Docket No. 2:18-cv-02710-MKB-LB From The Order Dated September 29, 2022*

## APPELLANT'S APPENDIX - VOLUME I

Dated: March 7, 2023

**Mario H. Capogrosso, Esq.**
**Appellant, Pro Se**
21 Sheldrake Place,
New Rochelle, NY 10804
Tel: 914-806-3692
Email: nry4@aol.com

# TABLE OF CONTENTS

Form C - Lower Court Docket Part 1      4

Form C - Lower Court Docket Part 2      21

Plaintiff's Verified Complaint Filed May 8, 2018; ECF No. 1      38

Letter To Attorney General Elizabeth Prickett-Morgan Dated March 20, 2015; ECF 227      64

Plaintiff's Affirmation In Opposition To State Defendant's Motion For Summary Judgment Filed June 29, 2021; ECF 235      65

Deposition of Defendant Alan Gelbstein Dated December 17, 2020; ECF 235-2      142

Deposition of Defendant Ida Traschen Dated December 17, 2020; ECF 235-3      186

Deposition of Defendant Danielle Calvo Dated December 17, 2020; ECF 235-5      215

Plaintiff's Supplemental Opposition To State Defendant's Motion For Summary Judgment Filed July 29, 2021; ECF 247      249

Plaintiff's Notice Of Appeal Filed October 25, 2022; ECF 296      256

Order Dated October 17, 2018 Granting Plaintiff's Motion To Dismiss Defendants' Counterclaims; ECF 50      257

Report And Recommendations Dated January 30, 2019 Granting In Part And Denying In Part Defendants' Motion To Dismiss; ECF 51      266

Order Dated September 25, 2019 Adopting Report And Recommendations
Dated September 15, 2019; ECF 71                                    296

APPEAL,NPROSE

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CIVIL DOCKET FOR CASE #: 1:18-cv-02710-EK-LB

Capogrosso v. Gelbstein et al
Assigned to: Judge Eric R. Komitee
Referred to: Magistrate Judge Lois Bloom
Cause: 42:1983 Civil Rights Act

Date Filed: 05/08/2018
Date Terminated: 09/30/2022
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Mario H. Capogrosso**

represented by **Mario H. Capogrosso**
21 Sheldrake Place
New Rochelle, NY 10804
914-806-3692
PRO SE

V.

**Defendant**

**Alan Gelbstein**
*in his official and individual capacity*

represented by **James M. Thompson**
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
(212)416-6556
Fax: (212)416-6075
Email: james.thompson@ag.ny.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Siegmund**
Fred Hutchinson Cancer Center
1100 Fairview Ave N
Mail Stop J6-105
Seattle, WA 98109
206-667-6493
Email: mas4038@med.cornell.edu
*TERMINATED: 11/20/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Stannard Oloughlin**
Office of The Attorney General
State of New York
28 Liberty Street
New York, NY 10005

4

212-416-8593
Email: stanoloughlin@gmail.com
*TERMINATED: 09/13/2021*
*ATTORNEY TO BE NOTICED*

**Elizabeth A. Forman**
New York State Office of Court
Administration
25 Beaver Street
New York, NY 10004
212-428-2153
Email: eforman@nycourts.gov
*TERMINATED: 09/13/2021*
*ATTORNEY TO BE NOTICED*

### Defendant

**Boshra Vahdatlamas**
*in her official and individual capacity*
*TERMINATED: 11/14/2019*
*also known as*
Bushra Vahdat
*TERMINATED: 11/14/2019*

represented by **Mark Siegmund**
(See above for address)
*TERMINATED: 11/20/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth A. Forman**
(See above for address)
*TERMINATED: 09/13/2021*
*ATTORNEY TO BE NOTICED*

### Defendant

**Ida Traschen**
*in her official and individual capacity*

represented by **James M. Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Siegmund**
(See above for address)
*TERMINATED: 11/20/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Stannard Oloughlin**
(See above for address)
*TERMINATED: 09/13/2021*
*ATTORNEY TO BE NOTICED*

**Elizabeth A. Forman**
(See above for address)
*TERMINATED: 09/13/2021*
*ATTORNEY TO BE NOTICED*

### Defendant

**Elizabeth Prickett-Morgan**
*in her official and individual capacity*
*TERMINATED: 11/14/2019*

represented by **Mark Siegmund**
(See above for address)
*TERMINATED: 11/20/2019*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth A. Forman**
(See above for address)
*TERMINATED: 09/13/2021*
*ATTORNEY TO BE NOTICED*

## Defendant

**Jean Flanagan**
*in her official and individual capacity*
*TERMINATED: 11/14/2019*

represented by **Mark Siegmund**
(See above for address)
*TERMINATED: 11/20/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth A. Forman**
(See above for address)
*TERMINATED: 09/13/2021*
*ATTORNEY TO BE NOTICED*

## Defendant

**Vincent Palmieri**
*in his official and individual capacity*
*TERMINATED: 11/14/2019*

represented by **Mark Siegmund**
(See above for address)
*TERMINATED: 11/20/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth A. Forman**
(See above for address)
*TERMINATED: 09/13/2021*
*ATTORNEY TO BE NOTICED*

## Defendant

**Danielle Calvo**
*in her official and individual capacity*

represented by **James M. Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Siegmund**
(See above for address)
*TERMINATED: 11/20/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Stannard Oloughlin**
(See above for address)
*TERMINATED: 09/13/2021*
*ATTORNEY TO BE NOTICED*

**Elizabeth A. Forman**
(See above for address)
*TERMINATED: 09/13/2021*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sadiq Tahir**
*in his individual capacity*

represented by **Sadiq Tahir**
2994 Coney Island Avenue
Brooklyn, NY 11235
929-366-1717
PRO SE

**Defendant**

**PEC Group of NY, Inc.**

**Defendant**

**David Smart**

represented by **Brianne Holland-Stergar**
Davis Polk & Wardwell LLP
New York
450 Lexington Avenue
New York, NY 10017
212-450-4000
Email: brianne.holland-
stergar@davispolk.com
*TERMINATED: 08/02/2021*
*ATTORNEY TO BE NOTICED*

**Maura Douglas**
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
212-450-3957
Fax: 212-701-6957
Email: maura.douglas@davispolk.com
*TERMINATED: 09/09/2021*
*ATTORNEY TO BE NOTICED*

**Sharon Katz**
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
212-450-4000
Email: skatz@dpw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**John and Jane Doe**
*TERMINATED: 11/14/2019*

**Defendant**

**Mark J.F. Schroeder**
*Commissioner of the New York State
Department of Motor Vehicles*

represented by **James M. Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**David Smart**
*TERMINATED: 10/17/2018*

V.

**Counter Defendant**

**Mario H. Capogrosso**
*TERMINATED: 10/17/2018*

**Counter Claimant**

**Sadiq Tahir**
*in his individual capacity*
*TERMINATED: 10/17/2018*

V.

**Counter Defendant**

**Mario H. Capogrosso**
*TERMINATED: 10/17/2018*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 05/08/2018 | 1 | COMPLAINT against Danielle Calvo, Jean Flanagan, Alan Gelbstein, John and Jane Doe, PEC Group of NY, Inc., Vincent Palmieri, Elizabeth Prickett-Morgan, David Smart, Sadiq Tahir, Ida Traschen, filed by Mario H. Capogrosso. (1) Civil Cover Sheet) (Davis, Kimberly). (Entered: 05/09/2018) |
| 05/08/2018 |   | FILING FEE: $ 400, receipt number 4653127676 (Davis, Kimberly) (Entered: 05/09/2018) |
| 05/08/2018 | 2 | Summons Issued as to Danielle Calvo, Jean Flanagan, Alan Gelbstein, John and Jane Doe, PEC Group of NY, Inc., Vincent Palmieri, Elizabeth Prickett-Morgan, David Smart, Sadiq Tahir, Ida Traschen, Boshra Vahdatlamas. (Davis, Kimberly) (Entered: 05/09/2018) |
| 05/09/2018 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.** (Davis, Kimberly) (Entered: 05/09/2018) |
| 05/14/2018 | 4 | ORDER: The Honorable Margo K. Brodie assigned this case to me for all pretrial purposes. Enclosed is a copy of the "Individual Practices of Magistrate Judge Lois Bloom." Plaintiff and defendants, alike, are required to follow these rules. Plaintiff is to provide a copy of this Order and the enclosed rules to defendants along with the summons and complaint. Plaintiff shall have 90 days from the date the summonses were issued to serve defendants. Accordingly, if service, is not made upon defendants by 8/6/2018, or if plaintiff fails to show good cause why such service has not been effected by that date, it will be recommended that the Court should dismiss this action without prejudice. Plaintiff is required to advise the Clerk of Court of any change of address. Plaintiff may choose to receive electronic notification of court issued filings in this civil case. If plaintiff is eligible and wishes to receive electronic notification of court issued |

| | | documents, plaintiff should complete the attached Registration and Consent form and return the form to the Court. SO ORDERED by Magistrate Judge Lois Bloom, on 5/14/2018. *C/mailed w/Attachments: # 1 Individual Practices of Magistrate Judge Lois Bloom, # 2 Instruction for Pro Se Registration and Consent for Electronic Service of Orders and Notices Issued by the Court in Civil Cases, # 3 Pro Se Registration and Consent Form. (Service upon Defendants due by 8/6/2018.)* (Latka-Mucha, Wieslawa) (Entered: 05/15/2018) |
|---|---|---|
| 05/30/2018 | 5 | First MOTION for Extension of Time to File Answer *to Verified Complaint* by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Siegmund, Mark) (Entered: 05/30/2018) |
| 05/30/2018 | 6 | ANSWER to 1 Complaint, COUNTERCLAIM against Mario H. Capogrosso by David Smart. (Lee, Tiffeny) (Entered: 05/31/2018) |
| 05/30/2018 | 7 | ANSWER to 1 Complaint, COUNTERCLAIM against Mario H. Capogrosso by Sadiq Tahir. (Lee, Tiffeny) (Entered: 05/31/2018) |
| 06/01/2018 | 8 | ORDER: Counsel for defendant Gelberstein writes to request an extension of the deadline to respond to plaintiff's complaint "until 30 days after the last State Defendant has been served." The Court will not grant an extension based upon an unknown date. Nevertheless, the first request for an extension of is generally granted as a courtesy. Accordingly, the 5 request is granted in part and denied in part. Defendant Gelberstein shall respond to plaintiff's complaint by 7/16/2018. SO ORDERED by Magistrate Judge Lois Bloom, on 6/1/2018. *C/mailed.* (Latka-Mucha, Wieslawa) (Entered: 06/01/2018) |
| 06/08/2018 | 9 | Summons Returned Unexecuted by Mario H. Capogrosso as to Danielle Calvo. (Piper, Francine) (Entered: 06/11/2018) |
| 06/08/2018 | 10 | SUMMONS Returned Executed by Mario H. Capogrosso. Danielle Calvo served on 5/30/2018, answer due 6/20/2018; Alan Gelbstein served on 5/11/2018, answer due 6/1/2018; Elizabeth Prickett-Morgan served on 5/29/2018, answer due 6/19/2018; David Smart served on 5/11/2018, answer due 6/1/2018; Sadiq Tahir served on 5/11/2018, answer due 6/1/2018. (Attachments: # 1 Morgan Executed Summons, # 2 David Executed Summons, # 3 Daniel Executed Summons, # 4 Alan Executed Summons) (Piper, Francine) (Entered: 06/11/2018) |
| 06/08/2018 | 11 | Letter dated June 6, 2018 from Mario Capogrosso to Mag. Bloom, objecting to defendant's request for an extension of time to answer. (Piper, Francine) (Entered: 06/11/2018) |
| 06/11/2018 | | Document # 13, a duplicate of Mario Capogrosso's 11 letter dated June 6, 2018, was removed from the Court record, as per Chambers' request. (Latka-Mucha, Wieslawa) (Entered: 06/15/2018) |
| 06/12/2018 | 12 | ORDER TO ANSWER: *Pro se* plaintiff 11 writes to object to defendant Gelberstein's request for an extension of time to respond to plaintiff's complaint. Now that proof of service on all defendants has been 10 filed with the Court, the Court orders all defendants to respond to plaintiff's complaint by 7/16/2018. The Court shall hold an initial conference on 7/25/2018 at 10:30 a.m. in Courtroom 11A South of the United States Courthouse. The parties shall exchange their Rule 26(a)(1) initial disclosures and file their Rule 26(f) Meeting Report with the Court by 7/23/2018. SO ORDERED by Magistrate Judge Lois Bloom, on 6/12/2018. *C/mailed. (Initial Conference set for 7/25/2018 at 10:30 a.m. in Courtroom 11A South before Magistrate Judge Lois Bloom.)* (Latka-Mucha, Wieslawa) (Entered: 06/13/2018) |
| 06/14/2018 | 13 | Letter MOTION for Extension of Time to File *to defendants' Tahir and Smart's counterclaims as set forth in their pro se Answer to my Complaint, No. CV18-2710* by |

| | | Mario H. Capogrosso. (Marziliano, August) (Entered: 06/15/2018) |
|---|---|---|
| 06/18/2018 | 14 | ORDER: The Court notes that plaintiff requests additional time to, among other things, "interview parties." Plaintiff need not "interview parties" to respond to defendant's counterclaims. ECF Nos. 6, 7. Nevertheless, as a first request for an extension of time is generally granted as a courtesy, plaintiff's 13 request for an extension of time to respond to the counterclaims is granted. Plaintiff shall respond to defendants' counterclaims by 7/16/2018. SO ORDERED by Magistrate Judge Lois Bloom, on 6/18/2018. C/mailed. (Latka-Mucha, Wieslawa) (Entered: 06/19/2018) |
| 06/20/2018 | 15 | MOTION to Dismiss David Smart"s Counterclaims by Mario H. Capogrosso. (Attachments: # 1 Memorandum in Support, # 2 Affirmation In Support, # 3 Affirmation of Service) (Piper, Francine) (Entered: 06/21/2018) |
| 06/20/2018 | 16 | Letter dated June 20, 2018 from Mario H. Capogrosso to Judge Brodie, seeking the recusal of Mag. Bloom, or in the alternative a fair hearing on the merits. (Piper, Francine) (Entered: 06/21/2018) |
| 06/20/2018 | 17 | MOTION to Dismiss Sadiq Tahir's Counterclaim; filed by Mario H. Capogrosso. (Attachments: # 1 Memorandum in Support, # 2 Affidavit in Support, # 3 Affidavit of Service, # 4 Notice) (Latka-Mucha, Wieslawa) (Entered: 06/25/2018) |
| 06/20/2018 | 18 | NOTICE re: Mario H. Capogrosso's 15 Motion to Dismiss David Smart's Counterclaim; filed by pro se Mario H. Capogrosso, dated 6/19/2018. (Latka-Mucha, Wieslawa) (Entered: 06/25/2018) |
| 07/13/2018 | 19 | Letter Requesting Pre-Motion Conference Relating to State Defendants' Motion to Dismiss Verified Complaint by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas (Attachments: # 1 Exhibit Ex. 1 - Statements, Complaints and Reports from 2009 through 2011, # 2 Exhibit Ex. 2 - Employee Petition, # 3 Exhibit Ex. 3 - Feb. 8, 2012 DMV Letter Summarizing Complaints, # 4 Exhibit Ex. 4 - May 15, 2012 Letter from DMV's Counsel to Mr. Capogrosso's Counsel, # 5 Exhibit Ex. 5 - June 20, 2012 Letter from DMV's Counsel to Mr. Capogrosso's Counsel, # 6 Exhibit Ex. 6 - Statements, Complaints and Reports from 2014 through 2016) (Siegmund, Mark) (Entered: 07/13/2018) |
| 07/13/2018 | 20 | First MOTION to Stay Discovery by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Siegmund, Mark) (Entered: 07/13/2018) |
| 07/18/2018 | 21 | MOTION to Appoint Counsel by David Smart. (Attachments: # 1 Support Papers, # 2 Tax Attachment, # 3 Mailing Envelope) (Piper, Francine) (Entered: 07/19/2018) |
| 07/19/2018 | | SCHEDULING ORDER: Pre Motion Conference is set for August 2, 2018 at 11:30 AM in Courtroom 6F North before Judge Margo K. Brodie. The Court will address all pending issues, including the request to stay discovery at the conference. Ordered by Judge Margo K. Brodie on 7/19/2018. (Brucella, Michelle) (Entered: 07/19/2018) |
| 07/20/2018 | 22 | ORDER: In light of the pre-motion conference scheduled before Judge Brodie, the Court cancels the 7/25/2018 initial conference. SO ORDERED by Magistrate Judge Lois Bloom, on 7/20/2018. C/mailed. (Latka-Mucha, Wieslawa) (Entered: 07/23/2018) |
| 07/23/2018 | 23 | Letter Advising Court of Incident Involving Plaintiff by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas (Attachments: # 1 Exhibit Ex. 1 - Letter to Plaintiff Dated 7/18/18) (Siegmund, Mark) (Entered: 07/23/2018) |
| 07/27/2018 | 24 | SUMMONS Returned Executed by Mario H. Capogrosso. PEC Group of NY, Inc. served on 6/11/2018, answer due 7/16/2018; Ida Traschen served on 6/6/2018, answer due |

| | | 7/16/2018; Boshra Vahdatlamas served on 6/11/2018, answer due 7/16/2018. (Piper, Francine) (Entered: 07/27/2018) |
|---|---|---|
| 07/31/2018 | 25 | Letter dated July 30, 2018 from Mario Capogrosso to Judge Brodie and Mag. Bloom, requesting that sanctions be entered against attorney M. Siegmund. (Piper, Francine) (Entered: 08/01/2018) |
| 08/01/2018 | 26 | Letter *in Response to Letter from Plaintiff to the Court, dated July 30, 2018 (ECF No. 25)*, by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas (Siegmund, Mark) (Entered: 08/01/2018) |
| 08/01/2018 | 27 | Letter dated July 31, 2018 from Mario Capograsso to Judge Brodie and Magistrate Bloom, requesting prospective injunctive relief, enjoining the defendants from denying plaintiff the right to practice law in the Traffic Violations Bureau Courts in the State of New York. (Piper, Francine) (Entered: 08/02/2018) |
| 08/02/2018 | 28 | Letter MOTION for pre motion conference by Mario H. Capogrosso. (Piper, Francine) (Entered: 08/02/2018) |
| 08/02/2018 | 29 | Letter dated August 2, 2018 from Mario Capograsso to Judge Brodie and Magistrate Bloom, attaching several exhibits mistakenly omitted and requesting that it be attached to the July 31, 2018 letter. (Attachments: # 1 Exhibits B-D) (Piper, Francine) (Entered: 08/02/2018) |
| 08/02/2018 | | Minute Entry for pre-motion conference held on August 2, 2018. Pro se plaintiff Mario Capogrosso appeared on behalf of himself, Mark Siegmund appeared for defendants Alan Gelbstein, Boshra Vahdatlamas, Ida Traschen, Elizabeth Prickett-Morgan, Jean Flanagan, Vincent Palmieri and Danielle Calvo (the "State Defendants"). Pro se defendant and counterclaim-plaintiff David Smart appeared on behalf of himself. Pro se defendant and counterclaim-plaintiff Sadiq Tahir appeared on behalf of himself. Defendant PEC Group of NY, Inc. did not appear.<br><br>For the reasons stated on the record, the Court denied Plaintiff's motion to recuse Judge Bloom from this case. The Court also denied Mr. Smart's motion for appointment of counsel, and informed Mr. Smart that a written order denying his motion would be forthcoming.<br><br>For the reasons stated on the record, the Court denied plaintiff's motion to dismiss the counterclaims filed by Mr. Smart and Mr. Tahir. The Court directed Mr. Smart to file an amended answer and counterclaim on or before August 9, 2018 to clarify that his counterclaim is based on prior conduct by plaintiff and also on plaintiff's filing of this action. Plaintiff shall respond to Mr. Smart's amended answer and counterclaim on or before August 23, 2018. The Court ordered Plaintiff to serve all papers on Mr. Smart by mail, using the mailing address Mr. Smart provided to the Court.<br><br>For the reasons stated on the record, the Court considered Mr. Tahir's oral statements made during the conference that his counterclaim is based on plaintiff's commencement of this action, and deemed such statements an amended answer and counterclaim. Plaintiff shall respond to Mr. Tahir's amended counterclaim on or before August 16, 2018.<br><br>The Court discussed with the parties the bases for the State Defendants' anticipated motion to dismiss the Complaint. The State Defendants shall serve their moving papers on or before August 17, 2018; Plaintiff shall serve his opposition on or before September 17, 2018; State Defendants shall serve their reply on or before October 1, 2018. The Court granted the State Defendants' motion for a stay of discovery pending the resolution |

| | | of their motion to dismiss. Ordered by Judge Margo K. Brodie on 8/2/2018. (McKenzie, Lindsay) (Entered: 08/02/2018) |
|---|---|---|
| 08/02/2018 | 30 | ORDER re 21 motion to appoint counsel. At this early stage of the litigation, Mr. Smart has not established that his position is "likely to be of substance." Accordingly, the Court denies Mr. Smart's request for pro bono counsel without prejudice. Ordered by Judge Margo K. Brodie on 8/2/2018. (McKenzie, Lindsay) (Entered: 08/02/2018) |
| 08/02/2018 | 31 | Letter from David Smart to Judge Brodie, enclosing (1) reports from the police department and (b) report of labor relations of department of motor vehicles. (Piper, Francine) (Entered: 08/03/2018) |
| 08/16/2018 | 32 | Letter to Plaintiff, with Copy to the Court, Attaching State Defendants' Motion to Dismiss Opening Papers by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas (Siegmund, Mark) (Entered: 08/16/2018) |
| 08/16/2018 | 33 | MOTION to Dismiss Counterclaims of Defendant Sadiq Tahir by Mario H. Capogrosso. (Attachments: # 1 Proposed Order, # 2 Affirmation in Support, # 3 Memorandum In Support, # 4 Affirmation of Service) (Piper, Francine) (Entered: 08/16/2018) |
| 08/16/2018 | 34 | Letter dated August 15, 2018 from Mario Capogrosso to Judge Brodie and Magistrate Bloom, in regards to Attorney Siegmund's letter to the court dated August 1, 2018. (Piper, Francine) (Entered: 08/16/2018) |
| 08/22/2018 | 35 | MOTION to Dismiss the Counterclaims of Defendant David Smart by Mario H. Capogrosso. (Attachments: # 1 Memorandum in Support, # 2 Affirmation In Support, # 3 Proposed Order. # 4 Affirmation of Service) (Piper, Francine) (Entered: 08/23/2018) |
| 09/10/2018 | 36 | Letter MOTION for Extension of Time to File Response/Reply to Defendant's Motion to Dismiss (ECF No. 32) by Mario H. Capogrosso. (Piper, Francine) (Entered: 09/11/2018) |
| 09/11/2018 | 37 | Letter in Response to Plaintiff's September 10, 2018 Letter (ECF No. 36) by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas (Siegmund, Mark) (Entered: 09/11/2018) |
| 09/12/2018 | | ORDER granting in part and denying in part 36 Motion for Extension of Time to File Response/Reply. Plaintiff shall serve opposition papers on or before September 28, 2018. Defendants shall serve their reply on or before October 12, 2018. Ordered by Judge Margo K. Brodie on 9/12/2018.(Ohanor, Dorielle) (Entered: 09/12/2018) |
| 10/02/2018 | 38 | Letter Letter dated October 2, 2018 from Mario Capogrosso to Judge Brodie and Magistrate Bloom, in response to attorney M. Siegmunds' telephone call of October 2, 2018. (Attachments: # 1 Mailing Envelope) (Piper, Francine) Modified on 10/3/2018 to correct spelling of plaintiff's name (Piper, Francine). (Entered: 10/03/2018) |
| 10/02/2018 | 39 | Letter dated October 1, 2018 from Mario Capogrosso to Judge Brodie and Mag. Bloom, in compliance with the court's standing order showing proof of service. (Attachments: # 1 Affirmation of Service, # 2 Mailing Envelope) (Piper, Francine) (Entered: 10/03/2018) |
| 10/02/2018 | 40 | DECLARATION In Opposition To Defendant's Motion To Dismiss Plaintiff's Complaint; filed by Mario H. Capogrosso. W/Attachments: # 1 Affirmation of Service, # 2 Envelope. (Latka-Mucha, Wieslawa) (Entered: 10/09/2018) |
| 10/02/2018 | 41 | MEMORANDUM Of Law In Opposition To Defendants' Motion To Dismiss; filed by pro se Mario H. Capogrosso. W/Attachments: # 1 Letter (Duplicate of doc.# 38 ), # 2 Affirmation of Service (Duplicate of doc.# 39 ). (Latka-Mucha, Wieslawa) (Entered: 10/09/2018) |

| 10/11/2018 | 42 | MOTION to Dismiss for Failure to State a Claim by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Forman, Elizabeth) (Entered: 10/11/2018) |
|---|---|---|
| 10/11/2018 | 43 | Letter *(Cover Letter to Court for motion to dismiss)* by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas (Forman, Elizabeth) (Entered: 10/11/2018) |
| 10/11/2018 | 44 | MEMORANDUM in Support *Of Defendants' Motion to Dismiss* filed by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Forman, Elizabeth) (Entered: 10/11/2018) |
| 10/11/2018 | 45 | AFFIDAVIT/DECLARATION in Support re 42 MOTION to Dismiss for Failure to State a Claim *Declaration of Barbara Montena with Exhibits* filed by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Attachments: # 1 Exhibit Ex. 1 - Perez Jr Incident Report (4-21-2009), # 2 Exhibit Ex. 2 - Roy Tucci Letter (4-21-2009), # 3 Exhibit Ex. 3 - Marisol Cervoni Letter (6-19-2009), # 4 Exhibit Ex. 4 - Fuller Letter (Redacted) (8-5-2009), # 5 Exhibit Ex. 5 - Dorset Letter (9-28-2010), # 6 Exhibit Ex. 6 - Employee Petition (1-6-2011), # 7 Exhibit Ex. 7 - Brody Letter (12-21-2011), # 8 Exhibit Ex. 8 - Maher Letter (12-21-2011), # 9 Exhibit Ex. 9 - Tahir Letter (12-21-2011), # 10 Exhibit Ex. 10 - Meyers Letter (12-23-2011), # 11 Exhibit Ex. 11 - Letter from Ida Traschen (2-8-2012), # 12 Exhibit Ex. 12 - Letter re 10-29-2014 Incident (Redacted), # 13 Exhibit Ex. 13 - Letter re 2-5-2015 Incident, # 14 Exhibit Ex. 14 - David Smart Statement (2-3-2015), # 15 Exhibit Ex. 15 - Letter re 2-5-2015 Incident (Redacted), # 16 Exhibit Ex. 16 - Email from TVB Employee (2-9-2015) (Redacted), # 17 Exhibit Ex. 17 - Letter from Tahir and Other Attorney (3-19-2015) (Redacted), # 18 Exhibit Ex. 18 - Letter from TVB Clerk (5-5-2015) (Redacted), # 19 Exhibit Ex. 19 - Letter from Attorney (5-5-2015) (Redacted), # 20 Exhibit Ex. 20 - Tahir Letter (5-5-2015) (Redacted), # 21 Exhibit Ex. 21 - Report of Workplace Violence Incident (Calvo & Flanagan) (Redacted) (5-5-2015), # 22 Exhibit Ex. 22 - Report of Workplace Violence Incident (Calvo) (Redacted) (5-11-2015), # 23 Exhibit Ex. 23 - Attorney Statement (5-11-2015), # 24 Exhibit Ex. 24 - Attorney Statement (5-11-2015), # 25 Exhibit Ex. 25 - Police Incident Information Slip (5-11-2015), # 26 Exhibit Ex. 26 - Internal DMV Memorandum (5-27-2015) (Redacted), # 27 Exhibit Ex. 27 - Letter from ALJ (June 2015) (Redacted), # 28 Exhibit Ex. 28 - Letter from Roy Tucci (3-3-2011)) (Forman, Elizabeth) (Entered: 10/11/2018) |
| 10/11/2018 | 46 | AFFIDAVIT/DECLARATION in Support re 42 MOTION to Dismiss for Failure to State a Claim *Declaration of Mark Siegmund with Exhibits* filed by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Attachments: # 1 Exhibit Ex. 1 - Capogrosso Petition (3-1-2012), # 2 Exhibit Ex. 2 - Gelbstein Affirmation (5-3-2012), # 3 Exhibit Ex. 3 - Traschen Affirmation (4-11-2012) (with exhibits) (Redacted), # 4 Exhibit Ex. 4 - First Letter from DMV Counsel to Capogrosso Counsel, dated 5-13-2012, # 5 Exhibit Ex. 5 - Second Letter from DMV Counsel to Capogrosso Counsel, dated 6-20-2012, # 6 Exhibit Ex. 6 - Capogrosso v. DMV Stipulation of Discontinuance, dated 6-22-2012, # 7 Exhibit Ex. 7 - Capogrosso Letter to Elizabeth Morgan, dated 3-20-2015) (Forman, Elizabeth) (Entered: 10/11/2018) |
| 10/11/2018 | 47 | MEMORANDUM in Opposition *Plaintiff's Memo of Law in Opposition* filed by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Forman, Elizabeth) (Entered: 10/11/2018) |
| 10/11/2018 | 48 | AFFIDAVIT/DECLARATION in Opposition re 42 MOTION to Dismiss for Failure to State a Claim filed by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Attachments: # 1 Exhibit |

| | | |
|---|---|---|
| | | Capogrosso Decl. - Ex. A, # 2 Exhibit Capogrosso Decl. - Ex. B, # 3 Exhibit Capogrosso Decl. - Ex. C, # 4 Exhibit Capogrosso Decl. - Ex. D, # 5 Exhibit Capogrosso Decl. - Ex. E, # 6 Exhibit Capogrosso Decl. - Ex. F, # 7 Exhibit Capogrosso Decl. - Ex. G) (Forman, Elizabeth) (Entered: 10/11/2018) |
| 10/11/2018 | 49 | REPLY in Support re 42 MOTION to Dismiss for Failure to State a Claim -- *Reply Memorandum of Law in Further Support of State Defendants' Motion to Dismiss the Complaint* -- filed by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Forman, Elizabeth) (Entered: 10/11/2018) |
| 10/17/2018 | 50 | **MEMORANDUM AND ORDER:** The Court grants Plaintiff's 33 and 35 motions and dismisses Defendants' counterclaims. Ordered by Judge Margo K. Brodie on 10/17/2018. (Brucella, Michelle) (Entered: 10/17/2018) |
| 11/05/2018 | | ORDER REFERRING MOTION: Defendants' 42 Motion to Dismiss for Failure to State a Claim is respectfully referred to Magistrate Judge Lois Bloom for a report and recommendation. Ordered by Judge Margo K. Brodie on 11/5/2018.(Obanor, Dorielle) (Entered: 11/05/2018) |
| 01/30/2019 | 51 | **REPORT & RECOMMENDATION:** The State Defendants move to dismiss plaintiff's 1 complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1), 12(b)(5), and 12(b)(6). The Honorable Margo K. Brodie referred the motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). The Court respectfully recommends that the State Defendants' 42 motion to dismiss should be granted in part and denied in part. The State Defendants' motion to dismiss should be granted as to plaintiff's due process and Sections 1985 and 1986 claims, as well as all claims against Vahdatlamas, Morgan, Flanagan, and Palmieri. The State Defendants' motion to dismiss plaintiff's First Amendment retaliation claim against Gelbstein, Calvo, and Traschen should be denied. Likewise, plaintiff's claims for prospective injunctive relief against Gelbstein, Calvo, and Traschen should be denied. The State Defendants' motion to dismiss based on qualified immunity should be denied without prejudice. Should this Report be adopted, plaintiff should be afforded fourteen days leave to file an amended complaint as set forth herein. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. SO ORDERED by Magistrate Judge Lois Bloom on 1/30/2019. *C/mailed. (Objections to R&R due by 2/13/2019.)* (Latka-Mucha, Wieslawa) (Entered: 01/30/2019) |
| 01/31/2019 | 52 | OBJECTION to 51 Report and Recommendations filed by Mario H. Capogrosso. (Piper, Francine) (Entered: 02/01/2019) |
| 02/04/2019 | 53 | ORDER: As set forth in the attached Order, this Order is to correct the Conclusion of my January 30, 2019 Report and Recommendation. The relevant portion of the Conclusion should be corrected to read: "Likewise, the State Defendants' motion to dismiss plaintiff's claim for prospective injunctive relief against Gelbstein, Calvo, and Traschen should be denied." See attached Order. *C/mailed to plaintiff via FedEx.* Ordered by Magistrate Judge Lois Bloom on 2/4/2019. (Panjini, Madhura) (Entered: 02/04/2019) |
| 02/08/2019 | 57 | Letter MOTION to Dismiss *Case* by David Smart. (Attachments: # 1 Incident Form) (Piper, Francine) (Entered: 02/13/2019) |
| 02/11/2019 | 54 | MOTION for Extension of Time to File *Objections to the Report and Recommendation* by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 02/12/2019) |
| 02/12/2019 | 55 | Letter *to Judge Brodie in Response to Plaintiff's Request for Extension of Time to File Objections to Report and Recommendation (ECF Doc. No. 54)* by Danielle Calvo, Jean |

| | | |
|---|---|---|
| | | Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas (Siegmund, Mark) (Entered: 02/12/2019) |
| 02/12/2019 | 56 | Mail Returned as Insufficient Address Unable to Forward. Mail sent to Sadiq Tahir - Notice of Electronic Filing Dated 11/5/18 (Piper, Francine) (Entered: 02/13/2019) |
| 02/12/2019 | 58 | Mail Returned as Undeliverable. Mail sent to Sadiq Tahir 2994 Coney Island Ave Brooklyn, NY 11235 (Marziliano, August) (Entered: 02/19/2019) |
| 02/13/2019 | | ORDER granting 54 Motion for Extension of Time to File. The parties shall file any objections to Magistrate Judge Bloom's Report & Recommendation on or before February 27, 2019. Ordered by Judge Margo K. Brodie on 2/13/2019. (Obanor, Dorielle) (Entered: 02/13/2019) |
| 02/27/2019 | 59 | OBJECTION to 51 Report and Recommendations filed by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Siegmund, Mark) (Entered: 02/27/2019) |
| 02/27/2019 | 60 | Declaration of Mario H. Capograsso in support of Plaintiffs 52 Objection to Report and Recommendations (Piper, Francine) (Entered: 02/28/2019) |
| 03/11/2019 | 61 | Mail Returned as Unclaimed, Unable to Forward. Mail, Electronic Order granting 54 Motion For Extension of time was sent to Sadiq Tahir.: (Piper, Francine) (Entered: 03/11/2019) |
| 03/13/2019 | 62 | MEMORANDUM in Support *State Defendants' Response to Plaintiff's Written Objections to the Magistrate Judge's Report & Recommendation Dated January 30, 2019* filed by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Siegmund, Mark) (Entered: 03/13/2019) |
| 03/18/2019 | 63 | Plaintiff's Response to State Defendants Response to Plaintiff's Written Objections to Report & Recommendation of Magistrate Bloom Dated January 30, 2019. (Piper, Francine) (Entered: 03/20/2019) |
| 03/18/2019 | 64 | Mail Returned as Insufficient Address, Unable to Forward. Mail - Report and Recommendation was sent to Sadiq Tahir (Piper, Francine) (Entered: 03/22/2019) |
| 04/15/2019 | 65 | Letter dated April 8, 2019 from David Smart to Magistrate Bloom, regarding dfts efforts to dismiss the case against Mario H. Capogrosso. (Attachments: # 1 Mailing Envelope) (Piper, Francine) (Entered: 04/16/2019) |
| 04/24/2019 | 66 | MOTION to Appoint Counsel *(Pro-Bono)* by David Smart. (Piper, Francine) (Entered: 04/25/2019) |
| 05/24/2019 | 67 | Letter dated May 24, 2019 from Mario H. Capogrosso to Judge Brodie, advising that defendants Smart's Letter Motion to Dismiss was not received. (Piper, Francine) (Entered: 05/28/2019) |
| 05/24/2019 | 68 | Letter dated May 24, 2019 from Mario H. Capogrosso to Judge Brodie, requesting a decision on the state defendants' motion to dismiss filed on October 11, 2018. (Piper, Francine) (Entered: 05/28/2019) |
| 05/31/2019 | 69 | AFFIRMATION by Mario H. Capogrosso in opposition to defendant Smart's Motion to Dismiss Dated April 15, 2015 (Dkt. 65) (Piper, Francine) (Entered: 06/04/2019) |
| 09/06/2019 | 70 | Letter dated September 6, 2019 to Judge Brodie and Magistrate Bloom, providing the court with a letter to Judge Irizarry dated August 29, 2019. (Piper, Francine) (Entered: 09/06/2019) |

| 09/25/2019 | 71 | ORDER ADOPTING REPORT AND RECOMMENDATION: The Court grants in part and denies in part the State Defendants' motion to dismiss. The Court grants the motion to dismiss as to Plaintiff's due process and section 1985 and section 1986 claims, as well as all claims against Vahdatlamas, Morgan, Flanagan, and Palmieri. The Court denies the motion to dismiss for lack of standing. The Court also denies the motion to dismiss Plaintiff's First Amendment retaliation claim and claim for prospective injunctive relief Gelbstein, Calvo, and Traschen. Finally, the Court denies without prejudice the motion to dismiss on qualified immunity grounds. The Court grants Plaintiff leave to file an amended complaint within thirty (30) days of this Memorandum and Order. Ordered by Judge Margo K. Brodie on 9/25/2019. (Valentin, Winnethka) (Entered: 09/26/2019) |
|---|---|---|
| 09/27/2019 | 72 | ORDER. In support of his motion, Smart attaches several documents seeking to show that he is a victim of Plaintiff's actions. (Incident Form, annexed to Def. Mot., Docket Entry No. 57-1.) Because Smart has not stated a proper basis to dismiss the Complaint against him, the Court denies without prejudice his motion to dismiss. The Court also denies without prejudice Smart's April 24, 2019 application for appointment of pro bono counsel. (Mot. to Appoint Counsel, Docket Entry No. 66.) As stated in the Court's prior Order denying a similar application from Smart, there is no right to counsel in a civil case. Ordered by Judge Margo K. Brodie on 9/27/2019. (Valentin, Winnethka) (Entered: 09/27/2019) |
| 09/30/2019 | 73 | Letter dated September 30, 2019 from Mario H. Capogrosso to Judge Brodie, requesting clarification in the Memorandum and Decision dated September 25, 2019. (Piper, Francine) (Entered: 09/30/2019) |
| 09/30/2019 | | ORDER re: 73 Plaintiff's Letter dated September 30, 2019, seeking clarification of the Court's Memorandum and Order dated September 25, 2019. In the Memorandum and Order denying in part and granting in part defendants' motion to dismiss, the Court did not decide whether plaintiff is entitled to prospective injunctive relief (or any relief). The Court only decided whether plaintiff's claims, including his request for prospective injunctive relief, can proceed to discovery. Ordered by Judge Margo K. Brodie on 9/30/2019. (Schindler, Emma) (Entered: 09/30/2019) |
| 10/24/2019 | 74 | AMENDED COMPLAINT against Danielle Calvo, Jean Flanagan, Alan Gelbstein, John and Jane Doe, PEC Group of NY, Inc., Vincent Palmieri, Elizabeth Prickett-Morgan, David Smart, Sadiq Tahir, Ida Traschen, Boshra Vahdatlamas, filed by Mario H. Capogrosso. (Attachments: # 1 Affirmation of Service) (Piper, Francine) (Entered: 10/28/2019) |
| 10/24/2019 | 75 | Letter dated October 24, 2019 from Mario Capogrosso to Judge Brodie and Magistrate Judge Bloom, advising the court of changes made in pages 11-14 and paragraphs 44-64 of the amended complaint. (Attachments: # 1 Affirmation of Service) (Piper, Francine) (Entered: 10/28/2019) |
| 10/28/2019 | 76 | ORDER: The Court shall hold the initial conference in *pro se* plaintiff's case on 11/14/2019 at 12:00 p.m. in Courtroom 11A South of the United States Courthouse. No planning conference pursuant to Rule 26(a) shall be required at this time. SO ORDERED by Magistrate Judge Lois Bloom, on 10/28/2019. *C/mailed. (Initial Conference set for 11/14/2019 at 12:00 p.m. in Courtroom 11A South before Magistrate Judge Lois Bloom.)* (Latka-Mucha, Wieslawa) (Entered: 10/29/2019) |
| 11/07/2019 | 77 | MOTION to Dismiss for Failure to State a Claim by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Siegmund, Mark) (Entered: 11/07/2019) |
| 11/07/2019 | 78 | MOTION to Stay *Discovery* by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas. (Siegmund, |

| | | Mark) (Entered: 11/07/2019) |
|---|---|---|
| 11/07/2019 | 79 | AFFIDAVIT/AFFIRMATION *of Service of Pre-Motion Letters* by Danielle Calvo, Jean Flanagan, Alan Gelbstein, Vincent Palmieri, Elizabeth Prickett-Morgan, Ida Traschen, Boshra Vahdatlamas (Siegmund, Mark) (Entered: 11/07/2019) |
| 11/08/2019 | 80 | Mail Returned as Undeliverable. Order dated 10/28/2019 (ECF No. 76 ) sent to Sadiq Tahir. (Barrett, C) (Entered: 11/13/2019) |
| 11/14/2019 | 81 | Minute Entry for proceedings held before Magistrate Judge Lois Bloom: Initial Conference held on 11/14/2019. Recorded. Tick #(s) 12:07 - 1:09. Appearance for Plaintiff: *pro se* Mario H. Capogrosso. Appearances for Defendants: Mark Siegmund, New York State Attorney General; and *pro se* David Smart. (Latka-Mucha, Wieslawa) (Entered: 11/14/2019) |
| 11/14/2019 | 82 | ORDER: Plaintiff voluntarily withdrew his 74 amended complaint. Accordingly, the Clerk of Court shall terminate the state defendants' 77 motion to dismiss. The state defendants' 78 motion to stay discovery is denied. This case shall proceed on the original 1 complaint against defendants Gelbstein, Calvo, Traschen, Smart, Tahir, and PEC Group of NY as set forth in Judge Brodie's 9/25/2019 Memorandum & Order 71 . The state defendants shall answer plaintiff's 1 Complaint and plaintiff and the state defendants shall exchange initial disclosures by **12/4/2019**. The parties shall complete all discovery by **5/15/2020**. Before requesting the Court's assistance regarding a discovery dispute, the parties must make a good faith effort to resolve the dispute with one another. Upon completion of discovery, any party seeking to file a dispositive motion shall file a pre-motion conference request by **6/5/2020** in accordance with Judge Brodie's Individual Motion Practices and Rules. Defendants Tahir and PEC Group of NY did not appear at the conference. The Court's Order scheduling the 11/14/2019 conference that was sent to Tahir was returned as 80 undeliverable. As Tahir did not have notice of today's conference, the Court excused his appearance on the record. A transcript of the 11/14/2019 conference has been ordered and shall be made part of the record. The Clerk of Court is directed to amend the caption as set forth above. Defendants Smart and Tahir have answered plaintiff's complaint. The Clerk of Court is directed to mail defendant Smart a copy of the *pro se* manual. SO ORDERED by Magistrate Judge Lois Bloom, on 11/14/2019. *C/mailed. (Defendants Vincent Palmieri, Elizabeth Prickett-Morgan, Boshra Vahdatlamas, Jean Flanagan and John and Jane Doe terminated. Danielle Calvo, Alan Gelbstein and Ida Traschen's answers due by 12/4/2019. Discovery due by 5/15/2020; Parties' Request for a Pre-motion Conference due by 6/5/2020.)* (Latka-Mucha, Wieslawa) (Entered: 11/15/2019) |
| 11/18/2019 | 83 | NOTICE of Appearance by James M. Thompson on behalf of Danielle Calvo, Alan Gelbstein, Ida Traschen (aty to be noticed) (Thompson, James) (Entered: 11/18/2019) |
| 11/19/2019 | 84 | MOTION to Withdraw as Attorney by Danielle Calvo, Alan Gelbstein, Ida Traschen. (Attachments: # 1 Declaration) (Siegmund, Mark) (Entered: 11/19/2019) |
| 11/20/2019 | 85 | TRANSCRIPT of Proceedings held on November 14, 2019 before Judge Bloom. Court Transcriber: Typewrite Word Processing Service, Telephone number 518-581-8973. Email address: transcripts@typewp.com. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 12/11/2019. Redacted Transcript Deadline set for 12/23/2019. Release of Transcript Restriction set for 2/18/2020. (Rocco, Christine) (Entered: 11/20/2019) |
| 11/20/2019 | 86 | ORDER, granting 84 Motion to Withdraw as Counsel for Defendants Alan Gelbstein, Ida |

| | | Traschen, and Danielle Calvo (collectively, the "State Defendants"). Accordingly, it is ORDERED that Mark Siegmund, Esq. is hereby withdrawn as counsel of record for the State Defendants and shall be removed from all future notices in this lawsuit. **SO ORDERED** by Magistrate Judge Lois Bloom, on 11/20/2019. *C/mailed. (Attorney Mark Siegmund terminated.)* (Latka-Mucha, Wieslawa) (Entered: 11/21/2019) |
|---|---|---|
| 11/22/2019 | 87 | Mail Returned as **Undeliverable**. A copy of Judge Lois Bloom's 82 Order, dated 11/14/2019, was sent to *pro se* Defendant **Sadiq Tahir's** secondary address: **2875 W. 8th Street, Brooklyn, NY 112224**. Envelope marked, "Return To Sender. No Such Street. Unable To Forward." (Latka-Mucha, Wieslawa) (Entered: 11/22/2019) |
| 11/26/2019 | 88 | Mail Returned as Undeliverable, "Return to Sender, Insufficient Address, Unable to Forward." Order dated 11/14/19 previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 11/26/2019) |
| 11/27/2019 | 89 | Letter MOTION for Extension of Time to File Answer re 1 Complaint, *and serve initial disclosures* by Danielle Calvo, Alan Gelbstein, Ida Traschen. (Thompson, James) (Entered: 11/27/2019) |
| 11/27/2019 | 90 | ORDER: The state defendants' 89 request is granted over plaintiff's objection. The state defendants shall answer plaintiff's 1 Complaint, and plaintiff and the state defendants shall exchange initial disclosures by **12/18/2019**. SO ORDERED by Magistrate Judge Lois Bloom, on 11/27/2019. *C/mailed. (Defendants Danielle Calvo; Alan Gelbstein; and Ida Traschen's Answers due by 12/18/2019.)* (Latka-Mucha, Wieslawa) (Entered: 11/27/2019) |
| 12/02/2019 | 91 | Letter MOTION *Seeking Entrance to DMV TVB and Statement on Key Issues* by Mario H. Capogrosso. (Attachments: # 1 Affidavit of Service) (Lee, Tiffeny) (Entered: 12/02/2019) |
| 12/03/2019 | 92 | Mail Returned as Attempted Not Known. Unable to Forward. Mail - Order, Document 86 was sent to Sadiq Tahir (Piper, Francine) (Entered: 12/04/2019) |
| 12/06/2019 | 93 | RESPONSE in Opposition re 91 Letter MOTION *Seeking Entrance to DMV TVB and Statement on Key Issues* filed by Danielle Calvo, Alan Gelbstein, Ida Traschen. (Attachments: # 1 Exhibit A - Attorney Correspondence) (Thompson, James) (Entered: 12/06/2019) |
| 12/10/2019 | 94 | ORDER: Plaintiff seeks to physically enter DMV premises to "gather information with respect to not only my initial disclosures but as well as any and all discovery which I must undertake with respect to my Complaint." The state defendants 93 oppose plaintiff's 91 request. The Court shall hold a status conference on 1/10/2020 at 10:30 a.m. in Courtroom 11 A South of the United States Courthouse, to discuss the parties' discovery obligations. As previously ordered, the state defendants shall answer plaintiff's complaint and plaintiff and the state defendants shall exchange initial disclosures by 12/18/2019. ORDERED by Magistrate Judge Lois Bloom, on 12/10/2019. *C/mailed. (Defendants' answers due by 12/18/2019; Initial Disclosures due by 12/18/2019; Status Conference set for 1/10/2020 at 10:30 a.m. in Courtroom 11A South before Magistrate Judge Lois Bloom.)* (Latka-Mucha, Wieslawa) (Entered: 12/11/2019) |
| 12/11/2019 | 95 | Mail Returned as Insufficient Address. Mail sent to Sadiq Tahir, 2994 Coney Island Avenue, Brooklyn, NY 11235. Envelope was returned with no document inside. (Piper, Francine) (Entered: 12/11/2019) |
| 12/11/2019 | 96 | Letter MOTION to Substitute Party *for official-capacity claims* by Danielle Calvo, Alan Gelbstein, Ida Traschen. (Thompson, James) (Entered: 12/11/2019) |
| 12/12/2019 | 97 | Mail Returned as Insufficient Address, Unable to Forward. Mail - Order 90 was sent to |

| | | Sadiq Tahir (Piper, Francine) (Entered: 12/16/2019) |
|---|---|---|
| 12/13/2019 | 98 | Mail Returned as Insufficient Address, Unable to Forward. Mail - Order 86 was sent to Sadiq Tahir (Piper, Francine) (Entered: 12/16/2019) |
| 12/18/2019 | 99 | ANSWER to 1 Complaint, by Danielle Calvo, Alan Gelbstein, Ida Traschen. (Thompson, James) (Entered: 12/18/2019) |
| 12/30/2019 | 100 | Mail Returned as Return to Sender, No such Number, Unable to Forward. Mail - Order 94 was sent to Sadiq Tahir. (Piper, Francine) (Entered: 01/02/2020) |
| 01/03/2020 | 101 | RESPONSE in Opposition re 91 Letter MOTION *Seeking Entrance to DMV TVB and Statement on Key Issues Supplemental Response Regarding Plaintiff's Appearance at TVB* filed by Danielle Calvo, Alan Gelbstein, Ida Traschen. (Attachments: # 1 Exhibit A - Attorney Correspondence, # 2 Exhibit B - Declaration of Claudio Collins) (Thompson, James) (Entered: 01/03/2020) |
| 01/08/2020 | 102 | Letter dated January 8, 2020 from Mario Capogrosso to Judge Brodie and Magistrate Bloom, in response to State Defendants letters dated December 6, 2019 and December 11, 2019 annexed as Exhibit A. (Attachments: # 1 Affirmation of Service, # 2 Mailing Envelope) (Piper, Francine) (Entered: 01/09/2020) |
| 01/10/2020 | 103 | Minute Entry for proceedings held before Magistrate Judge Lois Bloom:Status Conference held on 1/10/2020 (FTR Log #10:50-11:33.) (Panjini, Madhura) (Entered: 01/10/2020) |
| 01/10/2020 | 104 | ORDER: As set forth in the following Order, the Court held a conference in this case on January 10, 2020. The State defendants' request to add DMV Commissioner Mark Schroeder in his official capacity regarding plaintiff's claim for prospective injunctive relief pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is granted. ECF No. 96. As discussed, plaintiff's request to enter TVB premises to conduct discovery is denied. ECF No. 91. Plaintiff shall comply with Rules 26-37 of the Federal Rules of Civil Procedure and the Court's November 14, 2019 Order regarding discovery. As previously set, the parties shall complete all discovery by May 15, 2020 and shall file any pre-motion conference request by June 5, 2020. Electronic Order dated Nov. 14, 2019. *See attached Order. C/mailed to plaintiff via first class mail.*Ordered by Magistrate Judge Lois Bloom on 1/10/2020. (Panjini, Madhura) Modified on 1/16/2020 for clerical purposes. (Panjini, Madhura). (Entered: 01/10/2020) |
| 01/15/2020 | 106 | Letter MOTION for Reconsideration re 104 Order on Motion to Compel,,,, Order on Motion to Substitute Party.,,, by Mario H. Capogrosso. (Piper, Francine) (Entered: 01/16/2020) |
| 01/16/2020 | 105 | TRANSCRIPT of Proceedings held on January 10, 2020, before Judge Bloom. Court Transcriber: Typewrite Word Processing Service, Telephone number 518-581-8973. Email address: transcripts@typewp.com. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 2/6/2020. Redacted Transcript Deadline set for 2/17/2020. Release of Transcript Restriction set for 4/15/2020. (Rocco, Christine) (Entered: 01/16/2020) |
| 01/16/2020 | | ORDER re 106 Motion for Reconsideration. The Court directs the state defendants to respond to plaintiff's motion for reconsideration on or before January 23, 2020. Ordered by Judge Margo K. Brodie on 1/16/2020. (Schindler, Emma) (Entered: 01/16/2020) |
| 01/23/2020 | 107 | RESPONSE in Opposition re 106 Letter MOTION for Reconsideration re 104 Order on |

| | | Motion to Compel..., Order on Motion to Substitute Party,,, filed by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Attachments: # 1 Exhibit A - Status Conference Transcript, # 2 Exhibit B - Employee Petition, # 3 Exhibit C - Plaintiff's Initial Disclosures) (Thompson, James) (Entered: 01/23/2020) |
|---|---|---|
| 02/03/2020 | 108 | ORDER denying 106 Motion for Reconsideration. The Court has reviewed Judge Blooms Order, denying Plaintiffs request for a court order giving him access to the TVB and directing Plaintiff to comply with the Federal Rules of Civil Procedure regarding discovery, and finds that it was not "clearly erroneous or contrary to law." Ebo, 2015 WL 4078550, at *4 (quoting McNamee, 2014 WL 1338720, at *2). Accordingly, the Court declines to modify or set aside Judge Blooms Order. Ordered by Judge Margo K. Brodie on 2/3/2020. (Piper, Francine) (Entered: 02/03/2020) |
| 02/07/2020 | | Case Reassigned to Judge Eric R. Komitee. Judge Margo K. Brodie no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Mahoney, Brenna) (Entered: 02/07/2020) |
| 02/11/2020 | 109 | Letter from Mario H. Capogrosso to Judge Brodie requesting deposition dates and clarification as to deposition transpiration costs. *(See letter for details).* (Ramesar, Thameera) (Entered: 02/12/2020) |
| 02/12/2020 | 110 | Letter from Mario H. Capogrosso to Judge Brodie regarding follow up to 109 Letter. (Ramesar, Thameera) (Entered: 02/13/2020) |
| 02/18/2020 | 111 | ORDER: As set forth in the following Order, plaintiff filed two letters regarding the parties' depositions. ECF Nos. 109-110. He reports that defendants seek to hold Ida Traschen's deposition in Albany instead of Brooklyn. ECF No. 109 at 2, 6. Plaintiff does not consent to deposing Traschen by telephone. Id. at 5. As Traschen is a named defendant in this action and defendants were granted permission to hold all the depositions in this action in the Brooklyn Courthouse, defendants shall bear the cost for Traschen's travel to Brooklyn to be deposed. Plaintiff also reports that he intends to depose three defendants in the same day. ECF No. 110 at 3, 6. Rule 30 of the Federal Rules of Civil Procedure provides that a deposition "is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). Although the Court would not advise trying to depose three defendants in the same day, plaintiff may do so. However, if he chooses to do so, he must complete all three depositions on the selected day.

The Court has reserved Room 402 South in the Brooklyn Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201, from 9:00 a.m. to 5:00 p.m. for the parties to conduct depositions on the four dates requested: March 12, March 19, April 29, and April 30, 2020. ECF No. 109 at 1. The parties shall jointly confirm in writing the dates of the depositions by February 25, 2020. The parties are reminded of their obligation to cooperate regarding discovery and that they must make a good-faith effort to resolve any dispute prior to seeking Court intervention. L. Civ. R. 26.4, 37.3. See attached Order. C/mailed to pro se plaintiff via FedEx. Ordered by Magistrate Judge Lois Bloom on 2/18/2020. (Panjini, Madhura) (Entered: 02/18/2020) |
| 02/18/2020 | 112 | Mail Returned as Undeliverable. 104 Order sent to Sadiq Tahir, returned to sender. Postal notation: Not deliverable as addressed. (Ramesar, Thameera) (Entered: 02/19/2020) |
| 02/25/2020 | 113 | Letter *Regarding Agreement On Deposition Dates* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen (Thompson, James) (Entered: 02/25/2020) |
| 02/26/2020 | 114 | ORDER: As set forth in the following Order, the parties confirm that they plan to conduct depositions on April 28 and April 29, 2020. ECF No. 113. The Court has reserved Room 402 South in the Brooklyn Courthouse, 225 Cadman Plaza East, Brooklyn, New York |

|   |   |   |
|---|---|---|
|   |   | 11201 on April 28 and 29, 2020 from 9:00 a.m. to 5:00 p.m. The parties are reminded that they are responsible for arranging for their own court reporters. As previously set, the parties shall complete all discovery by May 15, 2020 and shall file any pre-motion conference request in accordance with Judge Komitee's Individual Rules by June 5, 2020. Electronic Order dated Nov. 14, 2019. See attached Order. C/mailed to plaintiff via first-class mail. Ordered by Magistrate Judge Lois Bloom on 2/26/2020. (Panjini, Madhura) (Entered: 02/26/2020) |
| 03/01/2020 | 116 | Mail Returned as Undeliverable. 108 Order mailed to Sadiq Tahir - returned to sender. Postal notation: not deliverable as addressed. (Ramesar, Thameera) (Entered: 03/05/2020) |
| 03/04/2020 | 115 | Mail Returned as Undeliverable. Mail sent to Sadiq Tahir 2994 Coney Island Avenue Brooklyn, NY 11235 (Marziliano, August) (Entered: 03/04/2020) |
| 03/18/2020 | 117 | Letter MOTION to Take Deposition from Ida Traschen *Remotely via Telephone* by Ida Traschen. (Thompson, James) (Entered: 03/18/2020) |
| 03/18/2020 | 118 | ORDER: As set forth in the attached Order, State defendants' counsel requests that the deposition of Ida Traschen be conducted remotely due to the COVID-19 pandemic. ECF No. 117. Plaintiff does not consent. The request is denied. <br><br> In light of the national emergency posed by COVID-19, the Court stays all deadlines in this case and cancels all depositions, ECF No. 114. The Court shall reschedule deadlines and any depositions that need to be conducted at the Courthouse at a later date. The parties shall file a status letter proposing dates and times for a telephone conference by May 1, 2020. State defendants' counsel shall mail a copy of this Order to plaintiff and file proof of service forthwith. See attached Order. Ordered by Magistrate Judge Lois Bloom on 3/18/2020. (Panjini, Madhura) (Entered: 03/18/2020) |
| 03/20/2020 | 119 | Letter *Certifying Service of Court's Order* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen (Attachments: # 1 Affidavit of Service, # 2 Exhibit Email Exchange with pro se attorney Plaintiff indicating electronic receipt) (Thompson, James) (Entered: 03/20/2020) |
| 03/20/2020 | 120 | MOTION for Sanction / Letter from Mario H. Capogrosso to Judge Komitee seeking an Order requiring State's Attorney, service. (*See letter for details*). (Ramesar, Thameera) *Modified. (Latka-Mucha, Wieslawa)* (Entered: 03/23/2020) |
| 03/25/2020 | 121 | Letter *Opposing Pro Se Attorney Plaintiff's March 23 Letter-Motion for Hard Copy Service and Sanctions* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen (Thompson, James) (Entered: 03/25/2020) |
| 03/25/2020 | 122 | DECLARATION re 121 Letter *Opposing Pro Se Attorney Plaintiff's March 23 Letter-Motion for Hard Copy Service and Sanctions* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen (Attachments: # 1 Exhibit 1 - Email from Plaintiff Enclosing Deposition Notices, # 2 Exhibit 2 - Email from Plaintiff Refusing to Register for ECF, # 3 Exhibit 3 - Email to Plaintiff Attaching Dkt. No. 117, # 4 Exhibit 4 - Email from Plaintiff Showing Receipt of March 18 Order, # 5 Exhibit 5 - Email Exchange with Plaintiff Threatening Sanctions, # 6 Exhibit 6 - Excerpts of Aug. 2, 2018 Conference Before Judge Brodie, # 7 Exhibit 7 - Excerpts of Jan. 10, 2020 Conference Before Judge Bloom) (Thompson, James) (Entered: 03/25/2020) |
| 03/26/2020 | 123 | REPLY re 121 Letter, filed by Mario H. Capogrosso. (Ramesar, Thameera) (Entered: 03/27/2020) |
| 03/27/2020 | 124 | Letter from Mario H. Capogrosso to Judge Komitee regarding requested sanction amount. (*See letter for details*). (Ramesar, Thameera) Modified on 3/30/2020 to correct the docket description. (Panjini, Madhura). (Entered: 03/27/2020) |

| 04/27/2020 | 125 | Letter *Regarding Upcoming Conference Date* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen (Thompson, James) (Entered: 04/27/2020) |
| 04/29/2020 | | ORDER: The Court shall hold a telephone status conference in plaintiff's case on May 5, 2020 at 11:00 a.m. The parties shall call the Chambers telephone conference line at (888) 363-4734 and use the access code 4444221 promptly at 11:00 a.m. on May 5, 2020. Parties are advised that they must contact each other before making any request for an adjournment to the Court. Any request for an adjournment must be electronically filed with the Court at least forty-eight (48) hours before the scheduled conference. The State defendants' counsel is respectfully directed to communicate this Order to plaintiff and co-defendants by any means available forthwith, including by e-mail or telephone. Ordered by Magistrate Judge Lois Bloom on 4/29/2020. (Panjini, Madhura) (Entered: 04/29/2020) |
| 05/01/2020 | 128 | Letter from Mario H. Capogrosso to Judge Komitee, response to March 18, 2020 Order (Dkt. 118). See attached. (Ramesar, Thameera) (Entered: 05/06/2020) |
| 05/04/2020 | 126 | STATUS REPORT by Mario H. Capogrosso (Ramesar, Thameera) (Entered: 05/05/2020) |
| 05/05/2020 | | Minute Entry for proceedings held before Magistrate Judge Lois Bloom:Telephone Conference held on 5/5/2020 (AT&T #11:01-11:57.) (Panjini, Madhura) (Entered: 05/06/2020) |
| 05/05/2020 | 127 | ORDER: As discussed on the record, plaintiff failed to comply with the safe harbor provision of Rule 11 of the Federal Rules of Civil Procedure and failed to establish a factual or legal basis upon which to impose sanctions; thus, plaintiff's 120 motion for sanctions against the State defendants' counsel is denied. During the conference, the Court suggested that plaintiff register for electronic case notifications. If plaintiff is eligible and wishes to receive electronic notifications, plaintiff should complete the attached Registration and Consent form and return the form to the Court. The Court shall hold a telephone status conference in this case on June 16, 2020 at 11:00 a.m. to discuss the parties' depositions. The parties shall call the Chambers telephone conference line at (888) 363-4734 and use the access code 4444221 promptly at 11:00 a.m. The Clerk of Court is respectfully directed to mail this Order to plaintiff and the *pro se* defendants. SO ORDERED by Magistrate Judge Lois Bloom, on 5/5/2020. *(Attachments: # 1 Instruction for Pro Se Registration and Consent for Electronic Service of Orders and Notices Issued by the Court in Civil Cases, # 2 Pro Se Registration and Consent Form; Telephone Conference set for 6/16/2020 at 11:00 a.m. before Magistrate Judge Lois Bloom.)* (Latka-Mucha, Wieslawa) (Entered: 05/06/2020) |
| 05/15/2020 | 129 | TRANSCRIPT of Proceedings held on May 5, 2020, before Judge Bloom. Court Reporter/Transcriber Transcriptions Plus II, Inc., Email address: laferrara44@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 6/5/2020. Redacted Transcript Deadline set for 6/15/2020. Release of Transcript Restriction set for 8/13/2020. (Hong, Loan) (Entered: 05/15/2020) |
| 06/10/2020 | 130 | Mail Returned as Undeliverable. 127 Order mailed to Sadiq Tahir - returned to sender. Postal notation: Insufficient address. (Ramesar, Thameera) (Entered: 06/10/2020) |
| 06/16/2020 | | Minute Entry for proceedings held before Magistrate Judge Lois Bloom:Telephone Conference held on 6/16/2020 (AT&T #11:02-11:57.) (Panjini, Madhura) (Entered: 06/16/2020) |
| 06/16/2020 | 131 | ORDER: The parties shall complete all discovery by 10/16/ 2020. All depositions shall be conducted remotely. The parties shall notify the Court of the agreed-upon dates for all |

depositions. Once the depositions are scheduled, the Court shall provide an e-mail address to the parties which may be used should a dispute arise during the deposition that the parties cannot resolve despite their best efforts. The parties shall file any pre-motion conference request in accordance with Judge Komitee's Individual Rules by 10/30/2020. SO ORDERED by Magistrate Judge Lois Bloom, on 6/16/2020. C/mailed. *(Discovery due by 10/16/2020; Parties' pre-motion conference request due by 10/30/2020.)* (Latka-Mucha, Wieslawa) (Entered: 06/17/2020)

| | | |
|---|---|---|
| 07/06/2020 | 132 | Mail Returned as Undeliverable. 131 Order mailed to Sadiq Tahir returned to sender. Postal notation: Insufficient address. (Ramesar, Thameera) (Entered: 07/09/2020) |
| 09/03/2020 | 133 | Letter from David Smart in regards to case. See attached. (Ramesar, Thameera) (Entered: 09/04/2020) |
| 09/16/2020 | 134 | NOTICE of Change of address. Address updated. *(Copy of docket sheet mailed)* (Ramesar, Thameera) (Entered: 09/18/2020) |
| 09/16/2020 | 135 | NOTICE of Change of Phone number. Docket updated. (Ramesar, Thameera) (Entered: 09/18/2020) |
| 09/16/2020 | 136 | AFFIRMATION of Service for Interrogatories on August 25, 2020, filed by David Smart. (Ramesar, Thameera) (Entered: 09/18/2020) |
| 09/22/2020 | 137 | Consent MOTION for Extension of Time to Complete Discovery *for Plaintiff's and State Defendants' responses to discovery requests* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 09/22/2020) |
| 09/23/2020 | 138 | ORDER: Granting Motion for Extension of Time to Complete Discovery. ECF No. 137. Ordered by Magistrate Judge Lois Bloom on 9/23/2020. (Wilhelm, Samantha) (Entered: 09/23/2020) |
| 10/23/2020 | 139 | Letter MOTION for Protective Order *pursuant to FRE 502(d) and Confidentiality Order* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Attachments: # 1 Proposed Order Proposed 502(d) Order, # 2 Proposed Order Proposed Confidentiality Order) (Thompson, James) (Entered: 10/23/2020) |
| 10/28/2020 | 140 | ORDER: The State Defendants plan to produce discovery to plaintiff but first request two proposed orders. ECF No. 139. The Court grants defendants' request for an order under the Federal Rule of Evidence 502(d), which protects the parties against the inadvertent waiver of privileged information. See attached. However, the Court cannot so order a confidentiality order unless all parties sign it. Plaintiff is advised that signing an agreement to keep discovery materials confidential is not a motion to exclude evidence. If plaintiff refuses to sign a confidentiality agreement, defendants may not produce confidential material to him during discovery. Ordered by Magistrate Judge Lois Bloom on 10/28/2020. (Wilhelm, Samantha) (Entered: 10/28/2020) |
| 11/23/2020 | 141 | Mail Returned as Undeliverable. 140 Order mailed to Sadiq Tahir, returned to sender. Postal notation: insufficient address. (Ramesar, Thameera) (Entered: 11/24/2020) |
| 11/27/2020 | 143 | Letter MOTION to Appoint Counsel by David Smart. (Ramesar, Thameera) (Entered: 12/01/2020) |
| 11/30/2020 | 142 | Consent MOTION for Extension of Time to Complete Discovery *to Complete Depositions* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 11/30 2020) |
| 12/02/2020 | 144 | Pro se defendant David Smart requests pro bono counsel. ECF No. 143. There is no right to counsel in a civil case. Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 453 (2d Cir. 2013). The Court cannot compel an attorney to represent a litigant in a civil case |

| | | without a fee. Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989). Although the Court would prefer all parties to have access to counsel, there is no right to counsel. Accordingly, defendant's request for pro bono counsel is denied without prejudice. Defendant Smart may contact The Federal Pro Se Legal Assistance Project, a free, limited-scope legal assistance clinic operated by the City Bar Justice Center of the New York City Bar Association. A copy of the City Bar Justice Centers flyer is included with this Order. See attached. Ordered by Magistrate Judge Lois Bloom on 12/2/2020. (Wilhelm, Samantha) (Entered: 12/02/2020) |
|---|---|---|
| 12/02/2020 | 145 | ORDER: Defendants, with plaintiff's consent, request a second extension of the deadline for the parties to complete all discovery. ECF No. 142. The request is granted. The parties shall complete all discovery by December 22, 2020. The parties shall file any pre-motion conference request by January 12, 2021, in accordance with Judge Komitee's Individual Rules. Ordered by Magistrate Judge Lois Bloom on 12/2/2020. (Wilhelm, Samantha) Modified. (Latka-Mucha, Wieslawa) (Entered: 12/02/2020) |
| 12/10/2020 | 147 | Letter fro Mario H. Capogrosso to Judge Komitee regarding discovery dispute. See attached. (Ramesar, Thameera) (Entered: 12/15/2020) |
| 12/15/2020 | 146 | Letter MOTION for Protective Order against attempt to depose Commissioner Schroeder by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 12/15/2020) |
| 12/16/2020 | 148 | ORDER: On December 10, 2020, plaintiff requested a Court Order that defendant Commissioner Schroeder be produced for a deposition. ECF No. 147. Defendants request a protective order, pursuant to Federal Rule of Civil Procedure 26(c), prohibiting plaintiff's deposition of Commissioner Schroeder. ECF No. 146. For the reasons set forth in the attached order, defendants' motion for a protective order is granted. Plaintiff also requests that defendant Smart be ordered to respond to his interrogatories dated August 25, 2020 and that defendant Smart provide plaintiff with an email address or phone number to conduct his deposition remotely. Although plaintiff states that he served interrogatories on defendant Smart, he has not provided them to the Court. Therefore, the Court cannot rule on plaintiff's request to compel defendant Smart to respond. Whereas plaintiff is permitted to pursue discovery, the Court will not compel defendant Smart to provide his email address or phone number to plaintiff. Plaintiff may provide the interrogatories that are outstanding to the Court for the Court to consider them. This will be the one exception to the parties' deadline to complete all discovery by December 22, 2020. Defendants' counsel shall communicate this order to plaintiff by all available means. See attached Order. Ordered by Magistrate Judge Lois Bloom on 12/16/2020. (Wilhelm, Samantha) (Entered: 12/16/2020) |
| 12/22/2020 | 149 | Letter dated December 21, 2020 from Exhibit Mano H. Capogrosso to Judge Komitee regarding discovery dispute of interrogatories. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Ramesar, Thameera) (Entered: 12/28/2020) |
| 12/28/2020 | 150 | Letter Opposing Pro Se Attorney Plaintiff's Subpoena Request by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen (Attachments: # 1 Exhibit A - March 6 Attorney Correspondence Regarding Deposition Subpoena) (Thompson, James) (Entered: 12/28/2020) |
| 01/11/2021 | 151 | Letter MOTION for pre motion conference regarding motion for summary judgment by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 01/11/2021) |
| 01/13/2021 | 152 | Letter MOTION for Reconsideration re 148 Order on Motion for Protective Order,,,,, by Mario H. Capogrosso. (Ramesar, Thameera) (Entered: 01/13/2021) |

| 01/13/2021 | 153 | RESPONSE in Opposition re 152 Letter MOTION for Reconsideration re 148 Order on Motion for Protective Order,,,,, filed by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 01/13/2021) |
|---|---|---|
| 01/13/2021 | 154 | ORDER: Plaintiff moves the Court to compel discovery. Specifically, plaintiff seeks a Court Order that defendant Smart answer his interrogatories and "produce an email and requisite laptop" so that plaintiff can conduct Smart's deposition, that defendant Smart be ordered to appear at a deposition, that the State's Attorney produce two clerks he wishes to depose, and that the discovery deadline be extended by 30 days. ECF No. 149. The State defendants oppose plaintiff's requests to conduct additional depositions and to extend discovery. For the reasons set forth in the attached Order, plaintiff's requests are granted in part and denied in part. Defendant Smart shall, to the best of his ability, respond in writing to plaintiff's interrogatories No. 1-7 by February 12, 2021. Fed. R. Civ. P. 33(b)(2). Discovery in this matter is otherwise closed.Plaintiff's deadline to respond to the State defendant's pre-motion conference request, ECF No. 151, pursuant to Judge Komittee's individual rules, is extended. Plaintiff shall respond to the State defendant's pre-motion conference request by February 19, 2021. Defendants' counsel shall communicate this order to plaintiff and to defendant Smart by all available means. Ordered by Magistrate Judge Lois Bloom on 1/13/2021. (Wilhelm, Samantha) (Entered: 01/13/2021) |
| 01/15/2021 | 155 | RESPONSE in Opposition re 151 Letter MOTION for pre motion conference *regarding motion for summary judgment* filed by Mario H. Capogrosso. (Ramesar, Thameera) (Entered: 01/15/2021) |
| 02/03/2021 | 156 | Mail Returned as Undeliverable. 154 Order mailed to Sadiq Tahir returned to sender. Postal notation: insufficient address. (Ramesar, Thameera) (Entered: 02/04/2021) |
| 02/19/2021 | 157 | Letter MOTION for Sanctions *and that default judgment be entered against deft David Smart, filed* by Mario H. Capogrosso. (Attachments: # 1 Exhibit A) (Galeano, Sonia) (Entered: 02/22/2021) |
| 02/22/2021 | 158 | RESPONSE in Opposition re 157 Letter MOTION for Sanctions *and that default judgment be entered against deft David Smart, filed* filed by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 02/22/2021) |
| 02/25/2021 | 159 | ORDER: The Court ordered Defendant David Smart to respond to plaintiff's interrogatories dated August 25, 2020 by February 12, 2021. ECF No 154. Plaintiff reports that Defendant Smart has not responded to his interrogatories and moves the Court to impose sanctions on Defendant Smart. ECF No. 157. The state defendants oppose plaintiff's motion. ECF No. 158. Plaintiffs request is denied without prejudice. Defendant Smart proceeds in this matter pro se, and unlike plaintiff, Mr. Smart is not an attorney. The Court shall therefore give Mr. Smart another chance to comply with the Court's Order. The Court shall hold a conference in this action on March 16, 2021 at noon. Instead of providing written responses to plaintiffs interrogatories, **Defendant Smart shall call the Chambers telephone conference line at (888) 363-4734 and use the access code 4444221 at 12:00p.m. on March 16, 2021.** At the conference, the Court shall swear defendant Smart to the truth of his testimony and defendant Smart shall answer plaintiff's interrogatories orally on the record. The Clerk of Court is respectfully requested to serve a copy of this order upon Defendant Smart via overnight delivery. Ordered by Magistrate Judge Lois Bloom on 2/25/2021. (Wilhelm, Samantha) (Entered: 02/25/2021) |
| 03/01/2021 | | ORDER re 51 Motion for Pre Motion Conference -- The Court has reviewed the parties' pre-motion letters concerning State Defendants' motion for summary judgment and has determined that a pre-motion conference is not necessary. The motion shall be briefed as |

| | | follows: State Defendants' motion by March 31, 2021; Plaintiff's response by April 30, 2021; and State Defendants' reply, if any, by May 10, 2021. As a courtesy to the Court, the parties are encouraged not to file their motion papers and submit courtesy copies until the motion has been fully briefed, unless doing so might cause a party to miss a statutory deadline. *See* Rule III.B.2 this Court's Individual Practices and Rules. Ordered by Judge Eric R. Komitee on 3/1/2021. *c/m to pro se parties.* (Guy, Alicia) (Entered: 03/01/2021) |
|---|---|---|
| 03/09/2021 | 160 | Mail Returned as Undeliverable, Reason for return: "Return to Sender, No Such Number, Unable to Forward." Order dated 2/25/2021 previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 03/09/2021) |
| 03/09/2021 | 161 | Letter MOTION for Extension of Time to File Response/Reply . *Deft opposes Plaintiffs Letter Motion for Sanctions (ECF # 157) filed February 19, 2021; (2) to respectfully request an extension of time, nunc pro tunc, to serve my responses to Plaintiff's interrogatories, and (3) to request appointment of limited-scope pro bono counsel for the purpose of moving for summary judgment. 1,* Letter MOTION to Appoint Counsel *filed* by David Smart. (Galeano, Sonia) (Entered: 03/10/2021) |
| 03/11/2021 | 162 | ORDER: Defendant Smart, who proceeds in this matter pro se, writes to oppose plaintiff's motion for sanctions, ECF No. 157, to request an extension of time, *nunc pro tunc*, to serve his responses to plaintiff's interrogatories, and to request the appointment of limited-scope pro bono counsel for the purpose of moving for summary judgment. ECF No. 161. Defendant Smart's requests are granted in part and denied in part.

On February 25, 2021, the Court denied plaintiff's motion for sanctions without prejudice. ECF No. 159. Accordingly, Defendant Smart's request to oppose sanctions is denied as moot. The Court grants Defendant Smart's request for an extension of time to serve his responses to plaintiff's interrogatories *nunc pro tunc*. Defendant Smart states that he received assistance from the City Bar Justice Centers Pro Se Project ("the Pro Se Project") to draft his responses to plaintiff's interrogatories and intends to serve a copy of his responses shortly. The Court notes that Defendant Smart's letter is dated February 24, 2021 and that Defendant Smart may have already served his interrogatory responses. However, the conference scheduled for March 16, 2021 at noon shall proceed as scheduled. **The parties, including defendant Smart, shall call the Chambers telephone conference line at (888) 363-4734 and use the access code 4444221 at 12:00p.m. on March 16, 2021.** Defendant Smart requests the Pro Se Project's assistance in searching for limited-scope pro bono counsel. The Court grants defendant Smart's request for the Pro Se Project to seek limited-scope pro bono counsel in order for Mr. Smart to move for summary judgment. Ordered by Magistrate Judge Lois Bloom on 3/11/2021. (Wilhelm, Samantha) (Entered: 03/11/2021) |
| 03/16/2021 | | Minute Entry for proceedings held before Magistrate Judge Lois Bloom:Telephone Conference held on 3/16/2021. AT&T Log # (12:08-12:33). (Wilhelm, Samantha) (Entered: 03/16/2021) |
| 03/18/2021 | 163 | TRANSCRIPT of Proceedings held on March 16, 2021, before Judge Bloom. Court Reporter/Transcriber Transcriptions Plus II, Inc.. Email address: laferrara44@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 4/8/2021. Redacted Transcript Deadline set for 4/19/2021. Release of Transcript Restriction set for 6 16/2021. (Hong, Loan) (Entered: 03/18/2021) |
| 03/18/2021 | 164 | ORDER: The Court held a telephone status conference in this action on March 16, 2021. Defendant Smart answered plaintiff's interrogatories under oath on the record. The Court |

| | | shall have the transcript of the conference made part of the record. The Clerk of Court shall mail plaintiff a copy of the transcript. ECF No. 163. Discovery in this matter is closed. The briefing schedule set by Judge Komitee for defendants' motion for summary judgment remains in effect. A copy of this Order shall be sent to plaintiff and to Defendant Smart. Ordered by Magistrate Judge Lois Bloom on 3/18/2021. (Wilhelm, Samantha) (Entered: 03/18/2021) |
|---|---|---|
| 03/18/2021 | 165 | Mail Returned as Undeliverable, "Return to Sender; Insufficient Address, Unable to Forward." Order dated 3/1/2021 previously sent to to Sadiq Tahir. (Galeano, Sonia) (Entered: 03/22/2021) |
| 03/25/2021 | 166 | Letter MOTION for Extension of Time to File *Motion for Summary Judgment* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 03/25/2021) |
| 03/26/2021 | | ORDER granting 166 Motion for Extension of Time to File. The motion schedule is amended as follows: State Defendants' motion by April 30, 2021; Plaintiff's response by June 1, 2021; and State Defendants' reply, if any, by June 11, 2021. c/m to *pro se* parties. Ordered by Judge Eric R. Komitee on 3/26/2021 (LiCalzi, Christine) (Entered: 03/26/2021) |
| 03/26/2021 | 167 | NOTICE of Appearance by Maura Douglas on behalf of David Smart (aty to be noticed) (Douglas, Maura) (Entered: 03/26/2021) |
| 03/26/2021 | 168 | NOTICE of Appearance by Brianne Holland-Stergar on behalf of David Smart (aty to be noticed) (Holland-Stergar, Brianne) (Entered: 03/26/2021) |
| 03/30/2021 | 173 | Mail Returned as Undeliverable: Fed ex overnight mailing re: Magistrate Judge Bloom's Order dated 2/25/2021. Mail sent to David Smart. Fed ex failed to check off reason for package return. (Tavarez, Jennifer) (Entered: 04/08/2021) |
| 04/05/2021 | 169 | Mail Returned as Undeliverable, Reason for Return: "Return to Sender, Insufficient Address, Unable to Forward " Order dated 3/26/2021 previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 04/05/2021) |
| 04/06/2021 | 170 | MOTION for pre motion conference by David Smart. (Douglas, Maura) (Entered: 04/06/2021) |
| 04/06/2021 | 172 | Mail Returned as Undeliverable. Reason for return: "Return to Sender, Insufficient Address, Unable to Forward." Orders dated 3/11/2021 and 3/18/2021 previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 04/08/2021) |
| 04/07/2021 | | NOTICE: Defendant David Smart submitted a letter requesting a pre-motion conference on an anticipated motion for summary judgment on April 6, 2021. The Parties are reminded that pursuant to Rule III.B.4 of Judge Komitee's Individual Motion Practices and Rules, all served parties are required to serve and file a letter response of three pages or less, within five days from service of defendant Smart's letter. *c/m to pro se parties.* (Guy, Alicia) (Entered: 04/07/2021) |
| 04/07/2021 | 171 | RESPONSE to Motion re 170 MOTION for pre motion conference filed by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 04/07/2021) |
| 04/17/2021 | 174 | RESPONSE in Opposition to Deft David Smart's motion for summary judgment and apologizing to the Court for pltff's late reply with respect to opposing counsel's 170 MOTION for pre motion conference, filed by Mario H. Capogrosso. (Galeano, Sonia) (Entered: 04/19/2021) |
| 04/17/2021 | 175 | AFFIRMATION of Service re: Pltff's Response in Opposition to Deft's Motion, served |

| | | upon Maura Douglas, Esq., James Thompson, Esq., Sadiq Tahir, and Pec Group of NY via 4/17/2021, filed Mario H. Capogrosso. (Galeano, Sonia) (Entered: 04/19/2021) |
|---|---|---|
| 04/20/2021 | | ORDER denying 170 Motion for Pre Motion Conference -- Defendant Smart's motion for a pre-motion conference is denied. Defendant Smart shall join the State Defendants' briefing schedule, which is adjourned as follows: Defendants' motions by May 17, 2021; Plaintiff's response by June 29, 2021; and Defendants' replies, if any, by July 9, 2021. The forthcoming motions for summary judgment are respectfully referred to Magistrate Judge Bloom for a Report and Recommendation. Ordered by Judge Eric R. Komitee on 4/20/2021. *c/m to pro se parties.* (Guy, Alicia) Modified on 4/20/2021 (Guy, Alicia). (Entered: 04/20/2021) |
| 04/26/2021 | 176 | Mail Returned as Undeliverable: Notice of electronic filing entered on 4/7/2021. Mail sent to Sadiq Tahir, 2994 Coney Island Avenue, Brooklyn, NY 11235. Postal Notation: Return to sender, insufficient address, unable to forward. (Tavarez, Jennifer) (Entered: 04/30/2021) |
| 05/12/2021 | 177 | Letter MOTION for Leave to File Excess Pages by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 05/12/2021) |
| 05/17/2021 | 178 | MOTION for Summary Judgment by David Smart. (Attachments: # 1 Memorandum in Support of Motion for Summary Judgment, # 2 Declaration of Maura Douglas, # 3 Exhibit 1 - Excerpts of Deposition of Mario Capogrosso, # 4 Exhibit 2 - Excerpts of Plaintiff's Responses to Interrogatories and Document Production, # 5 Exhibit 3 - Transcript of March 16, 2021 Hearing, # 6 Exhibit 4 - Excerpts of Deposition of Danielle Calvo, # 7 Rule 56.1 Statement of Undisputed Material Facts, # 8 Rule 56.2 Statement) (Douglas, Maura) (Entered: 05/17/2021) |
| 05/17/2021 | 179 | MOTION for Summary Judgment by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 180 | MEMORANDUM in Support re 179 MOTION for Summary Judgment filed by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 181 | RULE 56.1 STATEMENT *in Support of State Defendants' Motion for Summary Judgment* filed by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 182 | NOTICE by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen re 179 MOTION for Summary Judgment *Local Civil Rule 56.2 Notice* (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 183 | AFFIDAVIT/DECLARATION in Support re 179 MOTION for Summary Judgment *Declaration of Danielle Calvo* filed by Danielle Calvo. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 184 | EXHIBIT *1 - TVB Employee Petition* by Danielle Calvo. Related document: 183 Affidavit in Support of Motion filed by Danielle Calvo. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 185 | EXHIBIT *2 - May 5, 2014 Piparo Workplace Violence Report* by Danielle Calvo. Related document: 183 Affidavit in Support of Motion filed by Danielle Calvo. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 186 | EXHIBIT *3 - May 5, 2015 Calvo Workplace Violence Report* by Danielle Calvo. Related document: 183 Affidavit in Support of Motion filed by Danielle Calvo. (Thompson, James) (Entered: 05/17/2021) |

| | | |
|---|---|---|
| 05/17/2021 | 187 | EXHIBIT 4 - *May 11, 2015 Calvo-Smart Workplace Violence Report* by Danielle Calvo. Related document: 183 Affidavit in Support of Motion filed by Danielle Calvo. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 188 | EXHIBIT 5 - *May 11, 2015 Adinolfi Statement* by Danielle Calvo. Related document: 183 Affidavit in Support of Motion filed by Danielle Calvo. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 189 | EXHIBIT 6 - *May 11, 2015 Han Statement* by Danielle Calvo. Related document: 183 Affidavit in Support of Motion filed by Danielle Calvo. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 190 | AFFIDAVIT/DECLARATION in Support re 179 MOTION for Summary Judgment *Declaration of Alan Gelbstein* filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 191 | EXHIBIT 1 - *April 21, 2009 Perez Statement* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 192 | EXHIBIT 2 - *April 21, 2009 Tucci Statement* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 193 | EXHIBIT 3 - *June 19, 2009 Cervoni Complaint* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 194 | EXHIBIT 4 - *August 5, 2009 Paez/Fuller Complaint* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 195 | EXHIBIT 5 - *TVB Employee Petition* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 196 | EXHIBIT 6 - *December 23, 2011 Vahdatalamas Email to File* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 197 | EXHIBIT 7 - *December 22, 2011 Brody Statement* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 198 | EXHIBIT 8 - *December 22, 2011 Maher Statement* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 199 | EXHIBIT 9 - *Tahir Statement re December 2011 Incident* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 200 | EXHIBIT 10 - *December 23, 2011 Meyers Statement* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 201 | EXHIBIT 11 - *May 3, 2012 ALJ Affirmation in Article 78 Proceeding* by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein (Thompson, James) (Entered: 05/17/2021) |

| 05/17/2021 | 202 | EXHIBIT 12 - May 9, 2014 Piparo Workplace Violence Report by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 203 | EXHIBIT 13 - October 29, 2014 Alford Complaint by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 204 | EXHIBIT 14 - February 3 Smart Complaint by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 205 | EXHIBIT 15 - February 5, 2015 Perez Complaint by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 206 | EXHIBIT 16 - February 5, 2015 Vergara Statement by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 207 | EXHIBIT 17 - February 5, 2015 Levine Workplace Violence Report by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 208 | EXHIBIT 18 - February 9, 2015 Piparo Email Complaint by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 209 | EXHIBIT 19 - March 19, 2015 Fuller/Tahir Complaint Memo by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 210 | EXHIBIT 20 - May 5, 2015 Tahir Complaint by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 211 | EXHIBIT 21 - May 5, 2015 Rivers Statement by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 212 | EXHIBIT 22 - May 5, 215 Beer Statement by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 213 | EXHIBIT 23 - May 5, 2015 Calvo Workplace Violence Report by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 214 | EXHIBIT 24 - May 11, 2015 Calvo/Smart Workplace Violence Report by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 215 | EXHIBIT 25 - May 11, 2015 Adinolfi Statement by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 216 | EXHIBIT 26 - May 11, 2015 Han Statement by Alan Gelbstein. Related document: 190 Affidavit in Support of Motion filed by Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |

| 05/17/2021 | 217 | AFFIDAVIT/DECLARATION in Support re 179 MOTION for Summary Judgment *Declaration of Ida Traschen* filed by Ida Traschen. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 218 | EXHIBIT *1 - Commissioner's Job Announcement* by Ida Traschen. Related document: 217 Affidavit in Support of Motion filed by Ida Traschen. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 219 | EXHIBIT *2 - May 15, 2012 Letter Warning Plaintiff Regarding Further Aggressive Or Violent Conduct* by Ida Traschen. Related document: 217 Affidavit in Support of Motion filed by Ida Traschen. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 220 | AFFIDAVIT/DECLARATION in Support re 179 MOTION for Summary Judgment *Declaration of James M. Thompson* filed by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 221 | EXHIBIT *1 - Plaintiff's Deposition Transcript Part 1* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. Related document: 220 Affidavit in Support of Motion filed by Danielle Calvo, Ida Traschen, Mark J.F. Schroeder, Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 222 | EXHIBIT *2 - Plaintiff's Deposition Transcript Part 2* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. Related document: 220 Affidavit in Support of Motion filed by Danielle Calvo, Ida Traschen, Mark J.F. Schroeder, Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 223 | EXHIBIT *3 - January 25, 2012 Letter from Plaintiff's Counsel* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. Related document: 220 Affidavit in Support of Motion filed by Danielle Calvo, Ida Traschen, Mark J.F. Schroeder, Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 224 | EXHIBIT *4 - Plaintiff's 2012 Article 78 Verified Petition* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. Related document: 220 Affidavit in Support of Motion filed by Danielle Calvo, Ida Traschen, Mark J.F. Schroeder, Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 225 | EXHIBIT *5 - Statement of Dr. John McCann* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. Related document: 220 Affidavit in Support of Motion filed by Danielle Calvo, Ida Traschen, Mark J.F. Schroeder, Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 226 | EXHIBIT *6 - June 2012 Article 78 Stipulation of Discontinuance* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. Related document: 220 Affidavit in Support of Motion filed by Danielle Calvo, Ida Traschen, Mark J.F. Schroeder, Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 227 | EXHIBIT *7 - March 20, 2015 AG Letter* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. Related document: 220 Affidavit in Support of Motion filed by Danielle Calvo, Ida Traschen, Mark J.F. Schroeder, Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 228 | EXHIBIT *8 - Transcript of March 16, 2021 Telephone Conference Before Judge Bloom* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. Related document: 220 Affidavit in Support of Motion filed by Danielle Calvo, Ida Traschen, Mark J.F. Schroeder, Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/17/2021 | 229 | EXHIBIT *9 - Plaintiff's Responses to State Defendants' Interrogatories* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. Related document: 220 |

| | | |
|---|---|---|
| | | Affidavit in Support of Motion filed by Danielle Calvo, Ida Traschen, Mark J.F. Schroeder, Alan Gelbstein. (Thompson, James) (Entered: 05/17/2021) |
| 05/18/2021 | | MOTIONS REFERRED: 179 MOTION for Summary Judgment , 178 MOTION for Summary Judgment. *See* Judge Komitee's Order dated April 20, 2021. (Guy, Alicia) (Entered: 05/18/2021) |
| 05/19/2021 | 230 | Mail Returned as Undeliverable, "Return to Sender, Insufficient Address, Unable to Forward." Order dated 4/20/2021 previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 05/21/2021) |
| 05/21/2021 | 231 | Letter *Regarding Pro Se Attorney Plaintiff's Inappropriate And Aggressive Telephone Behavior* by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen (Attachments: # 1 Exhibit 1 - Service of Motion Papers, # 2 Exhibit 2 - Service of Calvo Declaration and Exhibits, # 3 Exhibit 3 - Service of Gelbstein Declaration and Exhibits, # 4 Exhibit 4 - Service of Traschen Declaration and Exhibits, # 5 Exhibit 5 - Service of Thompson Declaration and Exhibits) (Thompson, James) (Entered: 05/21/2021) |
| 05/26/2021 | 232 | Letter dated 5/25/2021 from Mario H. Capogrosso to Judge Komitee, submitting Response and Objection to State Defendants' Request for a Page Enlargement, Dkt.177, dated May 12, 2021. (Attachments: # 1 Exhibit A, # 2 Affirmation of Service) (Galeano, Sonia) (Entered: 05/26/2021) |
| 06/29/2021 | 233 | Letter MOTION for Extension of Time to File *to file and serve pltff's opposition and response to the State Defts and Deft Smarts' motion for summary judgment. Pltff request an extension of time to 7/29/2021 to respond, filed* by Mario H. Capogrosso. (w/ Affirmation of Service attached) (Galeano, Sonia) Modified on 7/1/2021 (Galeano, Sonia). (Entered: 07/01/2021) |
| 06/29/2021 | 235 | PLTFF'S AFFIRMATION in Opposition to State Defts' 179 MOTION for Summary Judgment filed by Mario H. Capogrosso. (w/ Affirmation of Service attached to main document) (Attachments: # 1 Envelope) (Galeano, Sonia) (Additional attachment(s) added on 7/12/2021: # 2 Exhibit A, # 3 Exhibit B, # 5 Exhibit C, # 6 Exhibit D) (Galeano, Sonia). Modified on 7/12/2021 (Galeano, Sonia). (Entered: 07/12/2021) |
| 06/29/2021 | 236 | EXHIBIT E Part 1 by Mario H. Capogrosso. Related document: 235 Affidavit in Opposition to Motion, filed by Mario H. Capogrosso. (Attachments: # 1 Exhibit E Part 2, # 2 Envelope) (Galeano, Sonia) (Entered: 07/12/2021) |
| 06/29/2021 | 237 | EXHIBIT F by Mario H. Capogrosso. Related document: 235 Affidavit in Opposition to Motion, filed by Mario H. Capogrosso. (Attachments: # 1 Envelope) (Galeano, Sonia) (Entered: 07/12/2021) |
| 06/29/2021 | 238 | EXHIBIT G-M by Mario H. Capogrosso. Related document: 235 Affidavit in Opposition to Motion, filed by Mario H. Capogrosso. (Attachments: # 1 Exhibit P - V, # 2 Envelope) (Galeano, Sonia) (Entered: 07/12/2021) |
| 06/29/2021 | 239 | PLTFF'S AFFIRMATION in Opposition to Deft Smart's 178 MOTION for Summary Judgment filed by Mario H. Capogrosso. (w/ Affirmation of Service attached to Main Document) (Attachments: # 1 Exhibit A-K, M, # 2 Envelope) (Galeano, Sonia) (Entered: 07/12/2021) |
| 07/02/2021 | 234 | MOTION to Withdraw as Attorney by David Smart. (Holland-Stergar, Brianne) (Entered: 07/02/2021) |
| 07/06/2021 | | ORDER granting 233 Motion for Extension of Time to File -- The application is granted. The briefing schedule is amended as follows: Plaintiff's response to Defendants' motions are due by July 29, 2021; and Defendants' replies, if any, are due by August 8, 2021. In the future, the Court will deny untimely requests for scheduling relief absent |

| | | extraordinary circumstances accompanied by documentary support. Ordered by Judge Eric R. Komitee on 7/6/2021. *c/m to pro se parties.* (Guy, Alicia) (Entered: 07/06/2021) |
|---|---|---|
| 07/15/2021 | 240 | Mail Returned as Undeliverable, "Return to Sender, Not Deliverable As Addressed, Unable to Forward." Order dated 7/6/2021 previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 07/16/2021) |
| 07/29/2021 | 245 | Letter dated 7/29/2021 from Mario Capogrosso regarding documents to be added to his opposition. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 246 | MEMORANDUM of Law in Opposition to State Defendants' Motion for Summary Judgment filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 247 | PLAINTIFF'S SUPPLEMENTAL OPPOSITION to State Defendants' Motion for Summary Judgment filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 248 | EXHIBIT W by Mario H. Capogrosso. Related document: 247 Plaintiff's Supplemental Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 249 | EXHIBIT X by Mario H. Capogrosso. Related document: 247 Plaintiff's Supplemental Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 250 | EXHIBIT Y by Mario H. Capogrosso. Related document: 247 Plaintiff's Supplemental Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 251 | EXHIBIT Z by Mario H. Capogrosso. Related document: 247 Plaintiff's Supplemental Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 252 | EXHIBIT AA by Mario H. Capogrosso. Related document: 247 CR 21-400-ARR Notice of Rule 7b Motion filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 253 | EXHIBIT BB by Mario H. Capogrosso. Related document: 247 Plaintiff's Supplemental Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 254 | EXHIBIT CC by Mario H. Capogrosso. Related document: 247 CR 21-400-ARR Notice of Rule 7b Motion filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 255 | EXHIBIT DD by Mario H. Capogrosso. Related document: 247 CR 21-400-ARR Notice of Rule 7b Motion filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 256 | EXHIBIT EE by Mario H. Capogrosso. Related document: 247 Plaintiff's Supplemental Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 257 | AFFIRMATION OF SERVICE by Mario H. Capogrosso re 253 Exhibit, 246 Memorandum in Opposition, 250 Exhibit, 254 Exhibit, 248 Exhibit, 252 Exhibit, 256 Exhibit, 251 Exhibit, 255 Exhibit, 249 Exhibit, 247 Reply in Opposition (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 258 | MEMORANDUM of Law in Opposition to Defendant Smart's Motion for Summary Judgment filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 259 | EXHIBIT N by Mario H. Capogrosso. Related document: 258 Memorandum in Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 260 | EXHIBIT O by Mario H. Capogrosso. Related document: 258 Memorandum in Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 261 | EXHIBIT P by Mario H. Capogrosso. Related document: 258 Memorandum in Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 262 | EXHIBIT Q by Mario H. Capogrosso. Related document: 258 Memorandum in |

|  |  | Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
|---|---|---|
| 07/29/2021 | 263 | EXHIBIT R by Mario H. Capogrosso. Related document: 258 Memorandum in Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 264 | EXHIBIT S by Mario H. Capogrosso. Related document: 258 Memorandum in Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 265 | EXHIBIT T by Mario H. Capogrosso. Related document: 258 Memorandum in Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/29/2021 | 266 | CERTIFICATE OF SERVICE by Mario H. Capogrosso re 258 Memorandum in Opposition, 261 Exhibit, 265 Exhibit, 262 Exhibit, 260 Exhibit, 263 Exhibit, 264 Exhibit, 259 Exhibit. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 07/30/2021 | 241 | First MOTION for Extension of Time to File Response/Reply as to 235 Affidavit in Opposition to Motion, by Danielle Calvo, Alan Gelbstein, Ida Traschen. (Oloughlin, D.) (Entered: 07/30/2021) |
| 08/02/2021 | 242 | ORDER granting 234 Motion to Withdraw as Attorney. Attorney Brianne Holland-Stergar terminated. Endorsed on doc 234 . So Ordered by Magistrate Judge Lois Bloom on 8/2/2021. (Rein, Gilbert) (Entered: 08/02/2021) |
| 08/02/2021 | 243 | ORDER: The State defendants request an extension of time to file a reply in support of their motion for summary judgment. ECF No. 241 . The request is granted. The State defendants shall file their reply by September 10, 2021. See Attached Order. Ordered by Magistrate Judge Lois Bloom on 8/2/2021. (Rein, Gilbert) (Entered: 08/02/2021) |
| 08/02/2021 | 267 | Letter dated 8/2/2021 to Judge Komitee and Judge Bloom regarding opposing counsel's request for extension of time to reply. (Lee, Tiffeny) (Entered: 08/04/2021) |
| 08/03/2021 | 244 | Letter MOTION for Extension of Time to File Response/Reply as to 239 Affidavit in Opposition to Motion, by David Smart. (Douglas, Maura) (Entered: 08/03/2021) |
| 08/05/2021 | 268 | ORDER: Defendant David Smart requests an extension of time to file a reply in support of his motion for summary judgment. ECF No. 244. Defendant Smart requests to extend the August 8, 2021 deadline to September 10, 2021. This is a 33-day extension of time. Defendant writes that plaintiff consents only to a 30-day extension. The additional three days will not prejudice plaintiff. Accordingly, defendant Smart's request is granted. Defendant Smart shall file his reply by September 10, 2021. Ordered by Magistrate Judge Lois Bloom on 8/5/2021. (Wilhelm, Samantha) (Entered: 08/05/2021) |
| 08/12/2021 | 269 | Mail Returned as Undeliverable, "Return to Sender, Insufficient Address, Unable to Forward." Order dated 8/2/2021 and Motion to Withdraw As Counsel previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 08/13/2021) |
| 08/20/2021 | 270 | Mail Returned as Undeliverable, "Return to Sender, Insufficient Address, Unable to Forward." Order dated 8/5/2021 previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 08/23/2021) |
| 09/08/2021 | 271 | NOTICE of Appearance by Sharon Katz on behalf of David Smart (aty to be noticed) (Katz, Sharon) (Entered: 09/08/2021) |
| 09/08/2021 | 272 | REPLY in Support re 178 MOTION for Summary Judgment filed by David Smart. (Douglas, Maura) (Entered: 09/08/2021) |
| 09/08/2021 | 273 | MOTION to Withdraw as Attorney by David Smart. (Douglas, Maura) (Entered: 09/08/2021) |
| 09/09/2021 |  | ORDER: Attorney Maura Douglas requests leave to withdraw as counsel for David |

| | | Smart. ECF No. 273. The request is granted. Davis Polk will continue to be pro bono counsel of record in this matter for the limited purpose of Mr. Smart's motion for summary judgment. Ordered by Magistrate Judge Lois Bloom on 9/9/2021. (Wilhelm, Samantha) (Entered: 09/09/2021) |
|---|---|---|
| 09/09/2021 | 274 | REPLY in Support re 179 MOTION for Summary Judgment *by the State Defendants* filed by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 09/09/2021) |
| 09/10/2021 | 275 | MOTION to Withdraw as Attorney *on behalf of D. Stan O'Loughlin and Elizabeth Forman* by Danielle Calvo, Alan Gelbstein, Ida Traschen. (Oloughlin, D.) (Entered: 09/10/2021) |
| 09/13/2021 | | ORDER: Attorneys Stan O'Loughlin and Elizabeth Forman request leave to withdraw as counsel for defendants Gelbstein, Traschen, Calvo, and the DMV ("the State Defendants"). ECF No. 275. The request is granted. Attorney James Thompson will continue to represent the State Defendants on behalf of the Attorney General. Ordered by Magistrate Judge Lois Bloom on 9/13/2021. (Wilhelm, Samantha) (Entered: 09/13/2021) |
| 09/22/2021 | 276 | Mail Returned as Undeliverable, "Return to Sender, No Such Street, Unable to Forward." Order dated 9/13/2021 previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 09/23/2021) |
| 09/22/2021 | 277 | Mail Returned as Undeliverable, "Return to Sender, No Such Number, Unable to Forward." Order dated 9/9/2021 previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 09/23/2021) |
| 02/01/2022 | 278 | **REPORT AND RECOMMENDATION:** Attorney Mario H. Capogrosso, proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that defendants retaliated against him for exercising his First Amendment rights by permanently barring him from the Traffic Violations Bureau ("TVB") in May of 2015. Defendant David Smart and defendants Alan Gelbstein, Ida Transchen, Danielle Calvo, and New York State Department of Motor Vehicles Commissioner Mark Schroeder, (collectively, "the State Defendants") move for summary judgment on plaintiff's claims against them pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 178, 179. Plaintiff opposes the motions. ECF Nos. 246, 258. The Honorable Eric R. Komitee referred defendants' motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth in the attached Report and Recommendation, it is respectfully recommended that defendants' motions for summary judgment should be granted and plaintiff's complaint should be dismissed. Plaintiff's state law claims should be dismissed without prejudice. Objections to R&R due by 2/15/2022. Ordered by Magistrate Judge Lois Bloom on 2/1/2022. (Wilhelm, Samantha) (Entered: 02/01/2022) |
| 02/09/2022 | 279 | ORDER: On February 7, 2022, plaintiff left a message on my chamber's voicemail stating that he wishes to request an extension of time to file his objections to my February 1, 2022 Report and Recommendation. Plaintiff is an attorney and he should be well aware that any request for an extension of time must be made in writing and filed on the docket. The Court will not consider requests made by telephone. Ordered by Magistrate Judge Lois Bloom on 2/9/2022. (Wilhelm, Samantha) (Entered: 02/09/2022) |
| 02/09/2022 | 280 | Letter MOTION for Extension of Time to File *Objection to Report and Recommendations. Pltff seeks a seven (7) day extension to 2/21/22, filed* by Mario H. Capogrosso. (Galeano, Sonia) (Entered: 02/11/2022) |
| 02/14/2022 | 281 | Mail Returned as Undeliverable, "Return to Sender, Insufficient Address, Unable to Forward." Report and Recommendation dated 2/1/2022 previously sent to Sadiq Tahir. |

| | | (Galeano, Sonia) (Entered: 02/16/2022) |
|---|---|---|
| 02/14/2022 | 282 | OBJECTION to 278 Report and Recommendations dated 2/1/2022, filed by Mario H. Capogrosso. (Attachments: # 1 Affirmation of Service and Envelope) (Galeano, Sonia) (Entered: 02/18/2022) |
| 02/16/2022 | 283 | SUPPLEMENTAL OBJECTIONS to 278 REPORT AND RECOMMENDATIONS dated 2/1/2022 filed by Mario H. Capogrosso. (Attachments: # 1 Affirmation of Service and Envelope) (Galeano, Sonia) (Entered: 02/18/2022) |
| 02/18/2022 | 284 | Mail Returned as Undeliverable, "Return to Sender, Attempted-Not Known, Unable to Forward." Order dated 2/9/2022 previously sent to Sadiq Tahir. (Galeano, Sonia) (Entered: 02/24/2022) |
| 02/22/2022 | | ORDER finding as moot 280 Motion for Extension of Time to File -- See docket entries 282 and 283 . Ordered by Judge Eric R. Komitee on 2/22/2022. (Guy, Alicia) (Entered: 02/22/2022) |
| 02/26/2022 | 285 | Letter MOTION for Extension of Time to File Response/Reply as to 282 Objection to Report and Recommendations, 283 Notice (Other) by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 02/26/2022) |
| 02/28/2022 | | ORDER granting in part and denying in part 285 Motion for Extension of Time to File Response/Reply as to 282 Objection to Report and Recommendations, 283 Notice (Other)-- The application is granted in part. The State Defendants' time to respond to Plaintiff's objections and supplemental objections is extended to March 10, 2022. Ordered by Judge Eric R. Komitee on 2/28/2022. c/m. (Guy, Alicia) (Entered: 02/28/2022) |
| 03/03/2022 | 286 | MEMORANDUM in Opposition re 282 Objection to Report and Recommendations, 283 Notice (Other) *Supplemental Objection to Report and Recommendation* filed by David Smart. (Katz, Sharon) (Entered: 03/03/2022) |
| 03/03/2022 | 287 | REPLY to Motion for Extension of Time (ECF 285 ) filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 03/04/2022) |
| 03/10/2022 | 288 | MEMORANDUM in Opposition re 282 Objection to Report and Recommendations, 283 Notice (Other) filed by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 03/10/2022) |
| 03/15/2022 | 289 | RESPONSE to State Defendants' Reply to Opposition to Report and Recommendations filed by Mario H. Capogrosso. (Lee, Tiffeny) *Stricken pursuant to Judge Komitee's Order dated 9/29/22.*. Modified on 9/29/2022 to note the filing has been stricken from the docket. (Guy, Alicia). (Entered: 03/16/2022) |
| 03/15/2022 | 290 | RESPONSE to Defendant Smart's Reply to Opposition to Report and Recommendations filed by Mario H. Capogrosso. (Lee, Tiffeny) *Stricken pursuant to Judge Komitee's Order dated 9/29/22.*. Modified on 9/29/2022 to note the filing has been stricken from the docket. (Guy, Alicia). (Entered: 03/16/2022) |
| 03/17/2022 | 291 | Letter MOTION to Strike 289 Reply in Opposition by Danielle Calvo, Alan Gelbstein, Mark J.F. Schroeder, Ida Traschen. (Thompson, James) (Entered: 03/17/2022) |
| 03/17/2022 | 292 | RESPONSE in Opposition re 291 Letter MOTION to Strike 289 Reply in Opposition filed by Mario H. Capogrosso. (Lee, Tiffeny) (Entered: 03/18/2022) |
| 09/29/2022 | 293 | **MEMORANDUM & ORDER ADOPTING REPORT AND RECOMMENDATIONS** -- The R&R 278 is adopted in its entirety. Defendants' motions for summary judgment 178 , 179 are granted, the Court declines to exercise supplemental |

|  |  | jurisdiction over Plaintiff's state-law claims against defendants Tahir and PEC Group of NY, Inc., and Defendants' motion to strike Plaintiff's unauthorized sur-replies(ECF Nos. 289 and 290) is granted. The Clerk of Court is respectfully directed to enter judgment in Defendants' favor and to close the case. **ORDER ATTACHED**. Ordered by Judge Eric R. Komitee on 9/29/2022. ((copy mailed). (Guy, Alicia) (Entered: 09/29/2022) |
|---|---|---|
| 09/29/2022 |  | ORDER granting 291 Letter MOTION to Strike -- *See* docket entry 293 . Ordered by Judge Eric R. Komitee on 9/29/2022. (Guy, Alicia) (Entered: 09/29/2022) |
| 09/30/2022 | 294 | JUDGMENT: It is ORDERED and ADJUDGED that Defendants' motions for summary judgment are granted; that the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against defendants Tahir and PEC Group of NY, Inc.; and that Defendants' motion to strike Plaintiff's unauthorized sur-replies (ECF Nos. 289 and 290) is granted. ORDERED by Jalitza Poveda, Deputy Clerk on behalf of Brenna B. Mahoney, Clerk of Court on 9/30/2022. *(Copy of this Judgment and the attached appeals packet sent to pro se Plaintiff.)* (Latka-Mucha, Wieslawa) (Entered: 09/30/2022) |
| 10/14/2022 | 295 | Mail Returned as Undeliverable, "Return to Sender, No Such Number, Unable to Forward." Judgment dated 9/30/2022 previously sent to Sadiq Tahir. (SG) (Entered: 10/20/2022) |
| 10/25/2022 | 296 | NOTICE OF APPEAL as to 294 Clerk's Judgment., 293 Order Adopting Report and Recommendations, Order on Motion for Summary Judgment, Order on Report and Recommendations., by Mario H. Capogrosso. (VJ) (Entered: 10/26/2022) |
| 10/26/2022 | 297 | USCA Appeal Fees received $ 505 receipt number 100002436 re 296 Notice of Appeal filed by Mario H. Capogrosso (VJ) (Entered: 10/26/2022) |
| 10/26/2022 |  | Electronic Index to Record on Appeal sent to US Court of Appeals. 296 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 10/26/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/26/2022 14:47:05 | | | |
| **PACER Login:** | mariohenrycapogrosso | **Client Code:** |  |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-02710-EK-LB |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

# ORIGINAL  CV 18-2710

UNITED STATES DISTRICT COURT  EASTERN DISTRICT OF NEW YORK

## BRODIE, J.

MARIO H. CAPOGROSSO,

### BLOOM, M.J.

Plaintiff

-against-                                          VERIFIED COMPLAINT
                                                    JURY TRIAL DEMANDED

ALAN GELBSTEIN, in his official and individual capacity;
BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) in her official and individual
capacity;
IDA TRASCHEN, in her official and individual capacity;
ELIZABETH PRICKETT-MORGAN, in her official and individual capacity;
JEAN FLANAGAN, in her official and individual capacity;
VINCENT PALMIERI, in his official and individual capacity;
DANIELLE CALVO, in her official and individual capacity;
SADIQ TAHIR, in his individual capacity;
PEC GROUP OF NY, INC.;
DAVID SMART, in his individual capacity;
JOHN AND JANE DOE.

Defendants



RECEIVED
MAY 08 2018
PRO SE OFFICE

The Plaintiff, Mario H. Capogrosso, alleges the following on the basis of his personal

knowledge as to himself and on information and belief as to all other matters:

## **NATURE OF THE ACTION**

1.  In this action, the Plaintiff seeks money damages for violations of his Civil Rights

under the Constitution of the United States and asserts his right to sue for said violations pursuant

to 42 U.S.C.§1983, 42 U.S.C. §1985, 42 U.S.C. §1986 and 42 U.S.C. §1988, as well as pendent

–1–

A385

causes of action under the Common Law of the State of New York.

2. Plaintiff, at all times hereinafter mentioned, was and still is a member in good standing as a duly licensed attorney at law in the State of New York, as well as in the State of Connecticut.

3. Between on or about April 2005 and May 11, 2015, Plaintiff practiced law almost exclusively in what is known as the Traffic Violations Bureau in the metropolitan New York City area, including the Brooklyn South office of that Bureau.

4. The Traffic Violations Bureau is an agency of the State of New York, and the said offices of said Bureau are presided over by Administrative Law Judges.

5. In December 2011, Plaintiff was temporarily suspended from practicing his profession in the Traffic Violations Bureau Courts as a result of complaints of misconduct, which were never determined to be true as no hearings were ever held in response thereto and Plaintiff was never given the opportunity to confront his accusers. Plaintiff was restored, as a result of a Stipulation of Settlement, several months later and all of his rights and privileges were also restored. At the time that Plaintiff was temporarily suspended, he was advised that one of his accusers was Security Guard, David Smart, who is a Defendant in this action.

6. That during the time that the Plaintiff practiced law in these various Traffic Violations Bureau locations during the period above set forth, Plaintiff accumulated a clientele of approximately 850 people. More specifically, Plaintiff represented these clients in response to traffic tickets issued by law enforcement personnel to these clients in the New York Metropolitan area.

7. At all times hereinafter mentioned Defendant David Smart was a security guard under the direct supervision and control of the Traffic Violations Bureau, while at the same time the said

–2–

David Smart was an employee of Defendant, PEC Group of NY, Inc., a private security company engaging in contract work for the various offices of the Traffic Violations Bureau in the New York metropolitan area.

8. That for a long period of time, prior to May 11, 2015, Plaintiff had been subjected to constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance by Defendant, David Smart, which interfered with Plaintiff's representation of his many clients.

9. That in response to said harassment, and threats, Plaintiff reported the same to Defendant Alan Gelbstein, who was the Administrative Law Judge for the Traffic Violations Bureau in the Brooklyn South office. When Defendant Gelbstein refused to take any action on behalf of the Plaintiff to ensure that the disruptive and unlawful behavior of Defendant Smart would cease, that on March 20, 2015, Plaintiff wrote a formal letter of complaint to Defendant Elizabeth Prickett-Morgan, who was at the time an Assistant Attorney General in the New York City office. Plaintiff also, in said letter, complained about Defendant Gelbstein alleging that Defendant Gelbstein was either complicit, incapable or incompetent to handle the ongoing issues that Plaintiff had been experiencing in the work place with Defendant Security Guard David Smart. Said Defendant Elizabeth Prickett-Morgan failed to respond to Plaintiff's written complaint; and upon information and belief, failed to take any action to abate the harassing and unlawful conduct of Defendant Smart toward the person of the Plaintiff.

10. On Friday, May 8, 2015, Defendant Alan Gelbstein approached the Plaintiff, together with Defendant Danielle Calvo (Clerk supervisor of the Brooklyn South Traffic Violations office) and said, "Can't you go practice somewhere else...I saw what you wrote about me that I am complicit and incapable." This occurred while Plaintiff was sitting in the Attorney's Room at

-3-

the Brooklyn South office of Traffic Violations Bureau.

      11.   On May 11, 2015, Defendant David Smart once again approached the Plaintiff in an aggressive and threatening manner in an attempt to provoke the Plaintiff into a physical confrontation. Although Plaintiff refused to so engage Defendant Smart, within a few minutes thereafter, Defendant Calvo approached the Plaintiff with several New York City police officers and told the Plaintiff that he was no longer allowed at the Traffic Violations Bureaus and that Plaintiff was to leave the building immediately.  Plaintiff was also advised by Defendant Calvo that he should phone first Assistant Counsel Legal Bureau for the State of New York Department of Motor Vehicles, Defendant Ida Traschen for further instructions. Plaintiff phoned Defendant Traschen the same day after he had left the TVB Brooklyn South facility and was advised by Defendant Traschen that Plaintiff was permanently barred from representing any clients in the future at any of the TVB locations throughout the State.

      12.   Following the May 11, 2015 phone call to Defendant Traschen, Plaintiff made follow up calls to said Defendant on May 12, 2015, May 26, 2015, August 4, 2015, August 7, 2015, August 10, 2015, August 12, 2015, and August 25, 2015 seeking clarification. However, Defendant Traschen would not take Plaintiff's calls.

      13.   In an attempt to obtain a clarification for Plaintiff being barred from representing any clients at any of the TVB locations, Plaintiff wrote letters to the following agencies:

      DMV Freedom of Information Law Office, 6 Empire State Plaza, Albany, New York 12228 on January 15, 2016;

      State of New York Office of the Inspector General, Empire State Plaza, Agency Building 2, 16th Floor, Albany, New York 12223 in July 2015, April 28, 2016 and May 17, 2016;

-4-

State of New York Grievance Committee for the Second, Eleventh, Thirteenth Judicial Districts, Renaissance Plaza, 335 Adams Street, Suite 2400, Brooklyn, New York 11201-3745 on May 2, 2016;

State of New York Supreme Court, Appellate Division, Third Judicial Department, Committee on Professional Standards, 286 Washington Avenue Extension, Suite 200, Albany, New York 12203-6320 on May 5, 2016;

New York State Commission on Judicial Conduct, 61 Broadway, Suite 1200, New York, New York 10006 on March 12, 2016 and May 16, 2016;

New York State Department of Motor Vehicles, 6 Empire State Plaza, Room 512, Albany, New York 12226, in c/o supervising authority, on May 16, 2016;

Office of Traffic Violations, 801 Axinn Avenue, Garden City, New York 11530 in c/o supervising administrative judge, on May 16, 2016;

Brooklyn South TVB located at 2875 West 8th Street, Brooklyn, New York 11224, in c/o of the supervising administrative law judge, on June 20, 2016;

Office of Traffic Violations, 801 Axinn Avenue, Garden City, New York 11530, in c/o the supervising administrative law judge, on June 20, 2016; and

Ida Traschen, first Assistant Counsel Legal Bureau, State of New York Department of Motor Vehicles located at 6 Empire State Plaza, Albany, New York 12228, on June 2016.

14. The only response Plaintiff received to any of his inquiries was that they could not or would not provide him with any clarification.

15. At the time that Plaintiff was expelled from practicing law and representing clients at any of the locations of the Traffic Violations Bureau, Plaintiff was never provided with the reasons

–5–

or rationale for such action and Plaintiff has not been allowed to return to practice at any of the Traffic Violations Bureau sites since May 11, 2015.    Further, Plaintiff was not provided with any documentation as to the identity of his accusers, the particulars or the nature of any complaints against him, nor was the Plaintiff given the opportunity to participate in a due process hearing.

16.    Plaintiff was legally entitled to a due process hearing because he had a property and/or liberty interest in practicing his profession in the Traffic Violations Bureau Court. The Traffic Violations Bureau Court is an agency of the New York State Motor Vehicle Department, a State government agency.

17.    Plaintiff has no adequate remedy under State law.


**PARTIES**

18.    Plaintiff, MARIO H. CAPOGROSSO, is a citizen of the United States and a resident of the State of New York, and is an attorney duly licensed to practice in the States of New York and Connecticut.    The Plaintiff is not and never has been an employee of the State of New York or any agency of the State of New York.

19.    Defendant, ALAN GELBSTEIN, is a citizen of the United States and a resident of the State of New York, who upon information and belief resides at 1510 East 7th Street, Brooklyn New York, 11230, and at all times hereinafter mentioned was an Administrative Law Judge in the Traffic Violations Bureau, Brooklyn South office, located at 2875 West 8th Street, Brooklyn, New York, 11224. This Defendant is being sued individually and in his official capacity.

20.    Defendant BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) is a citizen of the United States and a resident of the State of New York, and at all times hereinafter

mentioned was a Supervisory Administrative Law Judge at the Office of Traffic Violations, 801 Axinn Avenue, Garden City, New York, 11530. This Defendant is being sued individually and in her official capacity.

21. Defendant, IDA TRASCHEN, is a citizen of the United States and a resident of the State of New York, and at all times hereinafter mentioned was a first Assistant Counsel Legal Bureau for the State of New York Department of Motor Vehicles, with offices at 6 Empire State Plaza, Albany, New York 12228. This Defendant is being sued individually and in her official capacity.

22. Defendant ELIZABETH PRICKETT-MORGAN, is a citizen of the United States and a resident of the State of New York, and at all times hereinafter mentioned was an Assistant General of the State of New York, with offices at 120 Broadway, New York City, New York. This Defendant is being sued individually and in her official capacity.

23. Defendant, JEAN FLANAGAN, is a citizen of the United States and a resident of the State of New York, and upon information belief works in a supervisory capacity for either the Traffic Violations Bureau or the Department of Motor Vehicles of the State of New York, with offices, upon information and belief, at 6 Empire State Plaza, Albany, New York. 12228. This Defendant is being sued individually and in her official capacity.

24. Defendant VINCENT PALMIERI is a citizen of the United States and a resident of the State of New York, and upon information belief works in a supervisory capacity for either the Traffic Violations Bureau or the Department of Motor Vehicles of the State of New York with offices, upon information and belief, at 6 Empire State Plaza, Albany, New York. 12228. This Defendant is being sued individually and in his official capacity.

–7–

25. Defendant, DANIELLE CALVO, is a citizen of the United States and a resident of the State of New York, and at all times hereinafter mentioned was the Clerk supervisor of the Brooklyn South Traffic Violations Bureau office, located at 2875 West 8th Street, Brooklyn, New York 11224. This Defendant is being sued individually and in her official capacity.

26. Defendant, SADIQ TAHIR, is a citizen and/or legal resident of the United States and a resident of the State of New York, who upon information and belief resides at 3092 Brighton 4th Street, Brooklyn New York 11235, and at all times hereinafter mentioned was a New York licensed attorney at law practicing in TVB Court in the metropolitan New York area.

27. Defendant PEC GROUP OF NY, INC., is a private security company engaging in contract work for the various offices of the Traffic Violations Bureau in the New York metropolitan area, with offices upon information and belief at 352 Seventh Avenue, Suite 701, New York, New York 10001 and 935 S. Lake Blvd., #7, Mahopac New York 10541.

28. Defendant DAVID SMART is a citizen of the United States and a resident of the State of New York, who upon information and belief resides at 2355 Batchelder Street, Brooklyn New York 11229, and at all times hereinafter mentioned was employed by the Defendant, PEC Group of NY, Inc., as a security guard, and was assigned as a security guard at the Brooklyn South Traffic Violations Bureau, Brooklyn office, located at 2875 West 8th Street, Brooklyn New York, 11229. While at said location, said Defendant was under the direct supervision and control of Defendants Gelbstein and Calvo.

**GENERAL ALLEGATIONS**

29. Defendants Gelbstein, Calvo, Vahdatlamas (Vahdat), Traschen, Prickett-Morgan, Flanagan and Palmieri, are being sued in his or her individual as well as their official capacities.

–8–

30.    The actions of the Defendants named in the previous paragraph were conducted under Color of State Law and in willful disregard of the rights of the Plaintiff to be free from retaliation for the exercise of his First Amendment rights, his right to freedom of speech, as well as the right to procedural and substantive due process under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

31.    The Defendants that are sued in their individual and official capacities either personally engaged in conduct that violated Plaintiff's Constitutional rights, or were policy makers employed by the agencies of the State of New York, including the Attorney General's Office, Department of Motor Vehicles, or Traffic Violations Bureau and either authorized, ratified, or condoned the conduct of their said fellow Defendant(s) in willful violation of Plaintiff's United States Constitutional rights.

32.    The Defendants' acts were done with malice and oppression warranting the assessment of exemplary or punitive damages against said Defendants.

## JURISDICTION AND VENUE

33.    This action is being brought pursuant to 42 U. S. C. §1983, §1985, §1986, and §1988, Fifth and Fourteenth Amendments of the United States Constitution.

34.    Jurisdiction is founded in 28 U. S. C. §1331 and §1343 (1), (2), (3) and (4).

35.    Venue properly lies with this Court pursuant to 28 U. S. C. §1391(b) because the events giving rise to Plaintiff's claims occurred in the Eastern District of New York.

**Alan Gelbstein**

36.    Upon information and belief, Defendant Gelbstein's unconstitutional and tortious

–9–

conduct, and consequently, his liability includes, but is not limited to, his conduct described in the following paragraphs:

37.    Defendant Gelbstein was at all relevant times, as set forth in Plaintiff's Complaint, an Administrative Law Judge in the Brooklyn South Traffic Violations Bureau office, (hereinafter referred to as TVB) located at 2875 West 8th Street, Brooklyn, New York. Defendant Gelbstein adjudicated traffic tickets at the TVB and at all relevant times was a policy maker for administrative and employment matters.

38.    Upon information and belief, Defendant Gelbstein actively participated in the decision to permanently bar (without the benefit of a "due process" hearing) the Plaintiff from practicing his profession in the TVB Courts in the State of New York.    The said Defendant was made fully aware of the constant and unrelenting threats and harassment on the part of Defendant David Smart and against the person of the Plaintiff, as a result of direct complaints made to him by the Plaintiff over a period of many months prior to May 11, 2015.

39.    Also, Defendant Gelbstein was aware of a written complaint made of and concerning him by the Plaintiff in the way he administered his Court, pursuant to a letter dated March 20, 2015, to Defendant Morgan, who was then acting as an Assistant Attorney General for the State of New York and the Department of Motor Vehicles.

40.    Upon information and belief, Defendant Gelbstein not only ignored Plaintiff's complaint about the conduct of Defendant Smart, but in fact encouraged Defendant Smart to continue to confront the Plaintiff in an attempt to "bait the Plaintiff" into a physical response to justify barring the Plaintiff permanently from practicing his profession in the TVB Courts.

41.    Upon information and belief, Defendant Gelbstein conspired with Defendant Calvo and in fact ordered and directed Defendant Calvo to summon New York City police officers to the

–10–

TVB Court at Brooklyn South on May 11, 2015 and directed and authorized Defendant Calvo to order the Plaintiff to leave the premises of the TVB Court and to use the presence of New York City police offices to facilitate that removal.

42. Plaintiff alleges that said Defendant was motivated to take such direct action against the Plaintiff in retaliation for Plaintiff exercising his First Amendment Rights in criticizing the way said Defendant administered his official office.

43. At all relevant times Defendant Gelbstein was acting in his administrative capacity and not in a judicial capacity and therefore said Defendant is not entitled to absolute immunity.

**Boshra Vahdatlamas, (Also Known as Bushra Vahdat)**

44. Upon information and belief, Defendant Vahdatlamas' unconstitutional and tortious conduct, and consequently, her liability includes, but is not limited to, her conduct described in the following paragraphs:

45. Defendant Vahdatlamas at all relevant times was acting as a Supervisory Administrative Law Judge.

46. At all relevant times, Defendant Vahdatlamas was in consultation with one or more of the remaining individual Defendants concerning issues raised by the Plaintiff of misconduct on the part of Defendants Smart and Gelbstein and treated the violation of Plaintiff's constitutional rights by fellow Defendants with complete indifference and/or ratified and condoned said unconstitutional acts as a supervisory person.

47. Defendant Vahdatlamas at all relevant times was acting in her administrative capacity and not in a judicial capacity and therefore said Defendant is not entitled to absolute immunity.

**Ida Traschen**

48. Upon information and belief, Defendant Traschen's unconstitutional and tortious

–11–

conduct, and consequently, his/her liability includes, but is not limited to, his/her conduct described in the following paragraphs:

49. At all relevant times Defendant Traschen was acting as First Assistant Legal Counsel to the TVB and actively participated in the violation of Plaintiff's constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by directly informing the Plaintiff that he was no longer allowed to practice law in the TVB Courts. Said Defendant also willfully ignored Plaintiff's many phone calls and letters seeking an explanation for his removal and demanding a right to be given a chance to confront any accusers, including a due process hearing.

**Elizabeth Prickett-Morgan**

50. Upon information and belief, Defendant Prickett-Morgan's unconstitutional and tortious conduct, and consequently, her liability includes, but is not limited to, her conduct described in the following paragraphs:

51. At all relevant times Defendant Prickett-Morgan was acting as an Assistant Attorney General for the State of New York.

52. Upon information and belief, after receiving Plaintiff's letter dated March 20, 2015, in which Plaintiff complained of the conduct of Defendants Gelbstein and Smart, this Defendant conspired with the Defendants Gelbstein, Smart and one or more of the individual Defendants to cause or contribute to the violation of Plaintiff's First, Fourth, Fifth and Fourteenth rights under the United States Constitution. Alternatively, said Defendant treated the violation of Plaintiff's said constitutional rights with deliberate indifference and/or condoned and ratified the violation of Plaintiff's said constitutional rights.

**Jean Flanagan and Vincent Palmieri**

–12–

53. Upon information and belief, Defendants Flanagan and Palmieri's unconstitutional and tortious conduct, and consequently, their liability includes, but is not limited to, their conduct described in the following paragraphs:

54. Upon information and belief, at all relevant times, Defendants Flanagan and Palmieri were acting in a supervisory capacity of Defendant, Danielle Calvo.

55. Said Defendants were directly informed by Defendant Calvo that the Plaintiff was permanently barred from practicing law in the TVB Courts as of May 11, 2015 due to an alleged "work place violence incident." Said Defendants failed to direct that any further inquiries should be made to justify the conduct of Defendant Calvo. As a consequence, said Defendants reacted to the violation of Plaintiff's constitutional rights with deliberate indifference and/or condoned and ratified the unconstitutional conduct of one or more of the remaining individual defendants.

**Danielle Calvo**

56. Upon information and belief, Defendant Calvo's unconstitutional and tortious conduct, and consequently, her liability includes, but is not limited to, her conduct described in the following paragraphs:

57. At all relevant times, Defendant Calvo was acting as the Clerk Supervisor of the Brooklyn South Traffic Violations Bureau office.

58. On May 11, 2015, Defendant Calvo personally confronted the Plaintiff at the Brooklyn South TVB and advised the Plaintiff that he was no longer permitted to practice his profession in the TVB Courts and that he was to leave the premises immediately. Defendant Calvo made these demands in the presence of a client of the Plaintiff and in the presence of multiple New York City police officers. Plaintiff believes Defendant Calvo summoned the police officers to the site to remove Plaintiff. Said Defendant gave no explanation to the Plaintiff as to why

−13−

she made these demands directly to the Plaintiff.

59.    Said actions were motivated in retaliation for Plaintiff's exercise of his First Amendment Rights, and in particular his letter to Defendant Prickett-Morgan, dated March 20, 2015.

**David Smart**

60.    Upon information and belief, Defendant Smart's unconstitutional and tortious conduct, and consequently, his liability includes, but is not limited to, his conduct described in the following paragraphs:

61.    At all relevant times Defendant Smart was acting not only as an employee of an independent contractor but acting under the direct supervision and control of the TVB and more particularly, Defendants Gelbstein and Calvo.    Therefore, Defendant Smart was acting as a direct agent of an agency of the State of New York and therefore he was acting under color of State law.

62.    For a long period of time up to and including May 11, 2015, said Defendant continually harassed, annoyed and alarmed the Plaintiff and actively interfered with the Plaintiff including, but not limited to, Plaintiff's interaction with clients and potential clients.    Said Defendant created a hostile work environment and conspired with Defendants Gelbstein and Calvo in making false allegations against the Plaintiff and attempting to provoke the Plaintiff in physical confrontations at the TVB for the    purpose of getting the Plaintiff permanently barred from TVB in retaliation for Plaintiff's exercise of his First Amendment rights, wherein Plaintiff published a written complaint of and concerning said Defendant's conduct at the TVB regarding his aggressive behavior toward the Plaintiff.

63.    More particularly, Defendant Smart's aberrant and hostile behavior toward the Plaintiff started on or about June 2012 when said Defendant, while at the TVB Court, pushed

–14–

Plaintiff from behind for no apparent reason in an attempt to reach and take Plaintiff's cell phone. Plaintiff complained to Defendant Gelbstein about this conduct, but Defendant Gelbstein did nothing in response to said complaint.     Between December 2011 and June 2012, Defendant Smart stole a fee from one of Plaintiff's clients, who came looking for the Plaintiff when Plaintiff was not at the TVB Brooklyn South.

64.   On three or four separate occasions between December 2012 and December 2014, Defendant Smart approached the Plaintiff in a hostile and aggressive manner, stood within inches of Plaintiff's personal space, stared and glared at Plaintiff, dipped his head to the side, hide his right hand and position his foot forward in a fighting stance.     On each of these occasions, Plaintiff asked Defendant Smart as to what was his problem, and Defendant Smart would respond "F... You, you are the problem".

65. On or about October 23, 2014, after Plaintiff had moved an umbrella, which was inadvertently left behind on top of a trash can by a motorist, so that Plaintiff could lay down a file, Defendant Smart approached Plaintiff by verbal assault stated to Plaintiff by staring, "do not touch that umbrella or else."

66.   In November 2014, Plaintiff verbally complained about Defendant Smart's conduct to Defendant Vahdatlamas at her office in Garden City, New York.

67.   On or about December 3, 2014, at approximately 9:20 a.m., as Plaintiff approached the front of the Clerk's motorist entry line, Defendant Smart got up and made the sign of the cross twice and directed a "rigid spear hand" directly at the Plaintiff.     Plaintiff verbally complained to Defendant Gelbstein about that incident.

68.   Between January 2015 and early May 2015, Plaintiff observed Defendant Smart enter the attorneys' room, and tamper with Plaintiff's files.

–15–

69.   On numerous occasions between January 2015 and March 2015, Plaintiff again complained to Defendant Gelbstein about the conduct of Defendant Smart and requested that Defendant Gelbstein look at security tapes, which Plaintiff believed would show Defendant Smart tampering with Plaintiff's files.   Defendant Gelbstein's response to Plaintiff was simply "a spade is a spade".


### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS, ALAN GELBSTEIN, BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) IDA TRASCHEN, ELIZABETH PRICKETT-MORGAN JEAN FLANAGAN, VINCENT PALMIERI, DANIELLE CALVO, and DAVID SMART, IN THEIR INDIVIDUAL CAPACITIES

70.   Plaintiff realleges, reaffirms and incorporates herein each and every allegation of fact or allegation made on information and belief hereinbefore set forth in this Complaint.

71.   At the time that Plaintiff wrote and published his letter to Defendant Prickett-Morgan on March 20, 2015, complaining of the conduct of Defendants Gelbstein and Smart in the exercise of their positions at the TVB Court in Brooklyn South, Plaintiff was exercising his rights under the First Amendment of the United States Constitution as a private citizen and not as an employee of the State of New York or its Traffic Violations Bureau.

72.   At the time that Plaintiff published his letter of complaint to Defendant Prickett-Morgan, the Plaintiff had an interest protected by the First Amendment.   More particularly, Plaintiff had a right to practice his profession in the TVB Court free from harassment, threat, and threat of violence by Defendant Smart.   Also,   Plaintiff had a right to be free from threats, threats of violence and harassment, as well as other retaliatory actions for the exercise of his First Amendment rights by Defendants Gelbstein and Calvo.

–16–

73. Upon information and belief, Defendants Vahdatlamas, Traschen, Prickett-Morgan, Flanagan and Palmieri in their supervisory capacities caused the Plaintiff's Constitutional rights to be violated by their deliberate indifference and/or condoned and ratified the conduct of Defendants Gelbstein, Calvo and Smart.

74. The Defendants' actions in arbitrarily barring Plaintiff from practicing his profession in all of the TVB Court on May 11, 2015, without explanation, or an opportunity to be heard were motivated or substantially caused by Plaintiff's exercise of his First Amendment rights. Defendants' actions effectively chilled the exercise of Plaintiff's first Amendment rights.

75. That as a result of the violation of Plaintiff's First Amendment rights by the above-named Defendants, Plaintiff has been economically damaged in an amount to be determined by the Court.

**AS AND FOR A SECOND, SEPARATE AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANTS, ALAN GELBSTEIN, BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) IDA TRASCHEN, ELIZABETH PRICKETT-MORGAN JEAN FLANAGAN, VINCENT PALMIERI. DANIELLE CALVO, and DAVID SMART IN THEIR INDIVIDUAL CAPACITIES**

76. Plaintiff realleges, reaffirms and incorporates herein each and every allegation of fact or allegation made on information and belief hereinbefore set forth in this Complaint.

77. The above-named Defendants, sued in their individual capacities, are alleged to be either personally involved in actions taken against the Plaintiff on May 11, 2015, or caused these actions by their deliberate indifference and/or ratified or condoned said acts in their supervisory capacities to deprive the Plaintiff of protections to which he was entitled under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

–17–

78.  Plaintiff asserts that he enjoyed a property and/or liberty interest in his right to practice law and earn a living in Traffic Violations Bureau Courts in the State of New York.

79.  Upon information and belief, said Courts were established and authorized under the supervision of the New York State Department of Motor Vehicles.

80.  That on May 11, 2015, while the Plaintiff was lawfully exercising his rights and responsibilities in representing clients before the TVB Court, Brooklyn South when Defendant Calvo confronted the Plaintiff with multiple New York City police officers while Plaintiff was counseling a client and demanded that the Plaintiff immediately vacate the premises without explanation.

81.  Upon information and belief, Defendant Calvo was directed to do so by Defendant Gelbstein, as well as one or more of the remaining above-named Defendants.      At  the  time that Plaintiff was ordered to leave by Defendant Calvo, Defendant Calvo did state to the Plaintiff that he should contact Defendant Traschen for further instructions.

82.  After leaving the Brooklyn South TVB Court, Plaintiff phoned Defendant Traschen who advised Plaintiff that he was permanently barred from practicing his profession in every TVB Court in the State of New York.

83.  The Plaintiff was not afforded with any semblance of due process in that the Defendants failed to adequately apprise the Plaintiff of the reasons for his arbitrary dismissal, failure to inform the Plaintiff that he was entitled to a hearing and confront any accusers.

84.  Upon information and belief, the supervising Defendants include Defendants Gelbstein, Vahdatlamas, Traschen, Prickett-Morgan, Flanagan, Palmieri, and Calvo.

85.  As a result of the denial of due process by the above-named Defendants in their individual capacities, Plaintiff has suffered monetary damages in an amount to be determined by

–18–

the Court.

### AS AND FOR A THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANTS, ALAN GELBSTEIN, BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) IDA TRASCHEN, ELIZABETH PRICKETT-MORGAN JEAN FLANAGAN, VINCENT PALMIERI, and DANIELLE CALVO, IN THEIR OFFICIAL CAPACITIES

86.    Plaintiff realleges, reaffirms and incorporates herein each and every allegation of fact or allegation made on information and belief hereinbefore set forth in this Complaint.

87.    As recently as March 16, 2018, Plaintiff went to the TVB Court, Brooklyn South and was advised by Gelbstein that he would not be allowed to represent clients in the TVB Court here (Brooklyn South) and not in any traffic court.

88.    Plaintiff seeks prospective injunctive relief enjoining said Defendants from excluding the Plaintiff from practicing law in any TVB Court in the metropolitan New York area or the State of New York in the future.

### NEW YORK COMMON LAW CLAIMS

### AS AND FOR A FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANT SADIQ TAHIR

89.    Defendant SADIQ TAHIR practiced law in the TVB Court at Brooklyn South in 2015.

90.    That the said Defendant was a competitor of the Plaintiff in efforts to attract, retain

–19–

and represent clients in the TVB Courts in the metropolitan New York area.

91.    That after Plaintiff was barred from the TVB Court, Plaintiff learned that Defendant Tahir filed some type of a work place violence report with one or more of his fellow Defendants alleging that the Plaintiff engaged in some type of work place violence.    Plaintiff had no knowledge of this report, nor was Plaintiff advised of such report at the time of his termination from the TVB Court.

92.    Plaintiff in fact did not have any type of a physical altercation with said Defendant Tahir in 2015 or at any other time; said report was presented or filed with a malicious intent for the sole purpose of interfering with the contractual relations that Plaintiff had with existing clients and for the further purpose of assisting and motivating the remaining Defendants from barring the Plaintiff from his TVB law practice so that said Defendant Tahir could take up representation of at least some of Plaintiff's existing clients as well as future potential clients.

93.    The conduct of said Defendant constituted tortious interference with advantageous contractual relations to financially benefit said Defendant.

94.    As a result of said Defendant's conduct in filing a false report against the Plaintiff, Plaintiff has suffered damages in an amount to be determined by the Court.


**AS AND FOR A FIFTH, SEPARATE AND DISTINCT
CAUSE OF ACTION AGAINST DEFENDANT PEC GROUP OF NY, INC.,**

95.    The said Defendant, PEC GROUP OF NY, INC, was negligent in the hiring and training of the individual Defendant, David Smart.

96.    That the Defendant PEC Group of NY, Inc., knew or should have known of the propensities of the Defendant David Smart to commit the tortious acts against the Plaintiff as

–20–

alleged in Plaintiff's Complaint.

97. That in December 2014, as well as in March 2015, Plaintiff informed Defendant Smart's supervisors at Defendant PEC Group of NY, Inc., of the threatening and harassing acts toward the Plaintiff by Defendant Smart.

98. In December 2014, Scott Benish, a representative of Defendant PEC Group of NY, Inc., came to the TVB and spoke to Plaintiff concerning the threatening behavior of Defendant Smart. After Plaintiff reiterated to Mr. Benish, the various threatening behavior of Defendant Smart, Mr. Benish responded by stating, "they (TVB) love Smart and if we lay him off he will just get picked up by someone else".

99. Defendant PEC Group of NY, Inc., failed to respond to Plaintiff's March 2015 complaint concerning the improper behavior of Defendant Smart.

100. That the negligent hiring and training by said Defendant Smart contributed to the tortious conduct perpetrated by the individual Defendant against the Plaintiff

101. That as a result of the tortious conduct of the Defendant's employee, David Smart, said Defendant is liable to respond in money damages to the Plaintiff.

**WHEREFORE** Plaintiff requests the following relief:

a. Declaratory Judgment declaring that the Defendants have violated Plaintiff's rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by depriving Plaintiff of due process of law;

b. Prospective injunctive relief enjoining the Defendants from denying the Plaintiff the right to practice law in the Traffic Violations Bureau Courts in the State of New York;

c. Compensatory and punitive damages against all individual Defendants pursuant to

–21–

Plaintiff's claims in his First and Second Causes of Action in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined according to the proof;

    d.  Punitive damages against the individual Defendants in an amount in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined sufficient to deter and prevent future unlawful conduct;

    e.  Compensatory and punitive damages against Defendant SADIQ TAHIR in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined on his Fourth Cause of Action according to the proof;

    f  Compensatory and punitive damages in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined against Defendant, PEC GROUP OF NY, INC, on his Fifth Cause of Action according to the proof;

    g.  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

    h.  Such other and further relief as appears reasonable and just.

–22–

# JURY TRIAL IS DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 7, 2018

Yours truthfully submitted,

*M. H.*

Mario H. Capogrosso

21 Sheldrake Place
New Rochelle, New York. 10804
Tel.: 914-806-3692

–23–

# VERIFICATION

State of New York )
County of Kings ) ss.:

    **I, MARIO H. CAPOGROSSO,** duly sworn, deposes and says that I am the Plaintiff in

the within action and have read the foregoing "Complaint" and know the contents thereof, that the

same is true to my own knowledge, except as to the matters therein stated to be alleged on

information and belief, and that as to those matters I believe it to be true.

_____
Mario H. Capogrosso

Sworn to before me this

__7__ day of __May__ 2018

_____
Notary Public

    ABIGAIL VILLAR
Notary Public- State of New York
    No.01-VI6197570
    Qualified in Kings County
My Commission Expires 12/ 01/2020

JS 44 (Rev. 11/27/17)

CV 18-2710

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MARIO H. CAPOGROSSO
21 SHELDRAKE PLACE
NEW ROCHELLE, NY 10804          (914) 806-3692

GARAUFIS, J.

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

BLOOM, M.J.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se Plaintiff (SEE ABOVE)     ~~ORIGINAL~~

## DEFENDANTS
ALAN GELBSTEIN, BOSHRA VAHDATLAMAS (also known as Bushra Vahdat), IDA TRASCHEN, ELIZABETH PRICKETT-MORGAN, JEAN FLANAGAN, VINCENT PALMIERI, DANIELLE

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
CALVO, SADIQ TAHIR, PEC GROUP OF NY, INC, DAVID SMART AND JOHN AND JANE DOE.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question ~~SUMMONS ISSUED~~ (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
"42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986 and 42 U.S.C.1988"
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.     DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*  JUDGE  RANDOM/RANDOM   DOCKET NUMBER  NONE

DATE  05/08/2018          SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

465 3127676          A629

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, _____, counsel for_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

- [ ] monetary damages sought are in excess of $150,000, exclusive of interest and costs,

- [✓] the complaint seeks injunctive relief,

- [ ] the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?  [ ] Yes  [✓] No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?  [ ] Yes  [✓] No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?  [✓] Yes  [ ] No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?  [ ] Yes  [ ] No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

[ ] Yes          [ ] No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

[ ] Yes  (If yes, please explain    [ ] No

I certify the accuracy of all information provided above.

**Signature:** _____

Last Modified: 11/27/2017

Law Office of Mario H. Capogrosso, Esq.

245 Saw Mill River Road, Suite 106
Hawthorne, New York 10532

March 20, 2015

Ms. Elizabeth Prickett-Morgan
NYS Office of the Attorney General
120 Broadway, 24th floor
New York City, NY 10027

Dear Madam:

I am an attorney in the state of New York.

My Registration number is 424431.

Please reference Index number 7738/2012.Capogrosso vs. State Dept of Motor Vehicles for which I was in litigation. A settlement agreement was reached on June 20, 2012. As part of this settlement agreement I was required to take an anger management course and upon completion of this course I was to be allowed to practice law in all DMV courts on an equal and unbiased standing with all other attorneys in the DMV.

To this date, I have been in complete compliance with all conditions as set forth as part of this settlement agreement.

However, the DMV has not upheld its side of this agreement.

on numerous occasions, I have been harassed, threatened and now currently my files are being tampered with while they are left unprotected in the attorneys room at the DMV at 2875 West 8th Street, Brooklyn, the principal DMV location at which I practice.

The threatening and harassment I have let go because I do not easily get intimidated nor harassed. But at this point my client's files are being tampered with and I must, as a attorney, object.

I provide the following in evidence:

1) On numerous occasions your security guard Dave Sparks has told me to go F___ myself (will provide proof upon request);

2) on several occasions your security guard Sparks has redirected other clients who come have looking for me specifically or other attorneys or has interfered with my conversations while speaking to a clients (will provide proof upon request);

3) your security guard Sparks has approached me, gotten in my face, stared and glared, I asked him what was the problem was and he told me I was the problem, F___ you.;

P-41


EXHIBIT
Exhibit 28

4) your security guard Sparks, has stood looked at me directly while I was standing on the DMV traffic line gave me the sign of the cross twice and directed a spear hand in my direction.

After several complaints to Administrative Judge Gelbstein, the Senior judge at the Brooklyn TVB, I called Sparks employer. Subsequently, your security guard Sparks was relieved from his duties at the Brooklyn DMV for two weeks (proof to be provided).

I have made numerous complaints to Judge Gelbstein. His response has been " a spade is a spade (his words not mine), he laughs and giggles.

Judge Gelbstein is either complicit, incapable or incompetent to handle this issue.

As I have stated, I have ignored these incidents and have attempted at all levels not to aggravate the situation.

I have been in countless courts in my ten years of practice as an attorney and have never seen such behavior in any court system.

As I have stated, I can defend myself and absolutely will, so to this point I have ignored these incidents.

However, at this point your security guard Sparks is entering the attorney's room and tampering with my files. I have asked Judge Gelbstein to look at security tapes and have gotten no response.

As an attorney, I must now object. I cannot have my files tampered with.

I do not want an incident on your floor, I do not want an incident in your courtroom, I have no reason to have any trouble with any of your employees at the Brooklyn DMV.

To date, I have been a perfect gentleman and in complete with all conditions as set upon me by the settlement reached on June 12, 2012.

The DMV has not upheld their side of this agreement.

All I ask is that they do so.

I do not seek to litigate but I will if I have to.

Please take any and all action to expedite and resolve these issues

Mario H. Capogrosso, Esq.

914-806-3692

NY Registration No. 4244331

2

P-42

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO H. CAPOGROSSO,

       Plaintiff

-against-

**PLAINTIFF'S
AFFIRMATION IN
OPPOSITION TO
STATE DEFENDNATS'
MOTION FOR
SUMMARY JUDGMENT**

**Case No. CV-18-2710**

ALAN GELBSTEIN, et. al.,

---

I Mario H. Capogrosso, affirm under penalty of perjury that:

1. I, Mario H. Capogrosso, and attorney duly license in th states of New York and Connecticut, am the plaintiff in the above entitled action and submit this affirmation in opposition to the motion date dated May 17, 2021 State defendants' motion for summary judgment.

2. I have personal knowledge of the fats which bear upon this motion because I have personal knowledge or have witnessed all such facts.

3. Pursuant to Federal Rule of Civil Procedure 56, Local Civil Rule 56.1 and 56.2, I provide a paragraph by paragraph detailed opposition and response to State Defendants Local Civil Rule 56.1 Statement as follows.

4. The motion should be denied because:

1

I possess no personal knowledge nor information to dispute the factual allegations of paragraph 1.

2

I possess no knowledge nor information to dispute the factual allegations of

paragraph 2..

3

**I possess no knowledge to dispute the factual allegations of paragraph 3.**

4

**I dispute in part the factual allegations of paragraph 4.**

I do affirm upon personal knowledge that defendant Gelbstein was a senior administrative law judge at the Brooklyn South TVB (Traffic Violations Bureau). Defendant Gelbstein rarely adjudicated cases. I affirm that at one point in time between May 2005 through May 2015 defendant Gelbstein stated to me that he had control and authority over the whole building that the TVB occupies at 2875 West 8h Street Brooklyn New York and everything that goes on with 100 (one hundred) feet of it.

I do dispute the allegation that defendant Gelbstein was in any way analogous to a Chief Judge at a Federal Court. This is a ludicrous assertion. Defendant Gelbstein wrote no opinion, did no legal research, and, most critically, investigated none of the allegations of wrongdoing, as to their truthfulness and completeness made against me by members of the clerical staff at the Brooklyn TVB, provided me with no complaints of wrongdoing to which I could respond, requested no evidence or affidavit by me in reply to any alleged acts of wrongdoing. Did not view the videotape of the alleged altercation of myself and defendant Smart on the morning of May 11, 2015, nor did he preserve such evidence, he never questioned me as to the alleged altercation between myself and defendant Smart on the morning of May 11, 2015, never questioned witnesses as to the alleged altercation a between myself and defendant Smart, never took any action against defendant Smart with respect to my complaints of harassment by defendant Smart made to him,. He is no federal court judge.

A federal court judge would not, and I am not trying to seek favor, I am only stating facts:

5

I affirm, he is not.

Gelbstein's deposition, attached as Exhibit A, page 10

    Q: Did you observe the videotape of the alleged push?

    A: I don't recall whether I did or not.

    Q. So you don't recall ever observing the videotape?

    A. I don't recall

    Q. Did you keep possession of the videotape ?

    A. I personally did not

    Q. At any point in time did you view tat videotape?

    A. I don't recall

Gelbtein's deposition, attached as Exhibit A, page 11

Q. Did you have me removed from the Brooklyn TVB based on that videotape, did you?

  A. I would have – assuming that I saw it, which I don't recall I did, it would have been probably well after the fact

Gelbstein's deposition, attached as Exhibit A, page 24

Q. You (ever) present(d) me with  a written complaint and asked me to respond

A. No I never gave you a written complaint to respond to.

Gelbstein's deposition, attached as Exhibit A, page 26

When questioning defendant Gelbstein upon anyone specific complaints, he answers

6

Q. But you don't recall the date you called me in or the complaint that you asked me to address?

A. Right

Q. And you never asked me for a written reply to any complaint; is that fair

A. That's fair

Gelbstein's deposition, attached as Exhibit A, page 27

Q. And you just accepted all those complaints as true without asking for my affidavit in response; I is that a fair statement?

A. I did not ask for an affidavit in response.

Gelbstein's deposition, attached as Exhibit A, page 29

Q. Did you investigate that complaint, Defendant Gelbstein (referring to clerk supervisor Melanie's documentation of Mr. Perez' complaint )

A. I don't recall if I specifically investigated this complaint

Q. So you don't know the voracity or truthfulness of that complaint, is that a fair statement

A. I don't recall at this time

7

I possess no knowledge nor information to dispute the factual of allegations

of paragraph 5.

8

I possess no knowledge nor information to dispute the factual allegations of

paragraph 6.

9

I possess no knowledge nor information to dispute the factual allegations of

paragraph 7.

**Partly, I dispute the factual allegations of paragraph 8.**

I do not dispute 15 N.Y. C.R.R,

I do emphatically dispute how this statute was implemented and construed with respect to my appearance at the New York TVBs and the Brooklyn TVB specifically. Implicit to the standard "failure to conform" requires an investigation not simply an assumption. I dispute the imposition of this standard where it is not properly and fairly implemented. For brevity, I will not list here, but refer to my response to paragraph 4 herein. I affirm by personal knowledge there was a never a proper investigation of the truthfulness nor completeness of the complaints made against me.

I n support I further cite

Gelbstein's deposition, attached as Exhibit A, page 29

When speaking of the Complaint made aby Melanie a senior clerk supervisor which involved Mr. Perez, I question,

Q. Did you investigate that complaint, Defendant Gelbstein?

A. I don't recall if I specifically investigated that complaint.

Q. So you don't know the veracity or truthfulness of that complaint; is that a fair statement?

A. I don't recall at this time.

11

**The motion should be denied because in response and opposition to paragraph 9**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 9, these allegations are not true, they are false.; they are inconsistent.

Reference, attached as Exhibit F, (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

In this opposition and response to all allegations of wrongdoing. I repeatedly state and do hereby affirm there was never any threatening conduct or verbal abuse.

I affirm I have never harassed threatened or been aggressive towards women. The record is devoid of any actual words of threat or acts of threat. Reference Attachment F.

I affirm I like women, I like women, I like women. I affirm, woman make the party. I am dating two women currently and they both call me to take them out – so I must be doing something right.

I also affirm that when they act improperly, Tanya Rabinovich calling and acting as a lawyer or Agnes Paez soliciting motorist at the TVB, and both of these individuals were removed from the Brooklyn TVB because of their behavior, I affirm I will call the District Attorney or choose not to associate with them, respectively.

I affirm that I am an aggressive attorney but not a threatening attorney. I state the truth. I I don't stay quiet. I am not ashamed of this, though it is what the TVB and specifically its lead ALJ Bushra Vahdat wanted me to do. Reference Exhibit G, Letter from McDonough & McDonough, LLP to Barbara J. Fiala, Commr of Motor Vehicles, "if Mr. Capogrosso "was good" and "stayed quiet" she would reconsider the determination three months later."

12

I affirm, I am an aggressive attorney, I am going to do what is right, not what is good. If I wanted choose what was good for me I would not be before this Court.

**The motion should be denied because in response and opposition to paragraph 10**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 10:, these allegations are not true, they are false.

In support, reference my Response to Exhibit 1 and Response to Exhibit 2, , of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

My defense – Tanya Rabinovitch approached me that day after I complained to the District Attorney concerning her continuous representation of herself as an attorney at the Brooklyn South DMV TVB. After admitting to her that I filed such report with the District Attorney, she accosted me that day with a verbal tirade. Defendant's Gelbsteins response to my complaint to the District Attorney was – "Who are you Don Quixote." I attempted to walk away from her that day and avoid her verbal tirade.

and

Again, Tanya Rabinovitch approached me complaining of my complaint to the District Attorney's Office – I did tell her to "get away from me." She was verbally accosting me due to my complaint to the District Attorney's Office. I see nothing wrong with the comment "get away from me" and then attempting to avoid interacting with her.

I affirm, upon personal knowledge, that Tanya Rabinovich approached me yelling and screaming at me. Reference Response to Exhibit 1 and Response to Exhibit 2, , of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

I affirm, upon personal knowledge, that I got up in order to get away from Tanya Rabinovich who approached me yelling and screaming at me. Reference Response to

14

Exhibit 1 and Response to Exhibit 2, , of Exhibit F (Plaintiff's Opposition to Defendants'
Motion to Dismiss, Dkts 40 and 41)

I affirm, upon personal knowledge, bumping into this woman. I do affirm that she
approached me I do recall getting up and trying to walk away, and I do recall telling her
to Get away from me get away from me. Reference Response to Exhibit 1 and Response
to Exhibit 2, , of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss,
Dkts 40 and 41)

See Exhibit E, Capogrosso Deposition. Page 146

"And she approaches me that day and sys did you call – did you call the District
Attorney? I said yes, I did it I admitted it to her and she starts yelling and berating me and
tried walking away from her."

I did not bump her, See Exhibit E, Capogrosso Deposition. Page 147

I testify "I wasn't charged .I wasn't arrested. I didn't do anything wrong but tried
to get away from the situation and telling the truth. I told her what happened and what I did

I testify that I wan not screaming and yelling profanities See Exhibit E, Capogrosso
Deposition. Page 147"16-25, Page 148:1-15

When asked whether I used profanity it, I respond No I did not. I was telling her to
get away from me , but I yelled no profanity and no obscenity>"

Upon being asked whether I made contact with Tanya Rabinovich, I testify

"No, not that I recall, no" Capogrosso Deposition. Page 150 :2"I know I didn't
bump into anybody" Capogrosso Deposition. Page 153 :14

I tell Tanya to get away from me, "he stated get away from me, which is what I'm
telling Tanya. To get away. Capogrosso Deposition. Page 155 :24-25

15

There are inconsistencies in the two complaints,

"there is no indication that I bumped into her because I didn't bump into her "That's

Roy's version of the story. Capogrosso Deposition. Page 156 :2-4

"I don't recall touching this woman at any point." Capogrosso Deposition. Page

159,3-4

16

**The motion should be denied because in response and opposition to paragraph 11**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 11;, these allegations are not true, they are false

In support, reference my response to Exhibit 3, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I am accused at belligerently yelling. I was called to the counter by a paralegal working for me at that time, and I asked, "what was the problem." There is nothing wrong with that. I did not curse. Marisol Cervine provides no indication of what curse word was used, because none was used. As I remember it I asked only "What was the problem" Further she indicates "that my aggressive behavior escalated. I have no idea what that means. What exactly am I being accused of doing to her. She indicates I made comments and smirked. My response, what comments were made. None were made. I was an aggressive litigator in this courtroom, but I made no aggressive action against her person at any point in time.

I affirm upon personal knowledge that I did not yell scream or insult Marisol Cervoni.

When questioned whether I cursed or insulted, I testify, "I never cursed or insulted the woman, absolutely not." Capogrosso Deposition. Page 169 13-16

I admit I might have been loud. Capogrosso Deposition. Page 169, because I want people to hear me when I speak . Capogrosso Deposition. Page 169.

I testify, "I don't curse or insult women. It's snot something I do." Capogrosso Deposition. Page 170, 3-4.

17

I testify that "I never cursed yelled or insulted, absolutely not. Absolutely not." Capogrosso Deposition. Page 171, 2.3-25.

I testify, "Was I cursing and insulting, absolutely not." Capogrosso Deposition. Page 173, 23-25.

I affirm I advocated on behalf of my client, to which I have taken oath to do. Let this Court we all have all taken our oaths before our respective Bars. I affirm based on that oath I have a duty to resolve my clients legal issues..

So I testify, when I am accused of not leaving the clerks' counter, "well, wait a second, wait. Wait a second. Maybe I wanted the issue resolve and I wanted some explanation of the issue, which is my duty to do. I have a duty to my client, not to a clerk, but to my client to make sure the issue is resolve, whatever the issue was." Capogrosso Deposition. Page 175, 12-19.

I affirm, upon personal knowledge, I was good at what I was doing in traffic court. I provide proof. Reference client reviews of my practice, attached herein as Exhibit J.

I affirm, upon personal knowledge, that I had a very large case load, and kept a meticulous calendar, Reference my calendar and docket, attached herein as Exhibits L and M.

I affirm, upon personal knowledge, that if I did anything to violate the Rules of Professional Conduct, I would have been brought before the Grievance Committee , and the Department of Motor Vehicles never did so. Though they are not averse to doing so, reference Matter of Teague, attached herein as Exhibit K. though albeit the fact their lawyers acting as an administrative law judge possess their own history of misconduct, reference Exhibits H, an article referencing th4 misconduct of the supervising ALJ Bushra

18

Vahdat. And Exhibit I, where ALJ Vahdat has violated Agency Rules on Outside Employment.

In sum and I affirm upon personal knowledge, that when Department of Motor Vehicles cannot grieve you, they send a security guard to harass and provoke the incident of May 11, 2015 so as to have me removed.

Refence my letter of Complaint seeing relief from such harassment, attached herein as Exhibit O , and affidavits of threat and harassment upon my person by defendant Smart while I was at the Brooklyn TVB, reference Exhibits P, Q, and R.

With respect to the allegation of fear I affirm, that I was there at the TVB to do a job. I testify, I"I did not yell and I did not curse and I did not insult for what reason she is fearful I do not know. I didn't schmooze with her in the morning and ask how she' doing and is she okay and how is your weekend and how's all this. I didn't think about all that stuff. I was there to do a job" Capogrosso Deposition. Page 181.

I testify, that if I was told that there was problem or a complaint, I would attempt to rectify it immediately. Capogrosso Deposition. Page 183.

I was never aware of any complaints made against me,. I testify, "I've neve seen these complaints. I Judge Gelbstein was doing his job or his clerical supervisor we doing their job, they would have brought this complaint to my attention immediately and I would have resolved it..." Capogrosso Deposition. Page 186.

I further testify, "All of these complaints. Judge Gelbstein never presented to me one of these complaints, not one" Capogrosso Deposition. Page 189 16-19.

19

**The motion should be denied because in response and opposition to paragraph 12**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 12;, these allegations are not true, they are false

In support, reference my response to Exhibit 4, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I at no point told my paralegal at any time to follow this person. It is true she was NOT an attorney but it is true that she was soliciting motorists on a continuous basis in the Brooklyn South TVB court. She was eventually thrown out of the DMV due to her relentless soliciting of motorists not only on the floor of the DMV but in its parking lot by Defendant Gelbstein. She provides no indication specifically of "the variety of profane and vulgar names" used because none were ever said. I do not curse at women.

I affirm upon personal, that I did not approve of this woman Agnes Paez soliciting clients. Capogrosso Deposition. Page 198., 9-25, page 199, lines 4-10.

I testify, "I didn't like what she was doing so I let her go." Capogrosso Deposition. Page 197.

I testify, that I did not recall any incident with Ms. Paez, I testify, ""I know I didn't like what she was doing there .Judge Gelbstein approved it. But did I ever approach her, absolutely not." Capogrosso Deposition. Page 197.

I testify, that I did not call her a variety of vulgar and profane names. The record is devoid of any proof of what names were used. I testify, "You can' make these blatant

20

accusations about people and don't give the specifics. Exactly what was said?"

Capogrosso Deposition. Page 204

I testify that I do not recalling having an altercation with this woman, . ."

Capogrosso Deposition. Page 206.

I testify affirm and reaffirm, this is upsetting. This is an unrelenting attack on my character. I testify, "I did not threaten a woman. I would never threaten a woman in my life." Capogrosso Deposition. Page 207.

But I also affirm, that you do not get a pass in my estimation just because you area woman. Therefore, I will report the actions of Tanya Rabinovich to the District Attorney, and I will refuse to associate with Agnes Paez and the attorney, Diantha Fuller, who she worked for,. Capogrosso Deposition. Page 206.

21

**The motion should be denied because in response and opposition to paragraph 13**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 13;, these allegations are not true, they are false; the facts are inconsistent.

. In support, reference my response to Exhibit 6, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I am accused of confrontations. There are no specific facts, only allegations, so I do not know how to respond. I am a litigator. I was at this tribunal to argue cases and win cases on behalf of my clients. I was not engaging with the clerks of this court as other attorneys did. I was not giving them gifts for Christmas and the holidays, I was not giving them parties, I was not buying them breakfast and coffee. In response my clients often paid the price. I would put the summons in the courtroom, and as it was my understanding the standing rule of the Court was that the first to appear was to the first party to be heard. Often this was not the case. Because I did not indulge the clerks with gifts, presents, coffee, and parties my clients would suffer. I would put the case in first and be called last But I refused to the play their game. If I did, to me there was an appearance of impropriety and I did not want to play that game. I was upset for my client's sake, not mine. I was there for the whole day. I worked predominantly at the Brooklyn South TVB. I see no actual allegations of misconduct to which I need to respond.

22

In response, with respect to threat of physical safety, the record, the complaint, is devoid of evidence.

I testify, "Tell me the specifics, I have no idea. You can't make allegations against a man and his reputation if you don't give specifics" Capogrosso Deposition. Page 206..

I attach two exhibits of your review Exhibits S and Exhibit T. This is an incident dealing with George Hon. First an foremost I affirm I sought no altercation with George Hon. I I provide my description in the events See Capogrosso Deposition. Page 217-219 I testify, Look at the description of the events,

Supervising ALJ writes, Exhibit S, third paragraph, "He followed a clerk with his car and stopped the clerk's car from moving" and compare it with what

George Hon writes, "C was waiting at the entrance of the parking in his car. G stopped behind him, both got out of their car"

I affirm, upon proof and personal knowledge, Bushra Vahdat is a lying lawyer acting as a judge making up stories to get me removed from the practice of law at the Brooklyn TVB.

23

## The motion should be denied because in response and opposition to paragraph 14

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 14;, these allegations are not true, they are false, they are inconsistent.

In support, reference my response to Exhibit 7, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

Attorney Yaakov Brady's accusations – incredulous statement by a lying lawyer who precipitated all these events. This event happened on December 11, 2011 in the attorney's room at the Brooklyn South TVB. Once again, I came and I placed my coffee down under the bench. "I said excuse me can I get my coffee" to Brody. Brody responded, "excuse yourself go f--- yourself you Jew hater anti-Semite." I then proceed that morning to do a hearing. I come back once again Brody is standing in front of my coffee, I asked Brody "excuse me can I get my coffee." His response again was "excuse yourself go F--- yourself you Jew hater anti Semite" I was required to take an anger management class, Brody was given a pass. I argue, I am an Italian American in Jewish community making too much money. My colleagues wanted me out. In addition, please let this Court note, Brody states that I said I am going to "Hit you with my briefcase" Incredulous statement from a lying lawyer. If it comes to the point where I need to defend my life or my family's life because of threat of assault by a knife or gun or serious physical assault I will defend myself – but " I am not going to "Hit you with my briefcase" Incredulous statement by a lying lawyer. Let Brody know that I am not an anti-Semite. Please let this Court note that in all the accusations brought against me, there is not accusation from any client or motorist

24

that I used racial slur whether they be Jewish or any other nationality or religion. Please review this record. Where is there proof I am an anti-Semite. There is none. These are the actions of an attorney, Brody, who provoked an incident, who was looking to get to get me removed and accomplished it.

I testify, to the events of this day, Capogrosso Deposition. Page 217-239.

25

**The motion should be denied because in response and opposition to paragraph 15**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 15;, these allegations are not true, they are false, they are inconsistent.

In support, reference my response to Exhibit 7, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

Attorney Yaakov Brady's accusations – incredulous statement by a lying lawyer who precipitated all these events. This event happened on December 11, 2011 in the attorney's room at the Brooklyn South TVB. Once again, I came and I placed my coffee down under the bench. "I said excuse me can I get my coffee" to Brody. Brody responded, "excuse yourself go f--- yourself you Jew hater anti-Semite." I then proceed that morning to do a hearing. I come back once again Brody is standing in front of my coffee, I asked Brody "excuse me can I get my coffee." His response again was "excuse yourself go F--- yourself you Jew hater anti Semite" I was required to take an anger management class, Brody was given a pass. I argue, I am an Italian American in Jewish community making too much money. My colleagues wanted me out. In addition, please let this Court note, Brody states that I said I am going to "Hit you with my briefcase" Incredulous statement from a lying lawyer. If it comes to the point where I need to defend my life or my family's life because of threat of assault by a knife or gun or serious physical assault I will defend myself – but " I am not going to "Hit you with my briefcase" Incredulous statement by a lying lawyer. Let Brody know that I am not an anti-Semite. Please let this Court note that in all the accusations brought against me, there is not accusation from any client or motorist

26

that I used racial slur whether they be Jewish or any other nationality or religion. Please review this record. Where is there proof I am an anti-Semite. There is none. These are the actions of an attorney, Brody, who provoked an incident, who was looking to get to get me removed and accomplished it.

I affirm that I was mad. Capogrosso Deposition. Page 243 -244. .

When asked whether I said the place is run Jews, I testify, "I don't recall" . Capogrosso Deposition. Page 246.

I affirm and will reaffirm and testify, "No I don't care who you are. I treat everybody the same. I treat everyone respectfully" Capogrosso Deposition. Page 246-248.

27

**The motion should be denied because in response and opposition to paragraph 16**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 16;, these allegations are not true, they are false, they are inconsistent.

In support, reference my response to Exhibit 7, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

Attorney Yaakov Brady's accusations – incredulous statement by a lying lawyer who precipitated all these events. This event happened on December 11, 2011 in the attorney's room at the Brooklyn South TVB. Once again, I came and I placed my coffee down under the bench. "I said excuse me can I get my coffee" to Brody. Brody responded, "excuse yourself go f--- yourself you Jew hater anti-Semite." I then proceed that morning to do a hearing. I come back once again Brody is standing in front of my coffee, I asked Brody "excuse me can I get my coffee." His response again was "excuse yourself go F--- yourself you Jew hater anti Semite" I was required to take an anger management class, Brody was given a pass. I argue, I am an Italian American in Jewish community making too much money. My colleagues wanted me out. In addition, please let this Court note, Brody states that I said I am going to "Hit you with my briefcase" Incredulous statement from a lying lawyer. If it comes to the point where I need to defend my life or my family's life because of threat of assault by a knife or gun or serious physical assault I will defend myself – but " I am not going to "Hit you with my briefcase" Incredulous statement by a lying lawyer. Let Brody know that I am not an anti-Semite. Please let this Court note that

28

in all the accusations brought against me, there is not accusation from any client or motorist that I used racial slur whether they be Jewish or any other nationality or religion. Please review this record. Where is there proof I am an anti-Semite. There is none. These are the actions of an attorney, Brody,  who provoked an incident, who was looking to get to get me removed and accomplished it.


   I affirm that I was mad. Capogrosso Deposition. Page  243 -244. .

**The motion should be denied because in response and opposition to paragraph 17**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 17;, these allegations are not true, they are false, they are inconsistent.

In support, reference my response to Exhibit 10, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

In support, reference my response to Exhibit 10, of Exhibit C

It provides, and I again affirm that I have personal knowledge that,

The events of December 21, 2011 again. One event one day, all occurring outside the tribunal. Initiated by Brody telling me to "Go f--- myself" twice and "that I am a Jew hater anti-Semite" for what reason I still don't know, only because I am an Italian American in Jewish community making too much money. Brody set me up. I took an anger management course because I did throw a punch in the direction of a wall, not hitting the wall in the attorney's room and not in the vicinity of any other attorney. I was not arrested nor charged.

I affirm that I liked Jeff Meyers. Capogrosso Deposition. Page 273-274.

I testify that I would ever hurt Jeff Meyers. Capogrosso Deposition. Page 273.

I testify that I never hit any wall. Capogrosso Deposition. Page 273. 13-15.

30

**The motion should be denied because in response and opposition to paragraph 18**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 18;, these allegations are not true, they are false, they are inconsistent.

In support, reference Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41). I affirm, I am a witness to the events. I have personal knowledge and involvement. My statement. was never taken. The record is devoid of any proof of my witness statement.

31

**The motion should be denied because in response and opposition to paragraph 19**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 19;, these allegations are not true, they are false, they are inconsistent.

I testify that Gelbstein met with me, and I affirm I was told to leave the building after the incident with Yakov Brody, and I testify "Gelbstein told me you're not welcome here anymore." Capogrosso Deposition. Page 295. .

32

**The motion should be denied because in response and opposition to paragraph  20**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 20;, these allegations are not true, they are false.

I affirm the petition, attached as Exhibit S,  stands for itself, I dispute the use of the words verbal rant and agitated speech and physically intimidating behavior, those words were never used in the petition. The petition is devoid of such language.

33

I do not dispute these factual allegations of paragraph 21.

34

**The motion should be denied because in response and opposition to paragraph 22**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 22;, these allegations are not true, they are false, they are inconsistent.

I affirm upon personal knowledge that the TVB wanted me out for any behavior, even if it were not violent or aggressive behavior. I a adamantly disagree the association of sneezing the wrong way with violent and aggressive behavior. McDonough never trusted Gelbstein and neither should I have, that is the meaning of this phrase. I affirm this upon personal knowledge. See Capogrosso Deposition. Page 339, "he didn't trust Gelbstein at all."

Further, I affirm, and reference In support, reference Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41), to which I respond in kind to all the allegations made against, there is no proof of verbal abuse or threatening physical conduct as asked of me in my letter of re-entry, attached as Exhibit T.

35

**The motion should be denied because in response and opposition to paragraph 23**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 23;, these allegations are not true, they are false.

Further, I affirm, and reference In support, reference Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41), to which I respond in kind to all the allegations made against, there is no proof of verbal abuse or threatening physical conduct as asked of me in my letter of re-entry, attached as Exhibit T.

Further, and for brevity, I refer to my response and opposition herein to paragraph 4, herein there was never a full and proper investigation of the veracity truthfulness of any of the complaints lodged against me.

I further cite in support, Exhibit C, Calvo deposition, page 21, 18-25.

Q. Did you ever investigate at any point the voracity of truthfulness of any of these complaints?

A. I may have, I don't know.

Further, I cite ins support, Exhibit C, Calvo deposition, page 23, 21-25.

Q. Can you give me one specific instance of where I verbally abused one of your clerks, the date, time and exactly what I said, I'd like to know?

A. No, I can't

I further cite in support, Exhibit C, Calvo deposition, page 31, 13-17

Q. Well, what threatening conduct was ever reported to you by one of your clerks, tell me?

A. I don't recall specific incidents. .

36

I further cite in support, Exhibit C, Calvo deposition, page 31, 24-25, page 32 1-125., page 33 page 1-8

Q. tell me one time I verbally abused one of your clerks, the date, the time, the occurrence, exactly what I said?

A. No, I cannot tell you.

Q. Can you tell me what ethnic slur I ever made with respect to one of your clerks?

A. I can't tell you specifically any incidents, ,date, time, I don't have tat information

Q. Did you ever make an investigation to any of these complaints against me by one of these clerks?

A. If I did, I don't recall, but I may have.

Q. Can you tell me the results of that investigation.

A.I can't tell you because I don't recall.


I further cite in support, Exhibit B, Traschen deposition, page 14, 9-12, when she is questioned as to whether she spoke to the people who wrote complaints about me she testifies,

A. Do you mean, did I talk to them and question them?

Q. Yes

A. No, I did not. .

37

I further cite in support, Exhibit B, Traschen deposition, page 19 15-20

Q. Do you review any police reports or the work violence reports that were submitted

A. I don't recall

Q. You don't recall

A. I don't

**The motion should be denied because in response and opposition to paragraph 24**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 24;, these allegations are not true, they are false, they are inconsistent.

The facts are inconsistent. The complaint states at the bottom that my affidavit in reply is attached. It is not attached. Th Court must take judicial notice. I affirm upon personal, I am being given no opportunity to respond.

I affirm here, based upon personal knowledge, what happened on this day. I am standing up for the 10 am morning calendar waiting for my clients to come in. A former client walks in - I remember ss if it were yesterday - and states "Hi Mario nice suit." I respond, "Well I'm making a few bucks I can afford it." Defendant Smart is sitting on a bench about 30 feet away and over hears this comment. As I have stated, this is not the first time this man has approached me, Reference Exhibits O,P, Q, R and S and comes within a couple of inches of my face, ducking his head and obscuring his hand. I tell him to back up and keep walking. That is all I said. If my statement is never taken, how can I be complained that Smart is staring. My statement is never taken, security cameras are never looked, the veracity and truth of this complaint is never investigated. For brevity, I reference my response to paragraph 4 and 23.

39

**The motion should be denied because in response and opposition to paragraph 25**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual

allegations presented in paragraph 25, these allegations are not true, they are false

they are inconsistent

In support, reference my response to Exhibit 12, of Exhibit F (Plaintiff's

Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

"give somebody an attitude" sound alike a paranoid clerk who perhaps needs a vacation. I

really don't know how to respond. **Where is the proof of "verbal threats of physical**

**violence, and verbal abuse, including the use of ethnic slurs" conditions set to**

**pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no**

**proof.**

When questioned as to whether I have knowledge as to this incident, I testify, "I

wouldn't know how tell a motorist to give a clerk an attitude" See Capogrosso Deposition.

Page 350.

40

**The motion should be denied because in response and opposition to paragraph 26**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 26, these allegations are not true, they are false they are inconsistent.

In support, reference my response to Exhibit 14, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

In support, reference my response to Exhibit 14, of Exhibit C dated February 3, I never intentionally walked into Defendant Smart. Deliberately walked – ridiculous. Is this an assault or threat of violence, verbal abuse? We are working in the same environment. I routinely would have to go the docket on the courtroom wall to look and determine the hearing room for the motorist's hearing. Paranoid security guard but not an assault or threat of physical violence. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I testify, that I did not deliberately walk into defendant Smart, See Capogrosso Deposition. Page 355.

41

**The motion should be denied because in response and opposition to paragraph 27**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 27;, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 15, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I do remember this incident . Mr. Perez retained me to represent him on an appeal on a traffic ticket that he had lost. I took the appeal . The following day Mr. Perez came in and told me the judge has suspended his license. He came in verbally abusing me. I said I will give you your money back on the appeal, which I did. I did not argue his case. I did not get his license suspended. I was the lawyer hired to write the appeal. At which time Mr. Perez threatened to cut me with a knife and then slash the tires of my car. Welcome to the Brooklyn TVB. I was told by Defendant Gelbstein if there is an unruly client motorist you are to speak to him outside the courthouse which I intended to do with Mr. Perez as per Defendant Gelbstein order. As I understand it, all the attorneys were told the same. I was just threatened with a knife. The security guard defendant Smart was nowhere to be found and the Police did not get involved, as such I followed Defendant Gelbstein order and indicated to Mr. Perez that we needed to speak outside. Once again, **where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I affirm, based on personal knowledge, I was not the aggressor, and affirm and

42

reaffirm that we needed to speak outside as I was directed to do so by defendant Gelbstein
when I encountered an unruly client. . See Capogrosso Deposition. Page 363 "Gelbstein
told me if you have a bad client, unruly client, you are to go outside the courthouse, and
speak to him outside, which I proceeded to do"

    I testify, "I said let's go talk outside, which is what I did." See Capogrosso
Deposition. Page 363

43

**The motion should be denied because in response and opposition to paragraph 28**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 28;, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 16, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I have no idea as to what this is about. Nonsense. I have no idea what is being alluded here. But if I verbally attacked Defendant Gelbstein. What words did I use, in what manner did I attack him. I am having an argument over paper clips. Where is Defendant Gelbstein's formal admonition to me. This is nonsense, ridiculous statement made by a disgruntled employee who I believe was removed from her position at the Brooklyn DMV for unprofessional conduct. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I testify, that I have no knowledge as to this complaint, it is total nonsense. ." See Capogrosso Deposition. Page 391

**The motion should be denied because in response and opposition to paragraph 29**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 29;, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 17, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41)

It provides, and I again affirm that I have personal knowledge that,

I say "shit" I do not say shit at any time. I do not curse. I do hear Defendant Tahir say "Mother F---ker" very often in my presence as well as the presence of other attorneys and clients, to which he takes no offense. I have no idea of what Defendant Tahir is talking about. I do say "Eee – shah" occasionally, quietly to myself. It is a KENPO expression (once again I have trained in the martial arts for many years) and it is something that keeps me motivated, in and out of the gym, when I lose energy but it is not the word "shit" and was never directed at any attorney, client or motorist, If Defendant had questioned me concerning it, he might have understood. I think Defendant Tahir is paranoid. I mumbled "psycho" – ridiculous. This is verbal abuse. Sounds simply like attorney paranoia. I am accused of punching. Absolutely ridiculous – where is the proof. Where is the admonition by Defendant Gelbstein to me, concerning such behavior. Anything recorded on tape. I have seen none. I am accused of "grabbing my ankles and walking in a fast threatening manner: Nonsensical. Where is it written I cannot touch my toes or walk fast. Nonsensical. An old attorney's paranoia. The "near fight" Defendant Tahir speaks about concerns a client, Mr. Perez threatening to slice me with a knife, and security guard Smart being nowhere to be found, Police Officers not responding, and Defendant's Gelbstein's order to

me to speak to unruly clients outside the courtroom. Explained above. Further, what you do hear in this statement from Defendant Tahir is that it he responds, "loudly **in a barrage swear words,** stating that he (M. Capogrosso) was crazy and I was sick of him saying "shit" to me." By his own admission, I am being verbally abused by Defendant Tahir. In response I did shake my shoulder and laugh. This is nonsensical.

**Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I testify, with that I do not say the word "shit", See Capogrosso Deposition. Page 398, 1-25, page 399, 1-18., page 404, 8-9.

I testify, "I did not verbally abuse" See Capogrosso Deposition. Page 406, 9-12.

46

**I accept as true the factual allegations of paragraph 30.**

In support of my complaints see Exhibits O, P, Q, and r attached.

**The motion should be denied because in response and opposition to paragraph 31**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 31;, these allegations are not true, they are false They are inconsistent. they are inconsistent.

In support, I cite, Calvo Deposition Exhibit C, page 13

Q. Who governed his day to day activities at the Brooklyn YVB?

A. We would tell him what we wanted him done as far a opening, closing thigs like that

Q. Clerical staff the clerical staff governed his day-to-day activities, is that correct.

A. To some extent yes.

In support, I cite, Gelbstein Deposition Exhibit A, page 14

Q. Do you have authority over the actions of Defendant Smart at the TVB.

A. I do

48

**The motion should be denied because in response and opposition to paragraph 32**

      There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 32;, these allegations are not true, they are false they are inconsistent.

      I affirm these claims were not stale. The defendant Smart approached me unproved on May 11, 2015 and created the incident which led to my removal.

      I testify, I wrote the Attorney General because I was fearful that another incident with Smart would occur. See Capogrosso Deposition. Page 415, 416.

      I testify, "then the incident happens. On May 11, this guy comes again. He comes, he gets in my face again. I put up my hand. I tell him back up back up. See Capogrosso Deposition. Page 416 14-17.

      I testify, "I saw this guy Smart was not backing off. I saw it he didn't want to stop." See Capogrosso Deposition. Page 421.

**The motion should be denied because in response and opposition to paragraph 33**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 33;, these allegations are not true, they are false they are inconsistent..

In support, reference my response to Exhibit 18, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41).

At no point in time did I yell and curse at Defendant Tahir. Tahir by his own admission , item 6, above admits responding to me **"loudly in a barrage of swear words."** I am being yelled at, cursed at, by Tahir. I am being accused of cursing. What curse words did I use. Please explain I see none presented

There was no incident on May 5, 2015. There was an incident of May 8, 2015. There was a verbal disagreement on May 8, 2015 between me and Defendant Tahir. I placed my briefcase on a chair in the attorney room for a moment while I took a phone call from a client. It was Defendant Tahir who verbally assaulted me with a tirade of expletives saying I was not allowed to sit or put anything on his chair. Why, I do not know. This was a common attorney room where we all had a right to sit and share. Nonsensical accusations. Putting my briefcase on a chair. I am accused of " obscenities and threats." My question what threat was uttered and what obscenity used. Absolutely none. Not by me anyway. Tahir does admit to swearing at me. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

50

I testify in support of my statement, See Capogrosso Deposition. Page 450-453.

I testify tat I did not curse. See Capogrosso Deposition. Page 453, 20-25.

I testify, I am not here to harass a lawyer . See Capogrosso Deposition. Page 454 and testify he has insecurities . See Capogrosso Deposition. Page 454. The record and complaint are devoid of any threatening conduct and speech.

51

**The motion should be denied because in response and opposition to paragraph 34**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 34;, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 18, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41).

It provides, and I again affirm that I have personal knowledge that,

At no point in time did I yell and curse at Defendant Tahir. Tahir by his own admission , item 6, above admits responding to me **"loudly in a barrage of swear words."** I am being yelled at, cursed at, by Tahir. I am being accused of cursing. What curse words did I use. Please explain I see none presented. There was no incident on May 5, 2015. There was an incident of May 8, 2015. There was a verbal disagreement on May 8, 2015 between me and Defendant Tahir. I placed my briefcase on a chair in the attorney room for a moment while I took a phone call from a client. It was Defendant Tahir who verbally assaulted me with a tirade of expletives saying I was not allowed to sit or put anything on his chair. Why, I do not know. This was a common attorney room where we all had a right to sit and share. Nonsensical accusations. Putting my briefcase on a chair. I am accused of " obscenities and threats." My question what threat was uttered and what obscenity used. Absolutely none. Not by me anyway. Tahir does admit to swearing at me. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

52

I put my briefcase on a chair in the attorney's room which I am allowed to do. This was not Defendant Tahir's personal chair, so therefore he cannot direct me as to how to use it. He indicates in his statement that "that chair is to sit, not for your bag." Who is provoking this incident. Tahir is, I am not. Attorneys routinely lay out their briefcase on the two benches that occupy this attorney's room. Except of course when it came to Tahir's chair, that he claims as his own. I put my briefcase on this chair for a moment, in order to take a phone call. Tahir provoked, escalated and contributed to the whole incident yet he goes unpunished, I get banned. Further, Defendant Tahir began screaming, by his own admission, he states **"then of Course I raised my voice too."** Yet in the work violence report submitted it is only me who (Siegmund's Exhibit 6, page 13 of 23) who is described as yelling. Defendant Gelbstein and Calvo mischaracterize the evidence purposefully to get me banned from the DMV TVB. I was given no opportunity to state my position on this incident with Tahir. Defendants Gelbstein and Calvo did approach me after this incident. Defendant Gelbstein in the presence of Defendant Calvo stated to me, "Can't you go practice somewhere else I saw what you wrote about me that I am complicit and incapable" Reference my letter to Defendant Prickett Morgan, Exhibit D, attached. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

Work place violence report – the hard evidence upon which this Court has indicated to me pursuant to my Foil request, as to why I was banned from the DMV TVB. With respect to the Workplace Violence Report, there is no work violence or threat of work

53

violence shown in this report. A report in which I was given no opportunity to respond. As I stated previously I placed by briefcase on a chair that Defendant Tahir claimed as his own in the attorney's room. Tahir began to move it I said give me a minute I will be leaving shortly and which Point Defendant Tahir grabbed the briefcase sending files scattering. I was given no opportunity to explain nor respond by Defendants Gelbstein and Calvo. There is no proof of violence in this report though it is labelled as a work violence report and it is one of the primary reasons for me being banned." Defendant Gelbstein did approach me after this incident, in the presence of Defendant Calvo and stated, "Can't you go practice somewhere else I saw what you wrote about me that I am complicit and incapable" Reference my letter to Defendant Prickett Morgan, Exhibit D, attached. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof**

See also Capogrosso Deposition, page 462-463.


I testify in support of my statement, See Capogrosso Deposition. Page 450-453.

I testify tat I did not curse. See Capogrosso Deposition. Page 453, 20-25.

I testify, I am not here to harass a lawyer . See Capogrosso Deposition. Page 454 and testify he has insecurities . See Capogrosso Deposition. Page 454.

The record and complaint are devoid of any threatening conduct and speech.

54

**The motion should be denied because in response and opposition to paragraph 35**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 35, these allegations are not true, they are false they are inconsistent.

In support, reference my response to Exhibit 18, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41).

It provides, and I again affirm that I have personal knowledge that,

At no point in time did I yell and curse at Defendant Tahir. Tahir by his own admission , item 6, above admits responding to me **"loudly in a barrage of swear words."** I am being yelled at, cursed at, by Tahir. I am being accused of cursing. What curse words did I use. Please explain I see none presented. There was no incident on May 5, 2015. There was an incident of May 8, 2015. There was a verbal disagreement on May 8, 2015 between me and Defendant Tahir. I placed my briefcase on a chair in the attorney room for a moment while I took a phone call from a client. It was Defendant Tahir who verbally assaulted me with a tirade of expletives saying I was not allowed to sit or put anything on his chair. Why, I do not know. This was a common attorney room where we all had a right to sit and share. Nonsensical accusations. Putting my briefcase on a chair. I am accused of " obscenities and threats." My question what threat was uttered and what obscenity used. Absolutely none. Not by me anyway. Tahir does admit to swearing at me. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

55

I put my briefcase on a chair in the attorney's room which I am allowed to do. This was not Defendant Tahir's personal chair, so therefore he cannot direct me as to how to use it. He indicates in his statement that "that chair is to sit, not for your bag." Who is provoking this incident. Tahir is, I am not. Attorneys routinely lay out their briefcase on the two benches that occupy this attorney's room. Except of course when it came to Tahir's chair, that he claims as his own. I put my briefcase on this chair for a moment, in order to take a phone call. Tahir provoked, escalated and contributed to the whole incident yet he goes unpunished, I get banned. Further, Defendant Tahir began screaming, by his own admission, he states **"then of Course I raised my voice too."** Yet in the work violence report submitted it is only me who (Siegmund's Exhibit 6, page 13 of 23) who is described as yelling. Defendant Gelbstein and Calvo mischaracterize the evidence purposefully to get me banned from the DMV TVB. I was given no opportunity to state my position on this incident with Tahir. Defendants Gelbstein and Calvo did approach me after this incident. Defendant Gelbstein in the presence of Defendant Calvo stated to me, "Can't you go practice somewhere else I saw what you wrote about me that I am complicit and incapable" Reference my letter to Defendant Prickett Morgan, Exhibit D, attached. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

See also Capogrosso Deposition, page 462-463.

I testify in support of my statement, See Capogrosso Deposition. Page 450-453.

I testify tat I did not curse. See Capogrosso Deposition. Page 453, 20-25.

I testify, I am not here to harass a lawyer . See Capogrosso Deposition. Page 454

56

and testify he has insecurities . See Capogrosso Deposition. Page 454.

The record and complaint are devoid of any threatening conduct and speech.

**The motion should be denied because in response and opposition to paragraph 36**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 36;, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 19, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41).

It provides, and I again affirm that I have personal knowledge that,

I have no idea who wrote this, my files were being tampered with at one point in time. I did observe Defendant Smart do it often. I complained to Defendant Gelbstein with no response. It was Smart's continue attempt to harass. I never stated that Defendant Gelbstein "should put a gun to his head." My question, who made this statement and who corroborates me making it. However, I do remember making a statement concerning a former attorney who also improperly expelled from the DMV TVB by Defendant Gelbstein and who later committed suicide. When I was asked about this matter by a client concerning Defendant Gelbstein's actions, expelling an attorney from the DMV without a due process hearing, I stated in response " I would have a hard time sleeping at night. " That is all I said, everything else is total fabrication. Let this person come forward. They will not. Their statement goes unsigned. Once again, **where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

See Capogrosso Deposition. Page 464-468..

58

I testify, "But I never said the judge should put a gun to his head,. That's ridiculous" . See Capogrosso Deposition. Page 466.

I testify, "That's absolutely ridiculous, it's a total lie" See Capogrosso Deposition. Page 467.

59

**The motion should be denied because in response and opposition to paragraph 37**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 37, these allegations are not true, they are false they are inconsistent.

I affirm the truthfulness and veracity of he complaints lodged have never been fully and accurately investigated. For brevity, reference my responses to paragraphs 4 and 23. Herein. I affirm, based upon personal knowledge, that there was no altercation with defendant Smart. I told defendant Smart to "back up back up" refence Exhibit T, Work Violence Report, and Exhibit U, Work Violence Report, attached. I affirm I am seeking not to engage, I am not seeking an altercation.

Reference Exhibit V, Work Violence, Memorandum, that provides no pictorial proof of any altercation.

60

**The motion should be denied because in response and opposition to paragraph 38**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 38, these allegations are not true, they are false they are inconsistent

In support, reference my response to Exhibit 22 and 23, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41). Also reference refence Exhibit T, Work Violence Report, and Exhibit U, Work Violence Report, attached. There was no fight, there was no altercation. I am trying contact with defendant Smart. It provides, and I again affirm that I have personal knowledge that

Work place violence report – My response to the approach of Defendant Smart was "back up back up" indicating I am not looking for an altercation. My hand went up in self-defense. Defendant Smart approached me for no reason. A paranoid security guard who said, "You are looking at me." I said nothing to Defendant Smart that morning other than "back up, back up" I did not provoke this incident. This is what did happen. When I walked into the DMV that day and got on the line to get summonses, I did turn around because Defendant Smart was pacing back and forth. He was grumbling and mumbling and shaking his head side to side. At which point he approached me in a hostile and aggressive manner. I told him "back up, back up" and he refused. I put my hand up in self-defense. Please look at the "Additional Comments" on the Work Violence report submitted. Defendant Gelbstein gives me no opportunity to respond to the incident. He has me escorted out and then permanently banned from the DMV TVB. Defendant Gelbstein provides no indication that he did any formal investigation of this incident, yet he bans me for life from practicing at the DMV TVB. There is no indication that he reviewed security tapes, questioned me or

61

investigated the incident as he did not question me concerning the incident with Defendant Tahir concerning me placing a briefcase on a chair in an attorney's room. I was given the phone number by Defendant Calvo of Defendant Traschen, who indicated to me that I was permanently banned from the TVB. Once again for placing a briefcase on a chair in an attorney's room that Defendant Tahir claims as his own and for telling a security guard Smart "back up back up" after his approach upon my person in an angry hostile manner and accusing me of looking at him. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

My hand went up in defensive posture. Defendant Smart was in my personal space, and this was not for the first time. Reference my letter to Defendant Prickett Morgan Exhibit D where I sought relief from such behavior form Defendant Smart. As shown in my Complaint, dated May 8, 2018, Defendant Smart has pushed me from behind of for no apparent reason, gave me the sign of the cross and spear hand while standing on the clerk entry summons line (an I believe was removed from his duties at the Brooklyn South SMV TVB for approximately two weeks after such incident by Defendant Gelbstein), to get the summons for a day's hearings, got in my face several times in a threatening aggressive manner between June 20, 2012 and May 111, 2015 and when I asked what was the problem his response was "F--k you, you are the problem, and has admitted to taking money from one of my clients while at some point in time between December 11, 2011 to June 20, 2012 when I was required to take an anger management. He has admitted to taking $80 owed from a client on a $150 fee. He admits he took this

money because he indicates that I authorized him to do so. An outright lie. He indicated that he gave this money to me. A lie. Simple and plain. During the time when Defendant Smart took this money between December 11, 2011 and June 20, 2012 I had no communication with the DMV and specifically with a security guard who worked at the DMV. I reported this abuse and theft to Defendant Gelbstein, he performed an investigation and let Defendant Smart remain at the Brooklyn TVB. After which time a series of threats and assaults began by Defendant Smart against my person at the Brooklyn DMV TVB which culminated in the incident of May 11, 2015. I have no motive for having any type of altercation with a security guard. I was there to represent clients and make my living. . **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.** The defendant Smart approached me unproved on May 11, 2015 and created the incident which led to my removal.

I testify, I wrote the Attorney General because I was fearful that another incident with Smart would occur. See Capogrosso Deposition. Page 415, 416.

I testify, that I am not the aggressor, "then the incident happens. On May 11, this guy comes again. He comes, he gets in my face again. I put up my hand. I tell him back up back up. See Capogrosso Deposition. Page 416 14-17.

I testify, "I saw this guy Smart was not backing off. I saw it he didn't want to stop." See Capogrosso Deposition. Page 421.

Defendant Smar lies concerning the events of May 11, 2015. Reference Work Violence Report, Exhibit T and Exhibit U, which claims an open palm,

63

I cite Smart Deposition, attached as Exhibit D, Smart deposition, page 7, lines 22-23, Smart testifies" . I was shocked He just punched me in the chest." Smart lies. Tis is inconsistent testimony with respect to the statements given to the police by Smart. Smart files the police report which become the basis for the Work Violence Reports, Exhibits U and Exhibit V. Smart testifies, " my response was well go 61 on him, so I went to 60, iI got 61 on him and two police officer came with me." Smart deposition, Exhibit D, page 8.

Smart tells two different stories. He lies to this Court and such lies have formed the basis for my removal from the New York TVBs.

64

**The motion should be denied because in response and opposition to paragraph 39**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 39;, these allegations are not true, they are false, they are inconsistent

In support, reference my response to Exhibit 22 and 23, of Exhibit F (Plaintiff's Opposition to Defendants' Motion to Dismiss, Dkts 40 and 41). Also reference refence Exhibit T, Work Violence Report, and Exhibit U, Work Violence Report, attached. There was no fight, there was no altercation. I am trying contact with defendant Smart.

It provides, and I again affirm that I have personal knowledge that

Work place violence report – My response to the approach of Defendant Smart was "back up back up" indicating I am not looking for an altercation. My hand went up in self-defense. Defendant Smart approached me for no reason. A paranoid security guard who said, "You are looking at me."I said nothing to Defendant Smart that morning other than "back up, back up" I did not provoke this incident. This is what did happen. When I walked into the DMV that day and got on the line to get summonses, I did turn around because Defendant Smart was pacing back and forth. He was grumbling and mumbling and shaking his head side to side. At which point he approached me in a hostile and aggressive manner. I told him "back up, back up" and he refused. I put my hand up in self-defense. Please look at the "Additional Comments" on the Work Violence report submitted. Defendant Gelbstein gives me no opportunity to respond to the incident. He has me escorted out and then permanently banned from the DMV TVB. Defendant Gelbstein provides no indication that he did any formal investigation of this incident, yet he bans me for life from practicing at the DMV TVB. There is no indication that he reviewed security tapes, questioned me or

65

investigated the incident as he did not question me concerning the incident with Defendant Tahir concerning me placing a briefcase on a chair in an attorney's room. I was given the phone number by Defendant Calvo of Defendant Traschen, who indicated to me that I was permanently banned from the TVB. Once again for placing a briefcase on a chair in an attorney's room that Defendant Tahir claims as his own and for telling a security guard Smart "back up back up" after his approach upon my person in an angry hostile manner and accusing me of looking at him. **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

My hand went up in defensive posture. Defendant Smart was in my personal space, and this was not for the first time. Reference my letter to Defendant Prickett Morgan Exhibit D where I sought relief from such behavior form Defendant Smart. As shown in my Complaint, dated May 8, 2018, Defendant Smart has pushed me from behind of for no apparent reason, gave me the sign of the cross and spear hand while standing on the clerk entry summons line (an I believe was removed from his duties at the Brooklyn South SMV TVB for approximately two weeks after such incident by Defendant Gelbstein), to get the summons for a day's hearings, got in my face several times in a threatening aggressive manner between June 20, 2012 and May 111, 2015 and when I asked what was the problem his response was "F--k you, you are the problem, and has admitted to taking money from one of my clients while at some point in time between December 11, 2011 to June 20, 2012 when I was required to take an anger management. He has admitted to taking $80 owed from a client on a $150 fee. He admits he took this money because he indicates that I

authorized him to do so. An outright lie. He indicated that he gave this money to me. A lie. Simple and plain. During the time when Defendant Smart took this money between December 11, 2011 and June 20, 2012 I had no communication with the DMV and specifically with a security guard who worked at the DMV. I reported this abuse and theft to Defendant Gelbstein, he performed an investigation and let Defendant Smart remain at the Brooklyn TVB. After which time a series of threats and assaults began by Defendant Smart against my person at the Brooklyn DMV TVB which culminated in the incident of May 11, 2015. I have no motive for having any type of altercation with a security guard. I was there to represent clients and make my living. . **Where is the proof of "verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs" conditions set to pursuant to the June 20, 2012 re-entry letter to my Office. There is none, I see no proof.**

I testify, I wrote the Attorney General because I was fearful that another incident with Smart would occur. See Capogrosso Deposition. Page 415, 416.

I testify, that I am not the aggressor, "then the incident happens. On May 11, this guy comes again. He comes, he gets in my face again. I put up my hand. I tell him back up back up. See Capogrosso Deposition. Page 416 14-17.

I testify, "I saw this guy Smart was not backing off. I saw it he didn't want to stop." See Capogrosso Deposition. Page 421.

Defendant Smart lies concerning the events of May 11, 2015. Reference Work Violence Report, Exhibit T and Exhibit U, which claims an open palm,

I cite Smart Deposition, attached as Exhibit D, Smart deposition, page 7, lines 22-23, Smart testifies" . I was shocked He just punched me in the chest." Smart lies. Tis is

inconsistent testimony with respect to the statements given to the police by Smart. Smart files the police report which become the basis for the Work Violence Reports, Exhibits U and Exhibit V. Smart testifies, " my response was well go 61 on him, so I went to 60, I got 61 on him and two police officer came with me." Smart deposition, Exhibit D, page 8.

Smart tells two different stories. He lies to this Court and such lies have formed the basis for my removal from the New York TVBs.

68

**The motion should be denied because in response and opposition to paragraph 40**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 40;, these allegations are not true, they are false they are inconsistent.

I affirm I was told to call Ida Traschen. By Daniel Calvo, I was told to leave ethe building immediately. Exhibit T, Work Violence Report, Exhibit U, Work Violence Report, attached.

No pictorial evidence exists as to the alleged altercation. Reference Exhibit V, Memorandum.

Defendant Gelbstein was not present at the Brooklyn TVB on the morning of May 11, 2015 so as to observe the incident, question witnesses, observe videotape with myself an defendant Smart. See Exhibit A, Gelbstein deposition Page 4, page 5.

Defendant Gelbstein was called by defendant Calvo on the morning of May 11, 2015, See Exhibit A, Gelbstein deposition Page 9-10. So as not to be able to observe the incident, question witnesses, observe videotape with myself an defendant Smart

Defendant Gelbstein had me removed "I must have told her to have you removed w and to give you legal counsel's phone number" Gelbstein deposition Page 9 17-19.

Defendant Gelbstein testifies, when questioned

Q. So, you don't recall ever observing the videotape?

A. I don't recall.

Q. Did you keep possession of the videotape.

A. I personally did not.

Q. At any point in time did you view the videotape

69

A. I don't recall/

I affirm, without observing the incident, questioning witnesses, observing videotape tit is impossible to ascertain the nature of the incident between myself and defendant Smart.

I further support, Traschen deposition, Exhibit B, page 10,

Q. Did you view or revie ay of the videotape of the alleged incident on May 11, 2015?

A. No

Defendant Traschen did not view any videotape.

She was not present at the Brooklyn TVB on the morning of May 11, 2015 to observe the incident, question witnesses, observe videotape. I was told to call legal counsel. Reference Exhibits T and U. I s kth Court to take judicial notice legal counsel office, represented by defendant Trraschen, Is in Albany NY and not Brooklyn New York. I affirm, without observing the incident, questioning witnesses, observing videotape tit is impossible to ascertain the nature of the incident between myself and defendant Smart.

Further in support, I cite Exhibit C Calvo deposition.

Defendant Gelbstein was not at the Brooklyn TVB, Exhibit C Calvo deposition page 5..

Defendant Calvo cannot identify the witness who told her there was an incident between myself and defendant Smart, Exhibit C Calvo deposition ,page 5.

70

Defendant Calvo cannot identify that defendant Smart e witness who told her there was an incident between myself and defendant Smart, Exhibit C Calvo deposition page 5.

Defendant Calvo did not observe the incident between myself and defendant Smart on the morning of May 11, 2015.

Q. But you did not observe what happened, right?

A. No I did not.

Q. And you didn't look at any videotape, right?

A. Not that I recall.

Exhibit C Calvo deposition page 6.

Defendant Calvo testifies, "I didn't make any decision whether it was the truth or not, I just reported what I was told." Exhibit C Calvo deposition page 7.

I affirm, without observing the incident, questioning witnesses, observing videotape tit is impossible to ascertain the nature of the incident between myself and defendant Smart.

71

**The motion should be denied because in response and opposition to paragraph 41**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph 41;, these allegations are not true, they are false they are inconsistent,

I affirm defendant Calvo had everything to do with my removal. She was present at the Brooklyn TVB. On the morning of May 11, 2015.

Defendant Calvo cannot identify that defendant Smart as the witness who told her there was an incident between myself and defendant Smart, Exhibit C Calvo deposition page 5.

Defendant Calvo did not observe the incident between myself and defendant Smart on the morning of May 11, 2015.

Q. But you did not observe what happened, right?

A. No I did not.

Q. And you didn't look at any videotape, right?

A. Not that I recall.

Exhibit C Calvo deposition page 6.


Defendant Calvo testifies, "I didn't make any decision whether it was the truth or not, I just reported what I was told." Exhibit C Calvo deposition page 7.

I affirm, without observing the incident, questioning witnesses, observing videotape tit is impossible to ascertain the nature of the incident between myself and defendant Smart. She made a phone call to defendant Gelbstein.

72

Defendant Calvo testifies, "I just called Judge Gelbstein and let him know what happened and then that was it" Exhibit C Calvo deposition page 6.

I affirm, without observing the incident, questioning witnesses, observing videotape tit is impossible to ascertain the nature of the incident between myself and defendant Smart so as toto relay such information to defendant Gelbstein.

73

**The motion should be denied because in response and opposition to paragraph 42**

There is a triable issue as to material fact, it is not undisputed. I dispute the factual allegations presented in paragraph ten;, these allegations are not true, they are false they are inconsistent.

I affirm this is not true. In support I testify, "That's exactly what this man said to me, can't you go somewhere else? I saw what you wrote about me, I'm complicit, incapable and incompetent." Capogrosso deposition page 444.

Those words, "I saw what you wrote about me, I'm complicit, incapable and incompetent" are found in my letter of complaint, dated March 20, 2015, Exhibit O. Defendant Gelbstein was in possession of my letter of Complaint, Exhibit O. See Exhibit A, Gelbstein deposition, page 16.

74

I declare under penalty of perjury that the foregoing is true and correct.

June 29, 2021

Respectfully truthfully submitted

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, New York 10804
(914) 806-3692

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

RECEIVED
JUN 29 2021
PRO SE OFFICE

MARIO H. CAPOGROSSO

                Plaintiff

-against-

ALAN GELBSTEIN, et. al

                Defendants

CV18-2710

**AFFIRMATION OF SERVICE**

      I, Mario H. Capogrosso, declare under penalty of perjury that I have served a copy of the

attached Opposition to State defendants' and defendant Smart's Motions for Summary Judgment

upon:

Maura Douglas, Esq.
Davis Polk& Wardwell, LLP
450 Lexington Avenue
New York, NY 10017

James Thompson, Esq.
(representing Defendants
Gelbstein, Traschen, Vahdat, Palmieri, Flanagan, Calvo,
and Prickett-Morgan)
Assistant Attorney General
28 Liberty Street
New York, NY 10005

Sadiq Tahir
2994 Coney Island Avenue
Brooklyn, NY 11235

Pec Group of NY
935 S. Lake Blvd. #7
Mahopac, NY 10541

1

via U.S. Postal Service First Class Mail, this 29th day of June, 2021.


New Rochelle, NY
June 29, 2021

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, NY 10804
(914) 806-3692

2

**EXHIBIT A**

December 17, 2020

| Page 1 | Page 3 |
|---|---|

### Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MARIO H. CAPOGROSSO,

    PLAINTIFF,

  -against-  Case No.:
    18 CV 2710 (EK) (LB)

ALAN GELBSTEIN, in his individual capacity,
IDA TRASCHEN, in her individual capacity,
DANIELLE CALVO, in her capacity, SADIQ
TAHIR, in his individual capacity, PEC
GROUP OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER, in his
official capacity,
    DEFENDANTS.
----------------------------------------X
    DATE: December 17, 2020
    TIME: 10:16 A.M.

    DEPOSITION of the Defendant,
ALAN GELBSTEIN, taken by the Plaintiff,
pursuant to a Notice and to the Federal
Rules of Civil Procedure, held VIA ZOOM
VIDEOCONFERENCE, before Jamie Newman, a
Notary Public of the State of New York.

### Page 3

```
 1        ALAN GELBSTEIN
 2        (Whereupon, all 86 exhibits
 3    were previously marked by Counsel,
 4    Mr. Capogrosso.)
 5  A L A N   G E L B S T E I N, called as a
 6  witness, having been first duly affirmed by
 7  a Notary Public of the State of New York,
 8  was examined and testified as follows:
 9  EXAMINATION BY
10  MR. CAPOGROSSO:
11      Q.   Please state your name for the
12  record.
13      A.   Alan Gelbstein.
14      Q.   What is your address?
15      A.   1570 East 7th Street, Brooklyn,
16  New York 11230.
17      Q.   Defendant Gelbstein we're here
18  today because I need to take your
19  deposition concerning the action filed
20  against you, myself and several other
21  defendants.
22          THE COURT REPORTER:  Wait,
23      wait, you're breaking up Counsel.
24      Counsel, you're breaking up so I
25      can't hear you.
```

| Page 2 | Page 4 |
|---|---|

### Page 2

```
 1
 2  APPEARANCES:
 3
 4  THE LAW FIRM OF MARIO H. CAPOGROSSO
    PLAINTIFF PRO SE
 5  21 Sheldrake Place
    New Rochelle, New York 10804
    capogrosso@gmail.com
 6
 7
 8  OFFICE OF THE NEW YORK STATE
    ATTORNEY GENERAL
    Attorneys for the Defendants
 9  ALAN GELBSTEIN, in his individual
    capacity, IDA TRASCHEN, in her individual
10  capacity, DANIELLE CALVO, in her
    capacity, SADIQ TAHIR, in his individual
11  capacity, PEC GROUP OF NY, INC., DAVID
    SMART, and DMV COMMISSIONER MARK
12  SCHROEDER, in his official capacity
    28 Liberty Street, 17th Floor
13  New York, New York 10005
    BY: JAMES THOMPSON, ESQ.
14  james.thompson@ag.ny.gov
15
    DMV LEGAL BUREAU
16  Attorneys for the Defendant
    DMV COMMISSIONER MARK SCHROEDER, in his
17  official capacity
    6 Empire State Plaza, Room 522A
18  Albany, New York 11228
    BY: BARBARA MONTENA, ESQ.
19  File #: 18CV2710
    barbara.montena@dmv.nyc.gov
20
21
22          * * * *
23
24
25
```

### Page 4

```
 1        ALAN GELBSTEIN
 2        MR. CAPOGROSSO:  Can you hear
 3      me now?
 4          THE COURT REPORTER:  You are
 5      still breaking up, it's not the best
 6      connection.  I could hear you, but it
 7      goes in and out.
 8          MR. CAPOGROSSO:  Can you hear
 9      me now?
10          THE COURT REPORTER:  It goes in
11      and out.
12          MR. CAPOGROSSO:  Let me ask a
13      few more questions and see how we do.
14      Is that all right?
15          THE COURT REPORTER:  That's
16      fine.
17      Q.   These questions are all going
18  to be directed to Defendant, Gelbstein.
19      Were you in the Brooklyn
20  Traffic Violation Bureau on the morning of
21  May 11, 2015?
22      A.   At some point, yes.
23      Q.   At what point did you arrive at
24  the Brooklyn Traffic Violation Bureau on
25  that day?
```

DEITZ Court Reporting... A Lexitas Company
800-678-0166

Page 5

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2      A.   I arrived late, I don't recall
3  the time.
4      Q.   Did you arrive after my removal
5  on that day?
6      A.   Yes.
7      Q.   What are your normal business
8  hours at the Brooklyn TVB?
9      A.   Business hours I believe are
10 8:30 to 4:30.
11     Q.   So, why were you late that day?
12     A.   I had some personal things to
13 attend to.
14     Q.   Did you not want to be in the
15 building that day for any reason?
16     A.   No, sir.
17     Q.   Now, I was removed that day on
18 May 11, 2015 under your direction?
19     A.   I beg your pardon.
20     MR. THOMPSON:  Objection to the
21 form of the question.
22     Q.   I was removed that day from the
23 Brooklyn TVB by your direction, do you
24 recall doing that?
25     MR. THOMPSON:  Objection to the

Page 6

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  form of the question.  You can
3  answer.
4      Q.   Do you recall having me removed
5  from the Brooklyn TVB on May 11, 2015?
6      A.   I don't believe that is
7  correct.
8      Q.   You don't recall having me
9  removed?
10     A.   I did not have you removed.
11     Q.   You did not?
12     A.   No.
13     Q.   Let me take you back -- lets
14 goes to Exhibit 70.  Exhibit 70 that I have
15 marked, Plaintiff's Exhibit 70.
16     Are you in possession of
17 Plaintiff's Exhibit 70?
18     A.   I am not.
19     Q.   Is your attorney, Thompson, in
20 possession of it?
21     MR. THOMPSON:  My understanding
22 and Madame Court Reporter correct me
23 if I'm wrong, you're going to be
24 putting the exhibits up on the
25 screen; is that correct?

Page 7

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2      THE COURT REPORTER:  That's my
3  impression, but if I put it on the
4  screen you have to wait because I
5  can't have my hands off the machine,
6  but yeah, if that's what you want me
7  to do.
8      MR. CAPOGROSSO:  Well, I
9  already forwarded all the exhibits to
10 counsel, attorney Thompson.  So,
11 attorney Thompson, do you not have
12 this exhibit?
13     MR. THOMPSON:  I do have the
14 exhibit, but I think it would be best
15 if it were put on the screen so
16 everyone can see it.
17     MR. CAPOGROSSO:  Well, it's
18 actually Exhibit 69.  Exhibit 69.
19     THE COURT REPORTER:  Is that
20 what you would like me to put up?
21     MR. CAPOGROSSO:  No, actually,
22 it's Exhibit 68.  Exhibit 68, let's
23 start with that one.
24     THE COURT REPORTER:  Are these
25 already marked, Counsel?

Page 8

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2      MR. CAPOGROSSO:  It's marked as
3  Plaintiff's Exhibit 68.  Scroll down
4  to the first page.
5      (Whereupon, Plaintiff's Exhibit
6  68, previously marked, was
7  introduced.)
8      Q.   This is a work violence police
9  report, are you familiar with this document
10 Exhibit 68?
11     A.   Yes, I am.
12     Q.   Are you familiar with the
13 person at the top David Smart?
14     A.   Yes.
15     Q.   Now, I ask you take a look at
16 the second page.
17     Right there under additional
18 comments and I would like you to take note
19 of the third line of that page which reads
20 "I was told by Judge Gelbstein to go with
21 officers from the police room to tell Mr.
22 Capogrosso that he must leave the building
23 and give him a legal phone number for any
24 further details.  I did that and he left
25 the building."

2  (Pages 5 to 8)

**Page 9**

ALAN GELBSTEIN

1
2  Now, that is a statement made
3  by Danielle Calvo, would you agree to that?
4      A.  Yes.
5      Q.  And you're saying that you did
6  not order Danielle Calvo to have me
7  removed?
8      A.  I may have, I -- I may have,
9  yes.
10     Q.  So, which one is it, you had me
11  removed on that day?
12     A.  I didn't physically remove you,
13  I was, as I recall vaguely, I can't say
14  with absolute certainty, that they called
15  me telephonically and relayed what occurred
16  and at some point I imagine because it says
17  so here, I must have told her to have you
18  removed and to give you legal counsel's
19  phone number.
20     Q.  Well, who called you on that
21  morning?
22     A.  I believe it was Danielle.
23     Q.  Danielle.
24         And what time did she call you?
25     A.  I beg your pardon.

**Page 10**

ALAN GELBSTEIN

1
2      Q.  And what time did she call you?
3      A.  I don't recall the time.
4      Q.  Now, there was a videotape of
5  this alleged altercation between myself and
6  Defendant Smart, did you observe that
7  videotape?
8         MR. THOMPSON:  I'm going to
9  object to the form of the question.
10     Q.  Did you observe the video --
11  you still have to -- did you observe the
12  videotape of the alleged push?
13         MR. THOMPSON:  Note my
14  objection, you can answer.
15     A.  I don't recall whether I did or
16  not.
17     Q.  So, you don't recall ever
18  observing the videotape?
19     A.  I don't recall, no.
20     Q.  Did you keep possession of that
21  videotape?
22     A.  I personally did not.
23     Q.  At any point in time did you
24  view that videotape?
25     A.  I don't recall.

**Page 11**

ALAN GELBSTEIN

1
2         MR. THOMPSON:  Objection, asked
3  and answered.
4      Q.  Did you have me removed from
5  the Brooklyn TVB based on that videotape,
6  did you?
7      A.  I would have -- assuming that I
8  saw it, which I don't recall I did, it
9  would have been probably well after the
10  fact.
11     Q.  So, you're having me thrown out
12  based on an allegation made by Danielle
13  Calvo, is that it?
14         MR. THOMPSON:  Objection to the
15  form of the question.
16     Q.  Is that correct?
17     A.  I believe based on what she
18  told me, we took action.
19     Q.  And did you ask Danielle Calvo
20  if she viewed the videotape?
21     A.  Did I ask her if she viewed it?
22     Q.  Yes.
23     A.  I did not ask her.
24     Q.  Did you approach me on the
25  afternoon May 8th and said, "I saw what you

**Page 12**

ALAN GELBSTEIN

1
2  wrote about me," concerning a letter I
3  wrote to Attorney General Pricket-Morgan
4  that I called you complacent, incompetent
5  and incapable.
6         Do you recall approaching me on
7  the afternoon of May 8th?
8      A.  I do not.
9      Q.  And did you say to me on the
10  afternoon of May 8th, "can't you go
11  practice somewhere else"?
12     A.  I don't remember saying that to
13  you at all.
14     Q.  Were you predisposed to having
15  me removed from the Brooklyn TVB?
16     A.  I was not.
17     Q.  Were you conveniently not
18  present at the Brooklyn TVB on the morning
19  of May 11th; sir, did you not happen to
20  view the videotape or the incident between
21  myself and Defendant Smart?
22         MR. THOMPSON:  Objection.
23     A.  I'm not sure I understand the
24  question.
25     Q.  Were you purposefully not

3 (Pages 9 to 12)

Page 13

```
 1              ALAN GELBSTEIN
 2   available at the Brooklyn TVB on the
 3   morning of May 11, 2015?
 4        MR. THOMPSON: Objection.
 5        (Whereupon, there was
 6        cross-talk, so Counsel re-asked the
 7        question.)
 8        Q.  Were you purposefully not
 9   available on the morning of May 11, 2015?
10        A.  No.
11        Q.  Did you tell Defendant Smart to
12   approach me on the morning of May 11, 2015
13   and create an incident between myself and
14   him?
15        MR. THOMPSON: Objection,
16   compound. You can answer.
17        THE WITNESS: I didn't hear
18   you, Counsel?
19        Q.  Did you tell?
20        THE WITNESS: I heard you, I
21   didn't hear Mr. Thompson said
22   something.
23        MR. THOMPSON: Objection,
24   compound, but you can answer the
25   question.
```

Page 14

```
 1              ALAN GELBSTEIN
 2        A.  Repeat the question, please.
 3        Q.  Did you tell Defendant Smart to
 4   approach me on the morning of May 11, 2015?
 5        A.  No.
 6        Q.  Do you have authority over the
 7   actions of Defendant Smart at the Brooklyn
 8   TVB?
 9        MR. THOMPSON: Objection to the
10   form of question, you can answer.
11        A.  I do.
12        Q.  You do?
13        A.  Yes.
14        Q.  Who viewed the evidence on the
15   morning of May 11, 2015 of this alleged
16   push, other than Danielle Calvo?
17        MR. THOMPSON: I'm having a
18   hard time hearing what you're saying,
19   Mr. Capogrosso.
20        Q.  Who viewed the evidence of this
21   alleged push, who viewed the videotape on
22   the morning of May 11, 2015, other than
23   Danielle Calvo?
24        MR. THOMPSON: Objection,
25   assumes facts not in evidence. You
```

Page 15

```
 1              ALAN GELBSTEIN
 2   can answer.
 3        A.  I don't know who viewed it.
 4        Q.  Did Ida Traschen view the
 5   videotape before she had me removed --
 6   before she told me that I was not allowed
 7   to practice law in the Brooklyn TVB or any
 8   New York TVB?
 9        MR. THOMPSON: Objection to the
10   form.
11        A.  I don't know if Ida Traschen
12   observed it.
13        Q.  Did you have a conversation
14   with Ida Traschen on the morning of May 11,
15   2015?
16        A.  I do not recall with certainty
17   whether I did or not.
18        Q.  Ida Traschen did not call you
19   and question you concerning my removal on
20   the morning of May 11, 2015?
21        MR. THOMPSON: I'm going to
22   object on the basis of
23   attorney/client privilege and work
24   product, the contents of any
25   conversation between Judge Gelbstein
```

Page 16

```
 1              ALAN GELBSTEIN
 2   and Ida Traschen who is counsel of
 3   DMV that is a legal conversation.
 4        And so, Judge Gelbstein I'll
 5   instruct you not to answer any
 6   question what you said to Ida and
 7   what Ida said to you.
 8        Q.  You still have to answer the
 9   question, did you have a conversation with
10   Ida Traschen?
11        A.  I don't recall.
12        Q.  Were you in possession of a
13   letter that I wrote on March 20, 2015, to
14   Attorney General Pricket-Morgan?
15        A.  I believe I was furnished a
16   copy of that letter.
17        Q.  When were you furnished a copy
18   of that letter?
19        A.  I don't know the date, it was
20   part of an e-mail.
21        Q.  Was it prior to the event, the
22   alleged push on May 11, 2015?
23        A.  I couldn't tell you, I don't
24   know.
25        THE COURT REPORTER: What is
```

4 (Pages 13 to 16)

Page 17

1    ALAN GELBSTEIN
2    Cricket's last name?
3         MR. CAPOGROSSO:
4    Pricket-Morgan, M-O-R-G-A-N. Pricket
5    is also her last name.
6         MR. THOMPSON: It's hyphenated,
7    Pricket-Morgan.
8         Q.  You don't recall when you came
9    in possession of a letter of May 11, 2015?
10        A.  Not at this time. It's been
11   five years and I did not review it, I
12   couldn't tell you.
13        Q.  Was that letter forwarded to
14   you directly by Attorney General
15   Pricket-Morgan?
16        A.  No.
17        Q.  Did you address any of the
18   complaints that I made in that letter of
19   March 20, 2015?
20        A.  I don't remember with
21   specificity what the complaints were.
22        Q.  Well, I will get that letter
23   for you now, but did you take any action
24   with respect to that letter?
25        A.  Again, if I don't know -- if I

Page 18

1    ALAN GELBSTEIN
2    don't recall the contents, I couldn't tell
3    you what my reaction would be.
4         Q.  Fine, let me get you the
5    letter. Let's go to Exhibit 15.
6         (Whereupon, Plaintiff's Exhibit
7    15, previously marked, was
8    introduced.)
9         Q.  Defendant Gelbstein, do you
10   recall receiving this letter?
11        A.  Yes, I saw this letter.
12        Q.  When did you see it?
13        A.  I don't recall the first time I
14   saw it. As I said, it was attached to an
15   e-mail I received.
16        Q.  And it's dated March 20th; is
17   that correct?
18        A.  Yes.
19        Q.  2015?
20        A.  Yes.
21        Q.  The incident between myself and
22   Defendant Smart, this alleged push occurred
23   on May 11th, am I right?
24        A.  I don't know what you're
25   looking at. I beg your pardon.

Page 19

1    ALAN GELBSTEIN
2         MR. CAPOGROSSO: I'll withdraw
3    that question.
4         Q.  Now, I made certain complaints
5    against Defendant Smart which I brought to
6    your attention in this letter. I ask you
7    to look down that page.
8         MR. CAPOGROSSO: If you can
9    scroll down the page, please.
10        THE COURT REPORTER: Sure.
11        Q.  Now, Item Number 1, I'll draw
12   your attention to Item Number 1, I state
13   that your security guard David Sparks to me
14   repeated times "to go fuck myself."
15        Do you see that statement?
16        A.  I do.
17        Q.  You did.
18        Did you take any action in
19   response to that statement, did you rectify
20   it?
21        A.  Your statement does not seem to
22   be addressed to me for me to take action
23   upon David Sparks.
24        Q.  Did I ever make a complaint to
25   your office concerning that type of

Page 20

1    ALAN GELBSTEIN
2    behavior?
3         A.  You have come in to my office
4    to complain about security guard David
5    Sparks, yes.
6         Q.  And what did you do in response
7    to those complaints?
8         A.  On each -- well, I don't know
9    how many times you came in. I remember you
10   coming in, I called David Sparks in and I
11   told him that if he said anything
12   derogatory or had an altercation with you,
13   he has to keep far away from you. Whenever
14   he sees you, he should go in the opposite
15   direction.
16        Q.  But, he didn't obey that order,
17   did he?
18        A.  I don't know that to be
19   correct, sir.
20        Q.  Well, he did approach me on the
21   morning of May 11, 2015; right?
22        A.  I don't know that to be the
23   case, sir.
24        Q.  The police reports -- you
25   didn't -- I mean, after Defendant Smart

5  (Pages 17 to 20)

Page 21

1          ALAN GELBSTEIN
2    approached me on May 11, 2015, you didn't
3    view that videotape at any point
4    thereafter?
5          MR. THOMPSON: Objection to the
6    form of the question.
7          THE WITNESS: Answer?
8          MR. THOMPSON: You may answer.
9    Q.   After he approached me on
10   May 11th --
11         THE COURT REPORTER: Wait, the
12   connection is not good. This is not
13   a good connection.
14         MR. CAPOGROSSO: Give me one
15   minute, maybe if I move my laptop to
16   a different location maybe I can get
17   a better connection. Can you give me
18   one minute to do that?
19         THE COURT REPORTER: Sure.
20         MR. CAPOGROSSO: Can you hear
21   me better, Ma'am?
22         THE COURT REPORTER: Yes, I
23   can. The witness was trying to
24   answer, but the connection got all
25   messed up.

Page 22

1          ALAN GELBSTEIN
2    A.   The answer is, I don't recall
3    ever seeing the tape.
4    Q.   All right.
5          Directing your attention to the
6    that third question that I made complaints
7    to the office that your security guard
8    stared and glared at me and would get in my
9    face and say FU.
10         Do you recall that?
11   A.   I missed the question, say it
12   again, please.
13   Q.   I made a complaint that your
14   security guard Defendant Smart would get in
15   my face and stare and glare at me.
16         Do you recall me making a
17   complaint to your office concerning that?
18   A.   I just read Number 3 and what
19   is your question with regard to Number 3?
20   Q.   Do you recall me making that
21   complaint to your office?
22   A.   No, I do not.
23   Q.   At one point in time did you
24   laugh and giggle at me when I was telling
25   you about these complaints concerning

Page 23

1          ALAN GELBSTEIN
2    Defendant Smart and telling me "a spade is
3    a spade"?
4    A.   Are you reading something else
5    in the letter now?
6    Q.   Yes, the second page down.
7    A.   I see the paragraph.
8    Q.   Do you recall laughing and
9    giggling at me and telling me "a spade is a
10   spade" when I complained about Defendant
11   Smart's action?
12   A.   I didn't hear you. Can you
13   repeat the question?
14   Q.   Do you recall laughing and
15   giggling at me and telling me "a spade is a
16   spade" when I complained of Defendant's
17   Smart's actions?
18   A.   No.
19   Q.   Many Affidavits were written by
20   your clerks, by attorneys, by a judge
21   against me and they were all presented to
22   me for the first time in Defendant's Motion
23   to Dismiss.
24         Are you familiar with those
25   complaints and Affidavits of misconduct?

Page 24

1          ALAN GELBSTEIN
2          MR. THOMPSON: Objection to
3    form, you can answer.
4    A.   I don't know which ones
5    specifically you are referring to, but yes,
6    I did receive complaints.
7    Q.   All right, fine.
8          Did you ever give me an
9    opportunity to response to any of those
10   complaints?
11   A.   I'm not sure if -- I need
12   clarification on your question. If the
13   question is if there were specificity in
14   the particular complaint, is it your
15   question did I ask you --
16   Q.   I'll rephrase the question.
17         Did you ever approach me with a
18   complaint and ask me to respond to it?
19   A.   Yes.
20   Q.   You presented me with a written
21   complaint and asked me to respond?
22   A.   No. I never gave you a written
23   complaint to respond to.
24   Q.   You did not?
25   A.   No.

6  (Pages 21 to 24)

ALAN GELBSTEIN

2  Q.  So, I had no opportunity to
3  respond to any of these complaints that
4  either your clerks were making or attorneys
5  were making or even a judge made, you gave
6  me no opportunity to respond before having
7  me removed; is that fair?
8       MR. THOMPSON:  Objection to
9  form.
10  A.  No, it's not fair.
11  Q.  At what point in time did you
12  give me an opportunity to respond?
13  A.  As complaints came in over a
14  period of time, whenever there was a
15  complaint lodged and it was more serious,
16  there were complaints I thought pay, but it
17  was a more serious, I would call you in and
18  I would tell you other complaints and I
19  would tell you to cease and desist and you
20  would promise that you would.
21       And that was the end of the
22  discussion with any particular complaint.
23  Q.  Well, tell me which complaint
24  you did that because I don't recall it,
25  tell me, tell me the exact complaint?

ALAN GELBSTEIN

2  Brooklyn TVB?
3  A.  Could you repeat the question?
4  Q.  Did you use these complaints to
5  have me removed from the Brooklyn TVB?
6       MR. THOMPSON:  I object to the
7  form, you can answer.
8  A.  From the cumulative complaints,
9  no one complaint in and of itself was the
10  deciding factor.  It was a cumulation of
11  complaints over a period of time.
12  Q.  And you just accepted all those
13  complaints as true without asking for my
14  affidavit in response; is that a fair
15  statement?
16  A.  I did not ask for an affidavit
17  in response.
18  Q.  Well, let me draw your
19  attention to a couple of those complaints
20  that you said you investigated the
21  truthfulness and voracity of if I may for
22  which you had me removed from the Brooklyn
23  TVB.
24       I'll ask you to take a look at
25  specifically one that was made by your

ALAN GELBSTEIN

2  A.  At this time I don't recall
3  specificity, but as I said before, whenever
4  I felt a complaint and not a minor
5  complaint, a serious complaint required my
6  intervention, I called you in and we had a
7  discussion in my office.
8  Q.  But, you don't recall the date
9  that you called me in or the complaint that
10  you asked me to address?
11  A.  Right.
12  Q.  And you never asked me for a
13  written reply to any complaint; is that
14  fair?
15  A.  That's fair.
16  Q.  Did you ever investigate the
17  voracity or truthfulness of any of these
18  complaints?
19  A.  I did.
20  Q.  Or did you just accept them as
21  truthful?
22  A.  I investigated to the best of
23  my recollection every serious complaint.
24  Q.  And you used these complaints
25  of misconduct to have me removed from the

ALAN GELBSTEIN

2  chief clerk, your chief clerk which is
3  Exhibit -- let's see -- 84?  84.  Can we go
4  to Exhibit 85, I'm sorry, 85.
5       (Whereupon, Plaintiff's Exhibit
6       85, previously marked, was
7       introduced.)
8  Q.  Are you familiar with Melanie
9  Levine?
10  A.  Yes.
11  Q.  Who is Melanie, M-E-L-A-N-I-E,
12  Levine?
13  A.  She, at the time, was a
14  supervisor in the clerical office.
15  Q.  So, she was a supervisor of
16  your clerks, am I right in saying that?
17  A.  She was a supervisor of some of
18  the clerks.  She was not the head clerk,
19  she was a principal clerk.
20       MR. CAPOGROSSO:  Can you please
21       scroll down, Ma'am, to the next page.
22       (Whereupon, the Court Reporter
23       complied.)
24  Q.  I'll direct you to the first
25  paragraph on the next page, right there,

December 17, 2020

---

Page 29

1           ALAN GELBSTEIN
2 thank you. Now, I'll direct you to first
3 paragraph where your clerk of supervisors
4 states, "attorney Capogrosso represented
5 Mr. Perez at trial for three violations on
6 January 21, 2015."
7       MR. THOMPSON: I think he's
8     referring to the previous page,
9     Page 3.
10     THE COURT REPORTER: That's
11     what I thought, but his connection is
12     slower. This, this is Page 3, so
13     give it a second to catch up. You
14     want Page 4, the handwritten portion.
15     MR. CAPOGROSSO: The one before
16     that, Ma'am. Further up Ma'am --
17     right there.
18     Q. Did you investigate that
19 complaint, Defendant Gelbstein?
20     A. I don't recall if I
21 specifically investigated this complaint.
22     Q. So. You don't know the
23 voracity or truthfulness of that complaint;
24 is that a fair statement?
25     A. I don't recall at this time.

---

Page 30

1           ALAN GELBSTEIN
2     Q. But, you used this as one of
3 the complaints of misconduct to have me
4 removed; is that right?
5     A. This is one of many, yes.
6     Q. And you know I never
7 represented Mr. Perez on January 11, 2015,
8 you know that; right?
9     A. I do not.
10     Q. Well, she's making a false
11 statement. You could have investigated it,
12 but you didn't investigate it now, did you?
13     MR. THOMPSON: Objection to the
14     form of the question. You can
15     answer.
16     A. I don't recall the particular
17 complaint now with specificity and what
18 actions I took with regard to this. I
19 don't recall whether I spoke to Paul Perez
20 or not. I may have, I don't recall.
21     Q. Did you ever talk to me about
22 this complaint?
23     A. Again, I don't remember with
24 specificity with this particular complaint
25 whether I spoke to you on it or not.

---

Page 31

1           ALAN GELBSTEIN
2     Q. Well, let me tell you what
3 happened with this complaint, Mr. Perez did
4 not hire me to represent him on three
5 violations, he did not. He hired me on
6 appeal the day after he lost and was
7 suspended in a courthouse by one of your
8 judges on these violations, that's what
9 happened.
10     And he hired me on the appeal
11 and I took the appeal and then he came back
12 the next day and what he told me was that
13 his license got suspended and revoked. And
14 he said to me I want my --
15     MR. THOMPSON: Note my
16     objection.
17     Q. -- Mr. Perez did not hire me on
18 those violations and you never investigated
19 that now, did you Mr. Gelbstein?
20     MR. THOMPSON: Note my
21     objection, you can answer.
22     A. I don't recall with specificity
23 what I did at the time. I'm aware of the
24 complaint, I don't remember if I spoke to
25 him or not. I don't recall.

---

Page 32

1           ALAN GELBSTEIN
2     Q. But, you never took my
3 affidavit in response; right?
4     MR. THOMPSON: Objection, asked
5     and answered, you can respond.
6     Q. Now, you know what happened
7 that day Mr. Perez approached me, after I
8 gave him his money back and he told me he
9 was going to cut me with a knife and the
10 slash the tires of my car, you understand
11 that, that's what he said to me?
12     MR. THOMPSON: Objection,
13     assumes fact not in evidence.
14     A. I wasn't there when you had the
15 conversation, I don't know what he said to
16 nor do I know what you said to him.
17     Q. But, you never took my
18 statement in reference to that complaint
19 now did you?
20     A. Again, I don't recall the
21 specific conversation we had with regard to
22 it, if we didn't have a conversation.
23     Q. You never had a conversation
24 with me concerning this complaint because
25 there's no affidavit attached to this

---

8 (Pages 29 to 32)

Page 33

1    ALAN GELBSTEIN
2 complaint concerning my statement, now is
3 there?
4        MR. THOMPSON: Objection,
5 argumentative. You can answer.
6    A.  I don't know whether or not
7 there was something attached now to the
8 filings of the legal papers.
9    Q.  Did you take an affidavit in
10 response to that complaint?
11    A.  Did I take an affidavit from
12 you?
13    Q.  From me.
14    A.  I don't believe you offered me
15 an affidavit.
16    Q.  Did you ask me for one?
17    A.  I don't believe I did.
18    Q.  Now, on that day in question
19 when Mr. Perez told me was going to cut me
20 with a knife and then slash the tires of my
21 car, your Defendant Smart was never there,
22 your security guard was never there to take
23 any action.
24       Is that a fair statement?
25       MR. THOMPSON: Objection to

Page 34

1    ALAN GELBSTEIN
2 form.
3    A.  I wouldn't know.
4    Q.  Do you know if the police came
5 to investigate that complaint?
6    A.  I do not know.
7    Q.  And yet, at one point in time,
8 you told me and I believe you told all the
9 other attorneys, that if you have an unruly
10 client you're supposed to speak to them
11 outside the courthouse.
12       Did you not tell us all that?
13    A.  Let me see if I understand, are
14 you saying that -- is the question, did I
15 speak to all the attorneys that if you have
16 an unruly client you should to talk to them
17 outside?
18    Q.  Yes, outside the courtroom, did
19 you not tell me that at one point in time?
20    A.  It sounds like something I
21 might have said.
22    Q.  All right, fine.
23       Let me draw your attention to
24 another exhibit which I have to ask,
25 Exhibit 81. Can we go to Exhibit 81?

Page 35

1    ALAN GELBSTEIN
2       (Whereupon, Plaintiff's Exhibit
3    81, previously marked, was
4    introduced.)
5    Q.  I'm going to direct you to that
6 first paragraph. There's a lot of things
7 that I could talk to you about, but time is
8 short.
9       I'll direct you to that first
10 paragraph and it says in part -- and this
11 is a letter written by Bushra Vahdat who
12 happens to be whom, do you know who Bushra
13 Vahdat is?
14    A.  I do.
15    Q.  Who is it Bushra Vahdat?
16    A.  She was my immediate
17 supervisor.
18    Q.  Now, she made a complaint --
19 she made an affidavit concerning my
20 behavior.
21       Did you have an opportunity to
22 look at this complaint?
23    A.  I'm trying to read it now. Is
24 there anything specific, it seems to be --
25 should I zoom in on a particular paragraph?

Page 36

1    ALAN GELBSTEIN
2    Q.  I'll address your attention to
3 that first paragraph that begins "when I
4 was first appointed to the position of
5 supervising ALJ."
6       Are you there?
7    A.  Yes.
8    Q.  Fine.
9       She indicates on the fourth
10 line down, she indicates "I verbally abused
11 the clerks on many occasions and followed a
12 clerk with his car and stopped the car from
13 moving. He then asked the clerk to get off
14 the car and fight it out with him."
15       Now, did you investigate the
16 truth and voracity of that statement?
17    A.  I don't recall.
18    Q.  You don't?
19    A.  No.
20    Q.  Do you know who that clerk
21 might have been that she's talking about?
22    A.  I do not.
23    Q.  Could it have been a George Han
24 that was a clerk at your court?
25    A.  Could have been.

9  (Pages 33 to 36)

Page 37

1    ALAN GELBSTEIN
2    Q.  Okay, fine.  Can we go to
3  Exhibit 82?
4        (Whereupon, Plaintiff's Exhibit
5      82, previously marked, was
6      introduced.)
7    Q.  Do you recognize George Han's
8  name there?
9    A.  I see the name George Han.
10   Q.  It indicates here a little bit
11 further down if I could.  It indicates on
12 that second paragraph down I'm going to
13 read it to you.  "George -- C was waiting at
14 the entrance at the parking lot in his car.
15 He was in his car, it says.  George stopped
16 behind him."
17   A.  I'm not following -- from --
18 the paragraph starting "Wednesday he
19 paragraph C approached G, is that where you
20 are reading?
21   Q.  I'm talking about the last
22 paragraph on that page, "he approached G
23 again and said" -- do you see that?
24   A.  I see that.
25   Q.  Fine.

Page 38

1    ALAN GELBSTEIN
2      And George says, "that
3  Capogrosso was at the entrance of the
4  parking lot in his car."
5      Do you see that written?
6    A.  "Mr. C was waiting at the
7  entrance of the parking lot in his car," I
8  see that, yes.
9    Q.  Fine.
10     "In his car and George stopped
11 him -- George stopped behind him."
12     Do you see that statement?
13   A.  I do.
14   Q.  And then both got out of the
15 car.
16     Do you see that statement?
17   A.  I do.
18   Q.  Let me ask you a question, as
19 an attorney, after a full day of work in
20 your courthouse and you know how busy it
21 gets down there, am I allowed as an
22 attorney to sit in my car and make phone
23 calls?
24   A.  I imagine anybody could sit in
25 a car and make phone calls.

Page 39

1    ALAN GELBSTEIN
2    Q.  Now, Bushra Vahdat says I got
3  in a car and I followed this clerk, right,
4  in the last exhibit that we just looked at;
5  is that correct?
6    A.  What are you reading?
7    Q.  The last exhibit "that he
8  followed clerk with his car and stopped the
9  clerk's car from moving."
10     Do you remember that, the last
11 exhibit, Exhibit 81?
12   A.  Is it in the same paragraph
13 that I just read?
14   Q.  No, it's the previous
15 exhibit, Exhibit 81.
16   A.  I honestly don't recall.  I
17 don't know, I'll take your word for it,
18 it's there, I don't know.
19   Q.  Fine.  That's what Bushra
20 Vahdat said concerning that incident.
21     That Mr. Capogrosso followed
22 him in his car and stopped the clerk's car
23 from moving.
24     Is Bushra Vahdat lying there?
25   A.  I have no way of knowing.

Page 40

1    ALAN GELBSTEIN
2    Q.  Was that a true and accurate
3  affidavit as to what happened?
4    A.  I didn't write the affidavit, I
5  don't know -- I wasn't there when, you
6  know, when the incident occurred.
7    Q.  Did you investigate the
8  voracity and truthfulness of that
9  affidavit?
10   A.  I don't question my supervisor.
11 She did independent work, she did
12 independent work.
13   Q.  So, you just accepted that as
14 truthful, that complaint is just accepted
15 by you as truthful; is that correct?
16     MR. THOMPSON:  Objection to the
17     form of the connection.  You can
18     answer.
19   A.  I accepted it for what it was
20 worth.
21   Q.  But, you didn't know whether it
22 was truthful or not, and you gave me no
23 opportunity to respond; is that true?
24   A.  I didn't ask you anything that
25 I recall.  I may have, I don't recall

10  (Pages 37 to 40)

DEITZ Court Reporting... A Lexitas Company
800-678-0166

A1550

Page 41

1    ALAN GELBSTEIN
2  whether I asked you anything about it or
3  not.
4      Q.   And you received nothing in
5  terms of an affidavit from me to your
6  office in response to that, now did you?
7      A.   I don't believe I received an
8  affidavit from you in response.
9      Q.   You have all the affidavits
10  that were filed in your office, do you not?
11     A.   I don't know if I received all
12  of the affidavits, I don't know.
13     Q.   Let's go to one more if I
14  could.  I have to question you on this one,
15  I really do.  I have to question you on
16  this one.  Give me one moment.  Exhibit 73.
17         (Whereupon, Plaintiff's Exhibit
18         73, previously marked, was
19         introduced.)
20     Q.   Are you familiar with that
21  document, Defendant Gelbstein?
22     A.   I see it's an Affirmation that
23  I made.
24     Q.   With respect to my conduct at
25  the Brooklyn TVB; am I right?

Page 42

1    ALAN GELBSTEIN
2      A.   I assume -- not reading it, but
3  I assume if you tell me that's what it is,
4  that's what it is.
5      Q.   It's your signature at the
6  bottom of that page, is it not?
7      A.   I don't see the signature.
8      Q.   Can we please go down to the
9  end of that page, Ma'am?
10         (Whereupon, the Court Reporter
11         scrolled to the bottom of the page.)
12     Q.   Do you see your signature at
13  the bottom of that page?
14     A.   Yes, that's my signature.
15     Q.   So, that is your Affirmation?
16     A.   Yes.
17     Q.   I'm going to direct your
18  attention to Paragraph 2.
19         "On numerous occasions I
20  personally warned petitioner of threatening
21  behavior."
22         Can you tell me the dates that
23  you warned me?
24     A.   No.
25     Q.   Did you put anything in writing

Page 43

1    ALAN GELBSTEIN
2  to my office that I could respond to?
3      A.   Nothing in writing.
4      Q.   Did you ever spell out what the
5  threatening behavior was so I could respond
6  to it?
7      A.   Whenever I called you in, it
8  was with a specific occasion and we spoke
9  about that particular occasion.
10     Q.   Can you give me one occasion
11  that you spoke to me about, just one?
12     A.   I don't recall at this time any
13  specific one.
14     Q.   But, you had me removed based
15  on these alleged threatening behavior; am I
16  right?
17     A.   Yes.
18     Q.   So, you can't recall just one
19  instance?
20     A.   No, not at this time.  There
21  were so many, I don't know, I just can't
22  tell you with specificity.
23         MR. CAPOGROSSO:  I'll question
24         you more at trial, it's okay.  I
25         don't have enough time right now,

Page 44

1    ALAN GELBSTEIN
2  I'll question you at trial.
3         MR. THOMPSON:  Objection.
4         MR. CAPOGROSSO:  That's fine,
5  I'll withdraw it.
6      Q.   I direct your attention to Item
7  Number 6, Paragraph Number 6 because I have
8  to question you on this one.
9         You indicate in Paragraph 6,
10  "Petitioner often uses anti-Semitic
11  languages when referring or speaking to
12  Jewish attorneys."
13         Can you tell me when I did
14  this?
15     A.   I don't recall the dates.
16     Q.   You don't?
17     A.   No.
18     Q.   But, you're using this an
19  allegation to get me removed; right?
20     A.   As one of the allegations.
21     Q.   All right.
22         This one you got to remember
23  Defendant Gelbstein, you also state,
24  "Petitioner called me a beanie wearing
25  kyke."

11  (Pages 41 to 44)

Page 45

ALAN GELBSTEIN

When did I say that?

A. I don't remember the date, but I will tell you exactly where you told me because I was a little shocked. We were outside my office to the right about, I would say, maybe 12 feet from my door, about midway in the hallway between the clerical office door building and let's say my office.

Just midway about 12 feet towards the beach. I was facing my and you were facing me and it was part of a conversation. I don't remember the rest of the conversation, but that particular part, you know, kind of seared into my brain.

Q. Seared into you and you didn't write it down, did you?

A. No, sir.

Q. You didn't do -- you didn't formalize this in any written document or any written complaint?

A. Not that I recall.

Q. And why didn't you?

A. I didn't think it was

Page 46

ALAN GELBSTEIN

necessary.

Q. But, you used it to get me removed from the Brooklyn TVB, are you not?

A. Not for that particular statement. It was just one of many, what I would call, offenses. It wasn't because of that, that I had you removed.

Q. You don't -- and this -- what precipitated that conversation, do you remember that?

A. No.

Q. Do you have any complaints from a motorist or a client that I ever used an anti-Semitic or racist remark?

A. Not from a motorist.

Q. Or from a client; is that right?

A. From a client I don't believe so.

Q. But, I happen to call a Judge a beanie wearing kyke, is that your testimony?

A. You called me.

Q. I don't believe you. That's an

Page 47

ALAN GELBSTEIN

absolute lie.

MR. THOMPSON: Objection.

Q. And you don't recall the circumstances that precipitated that or initiated that?

A. No, I don't.

Q. Now, you wrote this affidavit on May 3, 2012; is that right?

A. If that's what it says, that's when I wrote it.

Q. And that's when I was removed from the Brooklyn TVB and that was when I was removed from the Brooklyn TVB in December of 2011.

It was after that date; right?

A. I don't recall when you were removed. I don't know the dates.

Q. Well, I had an incident with a Yakov Brody on December 22, 2011, do you remember that?

A. I remember -- I know of the incident.

Q. Did you ever ask for my affidavit with respect to that incident?

Page 48

ALAN GELBSTEIN

A. I did not ask you for an affidavit.

Q. So, you just assumed what Yakov Brody was saying was the truth; right?

MR. THOMPSON: Objection to the form. You can answer.

A. Again, I don't recall with specificity, but I'm sure that I spoke to all the parties involved.

Q. Did you think my affidavit because you took Yakov Brody's affidavit and every other attorney in the Brooklyn TVB's affidavit, but you didn't take mine. So, why wouldn't you take mine?

MR. THOMPSON: Objection.

A. Had you proffered one, I would have taken one.

Q. You never gave me the opportunity to and never asked for one, but you asked every attorney to give you one?

A. Excuse me, I didn't ask anybody for an affidavit. They came to me and they presented me with one.

Q. On December -- after the

12 (Pages 45 to 48)

|  |  |
|---|---|
| **Page 49** | **Page 51** |

**Page 49**

ALAN GELBSTEIN

1      ALAN GELBSTEIN
2 incident with Yakov Brody you told me I was
3 not welcome in the Brooklyn TVB any longer;
4 is that correct?
5     A.  I don't recall saying that.
6     Q.  How was I going to get you an
7 affidavit?
8     A.  I leave you to your devices how
9 you get affidavits to anybody.
10     Q.  You gave my no opportunity to
11 respond, is that true, by way of affidavit?
12     A.  No, that's not true.
13     Q.  What opportunity did you give
14 me to respond?
15     A.  Had you presented me with an
16 affidavit, I would have taken it.
17     Q.  Did you give me a hearing on
18 any of these allegations against me, did
19 you give me a hearing?
20     A.  I did not give you a hearing.
21     Q.  Did you give me the opportunity
22 to present testimony?
23     A.  I didn't. There was no
24 hearing, there was no testimony.
25     Q.  Did you give me the opportunity

**Page 50**

ALAN GELBSTEIN

1      ALAN GELBSTEIN
2 to present evidence in response?
3     A.  You could have presented
4 evidence like every other attorney who
5 presented evidence.
6     Q.  Did you show me the affidavit
7 that was being used against me, did you
8 ever show me Yakov Brody's affidavit?
9     A.  I did not.
10     Q.  So, how could I have responded
11 to what he said against me; you are a judge
12 am I right?
13     A.  I'm not a judge with regard to
14 interactions between the various attorneys
15 in the office. I'm a judge with regard to
16 motorists, police officers and specific
17 charges against them.
18     Q.  But, you had me removed on all
19 those affidavits and all those allegations
20 against my conduct without ever giving me
21 an opportunity to present an affidavit in
22 response.
23     Is that fair?
24     MR. THOMPSON: Objection to
25 form.

**Page 51**

ALAN GELBSTEIN

1      ALAN GELBSTEIN
2     A.  No, that's not fair.
3     Q.  When did you receive an
4 affidavit in response?
5     A.  I never received one from you.
6     Q.  So, you're saying I'm allowing
7 you to remove me from the Brooklyn TVB and
8 I'm not going to file an affidavit in
9 response, is that what you're telling me?
10     MR. THOMPSON: Objection,
11   assumes --
12     A.  I can't tell you what you're
13 going to do.
14     Q.  Now, let me get to some of the
15 more -- were you personally involved,
16 Defendant Gelbstein, in my removal from the
17 DMV, Brooklyn TVB and from the practice of
18 law in all New York TVBs on the morning of
19 May 11, 2015?
20     MR. THOMPSON: Objection.
21     A.  I don't know what you mean by
22 personally involved?
23     Q.  Did you have Defendant Calvo
24 remove me?
25     A.  I don't remember with

**Page 52**

ALAN GELBSTEIN

1      ALAN GELBSTEIN
2 specificity, but certainly you were
3 removed.
4     Q.  And that was by your direction,
5 was it not?
6     MR. THOMPSON: Objection, asked
7   and answered. You can respond.
8     THE WITNESS: I beg your
9   pardon, Counselor?
10     MR. THOMPSON: You can answer.
11     A.  Yeah, I don't know if it was my
12 ultimate direction or I was taking counsel
13 from others above me who gave me direction
14 to do it.
15     Q.  Are you throwing Danielle under
16 the bus, is that what you're doing
17 Defendant Gelbstein?
18     MR. THOMPSON: Objection to the
19   form of the question.
20     Q.  Are you letting Defendant Calvo
21 take the blame for this incident, is that
22 what you're doing?
23     MR. THOMPSON: Same objection.
24   You can answer.
25     A.  Absolutely not.

13  (Pages 49 to 52)

## Page 53

ALAN GELBSTEIN

1
2　Q.　Because the police report that
3　I showed you earlier indicated that Judge
4　Gelbstein, it indicated, that I was told by
5　Judge Gelbstein to go to the police room
6　and have the police officers remove me from
7　the Brooklyn TVB, right, you saw that --
8　A.　I did.
9　Q.　-- police report.
10　So, you're stating now that you
11　are not personally involved in my removal,
12　is that what you are stating?
13　A.　No, that's not what I'm
14　stating.
15　Q.　I'll ask it again.
16　Were you personally involved in
17　my removal from the Brooklyn TVB?
18　MR. THOMPSON: Objection, asked
19　and answered.  You can answer.
20　A.　I certainly had involvement.
21　Q.　Now, did you have me removed
22　because you read the letter of March 20th
23　of 2015 which I complained about your
24　actions and your conduct at the Brooklyn
25　TVB?

## Page 54

ALAN GELBSTEIN

1
2　A.　Which letter is that?
3　Q.　The March 20, 2015 letter that
4　I wrote to Pricket-Morgan?
5　A.　No, it had nothing to do with
6　that letter.
7　Q.　Were you offended by that
8　letter that I called you -- that I told you
9　that you were incapable, incompetent and
10　complicit?
11　A.　Not at all.  No, I was not
12　offended.
13　Q.　You were not offended?
14　A.　No, sir.
15　Q.　You were not mad at that?
16　A.　No, sir.
17　Q.　You had no animus against me
18　because of that letter?
19　A.　None whatsoever.
20　Q.　You're a better man than I am.
21　Were you negligent in the
22　supervision of Defendant Smart?
23　MR. THOMPSON: Objection, calls
24　for a legal conclusion.  You can
25　answer.

## Page 55

ALAN GELBSTEIN

1
2　A.　No.
3　Q.　Did you have the ability to
4　control the actions of Defendant Smart?
5　A.　In theory I could control him
6　totally, but I did not direct his
7　day-to-day activity.
8　Q.　Who directed his day-to-day
9　activities?
10　A.　The clerical supervisor.
11　Q.　Who is she?
12　A.　Either the two principal clerks
13　at the time, or the supervising clerk.
14　Q.　What's their names?
15　A.　Danielle was the chief clerk
16　and the other one was Levine at the time.
17　Q.　Now, I made complaints against
18　Defendant Smart, written complaints to your
19　office, did you pass those complaints onto
20　the clerical supervisors?
21　A.　No, I personally called him
22　into my office when you complained about
23　him.
24　Q.　I made a complaint, I made
25　several complaints.  I made one complaint

## Page 56

ALAN GELBSTEIN

1
2　that Defendant Smart stole $80 on a $100
3　fee.
4　Do you recall me making that
5　complaint to you?
6　A.　Not that specific complaint.
7　Q.　In June of 2012 I made a
8　complaint that Defendant Smart stole a fee,
9　you don't recall me making that complaint
10　to you?
11　A.　You might have.
12　Q.　Was an investigation made
13　concerning the theft by your office?
14　A.　I don't recall at this time.
15　Q.　So, an investigation might have
16　been made, is that what you're saying?
17　A.　Might have been.
18　Q.　Do you recall the results of
19　that investigation?
20　A.　No, I don't remember the
21　results of any investigation.
22　Q.　So, it's fair to say that --
23　I'm saying that Defendant Smart stole $80
24　on a $150 and you allowed Defendant Smart
25　to remain in the Brooklyn TVB after my

14　(Pages 53 to 56)

Page 57

ALAN GELBSTEIN

1　ALAN GELBSTEIN
2　complaint concerning the theft; is that
3　correct?
4　　　MR. THOMPSON: Objection to
5　form, you can answer.
6　　A. Well, again, I don't recall the
7　complaint with particularity nor my
8　investigation of such an event nor my
9　conclusions based on my investigation had I
10　indeed investigated.
11　　Q. So, you swept my complaint
12　under the rug, is that a fair statement?
13　　　MR. THOMPSON: Objection to
14　form.
15　　A. No, it's not a fair statement.
16　　Q. What did you do in reference to
17　my complaint that he stole $80?
18　　A. I don't recall the specific
19　complaint. I don't recall the result of an
20　investigation and I don't recall any
21　conclusion I may have reached at the time.
22　You're talking about something that
23　occurred in 2012, when we're now in the
24　cusp of 2021.
25　　Q. But, after I made that

Page 58

ALAN GELBSTEIN

1　ALAN GELBSTEIN
2　complaint it's fair to say that Defendant
3　Smart is still working at the Brooklyn TVB?
4　　A. Yes.
5　　Q. And after that complaint, that
6　is when Defendant Smart harassment began,
7　is that a fair statement?
8　　A. No.
9　　　MR. THOMPSON: Objection to
10　form.
11　　Q. Well, were there complaints of
12　harassments and threats and threats of
13　physical contact on my person, after I made
14　that complaint to your office?
15　　A. I don't recall.
16　　Q. Were there complaints made to
17　your office after that report of theft to
18　you?
19　　A. I don't remember the sequences
20　of events, whether it was before or after.
21　I don't recall.
22　　Q. I'll bring them to your
23　attention.
24　　　Do you recall in December of
25　2014 that I made a complaint to you that

Page 59

ALAN GELBSTEIN

1　ALAN GELBSTEIN
2　Defendant Smart stood up, gave me a spear
3　hand and the sign of the cross and pointed
4　it directly at me.
5　　　Do you recall that complaint to
6　your office?
7　　A. No.
8　　Q. Did you take any action with
9　respect to that complaint?
10　　A. I don't recall.
11　　Q. Did you look at the videotape
12　with respect to that complaint?
13　　A. I don't recall.
14　　Q. Do you recall that I made a
15　complaint to your office that I was
16　standing near one of your trash cans in the
17　Brooklyn TVB and there was an umbrella
18　laying on the can?
19　　A. I kind of remember that, yes.
20　　Q. And Defendant Smart said,
21　"don't touch it or else," do you recall
22　that?
23　　A. No, he didn't say it in my
24　presence.
25　　Q. But, you recall me complaining

Page 60

ALAN GELBSTEIN

1　ALAN GELBSTEIN
2　to you of that?
3　　A. I remember there was a to-do
4　with you, I don't remember with Smart so
5　much as it was one of my principal clerks
6　that brought the complaint to my attention.
7　　Q. That I moved an umbrella?
8　　A. An umbrella or a clip. I'm
9　trying -- a paper clip, it was something, I
10　don't remember what it was. I remember it
11　was what I had in my estimation a
12　ridiculous argument about a garbage can and
13　being it moved and something above it.
14　　Q. It had nothing to do with a
15　garbage can, it was a threat by Mr. Smart
16　-- Defendant Smart, upon my person?
17　　A. I don't remember that aspect of
18　it. I just remember there was a garbage
19　can and stuff on it, as you say, either an
20　umbrella or it might have been a paper
21　clip, but something to do about you and a
22　garbage can, that's what I recall.
23　　Q. It was an umbrella that I was
24　told not to move or else by your security
25　guard Defendant Smart?

15 (Pages 57 to 60)

December 17, 2020

Page 61

ALAN GELBSTEIN

1    ALAN GELBSTEIN
2    A.   I don't recall.
3         MR. THOMPSON:  Objection to
4    form.
5    A.   I don't recall that aspect of
6    it.
7    Q.   Did you have a deliberate
8    indifference and callousness to my
9    complaints?
10   A.   I'm sorry, repeat?
11        MR. THOMPSON:  Objection to the
12   form of the question.
13   Q.   Did you have an deliberate
14   indifference and callousness to my
15   complaints?
16   A.   Callousness?
17   Q.   To responding to my complaints?
18        MR. THOMPSON:  Objection to the
19   form, you can answer.
20   A.   I don't understand the
21   question.
22   Q.   Were you indifferent to my
23   complaints?
24   A.   No, I take every complaint from
25   every individual.

Page 63

ALAN GELBSTEIN

1    ALAN GELBSTEIN
2    Q.   Well, let me show you the
3    police report.  Let me show you the police
4    report.
5         Can we go to Exhibit 67?
6         (Whereupon, Plaintiff's Exhibit
7    67, previously marked, was
8    introduced.)
9    Q.   Now, do you know who that name
10   is at the top Danielle Calvo?
11   A.   Yes.
12   Q.   Is she your clerk supervisor?
13   A.   Yes.
14   Q.   I'll direct your attention to
15   the third page of that exhibit, Ma'am, if
16   we could.
17        I ask you to look at this first
18   paragraph and I direct your attention to
19   this first paragraph it says, "Mr.
20   Capogrosso said back up, back up."
21        Did you take note of that
22   police report when I said "back up, back
23   up"?
24   A.   Yes, I see it.
25   Q.   What was your opinion of that

Page 62

ALAN GELBSTEIN

1    ALAN GELBSTEIN
2    Q.   But, after I made the
3    complaints, the harassment continued, is
4    that fair to say?
5         MR. THOMPSON:  Objection to
6    form, you can answer.
7    A.   That your harassment or being
8    harassed?
9    Q.   My harassment by Defendant
10   Smart, is that fair to say?
11   A.   No.
12   Q.   Defendant Smart approach me on
13   the morning of May 11, 2015 unprovoked?
14   A.   I don't know.
15   Q.   The police report indicates I
16   told him to "back up, back up"; is that
17   fair to say?
18   A.   I wasn't there, I could not
19   tell you.
20   Q.   Did you read the police report?
21   A.   At the time, yes.
22   Q.   And did it mention the fact
23   that I said to Defendant Smart, "back up,
24   back up"?
25   A.   You might have, I don't recall.

Page 64

ALAN GELBSTEIN

1    ALAN GELBSTEIN
2    report?
3    A.   My opinion?  My opinion was
4    that regardless of whatever words were
5    spoken, no one showed ever make contact
6    physically with another individual.
7    Q.   Did you know or did you look at
8    the tape that Defendant Smart approached me
9    from about 20 feet away?
10        MR. THOMPSON:  Objection,
11   argumentative, asked and answered.
12   Q.   Do you have any knowledge as to
13   how Defendant Smart approached me?
14   A.   I was not there, I have no
15   idea.
16   Q.   And you didn't look at the
17   videotape that morning, did you?
18   A.   I don't recall if I did or not.
19   Q.   Well, what if I was to tell you
20   that Defendant Smart crossed over two
21   security barriers, two, and got with within
22   three inches of my face with a clenched
23   fist and a dipped head, what would you
24   think of that, what would be your opinion?
25        MR. THOMPSON:  Objection to

16  (Pages 61 to 64)

Page 65

ALAN GELBSTEIN

1  form, you can answer.
2  THE WITNESS: Answer that?
3  MR. THOMPSON: I object to the
4  form of the question, but yes, you
5  can answer the question.
6  A.  It calls for my speculation, I
7  don't know what I would have thought at the
8  time.
9  Q.  So, you're saying you condone
10 the behavior of Defendant Smart getting
11 within three inches of my face, clenching
12 his fist and dipping his head?
13 MR. THOMPSON: Objection to the
14 form.
15 A.  Had he done that, I would have
16 not been happy with his action.
17 Q.  But, you never confirmed what
18 he did because you never look at the
19 videotape; right?
20 A.  I don't recall.
21 Q.  Judge what do you get paid to
22 do at the Brooklyn TVB?
23 A.  I get paid to manage the
24 office, to supervise principally the judges

Page 66

ALAN GELBSTEIN

1  at the office.
2  Q.  Do you have control of the
3  actions of everybody in that office?
4  A.  There's a hierarchy and as I
5  said, my principal job was to take care of
6  the legal side, take care of the judges.
7  There's questions about questions of law,
8  that type of thing.  That was my bailiwick,
9  most everything else was delegated to the
10 clerical supervisory staff including the
11 direct supervision of David Smart.
12 Q.  So, Danielle Calvo is
13 responsible for the supervision of
14 Defendant Smart's action, is that what
15 you're saying?
16 A.  I'm saying that she, too.  I
17 am, every supervisor is.
18 Q.  Now, Defendant Smart also had
19 another altercation with another security
20 guard at some point in time in 2013?
21 A.  I don't recall such a --
22 Q.  Well, let me draw your
23 attention to it.  Can we to Exhibit 79.
24 (Whereupon, Plaintiff's Exhibit

Page 67

ALAN GELBSTEIN

1  79, previously marked, was
2  introduced.)
3  Q.  Do you recall that report?
4  A.  No, I don't.
5  Q.  Was that report made under your
6  watch, under your term?
7  MR. THOMPSON: Objection to
8  form.
9  A.  It occurred on May 16th of
10 2013, so it would have occurred while I was
11 the supervising judge -- senior judge in
12 that office.
13 Q.  But you had no knowledge of
14 that report?
15 A.  I don't recall it.  I don't
16 recall this document coming to me.  It
17 seems that Mrs. Burke who was the
18 supervisor of the other part of the
19 building, the DMV, is involved with this
20 one.  I don't believe I am.
21 Q.  Well, obviously if there's an
22 altercation or a confrontation to the
23 people at Brooklyn TVB in some manner or
24 respect between a security guard and

Page 68

ALAN GELBSTEIN

1  another security guard, PEC Group who was
2  the employer of Defendant Smart who
3  Defendant Smart worked for, could be called
4  in to rectify it.
5  Is that fair?
6  MR. THOMPSON: Objection to
7  form, you can answer.
8  A.  Should be called in?  I'm not
9  sure I understand the question.
10 Q.  Did you ever call PEC Group
11 with respect to my complaints to you of the
12 harassment and threats by Defendant Smart?
13 A.  I don't believe I have ever
14 spoke to PEC Group of New York, Inc.
15 Q.  You never called them?
16 A.  I don't believe I've ever
17 spoken to them.
18 Q.  So you took responsibility of
19 the actions of Defendant Smart, not PEC
20 Group?
21 MR. THOMPSON: Objection to
22 form.
23 A.  No, that's not true.
24 Q.  All right.

17  (Pages 65 to 68)

| Page 69 | Page 71 |
|---|---|

**Page 69**

ALAN GELBSTEIN

1
2     To whom, to whom do threats of
3  violence and harassment and theft get
4  reported to, if not PEC Group and not to
5  you?
6     A.   Oh, I get reported to when my
7  supervisors bring something to me.  If they
8  don't bring something to me or Mrs. Burke
9  who is a director of the DMV doesn't bring
10 it to me, I would not be aware of it.  I'm
11 only aware of what people bring to me.
12    Q.   And so my complaint that I
13 brought to you, you never brought to PEC
14 Group, is that fair?
15    MR. THOMPSON:  Objection, asked
16 and answered.
17    A.   I did not bring it to PEC
18 Group.
19    Q.   You took responsibility for
20 Defendant Smart's actions; is that fair?
21    A.   No, that's not fair.
22    Q.   Who took responsibility if the
23 complaints were brought to your office?
24    A.   As I said earlier --
25    MR. THOMPSON:  Objection to

**Page 71**

ALAN GELBSTEIN

1
2  don't specifically recall.
3     Q.   I'll direct your attention to
4  Exhibit 39.
5     (Whereupon, Plaintiff's Exhibit
6     39, previously marked, was
7     introduced.)
8     Q.   Are you familiar with this
9  document?
10    A.   I don't know what it is.
11    Q.   It says, "Capogrosso v.
12 Gelbstein," at the top, states defendant's
13 privilege log.
14    Are you familiar with that?
15    A.   No.
16    Q.   Let me direct your attention
17 down to the fourth row, the fourth row.
18    MR. THOMPSON:  Mr. Capogrosso
19 let me just put down a marker.  We
20 produced this privilege log to you
21 because these conversations are
22 privileged and so, it's not in bounds
23 to ask about them.
24    Any question as to these
25 conversations, any questions to

| Page 70 | Page 72 |
|---|---|

**Page 70**

ALAN GELBSTEIN

1
2  form.
3     A.   -- when you made a complaint to
4  me about David Smart, I spoke to him about
5  the complaint.
6     Q.   Were you anticipating
7  litigation between myself and the DMV?
8     A.   Did I anticipate litigation?
9     Q.   Yes.
10    A.   No.
11    Q.   Were you having conversations
12 with Defendant Traschen and who was a
13 Defendant in this case, Bushra Vahdat,
14 about anticipated litigation with Mario
15 Capogrosso?
16    MR. THOMPSON:  Objection to the
17 form, you can answer.
18    A.   No.
19    Q.   You did not.
20    Did you have e-mails going back
21 and forth between yourself, Defendant
22 Traschen and Bushra Vahdat concerning
23 possible litigation between the DMV and
24 myself, Mario Capogrosso?
25    A.   At some point we might have, I

**Page 72**

ALAN GELBSTEIN

1
2  communications is objectionable and
3  we object to it and I'll instruct the
4  witness not to answer.
5     MR. CAPOGROSSO:  In not
6  questioning concerning the content,
7  in questioning concerning the log.
8  There's a difference.
9     MR. THOMPSON:  I'll listen to
10 your question if you pose one, but --
11    MR. CAPOGROSSO:  I understand.
12 I'm not going to question about the
13 content, I'm going to question about
14 the log.  There's a log at the top,
15 sent from.
16    MR. THOMPSON:  He didn't
17 produce the log, I did.
18    MR. CAPOGROSSO:  All right.
19    Q.   There was correspondence
20 between yourself, Bushra Vahdat, Alan
21 Gelbstein, Ida Traschen look at the fourth
22 row down?
23    A.   I see it.
24    Q.   Fine.
25    Now, the description of that

18  (Pages 69 to 72)

DEITZ Court Reporting... A Lexitas Company
800-678-0166

December 17, 2020

Page 73

ALAN GELBSTEIN

1
2   states, "e-mail correspondence with DMV
3   regarding incident with Capogrosso prepared
4   in anticipation of litigation."
5       Prepared in anticipation of
6   litigation, this is a log created by the
7   DMV, right, and that entry was made on
8   5/18/2014.
9       Now, I'm going not going to ask
10  you what the e-mail stated, but why were
11  you anticipating litigation on May 8, 2014?
12      MR. THOMPSON: I'm going to
13      object to -- I'm going to object this
14      question and instruct the witness not
15      to answer.
16      There are a number of things
17      that are wrong with that question.
18      As I said, the privilege log was
19      created by our office, not by DMV and
20      not by Mr. Gelbstein, and I don't
21      think it's an appropriate thing to
22      question him on.
23      Q.  So, what your testimony here is
24  today, is that there was no -- that you not
25  anticipate litigation with myself and the

Page 74

ALAN GELBSTEIN

1
2   DMV, prior to the event of May 11, 2015.
3   Is that your testimony?
4       MR. THOMPSON: Is that your
5       question to Mr. Gelbstein?
6       MR. CAPOGROSSO: Yes.
7       MR. THOMPSON: I object to the
8       form, but you can answer that.
9       A.  I don't believe that anything
10  that we did was in anticipation of
11  litigation, but that could have changed
12  somewhere down the line. I couldn't tell
13  you when the anticipation began, but it
14  certainly wasn't my worry about litigation
15  one way or the other.
16      Q.  Wasn't your worry about
17  litigation.
18      So, you allowed the harassment
19  of Defendant Smart to continue, it wasn't
20  your worry to resolve it, and that wasn't
21  your issue; is that right?
22      MR. THOMPSON: I'll object to
23      the form of the question, you can
24      answer.
25      A.  The answer is no.

Page 75

ALAN GELBSTEIN

1
2       Q.  Let me direct your attention to
3   Exhibit 36.
4       (Whereupon, Plaintiff's Exhibit
5       36, previously marked, was
6       introduced.)
7       Q.  Now, this is a docket in the
8   matter of Teague -- this is an attorney,
9   matter of Teague, Eamon Teague who also
10  happens to be a lawyer in the traffic
11  violations bureau.
12      Are you familiar with Eamon
13  Teague?
14      A.  No.
15      Q.  Are you familiar with the
16  matter of Teague?
17      A.  No.
18      Q.  Are you familiar that the DMV
19  brought a grievance against Eamon Teague to
20  the grievance committee?
21      MR. THOMPSON: Objection to the
22      form.
23      A.  No.
24      Q.  Are you familiar with an
25  investigation by the grievance committee

Page 76

ALAN GELBSTEIN

1
2   concerning the actions of Eamon Teague?
3       MR. THOMPSON: Objection, asked
4       and answered.
5       Q.  I can't hear the answer, are
6   you familiar with it?
7       A.  I don't know anything about
8   this particular --
9       Q.  So, you're not familiar with
10  the grievance that the DMV brought against
11  Eamon Teague; is that fair?
12      A.  Am I aware of an action that
13  the DMV brought against who?
14      Q.  Eamon Teague an attorney who
15  worked at the TVB?
16      A.  No, I don't know anything about
17  this.
18      Q.  Did you ever grieve my office
19  for my actions at the Brooklyn TVB or any
20  TVB?
21      A.  I did not.
22      Q.  Why did you not?
23      A.  Why did I not grieve you?
24      Q.  Yeah, why didn't you grieve me?
25      A.  Because I don't grieve any

19  (Pages 73 to 76)

## Page 77

1           ALAN GELBSTEIN
2 attorney whose livelihood depends on a
3 practice of law. I know the severity of
4 grievance committees and what an attorney
5 goes through and so if there's a problem, I
6 try to help resolve the issues without
7 going to the grievance committee.
8        I very -- it has to be
9 something really, really terribly severe
10 for me to go to the appellate division.
11    Q.  So you, the DMV, Ida Traschen
12 rather just have me banned from the
13 practice of law at all TVBs, right, as
14 opposed to going to the grievance
15 committee, how is that helping me?
16        MR. THOMPSON: Objection to the
17 form, you can answer.
18    A.  That wasn't my decision.
19    Q.  I was banned from the practice
20 of law at all TVBs and you had no input in
21 that decision?
22    A.  No, sir.
23        MR. THOMPSON: Objection.
24    A.  I don't have the authority to
25 ban you in any other office, other than my

## Page 78

1           ALAN GELBSTEIN
2 own.
3    Q.  But your office never grieved
4 me?
5    A.  I never grieved you, no.
6    Q.  And your office therefore never
7 gave me an opportunity because I would have
8 rather have been grieved to present my
9 argument and my case before a grievance
10 committee.
11    A.  Is that a question?
12    Q.  Is it fair that there was no
13 basis or merit, no basis or merit for any
14 of the complaints filed against me?
15    A.  That's not the case.
16        MR. THOMPSON: Objection to
17 form.
18    A.  That's not the case.
19    Q.  You liked me, that's why you
20 didn't grieve me, is that it?
21    A.  I didn't like you and I didn't
22 dislike you.
23    Q.  But, you just banned me from
24 the practice of law from the Brooklyn TVB?
25    A.  That's correct.

## Page 79

1           ALAN GELBSTEIN
2    Q.  So, what you're saying in
3 essence is none of the complaints or
4 affidavits would have had any merit or
5 weight before the grievance committee, is
6 that fair to say?
7        MR. THOMPSON: Objection.
8    A.  No.
9    Q.  Is that the reason you didn't
10 bring me before the grievance committee?
11    A.  No.
12    Q.  Now, you're familiar with the
13 42SC1983 with the U.S. statute which is one
14 of the basis for my complaint.
15        Are you familiar with it?
16    A.  No.
17    Q.  You're not, you didn't read my
18 complaint?
19    A.  I did read your complaint.
20    Q.  You're not familiar with
21 42SC1983?
22    A.  No.
23    Q.  It states in part, "every
24 person under the color of statute
25 ordinance, regulation of state or

## Page 80

1           ALAN GELBSTEIN
2 territory."
3        Now, under the color of state
4 law, that's what it begins with. Was
5 Defendant Smart acting as a security guard
6 for the DMV?
7        MR. THOMPSON: Objection.
8 Withdrawn.
9    Q.  Was he acting as a security
10 guard for the DMV?
11    A.  Yes.
12    Q.  Who is the employer of
13 Defendant Smart?
14    A.  Either P-E-C that you indicated
15 earlier.
16    Q.  Who paid Defendant Smart's
17 salary?
18    A.  I don't know with specificity,
19 but I would assume it was PEC.
20    Q.  Did the DMV have a contract
21 with PEC Group?
22    A.  I never saw one, I would assume
23 so.
24    Q.  How did Defendant Smart show up
25 at your Brooklyn TVB?

Page 81

ALAN GELBSTEIN
1
2      A.   I'm sorry?
3      Q.   How did he show up; who hired
4  him?
5      A.   He was hired I assume by PEC.
6      Q.   And he had a contract and PEC
7  had a contract with the DMV to supply his
8  service?
9      A.   I don't know for sure, I only
10  assume so.
11     Q.   And you don't know who paid PEC
12  for his services?
13     A.   Who paid PEC?
14     Q.   For Defendant Smart service?
15     A.   I assume the State paid PEC.
16     Q.   And you had the authority to
17  regulate the actions of Defendant Smart, is
18  that fair to say?
19          MR. THOMPSON:  Objection to
20       form, you can answer.
21     A.   Yes.
22          MR. THOMPSON:  While we're at a
23       bit of a lull Mr. Capogrosso, just so
24       you're aware Ms. Traschen is at her
25       computer and ready to join whenever

Page 82

ALAN GELBSTEIN
1
2  we're ready to start that.
3          MR. CAPOGROSSO:  I have eight
4       more minutes.
5      Q.   Now, I was removed from the
6  Brooklyn TVB on May 11, 2015, the police
7  report then indicates that Danielle Calvo
8  told you -- was told by you to have me
9  removed.
10         You were possession of a letter
11  that I wrote on March 20, 2015.  I showed
12  you that letter that I sent to
13  Pricket-Morgan.  You indicated that you
14  received that letter and then I was removed
15  on May 11, 2015.
16         Were you attempting to chill my
17  first amendment right to freedom of speech
18  by having me removed, Defendant Gelbstein?
19     A.   No.
20     Q.   You didn't want me writing any
21  more letters concerning your conduct at the
22  Brooklyn TVB; am I right?
23     A.   No.
24     Q.   You did not want me writing any
25  more letters; is that true?

Page 83

ALAN GELBSTEIN
1
2          MR. THOMPSON:  Objection, asked
3       and answered.
4      A.   No.
5      Q.   Now, I observed you having
6  Jewish ticket brokers, you know what a
7  ticket broker is, right, Judge Gelbstein?
8      A.   Yes.
9      Q.   And I observed them in your
10  office on a weekly basis; is that true, I
11  observed them in your office; do you have
12  Jewish ticket brokers in your office on a
13  weekly basis?
14     A.   No.
15     Q.   You have Jewish ticket brokers
16  visiting your office?
17     A.   I've had people visit my
18  office, yes.
19     Q.   Were they ticket brokers?
20     A.   They could have been ticket
21  brokers.  I believe I know what you're
22  referring to, yes, it was a Jewish -- it
23  was one that you would perhaps call a
24  Jewish ticket broker.
25     Q.   And they're in your office on a

Page 84

ALAN GELBSTEIN
1
2  weekly basis or in your office fairly
3  often; is that fair to say?
4      A.   No.
5      Q.   For what reason are they in
6  your office?
7          MR. THOMPSON:  Objection to
8       form.
9      A.   They may have had a question or
10  maybe I called them in because there was a
11  time where they were all permitted and then
12  there was a time when they weren't
13  permitted.  Once they were not permitted,
14  no ticket brokers that I was able to catch
15  as it were, were permitted in the premises.
16     Q.   Now, what point in time --
17  didn't you tell me that these ticket
18  brokers that are in your office on a
19  habitual basis, that they're friends of
20  your wife and I have dinner with them, but
21  I don't know what they do for a living.
22         Did you not tell me that at one
23  point?
24     A.   No.
25     Q.   Were you in the GE pleading

21 (Pages 81 to 84)

Page 85

ALAN GELBSTEIN

1
2  motorists guilty on a sidebar and
3  rescheduling case on a sidebar before ALJ
4  Gelbstein?
5      MR. THOMPSON: Objection to the
6      form of the question.
7    Q. Did you ever plead motorists
8  guilty at the Brooklyn TVB before ALJ
9  Bohmstein, B-O-H-M-S-T-E-I-N, did you ever
10 enter guilty pleas on before of motorists?
11   A. Ever?
12   Q. In the GE?
13   A. I'm sure I did.
14   Q. For what reason?
15   A. For various reasons.
16   Q. For what reason?
17     MR. THOMPSON: Objection, asked
18     and answered.
19   Q. Are you acting as a lawyer, did
20 you have your own caseload?
21   A. No, I did not. I mean, I had
22 cases when there were occasions when I
23 covered rooms, yes.
24   Q. No, did you have individual
25 clients that you were representing down at

Page 86

ALAN GELBSTEIN

1
2  the Brooklyn TVB?
3    A. No, I never represented a
4  client in the TVB.
5    Q. But, you were pleading clients
6  guilty in the general requirements room; is
7  that fair?
8    A. No.
9    Q. Did you ever reschedule
10 clients' cases in the general requirements
11 room?
12   A. No.
13   Q. Before Judge Bohmstein, you
14 never did that?
15   A. No.
16   Q. Did you ever have Eugene
17 Gervazi cover cases for you in the Brooklyn
18 TVB?
19   A. Did I ever have?
20   Q. Eugene Gervazi, an attorney
21 that works at the Brooklyn TVB as myself
22 was doing cover cases for you?
23     MR. THOMPSON: Objection to the
24     form of question, you can answer.
25   A. No.

Page 87

ALAN GELBSTEIN

1
2    Q. You didn't give him cases for
3  him to handle?
4    A. I might have asked him to
5  handle a case if another attorney calls in
6  the office and says I can't make it and
7  he's not -- I wouldn't grand him another
8  adjournment and he says, "could you give it
9  to somebody," I probably would do that.
10 Ask another attorney if they would want to
11 handle another attorney's case.
12   Q. When Eugene Gervazi tells me he
13 is covering a case for Judge Gelbstein,
14 he's covering one of your cases, is that
15 what he's doing?
16   A. No --
17     MR. THOMPSON: Objection to the
18     form of the question.
19   A. No, I don't have cases.
20   Q. There was a lady called Tanya
21 Rabinowitz down at the Brooklyn TVB that
22 was calling herself a lawyer on a repeated
23 basis.
24     Was she removed from the
25 Brooklyn TVB at some point?

Page 88

ALAN GELBSTEIN

1
2    A. Yes.
3    Q. At what point in time was she
4  removed?
5    A. I don't recall.
6    Q. Do you recall calling the
7  District Attorney and telling her -- and
8  telling the District Attorney that we have
9  a person down here calling herself a lawyer
10 at Judge Gelbstein's courtroom, did you
11 have any notification of that?
12   A. Not that I recall.
13   Q. And did you approach me at some
14 point in time and tell me "who are you, Don
15 Quixote," when you found out that I called
16 District Attorney about Tanya Rabinowitz?
17   A. I don't believe that is true.
18   Q. You never said "who are you,
19 Don Quixote"?
20     MR. THOMPSON: Objection, asked
21     and answered. You can respond.
22   A. No, I don't believe I ever said
23 that to you.
24   Q. Do you believe you acted
25 lawfully in having me removed from the

22 (Pages 85 to 88)

Page 89

1      ALAN GELBSTEIN
2  Brooklyn TVB on May 11, 2015?
3          MR. THOMPSON: Objection, calls
4  for a legal conclusion. You can
5  answer.
6      A.  I believe it was a lawful
7  action.
8      Q.  Under what law, under what
9  statute, under what authority did you make
10 that decision?
11         MR. THOMPSON: Same objection.
12     A.  I don't believe it was my
13 decision.
14     Q.  Whose decision was it?
15     A.  I believe it was done in
16 consultation with people above me.
17     Q.  But, you were personally
18 involved in the removal; right?
19     A.  Yes, I was.
20     Q.  Can I ask that we go to
21 Exhibit 12.
22         (Whereupon, Plaintiff's Exhibit
23         12, previously marked, was
24         introduced.)
25     Q.  Are you familiar with that

Page 90

1      ALAN GELBSTEIN
2  letter of complaint that I submitted to
3  your office?
4      A.  You submitted it?
5      Q.  Yeah, I did.
6      It was produced by your
7  attorney, attorney Thompson, are you
8  familiar with it?
9      A.  No.
10     Q.  You're not.
11     Did you take any action in
12 response to that letter?
13     A.  I'm not sure what the letter
14 is. Could I see the rest of the letter?
15         (Whereupon, the Court Reporter
16         scrolled down so the witness can see
17         the rest of the exhibit.)
18     Q.  It's a complaint made about
19 Defendant Smart that he gets in my face and
20 tells me to "fuck you."
21     You don't recall seeing that
22 letter?
23     A.  I may have seen it, I honestly
24 don't recall it.
25     Q.  And you don't recall what you

Page 91

1      ALAN GELBSTEIN
2  did in response to it, is that fair?
3      A.  I don't recall the incident or
4  what I did about it. What is the date of
5  this letter?
6      Q.  May 14th.
7      You don't recall it?
8      A.  What year?
9      Q.  2014.
10     A.  I don't recall it.
11     Q.  In June of 2012 Defendant Smart
12 approached me from the rear and pushed me
13 in the rear attempting to get my cell
14 phone. Pretty much he assaulted me.
15     Do you recall that complaint to
16 your office?
17         MR. THOMPSON: I object to the
18     form of the question, you can answer.
19     A.  I don't recall it.
20     Q.  You don't recall that one.
21     You don't recall the incident
22 of the spear hand and the sign of the
23 cross. You don't recall this letter of
24 complaint. You don't recall the theft that
25 Defendant Smart made of $80 on a $150 fee.

Page 92

1      ALAN GELBSTEIN
2      Is that fair?
3      A.  Yes, that's fair.
4          MR. THOMPSON: Objection to the
5      form of the question.
6      Q.  And you never reviewed the
7  videotape of Defendant Smart approaching me
8  on the morning of May 11, 2015; is that
9  right?
10     A.  I don't recall if I did or not.
11     Q.  Why did you keep the evidence,
12 why did you keep the videotape of the
13 alleged push on Defendant Smart on the
14 morning of May 11, 2015, why you didn't
15 keep --
16         MR. THOMPSON: Objection to the
17     form of the question, you can answer.
18     A.  I was never instructed on the
19 use of the machine. I believe it was a
20 tape that goes around and around, you know,
21 and re-records on itself. I would have no
22 idea how to take a piece of it off, if it
23 were to occur to me to want to take a piece
24 of it off, I would not know how to do that.
25     Q.  Did you deliberately lose the

23 (Pages 89 to 92)

Page 93

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  evidence, Judge Gelbstein?
3  A. No.
4  MR. THOMPSON: Objection to the
5  form.
6  Q. Did you want to sweep this
7  complaint under the rug by losing the
8  evidence?
9  MR. THOMPSON: Same objection.
10  A. I didn't lose any evidence.
11  Q. But you didn't keep or maintain
12  the evidence; right?
13  MR. THOMPSON: Same objection.
14  A. I kept any evidence that was
15  presented to me.
16  Q. But you didn't keep the
17  evidence of the videotape now, did you?
18  MR. THOMPSON: Objection.
19  A. It wasn't in my direct control
20  and it didn't occur to me until you brought
21  it up that it's evidence one way or the
22  other what regard to this case.
23  Q. That evidence would have shown
24  who provoked that incident, would that be
25  fair to say?

Page 94

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  MR. THOMPSON: Objection.
3  A. I would say that it would show
4  conclusively what occurred.
5  Q. And you made the decision not
6  to keep it.
7  Who's in control of the
8  videotape at the Brooklyn TVB?
9  MR. THOMPSON: Objection to the
10  form.
11  A. I beg your pardon?
12  Q. Who's in control of the
13  videotape at the Brooklyn TVB?
14  A. It was in the clerical office.
15  Q. Who's in control of it, who's
16  the person in control of it?
17  A. I don't know which clerk or
18  supervisor was directly responsible for
19  its recording. I believe there was some
20  kind of protocol, but I don't know what it
21  was.
22  Q. You had no control of the
23  videotape from the Brooklyn TVB?
24  MR. THOMPSON: Objection to the
25  form of the question, you can answer.

Page 95

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  A. Ultimately it was I guess under
3  my control, but I had no direct supervision
4  and never did.
5  Q. Who recommended that security
6  cameras be put up in the Brooklyn TVB,
7  whose recommendation was that?
8  MR. THOMPSON: Objection to the
9  form, you can answer.
10  A. It was based on an audit by the
11  auditors of the DMV. They had recommended
12  it or it would have been our security
13  people that recommended it, I don't know.
14  One of those two field investigations might
15  have done it or the regular audit people
16  might have done it as part of an audit, one
17  of those two.
18  Q. And you don't know how long
19  that videotape lasts; is that right?
20  A. No, I don't.
21  MR. THOMPSON: While we're at a
22  bit of a pause, I would just say it's
23  12:07 right now, Ms. Traschen has
24  been waiting by her computer since
25  11:45.

Page 96

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  Do you intend to go forward
3  with her deposition Mr. Capogrosso?
4  MR. CAPOGROSSO: Just give me
5  -- because we had problems. I'll ask
6  for eight more minutes and then I
7  will stop. In eight more minutes I
8  will stop.
9  MR. THOMPSON: All right, I'll
10  let her know.
11  MR. CAPOGROSSO: And I'll do
12  everything to keep to my schedule and
13  I will. Just give me eight more
14  minutes and I will stop precisely at
15  12:15.
16  Can we go to Exhibit 66.
17  (Whereupon, Plaintiff's Exhibit
18  66, previously marked, was
19  introduced.)
20  Q. Now, are you familiar with this
21  document?
22  A. I only see that it was
23  addressed to me, so I don't know.
24  Q. You do note the big blackout
25  spaces in the document; am I right?

24  (Pages 93 to 96)

Page 97

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  A. Yes, I see that.
3  Q. Was that redacted footage of
4  the alleged incident between myself and
5  Smart; do you know?
6  A. I have no idea what is
7  redacted.
8  Q. Was that information
9  purposefully redacted?
10  A. I have no way of knowing.
11  Q. Do those blackouts show the
12  alleged incident between myself and
13  Defendant Smart?
14  A. I have no way of knowing.
15  Q. When you worked at the
16  administrative law judge, you were a state
17  agent; is that fair?
18  MR. THOMPSON: Objection, calls
19  for a legal conclusion.
20  Q. Were you operating under color
21  of state law?
22  MR. THOMPSON: Same objection.
23  A. Repeat the question?
24  Q. Were you operating under color
25  of state law, under the direction of state

Page 98

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  law?
3  A. I believe so.
4  Q. You indicated you had
5  supervisory authority over the actions of
6  Defendant Smart; is that right?
7  A. Yes.
8  MR. THOMPSON: Objection to the
9  form of the question.
10  A. Yes.
11  Q. And you had the ability to have
12  me removed from the Brooklyn TBV; is that
13  right?
14  A. I'm not sure if I did or not.
15  Q. But, you did have me removed
16  from the Brooklyn TVB; right?
17  A. Oh, I'm sorry did you say
18  removed David Smart or removed you?
19  Q. Removed me from the Brooklyn
20  TVB because that's what you did, am I
21  right?
22  A. Yes.
23  MR. CAPOGROSSO: I have three
24  more minutes. Let me see if I'm
25  missing anything.

Page 99

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  Q. I wasn't given any due process
3  was I, is that a fair statement?
4  MR. THOMPSON: Objection to the
5  form of the question. It calls for a
6  legal conclusion.
7  Q. What is a due process, you're a
8  Judge, what is due process?
9  MR. THOMPSON: Same objection.
10  THE WITNESS: I can answer
11  that.
12  MR. THOMPSON: Subject to the
13  objection, yes.
14  A. Due process is giving somebody
15  an opportunity to respond to a complaint I
16  would think.
17  Q. And you gave me no such
18  opportunity, did you?
19  A. I did.
20  Q. Explain how you did?
21  A. You could have given me an
22  affidavit. In all our conversations that
23  you and I have had, I gave you information
24  that I was given by countless people with
25  regard to singular incidents and you gave

Page 100

ALAN GELBSTEIN

1  ALAN GELBSTEIN
2  me your version of the story.
3  And because of the great volume
4  of witnesses who reported to me, I found
5  their story more credible than I found your
6  story on any one of the occasions that
7  occurred.
8  Q. You illicited the affidavits of
9  other attorneys, did you not?
10  MR. THOMPSON: Objection to the
11  form, you can answer.
12  A. No.
13  Q. Did you illicit affidavits of
14  other attorneys?
15  A. No.
16  Q. You did not; not of Jeff Myer
17  err, Yakov Brody, you did not illicit their
18  affidavits?
19  MR. THOMPSON: Objection, asked
20  and answered.
21  A. I don't recall if I ever asked
22  anybody for an affidavit.
23  Q. I was never presented with the
24  affidavits or the complaints against me and
25  my office at the Brooklyn TVB by your

25 (Pages 97 to 100)

| Page 101 | Page 103 |
|---|---|

**Page 101**

ALAN GELBSTEIN

1
2  office which I could respond individually
3  by you to which I could respond.
4      Is that fair?
5  A.  Yes.
6      MR. THOMPSON:  Objection to the
7  form.
8      MR. CAPOGROSSO:  That's it.  I
9  have nothing further.
10      (Whereupon, at 12:15 P.M., the
11  Examination of this witness was
12  concluded.)
13
14          o    o    o    o
15
16
17
18
19
20
21
22
23
24
25

**Page 103**

ALAN GELBSTEIN
EXHIBITS

PLAINTIFF'S EXHIBITS (Previously marked)

| EXHIBIT NUMBER | EXHIBIT DESCRIPTION | PAGE |
|---|---|---|
| 68 | Two-page of workplace violence incident | 8 |
| 15 | Two-page letter dated May 20, 2015 | 18 |
| 85 | Four-page workplace violence incident | 28 |
| 81 | One-page e-mail from Bushra Vahdat | 55 |
| 82 | Four-page attorney/client privilege notes | 37 |
| 73 | Four-page ALJ Affirmation | 41 |
| 67 | Three-page workplace violence incident | 63 |
| 79 | Five-page PEC Group incident summary | 67 |
| 39 | 16-page State Defendants' privilege log | 71 |
| 36 | Five-page Matter of Teague | 75 |
| 12 | One-page notes | 89 |
| 66 | Three-page memorandum | 96 |

(Exhibits retained by Counsel.)

| Page 102 | Page 104 |
|---|---|

**Page 102**

ALAN GELBSTEIN
DECLARATION

1
2
3
4      I hereby certify that having been
5  first duly sworn to testify to the truth, I
6  gave the above testimony.
7
8      I FURTHER CERTIFY that the foregoing
9  transcript is a true and correct transcript
10  of the testimony given by me at the time
11  and place specified hereinbefore.
12
13
14
15          _____
                ALAN GELBSTEIN
16
17
18  Subscribed and sworn to before me
19  this _____ day of _____ 20___.
20
21
22  _____
       NOTARY PUBLIC
23
24
25

**Page 104**

ALAN GELBSTEIN
INDEX

EXAMINATION BY              PAGE
MR. CAPOGROSSO                3

INFORMATION AND/OR DOCUMENTS REQUESTED
INFORMATION AND/OR DOCUMENTS     PAGE
(None)

QUESTIONS MARKED FOR RULINGS
PAGE LINE QUESTION
(None)

26 (Pages 101 to 104)

December 17, 2020



Page 105

1  ALAN GELBSTEIN
2  CERTIFICATE
3
4  STATE OF NEW YORK  )
            : SS.:
5  COUNTY OF KINGS  )
6
7      I, JAMIE NEWMAN, a Notary Public for
8  and within the State of New York, do hereby
9  certify:
10      That the witness whose examination is
11  hereinbefore set forth was duly sworn and
12  that such examination is a true record of
13  the testimony given by that witness.
14      I further certify that I am not
15  related to any of the parties to this
16  action by blood or by marriage and that I
17  am in no way interested in the outcome of
18  this matter.
19      IN WITNESS WHEREOF, I have hereunto
20  set my hand this 31st day of December 2020.
21
22
23      _____
            JAMIE NEWMAN
24
25

27 (Page 105)

A1767

| **A** | 3:14 17:17 | 18:1 19:1 | 2:18 | 89:5 91:18 |
|---|---|---|---|---|
| **A.M (1)** | 26:10 36:2 | 20:1 21:1 | **ALJ (4)** | 92:17 94:25 |
| 1:13 | **addressed (2)** | 22:1 23:1 | 36:5 85:3,8 | 95:9 99:10 |
| **ability (2)** | 19:22 96:23 | 24:1 25:1 | 103:15 | 100:11 |
| 55:3 98:11 | **adjournment...** | 26:1 27:1 | **allegation (2)** | **answered (11)** |
| **able (1)** | 87:8 | 28:1 29:1 | 11:12 44:19 | 11:3 32:5 52:7 |
| 84:14 | **administrati...** | 30:1 31:1 | **allegations (3)** | 53:19 64:11 |
| **absolute (2)** | 97:16 | 32:1 33:1 | 44:20 49:18 | 69:16 76:4 |
| 9:14 47:2 | **affidavit (30)** | 34:1 35:1 | 50:19 | 83:3 85:18 |
| **Absolutely (1)** | 27:14,16 32:3 | 36:1 37:1 | **alleged (10)** | 88:21 100:20 |
| 52:25 | 32:25 33:9,11 | 38:1 39:1 | 10:5,12 14:15 | **anti-Semitic ...** |
| **abused (1)** | 33:15 35:19 | 40:1 41:1 | 14:21 16:22 | 44:10 46:15 |
| 36:10 | 40:3,4,9 41:5 | 42:1 43:1 | 18:22 43:15 | **anticipate (2)** |
| **accept (1)** | 41:8 47:8,25 | 44:1 45:1 | 92:13 97:4,12 | 70:8 73:25 |
| 26:20 | 48:3,11,12,14 | 46:1 47:1 | **allowed (4)** | **anticipated (1)** |
| **accepted (4)** | 48:23 49:7,11 | 48:1 49:1 | 15:6 38:21 | 70:14 |
| 27:12 40:13,14 | 49:16 50:6,8 | 50:1 51:1 | 56:24 74:18 | **anticipating ...** |
| 40:19 | 50:21 51:4,8 | 52:1 53:1 | **allowing (1)** | 70:6 73:11 |
| **accurate (1)** | 99:22 100:22 | 54:1 55:1 | 51:6 | **anticipation ...** |
| 40:2 | **affidavits (11)** | 56:1 57:1 | **altercation (4)** | 73:4,5 74:10 |
| **acted (1)** | 23:19,25 41:9 | 58:1 59:1 | 10:5 20:12 | 74:13 |
| 88:24 | 41:12 49:9 | 60:1 61:1 | 66:20 67:23 | **anybody (4)** |
| **acting (3)** | 50:19 79:4 | 62:1 63:1 | **amendment (...** | 38:24 48:22 |
| 80:5,9 85:19 | 100:8,13,18 | 64:1 65:1 | 82:17 | 49:9 100:22 |
| **action (14)** | 100:24 | 66:1 67:1 | **AND/OR (2)** | **appeal (3)** |
| 3:19 11:18 | **Affirmation ...** | 68:1 69:1 | 104:8,9 | 31:6,10,11 |
| 17:23 19:18 | 41:22 42:15 | 70:1 71:1 | **animus (1)** | **appellate (1)** |
| 19:22 23:11 | 103:15 | 72:1,20 73:1 | 54:17 | 77:10 |
| 33:23 59:8 | **affirmed (1)** | 74:1 75:1 | **answer (47)** | **appointed (1)** |
| 65:17 66:15 | 3:6 | 76:1 77:1 | 6:3 10:14 | 36:4 |
| 76:12 89:7 | **afternoon (3)** | 78:1 79:1 | 13:16,24 | **approach (7)** |
| 90:11 105:16 | 11:25 12:7,10 | 80:1 81:1 | 14:10 15:2 | 11:24 13:12 |
| **actions (12)** | **against- (1)** | 82:1 83:1 | 16:5,8 21:7,8 | 14:4 20:20 |
| 14:7 23:17 | 1:6 | 84:1 85:1 | 21:24 22:2 | 24:17 62:12 |
| 30:18 53:24 | **agent (1)** | 86:1 87:1 | 24:3 27:7 | 88:13 |
| 55:4 66:4 | 97:17 | 88:1 89:1 | 30:15 31:21 | **approached (...** |
| 68:20 69:20 | **agree (1)** | 90:1 91:1 | 33:5 40:18 | 21:2,9 32:7 |
| 76:2,19 81:17 | 9:3 | 92:1 93:1 | 48:7 52:10,24 | 37:19,22 64:8 |
| 98:5 | **Alan (109)** | 94:1 95:1 | 53:19 54:25 | 64:13 91:12 |
| **activities (1)** | 1:8,15 2:9 3:1 | 96:1 97:1 | 57:5 61:19 | **approaching ...** |
| 55:9 | 3:13 4:1 5:1 | 98:1 99:1 | 62:6 65:2,3,6 | 12:6 92:7 |
| **activity (1)** | 6:1 7:1 8:1 | 100:1 101:1 | 68:8 70:17 | **appropriate ...** |
| 55:7 | 9:1 10:1 11:1 | 102:1,15 | 72:4 73:15 | 73:21 |
| **additional (1)** | 12:1 13:1 | 103:1 104:1 | 74:8,24,25 | **argument (2)** |
| 8:17 | 14:1 15:1 | 105:1 | 76:5 77:17 | 60:12 78:9 |
| **address (4)** | 16:1 17:1 | **Albany (1)** | 81:20 86:24 | **argumentati...** |

| | | | | |
|---|---|---|---|---|
| 33:5 64:11 | 75:2 | **bailiwick (1)** | 89:12,15 | 3:15 4:19,24 |
| **arrive (2)** | **attorney (25)** | 66:9 | 92:19 94:19 | 5:8,23 6:5 |
| 4:23 5:4 | 2:8 6:19 7:10 | **ban (1)** | 98:3 | 11:5 12:15,18 |
| **arrived (1)** | 7:11 12:3 | 77:25 | **best (3)** | 13:2 14:7 |
| 5:2 | 16:14 17:14 | **banned (3)** | 4:5 7:14 26:22 | 15:7 27:2,5 |
| **asked (20)** | 29:4 38:19,22 | 77:12,19 78:23 | **better (3)** | 27:22 41:25 |
| 11:2 24:21 | 48:13,21 50:4 | **BARBARA (1)** | 21:17,21 54:20 | 46:4 47:13,14 |
| 26:10,12 32:4 | 75:8 76:14 | 2:18 | **big (1)** | 48:13 49:3 |
| 36:13 41:2 | 77:2,4 86:20 | **barbara.mon...** | 96:24 | 51:7,17 53:7 |
| 48:20,21 52:6 | 87:5,10 88:7 | 2:19 | **bit (3)** | 53:17,24 |
| 53:18 64:11 | 88:8,16 90:7 | **barriers (1)** | 37:10 81:23 | 56:25 58:3 |
| 69:15 76:3 | 90:7 | 64:21 | 95:22 | 59:17 65:23 |
| 83:2 85:17 | **attorney's (1)** | **based (6)** | **blackout (1)** | 67:24 76:19 |
| 87:4 88:20 | 87:11 | 11:5,12,17 | 96:24 | 78:24 80:25 |
| 100:19,21 | **attorney/clie...** | 43:14 57:9 | **blackouts (1)** | 82:6,22 85:8 |
| **asking (1)** | 15:23 103:14 | 95:10 | 97:11 | 86:2,17,21 |
| 27:13 | **attorneys (10)** | **basis (9)** | **blame (1)** | 87:21,25 89:2 |
| **aspect (2)** | 2:8,16 23:20 | 15:22 78:13,13 | 52:21 | 94:8,13,23 |
| 60:17 61:5 | 25:4 34:9,15 | 79:14 83:10 | **blood (1)** | 95:6 98:12,16 |
| **assaulted (1)** | 44:12 50:14 | 83:13 84:2,19 | 105:16 | 98:19 100:25 |
| 91:14 | 100:9,14 | 87:23 | **Bohrnstein (2)** | **brought (9)** |
| **assume (7)** | **audit (3)** | **beach (1)** | 85:9 86:13 | 19:5 60:6 |
| 42:2,3 80:19 | 95:10,15,16 | 45:12 | **bottom (3)** | 69:13,13,23 |
| 80:22 81:5,10 | **auditors (1)** | **beanie (2)** | 42:6,11,13 | 75:19 76:10 |
| 81:15 | 95:11 | 44:24 46:22 | **bounds (1)** | 76:13 93:20 |
| **assumed (1)** | **authority (5)** | **beg (5)** | 71:22 | **building (5)** |
| 48:4 | 14:6 77:24 | 5:19 9:25 | **brain (1)** | 5:15 8:22,25 |
| **assumes (3)** | 81:16 89:9 | 18:25 52:8 | 45:16 | 45:9 67:20 |
| 14:25 32:13 | 98:5 | 94:11 | **breaking (3)** | **bureau (4)** |
| 51:11 | **available (2)** | **began (2)** | 3:23,24 4:5 | 2:15 4:20,24 |
| **assuming (1)** | 13:2,9 | 58:6 74:13 | **bring (7)** | 75:11 |
| 11:7 | **aware (5)** | **begins (2)** | 58:22 69:7,8,9 | **Burke (2)** |
| **attached (3)** | 31:23 69:10,11 | 36:3 80:4 | 69:11,17 | 67:18 69:8 |
| 18:14 32:25 | 76:12 81:24 | **behavior (6)** | 79:10 | **bus (1)** |
| 33:7 | | 20:2 35:20 | **Brody (4)** | 52:16 |
| **attempting (2)** | **B** | 42:21 43:5,15 | 47:20 48:5 | **Bushra (10)** |
| 82:16 91:13 | **B (2)** | 65:11 | 49:2 100:17 | 35:11,12,15 |
| **attend (1)** | 3:5 103:2 | **believe (25)** | **Brody's (2)** | 39:2,19,24 |
| 5:13 | **B-O-H-M-S-...** | 5:9 6:6 9:22 | 48:12 50:8 | 70:13,22 |
| **attention (16)** | 85:9 | 11:17 16:15 | **broker (2)** | 72:20 103:13 |
| 19:6,12 22:5 | **back (12)** | 33:14,17 34:8 | 83:7,24 | **business (2)** |
| 27:19 34:23 | 6:13 31:11 | 41:7 46:19,25 | **brokers (7)** | 5:7,9 |
| 36:2 42:18 | 32:8 62:16,16 | 67:21 68:14 | 83:6,12,15,19 | **busy (1)** |
| 44:6 58:23 | 62:23,24 | 68:17 74:9 | 83:21 84:14 | 38:20 |
| 60:6 63:14,18 | 63:20,20,22 | 83:21 88:17 | 84:18 | |
| 66:24 71:3,16 | 63:22 70:20 | 88:22,24 89:6 | **Brooklyn (51)** | **C** |

| | | | | |
|---|---|---|---|---|
| **C (7)** | 8:22 14:19 | 52:2 53:20 | 85:25 86:5 | 40:14 45:22 |
| 2:2 37:13,19 | 17:3 19:2,8 | 74:14 | **clients' (1)** | 55:24,25 56:5 |
| 38:6 102:2 | 21:14,20 | **certainty (2)** | 86:10 | 56:6,8,9 57:2 |
| 105:2,2 | 28:20 29:4,15 | 9:14 15:16 | **clip (3)** | 57:7,11,17,19 |
| **call (8)** | 38:3 39:21 | **certify (4)** | 60:8,9,21 | 58:2,5,14,25 |
| 9:24 10:2 | 43:23 44:4 | 102:4,8 105:9 | **color (4)** | 59:5,9,12,15 |
| 15:18 25:17 | 63:20 70:15 | 105:14 | 79:24 80:3 | 60:6 61:24 |
| 46:7,21 68:11 | 70:24 71:11 | **changed (1)** | 97:20,24 | 69:12 70:3,5 |
| 83:23 | 71:18 72:5,11 | 74:11 | **come (1)** | 79:14,18,19 |
| **called (18)** | 72:18 73:3 | **charges (1)** | 20:3 | 90:2,18 91:15 |
| 3:5 9:14,20 | 74:6 81:23 | 50:17 | **coming (2)** | 91:24 93:7 |
| 12:4 20:10 | 82:3 96:3,4 | **chief (3)** | 20:10 67:17 | 99:15 |
| 26:6,9 43:7 | 96:11 98:23 | 28:2,2 55:15 | **comments (1)** | **complaints (...** |
| 44:24 46:24 | 101:8 104:5 | **chill (1)** | 8:18 | 17:18,21 19:4 |
| 54:8 55:21 | **capogrossom...** | 82:16 | **COMMISSI...** | 20:7 22:6,25 |
| 68:4,9,16 | 2:5 | **circumstance...** | 1:10 2:11,16 | 23:25 24:6,10 |
| 84:10 87:20 | **car (18)** | 47:5 | **committee (7)** | 25:3,13,16,18 |
| 88:15 | 32:10 33:21 | **Civil (1)** | 75:20,25 77:7 | 26:18,24 27:4 |
| **calling (3)** | 36:12,12,14 | 1:16 | 77:15 78:10 | 27:8,11,13,19 |
| 87:22 88:6,9 | 37:14,15 38:4 | **clarification ...** | 79:5,10 | 30:3 46:13 |
| **callousness (3)** | 38:7,10,15,22 | 24:12 | **committees (1)** | 55:17,18,19 |
| 61:8,14,16 | 38:25 39:3,8 | **clenched (1)** | 77:4 | 55:25 58:11 |
| **calls (8)** | 39:9,22,22 | 64:22 | **communicati...** | 58:16 61:9,15 |
| 38:23,25 54:23 | **care (2)** | **clenching (1)** | 72:2 | 61:17,23 62:3 |
| 65:7 87:5 | 66:6,7 | 65:12 | **complacent (i)** | 68:12 69:23 |
| 89:3 97:18 | **case (11)** | **clerical (6)** | 12:4 | 78:14 79:3 |
| 99:5 | 1:6 20:23 | 28:14 45:9 | **complain (1)** | 100:24 |
| **Calvo (13)** | 70:13 78:9,15 | 55:10,20 | 20:4 | **complicit (1)** |
| 1:9 2:10 9:3,6 | 78:18 85:3 | 66:11 94:14 | **complained (4)** | 54:10 |
| 11:13,19 | 87:5,11,13 | **clerk (15)** | 23:10,16 53:2 | **complied (1)** |
| 14:16,23 | 93:22 | 28:2,2,18,19 | 55:22 | 28:23 |
| 51:23 52:20 | **caseload (1)** | 29:3 36:12,13 | **complaining ...** | **compound (2)** |
| 63:10 66:13 | 85:20 | 36:20,24 39:3 | 59:25 | 13:16,24 |
| 82:7 | **cases (7)** | 39:8 55:13,15 | **complaint (69)** | **computer (2)** |
| **cameras (1)** | 85:22 86:10,17 | 63:12 94:17 | 19:24 22:13,17 | 81:25 95:24 |
| 95:6 | 86:22 87:2,14 | **clerk's (2)** | 22:21 24:14 | **concerning (...** |
| **cans (1)** | 87:19 | 39:9,22 | 24:18,21,23 | 3:19 12:2 |
| 59:16 | **catch (2)** | **clerks (7)** | 25:15,22,23 | 15:19 19:25 |
| **capacity (11)** | 29:13 84:14 | 23:20 25:4 | 25:25 26:4,5 | 22:17,25 |
| 1:8,8,9,9,11 | **cease (1)** | 28:16,18 | 26:5,9,13,23 | 32:24 33:2 |
| 2:9,10,10,11 | 25:19 | 36:11 55:12 | 27:9 29:19,21 | 35:19 39:20 |
| 2:12,17 | **cell (1)** | 60:5 | 29:23 30:17 | 56:13 57:2 |
| **Capogrosso (...** | 91:13 | **client (6)** | 30:22,24 31:3 | 70:22 72:6,7 |
| 1:3 2:3 3:4,10 | **certain (1)** | 34:10,16 46:14 | 31:24 32:18 | 76:2 82:21 |
| 4:2,8,12 7:8 | 19:4 | 46:17,19 86:4 | 32:24 33:2,10 | **concluded (1)** |
| 7:17,21 8:2 | **certainly (3)** | **clients (2)** | 34:5 35:18,22 | 101:12 |

| | | | | |
|---|---|---|---|---|
| **conclusion (5)** | 45:14,15 | 86:17,22 | **dates (3)** | 68:4,13,20 |
| 54:24 57:21 | 46:10 | **covered (1)** | 42:22 44:15 | 69:20 70:12 |
| 89:4 97:19 | **conversation...** | 85:23 | 47:18 | 70:13,21 |
| 99:6 | 70:11 71:21,25 | **covering (2)** | **David (10)** | 74:19 80:5,13 |
| **conclusions (1)** | 99:22 | 87:13,14 | 1:10 2:11 8:13 | 80:16,24 |
| 57:9 | **copy (2)** | **create (1)** | 19:13,23 20:4 | 81:14,17 |
| **conclusively ...** | 16:16,17 | 13:13 | 20:10 66:12 | 82:18 90:19 |
| 94:4 | **correct (12)** | **created (2)** | 70:4 98:18 | 91:11,25 92:7 |
| **condone (1)** | 6:7,22,25 | 73:6,19 | **day (14)** | 92:13 97:13 |
| 65:10 | 11:16 18:17 | **credible (1)** | 4:25 5:5,11,15 | 98:6 |
| **conduct (4)** | 20:19 39:5 | 100:5 | 5:17,22 9:11 | **defendant's (3)** |
| 41:24 50:20 | 40:15 49:4 | **Cricket's (1)** | 31:6,12 32:7 | 23:16,22 71:12 |
| 53:24 82:21 | 57:3 78:25 | 17:2 | 33:18 38:19 | **defendants (3)** |
| **confirmed (1)** | 102:9 | **cross (2)** | 102:19 | 1:12 2:8 3:21 |
| 65:18 | **corresponde...** | 59:3 91:23 | 105:20 | **Defendants' ...** |
| **confrontatio...** | 72:19 73:2 | **cross-talk (1)** | **day-to-day (2)** | 103:19 |
| 67:23 | **counsel (10)** | 13:6 | 55:7,8 | **delegated (1)** |
| **connection (7)** | 3:3,23,24 7:10 | **crossed (1)** | **December (6)** | 66:10 |
| 4:6 21:12,13 | 7:25 13:6,18 | 64:20 | 1:13 47:15,20 | **deliberate (2)** |
| 21:17,24 | 16:2 52:12 | **cumulation (1)** | 48:25 58:24 | 61:7,13 |
| 29:11 40:17 | 103:24 | 27:10 | 105:20 | **deliberately (...** |
| **consultation ...** | **counsel's (1)** | **cumulative (1)** | **deciding (1)** | 92:25 |
| 89:16 | 9:18 | 27:8 | 27:10 | **depends (1)** |
| **contact (2)** | **Counselor (1)** | **cusp (1)** | **decision (6)** | 77:2 |
| 58:13 64:5 | 52:9 | 57:24 | 77:18,21 89:10 | **deposition (3)** |
| **content (2)** | **countless (1)** | **cut (2)** | 89:13,14 94:5 | 1:15 3:19 96:3 |
| 72:6,13 | 99:24 | 32:9 33:19 | **Defendant (69)** | **derogatory (1)** |
| **contents (2)** | **COUNTY (1)** | **CV (1)** | 1:15 2:16 3:17 | 20:12 |
| 15:24 18:2 | 105:5 | 1:6 | 4:18 10:6 | **description (2)** |
| **continue (1)** | **couple (1)** | | 12:21 13:11 | 72:25 103:7 |
| 74:19 | 27:19 | **D** | 14:3,7 18:9 | **desist (1)** |
| **continued (1)** | **court (19)** | | 18:22 19:5 | 25:19 |
| 62:3 | 1:2 3:22 4:4,10 | **D (2)** | 20:25 22:14 | **details (1)** |
| **contract (3)** | 4:15 6:22 7:2 | 102:2 104:2 | 23:2,10 29:19 | 8:24 |
| 80:20 81:6,7 | 7:19,24 16:25 | **Danielle (15)** | 33:21 41:21 | **devices (1)** |
| **control (10)** | 19:10 21:11 | 1:9 2:10 9:3,6 | 44:23 51:16 | 49:8 |
| 55:4,5 66:3 | 21:19,22 | 9:22,23 11:12 | 51:23 52:17 | **difference (1)** |
| 93:19 94:7,12 | 28:22 29:10 | 11:19 14:16 | 52:20 54:22 | 72:8 |
| 94:15,16,22 | 36:24 42:10 | 14:23 52:15 | 55:4,18 56:2 | **different (1)** |
| 95:3 | 90:15 | 55:15 63:10 | 56:8,23,24 | 21:16 |
| **conveniently ...** | **courthouse (3)** | 66:13 82:7 | 58:2,6 59:2 | **dinner (1)** |
| 12:17 | 31:7 34:11 | **date (6)** | 59:20 60:16 | 84:20 |
| **conversation...** | 38:20 | 1:13 16:19 | 60:25 62:9,12 | **dipped (1)** |
| 15:13,25 16:3 | **courtroom (2)** | 26:8 45:3 | 62:23 64:8,13 | 64:23 |
| 16:9 32:15,21 | 34:18 88:10 | 47:16 91:4 | 64:20 65:11 | **dipping (1)** |
| 32:22,23 | **cover (2)** | **dated (2)** | 66:15,19 68:3 | 65:13 |
| | | 18:16 103:9 | | |

| direct (15) | 45:21 67:17 | EK (1) | Excuse (1) | 57:15 58:2,7 |
|---|---|---|---|---|
| 28:24 29:2 | 71:9 96:21,25 | 1:6 | 48:22 | 62:4,10,17 |
| 35:5,9 42:17 | DOCUMEN... | Empire (1) | exhibit (48) | 68:6 69:14,20 |
| 44:6 55:6 | 104:8,9 | 2:17 | 6:14,14,15,17 | 69:21 76:11 |
| 63:14,18 | doing (5) | employer (2) | 7:12,14,18,18 | 78:12 79:6 |
| 66:12 71:3,16 | 5:24 52:16,22 | 68:3 80:12 | 7:22,22 8:3,5 | 81:18 84:3 |
| 75:2 93:19 | 86:22 87:15 | enter (1) | 8:10 18:5,6 | 86:7 91:2 |
| 95:3 | Don (2) | 85:10 | 28:3,4,5 | 92:2,3 93:25 |
| directed (2) | 88:14,19 | entrance (3) | 34:24,25,25 | 97:17 99:3 |
| 4:18 55:8 | door (2) | 37:14 38:3,7 | 35:2 37:3,4 | 101:4 |
| Directing (1) | 45:7,9 | entry (1) | 39:4,7,11,11 | fairly (1) |
| 22:5 | draw (4) | 73:7 | 39:15,15 | 84:2 |
| direction (7) | 19:11 27:18 | err (1) | 41:16,17 63:5 | false (1) |
| 5:18,23 20:15 | 34:23 66:23 | 100:17 | 63:6,15 66:24 | 30:10 |
| 52:4,12,13 | due (4) | ESQ (2) | 66:25 71:4,5 | familiar (19) |
| 97:25 | 99:2,7,8,14 | 2:13,18 | 75:3,4 89:21 | 8:9,12 23:24 |
| directly (3) | duly (3) | essence (1) | 89:22 90:17 | 28:8 41:20 |
| 17:14 59:4 | 3:6 102:5 | 79:3 | 96:16,17 | 71:8,14 75:12 |
| 94:18 | 105:11 | estimation (1) | 103:6,6 | 75:15,18,24 |
| director (1) | | 60:11 | exhibits (5) | 76:6,9 79:12 |
| 69:9 | —— E —— | Eugene (3) | 3:2 6:24 7:9 | 79:15,20 |
| discussion (2) | E (9) | 86:16,20 87:12 | 103:4,24 | 89:25 90:8 |
| 25:22 26:7 | 2:2,2 3:5,5 | event (3) | Explain (1) | 96:20 |
| dislike (1) | 102:2 103:2 | 16:21 57:8 | 99:20 | far (1) |
| 78:22 | 104:2 105:2,2 | 74:2 | | 20:13 |
| Dismiss (1) | e-mail (5) | events (1) | —— F —— | Federal (1) |
| 23:23 | 16:20 18:15 | 58:20 | F (1) | 1:16 |
| District (5) | 73:2,10 | everybody (1) | 105:2 | fee (2) |
| 1:2,2 88:7,8,16 | 103:12 | 66:4 | face (5) | 56:3,8 91:25 |
| division (1) | e-mails (1) | evidence (16) | 22:9,15 64:22 | feet (3) |
| 77:10 | 70:20 | 14:14,20,25 | 65:12 90:19 | 45:7,11 64:9 |
| DMV (23) | Eamon (6) | 32:13 50:2,4 | facing (2) | felt (1) |
| 1:10 2:11,15 | 75:9,12,19 | 50:5 92:11 | 45:12,13 | 26:4 |
| 2:16 16:3 | 76:2,11,14 | 93:2,8,10,12 | fact (3) | field (1) |
| 51:17 67:20 | earlier (3) | 93:14,17,21 | 11:10 32:13 | 95:14 |
| 69:9 70:7,23 | 53:3 69:24 | 93:23 | 62:22 | fight (1) |
| 73:2,7,19 | 80:15 | exact (1) | factor (1) | 36:14 |
| 74:2 75:18 | East (1) | 25:25 | 27:10 | file (2) |
| 76:10,13 | 3:15 | exactly (1) | facts (1) | 2:19 51:8 |
| 77:11 80:6,10 | EASTERN (1) | 45:4 | 14:25 | filed (1) |
| 80:20 81:7 | 1:2 | examination ... | fair (34) | 3:19 41:10 |
| 95:11 | eight (4) | 3:9 101:11 | 25:7,10 26:14 | 78:14 |
| docket (1) | 82:3 96:6,7,13 | 104:4 105:10 | 26:15 27:14 | filings (1) |
| 75:7 | either (4) | 105:12 | 29:24 33:24 | 33:8 |
| document (7) | 25:4 55:12 | examined (1) | 50:23 51:2 | fine (11) |
| 8:9 41:21 | 60:19 80:14 | 3:8 | 56:22 57:12 | 4:16 18:4 24:7 |

| | | | | |
|---|---|---|---|---|
| 34:22 36:8 | 74:23 75:22 | **GE (2)** | 85:1,4 86:1 | 22:8 |
| 37:2,25 38:9 | 77:17 78:17 | 84:25 85:12 | 87:1,13 88:1 | **go (16)** |
| 39:19 44:4 | 81:20 84:8 | **Gelbstein (13...** | 89:1 90:1 | 8:20 12:10 |
| 72:24 | 85:6 86:24 | 1:8,15 2:9 3:1 | 91:1 92:1 | 18:5 19:14 |
| **FIRM (1)** | 87:18 91:18 | 3:13,17 4:1 | 93:1,2 94:1 | 20:14 28:3 |
| 2:3 | 92:5,17 93:5 | 4:18 5:1 6:1 | 95:1 96:1 | 34:25 37:2 |
| **first (14)** | 94:10,25 95:9 | 7:1 8:1,20 9:1 | 97:1 98:1 | 41:13 42:8 |
| 3:6 8:4 18:13 | 98:9 99:5 | 10:1 11:1 | 99:1 100:1 | 53:5 63:5 |
| 23:22 28:24 | 100:11 101:7 | 12:1 13:1 | 101:1 102:1 | 77:10 89:20 |
| 29:2 35:6,9 | **formalize (1)** | 14:1 15:1,25 | 102:15 103:1 | 96:2,16 |
| 36:3,4 63:17 | 45:21 | 16:1,4 17:1 | 104:1 105:1 | **goes (5)** |
| 63:19 82:17 | **forth (2)** | 18:1,9 19:1 | **Gelbstein's (1)** | 4:7,10 6:14 |
| 102:5 | 70:21 105:11 | 20:1 21:1 | 88:10 | 77:5 92:20 |
| **fist (2)** | **forward (1)** | 22:1 23:1 | **general (6)** | **going (21)** |
| 64:23 65:13 | 96:2 | 24:1 25:1 | 2:8 12:3 16:14 | 4:17 6:23 10:8 |
| **five (1)** | **forwarded (2)** | 26:1 27:1 | 17:14 86:6,10 | 15:21 32:9 |
| 17:11 | 7:9 17:13 | 28:1 29:1,19 | **George (8)** | 33:19 35:5 |
| **Five-page (2)** | **found (3)** | 30:1 31:1,19 | 36:23 37:7,9 | 37:12 42:17 |
| 103:18,21 | 88:15 100:4,5 | 32:1 33:1 | 37:13,15 38:2 | 49:6 51:8,13 |
| **Floor (1)** | **Four-page (3)** | 34:1 35:1 | 38:10,11 | 70:20 72:12 |
| 2:12 | 103:11,14,15 | 36:1 37:1 | **Gervazi (3)** | 72:13 73:9,9 |
| **followed (4)** | **fourth (4)** | 38:1 39:1 | 86:17,20 87:12 | 73:12,13 77:7 |
| 36:11 39:3,8 | 36:9 71:17,17 | 40:1 41:1,21 | **getting (1)** | 77:14 |
| 39:21 | 72:21 | 42:1 43:1 | 65:11 | **good (2)** |
| **following (1)** | **freedom (1)** | 44:1,23 45:1 | **giggle (1)** | 21:12,13 |
| 37:17 | 82:17 | 46:1 47:1 | 22:24 | **grand (1)** |
| **follows (1)** | **friends (1)** | 48:1 49:1 | **giggling (2)** | 87:7 |
| 3:8 | 84:19 | 50:1 51:1,16 | 23:9,15 | **great (1)** |
| **footage (1)** | **FU (1)** | 52:1,17 53:1 | **give (20)** | 100:3 |
| 97:3 | 22:9 | 53:4,5 54:1 | 8:23 9:18 | **grievance (10)** |
| **foregoing (1)** | **fuck (2)** | 55:1 56:1 | 21:14,17 24:8 | 75:19,20,25 |
| 102:8 | 19:14 90:20 | 57:1 58:1 | 25:12 29:13 | 76:10 77:4,7 |
| **form (52)** | **full (1)** | 59:1 60:1 | 41:16 43:10 | 77:14 78:9 |
| 5:21 6:2 10:9 | 38:19 | 61:1 62:1 | 48:21 49:13 | 79:5,10 |
| 11:15 14:10 | **furnished (2)** | 63:1 64:1 | 49:17,19,20 | **grieve (5)** |
| 15:10 21:6 | 16:15,17 | 65:1 66:1 | 49:21,25 87:2 | 76:18,23,24,25 |
| 24:3 25:9 | **further (6)** | 67:1 68:1 | 87:8 96:4,13 | 78:20 |
| 27:7 30:14 | 8:24 29:16 | 69:1 70:1 | **given (5)** | **grieved (3)** |
| 34:2 40:17 | 37:11 101:9 | 71:1,12 72:1 | 99:2,21,24 | 78:3,5,8 |
| 48:7 50:25 | 102:8 105:14 | 72:21 73:1,20 | 102:10 | **Group (11)** |
| 52:19 57:5,14 | | 74:1,5 75:1 | 105:13 | 1:10 2:11 68:2 |
| 58:10 61:4,12 | **G** | 76:1 77:1 | **giving (2)** | 68:11,15,21 |
| 61:19 62:6 | **G (3)** | 78:1 79:1 | 50:20 99:14 | 69:4,14,18 |
| 65:2,5,15 | 3:5 37:19,22 | 80:1 81:1 | **glare (1)** | 80:21 103:18 |
| 67:9 68:8,23 | **garbage (4)** | 82:1,18 83:1 | 22:15 | **guard (11)** |
| 70:2,17 74:8 | 60:12,15,18,22 | 83:7 84:1 | **glared (1)** | 19:13 20:4 |

22:7,14 33:22
60:25 66:21
67:25 68:2
80:5,10
guess (1)
95:2
guilty (4)
85:2,8,10 86:6

_____ H _____

H (3)
1:3 2:3 103:2
habitual (1)
84:19
hallway (1)
45:8
Han (2)
36:23 37:9
Han's (1)
37:7
hand (3)
59:3 91:22
105:20
handle (3)
87:3,5,11
hands (1)
7:5
handwritten ...
29:14
happen (2)
12:19 46:21
happened (4)
31:3,9 32:6
40:3
happens (2)
35:12 75:10
happy (1)
65:17
harassed (1)
62:8
harassment (7)
58:6 62:3,7,9
68:13 69:3
74:18
harassments ...
58:12

hard (1)
14:18
head (3)
28:18 64:23
65:13
hear (9)
3:25 4:2,6,8
13:17,21
21:20 23:12
76:5
heard (1)
13:20
hearing (5)
14:18 49:17,19
49:20,24
held (1)
1:16
help (1)
77:6
helping (1)
77:15
hereinbefore...
102:11 105:11
hereunto (1)
105:19
hierarchy (1)
66:5
hire (2)
31:4,17
hired (4)
31:5,10 81:3,5
honestly (2)
39:16 90:23
hours (2)
5:8,9
house (1)
38:20
hyphenated (1)
17:6

_____ I _____

Ida (12)
1:8 2:9 15:4,11
15:14,18 16:2
16:6,7,10
72:21 77:11

idea (3)
64:15 92:22
97:6
illicit (2)
100:13,17
illicited (1)
100:8
imagine (2)
9:16 38:24
immediate (1)
35:16
impression (1)
7:3
incapable (2)
12:5 54:9
inches (2)
64:22 65:12
incident (20)
12:20 13:13
18:21 39:20
40:6 47:19,23
47:25 49:2
52:21 73:3
91:3,21 93:24
97:4,12 103:8
103:11,17,18
incidents (1)
99:25
including (1)
66:11
incompetent ...
12:4 54:9
independent ...
40:11,12
indicate (1)
44:9
indicated (5)
53:3,4 80:14
82:13 98:4
indicates (6)
36:9,10 37:10
37:11 62:15
82:7
indifference ...
61:8,14
indifferent (1)

61:22
individual (9)
1:8,8,9 2:9,9
2:10 61:25
64:6 85:24
individually ...
101:2
information ...
97:8 99:23
104:8,9
initiated (1)
47:6
input (1)
77:20
instance (1)
43:19
instruct (3)
16:5 72:3
73:14
instructed (1)
92:18
intend (1)
96:2
interactions (...
50:14
interested (1)
105:17
intervention ...
26:6
introduced (...
8:7 18:8 28:7
35:4 37:6
41:19 63:8
67:3 71:7
75:6 89:24
96:19
investigate (6)
26:16 29:18
30:12 34:5
36:15 40:7
investigated ...
26:22 27:20
29:21 30:11
31:18 57:10
investigation...
56:12,15,19,21

57:8,9,20
75:25
investigation...
95:14
involved (7)
48:10 51:15,22
53:11,16
67:20 89:18
involvement ...
53:20
issue (1)
74:21
issues (1)
77:6
Item (3)
19:11,12 44:6

_____ J _____

JAMES (1)
2:13
james.thomp...
2:14
Jamie (3)
1:17 105:7,23
January (2)
29:6 30:7
Jeff (1)
100:16
Jewish (6)
44:12 83:6,12
83:15,22,24
job (1)
66:6
join (1)
81:25
judge (21)
8:20 15:25
16:4 23:20
25:5 46:21
50:11,13,15
53:3,5 65:22
67:12,12 83:7
86:13 87:13
88:10 93:2
97:16 99:8
judges (3)

| | | | | |
|---|---|---|---|---|
| 31:8 65:25 66:7 | 39:25 97:10,14 | 2:15 8:23 9:18 | 77:2 | 21:21 28:21 |
| **Junc (2)** | **knowledge (2)** | 16:3 33:8 | **living (1)** | 29:16,16 42:9 |
| 56:7 91:11 | 64:12 67:14 | 54:24 66:7 | 84:21 | 63:15 |
| | **kykc (2)** | 89:4 97:19 | **location (1)** | **machinc (2)** |
| ——— K ——— | 44:25 46:22 | 99:6 | 21:16 | 7:5 92:19 |
| **keep (9)** | | **let's (5)** | **lodged (1)** | **mad (1)** |
| 10:20 20:13 | ——— L ——— | 7:22 18:5 28:3 | 25:15 | 54:15 |
| 92:11,12,15 | **L (3)** | 41:13 45:9 | **log (9)** | **Madame (1)** |
| 93:11,16 94:6 | 3:5,5 102:2 | **letter (32)** | 71:13,20 72:7 | 6:22 |
| 96:12 | **lady (1)** | 12:2 16:13,16 | 72:14,14,17 | **maintain (1)** |
| **kept (1)** | 87:20 | 16:18 17:9,13 | 73:6,18 | 93:11 |
| 93:14 | **languages (1)** | 17:18,22,24 | 103:20 | **making (7)** |
| **kind (3)** | 44:11 | 18:5,10,11 | **long (1)** | 22:16,20 25:4 |
| 45:16 59:19 | **laptop (1)** | 19:6 23:5 | 95:18 | 25:5 30:10 |
| 94:20 | 21:15 | 35:11 53:22 | **longer (1)** | 56:4,9 |
| **KINGS (1)** | **lasts (1)** | 54:2,3,6,8,18 | 49:3 | **man (1)** |
| 105:5 | 95:19 | 82:10,12,14 | **look (10)** | 54:20 |
| **knife (2)** | **late (2)** | 90:2,12,13,14 | 8:15 19:7 | **manage (1)** |
| 32:9 33:20 | 5:2,11 | 90:22 91:5,23 | 27:24 35:22 | 65:24 |
| **know (59)** | **laugh (1)** | 103:9 | 59:11 63:17 | **manner (1)** |
| 15:3,11 16:19 | 22:24 | **letters (2)** | 64:7,16 65:19 | 67:24 |
| 16:24 17:25 | **laughing (2)** | 82:21,25 | 72:21 | **March (6)** |
| 18:24 20:8,18 | 23:8,14 | **letting (1)** | **looked (1)** | 16:13 17:19 |
| 20:22 24:4 | **law (14)** | 52:20 | 39:4 | 18:16 53:22 |
| 29:22 30:6,8 | 2:3 15:7 51:18 | **Levine (3)** | **looking (1)** | 54:3 82:11 |
| 32:6,15,16 | 66:8 77:3,13 | 28:9,12 55:16 | 18:25 | **Mario (4)** |
| 33:6 34:3,4,6 | 77:20 78:24 | **Liberty (1)** | **lose (2)** | 1:3 2:3 70:14 |
| 35:12 36:20 | 80:4 89:8 | 2:12 | 92:25 93:10 | 70:24 |
| 38:20 39:17 | 97:16,21,25 | **license (1)** | **losing (1)** | **MARK (3)** |
| 39:18 40:5,6 | 98:2 | 31:13 | 93:7 | 1:10 2:11,16 |
| 40:21 41:11 | **lawful (1)** | **lie (1)** | **lost (1)** | **marked (18)** |
| 41:12 43:21 | 89:6 | 47:2 | 31:6 | 3:3 6:15 7:25 |
| 45:16 47:18 | **lawfully (1)** | **liked (1)** | **lot (4)** | 8:2,6 18:7 |
| 47:22 51:21 | 88:25 | 78:19 | 35:6 37:14 | 28:6 35:3 |
| 52:11 62:14 | **lawyer (4)** | **line (4)** | 38:4,7 | 37:5 41:18 |
| 63:9 64:7 | 75:10 85:19 | 8:19 36:10 | **lull (1)** | 63:7 67:2 |
| 65:8 71:10 | 87:22 88:9 | 74:12 104:16 | 81:23 | 71:6 75:5 |
| 76:7,16 77:3 | **laying (1)** | **listen (1)** | **lying (1)** | 89:23 96:18 |
| 80:18 81:9,11 | 59:18 | 72:9 | 39:24 | 103:4 104:15 |
| 83:6,21 84:21 | **LB (1)** | **litigation (11)** | | **marker (1)** |
| 92:20,24 | 1:6 | 70:7,8,14,23 | ——— M ——— | 71:19 |
| 94:17,20 | **leave (2)** | 73:4,6,11,25 | **M-E-L-A-N-...** | **marriage (1)** |
| 95:13,18 | 8:22 49:8 | 74:11,14,17 | 28:11 | 105:16 |
| 96:10,23 97:5 | **left (1)** | **little (2)** | **M-O-R-G-A-...** | **matter (5)** |
| **knowing (3)** | 8:24 | 37:10 45:5 | 17:4 | 75:8,9,16 |
| | **legal (10)** | **livelihood (1)** | **Ma'am (6)** | 103:21 |

| | | | | |
|---|---|---|---|---|
| 105:18 | **Motion (1)** | 1:2,17 2:5,5,7 | 13:4,15,23 | occasions (4) |
| mean (3) | 23:22 | 2:13,13,18 | 14:9,24 15:9 | 36:11 42:19 |
| 20:25 51:21 | motorist (2) | 3:7,16 15:8 | 21:5 24:2 | 85:22 100:6 |
| 85:21 | 46:14,16 | 51:18 68:15 | 25:8 30:13 | occur (2) |
| **Melanie (2)** | motorists (4) | 105:4,8 | 31:16,21 32:4 | 92:23 93:20 |
| 28:8,11 | 50:16 85:2,7 | **Newman (3)** | 32:12 33:4,25 | occurred (8) |
| memorandu... | 85:10 | 1:17 105:7,23 | 40:16 44:3 | 9:15 18:22 |
| 103:23 | move (2) | normal (1) | 47:3 48:6,16 | 40:6 57:23 |
| mention (1) | 21:15 60:24 | 5:7 | 50:24 51:10 | 67:10,11 94:4 |
| 62:22 | moved (2) | Notary (4) | 51:20 52:6,18 | 100:7 |
| merit (3) | 60:7,13 | 1:17 3:7 | 52:23 53:18 | offended (3) |
| 78:13,13 79:4 | moving (3) | 102:22 105:7 | 54:23 57:4,13 | 54:7,12,13 |
| messed (1) | 36:13 39:9,23 | note (6) | 58:9 61:3,11 | offenses (1) |
| 21:25 | **Myer (1)** | 8:18 10:13 | 61:18 62:5 | 46:7 |
| midway (2) | 100:16 | 31:15,20 | 64:10,25 | offered (1) |
| 45:8,11 | | 63:21 96:24 | 65:14 67:8 | 33:14 |
| mine (2) | ———————— | notes (47) | 68:7,22 69:15 | office (47) |
| 48:14,15 | **N** | 103:14,22 | 69:25 70:16 | 2:7 19:25 20:3 |
| minor (1) | **N (5)** | **Notice (1)** | 75:21 76:3 | 22:7,17,21 |
| 26:4 | 2:2 3:5,5 102:2 | 1:16 | 77:16,23 | 26:7 28:14 |
| minute (2) | 104:2 | notification (1) | 78:16 79:7 | 41:6,10 43:2 |
| 21:15,18 | name (6) | 88:11 | 80:7 81:19 | 45:6,9,10 |
| minutes (5) | 3:11 17:2,5 | number (10) | 83:2 84:7 | 50:15 55:19 |
| 82:4 96:6,7,14 | 37:8,9 63:9 | 8:23 9:19 | 85:5,17 86:23 | 55:22 56:13 |
| 98:24 | names (1) | 19:11,12 | 87:17 88:20 | 58:14,17 59:6 |
| misconduct (3) | 55:14 | 22:18,19 44:7 | 89:3,11 92:4 | 59:15 65:25 |
| 23:25 26:25 | near (1) | 44:7 73:16 | 92:16 93:4,9 | 66:2,4 67:13 |
| 30:3 | 59:16 | 103:7 | 93:13,18 94:2 | 69:23 73:19 |
| missed (1) | necessary (1) | numerous (1) | 94:9,24 95:8 | 76:18 77:25 |
| 22:11 | 46:2 | 42:19 | 97:18,22 98:8 | 78:3,6 83:10 |
| missing (1) | need (2) | **NY (2)** | 99:4,9,13 | 83:11,12,16 |
| 98:25 | 3:18 24:11 | 1:10 2:11 | 100:10,19 | 83:18,25 84:2 |
| moment (1) | negligent (1) | | 101:6 | 84:6,18 87:6 |
| 41:16 | 54:21 | ———————— | objectionabl... | 90:3 91:16 |
| money (1) | never (27) | **O** | 72:2 | 94:14 100:25 |
| 32:8 | 24:22 26:12 | **O (1)** | observe (3) | 101:2 |
| **MONTENA ...** | 30:6 31:18 | 102:2 | 10:6,10,11 | officers (3) |
| 2:18 | 32:2,17,23 | obey (1) | observed (4) | 8:21 50:16 |
| morning (17) | 33:21,22 | 20:16 | 15:12 83:5,9 | 53:6 |
| 4:20 9:21 | 48:19,20 51:5 | object (10) | 83:11 | official (3) |
| 12:18 13:3,9 | 65:18,19 | 10:9 15:22 | observing (1) | 1:11 2:12,17 |
| 13:12 14:4,15 | 68:16 69:13 | 27:6 65:4 | 10:18 | Oh (2) |
| 14:22 15:4 | 78:3,5,6 | 72:3 73:13,13 | obviously (1) | 69:6 98:17 |
| 15:20 20:21 | 80:22 86:3,14 | 74:7,22 91:17 | 67:22 | okay (2) |
| 51:18 62:13 | 88:18 92:6,18 | objection (87) | occasion (3) | 37:2 43:24 |
| 64:17 92:8,14 | 95:4 100:23 | 5:20,25 10:14 | 43:8,9,10 | **Once (1)** |
| | **New (15)** | 11:2,14 12:22 | | |

84:13
**One-page (2)**
103:12,22
**ones (1)**
24:4
**operating (2)**
97:20,24
**opinion (4)**
63:25 64:3,3
64:24
**opportunity ...**
24:9 25:2,6,12
35:21 40:23
48:20 49:10
49:13,21,25
50:21 78:7
99:15,18
**opposed (1)**
77:14
**opposite (1)**
20:14
**order (2)**
9:6 20:16
**ordinance (1)**
79:25
**outcome (1)**
105:17
**outside (4)**
34:11,17,18
45:6

_____
**P**
**P (2)**
2:2,2
**P-E-C (1)**
80:14
**P.M (1)**
101:10
**page (22)**
8:4,16,19 19:7
19:9 23:6
28:21,25 29:8
29:9,12,14
37:22 42:6,9
42:11,13
63:15 103:6

104:4,9,16
**paid (6)**
65:22,24 80:16
81:11,13,15
**paper (2)**
60:9,20
**papers (1)**
33:8
**paragraph (1...**
23:7 28:25
29:3 35:6,10
35:25 36:3
37:12,18,19
37:22 39:12
42:18 44:7,9
63:18,19
**pardon (5)**
5:19 9:25
18:25 52:9
94:11
**parking (3)**
37:14 38:4,7
**part (7)**
16:20 35:10
45:13,15
67:19 79:23
95:16
**particular (9)**
24:14 25:22
30:16,24
35:25 43:9
45:15 46:5
76:8
**particularity...**
57:7
**parties (2)**
48:10 105:15
**pass (1)**
55:19
**Paul (1)**
30:19
**pause (1)**
95:22
**pay (1)**
25:16
**PEC (17)**

1:9 2:11 68:2
68:11,15,20
69:4,13,17
80:19,21 81:5
81:6,11,13,15
103:18
**people (7)**
67:24 69:11
83:17 89:16
95:13,15
99:24
**Perez (7)**
29:5 30:7,19
31:3,17 32:7
33:19
**period (2)**
25:14 27:11
**permitted (4)**
84:11,13,13,15
**person (6)**
8:13 58:13
60:16 79:24
88:9 94:16
**personal (1)**
5:12
**personally (8)**
10:22 42:20
51:15,22
53:11,16
55:21 89:17
**petitioner (3)**
42:20 44:10,24
**phone (5)**
8:23 9:19
38:22,25
91:14
**physical (1)**
58:13
**physically (2)**
9:12 64:6
**piece (2)**
92:22,23
**place (2)**
2:4 102:11
**Plaintiff (3)**
1:4,15 2:4

**Plaintiff's (16)**
6:15,17 8:3,5
18:6 28:5
35:2 37:4
41:17 63:6
66:25 71:5
75:4 89:22
96:17 103:4
**Plaza (1)**
2:17
**plead (1)**
85:7
**pleading (2)**
84:25 86:5
**pleas (1)**
85:10
**please (6)**
3:11 14:2 19:9
22:12 28:20
42:8
**point (16)**
4:22,23 9:16
10:23 21:3
22:23 25:11
34:7,19 66:21
70:25 84:16
84:23 87:25
88:3,14
**pointed (1)**
59:3
**police (15)**
8:8,21 20:24
34:4 50:16
53:2,5,6,9
62:15,20 63:3
63:3,22 82:6
**portion (1)**
29:14
**pose (1)**
72:10
**position (1)**
36:4
**possession (6)**
6:16,20 10:20
16:12 17:9
82:10

**possible (1)**
70:23
**practice (7)**
12:11 15:7
51:17 77:3,13
77:19 78:24
**precipitated ...**
46:10 47:5
**precisely (1)**
96:14
**predisposed ...**
12:14
**premises (1)**
84:15
**prepared (2)**
73:3,5
**presence (1)**
59:24
**present (5)**
12:18 49:22
50:2,21 78:8
**presented (8)**
23:21 24:20
48:24 49:15
50:3,5 93:15
100:23
**Pretty (1)**
91:14
**previous (2)**
29:8 39:14
**previously (14)**
3:3 8:16 8:7
28:6 35:3
37:5 41:18
63:7 67:2
71:6 75:5
89:23 96:18
103:4
**Pricket (1)**
17:4
**Pricket-Mor...**
12:3 16:14
17:4,7,15
54:4 82:13
**principal (4)**
28:19 55:12

| | | | | |
|---|---|---|---|---|
| 60:5 66:6 | 10:12 14:16,21 | 88:15,19 | 18:13 22:2,10 | 3:12 105:12 |
| **principally (1)** | 16:22 18:22 | **R** | 22:16,20 23:8 | **recording (1)** |
| 65:25 | 92:13 | **R (3)** | 23:14 25:24 | 94:19 |
| **prior (2)** | **pushed (1)** | 2:2 102:2 | 26:2,8 29:20 | **rectify (2)** |
| 16:21 74:2 | 91:12 | 105:2 | 29:25 30:16 | 19:19 68:5 |
| **privilege (6)** | **put (6)** | **Rabinowitz (2)** | 30:19,20 | **redacted (3)** |
| 15:23 71:13,20 | 7:3,15,20 | 87:21 88:16 | 31:22,25 | 97:3,7,9 |
| 73:18 103:14 | 42:25 71:19 | **racist (1)** | 32:20 36:17 | **reference (2)** |
| 103:20 | 95:6 | 46:15 | 39:16 40:25 | 32:18 57:16 |
| **privileged (1)** | **putting (1)** | **re-asked (1)** | 40:25 43:12 | **referring (4)** |
| 71:22 | 6:24 | 13:6 | 43:18 44:15 | 24:5 29:8 |
| **PRO (1)** | | **re-records (1)** | 45:23 47:4,17 | 44:11 83:22 |
| 2:4 | **Q** | 92:21 | 48:8 49:5 | **regard (7)** |
| **probably (2)** | **question (61)** | **reached (1)** | 56:4,9,14,18 | 22:19 30:18 |
| 11:9 87:9 | 5:21 6:2 10:9 | 57:21 | 57:6,18,19,20 | 32:21 50:13 |
| **problem (1)** | 11:15 12:24 | **reaction (1)** | 58:15,21,24 | 50:15 93:22 |
| 77:5 | 13:7,25 14:2 | 18:3 | 59:5,10,13,14 | 99:25 |
| **problems (1)** | 14:10 15:19 | **read (8)** | 59:21,25 | **regarding (1)** |
| 96:5 | 16:6,9 19:3 | 22:18 35:23 | 60:22 61:2,5 | 73:3 |
| **Procedure (1)** | 21:6 22:6,11 | 37:13 39:13 | 62:25 64:18 | **regardless (1)** |
| 1:16 | 22:19 23:13 | 53:22 62:20 | 65:21 66:22 | 64:4 |
| **process (4)** | 24:12,13,15 | 79:17,19 | 67:4,16,17 | **regular (1)** |
| 99:2,7,8,14 | 24:16 27:3 | **reading (4)** | 71:2 88:5,6 | 95:15 |
| **produce (1)** | 30:14 33:18 | 23:4 37:20 | 88:12 90:21 | **regulate (1)** |
| 72:17 | 34:14 38:18 | 39:6 42:2 | 90:24,25 91:3 | 81:17 |
| **produced (2)** | 40:10 41:14 | **reads (1)** | 91:7,10,15,19 | **regulation (1)** |
| 71:20 90:6 | 41:15 43:23 | 8:19 | 91:20,21,23 | 79:25 |
| **product (1)** | 44:2,8 52:19 | **ready (2)** | 91:24 92:10 | **related (1)** |
| 15:24 | 61:12,21 65:5 | 81:25 82:2 | 100:21 | 105:15 |
| **proffered (1)** | 65:6 68:10 | **really (3)** | **receive (2)** | **relayed (1)** |
| 48:17 | 71:24 72:10 | 41:15 77:9,9 | 24:6 51:3 | 9:15 |
| **promise (1)** | 72:12,13 | **rear (2)** | **received (6)** | **remain (1)** |
| 25:20 | 73:14,17,22 | 91:12,13 | 18:15 41:4,7 | 56:25 |
| **protocol (1)** | 74:5,23 78:11 | **reason (5)** | 41:11 51:5 | **remark (1)** |
| 94:20 | 84:9 85:6 | 5:15 79:9 84:5 | 82:14 | 46:15 |
| **provoked (1)** | 86:24 87:18 | 85:14,16 | **receiving (1)** | **remember (22)** |
| 93:24 | 91:18 92:5,17 | **reasons (1)** | 18:10 | 12:12 17:20 |
| **Public (4)** | 94:25 97:23 | 85:15 | **recognize (1)** | 20:9 30:23 |
| 1:17 3:7 | 98:9 99:5 | **recall (92)** | 37:7 | 31:24 39:10 |
| 102:22 105:7 | 104:16 | 5:2,24 6:4,8 | **recollection (1)** | 44:22 45:3,14 |
| **purposefully ...** | **questioning (2)** | 9:13 10:3,15 | 26:23 | 46:11 47:21 |
| 12:25 13:8 | 72:6,7 | 10:17,19,25 | **recommenda...** | 47:22 51:25 |
| 97:9 | **questions (6)** | 11:8 12:6 | 95:7 | 56:20 58:19 |
| **pursuant (1)** | 4:13,17 66:8,8 | 15:16 16:11 | **recommende...** | 59:19 60:3,4 |
| 1:16 | 71:25 104:15 | 17:8 18:2,10 | 95:5,11,13 | 60:10,10,17 |
| **push (6)** | **Quixote (2)** | | **record (2)** | 60:18 |

| | | | | |
|---|---|---|---|---|
| removal (6) | 19:10 21:11 | 90:12 91:2 | 2:5 | scroll (3) |
| 5:4 15:19 | 21:19,22 | responsibile ... | room (5) | 8:3 19:9 28:21 |
| 51:16 53:11 | 28:22 29:10 | 94:18 | 2:17 8:21 53:5 | scrolled (2) |
| 53:17 89:18 | 42:10 90:15 | responsibilit... | 86:6,11 | 42:11 90:16 |
| remove (4) | reports (1) | 68:19 69:19,22 | rooms (1) | SE (1) |
| 9:12 51:7,24 | 20:24 | responsible (1) | 85:23 | 2:4 |
| 53:6 | represent (1) | 66:14 | row (3) | seared (2) |
| removed (38) | 31:4 | rest (3) | 71:17,17 72:22 | 45:16,17 |
| 5:17,22 6:4,9 | represented (... | 45:14 90:14,17 | rug (2) | second (4) |
| 6:10 9:7,11 | 29:4 30:7 86:3 | result (1) | 57:12 93:7 | 8:16 23:6 |
| 9:18 11:4 | representing ... | 57:19 | Rules (1) | 29:13 37:12 |
| 12:15 15:5 | 85:25 | results (2) | 1:16 | security (14) |
| 25:7 26:25 | REQUESTE... | 56:18,21 | RULINGS (1) | 19:13 20:4 |
| 27:5,22 30:4 | 104:8 | retained (1) | 104:15 | 22:7,14 33:22 |
| 43:14 44:19 | required (1) | 103:24 | _____ | 60:24 64:21 |
| 46:4,8 47:12 | 26:5 | review (1) | S | 66:20 67:25 |
| 47:14,18 | requirement... | 17:11 | | 68:2 80:5,9 |
| 50:18 52:3 | 86:6,10 | reviewed (1) | S (3) | 95:5,12 |
| 53:21 82:5,9 | reschedule (1) | 92:6 | 2:2 3:5 103:2 | see (24) |
| 82:14,18 | 86:9 | revoked (1) | SADIQ (2) | 4:13 7:16 |
| 87:24 88:4,25 | rescheduling... | 31:13 | 1:9 2:10 | 18:12 19:15 |
| 98:12,15,18 | 85:3 | ridiculous (1) | salary (1) | 23:7 28:3 |
| 98:18,19 | resolve (2) | 60:12 | 80:17 | 34:13 37:9,23 |
| repeat (5) | 74:20 77:6 | right (47) | saw (6) | 37:24 38:5,8 |
| 14:2 23:13 | respect (7) | 4:14 8:17 | 11:8,25 18:11 | 38:12,16 |
| 27:3 61:10 | 17:24 41:24 | 18:23 20:21 | 18:14 53:7 | 41:22 42:7,12 |
| 97:23 | 47:25 59:9,12 | 22:4 24:7 | 80:22 | 63:24 72:23 |
| repeated (2) | 67:25 68:12 | 26:11 28:16 | saying (14) | 90:14,16 |
| 19:14 87:22 | respond (17) | 28:25 29:17 | 9:5 12:12 | 96:22 97:2 |
| rephrase (1) | 24:18,21,23 | 30:4,8 32:3 | 14:18 28:16 | 98:24 |
| 24:16 | 25:3,6,12 | 34:22 39:3 | 34:14 48:5 | seeing (2) |
| reply (1) | 32:5 40:23 | 41:25 43:16 | 49:5 51:6 | 22:3 90:21 |
| 26:13 | 43:2,5 49:11 | 43:25 44:19 | 56:16,23 | seen (1) |
| report (14) | 49:14 52:7 | 44:21 45:6 | 65:10 66:16 | 90:23 |
| 8:9 53:2,9 | 88:21 99:15 | 46:18 47:9,16 | 66:17 79:2 | sees (1) |
| 58:17 62:15 | 101:2,3 | 48:5 50:12 | says (10) | 20:14 |
| 62:20 63:3,4 | responded (1) | 53:7 65:20 | 9:16 35:10 | senior (1) |
| 63:22 64:2 | 50:10 | 68:25 72:18 | 37:15 38:2 | 67:12 |
| 67:4,6,15 | responding (1) | 73:7 74:21 | 39:2 47:10 | sent (2) |
| 82:7 | 61:17 | 77:13 82:17 | 63:19 71:11 | 72:15 82:12 |
| reported (3) | response (15) | 82:22 83:7 | 87:6,8 | sequences (1) |
| 69:4,6 100:4 | 19:19 20:6 | 89:18 92:9 | schedule (1) | 58:19 |
| Reporter (17) | 24:9 27:14,17 | 93:12 95:19 | 96:12 | serious (4) |
| 3:22 4:4,10,15 | 32:3 33:10 | 95:23 96:9,25 | SCHROEDE... | 25:15,17 26:5 |
| 6:22 7:2,19 | 41:6,8 50:2 | 98:6,13,16,21 | 1:10 2:12,16 | 26:23 |
| 7:24 16:25 | 50:22 51:4,9 | Rochelle (1) | screen (3) | service (2) |
| | | | 6:25 7:4,15 | |

| | | | | |
|---|---|---|---|---|
| 81:8,14 | 1:10 2:11 8:13 | specific (7) | 97:16,21,25 | supervise (1) |
| services (1) | 10:6 12:21 | 32:21 35:24 | 97:25 103:19 | 65:25 |
| 81:12 | 13:11 14:3,7 | 43:8,13 50:16 | 105:4,8 | supervising (3) |
| set (2) | 18:22 19:5 | 56:6 57:18 | stated (1) | 36:5 55:13 |
| 105:11,20 | 20:25 22:14 | specifically (4) | 73:10 | 67:12 |
| severe (1) | 23:2 33:21 | 24:5 27:25 | statement (18) | supervision (4) |
| 77:9 | 54:22 55:4,18 | 29:21 71:2 | 9:2 19:15,19 | 54:22 66:12,14 |
| severity (1) | 56:2,8,23,24 | specificity (10) | 19:21 27:15 | 95:3 |
| 77:3 | 58:3,6 59:2 | 17:21 24:13 | 29:24 30:11 | supervisor (10) |
| Sheldrake (1) | 59:20 60:4,15 | 26:3 30:17,24 | 32:18 33:2,24 | 28:14,15,17 |
| 2:4 | 60:16,25 | 31:22 43:22 | 36:16 38:12 | 35:17 40:10 |
| shocked (1) | 62:10,12,23 | 48:9 52:2 | 38:16 46:6 | 55:10 63:12 |
| 45:5 | 64:8,13,20 | 80:18 | 57:12,15 58:7 | 66:18 67:19 |
| short (1) | 65:11 66:12 | specified (1) | 99:3 | 94:18 |
| 35:8 | 66:19 68:3,4 | 102:11 | states (5) | supervisors (3) |
| show (8) | 68:13,20 70:4 | speculation (1) | 1:2 29:4 71:12 | 29:3 55:20 |
| 50:6,8 63:2,3 | 74:19 80:5,13 | 65:7 | 73:2 79:23 | 69:7 |
| 80:24 81:3 | 80:24 81:14 | speech (1) | stating (3) | supervisory (2) |
| 94:3 97:11 | 81:17 90:19 | 82:17 | 53:10,12,14 | 66:11 98:5 |
| showed (3) | 91:11,25 92:7 | spell (1) | statute (3) | supply (1) |
| 53:3 64:5 | 92:13 97:5,13 | 43:4 | 79:13,24 89:9 | 81:7 |
| 82:11 | 98:6,18 | spoke (8) | stole (4) | supposed (1) |
| shown (1) | Smart's (5) | 30:19,25 31:24 | 56:2,8,23 | 34:10 |
| 93:23 | 23:11,17 66:15 | 43:8,11 48:9 | 57:17 | sure (10) |
| side (1) | 69:20 80:16 | 68:15 70:4 | stood (1) | 12:23 19:10 |
| 66:7 | somebody (2) | spoken (2) | 59:2 | 21:19 24:11 |
| sidebar (2) | 87:9 99:14 | 64:5 68:18 | stop (3) | 48:9 68:10 |
| 85:2,3 | sorry (4) | SS (1) | 96:7,8,14 | 81:9 85:13 |
| sign (2) | 28:4 61:10 | 105:4 | stopped (6) | 90:13 98:14 |
| 59:3 91:22 | 81:2 98:17 | staff (1) | 36:12 37:15 | suspended (2) |
| signature (4) | sounds (1) | 66:11 | 38:10,11 39:8 | 31:7,13 |
| 42:5,7,12,14 | 34:20 | standing (1) | 39:22 | sweep (1) |
| singular (1) | spaces (1) | 59:16 | story (3) | 93:6 |
| 99:25 | 96:25 | stare (1) | 100:2,5,6 | swept (1) |
| sir (8) | spade (6) | 22:15 | Street (2) | 57:11 |
| 5:16 12:19 | 23:2,3,9,10,15 | stared (1) | 2:12 3:15 | sworn (3) |
| 20:19,23 | 23:16 | 22:8 | stuff (1) | 102:5,18 |
| 45:19 54:14 | Sparks (4) | start (2) | 60:19 | 105:11 |
| 54:16 77:22 | 19:13,23 20:5 | 7:23 82:2 | Subject (1) | |
| sit (2) | 20:10 | starting (1) | 99:12 | **T** |
| 38:22,24 | speak (2) | 37:18 | submitted (2) | T (5) |
| slash (2) | 34:10,15 | state (17) | 90:2,4 | 3:5 102:2 |
| 32:10 33:20 | speaking (1) | 1:17 2:7,17 3:7 | Subscribed (1) | 103:2 105:2,2 |
| slower (1) | 44:11 | 3:11 19:12 | 102:18 | TAHIR (2) |
| 29:12 | spear (2) | 44:23 79:25 | summary (1) | 1:9 2:10 |
| Smart (58) | 59:2 91:22 | 80:3 81:15 | 103:18 | take (23) |

| | | | | |
|---|---|---|---|---|
| 3:18 6:13 | 22:24 23:2,9 | 7:11,13 10:8 | **threatening (3)** | 11:18 15:6 |
| 8:15,18 17:23 | 23:15 51:9 | 10:13 11:2,14 | 42:20 43:5,15 | 20:11 31:12 |
| 19:18,22 | 88:7,8 | 12:22 13:4,15 | **threats (4)** | 32:8 33:19 |
| 27:24 33:9,11 | **tells (2)** | 13:21,23 14:9 | 58:12,12 68:13 | 34:8,8 45:4 |
| 33:22 39:17 | 87:12 90:20 | 14:17,24 15:9 | 69:2 | 49:2 53:4 |
| 48:14,15 | **term (1)** | 15:21 17:6 | **three (5)** | 54:8 60:24 |
| 52:21 59:8 | 67:7 | 21:5,8 24:2 | 29:5 31:4 | 62:16 82:8,8 |
| 61:24 63:21 | **terms (1)** | 25:8 27:6 | 64:22 65:12 | **top (4)** |
| 66:6,7 90:11 | 41:5 | 29:7 30:13 | 98:23 | 8:13 63:10 |
| 92:22,23 | **terribly (1)** | 31:15,20 32:4 | **Three-page (2)** | 71:12 72:14 |
| **taken (3)** | 77:9 | 32:12 33:4,25 | 103:16,23 | **totally (1)** |
| 1:15 48:18 | **territory (1)** | 40:16 44:3 | **throwing (1)** | 55:6 |
| 49:16 | 80:2 | 47:3 48:6,16 | 52:15 | **touch (1)** |
| **talk (3)** | **testified (1)** | 50:24 51:10 | **thrown (1)** | 59:21 |
| 30:21 34:16 | 3:8 | 51:20 52:6,10 | 11:11 | **traffic (3)** |
| 35:7 | **testify (1)** | 52:18,23 | **ticket (9)** | 4:20,24 75:10 |
| **talking (3)** | 102:5 | 53:18 54:23 | 83:6,7,12,15 | **transcript (2)** |
| 36:21 37:21 | **testimony (8)** | 57:4,13 58:9 | 83:19,20,24 | 102:9,9 |
| 57:22 | 46:23 49:22,24 | 61:3,11,18 | 84:14,17 | **Traschen (14)** |
| **Tanya (2)** | 73:23 74:3 | 62:5 64:10,25 | **time (37)** | 1:8 2:9 15:4,11 |
| 87:20 88:16 | 102:6,10 | 65:4,14 67:8 | 1:13 5:3 9:24 | 15:14,18 16:2 |
| **tape (3)** | 105:13 | 68:7,22 69:15 | 10:2,3,23 | 16:10 70:10 |
| 22:3 64:8 | **thank (1)** | 69:25 70:16 | 14:18 17:10 | 70:22 72:21 |
| 92:20 | 29:2 | 71:18 72:9,16 | 18:13 22:23 | 77:11 81:24 |
| **TBV (1)** | **theft (5)** | 73:12 74:4,7 | 23:22 25:11 | 95:23 |
| 98:12 | 56:13 57:2 | 74:22 75:21 | 25:14 26:2 | **trash (1)** |
| **Teague (10)** | 58:17 69:3 | 76:3 77:16,23 | 27:11 28:13 | 59:16 |
| 75:8,9,9,13,16 | 91:24 | 78:16 79:7 | 29:25 31:23 | **trial (3)** |
| 75:19 76:2,11 | **theory (1)** | 80:7 81:19,22 | 34:7,19 35:7 | 29:5 43:24 |
| 76:14 103:21 | 55:5 | 83:2 84:7 | 43:12,20,25 | 44:2 |
| **telephonicall...** | **thing (2)** | 85:5,17 86:23 | 55:13,16 | **true (11)** |
| 9:15 | 66:9 73:21 | 87:17 88:20 | 56:14 57:21 | 27:13 40:2,23 |
| **tell (27)** | **things (3)** | 89:3,11 90:7 | 62:21 65:9 | 49:11,12 |
| 8:21 13:11,19 | 5:12 35:6 | 91:17 92:4,16 | 66:21 84:11 | 68:24 82:25 |
| 14:3 16:23 | 73:16 | 93:4,9,13,18 | 84:12,16 88:3 | 83:10 88:17 |
| 17:12 18:2 | **think (7)** | 94:2,9,24 | 88:14 102:10 | 102:9 105:12 |
| 25:18,19,23 | 7:14 29:7 | 95:8,21 96:9 | **times (2)** | **truth (3)** |
| 25:25,25 31:2 | 45:25 48:11 | 97:18,22 98:8 | 19:14 20:9 | 36:16 48:5 |
| 34:12,19 42:3 | 64:24 73:21 | 99:4,9,12 | **tires (2)** | 102:5 |
| 42:22 43:22 | 99:16 | 100:10,19 | 32:10 33:20 | **truthful (4)** |
| 44:13 45:4 | **third (3)** | 101:6 | **to-do (1)** | 26:21 40:14,15 |
| 51:12 62:19 | 8:19 22:6 | **thought (3)** | 60:3 | 40:22 |
| 64:19 74:12 | 63:15 | 25:16 29:11 | **today (2)** | **truthfulness ...** |
| 84:17,22 | **Thompson (1...** | 65:8 | 3:18 73:24 | 26:17 27:21 |
| 88:14 | 2:13 5:20,25 | **threat (1)** | **told (18)** | 29:23 40:8 |
| **telling (7)** | 6:19,21 7:10 | 60:15 | 8:20 9:17 | **try (1)** |

| | | | | |
|---|---|---|---|---|
| 77:6 | understand (6) | 95:19 | watch (1) | work (5) |
| trying (3) | 12:23 32:10 | view (4) | 67:7 | 8:8 15:23 |
| 21:23 35:23 | 34:13 61:20 | 10:24 12:20 | way (7) | 38:19 40:11 |
| 60:9 | 68:10 72:11 | 15:4 21:3 | 39:25 49:11 | 40:12 |
| TVB (50) | understandi... | viewed (6) | 74:15 93:21 | worked (3) |
| 5:8,23 6:5 11:5 | 6:21 | 11:20,21 14:14 | 97:10,14 | 68:4 76:15 |
| 12:15,18 13:2 | UNITED (1) | 14:20,21 15:3 | 105:17 | 97:15 |
| 14:8 15:7,8 | 1:2 | Violation (2) | we're (5) | working (1) |
| 27:2,5,23 | unprovoked ... | 4:20,24 | 3:17 57:23 | 58:3 |
| 41:25 46:4 | 62:13 | violations (5) | 81:22 82:2 | workplace (3) |
| 47:13,14 49:3 | unruly (2) | 29:5 31:5,8,18 | 95:21 | 103:8,11,16 |
| 51:7,17 53:7 | 34:9,16 | 75:11 | wearing (2) | works (1) |
| 53:17,25 | use (2) | violence (5) | 44:24 46:22 | 86:21 |
| 56:25 58:3 | 27:4 92:19 | 8:8 69:3 103:8 | Wednesday (1) | worry (1) |
| 59:17 65:23 | uses (1) | 103:11,17 | 37:18 | 74:14,16,20 |
| 67:24 76:15 | 44:10 | visit (1) | weekly (3) | worth (1) |
| 76:19,20 | | 83:17 | 83:10,13 84:2 | 40:20 |
| 78:24 80:25 | _____ V _____ | visiting (1) | weight (1) | wouldn't (3) |
| 82:6,22 85:8 | v (1) | 83:16 | 79:5 | 34:3 48:15 |
| 86:2,4,18,21 | 71:11 | volume (1) | welcome (1) | 87:7 |
| 87:21,25 89:2 | vaguely (1) | 100:3 | 49:3 | write (2) |
| 94:8,13,23 | 9:13 | voracity (5) | weren't (1) | 40:4 45:18 |
| 95:6 98:16,20 | Vahdat (10) | 26:17 27:21 | 84:12 | writing (4) |
| 100:25 | 35:11,13,15 | 29:23 36:16 | whatsoever (1) | 42:25 43:3 |
| TVB's (i) | 39:2,20,24 | 40:8 | 54:19 | 82:20,24 |
| 48:14 | 70:13,22 | _____ W _____ | WHEREOF ... | written (9) |
| TVBs (3) | 72:20 103:13 | wait (2) | 105:19 | 23:19 24:20,22 |
| 51:18 77:13,20 | various (2) | 3:22,23 7:4 | wife (1) | 26:13 35:11 |
| two (5) | 50:14 85:15 | 21:11 | 84:20 | 38:5 45:21,22 |
| 55:12 64:20,21 | verbally (1) | waiting (3) | withdraw (2) | 55:18 |
| 95:14,17 | 36:10 | 37:13 38:6 | 19:2 44:5 | wrong (2) |
| Two-page (2) | version (1) | 95:24 | Withdrawn (1) | 6:23 73:17 |
| 103:8,9 | 100:2 | want (9) | 80:8 | wrote (7) |
| type (2) | video (1) | 5:14 7:6 29:14 | witness (15) | 12:2,3 16:13 |
| 19:25 66:9 | 10:10 | 31:14 82:20 | 3:6 13:17,20 | 47:8,11 54:4 |
| | VIDEOCON... | 82:24 87:10 | 21:7,23 52:8 | 82:11 |
| _____ U _____ | 1:17 | 92:23 93:6 | 65:3 72:4 | |
| U.S (1) | videotape (22) | warned (2) | 73:14 90:16 | _____ X _____ |
| 79:13 | 10:4,7,12,18 | 42:20,23 | 99:10 101:11 | X (4) |
| ultimate (1) | 10:21,24 11:5 | wasn't (11) | 105:10,13,19 | 1:3,12 103:2 |
| 52:12 | 11:20 12:20 | 32:14 40:5 | witnesses (1) | 104:2 |
| Ultimately (1) | 14:21 15:5 | 46:7 62:18 | 100:4 | |
| 95:2 | 21:3 59:11 | 74:14,16,19 | word (1) | _____ Y _____ |
| umbrella (5) | 64:17 65:20 | 74:20 77:18 | 39:17 | Yakov (6) |
| 59:17 60:7,8 | 92:7,12 93:17 | 93:19 99:2 | words (1) | 47:20 48:4,12 |
| 60:20,23 | 94:8,13,23 | | 64:4 | 49:2 50:8 |
| | | | | 100:17 |

| | | | | |
|---|---|---|---|---|
| **yeah (4)**<br>7:6 52:11<br>76:24 90:5<br>**year (1)**<br>91:8<br>**years (1)**<br>17:11<br>**York (14)**<br>1:2,17 2:5,7,13<br>2:13,18 3:7<br>3:16 15:8<br>51:18 68:15<br>105:4,8<br><br>**_____ Z _____**<br>**zoom (2)**<br>1:16 35:25<br><br>**_____ 0 _____**<br><br>**_____ 1 _____**<br>**1 (2)**<br>19:11,12<br>**10:16 (1)**<br>1:13<br>**100 (1)**<br>56:2<br>**10005 (1)**<br>2:13<br>**10804 (1)**<br>2:5<br>**11 (24)**<br>4:21 5:18 6:5<br>13:3,9,12<br>14:4,15,22<br>15:14,20<br>16:22 17:9<br>20:21 21:2<br>30:7 51:19<br>62:13 74:2<br>82:6,15 89:2<br>92:8,14<br>**11:45 (1)**<br>95:25<br>**11228 (1)**<br>2:18<br>**11230 (1)** | 3:16<br>**11th (3)**<br>12:19 18:23<br>21:10<br>**12 (5)**<br>45:7,11 89:21<br>89:23 103:22<br>**12:07 (1)**<br>95:23<br>**12:15 (2)**<br>96:15 101:10<br>**14th (1)**<br>91:6<br>**15 (3)**<br>18:5,7 103:9<br>**150 (2)**<br>56:24 91:25<br>**1570 (1)**<br>3:15<br>**16-page (1)**<br>103:19<br>**16th (1)**<br>67:10<br>**17 (1)**<br>1:13<br>**17th (1)**<br>2:12<br>**18 (2)**<br>1:6 103:10<br>**18CV2710 (1)**<br>2:19<br><br>**_____ 2 _____**<br>**2 (1)**<br>42:18<br>**20 (7)**<br>16:13 17:19<br>54:3 64:9<br>82:11 102:19<br>103:10<br>**2011 (2)**<br>47:15,20<br>**2012 (4)**<br>47:9 56:7<br>57:23 91:11<br>**2013 (2)** | 66:21 67:11<br>**2014 (3)**<br>58:25 73:11<br>91:9<br>**2015 (32)**<br>4:21 5:18 6:5<br>13:3,9,12<br>14:4,15,22<br>15:15,20<br>16:13,22 17:9<br>17:19 18:19<br>20:21 21:2<br>29:6 30:7<br>51:19 53:23<br>54:3 62:13<br>74:2 82:6,11<br>82:15 89:2<br>92:8,14<br>103:10<br>**2020 (2)**<br>1:13 105:20<br>**2021 (1)**<br>57:24<br>**20th (2)**<br>18:16 53:22<br>**21 (2)**<br>2:4 29:6<br>**22 (1)**<br>47:20<br>**2710 (1)**<br>1:6<br>**28 (2)**<br>2:12 103:11<br><br>**_____ 3 _____**<br>**3 (6)**<br>22:18,19 29:9<br>29:12 47:9<br>104:5<br>**31st (1)**<br>105:20<br>**35 (1)**<br>103:13<br>**36 (3)**<br>75:3,5 103:21<br>**37 (1)** | 103:14<br>**39 (3)**<br>71:4,6 103:19<br><br>**_____ 4 _____**<br>**4 (1)**<br>29:14<br>**4:30 (1)**<br>5:10<br>**41 (1)**<br>103:15<br>**42SC1983 (2)**<br>79:13,21<br><br>**_____ 5 _____**<br>**5/18/2014 (1)**<br>73:8<br>**522A (1)**<br>2:17<br><br>**_____ 6 _____**<br>**6 (4)**<br>2:17 44:7,7,9<br>**63 (1)**<br>103:17<br>**66 (3)**<br>96:16,18<br>103:23<br>**67 (4)**<br>63:5,7 103:16<br>103:18<br>**68 (6)**<br>7:22,22 8:3,6<br>8:10 103:8<br>**69 (2)**<br>7:18,18<br><br>**_____ 7 _____**<br>**70 (4)**<br>6:14,14,15,17<br>**71 (1)**<br>103:20<br>**73 (3)**<br>41:16,18<br>103:15<br>**75 (1)**<br>103:21 | **79 (3)**<br>66:24 67:2<br>103:18<br>**7th (1)**<br>3:15<br><br>**_____ 8 _____**<br>**8 (2)**<br>73:11 103:8<br>**8:30 (1)**<br>5:10<br>**80 (4)**<br>56:2,23 57:17<br>91:25<br>**81 (6)**<br>34:25,25 35:3<br>39:11,15<br>103:12<br>**82 (3)**<br>37:3,5 103:14<br>**84 (2)**<br>28:3,3<br>**85 (4)**<br>28:4,4,6<br>103:11<br>**86 (1)**<br>3:2<br>**89 (1)**<br>103:22<br>**8th (3)**<br>11:25 12:7,10<br><br>**_____ 9 _____**<br>**96 (1)**<br>103:23 |

**EXHIBIT B**

December 17, 2020

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
MARIO H. CAPOGROSSO,

PLAINTIFF,

-against-    Case No.:
18 CV 2710 (EK) (LB)

ALAN GELBSTEIN, in his individual capacity,
IDA TRASCHEN, in her individual capacity,
DANIELLE CALVO, in her capacity, SADIQ
TAHIR, in his individual capacity, PEC
GROUP OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER, in his
official capacity,
DEFENDANTS.
-----------------------------------X
DATE: December 17, 2020
TIME: 12:24 P.M.

DEPOSITION of the Defendant, IDA
TRASCHEN, taken by the Plaintiff, pursuant
to a Notice and to the Federal Rules of
Civil Procedure, held VIA ZOOM
VIDEOCONFERENCE, before Jamie Newman, a
Notary Public of the State of New York.

## Page 2

1
2    A P P E A R A N C E S:
3
4    THE LAW FIRM OF MARIO H. CAPOGROSSO
     PLAINTIFF PRO SE
     21 Sheldrake Place
     New Rochelle, New York 10804
5
6    Capogrossom@aol.com
7
8    OFFICE OF THE NEW YORK STATE ATTORNEY
     GENERAL
     Attorneys for the Defendants
9    ALAN GELBSTEIN, in his individual
     capacity, IDA TRASCHEN, in her individual
10   capacity, DANIELLE CALVO, in her
     capacity, SADIQ TAHIR, in his individual
11   capacity, PEC GROUP OF NY, INC., DAVID
     SMART, and DMV COMMISSIONER MARK
12   SCHROEDER, in his official capacity
     28 Liberty Street, 17th Floor
13   New York, New York 10005
     BY: JAMES THOMPSON, ESQ.
14   james.thompson@ag.ny.gov
15
16   DMV LEGAL BUREAU
     Attorneys for the Defendant
17   DMV COMMISSIONER MARK SCHROEDER, in his
     official capacity
18   6 Empire State Plaza, Room 522A
     Albany, New York 11228
19   BY: BARBARA MONTENA, ESQ.
     File #: 18CV2710
20   barbara.montena@dmv.nyc.gov
21
22        * * * *
23
24
25

## Page 3

1              IDA TRASCHEN
2         (Whereupon, all 86 exhibits
3    were previously marked by Counsel,
4    Mark Capogrosso.
5    I D A  T R A S C H E N, called as a
6    witness, having been first duly sworn by a
7    Notary Public of the State of New York, was
8    examined and testified as follows:
9    EXAMINATION BY
10   MR. CAPOGROSSO:
11       Q.  Please state your name for the
12   record.
13       A.  Ida Traschen.
14       Q.  What is your address?
15       A.  1600 Spring Avenue Extension,
16   Wynantskill, New York 12198.
17       Q.  Defendant Traschen I have a few
18   questions.  I just ask that you speak
19   truthfully so we get to the truth.
20           On May 11, 2015 you had me
21   removed from the Brooklyn TVB; is that
22   correct?
23       A.  I don't recall the date that
24   you were requested to not practice any more
25   in the Brooklyn TVB.

## Page 4

1              IDA TRASCHEN
2        Q.  Did you make a phone call to me
3    on the morning of May 11, 2015?
4        A.  I did have phone call with you,
5    but I do not recall the date.
6        Q.  Do you remember what the
7    conversation was?
8        A.  I have a vague recollection of
9    the conversation.
10       Q.  Tell me what you remember?
11       A.  I remember that you asked why
12   you had been terminated from practicing in
13   the Brooklyn TVB -- the Coney Island TVB
14   and I explained that based on conversation
15   with Alan Gelbstein and some documentation
16   he presented that, we reached the
17   conclusion that you posed a -- you were not
18   acting in accordance with the rules and
19   regulations for attorneys in the TVB.
20           That the employees felt
21   threatened, that the security guard had
22   raised concerns and that you had been
23   belligerent and threatening.  That's all I
24   recall on a very high level.
25       Q.  On May 11, 2015 I was removed

1 (Pages 1 to 4)

December 17, 2020

<table>
<tr><td colspan="2">Page 5</td><td colspan="2">Page 7</td></tr>
</table>

Page 5

IDA TRASCHEN

1
2  from the Brooklyn TVB. I was told by
3  Danielle Calvo who is also a defendant in
4  this action to call you. At that point in
5  time I was told by you that I was banned
6  from the practice of law at all New York
7  City TVBs.
8       Is that true?
9       MR. THOMPSON: Objection to the
10  form of the question. You can
11  answer.
12      A.  I don't recall the date of the
13  phone call, but I did confirm that you were
14  banned from practicing at all TVBs.
15      Q.  All TVBs.
16      And you said you had a
17  conversation with Defendant Gelbstein on
18  the morning of May 11, 2015?
19      A.  I had a conversation with Alan
20  Gelbstein, but I don't recall the date.
21      Q.  Was it before --
22      MR. THOMPSON: Objection,
23  hearsay. As in Judge Gelbstein
24  deposition, we will object on the
25  basis of privilege to any questions

Page 7

IDA TRASCHEN

1
2       THE COURT REPORTER: This one?
3       MR. CAPOGROSSO: Actually, I
4  think it's Exhibit 68.
5       (Whereupon, Plaintiff's Exhibit
6  68, previously marked, was
7  introduced.)
8       MR. THOMPSON: Mr. Capogrosso,
9  those redactions, were those
10  redactions that you put in?
11      MR. CAPOGROSSO: No, those were
12  submissions I received from your
13  office as you gave them to me.
14      Further down, please.
15      (Whereupon, the Court Reporter
16  complied.)
17      Q.  I'm going to draw your
18  attention to this report.
19      I'm sorry, can you please go up
20  to the top of the page, I apologize. Now,
21  this a work violence report made by David
22  Smart.
23      Are you familiar with this work
24  violence report?
25      A.  I don't know if I have ever

Page 6

IDA TRASCHEN

1
2  of content.
3       MR. CAPOGROSSO: I'm not asking
4  content.
5       Q.  When you had the conversation,
6  I'm not asking the content of the
7  conversation, when you had the conversation
8  with Defendant Gelbstein, it is before the
9  morning of May 11, 2015 or was it after the
10  morning of May 11, 2015?
11      A.  I don't recall the date of my
12  conversation with Judge Gelbstein.
13      Q.  Did you have me removed from
14  the Brooklyn TVB and the practice of law
15  from all TVBs, after you had a conversation
16  with Defendant Gelbstein?
17      A.  Yes.
18      Q.  Afterwards?
19      A.  Subsequent to the conversation
20  with him, yes.
21      Q.  Afterwards, not before.
22      All right. Let me bring your
23  attention to the police report that was
24  filed, Exhibit 70. Can we go to
25  Exhibit 70.

Page 8

IDA TRASCHEN

1
2  seen this particular report.
3       Q.  Can you please scroll down,
4  thank you.
5       (Whereupon, the Court Reporter
6  complied.)
7       Q.  Now, I'm going to direct your
8  attention to this paragraph right here, and
9  I'm going to direct you to this is a
10  comment, in the additional comments. This
11  is Danielle Calvo, a defendant in this
12  matter writing this in this work violence
13  report concerning the incident of May 11,
14  2015.
15      "I was told" -- I'll direct
16  your attention now to the third line, "I
17  was told by Judge Gelbstein to go with the
18  officers from the police room to tell
19  Mr. Capogrosso that he must leave the
20  building and to give him legal's phone
21  number for any further details. I did that
22  and he left the building."
23      Now, is that a true statement,
24  were you in conversation with Danielle
25  Calvo on the morning of May 11, 2015?

2  (Pages 5 to 8)

IDA TRASCHEN

1
2  A.  I don't recall any --
3      MR. THOMPSON:  Objection to the
4  form of the question, you can answer.
5      A.  I'm sorry, I don't recall any
6  conversation with Danielle Calvo.
7      Q.  But, Danielle Calvo, according
8  to this additional comment, indicates that
9  she was told for me to call legal counsel;
10  is that fair to say?
11     A.  Well, she says that in the
12  statement.  I don't recall having a
13  conversation with her on that day.
14     Q.  On the morning of May 11, 2015,
15  I was removed from the Brooklyn TVB after I
16  was told by -- I was removed by police
17  officers under the direction of Danielle
18  Calvo who was told by Judge Gelbstein to
19  have me removed and I was told to call you.
20  And your conversation with me was, "you're
21  banned from the practice of law at all" --
22     MR. THOMPSON:  Objection.
23  Who's testifying here?
24     Q.  Now in response to that
25  preface, it was a preface.

IDA TRASCHEN

1
2      A.  I don't -- I was not aware
3  there was a videotape, I don't know if
4  there was a videotape.  As I explained
5  before and my conversations with Judge
6  Gelbstein are privileged, but on a high
7  level I can tell you based on our
8  conversation and documentation he submitted
9  to me, I agreed that you should be removed.
10     Q.  Tell me the basis for my
11  removal, why did you remove me; give me the
12  actual complaints, tell me exactly what was
13  the basis for your removal of me?
14     MR. THOMPSON:  Objection.  Is
15  that a question?
16     MR. CAPOGROSSO:  Yes.
17     Q.  What's the basis for your
18  removal?
19     A.  Well, I'm not going to get into
20  privileged conversation and this is five
21  years ago.
22     Q.  I could care --
23     A.  Well, it was five years ago, my
24  recollection is vague, but I do recall that
25  based on the specifics of my conversation

IDA TRASCHEN

1
2      Did you view or review any
3  videotape of the alleged incident on
4  May 11, 2015?
5      A.  No.
6      Q.  So, you had me removed without
7  viewing any videotape?
8      A.  I did not review any videotape.
9      Q.  Yet you still had me removed
10  from the practice of law and all New York
11  TVBs?
12     MR. THOMPSON:  Objection, asked
13  and answered.  You can respond.
14     Q.  I'm going to ask it again.
15     Did you have me removed from
16  the practice of law in all New York TVBs
17  without reviewing the videotape?
18     MR. THOMPSON:  Same objection,
19  you can answer.
20     A.  I did not review any videotape
21  and I did -- I was part of the decision to
22  have you removed, that is correct.
23     Q.  So, for what reason did you
24  have me removed, if you didn't review the
25  videotape?

IDA TRASCHEN

1
2  with Judge Gelbstein and on documentation
3  he sent to me, I agreed with the decision
4  to have you removed.  That's all I can tell
5  you.
6      Q.  And you didn't keep any
7  documentation as to the reason for my
8  removal?
9      MR. THOMPSON:  Objection to the
10  form of the question.
11     A.  I don't have any documentation
12  at home, I'm retired.
13     Q.  Did you review the voracity of
14  any documents or affidavits written against
15  me and my practice of law?
16     A.  I don't understand.
17     Q.  Prior to having me removed, did
18  you review any of the documents filed
19  against -- written against me, prior to you
20  having me removed from the practice of law
21  at the New York City TVB?
22     A.  As I stated, I did review some
23  documents that Alan Gelbstein sent to me.
24     Q.  Can you tell me which documents
25  you reviewed?

3 (Pages 9 to 12)

| Page 13 | Page 15 |
|---|---|

**Page 13**

IDA TRASCHEN

2 MR. THOMPSON: Objection,
3 privileged.
4 A. I don't recall the specifics,
5 it was five years ago.
6 Q. Did you question the voracity
7 or truthfulness of any of affidavits or
8 evidence submitted against me and my
9 office?
10 A. I recall during my conversation
11 with Alan that we reviewed the documents,
12 we went over them and I ask him questions
13 about them. And he -- I mean, that's all I
14 can tell you at a high level. I don't
15 recall the details of the conversation.
16 Q. I don't understand what you're
17 saying. I'm at a low level. See, I'm the
18 guy on the street defending these people.
19 I'm not at a high level, I'm at a low
20 level.
21 So I don't understand what
22 you're saying by high level. I'm at the
23 low level, I'm the guy actually on the
24 street defending people in the courtroom.
25 So, I'm the low level guy.

**Page 15**

IDA TRASCHEN

2 Did you ever allow me the
3 opportunity to respond to any of those
4 affidavits or complaints?
5 A. Well, I did have the phone
6 conversation with you, but -- and I did not
7 know if anyone else had any discussions
8 with you about it.
9 Q. We had a phone conversation on
10 the morning of May 11th, how long did that
11 phone conversation last, Defendant
12 Traschen?
13 A. I don't recall.
14 Q. So, now you are legal counsel
15 for the DMV; right, that was with your
16 title?
17 A. I was first assistant counsel
18 at the time of the incident.
19 Q. And you made a determination to
20 have me removed from the Brooklyn TVB and
21 the practice of law in all TVBs with no
22 opportunity for me to respond to any
23 affidavits or complaints, that's your
24 testimony; right?
25 MR. THOMPSON: Objection to the

**Page 14**

IDA TRASCHEN

2 Prefacing the question with
3 that because I don't understand what high
4 level means, did you ever question the
5 people who wrote the affidavits and
6 submitted complaints against me as to
7 whether they were truthful or not, did you
8 ever question the people who wrote them?
9 A. Do you mean, did I talk to them
10 and question them?
11 Q. Yes.
12 A. No, I did not.
13 Q. Did you ever give me an
14 opportunity to respond to the affidavits
15 and complaints written against me and my
16 office?
17 A. I'm not sure I understand the
18 question, can you just --
19 Q. There were affidavits and
20 complaints written against my office that
21 you and Defendant Gelbstein reviewed and
22 based on those affidavits and complaints
23 and the incident allegedly of May 11, 2015,
24 you had me removed from the practice of law
25 in all New York TVBs.

**Page 16**

IDA TRASCHEN

2 form of the question.
3 Q. Is that your testimony?
4 A. I can't testify as to what
5 other people permitted you to do or not to
6 do, but in terms of I did not ask you for
7 affidavits, I did not ask you for
8 testimony.
9 Q. You did not question -- you did
10 not look into the voracity of truthfulness
11 of any of these complaints; is that right?
12 MR. THOMPSON: Objection to
13 form.
14 A. That is not correct.
15 Q. What investigation did you make
16 into these complaints, tell me?
17 A. Like I explained, I had a
18 conversation with Judge Gelbstein about the
19 specifics of the complaints.
20 Q. What did Defendant Gelbstein
21 tell you that he did concerning these
22 complaints, what investigation?
23 MR. THOMPSON: Objection,
24 privilege. I'm going to instruct you
25 not to answer.

4 (Pages 13 to 16)

Page 17

IDA TRASCHEN

A. That is privileged and as I said many times, I don't remember the details of our conversation because it was five years ago.

Q. Well, lets just ban an attorney from the practice of law, lets just do that.

MR. THOMPSON: Objection, argumentative.

MR. CAPOGROSSO: Oh, and I agree.

Q. Did you allow me due process in any respect concerning of arguing and rebutting any of these complaints?

MR. THOMPSON: Objection to the form.

Q. Do you know what due process is, Defendant Traschen?

A. Yes.

Q. What is due process, what is due process?

MR. THOMPSON: Objection, you can answer.

A. It gives someone an opportunity

Page 18

IDA TRASCHEN

to -- um -- in an appropriate circumstance, make a case regarding a certain matter. But, it's such a vague question, I'm not really sure how to answer that.

Q. Well, from a low level I'll tell you what it means from my standpoint and tell me if you agree. It allows a party accused to defend himself, is that due process?

A. I don't really -- I think this goes beyond the scope of what I'm able to testify about.

Q. Does due process allow a party to answer complaints, provide affidavits, proved evidence, provide witnesses in rebuttal, does it that allow --

MR. THOMPSON: Objection to the form of question, you can answer.

A. All I can say is I don't believe there was a right to a hearing in this matter or right to an opportunity to be heard. And, at this point because this was five years ago and I don't remember all the details, I really can't address the

Page 19

IDA TRASCHEN

matter further.

Q. Did you keep a copy of the videotape on May 11, 2015?

MR. THOMPSON: Objection to the form of the question. You can answer.

A. I don't know if there was a videotape.

Q. So, you never viewed the videotape?

MR. THOMPSON: Same objection.

A. It there was one, I didn't view it.

Q. Did you review any police reports or the work violence reports that were submitted to the --

A. I -- I'm sorry, I don't recall.

Q. You don't recall?

A. I don't.

Q. Would such reports come to your office, police reports and work violence reports?

A. As in the normal course of business, no.

Page 20

IDA TRASCHEN

Q. But, in an action like this and a complaint like this, would this have come to your office?

MR. THOMPSON: Objection to the form of question, you can answer.

A. Not necessarily.

Q. You reviewed none of the police reports, none of the work violence reports, but you had me banned; is that fair to say?

MR. THOMPSON: Objection to form, you can answer.

A. No, it's not fair to say because I don't recall if I viewed them or not.

Q. So, you might have reviewed them, you might not have reviewed that; is that fair to say?

A. That is correct.

Q. Yet you still had me banned from the practice of law in all New York TVBs; that's fair to say, right?

MR. THOMPSON: Object to the form, you can answer.

A. That is correct, you were

5 (Pages 17 to 20)

December 17, 2020

Page 21

IDA TRASCHEN

1  IDA TRASCHEN
2  banned from practicing in all TVBs.
3  Q.  Now, as legal counsel for the
4  Department of Motor Vehicles you had the
5  ability to grieve me, am I right for saying
6  that, over complaints and allegations
7  against my conduct?
8  A.  I don't understand the
9  question.  I don't know what you mean by
10  "grieve you".
11  Q.  Complaints to the grievance
12  committee to the State of New York
13  concerning my actions as an attorney?
14  A.  Are you asking me if I could
15  file a grievance?
16  Q.  Yes.
17  Did you have the opportunity to
18  do that?
19  A.  I suppose I have the ability to
20  do that.
21  Q.  You had the ability?
22  A.  Yeah.
23  Q.  Did you file such a grievance
24  against an attorney named Eamon Teague?
25  A.  I don't recall doing so.

Page 22

IDA TRASCHEN

1  IDA TRASCHEN
2  Q.  Was there a grievance filed
3  against an attorney Eamon Teague by the
4  DMV?
5  A.  I believe there was, but I'm
6  not a hundred percent sure because it was
7  several years ago.
8  Q.  Were you privy to that
9  grievance?
10  A.  I don't recall if I read it, if
11  there was one filed, but I mean, I have a
12  vague recollection that there was an issue
13  with him.
14  Q.  Now, a you didn't grieve my
15  office in any respect, am I right in saying
16  that?
17  A.  I'm sorry, I didn't hear the
18  question.
19  Q.  The DMV never grieved my office
20  before the grievance committee, am I right
21  in saying that?
22  A.  I don't know.
23  Q.  Were you ever a party of any
24  grievance to the grievance committee with
25  respect to my office?

Page 23

IDA TRASCHEN

1  IDA TRASCHEN
2  A.  I was not.
3  Q.  Well, my office has never been
4  grieved by the grievance committee with
5  respect to any action I took as an attorney
6  working with New York TVB, do you
7  understand that?
8  A.  I understand what you're
9  saying.
10  MR. THOMPSON: Objection to the
11  form of the question.
12  Q.  Did you investigate whether
13  there were any grievances filed against my
14  office by anyone, specifically by the DMV
15  concerning my actions at the New York
16  Traffic Violations Bureau?
17  A.  I don't remember if I
18  investigated that.
19  Q.  You make no investigation to
20  the grievance committee concerning me as an
21  attorney, yet you had me banned, is that a
22  fair statement?
23  A.  No, I said I don't recall if
24  there was an investigation of your
25  grievances.

Page 24

IDA TRASCHEN

1  IDA TRASCHEN
2  Q.  So, you don't recall any of the
3  foundation or any of the reasons for having
4  me removed from the New York Traffic
5  Violations Bureau?
6  MR. THOMPSON: Objection to the
7  form of the question.  You can
8  answer.
9  A.  That is not correct.  I said
10  because of privilege, Number 1, I'm not
11  going to go into any details about any
12  conversations I had with Judge Gelbstein.
13  And Number 2, any conversations I did have
14  with him, I only recall the details at a
15  high level.
16  Q.  I don't know what high level
17  means, I'm at a low level.
18  A.  I understand the general --
19  Q.  I'd like to know the specific
20  reasons you banned me from the TVB.  I want
21  to know the specific reasons, what I did
22  exactly, tell me what?
23  MR. THOMPSON: Objection to the
24  form of question.  You can answer.
25  A.  I think I've already gone over

6  (Pages 21 to 24)

Page 25

IDA TRASCHEN

1
2  this, that Judge Gelbstein and I had a
3  conversation, he presented documentation
4  that suggested that your behavior was
5  threatening and belligerent and that staff
6  felt threatened and there was -- I know
7  there as an incident involving the security
8  guard. Beyond that, as I have said this
9  was five years ago and I don't remember the
10 details of that documentation.
11     Q.   But that ban still remains in
12 effect; right?
13     A.   That is correct.
14     Q.   You're acting as a
15 representative of the State while you
16 worked at the DMV?
17         MR. THOMPSON:  Objection to the
18 form of the question.  You can
19 answer.
20     A.   I was acting as first assistant
21 counsel to the Department of Motor
22 Vehicles.
23     Q.   Were you agent of the State?
24         MR. THOMPSON:  Objection to the
25 form of the question.  You can

Page 26

IDA TRASCHEN

1
2  answer.
3     A.   Well, that's a legal question
4  which I'm not prepared to answer.
5     Q.   Who paid your salary?
6     A.   I paid my salary.  I don't know
7  where the funds came from.  I don't know if
8  it was from the Department's funds or from
9  the general fund of the State.
10     Q.   It's either the Department of
11 Motor Vehicles or New York State, would
12 that be fair to say?
13     A.   That would be fair to say.
14     Q.   Did you respond to any of my
15 phone calls or letters to your office
16 concerning my removal that you removed me
17 from the New York Traffic Violations Bureau
18 on May 11th?
19         MR. THOMPSON:  Objection to the
20 form of the question.  You can
21 answer.
22     Q.   Did you respond to any of my
23 phone calls or letters?
24     A.   I do recall having one phone
25 conversation with you.  I do not recall

Page 27

IDA TRASCHEN

1
2  having any other conversations with you on
3  the phone nor do I recall responding to
4  anything in writing.
5     Q.   You didn't respond to me
6  because you never picked up the phone,
7  right.  I made many calls to your office
8  and your secretary refused to let them go
9  through; is that fair?
10         MR. THOMPSON:  Objection to the
11 form of the question.  You can
12 answer.
13     A.   All I can tell you is I only
14 had the one conversation with you.  I don't
15 recall having any further conversations
16 with you on the phone.
17     Q.   And that was a very short
18 conversation on the morning of May 11, 2015
19 where you told me I was banned from the
20 practice of law at all New York TVBs;
21 right?
22         MR. THOMPSON:  Objection as to
23 form.
24     A.   I don't recall the length of
25 the phone call.  I don't recall the date of

Page 28

IDA TRASCHEN

1
2  the phone call, but you are correct that I
3  did confirm that you were banned from
4  practicing at TVBs.
5     Q.   There was a letter written on
6  March 20, 2015 to Attorney General
7  Pricket-Morgan Exhibit 15.
8         (Whereupon, Plaintiff's Exhibit
9  15, previously marked, was
10 introduced.)
11     Q.   Are you familiar with this
12 letter?
13     A.   Let me just take a moment to
14 read it, please.
15     Q.   Are you familiar with this
16 letter?
17     A.   I do remember a letter from
18 Pricket-Morgan that she shared with me.
19 Reading it now, I mean...
20     Q.   When did she share it with you?
21     A.   I don't know the exact date.
22 My understanding -- I'm sorry, go ahead.
23     Q.   Was it before the incident of
24 May 11, 2015 and my ban or afterwards?
25     A.   I believe it was before.

7  (Pages 25 to 28)

Page 29

IDA TRASCHEN

1
2  Q.  How far before?
3  A.  I don't recall.
4  Q.  You don't?
5  A.  No.
6  Q.  Did you take any action in
7  response to this letter; did you do
8  anything in response to this remember?
9  A.  I don't remember if I did
10  anything.
11  Q.  Now, I'm making complaints
12  against your security guard at the Brooklyn
13  TVB, Defendant Smart and the administrative
14  law judge, Defendant Gelbstein.
15  A.  Uh-hmm.
16  Q.  That Defendant Smart was
17  harassing, threatening me, verbally,
18  physically. I complained to Defendant
19  Gelbstein and he laughed and giggled and
20  told me "a spade is a spade."
21  Now, you took no action in
22  response to any of these complaints either
23  against Defendant Smart or Defendant
24  Gelbstein?
25  A.  I don't recall if I took any

Page 30

IDA TRASCHEN

1
2  action.
3  MR. THOMPSON: Objection to the
4  form of the question.
5  Q.  Did you take any action?
6  A.  I don't recall if I took any
7  action.
8  Q.  But you swept my complaint
9  under the rug, this complaint you swept
10  under the rug, is that --
11  MR. THOMPSON: Objection to the
12  form of question. And Mr. Capogrosso
13  there's no need to yell.
14  Q.  Did you sweep it under the rug?
15  A.  No. I don't recall if I took
16  any action.
17  Q.  Why didn't you take any action?
18  A.  I said I don't recall if I took
19  any action.
20  Q.  But you don't recall the action
21  that you might have taken?
22  A.  That is correct.
23  Q.  Did you investigate any of the
24  complaints that I made either against
25  Defendant Smart or Defendant Gelbstein?

Page 31

IDA TRASCHEN

1
2  A.  As I said, I don't recall.
3  Q.  Did you make any calls to my
4  office or to me personally to rectify these
5  complaints?
6  A.  I don't recall.
7  Q.  And you made no calls or no
8  correspondence to my office concerning any
9  of the complaints that were written against
10  me, that's true too; right?
11  MR. THOMPSON: Objection to the
12  form.
13  A.  I don't recall if I wrote
14  anything to you or your office.
15  Q.  Did you give me any opportunity
16  to respond to any of the complaints or
17  affidavits written against me?
18  A.  Are we talking about the
19  letters still or something else?
20  Q.  Any of the complaints written
21  by -- concerning my office while I was
22  practicing law at the New York TVB?
23  MR. THOMPSON: Objection to the
24  form, you can answer.
25  Q.  Did you respond to any of the

Page 32

IDA TRASCHEN

1
2  complaints against me?
3  A.  As I said, other than my phone
4  conversation with you, I don't recall any
5  other action on my part.
6  Q.  So, you just assumed all these
7  allegations and complaints are true, right,
8  is that what you're saying?
9  MR. THOMPSON: Objection to the
10  form.
11  A.  No.
12  Q.  So, what investigation did you
13  do?
14  A.  Well, as I've explained, this
15  is five years ago. I don't remember all
16  the details, I do recall reviewing
17  documentation that Judge Gelbstein sent to
18  me and I do recall a conversation regarding
19  the documentation.
20  Q.  Were you personally involved in
21  the removal of me from the practice of law
22  at the New York Traffic Violations Bureau
23  in May of 2015?
24  A.  Can you just clarify what you
25  mean personally involved?

8  (Pages 29 to 32)

Page 33

1            IDA TRASCHEN
2     Q.  Did you personally ban me from
3  the practice of law at the New York Traffic
4  Violation Bureau?
5     A.  I was involved in the decision.
6  There was Judge Gelbstein and I were
7  involved and there may have been other
8  people, but I don't recall if there were
9  any other people involved.
10    Q.  Who else was involved in this
11  decision?
12    A.  No, I said I don't recall if
13  other people were involved.
14    Q.  But, you made -- I was told to
15  call you and you're the one who told me
16  that you're banned from the practice of
17  law; right?
18    A.  I did tell you that during our
19  phone conversation.
20    Q.  But there might have been other
21  people involved and you don't recall who?
22    MR. THOMPSON: Objection, asked
23  and answered.
24    A.  That's correct.
25    Q.  But you did have a conversation

Page 34

1            IDA TRASCHEN
2  with Judge Gelbstein prior to you banning
3  me?
4    A.  That is correct.
5    Q.  And Judge Gelbstein, as you
6  know, was not in the Brooklyn TVB on the
7  morning of May 11, 2015?
8    MR. THOMPSON: Objection to the
9  form of question.
10    Q.  Do you know that?
11    A.  I did not know that.
12    Q.  But, you received a call from
13  whom on the morning of May 11, 2015; who
14  did you receive a phone call from?
15    A.  I don't remember the date
16  May 11, 2015.
17    Q.  Did you get a phone call from
18  Defendant Danielle Calvo on the morning
19  May 11, 2015?
20    A.  I don't recall a conversation
21  with her.
22    Q.  Well, somebody called you on
23  the morning of May 11, 2015, and you don't
24  recall who?
25    MR. THOMPSON: Objection to the

Page 35

1            IDA TRASCHEN
2  form of the question.
3    A.  I don't recall if I had a
4  conversation with someone on that day.
5    Q.  Well, what made you on that
6  day, that specific day May 11, 2015, to ban
7  me from the practice of law?
8    MR. THOMPSON: Objection to the
9  form of the question.
10    A.  I don't recall -- like I said,
11  I didn't recall if that was the date you
12  were banned.
13    Q.  That was the date I was banned.
14    A.  Okay, fine. But, I don't
15  recall why that date was chosen.
16    Q.  And you recall having no
17  conversations with anybody at the Brooklyn
18  TVB on that day?
19    A.  I don't know if I had
20  conversations with anyone on that date. I
21  don't recall if I had conversations with
22  anyone from the Brooklyn TVB on that date.
23    Q.  You woke up out of bed and said
24  to yourself let me ban Mr. Capogrosso from
25  the practice of law and all New York TVBs,

Page 36

1            IDA TRASCHEN
2  is that what happened?
3    MR. THOMPSON: Mr. Capogrosso,
4  you've asked her questions and she
5  answered it. You're asking the same
6  question over and over again.
7    Q.  I'm trying to find out, what
8  made you make the phone call on May 11,
9  2015; what made you make me have Danielle
10  Calvo tell me to call you on May 11, 2015?
11    A.  I don't recall.
12    Q.  So, Danielle Calvo did that on
13  her own volition is that what you're
14  saying?
15    A.  No.
16    Q.  Did you have supervisory
17  authority over the personnel in the
18  Brooklyn TVB?
19    MR. THOMPSON: Object to the
20  form of question, you can answer.
21    A.  Yes, I did.
22    Q.  You had control over the
23  actions of Defendant Smart, is that fair?
24    MR. THOMPSON: Objection to the
25  form of the question. You can

9  (Pages 33 to 36)

Page 37

IDA TRASCHEN

1 answer.
2 A. No. First of all, I don't know
3 if -- I did not have any authority over
4 security guards in any of our offices.
5 Q. Did you have authority over the
6 actions of Defendant Gelbstein or Defendant
7 Calvo?
8 MR. THOMPSON: Objection to the
9 form. You can answer.
10 A. I'm not actually sure what you
11 mean by -- can you just repeat your
12 question again.
13 Q. Did you have supervisory
14 authority over the actions of Defendant
15 Gelbstein?
16 A. Well, I was their supervisor.
17 Q. And you were the supervisor of
18 Defendant Calvo also, am I right in saying
19 that?
20 A. Well, I mean, there's chains
21 involved here. So, there's people between
22 me and those people, but I mean, they did
23 ultimately report up a chain to me.
24 Q. Did you have supervisory

Page 38

IDA TRASCHEN

1 authority over the actions of Bushra
2 Vahdat?
3 A. Yes.
4 Q. Did you review any of the
5 allegations that Bushra Vahdat wrote
6 against me as to whether they were credible
7 or not?
8 A. I don't recall if that -- I
9 don't recall that.
10 Q. Did you have actual
11 constructive notice of any of the
12 complaints that I made against Defendant
13 Smart?
14 MR. THOMPSON: Objection to the
15 form of the question. Calls for a
16 legal conclusion.
17 Q. Did you have notice if any of
18 the complaints that were made against
19 Defendant Smart?
20 A. I don't know.
21 Q. Did you take adverse action
22 against my office because of --
23 MR. THOMPSON: Objection to the
24 form of the question.

Page 39

IDA TRASCHEN

1 Q. Did you have me banned from the
2 practice of law in at New York TVB, all
3 New York TVBs, because t wrote this letter
4 of March 20, 2015; did you have me banned?
5 A. No, that is not correct.
6 Q. You didn't?
7 A. That is not correct.
8 Q. Did you take offense that I
9 called one of your judges incapable,
10 incompetent and complicit, did you take
11 offense?
12 A. No.
13 Q. But, you didn't look into the
14 voracity of that complaint now, did you?
15 A. I don't recall what I did with
16 -- in response to that letter that you sent
17 to Ms. Pricket-Morgan.
18 Q. And you don't recall when you
19 received it.
20 Did you have Defendant Smart
21 approach me on the morning of May 11, 2015
22 and initiate this incident?
23 A. No.
24 Q. Do you have any reason as to

Page 40

IDA TRASCHEN

1 why Defendant Smart approached me on the
2 morning of May 11, 2015 and initiated this
3 incident?
4 MR. THOMPSON: Objection to the
5 form. You can answer.
6 A. No.
7 Q. Do you know that I told
8 Defendant Smart to "back up, back up," were
9 you privy to that?
10 MR. THOMPSON: Same objection,
11 you can answer.
12 A. I don't know -- I don't know if
13 I was privy to that.
14 Q. So, you were privy to none of
15 the circumstances concerning the events of
16 May 11, 2015?
17 A. No. I'm saying that I don't
18 recall what I knew at that time because it
19 was five years ago.
20 MR. THOMPSON: While there's a
21 pause, it's 12:59 and Ms. Calvo is
22 available when you're ready.
23 MR. CAPOGROSSO: I got to get a
24 few more out and I'll keep it -- I

10 (Pages 37 to 40)

## Page 41

IDA TRASCHEN

1
2　just need 15 more minutes. I told
3　you 2:00. I need 15 more minutes
4　because we had the problem with my
5　computer. I just need it.
6　　　MR. THOMPSON: So, if you take
7　　another 15 more minutes and if we do
8　　another five minute break, is it okay
9　　if I tell Ms. Calvo 1:20?
10　　MR. CAPOGROSSO: Yes.
11　　MR. THOMPSON: Great, I'll tell
12　　her that.
13　Q. Now, I've stated in my
14　complaint that Defendant Gelbstein
15　approached me on the afternoon of May 8th
16　with letter in hand stating that -- you
17　read the letter that you have before you.
18　You read it and it says, "can't you go
19　practice somewhere else. I saw what you
20　wrote about me that you're complicit,
21　incapable and incompetent."
22　　Are you aware of the fact that
23　Defendant Gelbstein approached me on the
24　afternoon of May 8th and said that to me,
25　are you aware of that?

## Page 42

IDA TRASCHEN

1
2　A. No.
3　Q. Did you question him concerning
4　any statements that he might have had with
5　respect to that letter and my office?
6　A. I don't recall if I discussed
7　the letter with Judge Gelbstein.
8　Q. Did you act in retaliation for
9　me writing that letter and having me
10　removed from the New York Traffic Violation
11　Bureau?
12　A. No.
13　Q. Did you believe you acted
14　lawfully when you had me moved from the
15　practice of law from the New York Traffic
16　Violation Bureau?
17　A. Yes.
18　Q. Under what statute or authority
19　did you act in having me removed?
20　　MR. THOMPSON: Objection, calls
21　　for a legal conclusion. You can
22　　answer.
23　A. Well, there is no statute that
24　I'm aware of. I'm sorry, do you need to
25　ask me something?

## Page 43

IDA TRASCHEN

1
2　Q. By what authority did you have
3　me removed?
4　A. Well, as I recall on the
5　previous litigation that we were involved,
6　the Article 78?
7　Q. I'm talking right here, by what
8　authority did you have --
9　A. I know.
10　　MR. THOMPSON: Let her answer
11　　the question.
12　A. Let me just explain. I mean
13　there was a letter which I don't have in
14　front of me, but the tenure of which was
15　the DMV retained the right to remove you in
16　the future if you acted inappropriately.
17　　And based upon the
18　conversations and documentation I had with
19　Judge Gelbstein I concluded that it was
20　appropriate to prohibit you from practicing
21　in TVB.
22　Q. Did I ever sign a stipulation
23　with your office?
24　A. For the Article 78?
25　Q. Did I ever sign any

## Page 44

IDA TRASCHEN

1
2　stipulation; did I agree to any terms, in
3　fact, in coming back to the TVB to practice
4　law, did I ever sign a stipulation?
5　A. I don't recall. I honestly
6　don't recall.
7　Q. Chris McDonough, my attorney
8　ever sign a stipulation with respect to the
9　terms of me coming back to the practice of
10　law at the TVB?
11　A. I don't recall.
12　Q. This was a letter in fact that
13　was imposed upon me after I agreed to take
14　an anger management course that did not
15　bear my signature.
16　　Is that a fair statement?
17　　MR. THOMPSON: Object to the
18　　form of the question. You can
19　　answer?
20　A. What is the question?
21　Q. That was a letter that you
22　wrote to my office, after we had already
23　agreed that I was to be allowed back to the
24　practice of law in the TVB; right?
25　A. I don't believe I wrote the

11　(Pages 41 to 44)

Page 45

IDA TRASCHEN

1             IDA TRASCHEN
2 letter. You mean, the attorney general's
3 office?
4      Q. Well, that's the letter you're
5 referring to; right?
6      A. I want to make sure we are
7 talking about the correct letter.
8      Q. Let me get it for you. Let me
9 see if I can find it.
10         Is was a letter that was
11 written by your office; right?
12      A. I believe the attorney
13 general's office sent a letter.
14      Q. And it doesn't bear my
15 signature any way, does it not?
16      A. I don't have the letter in
17 front of me.
18      Q. Can we look at Exhibit 11.
19         (Whereupon, Plaintiff's Exhibit
20      11, previously marked, was
21      introduced.)
22      Q. Does this letter bear my
23 signature any place?
24      A. No.
25      Q. It does not.

Page 47

1             IDA TRASCHEN
2 were used?
3      A. I don't recall.
4      Q. And you don't recall the
5 threatening conduct either; right?
6         MR. THOMPSON: Objection.
7      A. No, I don't.
8      Q. But, you do recall the letter
9 of March 20, 2015 where I the judge
10 complicit, incapable and incompetent. That
11 I didn't want an incident because of this
12 letter, that I didn't want one. And I was
13 praying for relief.
14         You do recall that letter?
15         MR. THOMPSON: Objection to the
16      form of the question. You can
17      answer.
18      A. Are you talking about the
19 Pricket-Morgan letter?
20      Q. The letter to Pricket-Morgan on
21 March 20th, you recall that letter, don't
22 you?
23      A. I remember her getting that
24 letter. Until I just reviewed it now, I
25 didn't remember all the specifics of

Page 46

1             IDA TRASCHEN
2      Is this the letter you're
3 referring to though?
4      A. Yes.
5      Q. Can you tell me what verbal
6 threats of physical violence I made after
7 the issuance of that letter, can you please
8 tell me?
9      A. Well, as I said many times, I
10 don't remember the specifics of my
11 conversation with Judge Gelbstein, but I do
12 recall after reviewing the documentation he
13 sent me and our conversation, that I
14 believe that it warranted permanently
15 barring you from practice.
16      Q. So, you can't tell me what the
17 verbal abuse was, can you tell me that?
18      A. No, because as I have said many
19 times, I don't recall the specifics of our
20 conversation.
21      Q. And you don't recall the ethnic
22 slurs?
23         MR. THOMPSON: Objection, asked
24      and answered.
25      Q. You know the ethnic slurs that

Page 48

1             IDA TRASCHEN
2 letter.
3      Q. Well, you do recall receiving
4 it; right?
5      A. I remember her forwarding it to
6 me.
7      Q. And I'm praying for relief,
8 please, I don't want an incident at the
9 Brooklyn TVB because I don't want it be
10 banned and I'm asking for relief.
11         And what did you do in response
12 to that letter?
13         MR. THOMPSON: Objection.
14      A. As I said many times, I don't
15 recall what I did, if anything, in response
16 to that letter to Ms. Pricket-Morgan.
17      Q. And you're saying that you did
18 not have a conversation with Defendant
19 Smart and Defendant Gelbstein to have
20 Defendant Smart approach me on the morning
21 of May 11th and initiate this incident and
22 this altercation?
23         MR. THOMPSON: Objection to
24      form, you can answer.
25      A. I don't recall any conversation

12 (Pages 45 to 48)

## Page 49

IDA TRASCHEN

1
2 with Mr. Smart. I did have a conversation
3 with Judge Gelbstein, but I do not recall
4 the date of that conversation.
5        Q.   Did you investigate any of the
6 complaints I made against Defendant Smart?
7             MR. THOMPSON:  Objection, asked
8        and answered.
9        Q.   Let me go into specifics.  I
10 made a complaint against Defendant Smart in
11 June of 2012 when I was readmitted into the
12 Brooklyn TVB that he pushed me from behind,
13 assaulted me from behind.
14        Were you privy to that threat
15 and that assault and that complaint?
16        A.   I don't recall.
17        Q.   Did you take any action in
18 response to it?
19        A.   I don't recall.
20        Q.   In December of 2015 Defendant
21 Smart stood up, pointed directly at me with
22 a spear hand.  I don't know if you know what
23 a spear hand is, but I do and gave me the
24 sign of the cross and I complained to Judge
25 Gelbstein.

## Page 50

IDA TRASCHEN

1
2        Were you aware of that
3 complaint?
4        A.   I don't recall.
5        Q.   Did you take any action in
6 response to that complaint?
7        A.   I don't recall.
8        Q.   On numerous occasions Defendant
9 Smart would get in my face, within three
10 inches of my face and I'd ask him what the
11 problem was and I filed complaints with
12 Defendant Gelbstein concerning this.  And I
13 asked him what the problem was and he said,
14 "fuck you, you are the problem."
15        Did you receive any complaints
16 with respect do that?
17        A.   With respect to what?
18        Q.   Defendant Smart getting within
19 a couple of inches of my face and when I
20 asked him what the problem was his response
21 was, "fuck you, you are the problem."
22        Did you --
23             MR. THOMPSON:  Objection to the
24        form.
25        A.   I don't recall.

## Page 51

IDA TRASCHEN

1
2        Q.   I complained of Defendant Smart
3 stealing $80 on $150 fee.  At some time
4 between December 2011 and June 2012 and I
5 reported this to Defendant Gelbstein and an
6 investigation was made.
7        Were you privy to the
8 investigation that was made with respect to
9 that theft?
10        A.   I don't recall.
11             MR. THOMPSON:  Objection to the
12        form.  You can answer.
13        Q.   Did you take any action with
14 respect to that complaint?
15        A.   I don't recall.
16        Q.   But after that complaint
17 Defendant Smart continued to work at the
18 Brooklyn TVB; right?
19        A.   I'm not aware of the terms and
20 condition and when he was employed at TVB.
21        Q.   I also complained of the
22 actions of Defendant Gelbstein.  That he
23 has weekly meetings at least sometimes
24 routine meetings with Jewish ticker brokers
25 in the Brooklyn TVB.

## Page 52

IDA TRASCHEN

1
2        Were you privy to any of those
3 complaints?
4        A.   I'm sorry, I didn't hear you.
5 You said he had weekly meetings with whom?
6        Q.   Ticket brokers, Jewish ticket
7 brokers in his office.  Were you aware of
8 any of those complaints?
9        A.   No.  I don't recall -- I don't
10 recall such complaints.
11        Q.   You know I made a complaint
12 about Defendant Gelbstein that he was
13 pleading motorists guilty in the GE general
14 requirements room with ALJ Bohmstein and
15 rescheduling cases for motorists.
16        Were you aware of that
17 complaint?
18        A.   I don't recall that complaint.
19        Q.   Do you know about the complaint
20 that I made another attorney was covering
21 cases ALJ -- for Defendant Gelbstein,
22 covering cases?
23        A.   I don't recall that.  I didn't
24 understand, I couldn't hear that.
25        Q.   Defendant Gelbstein, an

13  (Pages 49 to 52)

Page 53

```
1              IDA TRASCHEN
2    attorney was covering cases for him. That
3    I had conflict with another attorney and
4    that attorney told me he was covering cases
5    for Gelbstein.
6              Are you familiar with that
7    complaint?
8       A.   I don't recall that.
9       Q.   Are you familiar with the
10   complaint that I made against Defendant
11   Gelbstein, that when I complained about the
12   actions of Defendant Smart that he laughed
13   and giggled and told me "a spade's a
14   spade," are you familiar with that
15   complaint?
16      A.   I'm not familiar with that
17   complaint other than what I just read today
18   in your letter to Ms. Pricket-Morgan.
19      Q.   So, you're familiar with that
20   complaint?
21      A.   Well, no, I just read it today.
22           MR. THOMPSON: Objection.
23      Q.   Prior to May 11, 2015?
24      A.   Sir, could you repeat that,
25   please?
```

Page 54

```
1              IDA TRASCHEN
2       Q.   You had that letter prior to
3    May 11, 2015; right?
4       A.   Yes.
5       Q.   So, you weren't privy to that
6    complaint; right?
7            MR. THOMPSON: Objection to the
8        form of the question. You can
9        answer.
10      A.   I'm sorry, did you ask was I
11   privy to that complaint?
12      Q.   You where knowledgeable of that
13   complaint; right?
14      A.   I did see that letter, yes.
15      Q.   And you took no action and
16   response; right?
17      A.   I don't recall if I took any
18   action.
19           MR. THOMPSON: Objection.
20      Q.   Did you order Defendant
21   Gelbstein on the morning of Ma 11, 2015 to
22   tell Danielle Calvo to go to the police
23   room in the Brooklyn TVB and have me
24   removed?
25      A.   I don't recall.
```

Page 55

```
1              IDA TRASCHEN
2       Q.   Did you have Defendant Calvo
3    tell me to call you and give her your phone
4    number so I could call you on the morning
5    of May 11, 2015?
6       A.   I don't recall.
7       Q.   Do you exhibit -- did you have
8    an indifference or callousness to my
9    complaint?
10           MR. THOMPSON: Objection to the
11       form of the question.
12      Q.   Are you callous to my
13   complaints?
14           MR. THOMPSON: Same objection.
15      A.   No.
16      Q.   Were you indifferent to my
17   complaints?
18      A.   No.
19           MR. THOMPSON: Same objection.
20      Q.   But you took no action with
21   respect to my complaints; right?
22      A.   As I said I don't recall if I
23   took action with respect to any of the
24   complaints that you have just set forth.
25      Q.   By removing me from the
```

Page 56

```
1              IDA TRASCHEN
2    practice of law in the New York TVB, were
3    you chilling my first amendment right to
4    freedom of speech, is that what you were
5    doing?
6            MR. THOMPSON: Objection, calls
7        for a legal conclusion.
8       Q.   Were you attempting to prevent me
9    from exercising my right of freedom of
10   speech by having me removed?
11           MR. THOMPSON: Same objection,
12       you can answer.
13      A.   No.
14      Q.   I might have asked this, but
15   I'm going to ask it again.
16           Were you mad or upset
17   concerning the contents of a letter of
18   March 20, 2015, were you mad?
19      A.   No.
20      Q.   Did you have animus towards me?
21      A.   No.
22      Q.   You didn't care that I called
23   your judge -- one of your judges complicit,
24   incapable or incompetent or said that he
25   laughed and giggled when I complained of
```

14  (Pages 53 to 56)

December 17, 2020

Page 57

IDA TRASCHEN

1
2  Defendant Smart and said "a spade was a
3  spade," you had no animus towards me for
4  writing that?
5      MR. THOMPSON: Objection, asked
6  and answered. You can answer.
7      A. No.
8      Q. Did you receive my letters of
9  complaint to your office?
10     A. I can't answer that, it's too
11 many years ago.
12     Q. Did you file any response in
13 respect to my complaints and my letter; did
14 you file any response, did you give me a
15 response to my letters?
16     A. I don't recall.
17     MR. THOMPSON: Object to the
18 form.
19     Q. And you were personally
20 involved in my removal from the practice of
21 law at the New York TVB, I might have asked
22 that, but I'll as it again; you were
23 personally involved; right?
24     A. Yes.
25     Q. And you said you had the

Page 58

IDA TRASCHEN

1
2  authority to do so; am I right?
3      A. Yes.
4      Q. And you acted lawfully in that
5  authority?
6      A. Yes.
7      Q. You gave no due process to
8  answer any of the complaints or allegations
9  against me; is that right, you afforded me
10 no due process?
11     MR. THOMPSON: Objection to the
12 form of the question.
13     A. I disagree and it's a
14 complicated legal matter which does not --
15 in this form I can't address.
16     Q. Let me simplify the legal
17 matter, Counsel.
18     Did you receive any affidavits
19 in reply to the affidavits written against
20 me?
21     MR. THOMPSON: Objection to the
22 form of question.
23     A. I'm sorry, did I receive what?
24     Q. Affidavits from my office, did
25 you reply to the complaints made against

Page 59

IDA TRASCHEN

1
2  me?
3      A. I don't recall.
4      Q. You don't recall receiving any
5  affidavits from me in reply.
6      Was I served with any
7  affidavits or complaints to my office by
8  you to which I could reply?
9      A. I don't recall.
10     Q. Did you allow me to present
11 witnesses or evidence in response to any of
12 the affidavits or complaints written
13 against my office of misconduct?
14     A. I don't know what Judge
15 Gelbstein did or did not do regarding that,
16 I did not. I did not.
17     Q. You did not.
18     You didn't allow me to present
19 any evidence or witnesses or state my --
20 state what -- I'll withdraw that.
21     Let me take you to Exhibit 7.
22 Could we go to Exhibit 7 real quick.
23     (Whereupon, Plaintiff's Exhibit
24     7, previously marked, was
25     introduced.)

Page 60

IDA TRASCHEN

1
2      Q. I'll direct your attention to
3  Paragraph 23.
4      A. Could you scroll down to
5  Paragraph 23.
6      (Whereupon, the Court Reporter
7      complied.)
8      A. Okay.
9      Q. This a document that was
10 written by the attorney that was
11 representing me at the time.
12     Are you familiar with this
13 document?
14     A. I remember seeing it back in
15 you know, 2012.
16     Q. And that Bushra Vahdat wants me
17 to -- on Paragraph 23, I'm asserting that
18 Bushra Vahdat wants me to stay good and
19 stay quiet.
20     Do you see that?
21     A. Yes, I do.
22     Q. She didn't like me. She didn't
23 want me writing letters concerning what I
24 saw or experienced at the Brooklyn TVB,
25 would that be a fair assessment?

15 (Pages 57 to 60)

December 17, 2020

---

## Page 61

1  IDA TRASCHEN
2  MR. THOMPSON: Objection to the
3  form of the question.
4  Q. How do you interpret staying
5  good and quiet, how do you interpret that?
6  A. I cannot answer for what Judge
7  Vahdat meant by that. I don't know what
8  she meant by that.
9  Q. Were you offended by my letter
10 of March 20th of 2015 and you wanted me to
11 stay quiet?
12 A. No, I was not offended by it.
13 Q. And you took no action in
14 response?
15 A. As you said, I don't recall if
16 I took any action.
17 MR. CAPOGROSSO: I'm done.
18 Thank you.
19 (Whereupon, at 1:21 P.M., the
20 Examination of this witness was
21 concluded.)
22
23      o    o    o    o
24
25

---

## Page 62

1  IDA TRASCHEN
2  DECLARATION
3
4  I hereby certify that having been
5  first duly sworn to testify to the truth, I
6  gave the above testimony.
7
8  I FURTHER CERTIFY that the foregoing
9  transcript is a true and correct transcript
10 of the testimony given by me at the time
11 and place specified hereinbefore.
12
13
14
15      IDA TRASCHEN
16
17
18 Subscribed and sworn to before me
19 this ____ day of _____ 20____.
20
21
22    NOTARY PUBLIC
23
24
25

---

## Page 63

1  IDA TRASCHEN
2  E X H I B I T S
3
4  PLAINTIFF'S EXHIBITS (Previously marked)
5
6  EXHIBIT  EXHIBIT           PAGE
7  NUMBER   DESCRIPTION
8  68    Two-page workplace
9        violence incident        7
10 15    Two-page letter dated
11       May 20, 2015            28
12 11    One-page dated
13       June 20, 2012           45
14 7     11-page Verified Petition 59
15
16
17 (Exhibits retained by Court Reporter.)
18
19
20
21
22
23
24
25

---

## Page 64

1  IDA TRASCHEN
2  I N D E X
3
4  EXAMINATION BY           PAGE
5  MR. CAPOGROSSO            3
6
7
8  INFORMATION AND/OR DOCUMENTS REQUESTED
9  INFORMATION AND/OR DOCUMENTS    PAGE
10 (None)
11
12
13
14
15 QUESTIONS MARKED FOR RULINGS
16 PAGE LINE QUESTION
17 (None)
18
19
20
21
22
23
24
25

---

16 (Pages 61 to 64)



Page 65

IDA TRASCHEN

CERTIFICATE

STATE OF NEW YORK        )
                         : SS.:
COUNTY OF KINGS          )

I, JAMIE NEWMAN, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn and that such examination is a true record of the testimony given by that witness.

I further certify that I am not related to any of the parties to this action by blood or by marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 31st day of December 2020.

JAMIE NEWMAN

17 (Page 65)

| A | | | | |
|---|---|---|---|---|
| **ability (3)** | 15:4,23 16:7 | 59:10,18 | 17:14 | 40:23 |
| 21:5,19,21 | 18:15 31:17 | **allowed (1)** | **argumentati...** | **Avenue (1)** |
| **able (1)** | 58:18,19,24 | 44:23 | 17:10 | 3:15 |
| 18:12 | 59:5,7,12 | **allows (1)** | **Article (2)** | **aware (8)** |
| **abuse (1)** | **afforded (1)** | 18:8 | 43:6,24 | 11:2 41:22,25 |
| 46:17 | 58:9 | **altercation (1)** | **asked (11)** | 42:24 50:2 |
| **accused (1)** | **afternoon (2)** | 48:22 | 4:11 10:12 | 51:19 52:7,16 |
| 18:9 | 41:15,24 | **amendment (...** | 33:22 36:4 | |
| **act (2)** | **against- (1)** | 56:3 | 46:23 49:7 | **B** |
| 42:8,19 | 1:6 | **AND/OR (2)** | 50:13,20 | **B (1)** |
| **acted (3)** | **agent (1)** | 64:8,9 | 56:14 57:5,21 | 63:2 |
| 42:13 43:16 | 25:23 | **anger (1)** | **asking (5)** | **back (6)** |
| 58:4 | **ago (10)** | 44:14 | 6:3,6 21:14 | 40:9,9 44:3,9 |
| **acting (3)** | 11:21,23 13:5 | **animus (2)** | 36:5 48:10 | 44:23 60:14 |
| 4:18 25:14,20 | 17:5 18:24 | 56:20 57:3 | **assault (1)** | **ban (6)** |
| **action (24)** | 22:7 25:9 | **answer (37)** | 49:15 | 17:6 25:11 |
| 5:4 20:2 23:5 | 32:15 40:20 | 5:11 9:4 10:19 | **assaulted (1)** | 28:24 33:2 |
| 29:6,21 30:2 | 57:11 | 16:25 17:24 | 49:13 | 35:6,24 |
| 30:5,7,16,17 | **agree (3)** | 18:5,15,19 | **asserting (1)** | **banned (16)** |
| 30:19,20 32:5 | 17:12 18:8 | 19:7 20:6,12 | 60:17 | 5:5,14 9:21 |
| 38:22 49:17 | 44:2 | 20:24 24:8,24 | **assessment (1)** | 20:10,20 21:2 |
| 50:5 51:13 | **agreed (4)** | 25:19 26:2,4 | 60:25 | 23:21 24:20 |
| 54:15,18 | 11:9 12:3 | 26:21 27:12 | **assistant (2)** | 27:19 28:3 |
| 55:20,23 | 44:13,23 | 31:24 36:20 | 15:17 25:20 | 33:16 35:12 |
| 61:13,16 | **ahead (1)** | 37:2,10 40:6 | **assumed (1)** | 35:13 39:2,5 |
| 65:16 | 28:22 | 40:12 42:22 | 32:6 | 48:10 |
| **actions (8)** | **al (1)** | 43:10 44:19 | **attempting (1)** | **banning (1)** |
| 21:13 23:15 | 39:3 | 47:17 48:24 | 56:8 | 34:2 |
| 36:23 37:7,15 | **Alan (6)** | 51:12 54:9 | **attention (5)** | **BARBARA (1)** |
| 38:2 51:22 | 1:8 2:9 4:15 | 56:12 57:6,10 | 6:23 7:18 8:8 | 2:19 |
| 53:12 | 5:19 12:23 | 58:8 61:6 | 8:16 60:2 | **barbara.mon...** |
| **actual (2)** | 13:11 | **answered (6)** | **attorney (16)** | 2:20 |
| 11:12 38:11 | **Albany (1)** | 10:13 33:23 | 2:7 17:6 21:13 | **barring (1)** |
| **additional (2)** | 2:18 | 36:5 46:24 | 21:24 22:3 | 46:15 |
| 8:10 9:8 | **ALJ (2)** | 49:8 57:6 | 23:5,21 28:6 | **based (5)** |
| **address (3)** | 52:14,21 | **anybody (1)** | 44:7 45:2,12 | 4:14 11:7,25 |
| 3:14 18:25 | **allegations (4)** | 35:17 | 52:20 53:2,3 | 14:22 43:17 |
| 58:15 | 21:6 32:7 38:6 | **apologize (1)** | 53:4 60:10 | **basis (4)** |
| **administrati...** | 58:8 | 7:20 | **attorneys (3)** | 5:25 11:10,13 |
| 29:13 | **alleged (1)** | **approach (2)** | 2:8,16 4:19 | 11:17 |
| **adverse (1)** | 10:3 | 39:22 48:20 | **authority (10)** | **bear (3)** |
| 38:22 | **allegedly (1)** | **approached (...** | 36:17 37:4,6 | 44:15 45:14,22 |
| **affidavits (17)** | 14:23 | 40:2 41:15,23 | 37:15 38:2 | **bed (1)** |
| 12:14 13:7 | **allow (6)** | **appropriate ...** | 42:18 43:2,8 | 35:23 |
| 14:5,14,19,22 | 15:2 17:13 | 18:2 43:20 | 58:2,5 | **behavior (1)** |
| | 18:14,17 | **arguing (1)** | **available (1)** | 25:4 |

| | | | | |
|---|---|---|---|---|
| **believe (7)** | 4:2,4 5:4,13 | **certain (1)** | 52:11,17,18 | 51:20 |
| 18:21 22:5 | 9:9,19 27:25 | 18:3 | 52:19 53:7,10 | **conduct (2)** |
| 28:25 42:13 | 28:2 33:15 | **certify (4)** | 53:15,17,20 | 21:7 47:5 |
| 44:25 45:12 | 34:12,14,17 | 62:4,8 65:9,14 | 54:6,11,13 | **Coney (1)** |
| 46:14 | 36:8,10 55:3 | **chain (1)** | 55:9 57:9 | 4:13 |
| **belligerent (2)** | 55:4 | 37:24 | **complaints (...** | **confirm (2)** |
| 4:23 25:5 | **called (4)** | **chains (1)** | 11:12 14:6,15 | 5:13 28:3 |
| **beyond (2)** | 3:5 34:22 | 37:21 | 14:20,22 15:4 | **conflict (1)** |
| 18:12 25:8 | 39:10 56:22 | **chilling (1)** | 15:23 16:11 | 53:3 |
| **blood (1)** | **callous (1)** | 56:3 | 16:16,19,22 | **constructive ...** |
| 65:16 | 55:12 | **chosen (1)** | 17:15 18:15 | 38:12 |
| **Bohmstein (1)** | **callousness (1)** | 35:15 | 21:6,11 29:11 | **content (3)** |
| 52:14 | 55:8 | **Chris (1)** | 29:22 30:24 | 6:2,4,6 |
| **break (1)** | **calls (8)** | 44:7 | 31:5,9,16,20 | **contents (1)** |
| 41:8 | 26:15,23 27:7 | **circumstance...** | 32:2,7 38:13 | 56:17 |
| **bring (1)** | 31:3,7 38:16 | 18:2 | 38:19 49:6 | **continued (1)** |
| 6:22 | 42:20 56:6 | **circumstance...** | 50:11,15 52:3 | 51:17 |
| **brokers (3)** | **Calvo (17)** | 40:16 | 52:8,10 55:13 | **control (1)** |
| 51:24 52:6,7 | 1:9 2:10 5:3 | **City (2)** | 55:17,21,24 | 36:22 |
| **Brooklyn (18)** | 8:11,25 9:6,7 | 5:7 12:21 | 57:13 58:8,25 | **conversation...** |
| 3:21,25 4:13 | 9:18 34:18 | **Civil (1)** | 59:7,12 | 4:7,9,14 5:17 |
| 5:2 6:14 9:15 | 36:10,12 37:8 | 1:19 | **complicated ...** | 5:19 6:5,7,7 |
| 15:20 29:12 | 37:19 40:22 | **clarify (1)** | 58:14 | 6:12,15,19 |
| 34:6 35:17,22 | 41:9 54:22 | 32:24 | **complicit (4)** | 8:24 9:6,13 |
| 36:18 48:9 | 55:2 | **come (2)** | 39:11 41:20 | 9:20 11:8,20 |
| 49:12 51:18 | **capacity (11)** | 19:21 20:3 | 47:10 56:23 | 11:25 13:10 |
| 51:25 54:23 | 1:8,8,9,9,11 | **coming (2)** | **complied (3)** | 13:15 15:6,9 |
| 60:24 | 2:9,10,10,11 | 44:3,9 | 7:16 8:6 60:7 | 15:11 16:18 |
| **building (2)** | 2:12,17 | **comment (2)** | **computer (1)** | 17:4 25:3 |
| 8:20,22 | **Capogrosso (...** | 8:10 9:8 | 41:5 | 26:25 27:14 |
| **Bureau (8)** | 1:3 2:4 3:4,10 | **comments (1)** | **concerning (...** | 27:18 32:4,18 |
| 2:16 23:16 | 6:3 7:3,8,11 | 8:10 | 8:13 16:21 | 33:19,25 |
| 24:5 26:17 | 8:19 11:16 | **COMMISSI...** | 17:14 21:13 | 34:20 35:4 |
| 32:22 33:4 | 17:11 30:12 | 1:10 2:11,17 | 23:15,20 | 46:11,13,20 |
| 42:11,16 | 35:24 36:3 | **committee (5)** | 26:16 31:8,21 | 48:18,25 49:2 |
| **Bushra (2)** | 40:24 41:10 | 21:12 22:20,24 | 40:16 42:3 | 49:4 |
| 38:2,6 60:16 | 61:17 64:5 | 23:4,20 | 50:12 56:17 | **conversation...** |
| 60:18 | **Capogrosso...** | **complained (6)** | 60:23 | 11:5 24:12,13 |
| **business (1)** | 2:6 | 29:18 49:24 | **concerns (1)** | 27:2,15 35:17 |
| 19:25 | **care (2)** | 51:2,21 53:11 | 4:22 | 35:20,21 |
| | 11:22 56:22 | 56:25 | **concluded (2)** | 43:18 |
| ——————— | **case (2)** | **complaint (25)** | 43:19 61:21 | **copy (1)** |
| **C** | 1:6 18:3 | 20:3 30:8,9 | **conclusion (4)** | 19:3 |
| **C (5)** | **cases (5)** | 39:15 41:14 | 4:17 38:17 | **correct (15)** |
| 2:2 3:5 62:2 | 52:15,21,22 | 49:10,15 50:3 | 42:21 56:7 | 3:22 10:22 |
| 65:2,2 | 53:2,4 | 50:6 51:14,16 | **condition (1)** | 16:14 20:19 |
| **call (16)** | | | | |

20:25 24:9
25:13 28:2
30:22 33:24
34:4 39:6,8
45:7 62:9
**corresponde...**
31:8
**counsel (7)**
3:3 9:9 15:14
15:17 21:3
25:21 58:17
**COUNTY (1)**
65:5
**couple (1)**
50:19
**course (2)**
19:24 44:14
**Court (6)**
1:2 7:2,15 8:5
60:6 63:17
**courtroom (1)**
13:24
**covering (4)**
52:20,22 53:2
53:4
**credible (1)**
38:7
**cross (1)**
49:24
**CV (1)**
1:6

**D**

**D (3)**
3:5 62:2 64:2
**Danielle (12)**
1:9 2:10 5:3
8:11,24 9:6,7
9:17 34:18
36:9,12 54:22
**date (15)**
1:13 3:23 4:5
5:12,20 6:11
27:25 28:21
34:15 35:11
35:13,15,20

35:22 49:4
**dated (2)**
63:10,12
**David (3)**
1:10 2:11 7:21
**day (7)**
9:13 35:4,6,6
35:18 62:19
65:20
**December (4)**
1:13 49:20
51:4 65:20
**decision (4)**
10:21 12:3
33:5,11
**defend (1)**
18:9
**defendant (54)**
1:16 2:16 3:17
5:3,17 6:8,16
8:11 14:21
15:11 16:20
17:19 29:13
29:14,16,18
29:23,23
30:25,25
34:18 36:23
37:7,7,15,19
38:13,20
39:21 40:2,9
41:14,23
48:18,19,20
49:6,10,20
50:8,12,18
51:2,5,17,22
52:12,21,25
53:10,12
54:20 55:2
57:2
**Defendants (2)**
1:12 2:8
**defending (2)**
13:18,24
**Department ...**
21:4 25:21
26:10

**Department'...**
26:8
**deposition (2)**
1:16 5:24
**DESCRIPTI...**
63:7
**details (8)**
8:21 13:15
17:4 18:25
24:11,14
25:10 32:16
**determinatio...**
15:19
**direct (4)**
8:7,9,15 60:2
**direction (1)**
9:17
**directly (1)**
49:21
**disagree (1)**
58:13
**discussed (1)**
42:6
**discussions (1)**
15:7
**DISTRICT (2)**
1:2,2
**DMV (10)**
1:10 2:11,16
2:17 15:15
22:4,19 23:14
25:16 43:15
**document (2)**
60:9,13
**documentati...**
4:15 11:8 12:2
12:7,11 25:3
25:10 32:17
32:19 43:18
46:12
**documents (7)**
12:14,18,23,24
13:11 64:8,9
**doing (2)**
21:25 56:5
**draw (1)**

7:17
**due (8)**
17:13,18,21,22
18:10,14 58:7
58:10
**duly (3)**
3:6 62:5 65:11

**E**

**E (8)**
2:2,2 3:5 62:2
63:2 64:2
65:2,2
**Eamon (2)**
21:24 22:3
**EASTERN (1)**
1:2
**effect (1)**
25:12
**either (4)**
26:10 29:22
30:24 47:5
**EK (1)**
1:6
**Empire (1)**
2:18
**employed (1)**
51:20
**employees (1)**
4:20
**ESQ (2)**
2:13,19
**ethnic (2)**
46:21,25
**events (1)**
40:16
**evidence (4)**
13:8 18:16
59:11,19
**exact (1)**
28:21
**exactly (2)**
11:12 24:22
**examination ...**
3:9 61:20 64:4
65:10,12

**examined (1)**
3:8
**exercising (1)**
56:9
**exhibit (14)**
6:24,25 7:4,5
28:7,8 45:18
45:19 55:7
59:21,22,23
63:6,6
**exhibits (3)**
3:2 63:4,17
**experienced ...**
60:24
**explain (1)**
43:12
**explained (4)**
4:14 11:4
16:17 32:14
**Extension (1)**
3:15

**F**

**F (1)**
65:2
**face (3)**
50:9,10,19
**fact (3)**
41:22 44:3,12
**fair (12)**
9:10 20:10,13
20:18,22
23:22 26:12
26:13 27:9
36:23 44:16
60:25
**familiar (9)**
7:23 28:11,15
53:6,9,14,16
53:19 60:12
**far (1)**
29:2
**Federal (1)**
1:18
**fee (1)**
51:3

| | | | | |
|---|---|---|---|---|
| **felt (2)** | 51:12 54:8 | 50:12 51:5,22 | 21:5,10 22:14 | **honestly (1)** |
| 4:20 25:6 | 55:11 57:18 | 52:12,21,25 | **grieved (2)** | 44:5 |
| **file (5)** | 58:12,15,22 | 53:5,11 54:21 | 22:19 23:4 | **hundred (1)** |
| 2:19 21:15,23 | 61:3 | 59:15 | **GROUP (2)** | 22:6 |
| 57:12,14 | **forth (2)** | **general (5)** | 1:10 2:11 | |
| **filed (6)** | 55:24 65:11 | 2:8 24:18 26:9 | **guard (3)** | **I** |
| 6:24 12:18 | **forwarding (1)** | 28:6 52:13 | 4:21 25:8 | **Ida (68)** |
| 22:2,11 23:13 | 48:5 | **general's (2)** | 29:12 | 1:8,16 2:9 3:1 |
| 50:11 | **foundation (1)** | 45:2,13 | **guards (1)** | 3:13 4:1 5:1 |
| **find (2)** | 24:3 | **getting (2)** | 37:5 | 6:1 7:1 8:1 |
| 36:7 45:9 | **freedom (2)** | 47:23 50:18 | **guilty (1)** | 9:1 10:1 11:1 |
| **fine (1)** | 56:4,9 | **giggled (3)** | 52:13 | 12:1 13:1 |
| 35:14 | **front (2)** | 29:19 53:13 | **guy (3)** | 14:1 15:1 |
| **FIRM (1)** | 43:14 45:17 | 56:25 | 13:18,23,25 | 16:1 17:1 |
| 2:4 | **fuck (2)** | **give (6)** | | 18:1 19:1 |
| **first (6)** | 50:14,21 | 8:20 11:11 | **H** | 20:1 21:1 |
| 3:6 15:17 | **fund (1)** | 14:13 31:15 | **H (4)** | 22:1 23:1 |
| 25:20 37:3 | 26:9 | 55:3 57:14 | 1:3 2:4 3:5 | 24:1 25:1 |
| 56:3 62:5 | **funds (2)** | **given (2)** | 63:2 | 26:1 27:1 |
| **five (9)** | 26:7,8 | 62:10 65:13 | **hand (4)** | 28:1 29:1 |
| 11:20,23 13:5 | **further (6)** | **gives (1)** | 41:16 49:22,23 | 30:1 31:1 |
| 17:5 18:24 | 7:14 8:21 19:2 | 17:25 | 65:20 | 32:1 33:1 |
| 25:9 32:15 | 27:15 62:8 | **go (10)** | **happened (1)** | 34:1 35:1 |
| 40:20 41:8 | 65:14 | 6:24 7:19 8:17 | 36:2 | 36:1 37:1 |
| **Floor (1)** | **future (1)** | 24:11 27:8 | **harassing (1)** | 38:1 39:1 |
| 2:12 | 43:16 | 28:22 41:18 | 29:17 | 40:1 41:1 |
| **follows (1)** | | 49:9 54:22 | **hear (3)** | 42:1 43:1 |
| 3:8 | **G** | 59:22 | 22:17 52:4,24 | 44:1 45:1 |
| **foregoing (1)** | **GE (1)** | **goes (1)** | **heard (1)** | 46:1 47:1 |
| 62:8 | 52:13 | 18:12 | 18:23 | 48:1 49:1 |
| **form (45)** | **Gelbstein (47)** | **going (8)** | **hearing (1)** | 50:1 51:1 |
| 5:10 9:4 12:10 | 1:8 2:9 4:15 | 7:17 8:7,9 | 18:21 | 52:1 53:1 |
| 16:2,13 17:17 | 5:17,20,23 | 10:14 11:19 | **hearsay (1)** | 54:1 55:1 |
| 18:19 19:6 | 6:8,12,16 | 16:24 24:11 | 5:23 | 56:1 57:1 |
| 20:6,12,24 | 8:17 9:18 | 56:15 | **held (1)** | 58:1 59:1 |
| 23:11 24:7,24 | 11:6 12:2,23 | **good (2)** | 1:19 | 60:1 61:1 |
| 25:18,25 | 14:21 16:18 | 60:18 61:5 | **hereinbefore...** | 62:1,15 63:1 |
| 26:20 27:11 | 16:20 24:12 | **Great (1)** | 62:11 65:11 | 64:1 65:1 |
| 27:23 30:4,12 | 25:2 29:14,19 | 41:11 | **hereunto (1)** | **imposed (1)** |
| 31:12,24 | 29:24 30:25 | **grievance (10)** | 65:19 | 44:13 |
| 32:10 34:9 | 32:17 33:6 | 21:11,15,23 | **high (8)** | **inappropriat...** |
| 35:2,9 36:20 | 34:2,5 37:7 | 22:2,9,20,24 | 4:24 11:6 | 43:16 |
| 36:25 37:10 | 37:16 41:14 | 22:24 23:4,20 | 13:14,19,22 | **incapable (4)** |
| 38:16,25 40:6 | 41:23 42:7 | **grievances (2)** | 14:3 24:15,16 | 39:10 41:21 |
| 44:18 47:16 | 43:19 46:11 | 23:13,25 | **home (1)** | 47:10 56:24 |
| 48:24 50:24 | 48:19 49:3,25 | **grieve (3)** | 12:12 | **inches (2)** |

| | | | | M |
|---|---|---|---|---|
| 50:10,19 | 33:7,9,10,13 | 7:25 11:3 15:7 | 21:3 26:3 | **Ma (1)** |
| **incident (12)** | 33:21 37:22 | 17:18 19:8 | 38:17 42:21 | 54:21 |
| 8:13 10:3 | 43:5 57:20,23 | 21:9 22:22 | 56:7 58:14,16 | **mad (2)** |
| 14:23 15:18 | **involving (1)** | 24:16,19,21 | **legal's (1)** | 56:16,18 |
| 25:7 28:23 | 25:7 | 25:6 26:6,7 | 8:20 | **making (1)** |
| 39:23 40:4 | **Island (1)** | 28:21 34:6,10 | **length (1)** | 29:11 |
| 47:11 48:8,21 | 4:13 | 34:11 35:19 | 27:24 | **management...** |
| 63:9 | **issuance (1)** | 37:3 38:21 | **letter (41)** | 44:14 |
| **incompetent ...** | 46:7 | 40:8,13,13 | 28:5,12,16,17 | **March (6)** |
| 39:11 41:21 | **issue (1)** | 43:9 46:25 | 29:7 39:4,17 | 28:6 39:5 47:9 |
| 47:10 56:24 | 22:12 | 49:22,22 | 41:16,17 42:5 | 47:21 56:18 |
| **indicates (1)** | | 52:11,19 | 42:7,9 43:13 | 61:10 |
| 9:8 | **J** | 59:14 60:15 | 44:12,21 45:2 | **MARIO (2)** |
| **indifference ...** | **JAMES (1)** | 61:7 | 45:4,7,10,13 | 1:3 2:4 |
| 55:8 | 2:13 | **knowledgeab...** | 45:16,22 46:2 | **Mark (4)** |
| **indifferent (1)** | **james.thomp...** | 54:12 | 46:7 47:8,12 | 1:10 2:11,17 |
| 55:16 | 2:14 | | 47:14,19,20 | 3:4 |
| **individual (6)** | **Jamie (3)** | **L** | 47:21,24 48:2 | **marked (7)** |
| 1:8,8,9 2:9,9 | 1:20 65:7,23 | **L (1)** | 48:12,16 | 3:3 7:6 28:9 |
| 2:10 | **Jewish (2)** | 62:2 | 53:18 54:2,14 | 45:20 59:24 |
| **INFORMAT...** | 51:24 52:6 | **laughed (3)** | 56:17 57:13 | 63:4 64:15 |
| 64:8,9 | **judge (23)** | 29:19 53:12 | 61:9 63:10 | **marriage (1)** |
| **initiate (2)** | 5:23 6:12 8:17 | 56:25 | **letters (6)** | 65:16 |
| 39:23 48:21 | 9:18 11:5 | **law (27)** | 26:15,23 31:19 | **matter (7)** |
| **initiated (1)** | 12:2 16:18 | 2:4 5:6 6:14 | 57:8,15 60:23 | 8:12 18:3,22 |
| 40:3 | 24:12 25:2 | 9:21 10:10,16 | **level (14)** | 19:2 58:14,17 |
| **instruct (1)** | 29:14 32:17 | 12:15,20 | 4:24 11:7 | 65:18 |
| 16:24 | 33:6 34:2,5 | 14:24 15:21 | 13:14,17,19 | **McDonough ...** |
| **interested (1)** | 42:7 43:19 | 17:7 20:21 | 13:20,22,23 | 44:7 |
| 65:17 | 46:11 47:9 | 27:20 29:14 | 13:25 14:4 | **mean (11)** |
| **interpret (2)** | 49:3,24 56:23 | 31:22 32:21 | 18:6 24:15,16 | 13:13 14:9 |
| 61:4,5 | 59:14 61:6 | 33:3,17 35:7 | 24:17 | 21:9 22:11 |
| **introduced (4)** | **judges (2)** | 35:25 39:3 | **Liberty (1)** | 28:19 32:25 |
| 7:7 28:10 | 39:10 56:23 | 42:15 44:4,10 | 2:12 | 37:12,21,23 |
| 45:21 59:25 | **June (3)** | 44:24 56:2 | **line (2)** | 43:12 45:2 |
| **investigate (3)** | 49:11 51:4 | 57:21 | 8:16 64:16 | **means (3)** |
| 23:12 30:23 | 63:13 | **lawfully (2)** | **litigation (1)** | 14:4 18:7 |
| 49:5 | | 42:14 58:4 | 43:5 | 24:17 |
| **investigated ...** | **K** | **LB (1)** | **long (1)** | **meant (2)** |
| 23:18 | **keep (3)** | 1:6 | 15:10 | 61:7,8 |
| **investigation...** | 12:6 19:3 | **leave (1)** | **look (3)** | **meetings (3)** |
| 16:15,22 23:19 | 40:25 | 8:19 | 16:10 39:14 | 51:23,24 52:5 |
| 23:24 32:12 | **KINGS (1)** | **left (1)** | 45:18 | **minute (1)** |
| 51:6,8 | 65:5 | 8:22 | **low (6)** | 41:8 |
| **involved (12)** | **knew (1)** | **legal (10)** | 13:17,19,23,25 | **minutes (3)** |
| 32:20,25 33:5 | 40:19 | 2:16 9:9 15:14 | 18:6 24:17 | |
| | **know (32)** | | | |

41:2,3,7
**misconduct (1)**
59:13
**moment (1)**
28:13
**MONTENA ...**
2:19
**morning (17)**
4:3 5:18 6:9,10
8:25 9:14
15:10 27:18
34:7,13,18,23
39:22 40:3
48:20 54:21
55:4
**Motor (3)**
21:4 25:21
26:11
**motorists (2)**
52:13,15
**moved (1)**
42:14

---

**N**

**N (4)**
2:2 3:5 62:2
64:2
**name (1)**
3:11
**named (1)**
21:24
**necessarily (1)**
20:7
**need (5)**
30:13 41:2,3,5
42:24
**never (4)**
19:10 22:19
23:3 27:6
**New (35)**
1:2,21 2:5,5,7
2:13,13,18
3:7,16 5:6
10:10,16
12:21 14:25
20:21 21:12

---

23:6,15 24:4
26:11,17
27:20 31:22
32:22 33:3
35:25 39:3,4
42:10,15 56:2
57:21 65:4,8
**Newman (3)**
1:20 65:7,23
**normal (1)**
19:24
**Notary (4)**
1:21 3:7 62:22
65:7
**notice (3)**
1:18 38:12,18
**number (5)**
8:21 24:10,13
55:4 63:7
**numerous (1)**
50:8
**NY (2)**
1:10 2:11

---

**O**

**O (1)**
62:2
**object (5)**
5:24 20:23
36:19 44:17
57:17
**objection (64)**
5:9,22 9:3,22
10:12,18
11:14 12:9
13:2 15:25
16:12,23 17:9
17:16,23
18:18 19:5,12
20:5,11 23:10
24:6,23 25:17
25:24 26:19
27:10,22 30:3
30:11 31:11
31:23 32:9
33:22 34:8,25

---

35:8 36:24
37:9 38:15,24
40:5,11 42:20
46:23 47:6,15
48:13,23 49:7
50:23 51:11
53:22 54:7,19
55:10,14,19
56:6,11 57:5
58:11,21 61:2
**occasions (1)**
50:8
**offended (2)**
61:9,12
**offense (2)**
39:9,12
**office (30)**
2:7 7:13 13:9
14:16,20
19:22 20:4
22:15,19,25
23:3,14 26:15
27:7 31:4,8
31:14,21
38:23 42:5
43:23 44:22
45:3,11,13
52:7 57:9
58:24 59:7,13
**officers (2)**
8:18 9:17
**offices (1)**
37:5
**official (3)**
1:11 2:12,17
**Oh (1)**
17:11
**okay (3)**
35:14 41:8
60:8
**One-page (1)**
63:12
**opportunity ...**
14:14 15:3,22
17:25 18:22
21:17 31:15

---

**order (1)**
54:20
**outcome (1)**
65:17

---

**P**

**P (2)**
2:2,2
**P.M (2)**
1:14 61:19
**page (5)**
7:20 63:6 64:4
64:9,16
**paid (2)**
26:5,6
**paragraph (4)**
8:8 60:3,5,17
**part (2)**
10:21 32:5
**particular (1)**
8:2
**parties (1)**
65:15
**party (3)**
18:9,14 22:23
**pause (1)**
40:22
**PEC (2)**
1:9 2:11
**people (11)**
13:18,24 14:5
14:8 16:5
33:8,9,13,21
37:22,23
**percent (1)**
22:6
**permanently...**
46:14
**permitted (1)**
16:5
**personally (6)**
31:4 32:20,25
33:2 57:19,23
**personnel (1)**
36:17
**Petition (1)**

---

63:14
**phone (21)**
4:2,4 5:13 8:20
15:5,9,11
26:15,23,24
27:3,6,16,25
28:2 32:3
33:19 34:14
34:17 36:8
55:3
**physical (1)**
46:6
**physically (1)**
29:18
**picked (1)**
27:6
**place (3)**
2:5 45:23
62:11
**Plaintiff (3)**
1:4,17 2:4
**Plaintiff's (5)**
7:5 28:8 45:19
59:23 63:4
**Plaza (1)**
2:18
**pleading (1)**
52:13
**please (8)**
3:11 7:14,19
8:3 28:14
46:7 48:8
53:25
**point (2)**
5:4 18:23
**pointed (1)**
49:21
**police (7)**
6:23 8:18 9:16
19:15,22 20:8
54:22
**posed (1)**
4:17
**practice (27)**
3:24 5:6 6:14
9:21 10:10,16

12:15,20
14:24 15:21
17:7 20:21
27:20 32:21
33:3,16 35:7
35:25 39:3
41:19 42:15
44:3,9,24
46:15 56:2
57:20
**practicing (6)**
4:12 5:14 21:2
28:4 31:22
43:20
**praying (2)**
47:13 48:7
**preface (2)**
9:25,25
**Prefacing (1)**
14:2
**prepared (1)**
26:4
**present (2)**
59:10,18
**presented (2)**
4:16 25:3
**prevent (1)**
56:8
**previous (1)**
43:5
**previously (6)**
3:3 7:6 28:9
45:20 59:24
63:4
**Pricket-Mor...**
28:7,18 39:18
47:19,20
48:16 53:18
**prior (5)**
12:17,19 34:2
53:23 54:2
**privilege (3)**
5:25 16:24
24:10
**privileged (4)**
11:6,20 13:3

17:2
**privy (9)**
22:8 40:10,14
40:15 49:14
51:7 52:2
54:5,11
**PRO (1)**
2:4
**problem (6)**
41:4 50:11,13
50:14,20,21
**Procedure (1)**
1:19
**process (8)**
17:13,18,21,22
18:10,14 58:7
58:10
**prohibit (1)**
43:20
**proved (1)**
18:16
**provide (2)**
18:15,16
**Public (4)**
1:21 3:7 62:22
65:7
**pursuant (1)**
1:17
**pushed (1)**
49:12
**put (1)**
7:10

**Q**

**question (48)**
5:10 9:4 11:15
12:10 13:6
14:2,4,8,10
14:18 16:2,9
18:4,19 19:6
20:6 21:9
22:18 23:11
24:7,24 25:18
25:25 26:3,20
27:11 30:4,12
34:9 35:2,9

36:6,20,25
37:13 38:16
38:25 42:3
43:11 44:18
44:20 47:16
54:8 55:11
58:12,22 61:3
64:16
**questions (5)**
3:18 5:25
13:12 36:4
64:15
**quick (1)**
59:22
**quiet (3)**
60:19 61:5,11

**R**

**R (4)**
2:2 3:5 62:2
65:2
**raised (1)**
4:22
**reached (1)**
4:16
**read (6)**
22:10 28:14
41:17,18
53:17,21
**Reading (1)**
28:19
**readmitted (1)**
49:11
**ready (1)**
40:23
**real (1)**
59:22
**really (3)**
18:5,11,25
**reason (3)**
10:23 12:7
39:25
**reasons (3)**
24:3,20,21
**rebuttal (1)**
18:17

**rebutting (1)**
17:15
**recall (95)**
3:23 4:5,24
5:12,20 6:11
9:2,5,12
11:24 13:4,10
13:15 15:13
19:18,19
20:14 21:25
22:10 23:23
24:2,14 26:24
26:25 27:3,15
27:24,25 29:3
29:25 30:6,15
30:18,20 31:2
31:6,13 32:4
32:16,18 33:8
33:12,21
34:20,24 35:3
35:10,11,15
35:16,21
36:11 38:9,10
39:16,19
40:19 42:6
43:4 44:5,6
44:11 46:12
46:19,21 47:3
47:4,8,14,21
48:3,15,25
49:3,16,19
50:4,7,25
51:10,15 52:9
52:10,18,23
53:8 54:17,25
55:6,22 57:16
59:3,4,9
61:15
**receive (5)**
34:14 50:15
57:8 58:18,23
**received (3)**
7:12 34:12
39:20
**receiving (2)**
48:3 59:4

**recollection (3)**
4:8 11:24
22:12
**record (2)**
3:12 65:12
**rectify (1)**
31:4
**redactions (2)**
7:9,10
**referring (2)**
45:5 46:3
**refused (1)**
27:8
**regarding (3)**
18:3 32:18
59:15
**regulations (1)**
4:19
**related (1)**
65:15
**relief (3)**
47:13 48:7,10
**remains (1)**
25:11
**remember (17)**
4:6,10,11 17:3
18:24 23:17
25:9 28:17
29:8,9 32:15
34:15 46:10
47:23,25 48:5
60:14
**removal (7)**
11:11,13,18
12:8 26:16
32:21 57:20
**remove (2)**
11:11 43:15
**removed (24)**
3:21 4:25 6:13
9:15,16,19
10:6,9,15,22
10:24 11:9
12:4,17,20
14:24 15:20
24:4 26:16

| | | | | |
|---|---|---|---|---|
| 42:10,19 43:3 54:24 56:10 | 39:17 48:11 48:15 49:18 | **rules (2)** 1:18 4:18 | **served (1)** 59:6 | **spar (1)** 49:22 |
| **removing (1)** 55:25 | 50:6,20 54:16 57:12,14,15 | **RULINGS (1)** 64:15 | **set (3)** 55:24 65:11,20 | **speak (1)** 3:18 |
| **repeat (2)** 37:12 53:24 | 59:11 61:14 **retained (2)** | — S — | **share (1)** 28:20 | **spear (1)** 49:23 |
| **reply (4)** 58:19,25 59:5 | 43:15 63:17 **retaliation (1)** | **S (3)** 2:2 3:5 63:2 | **shared (1)** 28:18 | **specific (3)** 24:19,21 35:6 |
| 59:8 | 42:8 | **SADIQ (2)** 1:9 2:10 | **Sheldrake (1)** 2:5 | **specifically (1)** 23:14 |
| **report (7)** 6:23 7:18,21 | **retired (1)** 12:12 | **salary (2)** 26:5,6 | **short (1)** 27:17 | **specifics (7)** 11:25 13:4 |
| 7:24 8:2,13 37:24 | **review (9)** 10:2,8,20,24 | **saw (2)** 41:19 60:24 | **sign (5)** 43:22,25 44:4 | 16:19 46:10 46:19 47:25 |
| **reported (1)** 51:5 | 12:13,18,22 19:15 38:5 | **saying (11)** 13:17,22 21:5 | 44:8 49:24 | 49:9 |
| **Reporter (5)** 7:2,15 8:5 60:6 | **reviewed (7)** 12:25 13:11 | 22:15,21 23:9 32:8 36:14 | **signature (3)** 44:15 45:15,23 | **specified (1)** 62:11 |
| 63:17 | 14:21 20:8,16 20:17 47:24 | 37:19 40:18 48:17 | **simplify (1)** 58:16 | **speech (2)** 56:4,10 |
| **reports (7)** 19:16,16,21,22 | **reviewing (3)** 10:17 32:16 | **says (2)** 9:11 41:18 | **Sir (1)** 53:24 | **Spring (1)** 3:15 |
| 19:23 20:9,9 | 46:12 | **SCHROEDE...** 1:10 2:12,17 | **slurs (2)** 46:22,25 | **SS (1)** 65:4 |
| **representativ...** 25:15 | **right (36)** 6:22 8:8 15:15 | **scope (1)** 18:12 | **Smart (25)** 1:10 2:11 7:22 | **staff (1)** 25:5 |
| **representing ...** 60:11 | 15:24 16:11 18:21,22 | **scroll (2)** 8:3 60:4 | 29:13,16,23 30:25 36:23 | **standpoint (1)** 18:7 |
| **requested (2)** 3:24 64:8 | 20:22 21:5 22:15,20 | **SE (1)** 2:4 | 38:14,20 39:21 40:2,9 | **state (14)** 1:21 2:7,18 3:7 |
| **requirement...** 52:14 | 25:12 27:7,21 31:10 32:7 | **secretary (1)** 27:8 | 48:19,20 49:2 49:6,10,21 | 3:11 21:12 25:15,23 26:9 |
| **rescheduling...** 52:15 | 33:17 37:19 43:7,15 44:24 | **security (4)** 4:21 25:7 | 50:9,18 51:2 51:17 53:12 | 26:11 59:19 59:20 65:4,8 |
| **respect (13)** 17:14 22:15,25 | 45:5,11 47:5 48:4 51:18 | 29:12 37:5 | 57:2 | **stated (2)** 12:22 41:13 |
| 23:5 42:5 44:8 50:16,17 | 54:3,6,13,16 55:21 56:3,9 | **see (4)** 13:17 45:9 | **somebody (1)** 34:22 | **statement (4)** 8:23 9:12 |
| 51:8,14 55:21 55:23 57:13 | 57:23 58:2,9 | 54:14 60:20 | **sorry (9)** 7:19 9:5 19:18 | 23:22 44:16 |
| **respond (9)** 10:13 14:14 | **Rochelle (1)** 2:5 | **seeing (1)** 60:14 | 22:17 28:22 42:24 52:4 | **statements (1)** 42:4 |
| 15:3,22 26:14 26:22 27:5 | **room (4)** 2:18 8:18 | **seen (1)** 8:2 | 54:10 58:23 | **STATES (1)** 1:2 |
| 31:16,25 | 52:14 54:23 | **sent (6)** 12:3,23 32:17 | **spade (5)** 29:20,20 53:14 | **stating (1)** 41:16 |
| **responding (1)** 27:3 | **routine (1)** 51:24 | 39:17 45:13 46:13 | 57:2,3 | **statute (2)** 42:18,23 |
| **response (16)** 9:24 29:7,8,22 | **rug (3)** 30:9,10,14 | | **spade's (1)** 53:13 | |

| stay (3) | 1:9 2:10 | theft (1) | three (1) | 31:1 32:1 |
|---|---|---|---|---|
| 60:18,19 61:11 | take (13) | 51:9 | 50:9 | 33:1 34:1 |
| staying (1) | 28:13 29:6 | think (3) | ticker (1) | 35:1 36:1 |
| 61:4 | 30:5,17 38:22 | 7:4 18:11 | 51:24 | 37:1 38:1 |
| stealing (1) | 39:9,11 41:6 | 24:25 | ticket (2) | 39:1 40:1 |
| 51:3 | 44:13 49:17 | third (1) | 52:6,6 | 41:1 42:1 |
| stipulation (4) | 50:5 51:13 | 8:16 | time (7) | 43:1 44:1 |
| 43:22 44:2,4,8 | 59:21 | THOMPSO... | 1:14 5:5 15:18 | 45:1 46:1 |
| stood (1) | taken (2) | 2:13 5:9,22 7:8 | 40:19 51:3 | 47:1 48:1 |
| 49:21 | 1:17 30:21 | 9:3,22 10:12 | 60:11 62:10 | 49:1 50:1 |
| street (3) | talk (1) | 10:18 11:14 | times (4) | 51:1 52:1 |
| 2:12 13:18,24 | 14:9 | 12:9 13:2 | 17:3 46:9,19 | 53:1 54:1 |
| submissions ... | talking (4) | 15:25 16:12 | 48:14 | 55:1 56:1 |
| 7:12 | 31:18 43:7 | 16:23 17:9,16 | title (1) | 57:1 58:1 |
| submitted (4) | 45:7 47:18 | 17:23 18:18 | 15:16 | 59:1 60:1 |
| 11:8 13:8 14:6 | Teague (2) | 19:5,12 20:5 | today (2) | 61:1 62:1,15 |
| 19:17 | 21:24 22:3 | 20:11,23 | 53:17,21 | 63:1 64:1 |
| Subscribed (1) | tell (24) | 23:10 24:6,23 | told (16) | 65:1 |
| 62:18 | 4:10 8:18 11:7 | 25:17,24 | 5:2,5 8:15,17 | true (6) |
| Subsequent (1) | 11:10,12 12:4 | 26:19 27:10 | 9:9,16,18,19 | 5:8 8:23 31:10 |
| 6:19 | 12:24 13:14 | 27:22 30:3,11 | 27:19 29:20 | 32:7 62:9 |
| suggested (1) | 16:16,21 18:7 | 31:11,23 32:9 | 33:14,15 40:8 | 65:12 |
| 25:4 | 18:8 24:22 | 33:22 34:8,25 | 41:2 53:4,13 | truth (2) |
| supervisor (2) | 27:13 33:18 | 35:8 36:3,19 | top (1) | 3:19 62:5 |
| 37:17,18 | 36:10 41:9,11 | 36:24 37:9 | 7:20 | truthful (1) |
| supervisory (3) | 46:5,8,16,17 | 38:15,24 40:5 | Traffic (7) | 14:7 |
| 36:16 37:14,25 | 54:22 55:3 | 40:11,21 41:6 | 23:16 24:4 | truthfully (1) |
| suppose (1) | tenure (1) | 41:11 42:20 | 26:17 32:22 | 3:19 |
| 21:19 | 43:14 | 43:10 44:17 | 33:3 42:10,15 | truthfulness ... |
| sure (5) | terminated (1) | 46:23 47:6,15 | transcript (2) | 13:7 16:10 |
| 14:17 18:5 | 4:12 | 48:13,23 49:7 | 62:9,9 | trying (1) |
| 22:6 37:11 | terms (4) | 50:23 51:11 | Traschen (71) | 36:7 |
| 45:6 | 16:6 44:2,9 | 53:22 54:7,19 | 1:8,17 2:9 3:1 | TVB (32) |
| sweep (1) | 51:19 | 55:10,14,19 | 3:13,17 4:1 | 3:21,25 4:13 |
| 30:14 | testified (1) | 56:6,11 57:5 | 5:1 6:1 7:1 | 4:13,19 5:2 |
| swept (2) | 3:8 | 57:17 58:11 | 8:1 9:1 10:1 | 6:14 9:15 |
| 30:8,9 | testify (3) | 58:21 61:2 | 11:1 12:1 | 12:21 15:20 |
| sworn (4) | 16:4 18:13 | threat (1) | 13:1 14:1 | 23:6 24:20 |
| 3:6 62:5,18 | 62:5 | 49:14 | 15:1,12 16:1 | 29:13 31:22 |
| 65:11 | testifying (1) | threatened (2) | 17:1,19 18:1 | 34:6 35:18,22 |
| | 9:23 | 4:21 25:6 | 19:1 20:1 | 36:18 39:3 |
| **T** | testimony (6) | threatening (4) | 21:1 22:1 | 43:21 44:3,10 |
| T (5) | 15:24 16:3,8 | 4:23 25:5 | 23:1 24:1 | 44:24 48:9 |
| 3:5 62:2 63:2 | 62:6,10 65:13 | 29:17 47:5 | 25:1 26:1 | 49:12 51:18 |
| 65:2,2 | thank (2) | threats (1) | 27:1 28:1 | 51:20,25 |
| TAHIR (2) | 8:4 61:18 | 46:6 | 29:1 30:1 | 54:23 56:2 |

57:21 60:24
**TVBs (14)**
5:7,14,15 6:15
10:11,16
14:25 15:21
20:22 21:2
27:20 28:4
35:25 39:4
**Two-page (2)**
63:8,10

___ U ___
**Uh-hmm (1)**
29:15
**ultimately (1)**
37:24
**um (1)**
18:2
**understand (...**
12:16 13:16,21
14:3,17 21:8
23:7,8 24:18
52:24
**understandi...**
28:22
**UNITED (1)**
1:2
**upset (1)**
56:16

___ V ___
**vague (4)**
4:8 11:24 18:4
22:12
**Vahdat (5)**
38:3,6 60:16
60:18 61:7
**Vehicles (3)**
21:4 25:22
26:11
**verbal (2)**
46:5,17
**verbally (1)**
29:17
**Verified (1)**
63:14

**VIDEOCON...**
1:20
**videotape (11)**
10:3,7,8,17,20
10:25 11:3,4
19:4,9,11
**view (2)**
10:2 19:13
**viewed (2)**
19:10 20:14
**viewing (1)**
10:7
**Violation (3)**
33:4 42:10,16
**Violations (4)**
23:16 24:5
26:17 32:22
**violence (8)**
7:21,24 8:12
19:16,22 20:9
46:6 63:9
**volition (1)**
36:13
**voracity (4)**
12:13 13:6
16:10 39:15

___ W ___
**want (7)**
24:20 45:6
47:11,12 48:8
48:9 60:23
**wanted (1)**
61:10
**wants (2)**
60:16,18
**warranted (1)**
46:14
**way (2)**
45:15 65:17
**weekly (2)**
51:23 52:5
**went (1)**
13:12
**weren't (1)**
54:5

**WHEREOF ...**
65:19
**withdraw (1)**
59:20
**witness (5)**
3:6 61:20
65:10,13,19
**witnesses (3)**
18:16 59:11,19
**woke (1)**
35:23
**work (7)**
7:21,23 8:12
19:16,22 20:9
51:17
**worked (1)**
25:16
**working (1)**
23:6
**workplace (1)**
63:8
**writing (5)**
8:12 27:4 42:9
57:4 60:23
**written (12)**
12:14,19 14:15
14:20 28:5
31:9,17,20
45:11 58:19
59:12 60:10
**wrote (8)**
14:5,8 31:13
38:6 39:4
41:20 44:22
44:25
**Wynantskill ...**
3:16

___ X ___
**X (4)**
1:3,12 63:2
64:2

___ Y ___
**Yeah (1)**
21:22

**years (10)**
11:21,23 13:5
17:5 18:24
22:7 25:9
32:15 40:20
57:11
**yell (1)**
30:13
**York (34)**
1:2,21 2:5,7,13
2:13,18 3:7
3:16 5:6
10:10,16
12:21 14:25
20:21 21:12
23:6,15 24:4
26:11,17
27:20 31:22
32:22 33:3
35:25 39:3,4
42:10,15 56:2
57:21 65:4,8

___ Z ___
**ZOOM (1)**
1:19

___ 0 ___

___ 1 ___
**1 (1)**
24:10
**1:20 (1)**
41:9
**1:21 (1)**
61:19
**10005 (1)**
2:13
**10804 (1)**
2:5
**11 (32)**
3:20 4:3,25
5:18 6:9,10
8:13,25 9:14
10:4 14:23
19:4 27:18
28:24 34:7,13

34:16,19,23
35:6 36:8,10
39:22 40:3,17
45:18,20
53:23 54:3,21
55:5 63:12
**11-page (1)**
63:14
**11228 (1)**
2:18
**11th (3)**
15:10 26:18
48:21
**12:24 (1)**
1:14
**12:59 (1)**
40:22
**12198 (1)**
3:16
**15 (6)**
28:7,9 41:2,3,7
63:10
**150 (1)**
51:3
**1600 (1)**
3:15
**17 (1)**
1:13
**17th (1)**
2:12
**18 (1)**
1:6
**18CV2710 (1)**
2:19

___ 2 ___
**2 (1)**
24:13
**2:00 (1)**
41:3
**20 (7)**
28:6 39:5 47:9
56:18 62:19
63:11,13
**2011 (1)**
51:4

| | |
|---|---|
| **2012 (4)** | **6** |
| 49:11 51:4 | **6 (1)** |
| 60:15 63:13 | 2:18 |
| **2015 (37)** | **68 (3)** |
| 3:20 4:3,25 | 7:4,6 63:8 |
| 5:18 6:9,10 | |
| 8:14,25 9:14 | **7** |
| 10:4 14:23 | **7 (5)** |
| 19:4 27:18 | 59:21,22,24 |
| 28:6,24 32:23 | 63:9,14 |
| 34:7,13,16,19 | **70 (2)** |
| 34:23 35:6 | 6:24,25 |
| 36:9,10 39:5 | **78 (2)** |
| 39:22 40:3,17 | 43:6,24 |
| 47:9 49:20 | |
| 53:23 54:3,21 | **8** |
| 55:5 56:18 | **80 (1)** |
| 61:10 63:11 | 51:3 |
| **2020 (2)** | **86 (1)** |
| 1:13 65:20 | 3:2 |
| **20th (2)** | **8th (2)** |
| 47:21 61:10 | 41:15,24 |
| **21 (1)** | |
| 2:5 | **9** |
| **23 (3)** | |
| 60:3,5,17 | |
| **2710 (1)** | |
| 1:6 | |
| **28 (2)** | |
| 2:12 63:11 | |
| | |
| **3** | |
| **3 (1)** | |
| 64:5 | |
| **31st (1)** | |
| 65:20 | |
| | |
| **4** | |
| **45 (1)** | |
| 63:13 | |
| | |
| **5** | |
| **522A (1)** | |
| 2:18 | |
| **59 (1)** | |
| 63:14 | |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



MARIO H. CAPOGROSSO,

     Plaintiff

-against-

**PLAINTIFF'S
SUPPLEMENTAL
OPPOSITION TO
STATE DEFENDNATS'
MOTION FOR
SUMMARY JUDGMENT**

**Case No. CV-18-2710**

ALAN GELBSTEIN, et. al.,

_____

I Mario H. Capogrosso, affirm under penalty of perjury that:

1.  I, Mario H. Capogrosso, and attorney duly license in the states of New York and
    Connecticut, am the plaintiff in the above entitled action and submit this supplemental
    affirmation in opposition to the motion dated May 17, 2021 State defendants' motion
    for summary judgment.

2.  I have personal knowledge of the facts which bear upon this motion because I have
    personal knowledge or have witnessed all such facts.

3.  Pursuant to Federal Rule of Civil Procedure 56, Local Civil Rule 56.1 and 56.2, I
    provide a paragraph by paragraph detailed opposition and response to State
    Defendants Local Civil Rule 56.1 Statement as follows.

4.  The motion should be denied because:

1

1. I attach Exhibit Z, defendant Gelbstein's response to my interrogatories.

2. I attach Exhibit AA defendant Traschen's Calvo's response to my interrogatories.

3. I attach Exhibit BB defendant Calvo's response to my interrogatories.

4. I attach Exhibit CC defendant Schroeder's response to my interrogatories.

5. I attach Exhibit DD my response to State defendants' interrogatories.

2

**The motion should be denied because in response and opposition to paragraph 4.**

Defendant Gelbstein is no judge – not in my eyes. Judges are men of honor and esteem.

Defendant Gelbstein is a lying lawyer ac corrupt judge and a racist.

Defendant Gelbstein states I call him a "beanie wearing kike" and then states he did not document when it occurred it because he did not want to get me removed from the TVB. He gives no reasons for me stating it and never documents it and only writes about it after my incident with Brody in December 2011. A lying lawyer, purporting to be a man of faith by wearing a yamaka at his deposition. And I know the difference between a yamaka and a beanie defendant Gelbstein I have been to several Jewish weddings in my lifetime, and I just attended my first Jewish bar mitzvah with one of the women I am dating. I have to be called a Jew hatter by Brodie and be lied about by Gelbstein. Somebody do the math I was an engineer in a former lifetime. I met ten people a day at this TVB five days a week that is 50 people a day 2500 people a year and 25, 000 people over a ten-year career. Not one states I made any type of anti semetic or racist remark. A lying lawyer acting as a judge, its deplorable.

He's corrupt. The first statement out of his mouth is how do I get a piece of the action. He has lunch with Jewish ticket brokers on a weekly basis and he does not know what they do for a living, but they are friends of his wife. The worst deplorable atrocity, he is entering guilty pleas before alj Bohmstein on a sidebar not while he is on the bench. He is acting as a ticket broker by his own admission. I have practiced law for several yeas. I never heard of an individual be being able to call a judge's chamber other than to seek an

3

adjournment or to question whether a decision has been rendered an order. He was acting as a ticket broker between two individual by his very own admission when he asks other attorneys to cover cases for him.

He's a racist. I complain to him of the heft of $80 on a $150 fee by defendant Smart. An investigation is made and Gelbstein tells me that Smart admits to taking the money but that he gave it to me. Another lie. Then the harassment by Smart begins and when I complain, he laughs and giggles and tells me a spade is a spade.
He s no judge in my eyes. And with all this being said defendant Schroeder rewards him with a pension and pass.


**12. The motion should be denied because in response and opposition to paragraph 12.**

This woman, Agnes Paez, was soliciting motorists in the parking lot of the Brooklyn TVB albeit under the watchful eye of Diantha Fuller the attorney who she worked for. It was embarrassing. Fuller did not seem to mind.


**The motion should be denied because in response and opposition to paragraph 13**

I further affirm the following with respect to this group of clerks who signed a petition against me.

I affirm to the following

a) Defendant Smart routinely every Christmas handed out Christmas cards. I am sure he was looking for some type of gratuity from the lawyers.

4

b) Defendant Sadiq Tahir indicated to me at one point in time that he pays Lucy, one of the clerks, and I can only assume that it is the same Lucy who signs her name to this petition attached as Exhibit EE. I felt it was inappropriate.

c) Jeff Meyers asked me at one point in time what are you giving the clerks for Christmas, Meyers states I am giving them all two hundred and Roy more. I can only assume this is the Roy that bears his name on Exhibit EE.

d) Terry Kalker use to give parties for the clerical staff and judges during the holidays. I was never invited.

e) Jeffrey Ziff, one of the lead attorneys at Brooklyn TVB, used to tell me why don't you buy breakfast and lunch for the clerks. I refused.

f) I have relayed what I saw about Tanya Rabinovich in detail. .

This woman was calling herself a lawyer repeatedly in defendant Gelbstein's courtroom, She held an office in her own name right outside the Brooklyn TVB on West 8th Street, Brooklyn NY. She came to the clerical counter on a daily basis requesting or having 10, 15, 20 summonses in her hand. She would post bonds and the clerks would giver dates. She was playing the game, taking a ticket pushing it out, and then entering a guilty plea. Easily done if you have the motorist's date of birth and driver's license ID. In 18 months the points do not show up on your license. I never saw an e exchange of money but I'm sure these clerks were not doing business for free. I reported these action to the District Attorney at which point these clerks turned on me and form the basis for many of the complaints written against me.

Further and with respect to my adversary Thompson's letter of complaint, dated

5

May 21, 2021, I apologize if offended his sensibilities I do but any speech that was used is protected speech by our Supreme Court, but I do apologize. But I reaffirm that I gave this attorney in my complaint how I chose to be contacted by phone text or direct mail. I indicated to him at one point by phone message that I was not receiving his emails attachments in full at which point I needed a hard copy, Federal Rule 5 allow such an allowance. Attorney Thompson refused to acknowledge. We were ordered to cooperate he did not call or text a reply. He plays cute. His office plays cute When I sent my letter of compalitn dated March 20, 2015, I called their office and was told it was lost in their mail room. After three weeks of continuous .calling it was miraculously found. I don't like cute.

I do not apologize for being an aggressive lawyer honest lawyer. I don not. I indicated to this Court what I saw and heard at the Brooklyn TVB in my ten years of practice at this tribunal, April 2005 to May 2015. If it wasn't for me taking the stand I have, defendant Gelbstein would still be entering guilty pleas on a sidebar in the GE and entertaining ticket brokers on a weekly basis, and having attorneys cover cases for individual calling his office, albeit under the watchful eye of the Attorney General's office, senior alj Bushra Vahdat, and lead counsel Ida Traschen.

I have done my duty and I am not ashamed of.it .The proof is evident not one grievance was ever filed before the Grievance Committee against my office, other than one concerning a fee dispute, which I won. I have done my duty to this Court, to the motorists of the Starte of New York who I faithfully represented for ten years of my legal career, and to the oaths I have take to the New York and Connecticut Bar. I have done my duty.

I faithfully await your decision.

I declare under penalty of perjury that the foregoing is true and correct.

6

June 29, 2021

Respectfully truthfully submitted

$M$- $H$-$G$

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, New York 10804
(914) 806-3692

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO H. CAPOGROSSO,

     Plaintiff

-against-

         **PLAINTIFF'S**
         **SUPPLEMENTAL**
         **OPPOSITION TO**
         **STATE DEFENDNATS'**
         **MOTION FOR**
         **SUMMARY JUDGMENT**

         **Case No. CV-18-2710**

ALAN GELBSTEIN, et. al.,

_____

I Mario H. Capogrosso, affirm under penalty of perjury that:

1.  I, Mario H. Capogrosso, and attorney duly license in the states of New York and Connecticut, am the plaintiff in the above entitled action and submit this supplemental affirmation in opposition to the motion dated May 17, 2021 State defendants' motion for summary judgment.

2.  I have personal knowledge of the facts which bear upon this motion because I have personal knowledge or have witnessed all such facts.

3.  Pursuant to Federal Rule of Civil Procedure 56, Local Civil Rule 56.1 and 56.2, I provide a paragraph by paragraph detailed opposition and response to State Defendants Local Civil Rule 56.1 Statement as follows.

4.  The motion should be denied because:

1

1. I attach Exhibit Z, defendant Gelbstein's response to my interrogatories.

2. I attach Exhibit AA defendant Traschen's Calvo's response to my interrogatories.

3. I attach Exhibit BB defendant Calvo's response to my interrogatories.

4. I attach Exhibit CC defendant Schroeder's response to my interrogatories.

5. I attach Exhibit DD my response to State defendants' interrogatories.

2

**The motion should be denied because in response and opposition to paragraph 4.**

Defendant Gelbstein is no judge – not in my eyes. Judges are men of honor and esteem.

Defendant Gelbstein is a lying lawyer ac corrupt judge and a racist.

Defendant Gelbstein states I call him a "beanie wearing kike" and then states he did not document when it occurred it because he did not want to get me removed from the TVB. He gives no reasons for me stating it and never documents it and only writes about it after my incident with Brody in December 2011. A lying lawyer, purporting to be a man of faith by wearing a yamaka at his deposition. And I know the difference between a yamaka and a beanie defendant Gelbstein I have been to several Jewish weddings in my lifetime, and I just attended my first Jewish bar mitzvah with one of the women I am dating. I have to be called a Jew hatter by Brodie and be lied about by Gelbstein. Somebody do the math I was an engineer in a former lifetime. I met ten people a day at this TVB five days a week that is 50 people a day 2500 people a year and 25, 000 people over a ten-year career. Not one states I made any type of anti semetic or racist remark. A lying lawyer acting as a judge, its deplorable.

He's corrupt. The first statement out of his mouth is how do I get a piece of the action. He has lunch with Jewish ticket brokers on a weekly basis and he does not know what they do for a living, but they are friends of his wife. The worst deplorable atrocity, he is entering guilty pleas before alj Bohmstein on a sidebar not while he is on the bench. He is acting as a ticket broker by his own admission. I have practiced law for several yeas. I never heard of an individual be being able to call a judge's chamber other than to seek an

3

adjournment or to question whether a decision has been rendered an order. He was acting as a ticket broker between two individual by his very own admission when he asks other attorneys to cover cases for him.

He's a racist. I complain to him of the heft of $80 on a $150 fee by defendant Smart. An investigation is made and Gelbstein tells me that Smart admits to taking the money but that he gave it to me. Another lie. Then the harassment by Smart begins and when I complain, he laughs and giggles and tells me a spade is a spade.

He s no judge in my eyes. And with all this being said defendant Schroeder rewards him with a pension and pass.

**12. The motion should be denied because in response and opposition to paragraph 12.**

This woman, Agnes Paez, was soliciting motorists in the parking lot of the Brooklyn TVB albeit under the watchful eye of Diantha Fuller the attorney who she worked for. It was embarrassing. Fuller did not seem to mind.

**The motion should be denied because in response and opposition to paragraph 13**

I further affirm the following with respect to this group of clerks who signed a petition against me.

I affirm to the following

a) Defendant Smart routinely every Christmas handed out Christmas cards. I am sure he was looking for some type of gratuity from the lawyers.

4

b) Defendant Sadiq Tahir indicated to me at one point in time that he pays Lucy, one of the clerks, and I can only assume that it is the same Lucy who signs her name to this petition attached as Exhibit EE. I felt it was inappropriate.

c) Jeff Meyers asked me at one point in time what are you giving the clerks for Christmas, Meyers states I am giving them all two hundred and Roy more. I can only assume this is the Roy that bears his name on Exhibit EE.

d) Terry Kalker use to give parties for the clerical staff and judges during the holidays. I was never invited.

e) Jeffrey Ziff, one of the lead attorneys at Brooklyn TVB, used to tell me why don't you buy breakfast and lunch for the clerks. I refused.

f) I have relayed what I saw about Tanya Rabinovich in detail. .

This woman was calling herself a lawyer repeatedly in defendant Gelbstein's courtroom, She held an office in her own name right outside the Brooklyn TVB on West 8th Street, Brooklyn NY. She came to the clerical counter on a daily basis requesting or having 10, 15, 20 summonses in her hand. She would post bonds and the clerks would giver dates. She was playing the game, taking a ticket pushing it out, and then entering a guilty plea. Easily done if you have the motorist's date of birth and driver's license ID. In 18 months the points do not show up on your license. I never saw an e exchange of money but I'm sure these clerks were not doing business for free. I reported these action to the District Attorney at which point these clerks turned on me and form the basis for many of the complaints written against me.

Further and with respect to my adversary Thompson's letter of complaint, dated

5

May 21, 2021, I apologize if offended his sensibilities I do but any speech that was used is protected speech by our Supreme Court, but I do apologize. But I reaffirm that I gave this attorney in my complaint how I chose to be contacted by phone text or direct mail. I indicated to him at one point by phone message that I was not receiving his emails attachments in full at which point I needed a hard copy, Federal Rule 5 allow such an allowance. Attorney Thompson refused to acknowledge. We were ordered to cooperate he did not call or text a reply. He plays cute. His office plays cute When I sent my letter of compalitn dated March 20, 2015, I called their office and was told it was lost in their mail room. After three weeks of continuous .calling it was miraculously found. I don't like cute.

I do not apologize for being an aggressive lawyer honest lawyer. I don not. I indicated to this Court what I saw and heard at the Brooklyn TVB in my ten years of practice at this tribunal, April 2005 to May 2015. If it wasn't for me taking the stand I have, defendant Gelbstein would still be entering guilty pleas on a sidebar in the GE and entertaining ticket brokers on a weekly basis, and having attorneys cover cases for individual calling his office, albeit under the watchful eye of the Attorney General's office, senior alj Bushra Vahdat, and lead counsel Ida Traschen.

I have done my duty and I am not ashamed of.it .The proof is evident not one grievance was ever filed before the Grievance Committee against my office, other than one concerning a fee dispute, which I won. I have done my duty to this Court, to the motorists of the Starte of New York who I faithfully represented for ten years of my legal career, and to the oaths I have take to the New York and Connecticut Bar. I have done my duty.

I faithfully await your decision.

I declare under penalty of perjury that the foregoing is true and correct.

6

June 29, 2021

Respectfully truthfully submitted

M- H. G

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, New York 10804
(914) 806-3692

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

MARIO H. CAPOGROSSO,

                Plaintiff,

      v.

ALAN GELBSTEIN, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY, BOSHIRA
VAHDATLAMAS, IN HER OFFICIAL AND
INDIVIDUAL CAPACITY, ALSO KNOWN AS
BUSHRA VAHDAT, IDA TRASCHEN, IN HER
OFFICIAL AND INDIVIDUAL CAPACITY,
ELIZABETH PRICKETT-MORGAN, IN HER
OFFICIAL AND INDIVIDUAL CAPACITY,
JEAN FLANAGAN, IN HER OFFICIAL AND
INDIVIDUAL CAPACITY, VINCET
PALMIERI, IN HIS OFFICIAL AND
INDIIVDUAL CAPACITY, DANIELLE CALVO,
IN HER OFFICIAL AND INDIVIDUAL
CAPACITY, SADIQ TAHIR, IN HIS
INDIVIDUAL CAPACITY, PEC GROUP OF NY,
INC., DAVID SMART, and JOHN AND JANE
DOE,

                Defendants.

----------------------------------------------------------------

DAVID SMART and SADIQ TAHIR,

                Counterclaimants,

      v.

MARIO H. CAPOGROSSO,

                Counter-Defendant.

----------------------------------------------------------------

NOT FOR PUBLICATION

**MEMORANDUM &ORDER**
18-CV-2710 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Mario H. Capogrosso, proceeding *pro se*, commenced the above-captioned action on May 8, 2018 against Defendants Alan Gelbstein, Boshira Vahdatlamas, Bushra Vahdat, Ida Traschen, Elizabeth Prickett-Morgan, Jean Flanagan, Vincet Palmieri, Danielle Calvo, Sadiq Tahir, Pec Group of NY, Inc., David Smart, and John and Jane Doe. (Compl., Docket Entry No. 1.) On May 30, 2018, Tahir and Smart filed separate but identical counterclaims against Plaintiff, alleging "Plaintiff illegally harassed [them] and continues to illegally harass [them] by bringing frivolous law suits." (Def. Smart Countercl., Docket Entry No. 6; Def. Tahir Countercl., Docket Entry No. 7.) Smart and Tahir both seek punitive damages against Plaintiff and allege damages in the sum of $100,000. (Def. Smart Countercl. 1; Def. Tahir Countercl. 1.)

Currently before the Court is Plaintiff's motions to dismiss both counterclaims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Pl. Mot. to Dismiss Tahir Countercl. ("Pl. Mot. Tahir"), Docket Entry No. 33; Pl. Mot. to Dismiss Smart Countercl. ("Pl. Mot. Smart"), Docket Entry No. 35.) For the reasons discussed below, the Court grants the motions and dismisses both counterclaims.

## I. Background

At a pre-motion conference on August 2, 2018, the Court directed Smart to file an amended counterclaim with relevant facts on or before August 9, 2018. (Order dated Oct. 2, 2018.) In addition, the Court deemed Tahir's statements at the conference — that his counterclaim is based on Plaintiff's commencement of this action — an amended answer and counterclaim. (*Id*.) In response to the Court's instruction at the conference, Smart filed with the Court a report from the New York Department of Motor Vehicles ("DMV") and a police report, both relating to a May 11, 2018 altercation between Plaintiff and Smart at the Coney Island DMV (the "reports"). (Def. Letter dated August 2, 2018, 2–4, 6–8, Docket Entry No. 31.) The reports indicate that on May

2

11, 2018, Plaintiff and Smart had a verbal altercation that became physical when Plaintiff pushed

Smart with an "open hand." (*Id*. at 4.) Smart reported the incident to the police. (*Id*. at 7–8.)

In addition to the reports, Smart filed a letter from Tahir summarizing two altercations

between Tahir and Plaintiff.[1] (*Id*. at 5.) In Tahir's letter, he alleges that a "few weeks ago" he had

a verbal altercation with Plaintiff after Plaintiff's bag was removed from a "chair where [Tahir]

regularly sit[s]." (*Id*.) He also alleges that on May 5, 2015, he and Plaintiff had another verbal

altercation regarding Plaintiff's placement of his bag on Tahir's chair. (*Id*.) During this argument,

Plaintiff "tried to provoke [him] because he thought Tahir was "an easy and soft target." (*Id*.)

Tahir alleges that Plaintiff yelled at him and called him "Shit." (*Id.*)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the

complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*,

884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d

Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v.

N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough

facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] Smart noted in his letter to the Court that "the last page is Mr. Tahir's statement from last week's incident. He just gave it in today." (Def. Letter dated August 2, 2018, 5, Docket Entry No. 31.

3

alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013).  A counterclaim must also be plausible.  *See Capitelli v. Riverhouse Grill, Inc.*, No. 15-CV-2638, 2015 WL 9413102, at *1 (E.D.N.Y. Dec. 21, 2015) ("[T]o survive a motion to dismiss under Rule 12(b)(6), a counterclaim must plead enough facts to state a claim to relief that is plausible on its face . . ." (internal quotation marks omitted)); *Cael Techs. (Pvt.) Ltd. v. Precise Voting, LLC.*, No. 13-CV-1470, 2014 WL 6900502, at *3 (E.D.N.Y. Dec. 5, 2014) (to survive a motion to dismiss, a counterclaim must contain sufficient facts to state a claim to relief that is plausible on its face.)  Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b.  Neither Smart nor Tahir have alleged plausible counterclaims

Plaintiff argues that "to the extent [the Defendants'] counterclaims assert a claim for 'harassment,' such cause of action does not exist in New York and must be dismissed."  (Pl. Mot. Tahir 15; Pl. Mot. Smart 15.)  In addition, he argues that to the extent Smart and Tahir seek to assert a claim for malicious prosecution, "such claim is patently premature because this action has not been determined on its merits favorably to the Defendant[s]."  (Pl. Mot. Tahir 14–15; Pl.

4

Mot. Smart 14–15.)  Plaintiff also argues that Defendants' counterclaims "fail[] to meet with

even the basic requisites of Rule 8," because there are no facts "offered in support of their

conclusory assertions of 'frivolousness' and 'harassment.'"  (*Id*. at 5.)

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must

include a "short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2); *see Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 134 (2d

Cir. 2007) (finding that defendant's "counterclaims pleaded in the answer [were] sufficient to

satisfy Rule 8(a)" of the Federal Rules of Civil Procedure).  A plaintiff pleading a counterclaim

must also comply with Rule 8.  *Ferrara v. Leticia, Inc.,* No. 09-CV-3032, 2012 WL 4344164, at

*2 (E.D.N.Y. Sept. 21, 2012) ("the standard for a motion to dismiss is the same with respect to

claims and counterclaims . . . as required by Rule8(a)(2), a pleading must contain a short and

plain statement of the claim showing that the pleader is entitled to relief." (internal quotation

marks omitted)); *see also Diamond Collection, LLC v. Underwraps Costume Corp.*, No. 2:17-

CV-00061, 2018 WL 1832928, at *5 (E.D.N.Y. Apr. 16, 2018) (granting the plaintiff's motion to

dismiss defendant's counterclaim for failing to comply with Rule 8 of the Federal Rules of Civil

Procedure); *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp.

3d 348, 361 (E.D.N.Y. 2016) (dismissing the defendant's counterclaims for failure to satisfy the

pleading requirements of Rule 8); *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 11 (E.D.N.Y.

1998) (stating "[t]he [c]ourt is mindful that under the modern rules of pleading, a defendant

asserting a counterclaim need only provide a short and plain statement of the claim showing that

the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2) . . . ." (internal quotation marks omitted)).

The "statement should be plain because the principal function of pleadings under the Federal

Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer

5

and prepare for trial." *Blakely v. Wells*, 209 F. App'x 18, 20 (2d Cir. 2006) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted); *see Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002); *see also Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (defining "fair notice" as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial" (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995))); 15 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1281 (3d ed. 2007) (noting that "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage"). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

### i. Harassment counterclaims

Smart and Tahir cannot state a counterclaim that "Plaintiff illegally harassed [them]," because "New York does not recognize a claim for civil harassment." *Pandozy v. Tobey*, 335 F. App'x 89, 91 (2d Cir. 2009); *see Kingvision Pay-Per-View Ltd. v. Ramierez*, No. 05-CV-2778, 2005 WL 1785113, at *2 (S.D.N.Y. July 28, 2005) (interpreting defendant's counterclaim for harassment as "tortious interference with business relations" because New York does not recognize a civil cause of action for harassment); *N.Y. Stock Exch., Inc. v. Gahary,* 196 F. Supp. 2d 401, 414 (S.D.N.Y. 2002) (dismissing defendants' counterclaim against plaintiff for harassment because "New York law does not recognize any independent tort for harassment").

6

### ii. Malicious prosecution counterclaims

Plaintiff alleges that claims for malicious prosecution are "patently premature because this action has not been determined on its merits favorably to the Defendant[s]." (Pl. Mot. Tahir 14–15; Pl. Mot. Smart 14–15.)

To state a claim under New York law for the malicious prosecution of a civil action, a plaintiff must show "1) the initiation of a [civil] action by the defendant against [him], 2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in failure or, in other words, terminates in favor of the plaintiff and 5) causes special injury." *Engel v. CBS*, 145 F.3d 499, 502 (2d Cir. 1998) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996) (internal quotation marks omitted)); *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F.3d 1, 6 (2d Cir. 2013) (stating the elements of a malicious prosecution claim under New York law; *Castro v. East End Plastic, Reconstructive & Hand Surgery, P.C.*, 47 A.D.3d 608, 850 N.Y.S.2d 483, 485 (2008) (same).

Even construing the allegations by Smart and Tahir to "raise the strongest arguments they suggest," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007), they do not contain factual allegations to support a claim for malicious prosecution. As Plaintiff accurately notes, "until this action is terminated" in their favor, they "cannot maintain an action for malicious prosecution."[2] (Pl. Mot. Tahir 14–15; Pl. Mot. Smart 14–15); *see Neal v. Fitzpatrick*, 250 F. Supp. 2d 153, 155 (E.D.N.Y. 2003) (dismissing plaintiff's malicious prosecution claim under § 1983 because plaintiff failed to demonstrate that his criminal proceeding was terminated); *Boyd v. City of N.Y.*,

---

[2] Neither Smart nor Tahir have referred to any prior lawsuits by Plaintiff against them.

7

336 F.3d 72, 75 (2d Cir. 2003) ("The elements of . . . malicious prosecution under § 1983 are substantially the same as the elements under New York law [for the malicious prosecution of a civil action]. Therefore, the analysis of the state and the federal claims is identical." (citation and internal quotation marks omitted)).

In addition, the counterclaim allegations, and the statements in the reports do not provide any factual allegations to support a malicious prosecution claim. Thus, the allegations against Plaintiff fail to include a "short and plain statement of the [counter]claim" showing that they are entitled to relief as required by Rule 8.

Accordingly, the Court grants Plaintiff's motions and dismisses Defendants' counterclaims.

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motions and dismisses Defendants' counterclaims.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: October 17, 2018
       Brooklyn, New York

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARIO H. CAPOGROSSO,

              Plaintiff,

    -against-

ALAN GELBSTEIN, *in his official and individual
capacity*, BORSHIRA VAHDATLAMAS, *in her
official and individual capacity, also known as
Bushra Vahdat*, IDA TRASCHEN, *in her official
and individual capacity*, ELIZABETH
PRICKETT-MORGRAN, *in her official and
individual capacity*, JEAN FLANAGAN, *in her
official and individual capacity*, VINCENT
PALMIERI, *in his official and individual
capacity*, DANIELLE CALVO, *in her official
and individual capacity*, SADIQ TAHIR, *in his
individual capacity*, PEC GROUP OF NY, INC.,
DAVID SMART, and JOHN AND JANE DOE,

              Defendants.
-------------------------------------------------------------X

**REPORT & RECOMMENDATION
18 CV 2710 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

       Attorney Mario H. Capogrosso, proceeding *pro se*, brings this civil rights action pursuant

to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and New York state law against nine individually

named defendants[1] as well as PEC Group of NY, Inc. and "John and Jane Doe." Plaintiff alleges

that the State Defendants retaliated against him for exercising his First Amendment rights and

deprived him of his constitutionally protected interest in representing clients at the Traffic

Violations Bureau ("TVB") without due process.

       The State Defendants move to dismiss plaintiff's complaint pursuant to Federal Rules of

Civil Procedure ("FRCP") 12(b)(1), 12(b)(5), and 12(b)(6). The Honorable Margo K. Brodie

---

[1] The named defendants are: Alan Gelbstein, Boshra Vahdatlamas, Ida Traschen, Elizabeth Morgan (formerly Elizabeth Prickett-Morgan), Jean Flanagan, Vincent Palmieri, and Danielle Calvo (hereinafter the "State Defendants"); plaintiff also names Sadiq Tahir and David Smart who are not state defendants.

referred the motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the State Defendants' motion to dismiss should be granted in part and denied in part.

## BACKGROUND

Plaintiff does not file this civil rights action on a blank slate. Plaintiff and defendants have a contentious history well-documented in plaintiff's prior state court lawsuit. ECF Nos. 45–46. The current motion includes several documents from the prior case. Plaintiff's instant complaint brings three causes of action against the State Defendants. He alleges that the State Defendants violated his constitutional rights by retaliating against him for his protected First Amendment activity. ECF No. 1., Complaint, ("Compl.") ¶¶ 70–75. He further alleges that the State Defendants violated his constitutional rights by depriving him of his property and liberty interest in practicing law at the TVB without due process. Id. ¶¶ 76–85. Finally, plaintiff seeks prospective injunctive relief to enjoin the State Defendants from barring him from representing clients at any TVB location. Id. ¶¶ 86–88.

Plaintiff is an attorney licensed in New York and Connecticut. Id. ¶ 2. The TVB is a division within the Department of Motor Vehicles, an agency of the State of New York; Administrative Law Judges ("ALJs") preside over TVB proceedings. Id. ¶ 4. Between April 2005 and May 11, 2015, plaintiff practiced law at various locations of the TVB, including the Brooklyn South Office ("Brooklyn TVB"). Id. ¶ 3. Plaintiff represented approximately 850 clients in TVB proceedings throughout this time period. Id. ¶ 6.

In 2012, plaintiff was suspended from "practicing his profession" at the TVB Courts due to complaints of misconduct. Id. ¶ 5. According to plaintiff, the complaints of misconduct "were never determined to be true as no hearings were ever held in response thereto and Plaintiff was

2

never given the opportunity to confront his accusers." Id. During his suspension, plaintiff learned that one of his accusers was David Smart, a security guard employed at the TVB. Id. Plaintiff filed an Article 78 proceeding challenging his suspension. The case was settled and plaintiff's suspension was lifted. See generally ECF No. 46-7. Plaintiff returned to representing clients at the TVB after completing an anger management course. Id.; Compl. ¶ 5.

Plaintiff alleges that although security guard Smart was employed by defendant PEC Group of NY, Inc., he was under the "direct supervision and control" of the TVB. Compl. ¶ 7. According to plaintiff, Smart subjected him to "constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance" which disrupted plaintiff's representation of his clients. Id. ¶ 8. Plaintiff reported Smart's conduct to defendant ALJ Alan Gelbstein; however, Gelbstein "refused to take any action on behalf of [plaintiff] to ensure that the disruptive and unlawful behavior of [Smart] would cease[.]" Id. ¶ 9.

On March 20, 2015, plaintiff wrote to New York State Assistant Attorney General defendant Elizabeth Morgan. Id.; ECF No. 46-7 ("Morgan Letter"). He complained about Smart and stated his frustrations with Gelbstein's alleged inaction regarding Smart. Id. Morgan failed to respond to plaintiff's letter or take any action. Id.

Plaintiff alleges that Gelbstein and defendant Danielle Calvo, clerk supervisor at the Brooklyn TVB, approached plaintiff in the Brooklyn TVB attorney's room on May 8, 2015 and said "[c]an't you go practice somewhere else . . . I saw what you wrote about me that I am complicit and incapable." Id. ¶ 10. On May 11, 2015, plaintiff claims that Smart approached him in an "aggressive and threating manner in an attempt to provoke [him] into a physical confrontation." Id. ¶ 11. According to plaintiff, Calvo and several New York City police officers approached plaintiff a few minutes later and told him that "he was no longer allowed at the [TVB] and that

3

[he] was to leave the building immediately." Id. Calvo told plaintiff to call defendant Ida Traschen, Assistant Counsel Legal Bureau for the State of New York Department of Motor Vehicles, for "further instructions." Id.

Plaintiff contacted Traschen later that day and was informed that he was "permanently barred from representing any clients in the future at any TVB locations throughout the State." Id. Plaintiff alleges that he called Traschen to seek clarification on May 12, 2015, May 26, 2015, August 4, 2015, August 7, 2015, August 10, 2015, August 12, 2015, and August 25, 2015. Id. ¶ 12. Plaintiff also wrote to several agencies but never received any clarification. See id. ¶¶ 13–14.

Plaintiff claims defendants that Bushra Vahdatlamas, Supervisory ALJ, as well as Jean Flanagan and Vincent Palmieri, TVB supervisors, acted with complete or deliberate indifference and/or ratified and condoned the alleged violation of plaintiff's constitutional rights. Id. ¶¶ 46, 55.

Plaintiff alleges that he has been denied due process as he has been barred from representing clients at the TVB since May 11, 2015. Id. ¶ 15. Moreover, plaintiff alleges that he has not been provided with a rationale as to why he is barred nor a list of his accusers and their complaints. Id.

## PROCEDURAL HISTORY

Plaintiff filed the instant complaint against defendants on May 8, 2018. ECF No. 1. Proof of service was filed for Calvo, Gelbstein, Morgan, and Smart on June 8, 2018 and for PEC Group of NY, Traschen, and Vahdatlamas on July 27, 2018. ECF Nos. 10, 24. Defendants Smart and Tahir answered plaintiff's complaint and raised a counterclaim against plaintiff. ECF Nos. 6–7. Smart and Tahir's counterclaims were dismissed on October 17, 2018. ECF No. 50. The instant fully-briefed motion was filed on October 11, 2018. The State Defendants move to dismiss

4

plaintiff's complaint under FRCP 12(b)(1) for lack of standing, under FRCP 12(b)(5) for failure to serve, and under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 44, ("Memo"). Plaintiff opposes the motion, ECF No. 47 ("Opp.") and the State Defendants have filed a reply, ECF No. 49 ("Reply").

## STANDARD OF REVIEW

For the purposes of this motion, the Court accepts the well-pleaded allegations in plaintiff's complaint as true and draws all reasonable inferences in favor of the non-moving party. Hayden v. Paterson, 594 F.3d 150, 157, n.4 (2d Cir. 2010) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

## I. Federal Rule of Civil Procedure 12(b)(1)

Motions to dismiss for lack of standing are governed by FRCP 12(b)(1). See Fed. R. Civ. P. 12(b)(1) (permitting dismissal for "lack of subject-matter jurisdiction"); Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (noting that a plaintiff must have standing under Article III of the Constitution to invoke a federal court's subject-matter jurisdiction). Plaintiffs bear the burden of proof of establishing that they have standing. Carter, 822 F.3d at 56 (plaintiffs have the burden of "alleg[ing] facts that affirmatively and plausibly suggest that [they] have standing to sue") (internal citations omitted). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice[.]" Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The court may also rely on evidence outside the complaint in deciding a Rule 12(b)(1) motion. Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted).

## II.     Federal Rule of Civil Procedure 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs., L.P. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006) (quoting Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)). Parties may challenge a lack of valid service by moving to dismiss pursuant to FRCP 12(b)(5).

Service of process is governed by FRCP 4. Rule 4(m) provides, in pertinent part, that:

> [i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). A party seeking an extension for good cause "bears a heavy burden of proof." Beauvoir v. U.S. Secret Serv., 234 F.R.D. 55, 56 (E.D.N.Y. 2006) (internal citation omitted). Courts in the Second Circuit determining good cause look to (1) the diligence and reasonableness of the plaintiff's efforts to serve, and (2) prejudice to the defendants from the delay. See Husowitz v. Am. Postal Workers Union, 190 F.R.D. 53, 57 (E.D.N.Y. 1999).

## III.    Federal Rule of Civil Procedure 12(b)(6)

### a.  Legal Standard

The purpose of a motion to dismiss for failure to state a claim under FRCP 12(b)(6) is to test the legal sufficiency of plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." Concord Assocs., L.P. v. Entm't Prop. Tr., 817 F.3d 46, 52 (2d Cir. 2016) (quoting Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d Cir. 2002)).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

### b. Matters Outside the Pleadings

As a threshold matter, the Court cannot consider documents outside the pleadings on a motion to dismiss. Therefore, many documents submitted by the State Defendants in support of their instant motion to dismiss should not be considered. Likewise, many documents attached to plaintiff's opposition should not be considered.

The Court may consider some materials extraneous to the complaint on a Rule 12(b)(6) motion, but "plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough[.]" Chambers, 282 F.3d at 153. "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Commc'n, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).

Here, the State Defendants' motion includes declarations with attached exhibits from Assistant Attorney Generals Mark Siegmund and Barbara Montena. Siegmund's Declaration attaches seven exhibits referencing plaintiff's prior litigation. ECF No. 46, Siegmund Declaration ("Siegmund Decl."). The Court may consider the exhibits from the prior state court proceeding, but not for the truth of the matters asserted. Ferrari v. Cty. of Suffolk, 790 F. Supp. 2d 34, 38, n.4

7

(E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."). Moreover, as plaintiff relies upon the Morgan Letter for his First Amendment retaliation claim, Compl. ¶¶ 42, 59, the Court may consider the letter. Chambers, 282 F.3d at 153 (a Court may consider a document that is integral to the complaint and that plaintiff relied upon in framing the complaint.).

The Siegmund and Montena Declarations as well as the exhibits attached to Montena's Declaration cannot be considered on the instant motion. These exhibits include complaints regarding plaintiff, copies of work place incident reports, an internal memorandum regarding plaintiff's conduct at the TVB, and an NYPD Incident Information Slip. See ECF No. 45, ("Montena Decl."). The State Defendants contend that all of the exhibits are "integral to Plaintiff's allegations that he was barred from the TVB[.]" Memo at 10, n.1. However, for a document to be considered "integral," the complaint must rely "heavily upon its terms and effect." Chambers, 282 F.3d at 153. "Merely mentioning a document in the complaint will not satisfy this standard; indeed even offering limited quotations from the documents is not enough." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (internal quotations and citations omitted). Although plaintiff mentions "complaints of misconduct" on one occasion, the Court cannot consider the exhibits that the State Defendants proffer on the instant motion. Accordingly, the Court declines to consider Exhibits 12–27 attached to the Montena Declaration. Chambers, 282 F.3d at 153.

With regard to plaintiff's response to the State Defendants' exhibits, courts generally do not consider matters raised for the first time in opposition to a motion to dismiss. Friedl v. City of N.Y., 210 F.3d 79, 83–84 (2d Cir. 2000). Accordingly, the Court does not consider the exhibits attached to plaintiff's declaration in opposition to the motion.

8

## IV.    Plaintiff is an Attorney

Although plaintiff filed this action *pro se*, he is an attorney and therefore he is not entitled to the solicitude afforded to *pro se* litigants. Leeds v. Meltz, 898 F. Supp. 146, 149 (E.D.N.Y. 1995), aff'd, 85 F.3d 51(2d Cir. 1996) (*pro se* attorney not entitled to liberality normally afforded to *pro se* litigants); Bliven v. Hunt, 478 F. Supp. 2d 332, 334 (E.D.N.Y. 2007) (same).

## DISCUSSION

## I.    Standing

The State Defendants contend that plaintiff does not have standing to bring this action. Standing is a "threshold question in every federal case" which "determin[es] the power of the court to entertain the suit." Davis v. Hain Celestial Grp., 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). The "irreducible constitutional minimum of standing" contains three elements that plaintiff must satisfy. Lujan, 504 U.S. at 560. First, plaintiff must show that he suffered an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical." Id. (internal citation and quotation marks omitted). Second, plaintiff must show that there is a "causal connection between the injury and the conduct complained of," or, in other words, that his injury is "fairly . . . traceable to the challenged action of [defendants.]" Id. (internal citation and quotation marks omitted). Third, plaintiff must show that his alleged injury "will be redressed by a favorable decision." Id. at 561 (internal citation and quotation marks omitted).

The State Defendants do not challenge that plaintiff satisfies the injury in fact or redressability elements of standing. See Memo at 20–21. The parties dispute whether plaintiff meets the causation element. The State Defendants argue that plaintiff lacks standing to seek

damages and injunctive relief because plaintiff was the primary cause of his own alleged injury. Id.

"Not every infirmity in the causal chain deprives a plaintiff of standing." St. Pierre v. Dyer, 208 F.3d 394, 402 (2d Cir. 2000). Although courts have denied standing in some cases because the injury was solely attributable to the plaintiff,

> [s]tanding is not defeated merely because the plaintiff has in some sense contributed to his own injury. . . . Standing is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain.

13 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3531.5 (3d ed. 2018). The causal chain can be broken where a plaintiff's self-inflicted injury results from his "unreasonable decision . . . to bring about a harm that he knew to be avoidable." St. Pierre, 208 F.3d at 403. However, "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing[.]" Id. at 402 (internal citation omitted).

Here, the State Defendants' conclusory statement that plaintiff's injury, being permanently barred from representing clients at any TVB location, was not due to "any illegal action by any of the State Defendants" is insufficient to defeat plaintiff's proffer of standing. Memo at 20. Although the State Defendants may argue that plaintiff caused his own injury, the Court cannot say on the instant record that plaintiff's injury is so completely due to plaintiff's own fault that his proffer of standing is defeated. Accordingly, the State Defendants' motion to dismiss for lack of standing under Rule 12(b)(1) should be denied.

## II. Service of Process on Flanagan and Palmieri

Next, the State Defendants argue that Flanagan and Palmieri were not timely served with process. Memo at 19–20. Plaintiff filed his action on May 8, 2018. See Compl. Plaintiff was

required to serve process on defendants by August 6, 2018. See Fed. R. Civ. P. 4(m); see also ECF No. 4 (order regarding the Rule 4(m) August 6, 2018 deadline). The Court's record does not reflect that defendants Flanagan and Palmieri were properly served within the Rule 4(m) deadline.

Plaintiff asserts that proof of service on Flanagan was filed on May 8, 2018. Opp. at 2. However, review of the Court's record shows that plaintiff is mistaken; no such affidavit of service was filed. In fact, the State Defendants reminded plaintiff to serve Flanagan and Palmieri, but plaintiff failed to do so. ECF No. 20 at 1, n.1 (notifying plaintiff that as of July 13, 2018, Flanagan and Palmieri had not yet been served and that perhaps plaintiff had served a different person named Jean Flanagan).

Plaintiff does not dispute that Palmieri was not served. Although plaintiff contends that Flanagan was served, the Court should grant the State Defendants' motion to dismiss this action against Flanagan and Palmieri for failure to properly and timely serve them. See Thomas v. N.Y.C. Dept. of Educ., 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal citation omitted); Hertzner v. U.S.P.S., No. 05 CV 2371, 2007 WL 869585, at *6 (E.D.N.Y. Mar. 20, 2007) (holding that plaintiff's failure to timely serve defendants deprived the Court of personal jurisdiction where "it was the attorney's inadvertence, neglect, mistake or misplaced reliance that resulted in service not being effected in a timely manner."). Accordingly, the State Defendants' motion to dismiss plaintiff's complaint under FRCP 12(b)(5) should be granted as to Palmieri and Flanagan.[2]

---

[2] In the alternative, the Court should *sua sponte* dismiss plaintiff's claims against Palmieri and Flanagan pursuant to FRCP 4(m).

### III.    Claims Under 42 U.S.C. § 1983

Plaintiff alleges that the State Defendants violated his constitutional rights by retaliating against him for his protected speech when they permanently barred him from representing clients at any TVB location throughout the state. Compl. ¶ 11. The State Defendants raise several grounds for dismissal including that plaintiff fails to plausibly allege defendants retaliated against him for any protected First Amendment activity, that plaintiff's conduct is not protected by the First Amendment, that there is no constitutional right to represent clients at the TVB, that plaintiff has no property or liberty interest subject to due process protection, and that defendants are entitled to absolute and/or qualified immunity. Memo at 16–33.

#### a.  Personal Involvement

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). To assert a Section 1983 claim "a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015) (internal citation and quotation marks omitted).

A plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation in order to state a claim for relief under Section 1983. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; Fowlkes v. Rodriguez,

12

584 F. Supp. 2d 561, 572 (E.D.N.Y. 2008) (discussing the necessity of personal involvement for damage claims against state officials) (citation omitted).

A supervisory official may be deemed to have been personally involved under Section 1983 in five circumstances: (1) if that official directly participated in the infraction; (2) if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong; (3) if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or (4) if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) if he or she was deliberately indifferent by failing to act on information that unconstitutional acts were continuing. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted); Raffaele v. City of N.Y., 144 F. Supp. 3d 365, 377 (E.D.N.Y. 2015) (citing the Colon factors). Supervisors may not be held liable under Section 1983 on the basis of respondeat superior. Iqbal, 556 U.S. at 676.

Here, plaintiff fails to plausibly allege that defendants Vahdatlamas and Morgan were personally involved in the decision to bar him from representing clients at the TVB.[3] Plaintiff's complaint alleges only that Gelbstein, Calvo, and Traschen were personally involved in the actions resulting in the injury he claims, being barred from representing clients at the TVB. See Compl. ¶¶ 38, 58. Plaintiff alleges that Gelbstein "actively participated in the decision to permanently bar plaintiff"; "ignored plaintiff's complaint about the conduct of Defendant Smart, [and] in fact encouraged Defendant Smart to continue to confront the Plaintiff in an attempt to 'bait the Plaintiff' into a physical response"; conspired with Calvo to summon the NYPD to remove plaintiff; and was motivated to take retaliatory action against plaintiff for the Morgan Letter. Id.

---

[3] As the Court recommends that defendants Flanagan and Palmieri should be dismissed on Rule 12(b)(5) grounds, Discussion, Part I, supra, the Court need not further consider plaintiff's claims against Flanagan and Palmieri. However, had Flanagan and Palmieri been properly and timely served, the claims against them would have been subject to dismissal for lack of personal involvement.

13

¶¶ 38, 40–42. Plaintiff alleges that Calvo "personally confronted" him with the decision to bar him and was motivated by retaliatory animus for plaintiff's comments in the Morgan Letter. Id. ¶¶ 58–59. Plaintiff alleges that Traschen "actively participated in the violation" by directly informing plaintiff that he was barred. Id. ¶ 49.

However, plaintiff alleges only that Vahdatlamas "in consultation" with the other State Defendants acted with "deliberate indifference and/or condoned and ratified said unconstitutional acts" Id. ¶ 46. The Court finds that the complaint fails to plausibly allege that Vahdatlamas was personally involved in the violation of plaintiff's rights.[4] Although plaintiff argues that "the Complaint makes clear that, without the actions of all the Defendants, the decision to bar him would not have been made," Opp. at 11, his allegations regarding Vahdatlamas are conclusory. See Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (conclusory allegations that a supervisor failed to monitor the actions of his subordinates is insufficient to establish personal involvement to support a finding of liability under Section 1983).

Similarly, the Court finds that plaintiff's allegations against Morgan fail to establish Morgan's personal involvement in the violation of plaintiff's rights. Plaintiff alleges that Morgan "failed to take any action to respond to [plaintiff's letter]," that she "conspired" with the other State Defendants to violate plaintiff's constitutional rights, and that she "treated the violation of Plaintiff's said constitutional rights with deliberate indifference and/or condoned and ratified the violation[s.]" Compl. ¶¶ 9, 52. These allegations are conclusory and fail to plausibly allege Morgan's personal involvement in the decision to bar plaintiff from representing clients at the TVB.[5] See Ridgeview Partners, LLC v. Entwhistle, 227 Fed. App'x 80, 81–82 (2d Cir. 2007)

---

[4] Similarly, plaintiff alleges only that Flanagan and Palmieri acted with "deliberate indifference and/or condoned and ratified the unconstitutional conduct." Compl. ¶ 55.

[5] Moreover, although the State Defendants assert that Morgan is entitled to absolute immunity, plaintiff only alleges Morgan's title in the Complaint, that she was an Assistant Attorney General for the State New York. On the instant

14

(summary order) (an official's refusal to consider or act upon a grievance is not conduct that violates the First Amendment.). Therefore, the State Defendants' motion to dismiss Vahdatlamas and Morgan should be granted as plaintiff's complaint against them fails to state a claim upon which relief can be granted.

## IV.     First Amendment Retaliation

"Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" Lane v. Franks, 573 U.S. 228, 235–36 (2014) (quoting Roth v. United States, 354 U.S. 476, 484 (1957)). The elements of a First Amendment claim under Section 1983 depend on the factual context of the case before the district court. Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008). To determine the elements required to state a First Amendment claim under Section 1983, the Court must first consider whether the claim is being made by a public employee or a private citizen. Compare Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (plaintiff was a private citizen) with Johnson v. Ganim, 342 F.2d 105, 112 (2d Cir. 2003) (plaintiff was a public employee). Although the elements of a public employee's claims are different than a private citizen's claims, many First Amendment cases muddle the standards. Moreover, the majority of First Amendment retaliation cases occur in the public employment context and a large number of private citizens' First Amendment retaliation cases concern land use. Plaintiff is a private citizen, but this is neither a public employment nor a land use First Amendment retaliation case. Compl. ¶¶ 18, 71.

---

record, the Court cannot determine whether Morgan would be entitled to absolute immunity. As the State Defendants' absolute immunity argument is only raised with regard to Morgan, and plaintiff's claims against Morgan should be dismissed for lack of personal involvement, the State Defendants' motion to dismiss based on absolute immunity should be denied without prejudice.

15

Where a private citizen asserts a First Amendment claim against a public official, the private citizen must allege: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right." Curley, 268 F.3d at 73. Retaliation claims that are "unsupported, speculative, and conclusory" may be dismissed on the pleadings. Corely v. City of N.Y., No. 14 Civ. 3202, 2017 WL 4357662, at *19 (S.D.N.Y. Sept. 28, 2017) (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)).

The State Defendants argue that plaintiff fails to plausibly allege retaliation for any speech protected by the First Amendment. They argue that plaintiff's claim of retaliation is "unsupported, speculative, and conclusory" and add that plaintiff admitted that he knew that complaints had been made against him and that he would sometimes "throw a punch" in the TVB. Memo at 22. However, as plaintiff correctly argues, his protected speech refers to his March 20, 2015 letter to Morgan stating his frustration with Gelbstein's administration of the Brooklyn TVB and alleging Smart's harassment. Opp. at 6; Compl. ¶ 72. For the purposes of this motion, plaintiff's letter to Morgan is protected by the First Amendment. See McDonald v. Smith, 472 U.S. 479, 482 (1985) (The right to petition the government to redress grievances is "cut from the same cloth as the other guarantees of [the First Amendment] and is an assurance of a particular freedom of expression."); Velez v. Levy, 401 F.3d 75, 97 (2d Cir. 2005) ("the Supreme Court has said 'that speech critical of the exercise of the State's power lies at the very center of the First Amendment'") (quoting Gentile v. State Bar of Nev., 501 U.S. 1030, 1034 (1991)).

Turning to the second element of a retaliation claim, "[t]o establish a causal connection sufficient to survive a motion to dismiss, the 'allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action.'" Davis v. Goord, 320 F.3d 346, 354

16

(2d Cir. 2003) (discussing First Amendment retaliation in a non-public employee context). A causal connection is often shown circumstantially, through allegations that the retaliation occurred in "close temporal proximity" to the protected activity. See id. "[D]irect evidence of retaliation may consist of 'conduct or statements by persons involved in the decisionmaking [sic] process that may be viewed as directly reflecting the alleged retaliatory attitude.'" McAvey v. Orange–Ulster BOCES, 805 F. Supp. 2d 30, 40 (S.D.N.Y. 2011) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir. 1997) (brackets omitted)).

Here, plaintiff alleges that Gelbstein and Calvo were aware of the Morgan Letter. Compl. ¶¶ 9–10, 39–41. Plaintiff further alleges that Gelbstein and Calvo used the May 11, 2015 incident with Smart as a pretext for prohibiting plaintiff from representing clients at the TVB in order to retaliate against him for his protected speech. Id. The Complaint alleges that Gelbstein, Calvo, and Traschen barred plaintiff from the TVB a month and a half after he sent the letter to Morgan. Id. Although there is no bright line rule regarding temporal proximity, a month and a half falls within the temporal range sufficient to raise a plausible inference of a retaliatory motive. Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases); cf. Maco v. Baldwin Union Free School Dist., 726 Fed. App'x 37, 39 (2d Cir. 2018) (summary order) (discussing that a lapse of ten months does not support an inference of causation). Moreover, plaintiff alleges that Gelbstein and Calvo knew about his letter to Morgan and stated, "[c]an't you go practice somewhere else . . . I saw what you wrote about me that I am complicit and incapable." Compl. ¶ 10.

The third element of a retaliation claim requires a plaintiff to allege that the retaliatory "official conduct actually deprived them of that right" by either silencing them or having some "actual, non-speculative chilling effect on [their] speech." See Williams, 535 F.3d at 78 (internal

17

citation omitted). While "private citizens claiming retaliation for their criticism of public officials have [generally] been required to show that they suffered an 'actual chill' in their speech as a result[,] . . . in limited contexts, other forms of harm have been accepted in place of this 'actual chilling requirement.'" Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011) (citing Spear v. Town of W. Hartford, 954 F.3d 63, 68 (2d Cir. 1992) and Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002)); see also Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 431 (S.D.N.Y. 2013) ("Thus, while a plaintiff asserting a First Amendment retaliation claim must allege some sort of harm, it is not necessary for that harm to be a chilling of speech in every case.") (internal citation and quotation marks omitted).

Here, plaintiff alleges that the State Defendants barred him from representing clients at all TVB locations based on retaliation. Compl. ¶¶ 11, 15. Plaintiff sufficiently alleges that the State Defendants' retaliatory conduct adversely affected him. Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled speech is not the *sine qua non* of a First Amendment claim."); Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (discussing that in a private citizen context, "[w]here the retaliation is alleged to have caused an injury separate from any chilling effect . . . an allegation as to a chilling effect is not necessary to state a claim.").

Defendants reliance on Heller is misplaced. In Heller, plaintiff's alleged speech constituted threats and posed a risk of physical harm that was not protected by the First Amendment. Heller v. Bedford Cent. Sch. Dist., 665 Fed. App'x 49, 52–53 (2d Cir. 2016) (summary order). ("A review of the record confirms that defendants were interested in [plaintiff's] communications only insofar as they raised the prospect of a shooting spree at the high school."). The facts of this case are distinguishable. Plaintiff's allegedly threatening conduct is entirely separate from the protected speech he alleges: the Morgan Letter.

18

Taken together and construing all reasonable inferences in plaintiff's favor, as the Court must, defendant Gelbstein, Calvo, and Traschen's motion to dismiss plaintiff's First Amendment retaliation cause of action for failure to state a claim upon which relief can be granted should be denied. The motion should be granted with respect to defendants Vahdatlamas and Morgan.

## V.    Due Process

Plaintiff alleges that the State Defendants violated his right to due process because they deprived him of a "property and/or liberty interest" in representing clients at the TVB and failed to afford him a due process hearing or make his accusers known to him. Compl. ¶¶ 76–85. The State Defendants raise several grounds for dismissal including plaintiff does not have a due process right to practice law at the TVB, that plaintiff had an adequate post-deprivation opportunity to be heard, and that they are entitled to either absolute or qualified immunity. Memo at 16–19.

The Due Process Clause of Fourteenth Amendment provides that the state may not deprive an individual of property or liberty without due process. See U.S. Const. amend. XIV. To prevail on a due process claim, plaintiff must identify a constitutionally protected property or liberty interest and demonstrate that the government has deprived him of that interest without due process of law. Weinstein v. Albright, 261 F.3d 127, 134 (2d Cir. 2001). The due process clause of the Fourteenth Amendment protects one's liberty to pursue an occupation from certain kinds of state infringement. Cityspec, Inc. v. Smith, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009) ("The liberty interests protected by the Fourteenth Amendment include the freedom 'to engage in any of the common occupations of life.'") (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 572 (1972)).

19

### a. Property Interest

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577. To possess a property right in a benefit, there must be a "legitimate claim of entitlement to it," more than an abstract desire for it. Id. The Court discerns no legitimate claim to a property right here. As plaintiff does not have any type of contract to practice law at the TVB, nor does he cite to any statutory or constitutional authority establishing employment at the TVB, his expectation to continue representing clients at the TVB was subjective and insufficient to establish a property right. See Schwartz v. Mayor's Cmte. on the Judiciary of the City of New York, 816 F.2d 54, 57 (2d Cir. 1987) (holding that plaintiff's "subjective expectation" of reappointment to the judicial bench did not to establish a protected property right). Accordingly, plaintiff fails to establish that he has a protected property interest in representing clients at the TVB.

### b. Liberty Interest

As to a potential liberty interest, the Fourteenth Amendment secures the liberty to follow a trade, profession, or other calling. Cityspec, 617 F. Supp. 2d at 169. The Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. See Conn v. Gabbert, 526 U.S. 286, 291 (1999) (discussing that due process is implicated only if plaintiff is deprived of a "liberty interest in practicing law"). The Due Process Clause does not stretch so far as to secure the right to specific jobs. Cityspec, 617 F. Supp. 2d at 169 (The liberty interest conferred by the Fourteenth Amendment "is not broad as to protect the right to a particular job."). "It is well settled that one must have no ability to practice one's

profession at all in order to state a claim for deprivation of a liberty interest." Rodriguez v. Margotta, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999) (citations omitted).

Here, plaintiff's ban from the TVB did not prevent him from practicing law. Plaintiff's claim that the "right and ability to practice at the TVB is the equivalent of depriving him of the right to continue in his chosen profession" is without merit. Opp. at 8. Defendants did not deprive plaintiff of his license to practice; he was at liberty to continue his law practice elsewhere. Accordingly, plaintiff fails to establish that defendants deprived him of a protected liberty interest. See Roth, 408 U.S. at 575 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another.") (citing Cafeteria and Rest. Workers Union v. McElroy, 367 U.S. 886, 895–96 (1961)).

### c. Post-Deprivation Opportunity to be Heard

Moreover, although plaintiff was not given a hearing prior to being barred from representing clients at the TVB, he could have challenged the bar by filing an Article 78 petition. "The opportunity to pursue an Article 78 proceeding in New York State Supreme Court constitutes a wholly adequate post-deprivation hearing for due process purposes." Rubin v. Swarts, No. 10 CV 4119, 2011 WL 1004838, at *4 (E.D.N.Y. Mar. 18, 2011) (discussing that an Article 78 proceeding in state court was the "proper forum" for a due process claim against the DMV). Although an Article 78 proceeding may not allow plaintiff to seek monetary damages, such a proceeding has still been held to "constitute[] a wholly adequate post-deprivation hearing for due process purposes." Locurto v. Safir, 264 F.3d 154, 176 (2d Cir. 2001) (dismissing Section 1983 claim alleging wrongful termination and seeking "monetary and injunctive relief" because plaintiffs could have brought an Article 78 proceeding). "[Plaintiff] cannot resuscitate its due process claim simply because an Article 78 proceeding is now barred by Article 78's four-month

21

statute of limitations." Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 881 (2d Cir. 1996).

Here, plaintiff could have commenced an Article 78 proceeding to contest his TVB ban. He clearly knew that such a proceeding was available to him as he had pursued an Article 78 proceeding after his suspension in 2011. He simply chose not to do so. Accordingly, even if the Court were to find that plaintiff had a protected property or liberty interest, plaintiff's due process claim would still be dismissed as he had the opportunity to pursue an adequate post-deprivation hearing by way of an Article 78 proceeding. Rubin, 2011 WL 1004838, at *4, n.4 (fact that plaintiff failed to commence an Article 78 proceeding within the four-month statute of limitations, "does not prevent this Court from taking into account the availability of such proceedings when determining whether he has been afforded due process.") (citation omitted).

## VI.   Prospective Injunctive Relief

Plaintiff seeks prospective injunctive relief enjoining the State Defendants, in their official capacities, from excluding plaintiff from representing clients at the TVB Courts. Compl. ¶ 88. The State Defendants argue that because plaintiff's underlying substantive claims should be dismissed, plaintiff's third cause of action should also be dismissed. Memo at 33.

Under the Ex Parte Young doctrine, the Eleventh Amendment does not bar a plaintiff from suing a state official acting in his or her official capacity for prospective injunctive relief. Ex Parte Young, 209 U.S. 123, 155 (1908). "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002) (internal citation and quotation marks omitted). The exception to Eleventh

22

Amendment immunity, however, does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law. Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of Young . . . to claims for retrospective relief") (citations omitted).

To the extent that plaintiff is claiming that he is entitled to retrospective relief, his claims against the State Defendants should be dismissed. However, to the extent that plaintiff is suing Gelbstein, Calvo, and Traschen in their official capacities, his request for prospective injunctive relief "enjoining State Defendants from barring him [from representing clients in TVB Courts] . . . in the future" satisfies the requirements for the exception to Eleventh Amendment immunity set forth in Ex Parte Young.

The State Defendants' motion to dismiss plaintiff's claims for prospective injunctive relief should be denied. On the instant record, the Court cannot dismiss plaintiff's prospective challenge to the bar prohibiting him from representing clients in all TVB Courts throughout the state. Although the State Defendants rely on plaintiff's record of previous disruptions for the bar, this may not be adjudicated on the instant motion. The instant motion cannot establish that the State Defendants' decision to ban plaintiff from representing clients at all TVB Courts was reasonable and necessary.[6]

---

[6] In Barrett v. Volz, No. 16 cv 209, 2016 WL 4082640, at *1 (D. Vt. Aug. 1, 2016), a protestor sought to enjoin defendants from enforcing an order which prohibited the public from attending a hearing regarding a gas pipeline easement. The Court reasoned that "[a]lthough [defendants'] could relatively easily identify the members of the public who have disrupted . . . [public proceedings in the past], [they] cannot prospectively exclude members of the public on that basis." Id. at *7 (quoting Huminski v. Corsones, 396 F.3d 53, 83–84 (2d Cir. 2005) (ruling that state officials' blanket denial of access to court proceedings to a protestor violated the First Amendment)). The Barrett Court stated that "[e]xclusion . . . requires an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Id. (internal citation and quotation marks omitted). The Barrett Court went on to state that the defendants' order prohibiting public attendance at a hearing violated plaintiff's rights because

23

Accordingly, the State Defendant's motion to dismiss plaintiff's claim for prospective injunctive relief should be denied with regard to Gelbstein, Calvo, and Traschen.[7]

## VII. Conspiracy Under 42 U.S.C. §§ 1985 and 1986

To the extent that plaintiff alleges a conspiracy under Sections 1985 and 1986, the complaint should be dismissed. To state a claim under Section 1985, a plaintiff must allege with particularity "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). Particularly, "the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (citations omitted).

Similar to Section 1983, Section 1985 does not create any substantive rights but provides a "remedy for conspiracies to violate a person's right to equal protection of the laws." Soto v. Schembri, 960 F. Supp. 751, 760 (S.D.N.Y. 1997). see also Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (stating that, to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds[.]") (citation omitted). Although a plaintiff need not plead detailed factual allegations, the allegations in the complaint must be "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A Section 1985 conspiracy claim that is only supported by conclusory assertions cannot survive a motion to dismiss. Brito v. Arthur, 403 F. App'x 620, 621 (2d Cir. 2010) (summary order); Ganthier v. N. Shore-Long Island

---

it "neither target[ted] the previous disruptive behavior nor propose[d] anything other than a blanket prohibition in response to [defendants'] legitimate concerns." Id.

[7] Although the motion should be denied, it is unclear whether Gelbstein, Calvo, and Traschen are the proper state officials to lift the bar prohibiting plaintiff from representing clients at all TVB locations.

Jewish Health Sys., 298 F. Supp. 3d 342, 349 (E.D.N.Y. 2004) (dismissing plaintiff's Section 1985 claim because she failed to allege the elements of a conspiracy claim with particularity).

Plaintiff repeatedly alleges that defendants "conspired" against him, but he fails to allege facts to establish that the State Defendants' acted with any class-based discriminatory animus. See Dolan, 794 F.3d at 296 (dismissing Section 1985 claim because plaintiff did not satisfy the class-based animus requirement). As neither race nor class-based discriminatory animus is alleged, plaintiff's Section 1985 claim must be dismissed.

Moreover, because a Section 1986 claim must be predicated upon a valid Section 1985 claim, plaintiff likewise fails to state a claim under Section 1986. Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993); Gusler v. City of Long Beach, 823 F. Supp. 2d 98, 137 (E.D.N.Y. 2011). Accordingly, the State Defendants' motion to dismiss plaintiff's claims under Sections 1985 and 1986 should be granted.[8]

## VIII.  Qualified Immunity

The State Defendants argue that they cannot be held individually liable for the federal violations alleged because they are entitled to qualified immunity. Plaintiff asserts that the Court must allow him to develop the facts before the Court can make such a determination. Opp. at 13.

Qualified immunity is an affirmative defense which typically "cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ., 33 F. Supp. 3d 158, 174 (E.D.N.Y. 2014) (citing Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983)). A court may find that immunity applies only when "the facts supporting the defense appear on the face of the complaint" and "it appears

---

[8] Plaintiff suggests discovery "shall reveal the extent of collusion between the various Defendants." Opp. at 5. However, "a plaintiff armed with nothing more than conclusions" may "not unlock the doors of discovery." See Iqbal, 556 U.S. 662, 678–79.

beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (citation omitted). Further, "in such situations, [a] 'plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.'" Id. at 437.

Qualified immunity "shields public officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For a constitutional right to be "clearly established" for purposes of determining whether an official is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*." Mollica v. Volker, 229 F.3d 366, 370–71 (2d Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (emphasis in original). Whether it was objectively reasonable for the official to believe that his or her acts did not violate plaintiff's rights has "its principal focus on the particular facts of the case." Kerman v. City of N.Y., 374 F.3d 93, 104 (2d Cir. 2004) (internal citation and quotation marks omitted). If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).

Here, the State Defendants circularly argue that they did not violate any of plaintiff's clearly established constitutional rights and that it was objectively reasonable for them "to believe that their actions were lawful." Memo at 23–24. The State Defendants fail to articulate the "clearly

established right" upon which they base their qualified immunity affirmative defense. Instead, they broadly assert that plaintiff "had *no* constitutional right to practice law at the TVB, to engage in violent or threatening behavior, or to an evidentiary hearing before being barred at the TVB." Memo at 44. Whereas the Court might agree with these assertions by the State Defendants, this does not resolve the question of whether plaintiff has alleged the violation of a clearly established right in this action. The State Defendants must do more than raise qualified immunity as a defense; they must articulate why plaintiff's claim fails to establish the violation of any clearly established law.

Moreover, although the State Defendants proffer voluminous complaints against plaintiff and cite his threatening conduct, these complaints cannot be considered on this motion to dismiss. As such, the Court cannot consider the State Defendants' professed safety concerns regarding plaintiff's conduct on this record. Accordingly, the State Defendants' qualified immunity defense is premature and their motion should be denied. See Pearson v. Callahan, 555 U.S. 223, 239 (2009) ("when qualified immunity is asserted at the pleading stage, the answer to whether there was a violation may depend on a kaleidoscope of facts not yet fully developed.") (internal citation omitted).

Although the State Defendants' list of plaintiff's claims that are not "clearly established law" misses the mark, the Second Circuit has described the "'chronic difficulty' of articulating the [clearly established] right with the appropriate specificity." African Trade & Info. Ctr. Inc. v. Abromaitis, 294 F.3d 355, 360 (2d Cir. 2003) (citing LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998)). "Few issues related to qualified immunity have caused more ink to be spilled than whether a particular right has been clearly established, mainly because courts must calibrate, on a case-by-case basis, how generally or specifically to define the right at issue." Golodner v. Berliner,

27

770 F.3d 196, 206 (2d Cir. 2014). For if the right is defined too narrowly, qualified immunity would be available in any situation. Id. On the other hand, if the right is defined too broadly, qualified immunity would rarely be available. Id.

Plaintiff's retaliation claim wades in the muddy First Amendment delta between public employees and private citizens. The parties do not point us to, nor has the Court found, case law on point with the facts presented herein. As few, if any, First Amendment retaliation cases involve private citizens in similar contexts to plaintiff here, it seems unlikely that the law was clearly established law in 2015 when plaintiff was barred from representing clients at TVB locations state-wide.

The Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." Kisela v. Hughes, 138 S.Ct. 1148, 1153 (2018) (per curiam) (internal citation and quotation marks omitted). In the instant case, the clearly established right could not be the very general right to be free from retaliation based on protected speech. See City of Escondido, Cal. v. Emmons, ___ S.Ct. ____ (2019) (per curiam) (in the Fourth Amendment context, "the Court of Appeals defined the clearly established right at a level of generality by saying only that the 'right to be free of excessive force' was clearly established . . . the Court of Appeals' formulation of the clearly established right was far too general."). However, the Circuit's decision in Huminski v. Corsones may be instructive.[9] 395 F.3d 53 (2d Cir. 2005) (although courthouses and the adjacent parking lots are non-public forums, notices of trespass barring a non-violent protestor from entering the grounds constituted an unreasonable restriction on plaintiff's First Amendment activity).

---

[9] This case may inform the parties' judgment regarding their qualified immunity arguments going forward.

As it is premature to rule on the State Defendants' entitlement to qualified immunity at this juncture, their motion to dismiss on grounds of qualified immunity should be denied.

### IX.    Leave to Replead

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may dismiss a plaintiff's claim without leave to amend for repeated failure to cure deficiencies by amendments previously allowed or for futility. Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty, 282 F.3d at 88 (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir.1991)).

Here, as plaintiff was not deprived of any property or liberty interest, plaintiff cannot state a due process claim. Moreover, as plaintiff's conspiracy claim is not based on any race or class-based discrimination, he cannot state a claim under Sections 1985 and 1986. Furthermore, plaintiff failed to timely serve Flanagan and Palmieri; plaintiff's claims against these defendants should be dismissed. As any amendment of these claims would be futile, leave to amend these claims should be denied.

However, should plaintiff request leave to amend his other claims against the remaining defendants in light of the Court's ruling, he should be granted leave to do so. See Loreley Financing v. Wells Fargo Secs., 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); Cresci v. Mohawk Valley Cmty. Coll., 693 Fed. App'x 21, 24–25 (2d Cir. 2017) (summary order) (reversing lower court and granting plaintiff, an attorney proceeding *pro se*, the opportunity to replead his First Amendment retaliation claim).

29

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the State Defendants'

motion to dismiss should be granted in part and denied in part. The State Defendants' motion to

dismiss should be granted as to plaintiff's due process and Sections 1985 and 1986 claims, as well

as all claims against Vahdatlamas, Morgan, Flanagan, and Palmieri. The State Defendants' motion

to dismiss plaintiff's First Amendment retaliation claim against Gelbstein, Calvo, and Traschen

should be denied. Likewise, plaintiff's claims for prospective injunctive relief against Gelbstein,

Calvo, and Traschen should be denied. The State Defendants' motion to dismiss based on qualified

immunity should be denied without prejudice. Should this Report be adopted, plaintiff should be

afforded fourteen days leave to file an amended complaint as set forth herein.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

the parties shall have fourteen days from service of this Report to file written objections. See Fed.

R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension

of time to file objections must be made within the fourteen-day period. Failure to file a timely

objection to this Report generally waives any further judicial review. Marcella v. Capital Dist.

Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human

Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/ Judge Lois Bloom

LOIS BLOOM
United States Magistrate Judge

Dated: January 30, 2019
Brooklyn, New York

30