## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# No. 22-2827

Mario H. Capogrosso,
Plaintiff-Counter-Defendant-Appellant,

v.

Alan Gelbstein, in his official and individual capacity, Ida Traschen, in her official
and individual capacity, Danielle Calvo, in her official and individual capacity,
PEC Group of NY, Inc., Mark J.F. Schroeder, Commissioner of the New York State
Department of Motor Vehicles,
Defendants - Appellees,

David Smart, Sadiq Tahir,
Defendants-Counter-Claimants-Appellees,

Boshra Vahdatlamas, in her official and individual capacity, AKA Bushra Vahdat,
Elizabeth Prickett--Morgan, in her official and individual capacity, Jean Flanagan,
in her official and individual capacity, Vincent Palmieri, in his official and
individual capacity, John and Jane Doe,
Defendants.

*Appeal from the United States District Court for the*
*Eastern District of New York, Docket No. 2:18-cv-02710-MKB-LB*
*From The Order Dated September 29, 2022*

## APPELLANT'S APPENDIX - VOLUME II

Dated: March 7, 2023

**Mario H. Capogrosso, Esq.**
**Appellant, Pro Se**
21 Sheldrake Place,
New Rochelle, NY 10804
Tel: 914-806-3692
Email: nry4@aol.com

# TABLE OF CONTENTS

Order Dated September 27, 2019 Denying Defendant Smart's Motion
For Pro Bono Counsel: ECF 72                                          4

Order Dated November 14, 2019 Setting Deadlines For Discovery; ECF 82   6

Order Dated December 10, 2019 Denying Plaintiff's Right To
Question Witnesses At DMV; ECF 94                                     8

Order Dated January 10, 2020 Granting Adding DMV Commissioner
Mark Schroeder To Protective Order; ECF 104                           9

Order Dated February 3, 2020 Denying Setting Aside Magistrate's
Order Precluding Plaintiff's Access To The TVB; ECF 108               12

Order Dated February 18, 2020 Regarding Depositions; ECF 111          14

Order Dated February 26, 2020 Regarding Depositions; ECF 114          15

Order Dated March 18, 2020 Regarding Depositions; ECF 118             16

Order Dated January 13, 2021 Requiring Defendant Smart To Respond
To Interrogatories; ECF 154                                           17

Order Dated January 25, 2021 Requiring Defendant Smart To Respond
To Interrogatories; ECF 159                                           21

Order Dated March 11, 2021 Granting Defendant Smart's Request For
Counsel To Move For Summary Judgment; ECF 243                         22

Report And Recommendations Dated February 1, 2022 Granting
Defendant's Motion For Summary Judgment ECF 278                       23

Order Dated September 29, 2022 Adopting Report And Recommendations
Dated February 1, 2022 Granting Defendant's Motion For Summary
Judgment ECF 293                                                                          43

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

MARIO H. CAPOGROSSO,

                              Plaintiff,

                    v.

ALAN GELBSTEIN, in his official and individual
capacity, BOSHRA VAHDATLAMAS, in her official
and individual capacity, a/k/a Bushra Vahdat, IDA
TRASCHEN, in her official and individual capacity,
ELIZABETH PRICKETT-MORGAN, in her official
and individual capacity, JEAN FLANAGAN, in her
official and individual capacity, VINCENT PALMIERI,
in his official and individual capacity, DANIELLE
CALVO, in her official and individual capacity, SADIQ
TAHRIR, in his individual capacity, PEC GROUP OF
NY, INC., DAVID SMART, and JOHN and JANE DOE,

                              Defendants.

-------------------------------------------------------------

**ORDER**
18-CV-2710 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Mario H. Capogrosso, proceeding *pro se*, commenced the above-captioned

action on May 8, 2018, against Defendants Alan Gelbstein, Boshra Vahdatlamas, Ida Traschen,

Elizabeth Prickett-Morgan, Jean Flanagan, Vincent Palmieri, Danielle Calvo, Sadiq Tahrir, PEC

Group of NY, Inc., David Smart, and John and Jane Doe.  (Compl., Docket Entry No. 1.)

Plaintiff alleges that Defendants, *inter alia*, violated his constitutional rights when they banned

him from representing clients in New York State traffic court proceedings.  (*Id.* ¶¶ 70–88.)

On February 8, 2019, Smart moved to dismiss the Complaint against him.  (Def. Mot. to

Dismiss ("Def. Mot."), Docket Entry No. 57.)  In support of his motion, Smart attaches several

documents seeking to show that he is a victim of Plaintiff's actions.  (Incident Form, annexed to

Def. Mot., Docket Entry No. 57-1.)  Because Smart has not stated a proper basis to dismiss the Complaint against him, the Court denies without prejudice his motion to dismiss.

The Court also denies without prejudice Smart's April 24, 2019 application for appointment of *pro bono* counsel.  (Mot. to Appoint Counsel, Docket Entry No. 66.)  As stated in the Court's prior Order denying a similar application from Smart, there is no right to counsel in a civil case.  (Order dated Aug. 2, 2018, Docket Entry No. 30 (citing *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013).)  The Court cannot compel an attorney to represent a litigant in a civil case without a fee.  *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 301–02 (1989).  The Court may only request that an attorney volunteer to do so, and looks to a number of factors to determine whether it is appropriate to request a volunteer attorney for a particular case.  The first consideration — and threshold requirement — is whether the movant's position is "likely to be of substance."  *Ferelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 204 (2d Cir. 2003).

At this stage of the litigation, Smart has not established the threshold requirement that his position is "likely to be of substance."  *Id.*  Accordingly, the Court denies without prejudice Smart's request for *pro bono* counsel.

Dated:  September 27, 2019
        Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                    Plaintiff,

      -against-

ALAN GELBSTEIN, *in his official and*
*individual capacity*, IDA TRASCHEN,
*in her official and individual capacity*,
DANIELLE CALVO, *in her official and*
*individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., and DAVID SMART,

                    Defendants.
-------------------------------------------------------------------X

                                    **ORDER**
                          **18 CV 2710 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

      The Court held the initial conference in plaintiff's civil rights case on November 14, 2019.[1] After discussing it on the record, plaintiff voluntarily withdrew his amended complaint.[2] ECF No. 74. Accordingly, the Clerk of Court shall terminate the state defendants' motion to dismiss. ECF No. 77. The state defendants' motion to stay discovery is denied. ECF No. 78. This case shall proceed on the original complaint, ECF No. 1, against defendants Gelbstein, Calvo, Traschen, Smart, Tahir, and PEC Group of NY as set forth in Judge Brodie's September 25, 2019 Memorandum & Order, ECF No. 71.

      The Court set the following deadlines: the state defendants shall answer plaintiff's complaint, ECF No. 1, and plaintiff and the state defendants shall exchange initial disclosures by **December 4, 2019.**[3]

      The parties shall complete all discovery by **May 15, 2020.** Discovery is the process by which the parties request information from each other regarding their claims or defenses.[4]

---

[1] Defendants Tahir and PEC Group of NY did not appear at the conference. The Court's Order scheduling the conference that was sent to Tahir was returned as undeliverable. ECF No. 80. As Tahir did not have notice of today's conference, the Court excused his appearance on the record.

[2] A transcript of the November 14, 2019 conference has been ordered and shall be made part of the record. The Clerk of Court is directed to amend the caption as set forth above.

[3] Defendants Smart and Tahir have answered plaintiff's complaint. ECF Nos. 6–7.

[4] The Clerk of Court is directed to mail defendant Smart a copy of the *pro se* manual.

Discovery is governed by Federal Rules of Civil Procedure ("FRCP") 26 through 37 and is conducted between the parties without the Court's involvement. Each party bears its own costs of conducting discovery. Pursuant to FRCP 33 and 34, the parties may request, in writing, answers to questions and documents from the other parties or their attorneys if they are represented. The more specific the request, the more likely the information will be produced. Generally, parties must respond to discovery requests in writing within thirty days. Because May 15, 2020 is the deadline for the completion of all discovery, requests to the opposing party must be served at least thirty days before that deadline. The parties should always keep a copy of all requests and responses they send; the parties should never send an original document. FRCP 5(d) prohibits litigants from filing discovery materials in the Court.

The parties may conduct depositions upon oral examination pursuant to FRCP 30. An oral deposition is a seven-hour question-and-answer session in which the person being deposed testifies under oath or affirmation. The deposition in its entirety, both the questions and answers, are transcribed by the court reporter and may be used in the litigation. If a party receives written notice to appear for a deposition but is unable to appear at the date and time stated in the notice, that party shall promptly contact the opposing party to request that the deposition be rescheduled for another date. Any request to schedule depositions at the Courthouse shall be made to my Chambers at (718) 613-2170. Once a date is confirmed, the notice of deposition shall be served in accordance with FRCP 30(b).

