### IN THE UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

---

# No. 22-2827

---

Mario H. Capogrosso,
Plaintiff-Counter-Defendant-Appellant,

v.

Alan Gelbstein, in his official and individual capacity, Ida Traschen, in her official
and individual capacity, Danielle Calvo, in her official and individual capacity,
PEC Group of NY, Inc., Mark J.F. Schroeder, Commissioner of the New York State
Department of Motor Vehicles,
Defendants - Appellees,

David Smart, Sadiq Tahir,
Defendants-Counter-Claimants-Appellees,

Boshra Vahdatlamas, in her official and individual capacity, AKA Bushra Vahdat,
Elizabeth Prickett--Morgan, in her official and individual capacity, Jean Flanagan,
in her official and individual capacity, Vincent Palmieri, in his official and
individual capacity, John and Jane Doe,
Defendants.

---

*Appeal from the United States District Court for the*
*Eastern District of New York, Docket No. 2:18-cv-02710-MKB-LB*
*From The Order Dated September 29, 2022*

---

### SPECIAL APPENDIX

---

Dated: March 7, 2023

Mario H. Capogrosso, Esq.
Appellant, Pro Se
21 Sheldrake Place,
New Rochelle, NY 10804
Tel: 914-806-3692
Email: nry4@aol.com

# TABLE OF CONTENTS

Report And Recommendations Dated January 30, 2019 Granting
In Part And Denying In Part Defendants' Motion To Dismiss; ECF 51     4

Order Dated September 25, 2019 Adopting Report And Recommendations
Dated September 15, 2019; ECF 71     34

Order Dated September 27, 2019 Denying Defendant Smart's Motion
For Pro Bono Counsel: ECF 72     67

Order Dated December 10, 2019 Denying Plaintiff's Right To
Question Witnesses At DMV; ECF 94     69

Order Dated January 10, 2020 Granting Adding DMV Commissioner
Mark Schroeder To Protective Order; ECF 104     70

Order Dated February 3, 2020 Denying Setting Aside Magistrate's
Order Precluding Plaintiff's Access To The TVB; ECF 108     71

Order Dated March 18, 2020 Regarding Depositions; ECF 118     75

Order Dated June 16, 2020 Regarding Depositions; ECF 131     76

Order Dated December 16, 2020 Denying Plaintiff's Motion To Compel
Depositions; ECF 148     77

Order Dated January 13, 2021 Requiring Defendant Smart To Respond
To Interrogatories; ECF 154     80

Order Dated January 25, 2021 Requiring Defendant Smart To Respond
To Interrogatories; ECF 159     84

Order Dated March 11, 2021 Regarding Smart Deposition And Request For
Sanctions; ECF 162     86

Report And Recommendations Dated February 1, 2022 Granting
Defendant's Motion For Summary Judgment ECF 278                    88

Order Dated September 29, 2022 Adopting Report And Recommendations
Dated February 1, 2022 Granting Defendant's Motion For Summary
Judgment ECF 293                                                   108

Order Dated September 30, 2022 Judgment Granting Defendant's Motion For
Summary Judgment ECF 294                                           117

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                  Plaintiff,

       -against-

ALAN GELBSTEIN, *in his official and individual
capacity*, BORSHIRA VAHDATLAMAS, *in her
official and individual capacity, also known as
Bushra Vahdat*, IDA TRASCHEN, *in her official
and individual capacity*, ELIZABETH
PRICKETT-MORGRAN, *in her official and
individual capacity*, JEAN FLANAGAN, *in her
official and individual capacity*, VINCENT
PALMIERI, *in his official and individual
capacity*, DANIELLE CALVO, *in her official
and individual capacity*, SADIQ TAHIR, *in his
individual capacity*, PEC GROUP OF NY, INC.,
DAVID SMART, and JOHN AND JANE DOE,

                  Defendants.
-------------------------------------------------------------X

**REPORT & RECOMMENDATION
18 CV 2710 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

      Attorney Mario H. Capogrosso, proceeding *pro se*, brings this civil rights action pursuant
to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and New York state law against nine individually
named defendants[1] as well as PEC Group of NY, Inc. and "John and Jane Doe." Plaintiff alleges
that the State Defendants retaliated against him for exercising his First Amendment rights and
deprived him of his constitutionally protected interest in representing clients at the Traffic
Violations Bureau ("TVB") without due process.

      The State Defendants move to dismiss plaintiff's complaint pursuant to Federal Rules of
Civil Procedure ("FRCP") 12(b)(1), 12(b)(5), and 12(b)(6). The Honorable Margo K. Brodie

---

[1] The named defendants are: Alan Gelbstein, Boshra Vahdatlamas, Ida Traschen, Elizabeth Morgan (formerly
Elizabeth Prickett-Morgan), Jean Flanagan, Vincent Palmieri, and Danielle Calvo (hereinafter the "State
Defendants"); plaintiff also names Sadiq Tahir and David Smart who are not state defendants.

referred the motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the State Defendants' motion to dismiss should be granted in part and denied in part.

## BACKGROUND

Plaintiff does not file this civil rights action on a blank slate. Plaintiff and defendants have a contentious history well-documented in plaintiff's prior state court lawsuit. ECF Nos. 45–46. The current motion includes several documents from the prior case. Plaintiff's instant complaint brings three causes of action against the State Defendants. He alleges that the State Defendants violated his constitutional rights by retaliating against him for his protected First Amendment activity. ECF No. 1., Complaint, ("Compl.") ¶¶ 70–75. He further alleges that the State Defendants violated his constitutional rights by depriving him of his property and liberty interest in practicing law at the TVB without due process. Id. ¶¶ 76–85. Finally, plaintiff seeks prospective injunctive relief to enjoin the State Defendants from barring him from representing clients at any TVB location. Id. ¶¶ 86–88.

Plaintiff is an attorney licensed in New York and Connecticut. Id. ¶ 2. The TVB is a division within the Department of Motor Vehicles, an agency of the State of New York; Administrative Law Judges ("ALJs") preside over TVB proceedings. Id. ¶ 4. Between April 2005 and May 11, 2015, plaintiff practiced law at various locations of the TVB, including the Brooklyn South Office ("Brooklyn TVB"). Id. ¶ 3. Plaintiff represented approximately 850 clients in TVB proceedings throughout this time period. Id. ¶ 6.

In 2012, plaintiff was suspended from "practicing his profession" at the TVB Courts due to complaints of misconduct. Id. ¶ 5. According to plaintiff, the complaints of misconduct "were never determined to be true as no hearings were ever held in response thereto and Plaintiff was

2

never given the opportunity to confront his accusers." Id. During his suspension, plaintiff learned that one of his accusers was David Smart, a security guard employed at the TVB. Id. Plaintiff filed an Article 78 proceeding challenging his suspension. The case was settled and plaintiff's suspension was lifted. See generally ECF No. 46-7. Plaintiff returned to representing clients at the TVB after completing an anger management course. Id.; Compl. ¶ 5.

Plaintiff alleges that although security guard Smart was employed by defendant PEC Group of NY, Inc., he was under the "direct supervision and control" of the TVB. Compl. ¶ 7. According to plaintiff, Smart subjected him to "constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance" which disrupted plaintiff's representation of his clients. Id. ¶ 8. Plaintiff reported Smart's conduct to defendant ALJ Alan Gelbstein; however, Gelbstein "refused to take any action on behalf of [plaintiff] to ensure that the disruptive and unlawful behavior of [Smart] would cease[.]" Id. ¶ 9.

On March 20, 2015, plaintiff wrote to New York State Assistant Attorney General defendant Elizabeth Morgan. Id.; ECF No. 46-7 ("Morgan Letter"). He complained about Smart and stated his frustrations with Gelbstein's alleged inaction regarding Smart. Id. Morgan failed to respond to plaintiff's letter or take any action. Id.

Plaintiff alleges that Gelbstein and defendant Danielle Calvo, clerk supervisor at the Brooklyn TVB, approached plaintiff in the Brooklyn TVB attorney's room on May 8, 2015 and said "[c]an't you go practice somewhere else . . . I saw what you wrote about me that I am complicit and incapable." Id. ¶ 10. On May 11, 2015, plaintiff claims that Smart approached him in an "aggressive and threating manner in an attempt to provoke [him] into a physical confrontation." Id. ¶ 11. According to plaintiff, Calvo and several New York City police officers approached plaintiff a few minutes later and told him that "he was no longer allowed at the [TVB] and that

[he] was to leave the building immediately." Id. Calvo told plaintiff to call defendant Ida Traschen, Assistant Counsel Legal Bureau for the State of New York Department of Motor Vehicles, for "further instructions." Id.

Plaintiff contacted Traschen later that day and was informed that he was "permanently barred from representing any clients in the future at any TVB locations throughout the State." Id. Plaintiff alleges that he called Traschen to seek clarification on May 12, 2015, May 26, 2015, August 4, 2015, August 7, 2015, August 10, 2015, August 12, 2015, and August 25, 2015. Id. ¶ 12. Plaintiff also wrote to several agencies but never received any clarification. See id. ¶¶ 13–14.

Plaintiff claims defendants that Bushra Vahdatlamas, Supervisory ALJ, as well as Jean Flanagan and Vincent Palmieri, TVB supervisors, acted with complete or deliberate indifference and/or ratified and condoned the alleged violation of plaintiff's constitutional rights. Id. ¶¶ 46, 55.

Plaintiff alleges that he has been denied due process as he has been barred from representing clients at the TVB since May 11, 2015. Id. ¶ 15. Moreover, plaintiff alleges that he has not been provided with a rationale as to why he is barred nor a list of his accusers and their complaints. Id.

## PROCEDURAL HISTORY

Plaintiff filed the instant complaint against defendants on May 8, 2018. ECF No. 1. Proof of service was filed for Calvo, Gelbstein, Morgan, and Smart on June 8, 2018 and for PEC Group of NY, Traschen, and Vahdatlamas on July 27, 2018. ECF Nos. 10, 24. Defendants Smart and Tahir answered plaintiff's complaint and raised a counterclaim against plaintiff. ECF Nos. 6–7. Smart and Tahir's counterclaims were dismissed on October 17, 2018. ECF No. 50. The instant fully-briefed motion was filed on October 11, 2018. The State Defendants move to dismiss

4

plaintiff's complaint under FRCP 12(b)(1) for lack of standing, under FRCP 12(b)(5) for failure to serve, and under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 44, ("Memo"). Plaintiff opposes the motion, ECF No. 47 ("Opp.") and the State Defendants have filed a reply, ECF No. 49 ("Reply").

## STANDARD OF REVIEW

For the purposes of this motion, the Court accepts the well-pleaded allegations in plaintiff's complaint as true and draws all reasonable inferences in favor of the non-moving party. Hayden v. Paterson, 594 F.3d 150, 157, n.4 (2d Cir. 2010) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

### I. Federal Rule of Civil Procedure 12(b)(1)

Motions to dismiss for lack of standing are governed by FRCP 12(b)(1). See Fed. R. Civ. P. 12(b)(1) (permitting dismissal for "lack of subject-matter jurisdiction"); Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (noting that a plaintiff must have standing under Article III of the Constitution to invoke a federal court's subject-matter jurisdiction). Plaintiffs bear the burden of proof of establishing that they have standing. Carter, 822 F.3d at 56 (plaintiffs have the burden of "alleg[ing] facts that affirmatively and plausibly suggest that [they] have standing to sue") (internal citations omitted). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice[.]" Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The court may also rely on evidence outside the complaint in deciding a Rule 12(b)(1) motion. Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted).

## II.    Federal Rule of Civil Procedure 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs., L.P. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006) (quoting Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)). Parties may challenge a lack of valid service by moving to dismiss pursuant to FRCP 12(b)(5).

Service of process is governed by FRCP 4. Rule 4(m) provides, in pertinent part, that:

> [i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). A party seeking an extension for good cause "bears a heavy burden of proof." Beauvoir v. U.S. Secret Serv., 234 F.R.D. 55, 56 (E.D.N.Y. 2006) (internal citation omitted). Courts in the Second Circuit determining good cause look to (1) the diligence and reasonableness of the plaintiff's efforts to serve, and (2) prejudice to the defendants from the delay. See Husowitz v. Am. Postal Workers Union, 190 F.R.D. 53, 57 (E.D.N.Y. 1999).

## III.    Federal Rule of Civil Procedure 12(b)(6)

### a.   Legal Standard

The purpose of a motion to dismiss for failure to state a claim under FRCP 12(b)(6) is to test the legal sufficiency of plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." Concord Assocs., L.P. v. Entm't Prop. Tr., 817 F.3d 46, 52 (2d Cir. 2016) (quoting Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d Cir. 2002)).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

### b. Matters Outside the Pleadings

As a threshold matter, the Court cannot consider documents outside the pleadings on a motion to dismiss. Therefore, many documents submitted by the State Defendants in support of their instant motion to dismiss should not be considered. Likewise, many documents attached to plaintiff's opposition should not be considered.

The Court may consider some materials extraneous to the complaint on a Rule 12(b)(6) motion, but "plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough[.]" Chambers, 282 F.3d at 153. "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Commc'n, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).

Here, the State Defendants' motion includes declarations with attached exhibits from Assistant Attorney Generals Mark Siegmund and Barbara Montena. Siegmund's Declaration attaches seven exhibits referencing plaintiff's prior litigation. ECF No. 46, Siegmund Declaration ("Siegmund Decl."). The Court may consider the exhibits from the prior state court proceeding, but not for the truth of the matters asserted. Ferrari v. Cty. of Suffolk, 790 F. Supp. 2d 34, 38, n.4

(E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."). Moreover, as plaintiff relies upon the Morgan Letter for his First Amendment retaliation claim, Compl. ¶¶ 42, 59, the Court may consider the letter. Chambers, 282 F.3d at 153 (a Court may consider a document that is integral to the complaint and that plaintiff relied upon in framing the complaint.).

The Siegmund and Montena Declarations as well as the exhibits attached to Montena's Declaration cannot be considered on the instant motion. These exhibits include complaints regarding plaintiff, copies of work place incident reports, an internal memorandum regarding plaintiff's conduct at the TVB, and an NYPD Incident Information Slip. See ECF No. 45, ("Montena Decl."). The State Defendants contend that all of the exhibits are "integral to Plaintiff's allegations that he was barred from the TVB[.]" Memo at 10, n.1. However, for a document to be considered "integral," the complaint must rely "heavily upon its terms and effect." Chambers, 282 F.3d at 153. "Merely mentioning a document in the complaint will not satisfy this standard; indeed even offering limited quotations from the documents is not enough." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (internal quotations and citations omitted). Although plaintiff mentions "complaints of misconduct" on one occasion, the Court cannot consider the exhibits that the State Defendants proffer on the instant motion. Accordingly, the Court declines to consider Exhibits 12–27 attached to the Montena Declaration. Chambers, 282 F.3d at 153.

With regard to plaintiff's response to the State Defendants' exhibits, courts generally do not consider matters raised for the first time in opposition to a motion to dismiss. Friedl v. City of N.Y., 210 F.3d 79, 83–84 (2d Cir. 2000). Accordingly, the Court does not consider the exhibits attached to plaintiff's declaration in opposition to the motion.

## IV.     Plaintiff is an Attorney

Although plaintiff filed this action *pro se*, he is an attorney and therefore he is not entitled to the solicitude afforded to *pro se* litigants. Leeds v. Meltz, 898 F. Supp. 146, 149 (E.D.N.Y. 1995), aff'd, 85 F.3d 51(2d Cir. 1996) (*pro se* attorney not entitled to liberality normally afforded to *pro se* litigants); Bliven v. Hunt, 478 F. Supp. 2d 332, 334 (E.D.N.Y. 2007) (same).

## DISCUSSION

## I.     Standing

The State Defendants contend that plaintiff does not have standing to bring this action. Standing is a "threshold question in every federal case" which "determin[es] the power of the court to entertain the suit." Davis v. Hain Celestial Grp., 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). The "irreducible constitutional minimum of standing" contains three elements that plaintiff must satisfy. Lujan, 504 U.S. at 560. First, plaintiff must show that he suffered an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical." Id. (internal citation and quotation marks omitted). Second, plaintiff must show that there is a "causal connection between the injury and the conduct complained of," or, in other words, that his injury is "fairly . . . traceable to the challenged action of [defendants.]" Id. (internal citation and quotation marks omitted). Third, plaintiff must show that his alleged injury "will be redressed by a favorable decision." Id. at 561 (internal citation and quotation marks omitted).

The State Defendants do not challenge that plaintiff satisfies the injury in fact or redressability elements of standing. See Memo at 20–21. The parties dispute whether plaintiff meets the causation element. The State Defendants argue that plaintiff lacks standing to seek

9

damages and injunctive relief because plaintiff was the primary cause of his own alleged injury. Id.

"Not every infirmity in the causal chain deprives a plaintiff of standing." St. Pierre v. Dyer, 208 F.3d 394, 402 (2d Cir. 2000). Although courts have denied standing in some cases because the injury was solely attributable to the plaintiff,

> [s]tanding is not defeated merely because the plaintiff has in some sense contributed to his own injury. . . . Standing is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain.

13 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3531.5 (3d ed. 2018). The causal chain can be broken where a plaintiff's self-inflicted injury results from his "unreasonable decision . . . to bring about a harm that he knew to be avoidable." St. Pierre, 208 F.3d at 403. However, "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing[.]" Id. at 402 (internal citation omitted).

Here, the State Defendants' conclusory statement that plaintiff's injury, being permanently barred from representing clients at any TVB location, was not due to "any illegal action by any of the State Defendants" is insufficient to defeat plaintiff's proffer of standing. Memo at 20. Although the State Defendants may argue that plaintiff caused his own injury, the Court cannot say on the instant record that plaintiff's injury is so completely due to plaintiff's own fault that his proffer of standing is defeated. Accordingly, the State Defendants' motion to dismiss for lack of standing under Rule 12(b)(1) should be denied.

## II. Service of Process on Flanagan and Palmieri

Next, the State Defendants argue that Flanagan and Palmieri were not timely served with process. Memo at 19–20. Plaintiff filed his action on May 8, 2018. See Compl. Plaintiff was

10

required to serve process on defendants by August 6, 2018. See Fed. R. Civ. P. 4(m); see also ECF No. 4 (order regarding the Rule 4(m) August 6, 2018 deadline). The Court's record does not reflect that defendants Flanagan and Palmieri were properly served within the Rule 4(m) deadline.