Before requesting the Court's assistance regarding a discovery dispute, the parties must make a good faith effort to resolve the dispute with one another. FRCP 26(c); Local Civil Rule 37.3. Under the FRCP, any submission to the Court must first be served on the adversary or the Court cannot consider it. FRCP 5.

Upon completion of discovery, any party seeking to file a dispositive motion shall file a pre-motion conference request by **June 5, 2020** in accordance with Judge Brodie's Individual Motion Practices and Rules.

SO ORDERED.

/S/ Judge Lois Bloom
LOIS`BLOOM
United States Magistrate Judge

Dated: November 14, 2019
Brooklyn, New York

2

A74

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                   Plaintiff,

       -against-

ALAN GELBSTEIN, *in his official and
individual capacity*, IDA TRASCHEN,
*in her official and individual capacity*,
DANIELLE CALVO*, in her official and
individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., and DAVID SMART,

                   Defendants.
----------------------------------------------------------------X

**ORDER**
**18 CV 2710 (MKB)(LB)**

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y

★ DEC 10 2019 ★

BROOKLYN OFFICE

**BLOOM, United States Magistrate Judge:**

      Plaintiff seeks to physically enter DMV premises to "gather information with respect to not only my initial disclosures but as well as any and all discovery which I must undertake with respect to my Complaint." ECF No. 91. The state defendants oppose plaintiff's request. ECF No. 93. The Court shall hold a status conference on January 10, 2020 at 10:30 a.m. in Courtroom 11A South of the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York to discuss the parties' discovery obligations. Parties are advised that they must contact each other before making any request for an adjournment to the Court. Any request for an adjournment must be received in writing at least forty-eight (48) hours before the scheduled conference. As previously ordered, the state defendants shall answer plaintiff's complaint and plaintiff and the state defendants shall exchange initial disclosures by December 18, 2019.

SO ORDERED.

                                  /S/ Judge Lois Bloom

                                  LOIS BLOOM

Dated: December 10, 2019                  United States Magistrate Judge
     Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------
MARIO H. CAPOGROSSO,

                         Plaintiff,

          v.

ALAN GELBSTEIN, IDA TRASCHEN,
DANIELLE CALVO, SADIQ TAHRIR, PEC
GROUP OF NY, INC., DAVID SMART and
MARK J.F. SCHROEDER,

                    Defendants.
--------------------------------------------------------------

**ORDER**
18-CV-2710 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

On December 2, 2019, Plaintiff Mario H. Capogrosso, proceeding *pro se*, filed a motion

seeking a court order directing the New York Department of Motor Vehicles (the "DMV") to

allow Plaintiff access to the Brooklyn Traffic Violations Bureau (the "TVB") to conduct

discovery.  (Pl. Mot. Seeking Entrance to DMV TVB ("Pl. Mot.") 2, Docket Entry No. 91.)

Defendants Danielle Calvo, Alan Gelbstein, Ida Traschen, and Mark J.F. Schroeder opposed the

motion.  (Defs. Opp'n to Pl. Mot., Docket Entry No. 93; Defs. Suppl. Opp'n to Pl. Mot., Docket

Entry No. 101.)  On January 10, 2020, Magistrate Judge Lois Bloom held a conference with the

parties and denied Plaintiff's request to enter the TVB and conduct discovery ("Judge Bloom's

Order").  (Order dated Jan. 10, 2020 ("Jan. 2020 Order"), Docket Entry No. 104; Tr. of Jan. 10,

2020 Conference ("Tr."), Docket Entry No. 105.)  Judge Bloom ordered Plaintiff to "comply

with Rules 26–37 of the Federal Rules of Civil Procedure," as well as previous court orders

regarding discovery in this case.  (Jan. 2020 Order.)

On January 15, 2020, Plaintiff filed a letter objecting to Judge Bloom's Order directing him "not to attempt to enter the [TVB] . . . to gather witness statements, witness names, and witness telephone numbers as well as gather evidence by way of photographs."  (Pl. Obj. to Jan. 2020 Order ("Pl. Obj."), Docket Entry No. 106.)  The Court construes Plaintiff's letter as an objection to Judge Bloom's Order pursuant to Rule 72 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court declines to set aside or modify Judge Bloom's Order.

Under the Federal Magistrates Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of Civil Procedure, "[a] magistrate judge is authorized 'to make findings as to non-dispositive pretrial matters, such as discovery matters, which may not be disturbed by a district judge absent a determination that such findings were clearly erroneous or contrary to law.'"  *Ebo v. N.Y. Methodist Hosp.*, No. 12-CV-4432, 2015 WL 4078550, at *4 (E.D.N.Y. July 6, 2015) (quoting *McNamee v. Clemens*, No. 09-CV-1647, 2014 WL 1338720, at *2 (E.D.N.Y. Apr. 2, 2014)); *see also Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007).  An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed."  *In re Gordon*, 780 F.3d 156, 158 (2d Cir. 2015) (internal quotations omitted) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)); *Ebo*, 2015 WL 4078550, at *4.  An order is only contrary to law if it misapplies existing law and the district judge is convinced that a mistake has been made.  *In re Gordon*, 780 F.3d at 158.

Under this highly deferential standard, magistrate judges are "afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused."  *McNamee*, 2014 WL 1338720, at *2 (first citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 524 (2d Cir. 1990); and then citing *United States v. Dist. Council*, 782 F. Supp. 920, 922 (S.D.N.Y. 1992)).  Therefore, "a party seeking to overturn a discovery order [by a magistrate

judge] bears a heavy burden." *Bachayeva v. Americare Certified Special Servs.*, No. 12-CV-1466, 2013 WL 4495672, at *1 (E.D.N.Y. Aug. 20, 2013) (quoting *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y 2011)). "[T]he magistrate judge's findings should not be rejected merely because the court would have decided the matter differently." *Pall Corp. v. Entegris*, *Inc.*, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008) (quoting *Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007)).

The Court has reviewed Judge Bloom's Order, denying Plaintiff's request for a court order giving him access to the TVB and directing Plaintiff to comply with the Federal Rules of Civil Procedure regarding discovery, and finds that it was not "clearly erroneous or contrary to law." *Ebo*, 2015 WL 4078550, at *4 (quoting *McNamee*, 2014 WL 1338720, at *2). Accordingly, the Court declines to modify or set aside Judge Bloom's Order.

Dated: February 3, 2020
      Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARIO H. CAPOGROSSO,

      Plaintiff,        **ORDER**
                 **18 CV 2710 (EK)(LB)[1]**

   -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

      Defendants.
-------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

   Plaintiff filed two letters regarding the parties' depositions. ECF Nos. 109–110. He reports

that defendants seek to hold Ida Traschen's deposition in Albany instead of Brooklyn. ECF No.

109 at 2, 6. Plaintiff does not consent to deposing Traschen by telephone. Id. at 5. As Traschen is

a named defendant in this action and defendants were granted permission to hold all the depositions

in this action in the Brooklyn Courthouse, defendants shall bear the cost for Traschen's travel to

Brooklyn to be deposed. Plaintiff also reports that he intends to depose three defendants in the

same day. ECF No. 110 at 3, 6. Rule 30 of the Federal Rules of Civil Procedure provides that a

deposition "is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). Although the Court would not

advise trying to depose three defendants in the same day, plaintiff may do so. However, if he

chooses to do so, he must complete all three depositions on the selected day.

   The Court has reserved Room 402 South in the Brooklyn Courthouse, 225 Cadman Plaza

East, Brooklyn, New York 11201, from 9:00 a.m. to 5:00 p.m. for the parties to conduct

---

[1] This case was reassigned to the Honorable Eric Komitee on February 7, 2020.

depositions on the four dates requested: March 12, March 19, April 29, and April 30, 2020. ECF No. 109 at 1. The parties shall jointly confirm in writing the dates of the depositions by February 25, 2020. The parties are reminded of their obligation to cooperate regarding discovery and that they must make a good-faith effort to resolve any dispute prior to seeking Court intervention. L. Civ. R. 26.4, 37.3.

SO ORDERED.


                                           /S/

Dated: February 18, 2020                              LOIS BLOOM
         Brooklyn, New York                   United States Magistrate Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARIO H. CAPOGROSSO,

               Plaintiff,

     -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

               Defendants.
-----------------------------------------------------------------X

**ORDER**
**18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

      The parties confirm that they plan to conduct depositions on April 28 and April 29, 2020.

ECF No. 113. The Court has reserved Room 402 South in the Brooklyn Courthouse, 225 Cadman

Plaza East, Brooklyn, New York 11201 on April 28 and 29, 2020 from 9:00 a.m. to 5:00 p.m. The

parties are reminded that they are responsible for arranging for their own court reporters. As

previously set, the parties shall complete all discovery by May 15, 2020 and shall file any pre-

motion conference request in accordance with Judge Komitee's Individual Rules by June 5, 2020.

Electronic Order dated Nov. 14, 2019.

SO ORDERED.