Plaintiff asserts that proof of service on Flanagan was filed on May 8, 2018. Opp. at 2. However, review of the Court's record shows that plaintiff is mistaken; no such affidavit of service was filed. In fact, the State Defendants reminded plaintiff to serve Flanagan and Palmieri, but plaintiff failed to do so. ECF No. 20 at 1, n.1 (notifying plaintiff that as of July 13, 2018, Flanagan and Palmieri had not yet been served and that perhaps plaintiff had served a different person named Jean Flanagan).

Plaintiff does not dispute that Palmieri was not served. Although plaintiff contends that Flanagan was served, the Court should grant the State Defendants' motion to dismiss this action against Flanagan and Palmieri for failure to properly and timely serve them. See Thomas v. N.Y.C. Dept. of Educ., 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal citation omitted); Hertzner v. U.S.P.S., No. 05 CV 2371, 2007 WL 869585, at *6 (E.D.N.Y. Mar. 20, 2007) (holding that plaintiff's failure to timely serve defendants deprived the Court of personal jurisdiction where "it was the attorney's inadvertence, neglect, mistake or misplaced reliance that resulted in service not being effected in a timely manner."). Accordingly, the State Defendants' motion to dismiss plaintiff's complaint under FRCP 12(b)(5) should be granted as to Palmieri and Flanagan.[2]

---

[2] In the alternative, the Court should *sua sponte* dismiss plaintiff's claims against Palmieri and Flanagan pursuant to FRCP 4(m).

### III.    Claims Under 42 U.S.C. § 1983

Plaintiff alleges that the State Defendants violated his constitutional rights by retaliating against him for his protected speech when they permanently barred him from representing clients at any TVB location throughout the state. Compl. ¶ 11. The State Defendants raise several grounds for dismissal including that plaintiff fails to plausibly allege defendants retaliated against him for any protected First Amendment activity, that plaintiff's conduct is not protected by the First Amendment, that there is no constitutional right to represent clients at the TVB, that plaintiff has no property or liberty interest subject to due process protection, and that defendants are entitled to absolute and/or qualified immunity. Memo at 16–33.

#### a.  Personal Involvement

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). To assert a Section 1983 claim "a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015) (internal citation and quotation marks omitted).

A plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation in order to state a claim for relief under Section 1983. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; Fowlkes v. Rodriguez,

12

584 F. Supp. 2d 561, 572 (E.D.N.Y. 2008) (discussing the necessity of personal involvement for damage claims against state officials) (citation omitted).

A supervisory official may be deemed to have been personally involved under Section 1983 in five circumstances: (1) if that official directly participated in the infraction; (2) if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong; (3) if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or (4) if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) if he or she was deliberately indifferent by failing to act on information that unconstitutional acts were continuing. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted); Raffaele v. City of N.Y., 144 F. Supp. 3d 365, 377 (E.D.N.Y. 2015) (citing the Colon factors). Supervisors may not be held liable under Section 1983 on the basis of respondeat superior. Iqbal, 556 U.S. at 676.

Here, plaintiff fails to plausibly allege that defendants Vahdatlamas and Morgan were personally involved in the decision to bar him from representing clients at the TVB.[3] Plaintiff's complaint alleges only that Gelbstein, Calvo, and Traschen were personally involved in the actions resulting in the injury he claims, being barred from representing clients at the TVB. See Compl. ¶¶ 38, 58. Plaintiff alleges that Gelbstein "actively participated in the decision to permanently bar plaintiff"; "ignored plaintiff's complaint about the conduct of Defendant Smart, [and] in fact encouraged Defendant Smart to continue to confront the Plaintiff in an attempt to 'bait the Plaintiff' into a physical response"; conspired with Calvo to summon the NYPD to remove plaintiff; and was motivated to take retaliatory action against plaintiff for the Morgan Letter. Id.

---

[3] As the Court recommends that defendants Flanagan and Palmieri should be dismissed on Rule 12(b)(5) grounds, Discussion, Part I, supra, the Court need not further consider plaintiff's claims against Flanagan and Palmieri. However, had Flanagan and Palmieri been properly and timely served, the claims against them would have been subject to dismissal for lack of personal involvement.

13

¶¶ 38, 40–42. Plaintiff alleges that Calvo "personally confronted" him with the decision to bar him and was motivated by retaliatory animus for plaintiff's comments in the Morgan Letter. Id. ¶¶ 58–59. Plaintiff alleges that Traschen "actively participated in the violation" by directly informing plaintiff that he was barred. Id. ¶ 49.

However, plaintiff alleges only that Vahdatlamas "in consultation" with the other State Defendants acted with "deliberate indifference and/or condoned and ratified said unconstitutional acts" Id. ¶ 46. The Court finds that the complaint fails to plausibly allege that Vahdatlamas was personally involved in the violation of plaintiff's rights.[4] Although plaintiff argues that "the Complaint makes clear that, without the actions of all the Defendants, the decision to bar him would not have been made," Opp. at 11, his allegations regarding Vahdatlamas are conclusory. See Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (conclusory allegations that a supervisor failed to monitor the actions of his subordinates is insufficient to establish personal involvement to support a finding of liability under Section 1983).

Similarly, the Court finds that plaintiff's allegations against Morgan fail to establish Morgan's personal involvement in the violation of plaintiff's rights. Plaintiff alleges that Morgan "failed to take any action to respond to [plaintiff's letter]," that she "conspired" with the other State Defendants to violate plaintiff's constitutional rights, and that she "treated the violation of Plaintiff's said constitutional rights with deliberate indifference and/or condoned and ratified the violation[s.]" Compl. ¶¶ 9, 52. These allegations are conclusory and fail to plausibly allege Morgan's personal involvement in the decision to bar plaintiff from representing clients at the TVB.[5] See Ridgeview Partners, LLC v. Entwhistle, 227 Fed. App'x 80, 81–82 (2d Cir. 2007)

---

[4] Similarly, plaintiff alleges only that Flanagan and Palmieri acted with "deliberate indifference and/or condoned and ratified the unconstitutional conduct." Compl. ¶ 55.
[5] Moreover, although the State Defendants assert that Morgan is entitled to absolute immunity, plaintiff only alleges Morgan's title in the Complaint, that she was an Assistant Attorney General for the State New York. On the instant

14

(summary order) (an official's refusal to consider or act upon a grievance is not conduct that violates the First Amendment.). Therefore, the State Defendants' motion to dismiss Vahdatlamas and Morgan should be granted as plaintiff's complaint against them fails to state a claim upon which relief can be granted.

## IV.    First Amendment Retaliation

"Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" Lane v. Franks, 573 U.S. 228, 235–36 (2014) (quoting Roth v. United States, 354 U.S. 476, 484 (1957)). The elements of a First Amendment claim under Section 1983 depend on the factual context of the case before the district court. Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008). To determine the elements required to state a First Amendment claim under Section 1983, the Court must first consider whether the claim is being made by a public employee or a private citizen. Compare Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (plaintiff was a private citizen) with Johnson v. Ganim, 342 F.2d 105, 112 (2d Cir. 2003) (plaintiff was a public employee). Although the elements of a public employee's claims are different than a private citizen's claims, many First Amendment cases muddle the standards. Moreover, the majority of First Amendment retaliation cases occur in the public employment context and a large number of private citizens' First Amendment retaliation cases concern land use. Plaintiff is a private citizen, but this is neither a public employment nor a land use First Amendment retaliation case. Compl. ¶¶ 18, 71.

---

record, the Court cannot determine whether Morgan would be entitled to absolute immunity. As the State Defendants' absolute immunity argument is only raised with regard to Morgan, and plaintiff's claims against Morgan should be dismissed for lack of personal involvement, the State Defendants' motion to dismiss based on absolute immunity should be denied without prejudice.

15

Where a private citizen asserts a First Amendment claim against a public official, the private citizen must allege: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right." Curley, 268 F.3d at 73. Retaliation claims that are "unsupported, speculative, and conclusory" may be dismissed on the pleadings. Corely v. City of N.Y., No. 14 Civ. 3202, 2017 WL 4357662, at \*19 (S.D.N.Y. Sept. 28, 2017) (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)).

The State Defendants argue that plaintiff fails to plausibly allege retaliation for any speech protected by the First Amendment. They argue that plaintiff's claim of retaliation is "unsupported, speculative, and conclusory" and add that plaintiff admitted that he knew that complaints had been made against him and that he would sometimes "throw a punch" in the TVB. Memo at 22. However, as plaintiff correctly argues, his protected speech refers to his March 20, 2015 letter to Morgan stating his frustration with Gelbstein's administration of the Brooklyn TVB and alleging Smart's harassment. Opp. at 6; Compl. ¶ 72. For the purposes of this motion, plaintiff's letter to Morgan is protected by the First Amendment. See McDonald v. Smith, 472 U.S. 479, 482 (1985) (The right to petition the government to redress grievances is "cut from the same cloth as the other guarantees of [the First Amendment] and is an assurance of a particular freedom of expression."); Velez v. Levy, 401 F.3d 75, 97 (2d Cir. 2005) ("the Supreme Court has said 'that speech critical of the exercise of the State's power lies at the very center of the First Amendment'") (quoting Gentile v. State Bar of Nev., 501 U.S. 1030, 1034 (1991)).

Turning to the second element of a retaliation claim, "[t]o establish a causal connection sufficient to survive a motion to dismiss, the 'allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action.'" Davis v. Goord, 320 F.3d 346, 354

16

(2d Cir. 2003) (discussing First Amendment retaliation in a non-public employee context). A causal connection is often shown circumstantially, through allegations that the retaliation occurred in "close temporal proximity" to the protected activity. See id. "[D]irect evidence of retaliation may consist of 'conduct or statements by persons involved in the decisionmaking [sic] process that may be viewed as directly reflecting the alleged retaliatory attitude.'" McAvey v. Orange–Ulster BOCES, 805 F. Supp. 2d 30, 40 (S.D.N.Y. 2011) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir. 1997) (brackets omitted)).

Here, plaintiff alleges that Gelbstein and Calvo were aware of the Morgan Letter. Compl. ¶¶ 9–10, 39–41. Plaintiff further alleges that Gelbstein and Calvo used the May 11, 2015 incident with Smart as a pretext for prohibiting plaintiff from representing clients at the TVB in order to retaliate against him for his protected speech. Id. The Complaint alleges that Gelbstein, Calvo, and Traschen barred plaintiff from the TVB a month and a half after he sent the letter to Morgan. Id. Although there is no bright line rule regarding temporal proximity, a month and a half falls within the temporal range sufficient to raise a plausible inference of a retaliatory motive. Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases); cf. Maco v. Baldwin Union Free School Dist., 726 Fed. App'x 37, 39 (2d Cir. 2018) (summary order) (discussing that a lapse of ten months does not support an inference of causation). Moreover, plaintiff alleges that Gelbstein and Calvo knew about his letter to Morgan and stated, "[c]an't you go practice somewhere else . . . I saw what you wrote about me that I am complicit and incapable." Compl. ¶ 10.

The third element of a retaliation claim requires a plaintiff to allege that the retaliatory "official conduct actually deprived them of that right" by either silencing them or having some "actual, non-speculative chilling effect on [their] speech." See Williams, 535 F.3d at 78 (internal

17

citation omitted). While "private citizens claiming retaliation for their criticism of public officials have [generally] been required to show that they suffered an 'actual chill' in their speech as a result[,] . . . in limited contexts, other forms of harm have been accepted in place of this 'actual chilling requirement.'" Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011) (citing Spear v. Town of W. Hartford, 954 F.3d 63, 68 (2d Cir. 1992) and Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002)); see also Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 431 (S.D.N.Y. 2013) ("Thus, while a plaintiff asserting a First Amendment retaliation claim must allege some sort of harm, it is not necessary for that harm to be a chilling of speech in every case.") (internal citation and quotation marks omitted).

Here, plaintiff alleges that the State Defendants barred him from representing clients at all TVB locations based on retaliation. Compl. ¶¶ 11, 15. Plaintiff sufficiently alleges that the State Defendants' retaliatory conduct adversely affected him. Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled speech is not the *sine qua non* of a First Amendment claim."); Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (discussing that in a private citizen context, "[w]here the retaliation is alleged to have caused an injury separate from any chilling effect . . . an allegation as to a chilling effect is not necessary to state a claim.").

Defendants reliance on Heller is misplaced. In Heller, plaintiff's alleged speech constituted threats and posed a risk of physical harm that was not protected by the First Amendment. Heller v. Bedford Cent. Sch. Dist., 665 Fed. App'x 49, 52–53 (2d Cir. 2016) (summary order). ("A review of the record confirms that defendants were interested in [plaintiff's] communications only insofar as they raised the prospect of a shooting spree at the high school."). The facts of this case are distinguishable. Plaintiff's allegedly threatening conduct is entirely separate from the protected speech he alleges: the Morgan Letter.

18

Taken together and construing all reasonable inferences in plaintiff's favor, as the Court must, defendant Gelbstein, Calvo, and Traschen's motion to dismiss plaintiff's First Amendment retaliation cause of action for failure to state a claim upon which relief can be granted should be denied. The motion should be granted with respect to defendants Vahdatlamas and Morgan.

## V.      Due Process

Plaintiff alleges that the State Defendants violated his right to due process because they deprived him of a "property and/or liberty interest" in representing clients at the TVB and failed to afford him a due process hearing or make his accusers known to him. Compl. ¶¶ 76–85. The State Defendants raise several grounds for dismissal including plaintiff does not have a due process right to practice law at the TVB, that plaintiff had an adequate post-deprivation opportunity to be heard, and that they are entitled to either absolute or qualified immunity. Memo at 16–19.

The Due Process Clause of Fourteenth Amendment provides that the state may not deprive an individual of property or liberty without due process. See U.S. Const. amend. XIV. To prevail on a due process claim, plaintiff must identify a constitutionally protected property or liberty interest and demonstrate that the government has deprived him of that interest without due process of law. Weinstein v. Albright, 261 F.3d 127, 134 (2d Cir. 2001). The due process clause of the Fourteenth Amendment protects one's liberty to pursue an occupation from certain kinds of state infringement. Cityspec, Inc. v. Smith, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009) ("The liberty interests protected by the Fourteenth Amendment include the freedom 'to engage in any of the common occupations of life.'") (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 572 (1972)).

19

### a. Property Interest

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577. To possess a property right in a benefit, there must be a "legitimate claim of entitlement to it," more than an abstract desire for it. Id. The Court discerns no legitimate claim to a property right here. As plaintiff does not have any type of contract to practice law at the TVB, nor does he cite to any statutory or constitutional authority establishing employment at the TVB, his expectation to continue representing clients at the TVB was subjective and insufficient to establish a property right. See Schwartz v. Mayor's Cmte. on the Judiciary of the City of New York, 816 F.2d 54, 57 (2d Cir. 1987) (holding that plaintiff's "subjective expectation" of reappointment to the judicial bench did not to establish a protected property right). Accordingly, plaintiff fails to establish that he has a protected property interest in representing clients at the TVB.

### b. Liberty Interest

As to a potential liberty interest, the Fourteenth Amendment secures the liberty to follow a trade, profession, or other calling. Cityspec, 617 F. Supp. 2d at 169. The Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. See Conn v. Gabbert, 526 U.S. 286, 291 (1999) (discussing that due process is implicated only if plaintiff is deprived of a "liberty interest in practicing law"). The Due Process Clause does not stretch so far as to secure the right to specific jobs. Cityspec, 617 F. Supp. 2d at 169 (The liberty interest conferred by the Fourteenth Amendment "is not broad as to protect the right to a particular job."). "It is well settled that one must have no ability to practice one's

20

profession at all in order to state a claim for deprivation of a liberty interest." Rodriguez v. Margotta, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999) (citations omitted).

Here, plaintiff's ban from the TVB did not prevent him from practicing law. Plaintiff's claim that the "right and ability to practice at the TVB is the equivalent of depriving him of the right to continue in his chosen profession" is without merit. Opp. at 8. Defendants did not deprive plaintiff of his license to practice; he was at liberty to continue his law practice elsewhere. Accordingly, plaintiff fails to establish that defendants deprived him of a protected liberty interest. See Roth, 408 U.S. at 575 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another.") (citing Cafeteria and Rest. Workers Union v. McElroy, 367 U.S. 886, 895–96 (1961)).

### c.  Post-Deprivation Opportunity to be Heard

Moreover, although plaintiff was not given a hearing prior to being barred from representing clients at the TVB, he could have challenged the bar by filing an Article 78 petition. "The opportunity to pursue an Article 78 proceeding in New York State Supreme Court constitutes a wholly adequate post-deprivation hearing for due process purposes." Rubin v. Swarts, No. 10 CV 4119, 2011 WL 1004838, at *4 (E.D.N.Y. Mar. 18, 2011) (discussing that an Article 78 proceeding in state court was the "proper forum" for a due process claim against the DMV). Although an Article 78 proceeding may not allow plaintiff to seek monetary damages, such a proceeding has still been held to "constitute[] a wholly adequate post-deprivation hearing for due process purposes." Locurto v. Safir, 264 F.3d 154, 176 (2d Cir. 2001) (dismissing Section 1983 claim alleging wrongful termination and seeking "monetary and injunctive relief" because plaintiffs could have brought an Article 78 proceeding). "[Plaintiff] cannot resuscitate its due process claim simply because an Article 78 proceeding is now barred by Article 78's four-month

statute of limitations." <u>Hellenic Am. Neighborhood Action Comm. v. City of N.Y.</u>, 101 F.3d 877, 881 (2d Cir. 1996).

Here, plaintiff could have commenced an Article 78 proceeding to contest his TVB ban. He clearly knew that such a proceeding was available to him as he had pursued an Article 78 proceeding after his suspension in 2011. He simply chose not to do so. Accordingly, even if the Court were to find that plaintiff had a protected property or liberty interest, plaintiff's due process claim would still be dismissed as he had the opportunity to pursue an adequate post-deprivation hearing by way of an Article 78 proceeding. <u>Rubin</u>, 2011 WL 1004838, at *4, n.4 (fact that plaintiff failed to commence an Article 78 proceeding within the four-month statute of limitations, "does not prevent this Court from taking into account the availability of such proceedings when determining whether he has been afforded due process.") (citation omitted).