                                      _____/S/_____
                                        LOIS BLOOM
                                        United States Magistrate Judge

Dated: February 26, 2020
        Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MARIO H. CAPOGROSSO,

                 Plaintiff,

     -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                 Defendants.

-------------------------------------------------------------------X

**ORDER**
**18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

      State defendants' counsel requests that the deposition of Ida Traschen be conducted remotely due to the COVID-19 pandemic. ECF No. 117. Plaintiff does not consent. The request is denied.

      In light of the national emergency posed by COVID-19, the Court stays all deadlines in this case and cancels all depositions, ECF No. 114. The Court shall reschedule deadlines and any depositions that need to be conducted at the Courthouse at a later date. The parties shall file a status letter proposing dates and times for a telephone conference by May 1, 2020. State defendants' counsel shall mail a copy of this Order to plaintiff and file proof of service forthwith.

SO ORDERED.

                                     /S/

                                 LOIS BLOOM
                                 United States Magistrate Judge

Dated: March 18, 2020
       Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                Plaintiff,                                **ORDER**
                                                          **18 CV 2710 (EK)(LB)**

        -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                Defendants.
---------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff[1] moves the Court to compel discovery. Specifically, plaintiff seeks a Court

Order that defendant Smart answer his interrogatories and "produce an email and requisite

laptop" so that plaintiff can conduct Smart's deposition, that defendant Smart be ordered to

appear at a deposition, that the State's Attorney produce two clerks he wishes to depose, and that

the discovery deadline be extended by 30 days. ECF No. 149. The State defendants oppose

plaintiff's requests to conduct additional depositions and to extend discovery. For the reasons set

forth below, plaintiff's requests are granted in part and denied in part.

       The deadline for the parties to complete all discovery in this case was December 22,

2020. ECF No. 145. Plaintiff's letter requesting a subpoena is dated December 21, 2020, literally

the eve of the deadline to complete all discovery. Subpoena practice is governed by Federal Rule

of Civil Procedure 45 which provides in relevant part that an attorney may issue and sign a

subpoena or the clerk must issue a subpoena to a party who requests it.  Fed. R. Civ. P. 45(a)(3).

---
[1] Mr. Capogrosso is an attorney who is proceeding *pro se*.

A deposition subpoena must be served before the discovery deadline. See Juliao v. Charles Rutenberg Realty, Inc., No. 14 Civ. 808, 2018 WL 5020167, at *5 (E.D.N.Y. July 23, 2018) (quashing subpoena and noting that "[w]hile Rule 45 does not define 'reasonable time [to provide advance notice of a deposition subpoena], many courts have found fourteen days from the date of service as presumptively unreasonable.") In this case, the parties have had well over a year to conduct discovery. See ECF No. 82. Plaintiff could have requested and served a subpoena at any time during the discovery period,  but instead waited until the deadline to do so. Further, the Court's December 22, 2020 Order stated that its consideration of plaintiff's interrogatories would be "the one exception to the parties' deadline to complete all discovery by December 22, 2020." See ECF No. 148. Therefore, the Court denies plaintiff's request to depose the two clerks and to extend the discovery deadline. The Court has already denied plaintiff's motion to compel defendant Smart to provide plaintiff with an email address or phone number to conduct his deposition remotely.[2] ECF Nos. 147-148. The Court declines to revisit this issue.

Plaintiff maintains that he served interrogatories on defendant Smart before the discovery deadline, however defendant Smart never responded. Plaintiff has now sent the Court a copy of the interrogatories dated August 25, 2020. ECF No. 149-1. The Court has reviewed the interrogatories. Defendant Smart shall, to the best of his ability, respond in writing to plaintiff's

---

[2] The Court declined to compel defendant Smart, who is also proceeding *pro se* in this matter, to appear for a deposition, or to provide his email address or phone number to plaintiff. There is bad blood between Capogrosso and Smart. Requiring these two pro se parties to do anything together is not in the interest of justice. Defendant Smart was employed by a private company which supplied security guards at the Department of Motor Vehicles from which plaintiff was banned. Plaintiff and defendant Smart got into a confrontation which led to plaintiff being removed from the DMV. That confrontation is what plaintiff claims caused his ban from the DMV office.  Assuming this is true, plaintiff fails to demonstrate that defendant Smart acted under color of state law in connection with his alleged role in this lawsuit. The lack of state action was not properly raised by Smart in his motion to dismiss.  Although he is named as a defendant, the Court finds Smart's responses to plaintiff's written interrogatories will be sufficient and declines to compel Smart to appear for a deposition under these circumstances.

interrogatories No. 1-7[3] by February 12, 2021. Fed. R. Civ. P. 33(b)(2).[4] Discovery in this matter is otherwise closed.

Plaintiff's deadline to respond to the State defendant's pre-motion conference request, ECF No. 151, pursuant to Judge Komittee's individual rules, is extended. Plaintiff shall respond to the State defendant's pre-motion conference request by February 19, 2021. Defendants' counsel shall communicate this order to plaintiff and to defendant Smart by all available means. SO ORDERED.

_____/S/_____

LOIS BLOOM
United States Magistrate Judge

Dated: January 13, 2021
      Brooklyn, New York

---

[3] Defendant Smart need not respond to interrogatory No. 8, which requests his email address and telephone number, as discussed above.

[4] Defendant Smart may contact The Federal Pro Se Legal Assistance Project, a free, limited-scope legal clinic operated by the City Bar Justice Center of the New York City Bar Association to seek assistance in responding to the interrogatories. A copy of the City Bar Justice Center's flyer is included with this Order.

# Federal Pro Se Legal Assistance Project

The Federal Pro Se Legal Assistance Project is a free service offered by the City Bar Justice Center of the New York City Bar Association.

## Who We Help:
- Pro se plaintiffs and defendants with cases in the U.S. District Court for the Eastern District of New York (Brooklyn).
- Individuals thinking about filing a federal case pro se in the E.D.N.Y.
- *We cannot assist incarcerated litigants but can provide referrals.*

## Services We Provide:
- Limited-scope legal assistance by an attorney. "Limited-scope" assistance means that the Project attorney cannot take your case for full representation. After you meet with us, you will still act as your own lawyer on your case.
- Explaining federal court procedures and rules.
- Advising you about potential federal claims before you file a lawsuit.
- Reviewing your draft court papers.
- Giving referrals to legal, governmental and social services.

## How to Get Free Legal Help:
- Call (212) 382-4729 or email citaya@nycbar.org to schedule an appointment with an attorney.
- Office hours are Monday through Thursday, 9:30 am until 4:30 pm.
- **During the COVID-19 health crisis, we are conducting remote, telephone appointments.**



Cat Itaya, Esq., *Project Director*
Federal Pro Se Legal Assistance Project
c/o U.S. District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, NY 11201
(212) 382-4729
www.citybarjusticecenter.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                Plaintiff,

    -against-

ALAN GELBSTEIN, *in his individual capacity*,
IDA TRASCHEN, *in her individual capacity*,
DANIELLE CALVO, *in her individual capacity*,
SADIQ TAHIR, PEC GROUP OF NY, INC.,
DAVID SMART, and MARK SCHROEDER,
*in his official capacity as Commissioner of*
*the New York State Department of Motor Vehicles*,[1]


                Defendants.
------------------------------------------------------------------X

                                        **REPORT & RECOMMENDATION**
                                         **18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

       Attorney Mario H. Capogrosso, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that defendants retaliated against him for exercising his First Amendment rights by permanently barring him from the Traffic Violations Bureau ("TVB") in May of 2015. Defendant David Smart[2] and defendants Alan Gelbstein, Ida Transchen, Danielle Calvo, and New York State Department of Motor Vehicles Commissioner Mark Schroeder, (collectively, "the State Defendants") move for summary judgment on plaintiff's claims against them pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 178, 179. Plaintiff opposes the motions. ECF Nos. 246, 258. The Honorable Eric R. Komitee referred defendants'

---

[1] The Court granted the State defendants' request to add DMV Commissioner Mark Schroeder in his official capacity regarding plaintiff's claim for prospective injunctive relief pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. See ECF Nos. 96, 104.

[2] The Court notes with gratitude that Davis Polk & Wardwell LLP appears as pro bono counsel for *pro se* defendant Smart for the limited purpose of his motion for summary judgment. See ECF Nos. 162, 167–68.

1

motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).[3] For the reasons set forth below, it is respectfully recommended that defendants' motions for summary judgment should be granted.

## FACTS[4]

The following facts are taken from plaintiff's complaint, ECF No. 1 ("Compl."), defendants' Local Civil Rule 56.1 Statements of Facts,[5] and the exhibits filed by defendants with their summary judgment briefing.[6] Even though plaintiff is an attorney, defendants provided plaintiff with requisite notice to a *pro* se litigant opposing summary judgment under Local Rule 56.2. See ECF Nos. 178-8, 182.

---

[3] This case, originally assigned to the Honorable Margo K. Brodie, was reassigned to the Honorable Eric R. Komitee. See Feb. 11, 2020 Order.