**VI.     Prospective Injunctive Relief**

Plaintiff seeks prospective injunctive relief enjoining the State Defendants, in their official capacities, from excluding plaintiff from representing clients at the TVB Courts. Compl. ¶ 88. The State Defendants argue that because plaintiff's underlying substantive claims should be dismissed, plaintiff's third cause of action should also be dismissed. Memo at 33.

Under the <u>Ex Parte Young</u> doctrine, the Eleventh Amendment does not bar a plaintiff from suing a state official acting in his or her official capacity for prospective injunctive relief. <u>Ex Parte Young</u>, 209 U.S. 123, 155 (1908). "In determining whether the doctrine of <u>Ex parte Young</u> avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." <u>Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland</u>, 535 U.S. 635, 645 (2002) (internal citation and quotation marks omitted). The exception to Eleventh

22

Amendment immunity, however, does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law. Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of Young . . . to claims for retrospective relief") (citations omitted).

To the extent that plaintiff is claiming that he is entitled to retrospective relief, his claims against the State Defendants should be dismissed. However, to the extent that plaintiff is suing Gelbstein, Calvo, and Traschen in their official capacities, his request for prospective injunctive relief "enjoining State Defendants from barring him [from representing clients in TVB Courts] . . . in the future" satisfies the requirements for the exception to Eleventh Amendment immunity set forth in Ex Parte Young.

The State Defendants' motion to dismiss plaintiff's claims for prospective injunctive relief should be denied. On the instant record, the Court cannot dismiss plaintiff's prospective challenge to the bar prohibiting him from representing clients in all TVB Courts throughout the state. Although the State Defendants rely on plaintiff's record of previous disruptions for the bar, this may not be adjudicated on the instant motion. The instant motion cannot establish that the State Defendants' decision to ban plaintiff from representing clients at all TVB Courts was reasonable and necessary.[6]

---

[6] In Barrett v. Volz, No. 16 cv 209, 2016 WL 4082640, at *1 (D. Vt. Aug. 1, 2016), a protestor sought to enjoin defendants from enforcing an order which prohibited the public from attending a hearing regarding a gas pipeline easement. The Court reasoned that "[a]lthough [defendants'] could relatively easily identify the members of the public who have disrupted . . . [public proceedings in the past], [they] cannot prospectively exclude members of the public on that basis." Id. at *7 (quoting Huminski v. Corsones, 396 F.3d 53, 83–84 (2d Cir. 2005) (ruling that state officials' blanket denial of access to court proceedings to a protestor violated the First Amendment)). The Barrett Court stated that "[e]xclusion . . . requires an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Id. (internal citation and quotation marks omitted). The Barrett Court went on to state that the defendants' order prohibiting public attendance at a hearing violated plaintiff's rights because

23

Accordingly, the State Defendant's motion to dismiss plaintiff's claim for prospective injunctive relief should be denied with regard to Gelbstein, Calvo, and Traschen.[7]

## VII.     Conspiracy Under 42 U.S.C. §§ 1985 and 1986

To the extent that plaintiff alleges a conspiracy under Sections 1985 and 1986, the complaint should be dismissed. To state a claim under Section 1985, a plaintiff must allege with particularity "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). Particularly, "the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (citations omitted).

Similar to Section 1983, Section 1985 does not create any substantive rights but provides a "remedy for conspiracies to violate a person's right to equal protection of the laws." Soto v. Schembri, 960 F. Supp. 751, 760 (S.D.N.Y. 1997). see also Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (stating that, to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds[.]") (citation omitted). Although a plaintiff need not plead detailed factual allegations, the allegations in the complaint must be "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A Section 1985 conspiracy claim that is only supported by conclusory assertions cannot survive a motion to dismiss. Brito v. Arthur, 403 F. App'x 620, 621 (2d Cir. 2010) (summary order); Ganthier v. N. Shore-Long Island

---

it "neither target[ted] the previous disruptive behavior nor propose[d] anything other than a blanket prohibition in response to [defendants'] legitimate concerns." Id.

[7] Although the motion should be denied, it is unclear whether Gelbstein, Calvo, and Traschen are the proper state officials to lift the bar prohibiting plaintiff from representing clients at all TVB locations.

24

Jewish Health Sys., 298 F. Supp. 3d 342, 349 (E.D.N.Y. 2004) (dismissing plaintiff's Section 1985 claim because she failed to allege the elements of a conspiracy claim with particularity).

Plaintiff repeatedly alleges that defendants "conspired" against him, but he fails to allege facts to establish that the State Defendants' acted with any class-based discriminatory animus. See Dolan, 794 F.3d at 296 (dismissing Section 1985 claim because plaintiff did not satisfy the class-based animus requirement). As neither race nor class-based discriminatory animus is alleged, plaintiff's Section 1985 claim must be dismissed.

Moreover, because a Section 1986 claim must be predicated upon a valid Section 1985 claim, plaintiff likewise fails to state a claim under Section 1986. Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993); Gusler v. City of Long Beach, 823 F. Supp. 2d 98, 137 (E.D.N.Y. 2011). Accordingly, the State Defendants' motion to dismiss plaintiff's claims under Sections 1985 and 1986 should be granted.[8]

## VIII. Qualified Immunity

The State Defendants argue that they cannot be held individually liable for the federal violations alleged because they are entitled to qualified immunity. Plaintiff asserts that the Court must allow him to develop the facts before the Court can make such a determination. Opp. at 13.

Qualified immunity is an affirmative defense which typically "cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ., 33 F. Supp. 3d 158, 174 (E.D.N.Y. 2014) (citing Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983)). A court may find that immunity applies only when "the facts supporting the defense appear on the face of the complaint" and "it appears

---

[8] Plaintiff suggests discovery "shall reveal the extent of collusion between the various Defendants." Opp. at 5. However, "a plaintiff armed with nothing more than conclusions" may "not unlock the doors of discovery." See Iqbal, 556 U.S. 662, 678–79.

25

beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (citation omitted). Further, "in such situations, [a] 'plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.'" Id. at 437.

Qualified immunity "shields public officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For a constitutional right to be "clearly established" for purposes of determining whether an official is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent.*" Mollica v. Volker, 229 F.3d 366, 370–71 (2d Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (emphasis in original). Whether it was objectively reasonable for the official to believe that his or her acts did not violate plaintiff's rights has "its principal focus on the particular facts of the case." Kerman v. City of N.Y., 374 F.3d 93, 104 (2d Cir. 2004) (internal citation and quotation marks omitted). If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).

Here, the State Defendants circularly argue that they did not violate any of plaintiff's clearly established constitutional rights and that it was objectively reasonable for them "to believe that their actions were lawful." Memo at 23–24. The State Defendants fail to articulate the "clearly

26

established right" upon which they base their qualified immunity affirmative defense. Instead, they broadly assert that plaintiff "had *no* constitutional right to practice law at the TVB, to engage in violent or threatening behavior, or to an evidentiary hearing before being barred at the TVB." Memo at 44. Whereas the Court might agree with these assertions by the State Defendants, this does not resolve the question of whether plaintiff has alleged the violation of a clearly established right in this action. The State Defendants must do more than raise qualified immunity as a defense; they must articulate why plaintiff's claim fails to establish the violation of any clearly established law.

Moreover, although the State Defendants proffer voluminous complaints against plaintiff and cite his threatening conduct, these complaints cannot be considered on this motion to dismiss. As such, the Court cannot consider the State Defendants' professed safety concerns regarding plaintiff's conduct on this record. Accordingly, the State Defendants' qualified immunity defense is premature and their motion should be denied. See Pearson v. Callahan, 555 U.S. 223, 239 (2009) ("when qualified immunity is asserted at the pleading stage, the answer to whether there was a violation may depend on a kaleidoscope of facts not yet fully developed.") (internal citation omitted).

Although the State Defendants' list of plaintiff's claims that are not "clearly established law" misses the mark, the Second Circuit has described the "'chronic difficulty' of articulating the [clearly established] right with the appropriate specificity." African Trade & Info. Ctr. Inc. v. Abromaitis, 294 F.3d 355, 360 (2d Cir. 2003) (citing LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998)). "Few issues related to qualified immunity have caused more ink to be spilled than whether a particular right has been clearly established, mainly because courts must calibrate, on a case-by-case basis, how generally or specifically to define the right at issue." Golodner v. Berliner,

770 F.3d 196, 206 (2d Cir. 2014). For if the right is defined too narrowly, qualified immunity would be available in any situation. Id. On the other hand, if the right is defined too broadly, qualified immunity would rarely be available. Id.

Plaintiff's retaliation claim wades in the muddy First Amendment delta between public employees and private citizens. The parties do not point us to, nor has the Court found, case law on point with the facts presented herein. As few, if any, First Amendment retaliation cases involve private citizens in similar contexts to plaintiff here, it seems unlikely that the law was clearly established law in 2015 when plaintiff was barred from representing clients at TVB locations state-wide.

The Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." Kisela v. Hughes, 138 S.Ct. 1148, 1153 (2018) (*per curiam*) (internal citation and quotation marks omitted). In the instant case, the clearly established right could not be the very general right to be free from retaliation based on protected speech. See City of Escondido, Cal. v. Emmons, ___ S.Ct. ____ (2019) (*per curiam*) (in the Fourth Amendment context, "the Court of Appeals defined the clearly established right at a level of generality by saying only that the 'right to be free of excessive force' was clearly established . . . the Court of Appeals' formulation of the clearly established right was far too general."). However, the Circuit's decision in Huminski v. Corsones may be instructive.[9] 395 F.3d 53 (2d Cir. 2005) (although courthouses and the adjacent parking lots are non-public forums, notices of trespass barring a non-violent protestor from entering the grounds constituted an unreasonable restriction on plaintiff's First Amendment activity).

---

[9] This case may inform the parties' judgment regarding their qualified immunity arguments going forward.

28

As it is premature to rule on the State Defendants' entitlement to qualified immunity at this juncture, their motion to dismiss on grounds of qualified immunity should be denied.

## IX.    Leave to Replead

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may dismiss a plaintiff's claim without leave to amend for repeated failure to cure deficiencies by amendments previously allowed or for futility. Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty, 282 F.3d at 88 (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir.1991)).

Here, as plaintiff was not deprived of any property or liberty interest, plaintiff cannot state a due process claim. Moreover, as plaintiff's conspiracy claim is not based on any race or class-based discrimination, he cannot state a claim under Sections 1985 and 1986. Furthermore, plaintiff failed to timely serve Flanagan and Palmieri; plaintiff's claims against these defendants should be dismissed. As any amendment of these claims would be futile, leave to amend these claims should be denied.

However, should plaintiff request leave to amend his other claims against the remaining defendants in light of the Court's ruling, he should be granted leave to do so. See Loreley Financing v. Wells Fargo Secs., 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); Cresci v. Mohawk Valley Cmty. Coll., 693 Fed. App'x 21, 24–25 (2d Cir. 2017) (summary order) (reversing lower court and granting plaintiff, an attorney proceeding *pro se*, the opportunity to replead his First Amendment retaliation claim).

29

32

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the State Defendants' motion to dismiss should be granted in part and denied in part. The State Defendants' motion to dismiss should be granted as to plaintiff's due process and Sections 1985 and 1986 claims, as well as all claims against Vahdatlamas, Morgan, Flanagan, and Palmieri. The State Defendants' motion to dismiss plaintiff's First Amendment retaliation claim against Gelbstein, Calvo, and Traschen should be denied. Likewise, plaintiff's claims for prospective injunctive relief against Gelbstein, Calvo, and Traschen should be denied. The State Defendants' motion to dismiss based on qualified immunity should be denied without prejudice. Should this Report be adopted, plaintiff should be afforded fourteen days leave to file an amended complaint as set forth herein.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/ Judge Lois Bloom
_____
LOIS BLOOM
United States Magistrate Judge

Dated: January 30, 2019
     Brooklyn, New York

30

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

MARIO H. CAPOGROSSO,

                                    Plaintiff,

                    v.

ALAN GELBSTEIN, in his official and individual
capacity, BOSHRA VAHDATLAMAS, in her official
and individual capacity, A/K/A Bushra Vahdat, IDA
TRASCHEN, in her official and individual capacity,
ELIZABETH PRICKETT-MORGAN, in her official
and individual capacity, JEAN FLANAGAN, in her
official and individual capacity, VINCENT PALMIERI,
in his official and individual capacity, DANIELLE
CALVO, in her official and individual capacity, SADIQ
TAHRIR, in his individual capacity, PEC GROUP OF
NY, INC., DAVID SMART, and JOHN and JANE
DOE,

                                    Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-2710 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

    Plaintiff Mario H. Capogrosso, proceeding *pro se*, commenced the above-captioned

action on May 8, 2018, against Defendants Alan Gelbstein, Boshra Vahdatlamas, Ida Traschen,

Elizabeth Prickett-Morgan,[1] Jean Flanagan, Vincent Palmieri, Danielle Calvo, Sadiq Tahrir, PEC

Group of NY, Inc., David Smart, and John and Jane Doe.  (Compl., Docket Entry No. 1.)

Plaintiff alleges that Defendants, *inter alia*, violated his constitutional rights when they banned

him from representing clients in New York State traffic court proceedings.  (*Id.* ¶¶ 70–88.)  On

---

    [1] Defendant Elizabeth Prickett-Morgan has since changed her name to Elizabeth
Morgan.  (Defs. Mem. in Supp. of Defs. Mot. to Dismiss ("Defs. Mem.") 1, Docket Entry No.
44.)  Though Morgan's name has not been changed in the case caption, for the purposes of this
Memorandum and Order, the Court will refer to her as "Morgan."

October 11, 2018, Defendants Gelbstein, Vahdatlamas, Traschen, Morgan, Flanagan, Palmieri, and Calvo (the "State Defendants") moved to dismiss the Complaint for lack of subject matter jurisdiction, failure to state a claim, and insufficient service of process pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(5), and 4(m) of the Federal Rules of Civil Procedure.  (Defs. Mot. to Dismiss ("Defs. Mot."), Docket Entry No. 42; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 44.)  Plaintiff opposes the motion.  (Pl. Opp'n to Defs. Mot. ("Pl. Opp'n"), Docket Entry No. 41.)  On November 5, 2018, the Court referred the motion to Magistrate Judge Lois Bloom for a report and recommendation.  (Order dated Nov. 5, 2018.)  By report and recommendation dated January 30, 2019, Judge Bloom recommended that the Court grant in part and deny in part the State Defendants' motion to dismiss ("R&R").  (R&R, Docket Entry No. 51.)  On February 27, 2019, the parties filed timely objections to the R&R.  (Defs. Obj. to the R&R ("Defs. Obj."), Docket Entry No. 59; Pl. Obj. to the R&R ("Pl. Obj."), Docket Entry No. 60.)

For the reasons set forth below, the Court adopts the R&R and grants in part and denies in part the State Defendants' motion to dismiss.

## I.   Background

Plaintiff is an attorney licensed in New York and Connecticut.[2]  (Compl. ¶ 2.)  Between April of 2005 and May 11, 2015, Plaintiff represented clients at various locations of the Traffic Violations Bureau ("TVB") in the New York City metropolitan area.  (*Id.* ¶ 3.)  The TVB is a division of the Department of Motor Vehicles, an agency of the State of New York; Administrative Law Judges ("ALJs") preside over TVB proceedings.  (*Id.* ¶ 4.)  During this

---

[2]  The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

period, Plaintiff represented "approximately 850" clients at various TVB locations in connection with traffic tickets they had received.  (*Id.* ¶ 6.)

In December of 2011, due to "complaints of misconduct," Plaintiff was temporarily suspended from practicing law in the TVB courts.  (*Id.* ¶ 5.)  Plaintiff was permitted to resume practicing in the TVB courts several months later in accordance with a "Stipulation of Settlement."  (*Id.* ¶ 5.)  At some point during his suspension, Plaintiff learned that one of his "accusers" was David Smart, a security guard employed by a private company that contracts with the TVB.  (*Id.* ¶¶ 5, 7.)

Plaintiff alleges that "for a long period of time . . . [he] had been subjected to constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance" by Smart.  (*Id.* ¶ 8.)  Plaintiff reported this alleged harassment to Alan Gelbstein, the ALJ at the Brooklyn South Office of the TVB.  (*Id.* ¶ 9.)  On March 20, 2015, after ALJ Gelbstein had "refused to take any action" to address Smart's behavior, Plaintiff wrote a "formal letter of complaint" (the "March 2015 Complaint") to Elizabeth Morgan, an Assistant Attorney General in the Office of the New York Attorney General.[3]  (*Id.* ¶ 9; Letter to Elizabeth Morgan dated Mar. 20, 2015, Docket Entry No. 46-7.)  Plaintiff informed Morgan that ALJ Gelbstein "was either complicit, incapable or incompetent to handle the ongoing issues" Plaintiff was experiencing with Smart.  (Compl. ¶ 9.)  Morgan did not respond to the March 2015 Complaint. (*Id.*)  Plaintiff alleges that Morgan "failed to take any action to abate the harassing and unlawful

---

[3]  The Court considers the March 2015 Complaint in assessing the motion to dismiss because it is integral to the Complaint.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

conduct of Defendant Smart." (*Id.*)

Plaintiff further alleges that on May 8, 2015, Gelbstein and Danielle Calvo, the clerk supervisor in the Brooklyn South Office, approached Plaintiff while he was sitting in the attorneys' room. (*Id.* ¶ 10.) Gelbstein then said to Plaintiff, "[c]an't you go to practice somewhere else[.] I saw what you wrote about me that I am complicit and incapable." (*Id.*)

On May 11, 2015, three days after the confrontation with Gelbstein and Calvo, Smart approached Plaintiff "in an aggressive and threatening manner in an attempt to provoke . . . a physical confrontation." (*Id.* ¶ 11.) Plaintiff "refused to . . . engage . . . Smart." (*Id.*) Calvo then came over to Plaintiff, accompanied by several officers from the New York Police Department, and told Plaintiff "that he was no longer allowed at the [TVB] and that [he] was to leave the building immediately." (*Id.*) Calvo directed Plaintiff to place a telephone call to Ida Traschen, Assistant Counsel for the Legal Bureau of the DMV. (*Id.*) Plaintiff called Traschen that same day, who informed him that he "was permanently barred from representing any clients in the future at any of the TVB locations throughout the State." (*Id.*)

After their May 22, 2015 telephone conversation, Plaintiff placed a number of "follow[-]up calls" to Traschen to seek further clarification of the ban, but she did not answer his calls. (*Id.* ¶ 12.) In addition to his telephone calls, Plaintiff wrote letters to Traschen, as well as to various states agencies seeking an explanation as to why he had been banned from representing clients at all TVB locations. (*Id.* ¶ 13.) In response to his inquiries, Plaintiff was told that the agencies he contacted were either unable or unwilling to provide him with any clarification. (*Id.* ¶ 14.)