[4] Unless otherwise stated, the facts are undisputed.

[5] See ECF No. 178-7, Smart's Rule 56.1 Statement ("Smart's 56.1 Stmt.") and ECF No. 181, State Defendants' Rule 56.1 Statement ("State Defs' 56.1 Stmt."). Plaintiff files counterstatements. ECF No. 239, Plaintiff's Counterstatement to Smart's Rule 56.1 Statement ("Pl. Opp'n Smart's 56.1 Stmt.") and ECF No. 235, Plaintiff's Counterstatement to the State Defendants' Rule 56.1 Statement (Pl. Opp'n State Defs' 56.1 Stmt."). The Court deems admitted only those facts in defendants' Rule 56.1 statements that are supported by admissible evidence and not controverted by the record. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). The Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5.

[6] State defendants' counsel filed exhibits to the instant motion as separate ECF entries, making this docket difficult to follow. In the future, Mr. Thompson shall file motions as a single ECF entry with attachments. In the interest of clarity, documents in the record can be located as follows: with their motion, the State Defendants filed Danielle Calvo's Declaration ("Calvo Decl."), ECF No. 183, with Exhibits 1–6, ECF Nos. 184–89, Alan Gelbstein's Declaration ("Gelbstein Decl."), ECF No. 190, with Exhibits 1–26, ECF Nos. 191–216, Ida Traschen's Declaration ("Traschen Decl."), ECF No. 217, with Exhibits 1–9, and James Thompson's Declaration ("Thompson Decl."), ECF No. 220, with Exhibits 1–9, ECF Nos. 221–29. Defendant Smart attaches Maura Douglas' Declaration ("Douglas Decl."), ECF No. 178-2, with Exhibits 1–4, ECF No. 178-3–6 to his motion. Plaintiff attaches Exhibits A–T, W–Z, and AA–EE. ECF Nos. 235-2–6, 236–38, 248–56, 259–265 to his opposition to defendants' motions. The Court has thoroughly reviewed the record.

2

The instant action arises out of plaintiff's bar from the Traffic Violations Bureau ("TVB") in May 2015. Compl. ¶¶ 5, 11. Plaintiff began representing motorists at the TVB in 2005. Compl. ¶ 3; ECF No. 221, Plaintiff's Deposition Transcript, ("Pl. Dep."), 18:13–18, 21:15–23.[7] The TVB is a division within the Department of Motor Vehicles ("DMV"), an agency of New York State, and proceedings within the TVB are overseen by Administrative Law Judges ("ALJs"). See generally, N.Y. Traffic Law §§ 225 et seq.

In 2009, the DMV began to receive complaints about plaintiff's behavior at the TVB. State Defs' 56.1 Stmt. ¶ 9; Gelbstein Dec. ¶ 7 ("I received more complaints about Plaintiff than I received about any other attorney in my entire time at DMV"); Calvo Dec. at ¶¶ 2–6 (describing plaintiff yelling obscenities at clerks and other attorneys); Traschen Dec. ¶ 7.[8]

On January 6, 2011, eighteen Brooklyn South TVB employees signed a petition stating that "the confrontations [with plaintiff] have been escalating," and that they felt plaintiff's presence at the TVB "constitutes a threat to [their] physical safety." ECF No. 195 ("the Petition"); see State Defs' 56.1 Stmt. ¶ 13; Gelbstein Dec. ¶ 13, Calvo Dec. ¶ 6. After receiving the petition, then-

---

[7] Plaintiff's deposition transcript is formatted as two separate entries: ECF Nos. 221–22. As the page numbers are continuous, reference is made to "Plaintiff's Deposition."

[8] These complaints, from other attorneys, TVB staff, and third-party witnesses, include allegations of plaintiff making verbal threats, yelling obscenities and ethnic slurs, and plaintiff's physically aggressive, threatening behavior. See Gelbstein Dec. Exs. 1–4. For example: "I fear for my safety… I no longer feel comfortable at my place of employment," ECF No. 193, Complaint by TVB Clerk Marisol Cervoni; "[Plaintiff] called me a variety of vulgar and profane names and threatened me with violence…. I was especially nervous because I am 6 months pregnant and I was in fear his outbursts would turn violent," ECF No. 194, Complaint by Attorney Diantha Fuller. Plaintiff acknowledges that confrontations occurred and admits he raised his voice but denies using profanity and states that he does not recall "hitting" anyone. See Pl. Dep. 148:15–150:6, 168:22–24, 175:11–176:8, 206:16–206:23, 211:9–223:20. He acknowledges making physical contact during altercations on occasion. See Pl. Opp'n State Defs' 56.1 Stmt ¶ 10 ("I affirm, upon personal knowledge, bumping into [Tanya Rabinovich]."); contra Pl. Dep. 149:24–150:6 (plaintiff states he does not recall making contact with Rabinovich).

Administrative Law Judge ("ALJ") Alan Gelbstein[9] and Supervising ALJ Vahdatlamas advised plaintiff that if he "did not conduct himself appropriately," he would not be allowed to appear on behalf of motorists at the TVB. Gelbstein Dec. ¶ 14.

On December 21, 2011, plaintiff was involved in another incident in which he used anti-Semitic language towards one attorney and then "punched the air" near another attorney's face. Id. at ¶ 9; see ECF No. 196 (email from ALJ Vahdatlamas, memorializing the investigation following the event); ECF Nos. 197–200 (statements from four attorneys who witnessed the incident). Plaintiff admits to using threatening language and "[throwing] the punch at the wall." Pl. Dep. 260:18–21, 272:18–22, 306:22–307:06. After obtaining plaintiff's version of events, Gelbstein, Vahdatlamas, and Neil Schoen, the Deputy Commissioner for Legal Affairs, determined that plaintiff would be suspended from practicing at any TVB location for three months, and from practicing at the Brooklyn South location indefinitely. Gelbstein Dec. ¶ 19.

On April 12, 2012, plaintiff commenced an Article 78 proceeding challenging his suspension. See Capogrosso v. N.Y. State Dep't of Motor Vehicles, Index No. 7738/2012 (Sup. Ct. Kings Cty.). The parties eventually reached a settlement, and the DMV agreed to lift plaintiff's suspension upon his completion of an anger management course. Pl. Dep. 321:12–322:20. Plaintiff was allowed to resume practice at the TVB on the condition that he "strictly adhere to the standards of conduct required of attorneys appearing before State courts." ECF 219. Further, the DMV warned plaintiff that "in the event that Mr. Capogrosso commits an act of physical violence, he

---

[9] Gelbstein, now retired, was a Senior Administrative Law Judge at the New York State DMV TVB at the time of the events giving rise to this action. Gelbstein Dec. ¶ 1. Gelbstein reported to Supervising ALJ Bushra Vahdatlamas, who in turn reported to Ida Traschen, the First Assistant Counsel, who oversaw the entire TVB system on a state-wide basis at the time. Id. at ¶ 5; Traschen Dec. ¶ 6. Traschen retired from her position as First Assistant Counsel in 2017. Traschen Dec. ¶ 1.

shall be immediately and permanently barred from appearing on behalf of DMV licensees at TVB offices." Id. at 2; see Pl. Dep. at 414:4–6.

Plaintiff returned to the Brooklyn South TVB mid-2012 and soon after, he and David Smart, a security guard at TVB, employed by the private security firm PEC Group of NY, Inc. ("PEC"), made complaints against one another. See Pl. Dep. at 344:5–345:2 (plaintiff recounts complaining about Smart to Gelbstein), id. at 412:19–21 (same); ECF No. 202 (Workplace Violence Report stating that plaintiff accused Smart of "looking at him" and that a police officer had to intervene); ECF No. 204 (Smart complains that plaintiff deliberately walked into him).[10] Others also filed complaints about plaintiff's aggressive behavior at the TVB. Gelbstein Dec. ¶ 27–34; see, ECF No. 203, 205–07, 209.[11]

On March 20, 2015, plaintiff sent a letter (hereinafter, "the AG Letter") to Assistant Attorney General ("AAG") Elizabeth Prickett-Morgan of the New York State Office of the Attorney General,[12] complaining that, *inter alia*, Smart was tampering with plaintiff's files, that Smart had "gotten in [his] face, stared and glared," and that Smart had gestured in plaintiff's direction. ECF No 227. Plaintiff's letter further complained that Gelbstein failed to respond to his complaints about Smart. Id. Gelbstein and Traschen became aware of the letter but did not respond to it or take any action because, in their view, the letter contained "stale claims" that plaintiff had

---

[10] Plaintiff does not deny that he walked into Smart but denies that it was deliberate if he did. Pl. Dep. 354:12–355:22.

[11] Plaintiff, again, does not deny that these incidents took place, but denies that he was the aggressor. In his Opposition to State Defendants' 56.1 Statement, he repeatedly writes "[w]here is the proof of 'verbal threats of physical violence, and verbal abuse, including the use of ethnic slurs' … There is none, I see no proof." Pl. Opp'n State Defs' 56.1 Stmt ¶¶ 25, 26, 27, 28, 29, 33, 34, 35, and 36.