Plaintiff alleges that Vahdatlamas, a supervisory ALJ, "was in consultation with" other Defendants regarding Plaintiff's complaints about Smart and Gelbstein and "treated the violation

of Plaintiff's constitutional rights . . . with complete indifference and/or ratified and condoned said unconstitutional acts as a supervisory person." (*Id.* ¶¶ 45–46.) Plaintiff further alleges that Defendants Flanagan and Palmieri, TVB supervisors, failed to conduct any further inquiries into Calvo's conduct after learning that Plaintiff had been barred from the TVB courts "due to an alleged 'work place violence incident,'" and "reacted to the violations of Plaintiff's constitutional rights with deliberate indifference and/or condoned and ratified . . . unconstitutional conduct." (*Id.* ¶¶ 54–55.)

Plaintiff asserts that he "was never provided with the reasons or rationale" for his ban from representing clients at all TVB locations, which has remained in place since May 11, 2015, and "was not provided with any documentation as to the identity of his accusers, the particulars or the nature of any complaints against him, [or] . . . the opportunity to participate in a . . . hearing." (*Id.* ¶ 15.)

Based on these allegations, Plaintiff asserts three causes of actions against the State Defendants. First, Plaintiff alleges that the State Defendants violated his First Amendment rights by banning him form the TVB courts in retaliation for his March 2015 Complaint to Morgan. (*Id.* ¶¶ 70–75.) Second, he alleges that the State Defendants violated his Fourteenth Amendment rights by depriving him of his liberty and property interest in practicing law at the TVB courts without due process. (*Id.* ¶¶ 76–85.) Third, Plaintiff seeks prospective injunctive relief enjoining the State Defendants from barring him from practicing law at any TVB location in New York State. (*Id.* ¶¶ 86–88.) Plaintiff brings these claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. (*Id.* ¶ 1.)

As relief for these alleged violations, Plaintiff seeks (1) a declaratory judgment that the

State Defendants have violated his First and Fourteenth Amendment rights;[4] (2) prospective injunctive relief enjoining the State Defendants from prohibiting Plaintiff from practicing law at the TVB courts in New York State; and (3) compensatory and punitive damages.  (*Id.* ¶¶ 21–22.)

## II. Report and recommendation

By report and recommendation dated January 30, 2019, Judge Bloom recommended that the Court grant in part and deny in part the State Defendants' motion to dismiss.  (R&R 2.)

First, Judge Bloom recommended that the Court deny the State Defendants' motion to dismiss for lack of standing under Article III because their "conclusory statement that [P]laintiff's injury . . . was not due to 'any illegal action by any of the State Defendants' is insufficient to defeat [P]laintiff's proffer of standing."  (*Id.* at 10.)

Second, Judge Bloom recommended that the Court grant the motion to dismiss as to Palmieri and Flanagan for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure because neither Defendant was ever served.  (*Id.* at 11.)

Third, Judge Bloom recommended that the Court grant the motion to dismiss Plaintiffs' section 1983 claims as to Vahdatlamas and Morgan for failure to allege that either Defendant was personally involved in the alleged violations of Plaintiffs' rights.  (*Id.* at 12–15.)

Fourth, Judge Bloom recommended that the Court deny the motion to dismiss Plaintiff's First Amendment retaliation claim as to Gelbstein, Calvo, and Traschen for failure to state a claim upon which relief can be granted.  (*Id.* at 19.)  Judge Bloom found that Plaintiff had satisfied, for purposes of a motion to dismiss, the three elements of a First Amendment

---

[4]  The Complaint also seeks a declaratory judgment that the State Defendants violated Plaintiff's Fourth and Fifth Amendment rights.  (Compl. ¶¶ 21, 77.)  Because Plaintiff has not made any factual allegations to support either claim, to the extent Plaintiff brings such claims, the Court dismisses them for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

retaliation claim. (*Id.* at 16–18.)

Fifth, Judge Bloom recommended that the Court grant the motion to dismiss Plaintiff's procedural due process claim because Plaintiff has not alleged that Defendants deprived him of a constitutionally protected liberty or property interest. (*Id.* at 20–21.) In the alternative, Judge Bloom concluded that Plaintiff had an adequate post-deprivation opportunity to be heard, because he could have challenged the ban in an available state court proceeding. (*Id.* at 21–22.)

Sixth, Judge Bloom recommended that the Court deny the motion to dismiss Plaintiff's claim for prospective injunctive relief because Plaintiff's request "satisfies the requirements for the exception to Eleventh Amendment immunity set forth in *Ex Parte Young*," and because the "instant motion cannot establish that the State Defendants' decision to ban plaintiff from representing clients at all TVB Courts was reasonable and necessary." (*Id.* at 23.)

Seventh, Judge Bloom recommended that the Court grant the motion to dismiss Plaintiff's conspiracy claims under section 1985 and section 1986 because Plaintiff "fails to allege facts to establish that the State Defendants[] acted with any class-based discriminatory animus." (*Id.* at 25.)

Eighth, Judge Bloom recommended that the Court deny the motion to dismiss on qualified immunity grounds because the State Defendants "fail to articulate the 'clearly established right' upon which they base their qualified immunity affirmative defense." (*Id.* at 26–27.)

Finally, Judge Bloom recommended that the Court deny Plaintiff leave to amend his claims against Flanagan and Palmieri, as well as his due process claim and his claims under sections 1985 and 1986, as amendment of these claims would be futile. (*Id.* at 29.)

## III. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id*.; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain de novo review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758, (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

#### ii. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate

it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)); *see also Chau v. S.E.C.*, 665 F. App'x 67, 70 (2d Cir. 2016). The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

### iii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.[5]

### b.  Objections to the R&R

Plaintiff objects to Judge Bloom's recommendation that the Court dismiss his claims against Vahdatlamas and Morgan for failure to plausibly allege that they were personally involved in the alleged violations of Plaintiff's rights.  (Pl. Obj. ¶¶ 7–18, 28–29.)  In addition, Plaintiff objects to Judge Bloom's recommendations that the Court: (1) dismiss Plaintiff's due process claim, (*id.* ¶¶ 19–24); (2) dismiss Plaintiff's section 1985 claim, (*id.* ¶¶ 25–26, 31); and (3) deny Plaintiff leave to amend his First Amendment and civil rights claims, (*id.* ¶¶ 10, 30).[6]

The State Defendants object to Judge Bloom's recommendation that the Court deny their motion to dismiss for lack of standing.  (Defs. Obj. 2–5.)  In addition, the State Defendants object to Judge Bloom's recommendations that the Court: (1) deny the motion to dismiss Plaintiff's First Amendment retaliation claim as to Gelbstein, Calvo, and Traschen, (*id.* at 5–9), (2) deny the motion to dismiss on qualified immunity grounds, (*id.* at 10–13), and (3) deny the

---

[5]  Generally, in reviewing a *pro se* complaint, the Court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).  However, Plaintiff is an attorney.  (Compl. ¶ 2.)  Because "the rules afforded *pro se* litigants are not relaxed when that litigant is also an attorney . . . the Court need not construe [such a] plaintiff's pleadings liberally to raise the strongest arguments they suggest." *Harris v. Queens Cty. Dist. Attorney's Office*, No. 08-CV-1703, 2009 WL 3805457, at *3 (E.D.N.Y. Nov. 9, 2009) (citations and internal quotation marks omitted).

[6]  Plaintiff also purports to "object to [the R&R] taking the Defendants' representations of . . . fact as true."  (Pl. Obj. ¶¶ 5–6.)  However, as Plaintiff's objection is in fact to the Judge Bloom's recitation of Defendants' arguments and not to a finding or recommendation, it is not a valid objection and the Court declines to address it.  Plaintiff also argues Vahdatlamas and Morgan are not entitled to qualified immunity, but as Judge Bloom did not find they were, this is similarly not a valid objection to the R&R and the Court therefore declines to address it.  (*Id.* ¶ 27; R&R 14–15 n.5, 25–29.)

motion to dismiss Plaintiff's claim for prospective injunctive relief, (*id.* at 13–14).

The Court reviews these recommendations *de novo*.

### c. Unopposed findings and recommendations in the R&R

No party has objected to Judge Bloom's recommendation that the Court dismiss Plaintiff's claims against Flanagan and Palmieri for insufficient service of process. The Court therefore reviews this recommendation for clear error. Having reviewed the relevant portions of the R&R and finding no clear error, the Court adopts the recommendation pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the Court dismisses Plaintiff's claims against Flanagan and Palmieri.

### d. Standing

The State Defendants argue that Plaintiff lacks standing under Article III because Plaintiff's own conduct — not the State Defendants' — caused him to be banned from practicing in the TVB courts. (Defs. Mem. 11.)

In order to show standing, a plaintiff must establish three things: (1) an "injury in fact — an invasion of a legally protected interest which is . . . concrete and particularized and actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) redressability of the injury "by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see Pincus v. Nat'l R.R. Passenger Corp.*, 581 F. App'x 88, 89 (2d Cir. 2014) (describing the three elements of standing (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("[A] plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." (citing *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009))). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citations and internal quotation marks

omitted).

"[A] plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) (citing *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000)). "An injury is 'self-inflicted' so as to defeat standing only if 'the injury is so completely due to the plaintiff's own fault as to break the causal chain.'" *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (citation omitted) (quoting *St. Pierre*, 208 F.3d at 402). However, "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing." *St. Pierre*, 208 F.3d at 402 (quoting 13 Charles A. Wright et al., *Federal Practice and Procedure* § 3531.5 at 461 (2d ed. 1984)); *see also Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at *10 n.5 (E.D.N.Y. Sept. 9, 2013) ("Self-inflicted injury that results from a plaintiff's personal choices rather than a defendant's conduct will not confer standing." (citing *McConnell v. FEC*, 540 U.S. 93, 228 (2003), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010)) (citation omitted)); *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) ("A plaintiff cannot establish Article III standing to pursue a cause of action where that plaintiff is the primary cause of its own alleged injury." (citations omitted)).

Plaintiff contends that Defendants banned him from the TVB in direct response to his protected First Amendment activity. (Compl. ¶¶ 71, 74.) The State Defendants argue that Plaintiff lacks Article III standing because his ban from the TVB courts was "not because of any illegal action by any of the State Defendants," but rather was a result of Plaintiff's "violent, threatening and unprofessional conduct." (Defs. Mem. 11.) To support this argument, the State Defendants point to "the voluminous record of contemporaneous complaints and statements

regarding Plaintiff's conduct,"[7] (*id.*; *see also* Exs. 1–28, annexed to Decl. of Barbara Montena,

Docket Entry Nos. 45-1–28), which they argue "demonstrates that [Plaintiff] was barred from the

[TVB] because of his continued violent, threatening and unprofessional conduct, not in

retaliation for his letter to defendant Morgan," (Defs. Obj. 2).  The State Defendants further

assert that the "record demonstrates that Plaintiff was banned from the TVB . . . as a direct result

of[] his physical confrontation with security guard Smart," which was "the culmination of a long

and well-documented history of violent and offensive behavior by Plaintiff."  (*Id.* at 2–3.)  In

addition, in their objections to the R&R, Defendants rely on *Carter v. HealthPort Techs., LLC*,

822 F.3d 47, 57 (2d Cir. 2016), to assert that "Plaintiff may not merely 'rely on the allegations of

the [complaint]' in responding to evidence showing lack of Article III standing," and argue that

"Plaintiff's inability to 'come forward with evidence of [his] own to controvert' the . . . evidence

that his ban . . . was caused by his own . . . conduct confirms that he lacks Article III standing."

(*Id.* at 3 (citing *Carter*, 822 F.3d at 57 (citations omitted)).)  However, *Carter* provides no

support for Defendants' position.  In *Carter*, the Second Circuit held that "plaintiffs are entitled

to rely on the allegations in the [complaint] if the evidence proffered by the defendant . . . does

not contradict plausible allegations that are themselves sufficient to show standing."  *Carter*, 822

F.3d at 57.  While the statements proffered by the State Defendants may be used to support an

alternate theory of why the State Defendants banned Plaintiff from the TVB courts, they do not

directly contradict Plaintiff's plausible allegations that he was injured by the State Defendants.

At this stage of the proceedings, and on the current record, the Court cannot conclude that

Plaintiff's injury "is so completely due to [his] . . . own fault as to break the causal chain."  *St.*

---

[7]  Because the Court is assessing whether it has subject matter jurisdiction, it may rely on
documents outside the Complaint.  *See M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

*Pierre*, 208 F.3d at 402. Accordingly, the Court denies the State Defendants' motion to dismiss for lack of standing.

### e. Section 1983 claims

Plaintiff asserts two causes of action under section 1983 against the State Defendants for alleged violations of his constitutional rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment.

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Before discussing each claim, the Court determines whether Plaintiff has alleged personal involvement of the State Defendants.

### i. Personal involvement/supervisory liability

The State Defendants argue that Plaintiff fails to state a claim under section 1983 against Vahdatlamas, Traschen, and Morgan because Plaintiff has not adequately alleged that they were personally involved in violating his constitutional rights.[8] (Defs. Mem. 20–21.)

---

[8] The State Defendants also argue that Plaintiff has failed to adequately allege Palmieri and Flanagan's personal involvement in violating his rights. (Defs. Mem. 20–21.) Because the Court dismisses the claims against Palmieri and Flanagan on other grounds, the Court does not address whether Plaintiff has plausibly alleged their personal involvement in violating his constitutional rights.

"[T]he 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[A]ny complaint under [s]ection 1983 must plead specific facts that allege the personal involvement of each individual charged with violating [the plaintiff's] civil rights." *Doe v. City of New York*, No. 11-CV-3978, 2011 WL 3876990, at *2 (E.D.N.Y. Sept. 1, 2011) (citation omitted). "A defendant's supervisory authority is insufficient in itself to demonstrate liability under [section] 1983." *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)).

A plaintiff can demonstrate the personal involvement of a supervisory defendant by showing that:

> (1) [he or she] participated directly in the alleged constitutional violation, (2) [he or she], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) [he or she] created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom, (4) [he or she] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) [he or she] exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Brandon v. Kinter*, --- F.3d ---, ---, 2019 WL 4263361, at *10 (2d Cir. Sept. 10, 2019) (alterations in original) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Accordingly, "[i]n a damages suit brought pursuant to [section] 1983, supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." *Lewis v. Rawson*, 180 F. App'x 239, 240

(2d Cir. 2006) (internal quotation marks omitted) (quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)); *see also Cooper v. City of New York*, No. 17-CV-1517, 2019 WL 3642996, at *10 (E.D.N.Y. Aug. 5, 2019) (quoting same).

Plaintiff has not plausibly alleged that Morgan and Vahdatlamas were personally involved in the alleged violations of his constitutional rights. Plaintiff alleges that Morgan "failed to respond to Plaintiff's written complaint . . . [or] take any action to abate the [Plaintiff's harassment] by Defendant Smart," but the Complaint contains no factual allegations as to Morgan's involvement in the alleged response to the letter, i.e., Plaintiff's ban from the TVB, that is the basis for Plaintiff's section 1983 claims. (Compl. ¶ 9.) Plaintiff further alleges that after receiving the letter, Morgan "conspired with [other Defendants] . . . to cause or contribute to the violation of Plaintiff's [constitutional rights]," or, "[a]lternatively . . . treated the violation of Plaintiff's . . . constitutional rights with deliberate indifference and/or condoned and ratified the violation[s]." (*Id.*) These legal conclusions do not plausibly state a claim that Morgan was personally involved in the alleged violations of Plaintiff's constitutional rights.[9]

As to Vahdatlamas, Plaintiff alleges only that she "was in consultation" with other State Defendants regarding Plaintiff's complaints of Smart and Gelbstein's "misconduct," and "treated the violation of Plaintiff's constitutional rights . . . with complete indifference and/or ratified and condoned said unconstitutional acts as a supervisory person." (*Id.* ¶ 46.) Like the allegations against Morgan, these bare legal conclusions do not plausibly state a claim that Vahdatlamas was personally involved in the alleged violations of Plaintiff's constitutional rights.

---

[9] The State Defendants also argue that Morgan is entitled to absolute immunity because "as an attorney in the Office of the New York Attorney General, she has absolute immunity from any civil liability." (Defs. Mem. 22.) Because the Court dismisses the claims against Morgan on other grounds, the Court declines to address whether Morgan is entitled to absolute immunity.

Because Plaintiff has failed to plausibly allege that Morgan and Vahdatlamas were personally involved in violating Plaintiff's constitutional rights, the Court dismisses the claims against them.

As to Traschen, the Court finds that Plaintiff has adequately alleged her personal involvement. The State Defendants suggest that Plaintiff has only alleged that Traschen "ignored Plaintiff's phone calls and letters." (Defs. Mem. 21.) However, the Complaint specifically alleges that Traschen "actively participated in the violation of Plaintiff's constitutional rights . . . by directly informing . . . Plaintiff that he was no longer allowed to practice law in the TVB [c]ourts." (Compl. ¶ 49.) On a motion to dismiss, these allegations are sufficient to show that Traschen directly participated in the alleged violation. The Court therefore denies the State Defendants' motion as to this claim against Traschen.

### ii. First Amendment retaliation claim

The State Defendants argue that Plaintiff has failed to plausibly allege that they retaliated against him for any protected First Amendment activity. (Defs. Mem. 12–13.)

To prevail on a First Amendment retaliation claim, a plaintiff must show that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New* York, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Eyshinskiy v. Kendall*, 692 F. App'x 677, 677–78 (2d Cir. 2017); *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citation omitted); *Maco v. Baldwin Union Free Sch. Dist.*, 249 F. Supp. 3d 674, 678 (E.D.N.Y. 2017) ("Private citizens alleging retaliation for their criticism of public officials are generally required to show that they engaged in protected speech, persons acting under color

of state law took adverse action against them in retaliation for that speech, and
the retaliation resulted in actual chilling of their exercise of their constitutional right to free
speech." (citation and internal quotation marks omitted)), *aff'd*, 726 F. App'x 37 (2d Cir. 2018).