[12] It is not clear why plaintiff sent the letter to Prickett-Morgan. In his deposition, he states that "on Google for a correspondence address, Prickett-Morgan's name was attached to [the Office of the Attorney General]." Pl. Dep. 410:14–413:22.

previously raised to Gelbstein. State Defs' 56.1 Stmt ¶ 32; Gelbstein Dec. ¶¶ 36–37; Traschen Dec. ¶ 10.

On May 5, 2015, plaintiff was involved in another incident at the TVB. Reports of the incident state that plaintiff began yelling when Sadiq Tahir, another lawyer who practiced at the TVB, touched his bag. ECF Nos. 210–13 (witness statements and Workplace Violence Report).[13] Less than a week later, on May 11, 2015, plaintiff and Smart got into an argument and plaintiff shoved Smart; Smart left the scene and filed a report with the police. See ECF Nos. 214–16 (witness statements and Workplace Violence Report); Calvo Dec. ¶ 15. Plaintiff does not deny that an incident took place, but states that "Smart approached [plaintiff] for no reason" and that plaintiff "tried to avoid an altercation." Pl. Opp'n Smart's 56.1 Stmt. ¶ 17. Gelbstein was not at the TVB when the incident happened, but Danielle Calvo, a Supervising Motor Vehicle Representative, called Gelbstein to inform him of the incident. Calvo Dec. ¶ 14.[14] Gelbstein directed Calvo to call Traschen and Traschen advised Calvo to escort plaintiff out of the TVB. Gelbstein Dec. ¶ 46. In the presence of police, Calvo asked plaintiff to leave the premises. Calvo Dec. ¶ 14. Smart left the TVB with the police to file a report regarding the incident. Id. ¶ 15.

Later that day, Gelbstein and Traschen discussed the incident and concluded that plaintiff should be permanently barred from the TVB considering his history of aggressive behavior, the fact that his suspension and anger management classes had not tempered his outbursts, and that plaintiff had already been explicitly warned that any incident of physical violence would lead to his permanent bar from the TVB. Gelbstein Dec. ¶¶ 46–47; Traschen Dec. ¶¶ 12–13. Plaintiff

---

[13] Plaintiff does not dispute that there was a dispute between him and Tahir but claims that Tahir initiated the argument. ("Maybe I told Tahir leave my bag alone." Pl. Dep. 450:17–454:19). Tahir and two witnesses cite plaintiff as the aggressor in filed statements. ECF Nos. 210–12.

[14] Calvo was a "Supervising Motor Vehicle Representative 2" at the TVB from June 2012 until February 2016, when she left for a position in the Office of Court Administration. Calvo Dec. ¶ 6.

6

claims defendants barred him from the TVB in retaliation for his exercise of his "First Amendment Rights [to] criticize the way [Gelbstein] administered his official office." Compl. ¶ 42. Gelbstein and Trachen state that plaintiff's letter to the AG "played no role in this decision to bar the Plaintiff from [TVB] practice." State Defs' 56.1 Stmt. ¶ 42.

## PROCEDURAL HISTORY

Plaintiff filed the instant complaint against defendants on May 8, 2018. ECF No. 1. Proof of service was filed for Calvo, Gelbstein, Morgan, and Smart on June 8, 2018 and for Traschen, Vahdatlamas, and PEC Group of NY, Inc. ("PEC"), on July 27, 2018. ECF Nos. 10, 24.[15] *Pro se* defendants Smart and Tahir answered plaintiff's complaint and raised a counterclaim against plaintiff. ECF Nos. 6–7. Smart and Tahir's counterclaims were dismissed on October 17, 2018. ECF No. 50.[16]

The State Defendants[17] moved to dismiss plaintiff's complaint, ECF No. 42, and Judge Brodie referred the motion to me for a Report and Recommendation. See Nov. 5, 2018 Order. I

---

[15] PEC never appeared in this action.

[16] Defendant Tahir has not appeared since the Court held a pre-motion conference on August 2, 2018. Starting February 12, 2019, mail sent to Tahir's address has been returned to the Court as undeliverable. See, ECF Nos., 56, 58, 64, 80, 87, 92, 95, 97, 98, 100, 112, 115, 116, 130, 132, 141, 156, 160, 165, 169, 172, 176, 240, 269, 276, and 277.

[17] In addition to Gelbstein, Traschen, and Calvo, plaintiff also named state defendants Elizabeth Morgan (formerly Elizabeth Prickett-Morgan), Jean Flanagan, Boshra Vahdatlamas, and Vincent Palmieri.

7

recommended that the State Defendants' motion should be granted in part and denied in part[18] and the Court adopted the Report and Recommendation. ECF No. 71.[19]

Plaintiff filed an amended complaint, ECF No. 74, but voluntarily withdrew the amended complaint and the Court set a deadline for the parties to complete discovery. ECF No. 82.[20] Plaintiff requested that the Court order defendant Commissioner Schroeder be produced for a deposition and that defendant Smart be ordered to respond to his interrogatories. ECF No. 147. The Court granted defendant Schroeder's request for a protective order pursuant to Federal Rule of Civil Procedure 26(c), ECF No. 146, and directed plaintiff to provide his outstanding interrogatories to the Court for review. ECF No. 148. Discovery closed on December 22, 2020.[21] Defendant Smart and the State Defendants now move for summary judgment, ECF Nos. 178–79, and plaintiff opposes the motions, ECF Nos. 246, 258.

---

[18] I recommended that the State Defendants' motion to dismiss should be granted as to plaintiff's due process, Section 1985, and Section 1986 claims, as well as all claims against Vahdatlamas, Morgan, Flanagan, and Palmieri. I recommended that the State Defendants' motion to dismiss plaintiff's First Amendment retaliation claim against Gelbstein, Calvo, and Traschen should be denied without prejudice. Lastly, I recommended that the State Defendants' motion to dismiss plaintiff's claims for prospective injunctive relief against Gelbstein, Calvo, and Traschen should be denied. See ECF Nos. 51–53.

[19] Defendant Smart moved to dismiss the complaint, ECF No. 57, and the Court denied his motion without prejudice "because Smart [had] not stated a proper basis to dismiss the Complaint against him." ECF No. 72.

[20] Plaintiff requested to enter TVB premises to conduct discovery, ECF No. 91, and the Court denied his request, ECF No. 104. Plaintiff moved for reconsideration of the Court's Order denying his request to enter the TVB, ECF No. 106, and the Court denied his motion, ECF No. 108. Although the Court made a room in the Brooklyn Courthouse available for depositions in this matter, ECF No. 111, the national emergency caused by the emergence of the COVID-19 pandemic in March 2020 led to the depositions being conducted remotely. See ECF Nos. 118, 131.

[21] The Court directed *pro se* defendant Smart to respond to plaintiff's interrogatories by February 12, 2021. ECF No. 154. When Smart did not timely respond, the Court held a telephone conference, swore Smart to the truth of his testimony, and Smart answered plaintiff's interrogatories orally on the record. See ECF Nos. 159, 162–63. The Court had a transcript of the conference made part of the record.

# DISCUSSION

## I. Standard of Review

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also, Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

If the moving party meets its burden in establishing the absence of any genuine issue of material fact, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). The non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.

9

1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

Although plaintiff proceeds *pro se* and courts generally read the papers of *pro se* litigants liberally, Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006), plaintiff is a licensed attorney in New York and Connecticut. Compl. ¶ 2. *Pro se* attorneys are not entitled to the solicitude afforded to other *pro se* litigants. See Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all."); Holtz v. Rockefeller & Co., 258 F.3d 62, 82 n.4 (2d Cir. 2001) (*pro se* attorneys are not entitled to the special consideration courts customarily grant *pro se* parties).

## II. The State Defendants

### A. Judicial Immunity and Quasi-Judicial Immunity

Plaintiff claims that defendants Calvo, Gelbstein, and Traschen, in their individual capacities, retaliated against him in violation of his First Amendment rights.[22] The State Defendants move for summary judgment on the ground that the decision to bar plaintiff from practice at TVB offices was attorney discipline, a judicial act, and thus the State Defendants are protected by judicial and quasi-judicial immunity. The Court agrees.

It is well settled that judges generally have "absolute immunity from suits for money damages for their judicial actions" and thus "even allegations of bad faith or malice cannot overcome judicial immunity." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). However, judges are not immune from liability if the action was taken in the complete absence of jurisdiction or "if the action in question is not judicial in nature, as when the judge performs an administrative, legislative, or executive act." Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2005).

---

[22] His claim against Commissioner Schroeder is in his official capacity.