### 1. Protected speech

The First Amendment protects "the right of the people . . . to petition the government for
the redress of grievances."  U.S. Const. amend. I.  "The right to petition is . . . implicit in '[t]he
very idea of [republican] government,"  *McDonald v. Smith*, 472 U.S. 479, 482 (1985) (quoting
*United States v. Cruikshank*, 92 U.S. 542, 552 (1876)), and "allows citizens to express their
ideas, hopes, and concerns to their government and their elected representatives,"  *Borough of
Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011).  "A petition conveys the special concerns of
its author to the government and, in its usual form, requests action by the government to address
those concerns."  *Id.* at 388–89.  Because "speech critical of the exercise of the State's power lies
at the very center of the First Amendment,"  *Velez v. Levy*, 401 F.3d 75, 97 (2d Cir. 2005) (quoting
*Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991)), "'a section 1983 claim will lie where
the government takes negative action against an individual because of his exercise of rights
guaranteed' by the First Amendment,"  *Velez*, 401 F.3d at 97 (quoting *Friedl v. City of New York.*,
210 F.3d 79, 86–87 (2d Cir. 2000)); *see also Safepath Sys. LLC v. N.Y.C. Dep't of Educ.*, 563 F.
App'x 851, 857 (2d Cir. 2014) ("The rights to complain to public officials and to seek
administrative and judicial relief from their actions are protected by the First Amendment."
(quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir.
2002))).

Plaintiff plausibly alleges that he engaged in protected speech.  Plaintiff alleges that he
was banned from the TVB courts in response to his March 2015 Complaint to Morgan in her

capacity as an Assistant Attorney General in the New York State Office of the Attorney General.[10]  The March 2015 Complaint detailed Plaintiff's complaints about Smart and Gelbstein, both individuals employed at an office of a state agency.  (Mar. 2015 Compl.)  In the March 2015 Complaint, Plaintiff requested that Morgan "take any and all action to expedite and resolve these issues."  (*Id.*)  Plaintiff's March 2015 Complaint, in which he outlined his grievances against a state agency and asked a government official to address those grievances, is speech protected by the First Amendment.[11]  *See Safepath Sys. LLC*, 563 F. App'x at 857 (finding that plaintiff contractors engaged in protected speech when they "complain[ed] to" to the New York City Department of Investigation and the New York State Attorney General about city agency defendants' failure to comply with legal mandates).

---

[10]  The Complaint also asserts that "[a]t the time that Plaintiff published his letter of complaint . . . Plaintiff had an interest protected by the First Amendment, [i.e.,] . . . a right to practice his profession in the TVB court free from harassment, threat, and threat of violence." (Compl. ¶ 72.)  The Court agrees with the State Defendants that Plaintiff does not have a First Amendment right to practice law in the TVB courts.  *See Jacob & Meyers, LLP v. Presiding Justices of the First, Second, Third, and Fourth Judicial Dep'ts, Appellate Div. of the Supreme Court of the State of N.Y.*, 852 F.3d 178, 187–89 (2d Cir. 2017) ("Clients have First Amendment expressive rights for which litigation may provide a vehicle . . . .  We are not aware of any judicial recognition of such an interest, however, when it comes to the lawyer's generic act of pursuing litigation on behalf of any client . . . .  Of course, we do not question the right to petition a court, with the aid of a lawyer, for redress.  But in the context of for-profit law firms that serve their clients' interests as a business, that right belongs to the client, not the attorney.").  To the extent Plaintiff asserts a First Amendment retaliation claim on the basis that he has a constitutionally protected right to practice law in the TVB courts, the Court dismisses the claim.

[11]  The State Defendants argue that Plaintiff did not have a right protected by the First Amendment because the "violent and threatening behavior for which Plaintiff was banned is not protected by the First Amendment."  (Defs. Mem. 14.)  As Plaintiff's retaliation claim alleges that he was banned in response to the letter he sent to Morgan, the Court does not address this argument on the motion to dismiss.

## 2. Causation

The second element of a First Amendment retaliation claim requires a plaintiff to show that "the defendant's actions were motivated or substantially caused" by the plaintiff's First Amendment activity. *Dorsett*, 732 F.3d at 160. "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)); *see also Hampshire Recreation, LLC v. Vill. of Mamaroneck*, 664 F. App'x 98, 100 (2d Cir. 2016) (holding, in First Amendment retaliation case, that a "causal connection [is] established where protected activity is closely followed in time by [an] adverse action" (internal quotation marks omitted) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001))); *Gogol v. City of New York*, No. 15-CV-5703, 2017 WL 3449352, at *9 (finding, in a First Amendment retaliation case, that "temporal proximity is strong evidence of improper intent" (citation omitted)). "[D]irect evidence of retaliation may consist of 'conduct or statements by persons involved in the decision[-]making process that may be viewed as directly reflecting the alleged [retaliatory] attitude.'" *McAvey v. Orange-Ulster BOCES*, 805 F. Supp. 2d 30, 40 (S.D.N.Y. 2011) (alteration in original) (citation omitted) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997)). The Second Circuit "has declined to draw a bright line as to how close in time the [protected activity and the adverse action] must be" to establish the causation element of a First Amendment retaliation claim, and has "instead called on courts to exercise 'judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.'" *Brandon*, --- F.3d at ---, 2019 WL 4263361, at *14 (quoting *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2009)).

For purposes of the motion to dismiss, Plaintiff has established a causal link between his protected First Amendment activity and the State Defendants' actions banning him from the TVB courts. Plaintiff alleges that on May 8, 2015, seven weeks after Plaintiff sent the March 2015 Complaint, Gelbstein and Calvo approached him at the Brooklyn South Office of the TVB. (Compl. ¶ 10.) Gelbstein then stated, "[c]an't you go practice somewhere else[.] I saw what you wrote about me that I am complicit and incapable," (*id.*) — comments that not only indicate that Gelbstein and Calvo were aware of Plaintiff's letter and its contents, but that also "may be viewed as directly reflecting the alleged [retaliatory] attitude," *McAvey*, 805 F. Supp. at 40. Three days later, on May 11, 2015, Plaintiff was approached by Smart, who "attempt[ed] to provoke . . . Plaintiff into a physical confrontation." (*Id.* ¶ 11.) Despite Plaintiff's "refus[al] to engage" in a physical confrontation with Smart, Plaintiff was then approached by Calvo, who asked him to leave the building and informed him that he was no longer allowed at any TVB locations. (*Id.*) Later that same day, Plaintiff spoke to Traschen, who told him that he was "permanently barred from representing any clients in the future at any of the TVB locations." (*Id.*) Based on the circumstances of this case as alleged in the Complaint, the temporal proximity between Plaintiff's March 2015 Complaint and being banned from representing clients at all TVB locations is sufficient, on a motion to dismiss, to establish causation between Plaintiff's protected First Amendment activity and the State Defendants' actions.

In their objections to the R&R, the State Defendants argue that "neither temporal proximity nor Plaintiff's allegation regarding . . . [Gelbstein's] purported comment" are "sufficient to render his claim . . . plausible." (Defs. Obj. 5.) With respect to both claims, the State Defendants rely heavily on Plaintiff's "admitted physical confrontation with Smart," arguing that it was an "intervening event" that negates any inference of causation, and that "the

only plausible inference . . . is that, when Plaintiff was informed that he was being banned from the TVB because of his 'physical confrontation'" with Smart, that was "not mere pretext" but "the actual reason." (*Id.* at 6, 9.)

The State Defendants misconstrue the allegations in the Complaint. Plaintiff explicitly denies that he and Smart had a physical confrontation on the day Plaintiff was banned from the TVB courts, alleging instead that he "refused to engage" with Smart's attempt to bait him into a confrontation. (Compl. ¶ 11.) Furthermore, Plaintiff does not allege that he was ever told he was being banned because of an altercation with Smart. To the contrary, the Complaint states numerous times that Plaintiff was never given a reason for the ban, despite his efforts to obtain an explanation. (*Id.* ¶¶ 12–15, 83.)[12]

---

[12] The State Defendants also argue that there can be no inference of causation based on temporal proximity, because Plaintiff was previously banned from the TVB. (Defs. Obj. 7.) In support of this proposition, the State Defendants cite a few cases in which courts in this Circuit have found, in the employment context, that an inference based on temporal proximity is undercut where adverse employment actions began prior to a plaintiff's protected speech. (*Id.*) Primarily, the State Defendants cite a Second Circuit case, in which the Court of Appeals found no inference of retaliation where "the adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline' which began when [the employer] . . . diminished [the plaintiff's] . . . job responsibilities *a full five months prior* to his filing of the EEOC charges." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (emphasis in original). However, the cases cited by the State Defendants are distinguishable from the facts before the Court.

Plaintiff was previously suspended from the TVB courts in response to complaints of misconduct, and then subsequently permitted to resume his practice after fulfilling the agreed-upon terms. (Compl. ¶ 5.) Unlike in *Slatterly*, where the employee filed his complaint amid continuously escalating adverse consequences, Plaintiff sent the March 2015 Complaint several years after his prior disciplinary action had been settled. 248 F.3d at 95. The State Defendants' suggestion that Plaintiff's 2011 ban categorically and indefinitely precludes him from establishing causation based on temporal proximity in a retaliation claim such as this one is unpersuasive.

### 3. Injury

The third element of a First Amendment retaliation claim requires a plaintiff to show that "the defendant's actions caused [plaintiff] some injury." *Dorsett*, 732 F.3d at 160 (citing *Curley v. Vill. of Suffern*, 286 F.3d 65, 73 (2d Cir. 2001)). A plaintiff is not required to show that his "speech has been adversely affected by the government retaliation," and can instead show "that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160.

Plaintiff has plausibly alleged that the State Defendants' actions caused him injury. Plaintiff "practiced law almost exclusively" in the TVB courts over a ten-year period. (Compl. ¶ 3.) As a result of the State Defendants' actions, Plaintiff has been barred indefinitely from representing clients in any of the TVB courts across the State of New York. This is a concrete harm for the purposes of a First Amendment retaliation claim.

The Court finds that Plaintiff has plausibly alleged a First Amendment retaliation claim as to Gelbstein, Calvo, and Traschen. Accordingly, the Court denies the motion to dismiss Plaintiff's First Amendment retaliation claim as to these Defendants.

### iii. Due process claim

Plaintiff also raises a procedural due process claim, claiming that he "enjoyed a property and/or liberty interest in his right to practice law and earn a living" in the TVB courts. (*Id.* ¶ 78.) Plaintiff asserts that the State Defendants deprived him of that protected interest without due process when they "failed to adequately apprise [him] of the reasons for his arbitrary dismissal . . . [or] to inform [him] that he was entitled to a hearing and [to] confront any accusers." (*Id.* ¶ 83.)

The State Defendants argue that Plaintiff cannot state a due process claim because he "does not have a protected liberty or property interest in continuing to practice law at the TVB." (Defs. Mem. 17.) In addition, the State Defendants argue that even if Plaintiff did have a

protected interest in his TVB court practice, the DMV's "exercise of discretion" in enforcing its regulation against Plaintiff cannot support a due process claim and, further, Plaintiff had an adequate post-deprivation opportunity to be heard because he could have pursued an available remedy in the state courts. (*Id.* at 17–19.)

The Constitution imposes "constraints," ordinarily in the form of notice and a pre-deprivation hearing, on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause" of the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015) (citing *Mathews*, 424 U.S. at 332). Because the requirements of procedural due process "apply only to the deprivation of interests encompassed by the [Constitution's] protection of liberty and property" and because "the range of interests protected by procedural due process is not infinite," *see Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972), the "first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty,'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). If the court finds that the plaintiff has been deprived of such an interest, it evaluates whether the government's procedures comport with due process. *See id.*

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 576. Such a claim is "created and . . . defined by existing rules or understandings that stem from an independent source such as state law." *Polito v. City of New York*, No. 15-CV-2301, 2016 WL 3676425, at *4 (E.D.N.Y. Jul. 7, 2016) (quoting *Roth*, 408 U.S. at 577).

"The liberty interests protected by the Fourteenth Amendment include the freedom 'to

engage in any of the common occupations of life.'" *Roth*, 408 U.S. at 572 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). However, "the Supreme Court, [the Second] Circuit, and the other Circuits addressing the issue have all indicated that the right of occupational choice is afforded Due Process protection only when a plaintiff is 'complete[ly] prohibit[ed]' from engaging in his or her chosen profession." *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (alterations in original) (quoting *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)); *see also Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009) ("[I]t is only when the challenged action effectively prohibits one from engaging in a profession, or pursuing any job in a given field that there is a deprivation entitled to protection."). The Fourteenth Amendment does not "protect the right to a particular job." *Cityspec, Inc.*, 617 F. Supp. 2d at 169.

Plaintiff does not allege facts that would establish either a property or liberty interest. Plaintiff does not suggest any basis for a legitimate claim of entitlement to his continued representation of clients in the TVB courts. That "the effect of the [ban] . . . is that the Plaintiff's long and chosen career path [—] lawyering at the TVB [—] has been eliminated," (Pl. Opp'n 7), does not establish that he had anything more than "an abstract need . . . desire . . . [or] unilateral expectation" that he be able to continue his traffic court practice. *Roth*, 408 U.S. at 576.

Plaintiff has similarly not established that he has been deprived of a protected liberty interest. In imposing the TVB ban, the State Defendants did nothing to prohibit Plaintiff from practicing law anywhere other than the TVB courts. Plaintiff himself notes that "[w]hile he potentially could work elsewhere within the same field, [Plaintiff] has an established client base and has created a career at TVB." (Pl. Opp'n 7–8.) In his objections to the R&R, Plaintiff states that he "is not a[t] liberty to practice elsewhere" because he will be required to explain the basis for his expulsion from the TVB courts if he seeks admission to practice in any state or federal

jurisdiction, and is unable to do so.  (Pl. Obj. ¶ 22.)  However, Plaintiff does not cite to any authority to support his claim that this constitutes a complete ban from the profession for the purposes of due process analysis.

Because Plaintiff has not plausibly alleged a protected property or liberty interest in his law practice before the TVB courts, the Court grants State Defendants' motion and dismisses the due process claim.

### f.  Sections 1985 and 1986 conspiracy

The State Defendants argue that Plaintiff's claims under sections 1985 and 1986 should be dismissed because the allegations are conclusory and because Plaintiff "fails to allege any class-based, invidiously discriminatory animus."  (Defs. Mem. 13–14.)

In response, Plaintiff argues that his "allegations . . . are more than detailed enough to assert more than conclusory assertions of discovery," and asserts his belief that "the extent of the collusion between the various Defendants" will be revealed through discovery.  (Pl. Opp'n 5.)

To state a claim for conspiracy in violation of section 1985(3), a plaintiff must allege (1) a conspiracy, (2) with the intent or purpose to deprive a person of equal protection of the law, (3) an act in furtherance of the conspiracy, (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right.  *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015); *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000).  "In order to maintain an action under [s]ection 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation and internal quotation marks omitted).  In addition, a plaintiff must allege that she is a member of a protected class and that the conspirators acted with class-based discriminatory motivation.  *See*

*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006); *Ali v. Connick*, 136 F. Supp. 3d 270, 277 (E.D.N.Y. 2015).

"[Section] 1986 provides a cause of action against anyone who, 'having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so.'" *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d at 1085, 1088 (2d Cir. 1993) (citation omitted). Thus, "a [section] 1986 claim must be predicated on a valid [section] 1985 claim." *Id.*; *Kalamaras v. Cty. of Nassau*, No. 17-CV-1068, 2019 WL 4452281, at *13 (E.D.N.Y. Sept. 16, 2019) (same).

Plaintiff's conclusory statements that the State Defendants "conspired" against him do not state a claim under sections 1985 or 1986. (Compl. ¶¶ 10, 12, 14.) More fundamentally, Plaintiff does not allege any facts to suggest that the State Defendants acted with any class-based discriminatory motivation. In his objection to the R&R, Plaintiff argues that he has alleged the required discriminatory intent because he is "an Italian American . . . in a Jewish community of lawyers and judges." (Pl. Obj. ¶ 26.) However, Plaintiff has not alleged any facts to suggest that Defendants' conduct was motivated by his identity as an Italian American. *See Radin v. Tun*, No. 12-CV-1393, 2015 WL 4645255, at *12 (E.D.N.Y. Aug. 4, 2015) (adopting report and recommendation) (finding plaintiff failed to state a claim under section 1986 because she did "not allege any discernable connection between her membership in a protected class and her federal claims"). Because Plaintiff has not stated a claim for conspiracy under section 1985, Plaintiff also fails to state a claim under section 1986. Accordingly, the Court dismisses Plaintiff's claims under sections 1985 and 1986.

### g. Prospective injunctive relief

In his third cause of action, Plaintiff seeks prospective injunctive relief enjoining the

State Defendants, in their official capacities, from "excluding . . . [Plaintiff] from practicing law in any TVB [c]ourt in . . . the State of New York." (Compl. ¶ 88.)

The Eleventh Amendment bars suits in federal court against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States cannot be sued by private individuals in federal court." (citation omitted)); *Browdy v. Karp*, 131 F. App'x 751, 752–53 (2d Cir. 2005) ("To the extent [the plaintiff] sues defendants in their official capacity as employees of [a state agency] his . . . claims for money damages are barred by the Eleventh Amendment." (internal quotation marks omitted) (first citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); and then citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984))). "However, 'a plaintiff may sue a state official acting in his official capacity [—] notwithstanding the Eleventh Amendment [—] for prospective, injunctive relief from violations of federal law.'" *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)) (finding that plaintiffs' claims for injunctive relief to remedy state defendants' alleged ongoing retaliation for plaintiffs' political affiliation and union membership were not barred by the Eleventh Amendment); *see D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 352 (S.D.N.Y. 2017) ("[T]o the extent that claims are brought here against a defendant in an official capacity, state officers may be properly sued in that capacity for prospective relief under the doctrine of *Ex parte Young*."); *Ali v. Hogan*, No. 12-CV-104, 2013 WL 5503321, at *9 (N.D.N.Y. Sept. 12, 2013) ("[U]nder the doctrine of *Ex Parte Young* . . . a suit may proceed against a state official in his or her official capacity — notwithstanding the Eleventh Amendment — when a plaintiff '(a) alleges an ongoing

violation of federal law and (b) seeks relief properly characterized as prospective.'" (quoting *In re Deposit Ins. Agency*, 482 F.3d at 618)); *see also In re Deposit Ins. Agency*, 482 F.3d at 618 ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))).