Judicial immunity also extends to "certain others who perform functions closely associated with the judicial process." See McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 124 (2d Cir. 2010) (summary order) (citing Oliva v. Heller, 839 F.2d 37, 39 (2d Cir. 1988) (internal citations omitted)); Chris H. v. New York, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order) (quasi-judicial immunity affords similar absolute immunity "to a person whose role is functionally comparable to that of a judge.") (internal quotations omitted). Indeed, "[a]bsolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual officer." Heller, 839 F.2d at 39 (quoting Cleavinger v. Saxner, 474 U.S. 193, 201 (1985)).

Administrative Law Judges (ALJs) like Gelbstein have absolute judicial immunity. Butz v. Economou, 438 U.S. 478, 513 (1978); see also Nash v. Califano, 613 F. 2d 10, 15 (2d Cir 1980) ("ALJs enjoy absolute immunity from liability in damages for actions taken in their quasi-judicial capacity"); Walker v. NYS Justice Ctr. for the Prot. of Special Needs, 493 F. Supp. 3d 239, 248 (S.D.N.Y. 2020) ("[ALJs] perform adjudicatory functions within a government agency, and as such [are] entitled to absolute immunity"); Stankovic v. Smith, No. 12-cv-2457 (DLI) (RER), 2012 WL 3597760, at *7 (E.D.N.Y. Aug. 20, 2012) ("Judges, including ALJs, have absolute immunity…").

Additionally, courts have held that court clerks and senior court administrative employees are an "integral part of the judicial process" and are entitled to absolute immunity. Jackson v. Pfau, No. 9:10-CV-1484 (GTS) (DEP), 2011 WL 13127988, at *9 (N.D.N.Y. May 12, 2011), aff'd, 523 Fed. App'x. 736 (2d. Cir. 2013) (summary order) (affirming the finding that the actions of an attorney in the Division of Court Operations for the Office of Court Administration and Chief and Associate Clerks were judicial in nature or closely related to the judicial process); see McKeown

11

v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 124 (2d Cir. 2010) (summary order) (Office of Court Administration employees are protected by quasi-judicial immunity in decision not to initiate attorney disciplinary proceedings because "prosecutors, hearing examiners, and law clerks are eligible for absolute immunity, and those involved in preparing and adjudicating attorney discipline proceedings share analogous roles."). Defendant Traschen served as the DMV's First Assistant Counsel and oversaw the TVB system across the state. Defendant Calvo was a supervising clerk at the Brooklyn South TVB. Both defendants Traschen and Calvo were thus immune from suit when performing functions closely associated to judicial functions.

The State Defendants are empowered by statute to regulate the conduct of attorneys appearing in DMV proceedings. See 15 N.Y.C.C.R. § 124.2(a) ("Any person representing the motorist must conform to the standards of conduct required of attorneys appearing before State courts, and failure to conform to these standards will be grounds for declining to permit his or her continued appearance…"). Thus, defendants' action barring plaintiff from the TVB was not taken in the absence of jurisdiction.

Moreover, barring an attorney from practice in a tribunal is a judicial act. Libertarian Party v. Cuomo, 970 F.3d 106, 124 (2d Cir. 2020) ("the act of disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case is a judicial act"). There need not be a formal hearing for immunity to apply. Bliven, 579 F.3d at 210 (that a decision is "informal and ex parte . . . has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character") (quoting Forrester v. White, 484 U.S. 219, 227 (1988)). Accordingly, the State Defendants are immune from plaintiff's § 1983 suit for damages arising from his bar from the TVB.

12

In his opposition, plaintiff attempts to characterize the decision to bar him from practicing law in the TVB as an administrative act regarding "an individual's right to [be] present in a building." ECF No. 258, Plaintiff's Opposition Memorandum to State Defendants' Motion ("State Opp'n") at 4. However, this action is not about plaintiff's right to enter the TVB building, but his bar from representing motorists at the TVB. See Compl. at ¶ 16 ("[plaintiff] had a property and/or liberty interest in practicing his profession in the [TVB]"), ¶ 72 ("[plaintiff] had a right to practice his profession in the TVB Court").[23] The State defendants disciplined plaintiff for his conduct and attorney discipline decisions are "judicial acts." McNamara v. Kaye, No. 06-CV-5169 (DLI) (CLP), 2008 WL 3836024, at *1 (E.D.N.Y. Aug. 13, 2008). Accordingly, I recommend that the Court should grant the State Defendants' motion for summary judgment on the ground that the State Defendants are immune from plaintiff's suit for monetary damages under § 1983.

## B. First Amendment Retaliation

The State Defendants additionally argue that, even if they were not immune from suit, they would be entitled to summary judgment on plaintiff's First Amendment Retaliation claim. The Court agrees.

To determine the appropriate test for a First Amendment claim under Section 1983, the court must consider whether the claim is being made by a public employee or a private citizen. To survive a motion for summary judgment on a First Amendment retaliation claim, a public

---

[23] Plaintiff spills a great deal of ink arguing about due process and whether he was given an opportunity to challenge his bar from the TVB. However, as stated in the Court's decision on the State Defendants' motion to dismiss, his opportunity to challenge the bar was through an Article 78 proceeding. Plaintiff was aware of this: he challenged his prior suspension through Article 78. Moreover, plaintiff's claims that defendants were obligated to investigate his version of the incidents and the many complaints about him is without basis. See ECF No. 235-2, Deposition of Alan Gelbstein ("Gelbstein Dep.") at 50:10–17 ("Q: So, how could I have responded to what he said against me; you are a judge am I right? A: I'm not a judge with regard to interactions between the various attorneys in the Office. I'm a judge with regard to motorists, police officers and specific charges against them.)"

employee plaintiff must set forth evidence demonstrating "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 106–07 (2d Cir. 2001). "For public employees, speech that 'principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection.'" Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 95 (2d Cir. 2020) (quoting Montero v. City of Yonkers, 890 F.3d 386, 399–400 (2d Cir. 2018).

For a private individual plaintiff to survive a motion for summary judgment on a First Amendment retaliation claim, he must set forth evidence demonstrating: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right. Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998). As discussed in my previous Report and Recommendation, ECF No. 51, plaintiff, an attorney practicing before a State administrative tribunal, does not fall squarely into either category. However, the Court need not resolve which standard applies here since plaintiff's claim for First Amendment retaliation fails under either standard.[24]

As to the second element of the public employee standard, even assuming, *arguendo*, that plaintiff's letter to Assistant Attorney General Prickett Morgan constituted protected speech (a big

---

[24] Plaintiff's Opposition states that "this Court's previous decision […] seems to indicate that it viewed the plaintiff as a 'private citizen.'" State Opp'n at 6. This is incorrect. The Report and Recommendation states "*For the purposes of this motion*, plaintiff's letter to Morgan is protected by the First Amendment." ECF No. 51 at 16 (emphasis added).

assumption on this record),[25] there is no evidence of a causal relationship between plaintiff's letter and plaintiff's permanent bar from the TVB. Similarly, as to the second element of the private citizen test, plaintiff has proffered no evidence of defendants' improper motive beyond his own conclusory statements. "[S]pecific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Indeed, plaintiff has not provided *any* specific proof that the State Defendants were motivated by an improper retaliatory purpose in barring him from the TVB.

Meanwhile, the State Defendants proffer a litany of complaints about plaintiff's aggressive behavior. Although plaintiff wishes to litigate the "who said what" of his interpersonal disputes in federal court, see ECF No. 237 (plaintiff responds to the State Defendants' exhibits, giving his side of each complaint made against him), the record demonstrates that many individuals, including TVB staff and other attorneys, reported feeling unsafe at the TVB because of plaintiff's behavior.[26] One report states that plaintiff was "more often than not[,] a menace to the office," Gelbstein Dec. ¶ 41 (quoting, ECF No. 211, Rivers Statement); another describes plaintiff as causing an "atmosphere of fear," id. at ¶ 42 (quoting ECF No. 212, Beer Statement). Moreover, plaintiff's behavior was deteriorating. Id. at ¶ 27. It was not one incident, but the culmination of many incidents and complaints that led to plaintiff's bar from the TVB.

---

[25] Plaintiff attempted to raise an issue about "Jewish ticket brokers" he saw in Gelbstein's Office at defendants' depositions. See e.g., Gelbstein Dep. at 83:5–24; ECF No. 235-5, Deposition of Danielle Calvo ("Calvo Dep.") at 65:15–68:23. However, this is irrelevant to plaintiff's retaliation claim as the letter to the AG contains no mention of these allegations. See also Pl. Dep. at 418:21–23 (A: I think Gelbstein is as corrupt as they come…"). Plaintiff's AG Letter manifestly relates to his own situation, to "redress personal grievances." Agosto, 982 F.3d at 95 (quoting Montero, 890 F.3d at 399–400.

[26] Even if plaintiff successfully demonstrated that some of the complaints against him were unreliable and should not have been considered by the defendants, it would not help him overcome the primary deficiency in his case—a lack of evidence that he was retaliated against because of his letter to AAG Prickett Morgan.