The State Defendants argue that Plaintiff's claim for prospective injunctive relief should be dismissed because he has failed to plausibly allege his underlying substantive claims, and therefore does not allege an "ongoing violation of federal law." (Defs. Mem. 24; Defs. Obj. 13–14.) Because the Court finds that Plaintiff has plausibly alleged that Gelbstein, Calvo, and Traschen violated his First Amendment rights when they banned him from the TVB courts, and the ban remains in place indefinitely, Plaintiff has alleged an ongoing violation of federal law and Plaintiff's claim for injunctive relief is proper under *Ex Parte Young*.

Accordingly, the Court denies the motion to dismiss Plaintiff's claim for prospective injunctive relief.

### h. Qualified Immunity

"Qualified immunity protects officers from suit so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) ("Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for

29

the defendant to believe that his action did not violate such law." (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007))).

Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231–32 (2009)). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion" to dismiss, but "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if 'the facts supporting the defense appear on the face of the complaint.'" *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004)). As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* (quoting *McKenna*, 386 F.3d at 436).

The State Defendants argue that they are entitled to qualified immunity because "to the extent" they were "personally involved in the DMV's decision to permanently ban Plaintiff from the TVB in 2015 for his violent and threatening behavior, they did not violate any of Plaintiff's clearly established constitutional rights." (Defs. Mem. 23.) Defendants further argue that Plaintiff has not "demonstrat[ed] a violation of any clearly established constitutional rights, [because] Plaintiff had *no* constitutional right to practice law at the TVB, to engage in violent and threatening behavior, or to an evidentiary hearing before being barred from the TVB." (*Id.* at 24 (emphasis in original); *see also* Defs. Obj. 11 ("In any event, Plaintiff failed to demonstrate the violation of a clearly established right because the law was clear when Plaintiff was banned

30

from the TVB . . . that no constitutional rights are violated if a person is banned from a judicial or quasi-judicial forum for violent or offensive behavior.").)

The State Defendants' arguments frame the question of whether Plaintiff has alleged a violation of clearly established rights based not on Plaintiff's allegations, as they must on a motion to dismiss, but instead on the State Defendants' view of the facts. Furthermore, the State Defendants' arguments rely on facts not properly before the Court on a motion to dismiss. Beyond referencing the "complaints of misconduct" that led to Plaintiff's temporary suspension from the TVB in 2011, (Compl. ¶ 5), the Complaint contains no facts regarding Plaintiff's alleged history of violent or offensive behavior at the TVB, nor does it rely on any of those complaints of misconduct to state the claims in the Complaint. The appropriate inquiry is whether the Court can find, at this stage of the litigation, that the State Defendants did not violate any of Plaintiff's clearly established constitutional rights when they banned him from the TVB in retaliation for his protected First Amendment speech, as alleged in the Complaint. If Plaintiff succeeds in demonstrating the State Defendants retaliated against him for his protected First Amendment speech, the Court may find at that point that the State Defendants violated Plaintiff's clearly established constitutional right. *See Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 342 (S.D.N.Y. 2015) ("[The] right imperiled by [Defendants] . . . was well-ingrained at the time of disputed conduct. Retaliation claims have long been a fixture of First Amendment law.")

Because the Court cannot determine based on the Complaint that the State Defendants' conduct did not violate clearly established law of which a reasonable person would have known, the Court denies without prejudice the motion to dismiss on qualified immunity grounds.

### i. Leave to amend

Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely

give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The

Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference

for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir.

2011) (citation omitted). Leave to amend should be given "absent evidence of undue delay, bad

faith or dilatory motive on the part of the movant, undue prejudice to the opposing party,

or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see*

*also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17,

2012) (quoting *Monahan*, 214 F.3d at 283). However, motions to amend "should generally be

denied in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d

Cir. 2008).

The Court grants Plaintiff leave to amend the Complaint as to Morgan's and Vahdatlamas's

personal involvement in the alleged violation of Plaintiff's First Amendment rights, as well as to

Plaintiff's claims against Palmieri and Flanagan. The Court finds that amendment would be

futile as to Plaintiff's due process and conspiracy claims against all State Defendants.

Accordingly, the Court denies Plaintiff leave to amend these claims. Plaintiff must file any

amended complaint within thirty (30) days of this Memorandum and Order.

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part the State

Defendants' motion to dismiss. The Court grants the motion to dismiss as to Plaintiff's due

process and section 1985 and section 1986 claims, as well as all claims against Vahdatlamas,

Morgan, Flanagan, and Palmieri. The Court denies the motion to dismiss for lack of standing.

The Court also denies the motion to dismiss Plaintiff's First Amendment retaliation claim and

claim for prospective injunctive relief against Gelbstein, Calvo, and Traschen. Finally, the Court

32

denies without prejudice the motion to dismiss on qualified immunity grounds.  The Court grants

Plaintiff leave to file an amended complaint within thirty (30) days of this Memorandum and

Order.


Dated:  September 25, 2019
          Brooklyn, New York

                                   SO ORDERED:


                                   _____s/ MKB_____
                                   MARGO K. BRODIE
                                   United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

MARIO H. CAPOGROSSO,

                                    Plaintiff,

                    v.

ALAN GELBSTEIN, in his official and individual
capacity, BOSHRA VAHDATLAMAS, in her official
and individual capacity, a/k/a Bushra Vahdat, IDA
TRASCHEN, in her official and individual capacity,
ELIZABETH PRICKETT-MORGAN, in her official
and individual capacity, JEAN FLANAGAN, in her
official and individual capacity, VINCENT PALMIERI,
in his official and individual capacity, DANIELLE
CALVO, in her official and individual capacity, SADIQ
TAHRIR, in his individual capacity, PEC GROUP OF
NY, INC., DAVID SMART, and JOHN and JANE DOE,

                                    Defendants.

----------------------------------------------------------------

**ORDER**
18-CV-2710 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Mario H. Capogrosso, proceeding *pro se*, commenced the above-captioned

action on May 8, 2018, against Defendants Alan Gelbstein, Boshra Vahdatlamas, Ida Traschen,

Elizabeth Prickett-Morgan, Jean Flanagan, Vincent Palmieri, Danielle Calvo, Sadiq Tahrir, PEC

Group of NY, Inc., David Smart, and John and Jane Doe.  (Compl., Docket Entry No. 1.)

Plaintiff alleges that Defendants, *inter alia*, violated his constitutional rights when they banned

him from representing clients in New York State traffic court proceedings.  (*Id.* ¶¶ 70–88.)

On February 8, 2019, Smart moved to dismiss the Complaint against him.  (Def. Mot. to

Dismiss ("Def. Mot."), Docket Entry No. 57.)  In support of his motion, Smart attaches several

documents seeking to show that he is a victim of Plaintiff's actions.  (Incident Form, annexed to

Def. Mot., Docket Entry No. 57-1.)  Because Smart has not stated a proper basis to dismiss the Complaint against him, the Court denies without prejudice his motion to dismiss.

The Court also denies without prejudice Smart's April 24, 2019 application for appointment of *pro bono* counsel.  (Mot. to Appoint Counsel, Docket Entry No. 66.)  As stated in the Court's prior Order denying a similar application from Smart, there is no right to counsel in a civil case.  (Order dated Aug. 2, 2018, Docket Entry No. 30 (citing *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013).)  The Court cannot compel an attorney to represent a litigant in a civil case without a fee.  *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 301–02 (1989). The Court may only request that an attorney volunteer to do so, and looks to a number of factors to determine whether it is appropriate to request a volunteer attorney for a particular case.  The first consideration — and threshold requirement — is whether the movant's position is "likely to be of substance."  *Ferelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 204 (2d Cir. 2003).

At this stage of the litigation, Smart has not established the threshold requirement that his position is "likely to be of substance."  *Id.*  Accordingly, the Court denies without prejudice Smart's request for *pro bono* counsel.

Dated:  September 27, 2019
        Brooklyn, New York

                                SO ORDERED:


                                _____s/ MKB_____
                                MARGO K. BRODIE
                                United States District Judge



FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y

★ DEC 10 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                  Plaintiff,

   -against-

ALAN GELBSTEIN, *in his official and
individual capacity*, IDA TRASCHEN,
*in her official and individual capacity*,
DANIELLE CALVO*, in her official and
individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., and DAVID SMART,

                  Defendants.
---------------------------------------------------------------X

**ORDER**
**18 CV 2710 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

      Plaintiff seeks to physically enter DMV premises to "gather information with respect to not only my initial disclosures but as well as any and all discovery which I must undertake with respect to my Complaint." ECF No. 91. The state defendants oppose plaintiff's request. ECF No. 93. The Court shall hold a status conference on January 10, 2020 at 10:30 a.m. in Courtroom 11A South of the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York to discuss the parties' discovery obligations. Parties are advised that they must contact each other before making any request for an adjournment to the Court. Any request for an adjournment must be received in writing at least forty-eight (48) hours before the scheduled conference. As previously ordered, the state defendants shall answer plaintiff's complaint and plaintiff and the state defendants shall exchange initial disclosures by December 18, 2019.

SO ORDERED.

                                  /S/ Judge Lois Bloom
                                  LOIS BLOOM
Dated: December 10, 2019               United States Magistrate Judge
Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                Plaintiff,

        -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                Defendants.
------------------------------------------------------------------X

**ORDER**
**18 CV 2710 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

        The Court held a conference in this case on January 10, 2020.[1] The State defendants' request to add DMV Commissioner Mark Schroeder in his official capacity regarding plaintiff's claim for prospective injunctive relief pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is granted.[2] ECF No. 96. As discussed, plaintiff's request to enter TVB premises to conduct discovery is denied. ECF No. 91. Plaintiff shall comply with Rules 26–37 of the Federal Rules of Civil Procedure and the Court's November 14, 2019 Order regarding discovery.[3] As previously set, the parties shall complete all discovery by May 15, 2020 and shall file any pre-motion conference request by June 5, 2020. Electronic Order dated Nov. 14, 2019.

SO ORDERED.

                                              /S/

Dated: January 10, 2020                         LOIS BLOOM
        Brooklyn, New York                United States Magistrate Judge

---

[1] David Smart and Sadiq Tahir did not appear for the conference. The Court excuses their appearances. The Court also excuses plaintiff from registering for mandatory electronic case filing in this case.

[2] The Clerk of Court is directed to amend the caption of this case as set forth above. The State defendants' counsel waived service on behalf of Schroeder on the record.

[3] Any deposition of defendants shall occur at the Courthouse. The parties shall call my Chambers at (718) 613-2170 once they have selected dates that work for both sides to schedule use of a room at the Courthouse for these depositions.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

MARIO H. CAPOGROSSO,

                      Plaintiff,

      v.

ALAN GELBSTEIN, IDA TRASCHEN,
DANIELLE CALVO, SADIQ TAHRIR, PEC
GROUP OF NY, INC., DAVID SMART and
MARK J.F. SCHROEDER,

                    Defendants.

---------------------------------------------------------------

**ORDER**
18-CV-2710 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

On December 2, 2019, Plaintiff Mario H. Capogrosso, proceeding *pro se*, filed a motion

seeking a court order directing the New York Department of Motor Vehicles (the "DMV") to

allow Plaintiff access to the Brooklyn Traffic Violations Bureau (the "TVB") to conduct

discovery. (Pl. Mot. Seeking Entrance to DMV TVB ("Pl. Mot.") 2, Docket Entry No. 91.)

Defendants Danielle Calvo, Alan Gelbstein, Ida Traschen, and Mark J.F. Schroeder opposed the

motion. (Defs. Opp'n to Pl. Mot., Docket Entry No. 93; Defs. Suppl. Opp'n to Pl. Mot., Docket

Entry No. 101.) On January 10, 2020, Magistrate Judge Lois Bloom held a conference with the

parties and denied Plaintiff's request to enter the TVB and conduct discovery ("Judge Bloom's

Order"). (Order dated Jan. 10, 2020 ("Jan. 2020 Order"), Docket Entry No. 104; Tr. of Jan. 10,

2020 Conference ("Tr."), Docket Entry No. 105.) Judge Bloom ordered Plaintiff to "comply

with Rules 26–37 of the Federal Rules of Civil Procedure," as well as previous court orders

regarding discovery in this case. (Jan. 2020 Order.)

On January 15, 2020, Plaintiff filed a letter objecting to Judge Bloom's Order directing

him "not to attempt to enter the [TVB] . . . to gather witness statements, witness names, and

witness telephone numbers as well as gather evidence by way of photographs."  (Pl. Obj. to Jan.

2020 Order ("Pl. Obj."), Docket Entry No. 106.)  The Court construes Plaintiff's letter as an

objection to Judge Bloom's Order pursuant to Rule 72 of the Federal Rules of Civil Procedure.

For the reasons set forth below, the Court declines to set aside or modify Judge Bloom's Order.

Under the Federal Magistrates Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of

Civil Procedure, "[a] magistrate judge is authorized 'to make findings as to non-dispositive

pretrial matters, such as discovery matters, which may not be disturbed by a district judge absent

a determination that such findings were clearly erroneous or contrary to law.'"  *Ebo v. N.Y.*

*Methodist Hosp.*, No. 12-CV-4432, 2015 WL 4078550, at *4 (E.D.N.Y. July 6, 2015) (quoting

*McNamee v. Clemens*, No. 09-CV-1647, 2014 WL 1338720, at *2 (E.D.N.Y. Apr. 2, 2014)); *see*

*also Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007).  An order is clearly erroneous if,

based on all the evidence, a reviewing court "is left with the definite and firm conviction that a

mistake has been committed."  *In re Gordon*, 780 F.3d 156, 158 (2d Cir. 2015) (internal

quotations omitted) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)); *Ebo*,

2015 WL 4078550, at *4.  An order is only contrary to law if it misapplies existing law and the

district judge is convinced that a mistake has been made.  *In re Gordon*, 780 F.3d at 158.

Under this highly deferential standard, magistrate judges are "afforded broad discretion in

resolving discovery disputes, and reversal is appropriate only if that discretion is abused."

*McNamee*, 2014 WL 1338720, at *2 (first citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900

F.2d 522, 524 (2d Cir. 1990); and then citing *United States v. Dist. Council*, 782 F. Supp. 920,

922 (S.D.N.Y. 1992)).  Therefore, "a party seeking to overturn a discovery order [by a magistrate

2

judge] bears a heavy burden." *Bachayeva v. Americare Certified Special Servs.*, No. 12-CV-1466, 2013 WL 4495672, at *1 (E.D.N.Y. Aug. 20, 2013) (quoting *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y 2011)). "[T]he magistrate judge's findings should not be rejected merely because the court would have decided the matter differently." *Pall Corp. v. Entegris*, *Inc.*, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008) (quoting *Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007)).

The Court has reviewed Judge Bloom's Order, denying Plaintiff's request for a court order giving him access to the TVB and directing Plaintiff to comply with the Federal Rules of Civil Procedure regarding discovery, and finds that it was not "clearly erroneous or contrary to law." *Ebo*, 2015 WL 4078550, at *4 (quoting *McNamee*, 2014 WL 1338720, at *2). Accordingly, the Court declines to modify or set aside Judge Bloom's Order.

Dated: February 3, 2020
       Brooklyn, New York

                                       SO ORDERED:


                                       ___s/ MKB_____
                                       MARGO K. BRODIE
                                       United States District Judge

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

MARIO H. CAPOGROSSO,

               Plaintiff,

     -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

               Defendants.

----------------------------------------------------------------X

**ORDER**
**18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

State defendants' counsel requests that the deposition of Ida Traschen be conducted remotely due to the COVID-19 pandemic. ECF No. 117. Plaintiff does not consent. The request is denied.

In light of the national emergency posed by COVID-19, the Court stays all deadlines in this case and cancels all depositions, ECF No. 114. The Court shall reschedule deadlines and any depositions that need to be conducted at the Courthouse at a later date. The parties shall file a status letter proposing dates and times for a telephone conference by May 1, 2020. State defendants' counsel shall mail a copy of this Order to plaintiff and file proof of service forthwith.

SO ORDERED.

                                 /S/
                               LOIS BLOOM
                               United States Magistrate Judge

Dated: March 18, 2020
       Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                    Plaintiff,                                              **ORDER**
                                                                    **18 CV 2710 (EK)(LB)**
          -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                    Defendants.
-------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

          The Court held a telephone status conference in plaintiff's case on June 16, 2020 and reset

the following deadlines. The parties shall complete all discovery by October 16, 2020. All

depositions shall be conducted remotely. The parties shall notify the Court of the agreed-upon

dates for all depositions. Once the depositions are scheduled, the Court shall provide an e-mail

address to the parties which may be used should a dispute arise during the deposition that the

parties cannot resolve despite their best efforts. See Local Rule 37.3. The parties shall file any pre-

motion conference request in accordance with Judge Komitee's Individual Rules by October 30,

2020.

SO ORDERED.

                                        _____/S/_____
                                        LOIS BLOOM
                                        United States Magistrate Judge

Dated: June 16, 2020
          Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                Plaintiff,

      -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                Defendants.
-------------------------------------------------------------X

                           **ORDER**
                        **18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

       On December 10, 2020, plaintiff requested a Court Order that defendant Commissioner

Schroeder be produced for a deposition.[1] ECF No. 147. Defendants request a protective order,

pursuant to Federal Rule of Civil Procedure 26(c), prohibiting plaintiff's deposition of

Commissioner Schroeder. ECF No. 146. For the reasons set forth below, defendants' motion for

a protective order is granted.

       "[T]o depose a high-ranking government official, a party must demonstrate exceptional

circumstances justifying the deposition." Lederman v. N.Y. City Dep't of Parks & Rec., 731

F.3d 199, 203 (2d Cir. 2013). "The Second Circuit has found that exceptional circumstances

exist if 'the official has unique first-hand knowledge related to the litigated claims or that the

necessary information cannot be obtained through other, less burdensome or intrusive means.'"

---

[1] The Court notes that although plaintiff proceeds *pro se*, he is an attorney.

Boggs v. Town of Riverhead, No. 17 Civ. 5411, 2020 WL 1929076, at *3 (E.D.N.Y. Apr. 20, 2020) (quoting Lederman, 731 F.3d at 203).