Prior to plaintiff sending his letter to AAG Pricket Morgan, plaintiff was suspended from practice at TVB due to his aggressive and harassing behavior. Plaintiff was explicitly warned that he would be barred from the TVB if "[he] commits an act of physical violence." ECF No. 219 at 2. Even with that warning, plaintiff could not abide by the conditions of his reinstatement. Plaintiff was a proverbial powder keg waiting to blow. Defendants did not have to wait for something worse to happen to take disciplinary action against him.

Plaintiff offers only his suspicion that the AG letter was the true cause of his bar. He states that Gelbstein allegedly asked him to "go practice elsewhere" and that Gelbstein was "conveniently, if not purposefully, not present in the Brooklyn TVB" on the morning of May 11, 2015. State Opp'n at 7.[27] Plaintiff's speculation is insufficient to overcome defendants' motions. See Perez de Leon-Garritt v. State Univ. of N.Y., 785 F. App'x 896, 899 (2d Cir. 2019) (summary order) (affirming summary judgment because plaintiff did not provide specific proof that defendants were motivated by retaliatory purpose). As there is no record evidence that plaintiff's letter to the AG motivated defendants to bar him from the TVB, I recommend that the State Defendants' motion for summary judgment should be granted.

## C. Injunctive Relief

Plaintiff's complaint also demands injunctive relief, to enjoin the State Defendants from denying plaintiff "the right to practice law in the [TVB]." Compl. at p. 21. Section 1983 provides, however, that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Plaintiff could have sought declaratory relief by filing an Article 78 proceeding in the New York Supreme Court. As was previously stated, plaintiff

---

[27] Plaintiff's conclusory conspiracy theory that Gelbstein and Traschen arranged for Smart to provoke plaintiff on the day he was barred is without any record support. See Calvo Dep. 11:8–12.

was well aware of Article 78 proceedings as he challenged his prior suspension. There is nothing in the record that reflects an Article 78 proceeding was unavailable to plaintiff regarding his bar from TVB. As he did not seek declaratory relief, his demand for injunctive relief should be denied.

## III. Defendant Smart

Defendant Smart moves for summary judgment on the grounds that he is not a state actor. The Court agrees. Smart, a private security guard, did not act under color of state law, and therefore, his motion for summary judgment should be granted.[28]

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege (1) the deprivation of rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was "committed by a person acting under the color of state law." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002). If a private individual's conduct is "fairly attributable to the State," that individual can be sued as a state actor under § 1983. Filarsky, 566 U.S. 838; see Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). There must be "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003), cert. denied, 539 U.S. 942 (2003). Indeed, private action may be deemed governmental when (1) private

---

[28] Smart also argues that he did not violate plaintiff's First Amendment rights. See Smart Memorandum of Law in Support ("Smart Supp. Mem.") at 11–13. As Smart was not acting under color of state law, the Court need not reach this argument. However, the Court notes that there is no evidence in the record to support plaintiff's conclusory assertions that Smart engaged in any retaliatory action against him.

actors are jointly engaged with state actors to deprive a person of constitutional rights, <u>Dennis v. Sparks</u>, 449 U.S. 24, 27–28 (1980); (2) where the state compels the act, <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982); (3) or when the state delegates a public function to a private entity, <u>West v. Atkins</u>, 487 U.S. 42, 55-56.

Generally, private security guards are not state actors. <u>Bishop v. Toys "R" Us—NY LLC</u>, 414 F. Supp. 2d 385 (S.D.N.Y. 2006); <u>Guiducci v. Kohl's Dept. Stores</u>, 320 F. Supp. 2d 35, 37-38 (E.D.N.Y. 2004) (collecting cases). However, private guards may be sued (1) "when they are given the authority of state law" or (2) "if they are willful participants in the joint activity of the State or its agents." <u>Id.</u> at 37. For example, a private security guard may act under state law if he is delegated state authority as a deputized "special patrolman," <u>see</u> <u>Rojas v. Alexander's Dep't Store, Inc.</u>, 654 F. Supp. 856, 858 (E.D.N.Y. 1986), or if he acts in tandem with police officers, <u>see</u> <u>Brooks v. Santiago</u>, No. 93 Civ. 206 (HB), 1998 WL 107110, at *4 (S.D.N.Y. Mar. 10, 1998). However, a private security guard providing information to police officers who then make an arrest does not constitute action under color of state law. <u>See</u> <u>Ginsberg v. Healey Car & Truck Leasing, Inc.</u>, 189 F.3d 268, 272 (2d Cir. 1999); <u>Orellana v. Macy's Retail Holdings, Inc.</u>, 2018 WL 3368716, at *18 (S.D.N.Y. July 1, 2018). Nor does the fact that a private employee works in a state building transform him into a state actor. <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 840 (1982).

Here, although Smart worked in a state building, he was employed by a private security company. Plaintiff argues that "if [Smart] was in fact a participant in the occurrences and decision that led to Plaintiff's administrative removal and preclusion from return to the TBV building, his conduct is automatically considered as part of the State's." ECF No, 258, Plaintiff's Opposition Memorandum to Smart's Motion ("Smart Opp'n.") at 2. That is not the law. Mere participation in an event that led to a state action does not confer the authority of state law on Smart.

Moreover, plaintiff fails to establish that Smart was involved in the decision to bar plaintiff from the TVB. Indeed, Smart was not even involved with removing plaintiff from the TVB. Plaintiff fails to show that Smart was compelled to act by the state on May 11, 2015, or that any public function was delegated to Smart. Plaintiff provides no evidence to support his theory that Smart was involved in the decision to bar him from the TVB. Plaintiff's "self-serving affidavit that merely reiterates conclusory allegations in affidavit form . . . [is] insufficient to preclude summary judgment." Pressley v. City of New York, No. 11-cv-3234 (PKC)(RER), 2016 WL 1271480, at *3 (E.D.N.Y. Mar. 31, 2016). Therefore, I recommend that the Court should grant defendant Smart's motion for summary judgment.

## IV. State Law Claims Defendants PEC Group of NYC, Inc. and Sadiq Tahir

Plaintiff's complaint contains two remaining state law claims: "filing a false report" against Tahir, Compl. at ¶¶ 89–94, and "negligent hiring and training" against PEC, the private security company that employed Smart, Compl. at ¶¶ 95–101. A Court may decline to exercise jurisdiction over state-law claims once it dismisses all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c). Both the Second Circuit and the Supreme Court have "held that when the federal claims are dismissed, the 'state claims should be dismissed as well.'" In re Merrill Lynch Ltd. Partnerships Litig., 154 F.3d 56, 61 (2d Cir. 1998) (quoting Gibbs, 383 U.S. at 726); see Valencia v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) ("'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors […] will point toward declining to exercise jurisdiction over the remaining state law claims.'") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). "[A]bsent exceptional circumstances," where federal claims are disposed of on summary judgment grounds, courts should abstain from exercising pendent jurisdiction. Rafano v. Patchogue-Medford School Dist., No. 06 Civ. 5367 (JFB) (ARL), 2009 WL 789440, at

19

*13 (E.D.N.Y. Mar. 20, 2009) (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986)). Here, there are no exceptional circumstances, and the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

## CONCLUSION

For the reasons set forth herein, it is respectfully recommended that defendants' motions for summary judgment should be granted and plaintiff's complaint should be dismissed. Plaintiff's state law claims should be dismissed without prejudice.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: February 1, 2022
      Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

MARIO H. CAPOGROSSO

                Plaintiff,         **MEMORANDUM & ORDER**

                                  18-CV-2710(EK)(LB)

        -against-

ALAN GELBSTEIN, in his individual
capacity; IDA TRASCHEN, in her
individual capacity; et al.,

                Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

      Plaintiff Mario Capogrosso, an attorney proceeding *pro
se*, brought this action pursuant to 42 U.S.C. §§ 1983 and 1988.
He alleges, among other things, that the defendants violated his
First Amendment rights when they permanently barred him from the
Traffic Violations Bureau ("TVB") for what they concluded was
his threatening behavior.  Compl., ECF No. 74.  Five defendants
moved for summary judgment.  ECF Nos. 178-179.[1]

      In a Report and Recommendation ("R&R") dated February
1, 2022, Magistrate Judge Bloom recommended that I grant the
defendants' motions in their entirety.  R&R, ECF No. 278.  She

---

[1] Defendants David Smart, Danielle Calvo, Alan Gelbstein, Ida Traschen,
and New York State Department of Motor Vehicles Commissioner Mark Schroeder
moved for summary judgment.  Defendants Sadiq Tahir and PEC Group of NY, Inc.
did not join in those motions.

also recommended that I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, against defendants Sadiq Tahir and PEC Group of NY, Inc. *Id.* at 19-20. Plaintiff filed timely objections, ECF Nos. 282-283, to which Defendants responded. *See* ECF Nos. 286, 288.[2] After reviewing the very comprehensive R&R, Plaintiff's objections thereto, and the parties' evidentiary submissions, I adopt the recommendation in its entirety. I grant Defendants' motions for summary judgment and decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. I write briefly to supplement the record with my views on two issues: the question of whether defendant Smart's conduct constituted state action, and the judicial or quasi-judicial immunity accorded to certain TVB employees.