"The Supreme Court has stated that 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' In an official capacity suit, 'the real party in interest . . . is the governmental entity and not the named official.'" Tanvir v. Tanzin, 894 F.3d 449, 458-59 (2d Cir. 2018) (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)).

Here, Commissioner Schroeder was only added to the case as a Rule 25(d) substitute for plaintiff's official-capacity claims against Defendants Gelbstein, Traschen, and Calvo, each of whom has left his or her former positions at the DMV since this lawsuit was filed and accordingly, no longer have any "official capacity" in which to be sued. Additionally, the Court finds that Commissioner Schroeder cannot have "unique first-hand knowledge" as he was appointed to his position in January of 2019, approximately four years after the events that give rise to plaintiff's case. Accordingly, as Commissioner Schroeder is a high-ranking state official who is only a party to this lawsuit in his official capacity, defendants' request for a protective order is granted.

In his December 10, 2020 letter to the Court, plaintiff also requests that defendant Smart be ordered to respond to his interrogatories dated August 25, 2020 and that defendant Smart provide plaintiff with an email address or phone number to conduct his deposition remotely. Defendant Smart is proceeding in this matter *pro se.* Defendant Smart was employed by a private security company which supplied guards at the Department of Motor Vehicles. Plaintiff and defendant Smart got into a physical confrontation which led to plaintiff being removed from the DMV. Although plaintiff states that he served interrogatories on defendant Smart, he has not

provided them to the Court. Therefore, the Court cannot rule on plaintiff's request to compel defendant Smart to respond. Whereas plaintiff is permitted to pursue discovery, the Court will not compel defendant Smart to provide his email address or phone number to plaintiff.  Plaintiff may provide the interrogatories that are outstanding to the Court for the Court to consider them. This will be the one exception to the parties' deadline to complete all discovery by December 22, 2020.  Defendants' counsel shall communicate this order to plaintiff by all available means.

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  December 16, 2020
        Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                Plaintiff,

    -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                Defendants.
--------------------------------------------------------------X

**ORDER**
**18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

    Plaintiff[1] moves the Court to compel discovery. Specifically, plaintiff seeks a Court

Order that defendant Smart answer his interrogatories and "produce an email and requisite

laptop" so that plaintiff can conduct Smart's deposition, that defendant Smart be ordered to

appear at a deposition, that the State's Attorney produce two clerks he wishes to depose, and that

the discovery deadline be extended by 30 days. ECF No. 149. The State defendants oppose

plaintiff's requests to conduct additional depositions and to extend discovery. For the reasons set

forth below, plaintiff's requests are granted in part and denied in part.

    The deadline for the parties to complete all discovery in this case was December 22,

2020. ECF No. 145. Plaintiff's letter requesting a subpoena is dated December 21, 2020, literally

the eve of the deadline to complete all discovery. Subpoena practice is governed by Federal Rule

of Civil Procedure 45 which provides in relevant part that an attorney may issue and sign a

subpoena or the clerk must issue a subpoena to a party who requests it.  Fed. R. Civ. P. 45(a)(3).

---

[1] Mr. Capogrosso is an attorney who is proceeding *pro se*.

A deposition subpoena must be served before the discovery deadline. <u>See</u> <u>Juliao v. Charles</u> <u>Rutenberg Realty, Inc.</u>, No. 14 Civ. 808, 2018 WL 5020167, at *5 (E.D.N.Y. July 23, 2018) (quashing subpoena and noting that "[w]hile Rule 45 does not define 'reasonable time [to provide advance notice of a deposition subpoena], many courts have found fourteen days from the date of service as presumptively unreasonable.") In this case, the parties have had well over a year to conduct discovery. <u>See</u> ECF No. 82. Plaintiff could have requested and served a subpoena at any time during the discovery period, but instead waited until the deadline to do so. Further, the Court's December 22, 2020 Order stated that its consideration of plaintiff's interrogatories would be "the one exception to the parties' deadline to complete all discovery by December 22, 2020." <u>See</u> ECF No. 148. Therefore, the Court denies plaintiff's request to depose the two clerks and to extend the discovery deadline. The Court has already denied plaintiff's motion to compel defendant Smart to provide plaintiff with an email address or phone number to conduct his deposition remotely.[2] ECF Nos. 147-148. The Court declines to revisit this issue.

Plaintiff maintains that he served interrogatories on defendant Smart before the discovery deadline, however defendant Smart never responded. Plaintiff has now sent the Court a copy of the interrogatories dated August 25, 2020. ECF No. 149-1. The Court has reviewed the interrogatories. Defendant Smart shall, to the best of his ability, respond in writing to plaintiff's

---

[2] The Court declined to compel defendant Smart, who is also proceeding *pro se* in this matter, to appear for a deposition, or to provide his email address or phone number to plaintiff. There is bad blood between Capogrosso and Smart. Requiring these two pro se parties to do anything together is not in the interest of justice. Defendant Smart was employed by a private company which supplied security guards at the Department of Motor Vehicles from which plaintiff was banned. Plaintiff and defendant Smart got into a confrontation which led to plaintiff being removed from the DMV. That confrontation is what plaintiff claims caused his ban from the DMV office. Assuming this is true, plaintiff fails to demonstrate that defendant Smart acted under color of state law in connection with his alleged role in this lawsuit. The lack of state action was not properly raised by Smart in his motion to dismiss. Although he is named as a defendant, the Court finds Smart's responses to plaintiff's written interrogatories will be sufficient and declines to compel Smart to appear for a deposition under these circumstances.

interrogatories No. 1-7[3] by February 12, 2021. Fed. R. Civ. P. 33(b)(2).[4] Discovery in this matter is otherwise closed.

      Plaintiff's deadline to respond to the State defendant's pre-motion conference request, ECF No. 151, pursuant to Judge Komittee's individual rules, is extended. Plaintiff shall respond to the State defendant's pre-motion conference request by February 19, 2021. Defendants' counsel shall communicate this order to plaintiff and to defendant Smart by all available means. SO ORDERED.

/S/

LOIS BLOOM
United States Magistrate Judge

Dated: January 13, 2021
      Brooklyn, New York

---

[3] Defendant Smart need not respond to interrogatory No. 8, which requests his email address and telephone number, as discussed above.

[4] Defendant Smart may contact The Federal Pro Se Legal Assistance Project, a free, limited-scope legal clinic operated by the City Bar Justice Center of the New York City Bar Association to seek assistance in responding to the interrogatories. A copy of the City Bar Justice Center's flyer is included with this Order.

3

# Federal Pro Se Legal Assistance Project

The Federal Pro Se Legal Assistance Project is a free service offered by the City Bar Justice Center of the New York City Bar Association.

## Who We Help:
- Pro se plaintiffs and defendants with cases in the U.S. District Court for the Eastern District of New York (Brooklyn).
- Individuals thinking about filing a federal case pro se in the E.D.N.Y.
- *We cannot assist incarcerated litigants but can provide referrals.*

## Services We Provide:
- Limited-scope legal assistance by an attorney. "Limited-scope" assistance means that the Project attorney cannot take your case for full representation. After you meet with us, you will still act as your own lawyer on your case.
- Explaining federal court procedures and rules.
- Advising you about potential federal claims before you file a lawsuit.
- Reviewing your draft court papers.
- Giving referrals to legal, governmental and social services.

## How to Get Free Legal Help:
- Call (212) 382-4729 or email citaya@nycbar.org to schedule an appointment with an attorney.
- Office hours are Monday through Thursday, 9:30 am until 4:30 pm.
- **During the COVID-19 health crisis, we are conducting remote, telephone appointments.**



Cat Itaya, Esq., *Project Director*
Federal Pro Se Legal Assistance Project
c/o U.S. District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, NY 11201
(212) 382-4729
www.citybarjusticecenter.org

82

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                Plaintiff,

    -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO*, in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                Defendants.
-----------------------------------------------------------------X

**ORDER**
**18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

       The Court ordered Defendant David Smart to respond to plaintiff's interrogatories dated

August 25, 2020 by February 12, 2021. ECF No 154. Plaintiff reports that Defendant Smart has

not responded to his interrogatories and moves the Court to impose sanctions on Defendant

Smart. ECF No. 157. The state defendants oppose plaintiff's motion. ECF No. 158. Plaintiff's

request is denied without prejudice.

       Defendant Smart proceeds in this matter *pro se*, and unlike plaintiff, Mr. Smart is not an

attorney. The Court shall therefore give Mr. Smart another chance to comply with the Court's

Order. The Court shall hold a conference in this action on March 16, 2021 at noon. Instead of

providing written responses to plaintiff's interrogatories, **Defendant Smart shall call the**

**Chambers telephone conference line at (888) 363-4734 and use the access code 4444221 at**

**12:00p.m. on March 16, 2021**. At the conference, the Court shall swear Defendant Smart to the

truth of his testimony and Defendant Smart shall answer plaintiff's interrogatories orally on the

83

record. The Clerk of Court is respectfully requested to serve a copy of this order upon Defendant

Smart via overnight delivery.

       SO ORDERED.

                                         _____/S/_____
                                         LOIS BLOOM
                                         United States Magistrate Judge

Dated: February 25, 2021
       Brooklyn, New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                 Plaintiff,

   -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                 Defendants.
-------------------------------------------------------------X

                              **ORDER**
                        **18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

      Defendant Smart, who proceeds in this matter *pro se*, writes to oppose plaintiff's motion for sanctions, ECF No. 157, to request an extension of time, *nunc pro tunc*, to serve his responses to plaintiff's interrogatories, and to request the appointment of limited-scope pro bono counsel for the purpose of moving for summary judgment. ECF No. 161. Defendant Smart's requests are granted in part and denied in part.

      On February 25, 2021, the Court denied plaintiff's motion for sanctions without prejudice. ECF No. 159. Accordingly, Defendant Smart's request to oppose sanctions is denied as moot.

      The Court grants Defendant Smart's request for an extension of time to serve his responses to plaintiff's interrogatories *nunc pro tunc*. Defendant Smart states that he received assistance from the City Bar Justice Center's Pro Se Project ("the Pro Se Project") to draft his responses to plaintiff's interrogatories and intends to serve a copy of his responses shortly. The Court notes that Defendant Smart's letter is dated February 24, 2021 and that Defendant Smart

may have already served his interrogatory responses. However, the conference scheduled for **March 16, 2021 at noon shall proceed as scheduled.** The parties including defendant Smart shall call the Chambers telephone conference line at (888) 363-4734 and use the access code 4444221 at 12:00p.m. on March 16, 2021.

Defendant Smart requests the Pro Se Project's assistance in searching for limited-scope pro bono counsel. The Court grants defendant Smart's request for the Pro Se Project to seek limited-scope pro bono counsel in order for Mr. Smart to move for summary judgment.
SO ORDERED.

                                            _____/S/_____
                                            LOIS BLOOM
                                            United States Magistrate Judge