## I.   Legal Standard on Review of Report & Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district

---

[2] Plaintiff filed one set of objections in a 65-page document, followed by supplemental objections. After Defendants responded, Plaintiff filed two replies. ECF Nos. 289-290. The State Defendants moved to strike ECF No. 289. *See* ECF No. 291. "[N]either the Federal Rules of Civil Procedure nor the Local Civil Rules of this Court . . . authorize litigants to file surreplies." *Prentice v. Port Auth. of N.Y. & N.J.*, No. 15-CV-738, 2017 WL 2271364, at *1 (E.D.N.Y. May 23, 2017). Plaintiff's sur-replies are also prohibited by Rule III(D)(1) of my Individual Rules because he did not request permission to file them. Accordingly, the motion to strike is granted. Both of Plaintiff's unauthorized filings, at ECF Nos. 289 and 290, are stricken.

court must review *de novo* those portions of an R&R to which a party has specifically objected. *Id.*; Fed. R. Civ. P. 72(b)(3); *see also Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) ("A proper objection is one that identifies the specific portions of the R&R that the objector asserts are erroneous and provides a basis for this assertion."), *aff'd*, 578 F. App'x 51 (2d Cir. 2014).

## II. Discussion

Plaintiff makes two primary objections to the R&R, neither of which has merit. *First*, he argues that Judge Bloom erred in concluding that defendant Daniel Smart, a private security guard working at the TVB, could not be liable under Section 1983 because he was not acting under color of state law when he allegedly participated in Plaintiff's removal from the TVB premises. *See* Objs. to R&R 63-64, ECF No. 282; R&R 17. *Second*, he argues that three of the defendants are not entitled to judicial or quasi-judicial immunity. *See* Objs. to R&R 60-62.

## A. Defendant Smart and the State Action Doctrine

As is often the case, the question of whether Smart acted under color of state law is tied up with the question of what he is alleged actually to have done. To prevail against Smart, Plaintiff must demonstrate not only that Smart was a "state actor" in the abstract, but also that the alleged constitutional deprivation was "caused by" Smart's ostensibly

3

official conduct.  *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v.
Sullivan*, 526 U.S. 40, 50 (1999).  Put differently, a Section
1983 plaintiff must show that the "*conduct* allegedly causing the
deprivation of a federal right" was "fairly attributable to the
state."  *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)
(emphasis added).[3]

   Private action is "fairly attributable" to the state
"in a few limited circumstances – including, for example,
(i) when the private entity performs a traditional, exclusive
public function; (ii) when the government compels the private
entity to take a particular action; or (iii) when the government
acts jointly with the private entity."  *Manhattan Cmty. Access
Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).  The mere fact
that a private company (such as the security company that
employed Smart) is operating pursuant to a government contract
does not make it a state actor.  *See, e.g.*, *Kach v. Hose*, 589
F.3d 626, 648 (3d Cir. 2009) (private security guard working at
a public school was not a state actor); *Rabieh v. Paragon Sys.
Inc.*, 316 F. Supp. 3d 1103, 1106, 1111 (N.D. Cal. 2018) (finding
no state action, and dismissing Section 1983 complaint, where
private security guards at federal building allegedly tackled
and handcuffed plaintiff).

---

[3] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

As an intuitive matter, it does seem likely that the power to throw people out of courthouses (or administrative-law facilities) is a public function.  But Smart is not alleged to have ejected the Plaintiff from anywhere, and Plaintiff has adduced insufficient evidence that Smart even had the power to do so.  On the contrary, as Smart points out, the undisputed fact that he *called the police* to have Plaintiff removed from the TVB would seem to suggest the opposite.  Smart Br. 7-8, ECF No. 178-1; *cf., e.g.*, *Rabieh*, 316 F. Supp. 3d at 1111 (allegations suggesting "that the security guards had some power to detain a person on the premises, temporarily confiscate personal property . . . , and place a person in handcuffs" were "insufficient under the public function test").

Here, Plaintiff's only meaningful evidence concerning Smart shows that he and Smart had multiple arguments and that on May 11, 2015, after a nebulously described "altercation," Smart left the building to get attention from the police and file a complaint.  Pl. Objs. to R&R 44-45; *see also* Workplace Abuse Report, ECF No. 214.  Plaintiff then was asked to, and did, leave the building.  Workplace Abuse Report.  Neither speaking to, nor filing a report with, the police constitutes a public function — *i.e.*, a function that is "traditionally the exclusive prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982).

5

Moreover, as Judge Bloom notes, Plaintiff has presented no evidence (beyond his own conclusory and self-serving allegations in an affidavit) that Smart's actions were compelled by the state, or that he participated in the later decision to bar Plaintiff from the TVB.  R&R 17-19, 17 n.28. Accordingly, I adopt the R&R's recommendation that I dismiss the claim against Smart on this basis.

**B.   Judicial and Quasi-Judicial Immunity**

Plaintiff also argues that defendants Danielle Calvo, Ida Traschen, and Alan Gebstein ("State Defendants") are not entitled to judicial or quasi-judicial immunity because their actions were not judicial, but rather administrative, in nature. Plaintiff's argument has no merit.

Judge Bloom correctly determined that each State Defendant is immune from suit arising from the decision to ban Plaintiff from continuing to practice in TVB administrative proceedings.  This attorney discipline was authorized under 15 N.Y.C.C.R.R. § 124.2(a), and it constituted a judicial action. *See Libertarian Party v. Cuomo*, 970 F.3d 106, 124 (2d Cir. 2020).  Defendant Gelbstein, an administrative law judge, is entitled to absolute judicial immunity because "ALJs enjoy absolute immunity from liability in damages for actions taken in their quasi-judicial capacity."  *Nash v. Califano*, 613 F. 2d 10, 15 (2d Cir. 1980).

6

Defendants Calvo and Traschen, too, are immune because they were acting in their respective capacities as a senior clerk at the TVB and First Assistant Counsel for the TVB. Though the record is somewhat thin concerning Taschen's job description as First Assistant Counsel, the available evidence indicates that her duties were closely related to the judicial process at the TVB. *See* Traschen Decl. ¶ 5 (duties included overseeing the DMV's Counsel's Office; overseeing safety hearings statewide; managing litigation; and overseeing compliance with Freedom of Information Law requests). This is enough. *See, e.g.*, *Jackson v. Pfau*, No. 10-CV-1484, 2011 WL 13127988, at *9 (N.D.N.Y. May 12, 2011) (actions of attorney in Division of Court Operations for the Office of Court Administration were judicial in nature), *aff'd*, 523 F. App'x 736 (2d. Cir. 2013). Accordingly, I adopt the R&R's recommendation and dismiss the claim against the State Defendants on the basis that they are immune from suit.

## C.   Other Objections

In Plaintiff's sixty-five pages of objections, the two arguments discussed above come through most clearly. Plaintiff's other objections are largely disorganized and conclusory.[4]   "[T]o trigger *de novo* review, even a *pro se* party's

---

[4] Where Plaintiff does point to specific portions of the R&R, he makes

7

objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate judge's report." *Klein v. City of New York*, No. 10-CV-9568, 2012 WL 546786, at *2 (S.D.N.Y. Feb. 21, 2012). "[W]hen the objections . . . make only conclusory statements, the court should review the Report and Recommendation for clear error." *Telfair v. Le Pain Quotidien U.S.*, No. 16-CV-5424, 2017 WL 1405754, at *1-2 (S.D.N.Y. Apr. 18, 2017). Having reviewed the remainder of Plaintiff's objections, and the R&R's treatment of the underlying issues, I find those objections to be without merit.

### III. Conclusion

Defendants' motions for summary judgment are granted. As recommended in the R&R, I also decline to exercise supplemental jurisdiction over Plaintiff's state-law claims against defendants Tahir and PEC Group of NY, Inc. Further, Defendants' motion to strike Plaintiff's unauthorized sur-replies (ECF Nos. 289 and 290) is granted. The Clerk of Court

---

conclusory objections such as, "I oppose this conclusion, it is not true," or "The record evidence creates a genuine issue as to material facts." *See, e.g.*, Objs. to R&R ¶¶ 2-31. In other places, his arguments do not refer to a specific potion of the R&R and are immaterial or nonsensical. *See, e.g.*, *id.* at 10 (arguing that there are triable issues of fact with respect to his threatening conduct or verbal abuse because "I affirm I like women, I like women, I like women. I affirm, woman make the party. I am dating two women currently and they both call me to take them out - so I must be doing something right").

is respectfully directed to enter judgment in Defendants' favor
and to close the case.

        SO ORDERED.


                                  /s/ Eric Komitee
                              ERIC KOMITEE
                              United States District Judge


Dated:     September 29, 2022
             Brooklyn, New York