Dated: March 11, 2021
       Brooklyn, New York

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

------------------------------X  Docket#
CAPOGROSSO,                    : 18-cv-02710-EK-LB
                 Plaintiff,    :
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
                               :
                               :
GELBSTEIN, et al.,             : March 16, 2021
                 Defendants    : 11:01 AM
------------------------------X
```

     TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
            BEFORE THE HONORABLE LOIS BLOOM
            UNITED STATES MAGISTRATE JUDGE

**A    P    P    E    A    R    A    N    C    E    S:**


**For the Plaintiff:**        **Mario H. Capogrosso, pro se**
                              21 Sheldrake Place
                              New Rochelle, NY 10804


**For the Defendants:**       **James M. Thompson, Esq.**
                              Office of the New York State
                              Attorney General
                              28 Liberty Street
                              New York, NY 10005


**For Defendant Smart:**      **David Smart, pro se**
                              2355 Batchelder St.
                              Apartment 3E
                              Brooklyn, NY 11229


**Transcription Service:**    **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1        THE CLERK:  Civil Cause for Telephone Status
2  Conference, docket number 18-cv-2710, Capogrosso v.
3  Gelbstein, et al.
4            Will the parties please state your names for
5  the record?
6            MR. CAPOGROSSO:  Mario Capogrosso, plaintiff,
7  21 Sheldrake Place, New Rochelle, NY 10804.
8            MR. THOMPSON:  Good morning.
9            James Thompson from the Office of the New York
10  State Attorney General for the state defendants and I'm
11  joined by Barbara Montina (ph.) who is in-house counsel
12  for DMV.
13            MR. SMART:  Yeah, my name is Mr. David Smart.
14  I'm here on my behalf.
15            THE CLERK:  The Honorable Lois Bloom presiding.
16            THE COURT:  Good morning, Mr. Capogrosso, Mr.
17  Thompson, Ms. Montina and Mr. Smart.
18            This is a telephone status conference in
19  plaintiff's civil rights action.  I last spoke with  the
20  parties on May 5th, 2020.
21            On December 22nd, 2020, discovery closed in
22  this matter and Mr. Capogrosso, you wrote to the Court
23  and stated that you had served interrogatories on Mr.
24  Smart before the discovery deadline.  However, Mr. Smart
25  never responded.

Proceedings

1     And I directed you to provide the

2  interrogatories to the Court to review and I informed the

3  parties that this would be the one exception to the

4  discovery deadline.  That's in ECF entry number 148.

5     I reviewed your interrogatories and I directed

6  Mr. Smart to respond to the interrogatories and I

7  extended his deadline to do so. That's ECF entry number

8  154.

9     When Mr. Smart did not respond, Mr. Capogrosso

10 moved for a default junction and sanctions against Mr.

11 Smart.  That's ECF 157.

12    As Mr. Smart is like Mr. Capogrosso, proceeding

13 pro se, although Mr. Smart is not an attorney like Mr.

14 Capogrosso, I denied the request for default judgment and

15 sanctions and set today's telephone conference to get Mr.

16 Smart to answer the interrogatories orally on the record.

17 That's ECF entry number 159.

18    Mr. Smart has since informed the Court by

19 letter, that he is receiving assistance from the City Bar

20 Justice Center Pro Se project and that he is drafted

21 responses to the interrogatories and the letter was from

22 back in February and he said that they were going to be

23 served.

24    Mr. Capogrosso, have you gotten Mr. Smart's

25 responses to the interrogatories?

Proceedings

4

1      MR. CAPOGROSSO:  I did receive a document.  It
2  is not signed, Judge, and that was one of the comments I
3  wanted to make.  It's not signed by defendant Smart.  So
4  I don't know who wrote it and whether it's relevant or
5  material.  It is also dated after the date that you
6  required defendant Smart to respond by.  It's dated
7  February 24th.  You required him to respond by February
8  12th.

9      There's also -- it replies with the words
10  "information and belief" and according to -- Black's
11  Dictionary indicates information and belief is
12  information not made on firsthand knowledge but based on
13  secondhand knowledge.

14      THE COURT:  So again, as far as the timeliness,
15  Mr. Smart's letter which is ECF 59, requested an
16  extension of time nunc pro tunc to serve his responses
17  and I granted that request at ECF number 162.  And I kept
18  today's conference as scheduled to ensure that you have
19  responses and if you're saying that the responses sent
20  were not signed, I'm sure that's an oversight but in
21  order to correct it, I'm willing to go through this on
22  the record as I intended with Mr. Smart.

23      Mr. Smart?

24      MR. SMART:  Yeah.

25      THE COURT:  Are you willing today to answer

Proceedings

5

1    some of these questions on the record, so that we could

2    get this matter completed?

3             MR. SMART:  Yeah.

4             THE COURT:  Okay, sir.  So Mr. Smart, I am

5    going to ask you to raise your right hand, please.

6             MR. SMART:  Yeah.

7    D A V I D   S M A R T ,

8        having been first duly sworn, was examined and

9        testified as follows:

10            THE COURT:  And can you state your full name,

11   sir?

12            MR. SMART:  Yeah, my name is David Smart.

13            THE COURT:  And Mr.  Smart, were you employed

14   at the Brooklyn South Traffic Violations Bureau located

15   at 2875 West 8th Street in Brooklyn, New York, sir?

16            MR. SMART:  Yeah, I was once employed there but

17   I am no longer there.

18            THE COURT:  Okay.  So that answers question 1

19   and 2.  What was your job when you were working there,

20   sir?

21            MR. SMART:  I was a security guard.

22            THE COURT:  And who was your employer?  Who

23   paid your wages when you were employed there?

24            MR. SMART:  Yeah, the -- I started with a

25   company called PEC, started -- I started on 2/7 to '16,

6

Proceedings

1  2016.  I was there the 2015 when this (indiscernible)

2  occurred with PEC.  And then I resumed -- when PEC left,

3  I resumed working with Explorer (ph.) from 2/20 to --

4  2/2016 to October 8, 2020.

5          THE COURT:  So you're not currently working at

6  Brooklyn South Traffic Violations Bureau; is that

7  correct, sir?

8          MR. SMART:  No, yes, it's correct because I

9  left there since October 20, 2020 -- October 8th, sorry,

10  October 8th, 2020.

11          THE COURT:  So October 8th of 2020, you stopped

12  working at the Brooklyn South Traffic Violations?

13          MR. SMART:  Yeah, yeah, I was working for

14  Explorer at the -- at that time.

15          THE COURT:  Okay.  And from -- I think you said

16  2016 until 2020, you were working at the Brooklyn South

17  Traffic Violations Bureau; is that correct?

18          MR. SMART:  Yeah, with Explorer Company, a

19  different company, not PEC.  PEC left and we were -- they

20  were replaced by Explorer, a security company located on

21  the 151st Street -- 60 51st Street in Manhattan.

22          THE COURT:  So you're basically saying there

23  were different names of the employer because different

24  security firms got the contract but you were there from

25  2015 until 2020; is that --

Transcriptions Plus II, Inc.

7

Proceedings

1          MR. SMART:  Yeah, yes, yes.  It's how we did --
2  we had -- we had about five -- five different security
3  companies, replacing one another.
4          THE COURT:  Okay.  So now I am going to ask you
5  the question that Mr. Capogrosso wrote at number 5, this
6  is on document 149-1.  He asked, who told you to approach
7  Mario Capogrosso on the morning of May 11th, 2015?
8          MR. SMART:  Nobody -- nobody told me anything.
9  He was -- he was -- he -- he -- he came in.  I was really
10 by the door, he came in -- he came in aggressively,
11 raised his hand up and went to the line and then
12 continuously looking at me, you know?
13         So I am looking and looking, we were looking at
14 each other, and so -- and I say -- I say, wait a minute,
15 let me do -- what's going on here?  So I went -- I said
16 oh, why are you looking at me?  You see, I'm the one that
17 looking at him.  I said you are looking at me so like you
18 want to start something.  He say I was -- I was the one
19 that was looking at him.
20         You know, all of the sudden -- all of the
21 sudden, I was shocked though because I was knowing -- I
22 was knowing for a long time.  I was shocked.  He just
23 punched me in the chest and I had to hold onto the rail.
24 I had to hold onto the rail and then some police officer
25 came, everybody came around.  Then they say hey, you ave

8

Proceedings

1   to do something about this guy.  So I -- I say no, I'm

2   going to go and -- Danielle (ph.) came to me and said

3   what happened.  I said, my -- my response was say well go

4   61 on him, so I went to 6-0, I got 6-1 on him and two

5   police officers came with me, not too long, they came

6   with me.  Then they wanted to talk to him and he was

7   nowhere around.  They waited for quite a while and trying

8   to be -- they look around.  I checked -- they checked the

9   restroom.  They checked many other places.  He wasn't

10  anywhere on the ground.  He was gone.

11          THE COURT:  Okay.

12          MR. SMART:  And then they told me that the only

13  thing I can do, I can contact the One Police Plaza.  I

14  went back to the 6-0 and they gave me a form to fill out

15  and I sent out the -- the -- to One Police Plaza and One

16  Police Plaza sent me a response that -- they -- they

17  going to have a conversation with him or I was going to

18  say, or they're going to send me a letter and the rest

19  was history.

20          THE COURT:  Mr. Smart, I'm going to ask you

21  question number 6 which is similar to question number 5.

22  Did defendant Alan Gelbstein, defendant Ida Trachin,

23  defendant Danielle Calvo and/or Boshra Vahdat, tell you

24  to approach Mr. Capogrosso on the morning of May 11th,

25  2015?

9

Proceedings

1          MR. SMART:  No way.  No way.

2          THE COURT:  Thank you, sir.

3          MR. SMART:  They were not even -- they were not

4   even near.

5          THE COURT:  Thank you.  Thank you, sir.  Thank

6   you.  So I have gotten Mr. Smart to answer the

7   interrogatories under oath.  I will get a copy of this

8   conference transcript made part of the record and that in

9   my mind, Mr. Capogrosso, has eliminated this issue which

10  has caused some consternation and I do know that Judge

11  Komitee has set a scheduled for the defendant's summary

12  judgment motion which means that they're going to serve

13  you with their motion on March 31st of 2021 and you have

14  until April 30th of 2021 to serve your opposition and

15  that they will reply and both sides should file their

16  portions of the motion on May 10th, 2021.

17         Let me just mention, Mr. Thompson, that there

18  is a special notice provision under 56.2 of the Local

19  Rules which although Mr. Capogrosso is an attorney and he

20  is not entitled to the special solicitude that pro se

21  litigants are entitled to, it may be smart for you to

22  just to include the notice, so that for any determination

23  to be made, you've gone above and beyond what your duty

24  is and provided him special notice of how to oppose a

25  motion for summary judgment.

10

Proceedings

1        And Mr. Capogrosso, because you are an

2  attorney, you are expected to look at Local Rule 56.1 and

3  to file a counter statement to whatever 56.1 statement is

4  filed by the defendants.

5        Mr. Smart, I know that you're still working

6  with the City Bar and that they were looking for limited

7  scope pro bono counsel for the purpose of moving on your

8  behalf for summary judgment.  Is that correct, sir?

9        MR. SMART:  Yeah, I was called yesterday by Kat

10  Ataka (ph.) and they say that she is looking for one to

11  represent me.

12        THE COURT:  Okay.

13        MR. SMART:  And she is going to let me know as

14  soon as possible.

15        THE COURT:  So you please stay in touch, so

16  that when the motion is made to Judge Komitee, he'll have

17  everybody's motion at the same time, okay?

18        MR. SMART:  Yeah.

19        THE COURT:  Mr. Capogrosso, do you have any

20  questions for the Court before we adjourn?

21        MR. CAPOGROSSO:  I do.  I do.

22        THE COURT:  Yes.

23        MR. CAPOGROSSO:  I do and I will keep it short

24  because I will waste the Court's time and I don't want to

25  do that but I do have several questions.  Number one,

11

Proceedings

1  will I be getting a copy of this deposition, your Honor?

2          THE COURT:  Are you going to get a copy of the

3  transcript of today's --

4          MR. CAPOGROSSO:  Of the transcript --

5          THE COURT:  -- conference?

6          MR. CAPOGROSSO:  -- yes.

7          THE COURT:  Yes, you are sir.

8          MR. CAPOGROSSO:  Yes, thank you.

9          May I ask Attorney Thompson concerning my

10 deposition which I have not received yet and I've sent

11 him a copy of mine.

12          THE COURT:  Mr. Thompson?

13          MR. CAPOGROSSO:  And when am I going to get it?

14          THE COURT:  Mr. Thompson, can you get Mr.

15 Capogrosso a copy of his deposition transcript please?

16          MR. THOMPSON:  Certainly, we can do that.

17          MR. CAPOGROSSO:  When am I going to get it and

18 is it going to be a hard copy or an electronic file?  I

19 sent you a hard copy.

20          MR. THOMPSON:  If you would like, I can email

21 you a digital copy this afternoon.

22          MR. CAPOGROSSO:  I don't want a digital copy, I

23 want a hard copy.  I sent you a hard copy.  I would like

24 a hard copy (indiscernible).

25          THE COURT:  Sir, sir, sir?

12

Proceedings

1          MR. CAPOGROSSO:  Yes.

2          THE COURT:  Nobody is in their office, so if

3   what you're asking for him to print it in a printer and

4   put it in the mail to you, it's going to take longer.

5   Don't you have a printer at your home where he could

6   email it to you and you could print it out for yourself?

7          MR. CAPOGROSSO:  Judge, I would like it the way

8   I sent it to Attorney Thompson. That's how I would like

9   it, hard copy.

10         THE COURT:  Mr. Thompson, is there a way that

11  you could get it printed in your office and sent to Mr.

12  Capogrosso?

13         MR. THOMPSON:  We could but what I would ask in

14  return, it's much more useful for us to have copies of

15  transcripts in digital formats because when he sends

16  things to us in hard copy, we have to have someone go

17  through page-by-page and scan it.

18         So what I would say is if we're going to print

19  out a hard copy for him, I would request a digital copy

20  of the transcripts he's taken.

21         MR. CAPOGROSSO:  That's fine.  That's fine.

22  That's fine.

23         THE COURT:  So Mr. Capogrosso --

24         MR. CAPOGROSSO:  That's fine.

25         THE COURT:  -- they will print out a copy for

13

Proceedings

1 you because that's your preference and he said could you

2 please email him --

3          MR. CAPOGROSSO:  Absolutely.

4          THE COURT:  -- a digital copy of the

5 depositions that you took, okay?

6          MR. CAPOGROSSO:  Well, normally the court

7 reporter prints out a hard copy.  I've done this for a

8 while.  A hard copy, they do, they send you a hard copy

9 of (indiscernible).  So that's fine.  We'll make a hard

10 copy and as soon as I get a hard copy, I'll send you a

11 digital copy.

12          In terms of the deposition, Judge, this is the

13 Court's deposition, am I allowed to (indiscernible) any

14 question?

15          THE COURT:  No.

16          MR. CAPOGROSSO:  I am not.

17          THE COURT:  You're done.  You're done.

18          MR. CAPOGROSSO:  All right.  Okay.

19 (Indiscernible).

20          THE COURT:  Was there anything else today, Mr.

21 Capogrosso before we adjourn?

22          MR. CAPOGROSSO:  When will I get the hard copy,

23 Attorney Thompson?

24          MR. THOMPSON:  I -- let me check and see.  I

25 will try to get it in the mail for you by the end of the

14

Proceedings

1   wee, does that work?

2        MR. CAPOGROSSO:  That's fine.  That will be

3   great.

4        THE COURT:  And likewise, I'll get the court

5   reporter's to transcribe today's conference and I will

6   endeavor to get it to you by the end of next week, Mr.

7   Capogrosso.

8        MR. CAPOGROSSO:  All right.  I'm not wanting to

9   waste the Court's time but I have one more comment that I

10  would like to ask Attorney Thompson and as well as the

11  attorney for the DMV.  This was brought up at the

12  deposition of defendant Gelbstein.  May I ask Attorney

13  Thompson?

14       THE COURT:  Go ahead, Mr. Capogrosso.

15       MR. CAPOGROSSO:  Fine.  At the attorney of

16  Attorney Gelbstein, you testified that there were no

17  ticket brokers in his office.  Defendant Calvo indicated

18  he saw ticket brokers in his office.

19       THE COURT:  I'm having a difficult time, Mr.

20  Capogrosso, understanding --

21       MR. CAPOGROSSO:  Fine.

22       THE COURT:  -- what you're saying.  I don't

23  know if it's the line or you're speaking not into the

24  phone but please, you are asking Mr. Thompson a question

25  about Gelbstein's deposition, so what is the question?

15

Proceedings

1      MR. CAPOGROSSO:  Yes.  The question is at his

2  deposition, I'm speaking into the phone now, he indicated

3  that there were no ticket brokers in his office, Jewish

4  ticket brokers in his office.  Defendant Calvo indicated

5  that there were.  She saw them.  I saw them. I was there

6  ten years.  He indicated that he was not pleading

7  motorists guilty on a sidebar with Judge Bloomstein.  I

8  indicated I saw that.  He indicated that he might have --

9  might have --

10      THE COURT:  What is the question that you have,

11  Mr. Capogrosso?

12      MR. CAPOGROSSO:  The question is is this, your

13  Honor.  Your Honor, the question is this.  These are

14  allegations of wrongdoing on behalf of -- by Defendant

15  Gelbstein by myself on behalf -- by defendant Gelbstein

16  by myself.  Has the Attorney General's office opened up

17  an investigation concerning these allegations of

18  wrongdoing with respect to defendant Gelbstein?

19      THE COURT:  Mr. Capogrosso, sir, with all due

20  respect --

21      MR. CAPOGROSSO:  Yes.

22      THE COURT:  -- you are an attorney.  If you

23  want to ask a FOIA request of the State regarding any

24  investigation, you could do that but Mr. Thompson is not

25  going to have to answer your questions today and again,

16

Proceedings

1   as far as the summary judgment goes, if there are
2   inconsistencies in the testimony of the witnesses, you
3   could use that for whatever purpose is, you could use for
4   whatever purpose you believe will help you sustain your
5   burden as the plaintiff in this civil rights action but
6   that's not the purpose of today's call.
7           So I am not going to have Mr. Thompson have to
8   answer whether there's an investigation into these
9   allegations.  You say there was testimony that
10  contradicted Gelbstein's testimony.  You can point that
11  out in your papers to the Court and make your best
12  argument but that is not for Mr. Thompson today and if
13  you want to file a FOIL request with the State to find
14  out if there has been an investigation, you're an
15  attorney, sir, you're free to do that.
16          MR. CAPOGROSSO:  I understand that.
17          THE COURT:  Okay?
18          MR. CAPOGROSSO:  One more -- I don't want to
19  waste the Court's time, I'll take one more minute.
20          THE COURT:  Yes, sir.
21          MR. CAPOGROSSO:  With respect to your
22  questioning of defendant Smart, now I would ask that a
23  more precise question because part of the question was
24  who told defendant Smart -- who told you to approach me,
25  approach, the word was approach.

17

Proceedings

1    THE COURT:  He said no one did.

2    MR. CAPOGROSSO:  Now defendant Smart --

3    THE COURT:  He said no one did.  And he clearly
4  talked about that you walked in, were staring at him, he
5  was staring at you, because you were staring at him and
6  that's why he approached you.  That's what his sworn
7  testimony was.

8    MR. CAPOGROSSO:  He didn't say that he
9  approached me.

10    THE COURT:  Yes, he did.

11    MR. CAPOGROSSO:  That's the question I want
12  more precise answer.  He never said he approached me.

13    THE COURT:  He said he approached you.  He said
14  he approached you --

15    MR. CAPOGROSSO:  All right.  I'll look at the
16  deposition.

17    THE COURT:  -- for staring at him.

18    MR. CAPOGROSSO:  I'll look at the transcript.

19    THE COURT:  Okay.

20    MR. CAPOGROSSO:  All right.  Fine.  Thank you,
21  Judge.

22    THE COURT:  Okay. Anything else, Mr. Thompson
23  before we adjourn today?

24    MR. THOMPSON:  Yes, your Honor, one quick
25  matter and it may be for Judge Komitee.  I noticed in Mr.

18

Proceedings

1   Smart's submission that he's contemplating filing his own

2   motion for summary judgment which would presumably go on

3   a different and alter timetable than ours.

4           THE COURT:  Hopefully not, hopefully not.

5   Hopefully, whoever is filing for him will be able to file

6   something short and sweet within the time frame set by

7   the Court and if not, they'll make the application to

8   Judge Komitee.

9           MR. THOMPSON:  Okay.  Our request was just that

10  we, you know -- our time table be harmonized with that

11  one but we can see what happens then.

12          THE COURT:  Stay with your time table unless

13  you need an extension of time and then you should

14  approach Mr. Capogrosso before approaching Judge Komitee.

15          MR. THOMPSON:  Thank you, your Honor.

16          THE COURT:  Anything further, Mr. Smart, before

17  we adjourn here today?

18          MR. SMART:  No, what I -- what I would like to

19  say to Mr. Capogrosso is that I have known him -- your

20  Honor, I have known Mario, I used to work for Alexanders

21  and that was how the whole thing started and I was

22  talking him and I say oh, he used to work for Alexanders

23  also.  At what part --

24          MR. CAPOGROSSO:  No, this is off the record.

25          MR. SMART:  No, no, no, no this is very --

19

Proceedings

1          THE COURT:  No, we're still on the record.

2          MR. SMART:  This is very -- this is very

3  important.  This is very important because that is where

4  you and me became we're talking about this and then we're

5  talking about Alexanders and all those kind of stuff and

6  then -- then he also told me that he's so lonely where he

7  lives and he would like to find a place, a club or some

8  sort.  So I told him about Log Cabin, that was a club on

9  23rd Street and Avenue Z and -- Town Coffee (ph.) on 20 -

10  - on 18th Street and Avenue Z.  And we went on -- that

11  went on, he carry on and you impressed me for introduce

12  you to those clubs.  So you know, I am just shocked that

13  this nonsense will come to this kind of a area which I

14  wasn't expecting and that's all I have to say because I'm

15  very shocked.

16          MR. CAPOGROSSO:  Well, this is nonsense.  I'm

17  out of work.  My career has been ruined, David, ruined.

18  I don't have to explain --

19          THE COURT:  Again --

20          MR. CAPOGROSSO:  -- (indiscernible) the things

21  that you created, (indiscernible) stopped.

22          THE COURT:  Mr. Capogrosso --

23          MR. CAPOGROSSO:  There was all kinds of

24  nonsense.

25          THE COURT:  Mr. Capogrosso, again --

20

Proceedings

1          MR. CAPOGROSSO:  Yes, Judge.

2          THE COURT:  -- you're litigating the case --

3          MR. CAPOGROSSO:  I understand.

4          THE COURT:  -- Mr. Smart just stated on the

5   record that he's shocked.  It has nothing to do with the

6   merits of the case.  He's shocked.

7          MR. CAPOGROSSO:  Fine, Judge.

8          THE COURT:  He's entitled to his feelings.

9          Is there anything else that anybody needs to

10  address today, otherwise I am adjourning the conference.

11  All discovery is closed.

12         MR. CAPOGROSSO:  Okay, David.

13         THE COURT:  The defendants have gotten

14  permission from Judge Komitee to move for summary

15  judgment and the schedule has been set by Judge Komitee

16  and any alteration of that schedule should only be made

17  on application to Judge Komitee after the parties have

18  spoken about it if they need any extension of time.  That

19  works on both sides, Mr. Capogrosso.  If you need more

20  time, you need to contact Mr. Thompson.  If Mr. Thompson

21  needs more time, he needs to contact you and the Court

22  could always grant it even if one side or the other says

23  no.

24         So again, I am saying that the summary judgment

25  schedule remains in effect.  I have said to look at the

Proceedings

1   Local Rules, Mr. Thompson, to make sure that you're

2   complying with them, that goes for you as well, Mr.

3   Capogrosso.  They'll get you the transcript of the

4   deposition.  You'll get them the transcripts.  I will get

5   the record made from today's conference and make that

6   transcript available to you, Mr. Capogrosso and with

7   that, we are adjourned.

8           MR. CAPOGROSSO:  Thank you.

9           THE COURT:  Thank you everybody very much.

10          MR. SMART:  Thank you, your Honor.

11                  (Matter Concluded)

12                      -o0o-

13

14

15

16

17

18

19

20

21

22

23

24

25

22

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **17th** day of **March** 2021.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 30 2022 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MARIO H. CAPOGROSSO,

Plaintiff,

-against-

ALAN GELBSTEIN, in his individual capacity;
IDA TRASCHEN, in her individual capacity;
et al.,

Defendants.
------------------------------------------------------------ X

JUDGMENT
18-CV-2710(EK)(LB)

A Memorandum and Order of Honorable Eric Komitee, United States District Judge,

having been filed on September 29, 2022, adopting the Report and Recommendation of

Magistrate Judge Lois Bloom, dated February 1, 2022, granting Defendants' motions for

summary judgment; declining to exercise supplemental jurisdiction over Plaintiff's state-law

claims against defendants Tahir and PEC Group of NY, Inc.; granting Defendants' motion to

strike Plaintiff's unauthorized sur-replies (ECF Nos. 289 and 290); it is

ORDERED and ADJUDGED that Defendants' motions for summary judgment are

granted; that the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law

claims against defendants Tahir and PEC Group of NY, Inc.; and that Defendants' motion to

strike Plaintiff's unauthorized sur-replies (ECF Nos. 289 and 290) is granted.

Dated: Brooklyn, NY
     September 30, 2022

Brenna B. Mahoney
Clerk of Court

By: /s/Jalitza Poveda
Deputy Clerk

109