# 22-2827

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆━◆

MARIO H. CAPOGROSSO,

*Plaintiff-Counter-Defendant-Appellant,*

—against—

ALAN GELBSTEIN, in his official and individual capacity, IDA TRASCHEN, in her official and individual capacity, DANIELLE CALVO, in her official and individual capacity, PEC GROUP OF NY, INC., MARK J.F. SCHROEDER, COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES,

*Defendants-Appellees,*

DAVID SMART, SADIQ TAHIR,

*Defendants-Counter-Claimants-Appellees,*

BOSHRA VAHDATLAMAS, in her official and individual capacity, AKA BUSHRA VAHDAT, ELIZABETH PRICKETT-MORGAN, in her official and individual capacity, JEAN FLANAGAN, in her official and individual capacity, VINCENT PALMIERI, in his official and individual capacity, JOHN and JANE DOE,

*Defendants.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## APPELLEES' JOINT SUPPLEMENTAL APPENDIX
### (LOCAL RULE 30.1(g))
### VOLUME I OF II
### (Pages JSA-1 to JSA-179)

LETITIA JAMES
ATTORNEY GENERAL
STATE OF NEW YORK
28 Liberty Street
New York, New York 10005
(212) 416-8020

*Attorney for the State
  Defendants-Appellees*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant-Appellee
  David Smart*

# TABLE OF CONTENTS

**Page**

Complaint, dated May 8, 2018, ECF No. 1 ................................................. J.S.A. 1

Order to Answer, dated June 12, 2018, ECF No. 12 ................................. J.S.A. 27

Report & Recommendation re: State Defendants' Motion to
    Dismiss, dated January 30, 2019, ECF No. 51 .................................... J.S.A. 28

Order Adopting Report & Recommendation,
    dated September 25, 2019, ECF No. 71 .............................................. J.S.A. 58

Order re: Discovery, dated January 10, 2020, ECF No. 104 ..................... J.S.A. 91

Transcript of January 10, 2020 Hearing, ECF No. 105 ............................. J.S.A. 92

Order Denying Motion for Reconsideration of Discovery Order,
    dated February 3, 2020, ECF No. 108 ............................................... J.S.A. 133

State Defendants' Letter to Magistrate Judge Bloom,
    dated February 25, 2020, ECF No. 113 .............................................. J.S.A. 136

Order re: Depositions of State Defendants,
    dated February 26, 2020, ECF No. 114 .............................................. J.S.A. 138

Protective Order, dated December 16, 2020, ECF No. 148 ..................... J.S.A. 143

Order re: Motion to Compel Discovery,
    dated January 13, 2021, ECF No. 154 ............................................... J.S.A. 153

Order re: Plaintiff's Interrogatories to Defendant Smart, dated
    February 15, 2021, ECF No. 159 ....................................................... J.S.A. 156

Transcript of March 16, 2021 Hearing, ECF No. 163 ............................. J.S.A. 158

Excerpts from Plaintiff's Responses to Interrogatories and
    Document Production, dated May 17, 2021, ECF No. 178-4 .............J.S.A. 180

Excerpts from the Deposition of Danielle Calvo,
    dated December 17, 2020, ECF No. 178-6 .........................................J.S.A. 185

Declaration of Danielle Calvo, dated May 14, 2021, ECF No. 183 ........J.S.A. 194

i

Exhibit 1 to the Calvo Declaration, Petition re:
 Mr. Capogrosso, dated January 6, 2011, ECF No. 184 ................. J.S.A. 198

Exhibit 3 to the Calvo Declaration, Report of Workplace
 Violence Incident, dated May 5, 2015, ECF No. 186 ................... J.S.A. 199

Exhibit 4 to the Calvo Declaration, Report of Workplace
 Violence Incident, dated May 11, 2014, ECF No. 187 .................J.S.A. 201

Exhibit 5 to the Calvo Declaration, Witness Statement, dated
 May 11, 2015, ECF No. 188 ...........................................................J.S.A. 203

Exhibit 6 to the Calvo Declaration, Witness Statement, dated
 May 11, 2015, ECF No. 189 ...........................................................J.S.A. 204

Declaration of Alan Gelbstein,
dated May 14, 2021, ECF No. 190 ......................................................J.S.A. 205

Exhibit 1 to the Gelbstein Declaration, Written Complaint,
 dated April 21, 2009, ECF No. 191 .................................................J.S.A. 216

Exhibit 2 to the Gelbstein Declaration, Written Complaint,
 dated April 21, 2009, ECF No. 192 .................................................J.S.A. 217

Exhibit 3 to the Gelbstein Declaration, Written Complaint re:
 Mr. Capogrosso, dated June 19, 2009, ECF No. 193 .....................J.S.A. 218

Exhibit 4 to the Gelbstein Declaration, Written Complaint,
 dated July 31, 2009, ECF No. 194 ..................................................J.S.A. 219

Exhibit 6 to the Gelbstein Declaration, Email re: "Difficult
 Issues" at Brooklyn South TVB, dated December 23, 2011,
 ECF No. 196 ...................................................................................J.S.A. 220

Exhibit 7 to the Gelbstein Declaration, Witness Statement,
 dated December 22, 2011, ECF No. 197 .........................................J.S.A. 222

Exhibit 8 to the Gelbstein Declaration, Witness Statement,
 dated December 22, 2011, ECF No. 198.........................................J.S.A. 223

Exhibit 9 to the Gelbstein Declaration, Witness Statement,
 dated December 22, 2011, ECF No. 199 ........................................ J.S.A. 224

Exhibit 10 to the Gelbstein Declaration, Witness Statement,
     dated December 23, 2011, ECF No. 200 ........................................ J.S.A. 225

Exhibit 11 to the Gelbstein Declaration, Gelbstein Affirmation
     in Support of DMV's Opposition to Article 78 Proceeding,
     dated May 3, 2012, ECF No. 201 ....................................................J.S.A. 226

Exhibit 12 to the Gelbstein Declaration, Report of Workplace
     Violence Incident, dated May 5, 2014, ECF No. 202 ................... J.S.A. 230

Exhibit 13 to the Gelbstein Declaration, Written Complaint,
     dated October 29, 2014, ECF No. 203 ...........................................J.S.A. 232

Exhibit 14 to the Gelbstein Declaration, Written Complaint,
     dated February 3, 2015, ECF No. 204..............................................J.S.A. 233

Exhibit 15 to the Gelbstein Declaration, Written Complaint,
     dated February 5, 2015, ECF No. 205 ............................................J.S.A. 234

Exhibit 16 to the Gelbstein Declaration, Witness Statement,
     dated February 5, 2015, ECF No. 206............................................ J.S.A. 235

Exhibit 17 to the Gelbstein Declaration, Report of Workplace
     Violence Incident, dated February 5, 2015, ECF No. 207 .............J.S.A. 237

Exhibit 18 to the Gelbstein Declaration, Email re:
     "Capogrosso," dated February 9, 2015, ECF No. 208 ...................J.S.A. 241

Exhibit 19 to the Gelbstein Declaration, Memorandum re:
     Mr. Capogrosso, dated March 19, 2015, ECF No. 209...................J.S.A. 242

Exhibit 20 to the Gelbstein Declaration, Written Complaint,
     dated May 5, 2015, ECF No. 210.....................................................J.S.A. 244

Exhibit 21 to the Gelbstein Declaration, Witness Statement,
     dated May 5, 2015, ECF No. 211 ....................................................J.S.A. 245

Exhibit 22 to the Gelbstein Declaration, Witness Statement,
     dated May 5, 2015, ECF No. 212.....................................................J.S.A. 246

Exhibit 24 to the Gelbstein Declaration, Report of Workplace
     Violence Incident, dated May 11, 2015, ECF No. 214 ..................J.S.A. 248

Exhibit 25 to the Gelbstein Declaration, Witness Statement,
dated May 11, 2015, ECF No. 215 .....................................................J.S.A. 250

Exhibit 26 to the Gelbstein Declaration, Witness Statement,
dated May 11, 2015, ECF No. 216 ..................................................J.S.A. 251

Declaration of Ida Traschen, dated May 14, 2021, ECF No. 217 ...........J.S.A. 252

Exhibit 2 to the Traschen Declaration, Letter from
I. Traschen, dated May 15, 2012, ECF No. 219 ............................J.S.A. 256

Declaration of James M. Thompson, dated May 17, 2021,
ECF No. 220 ..................................................................................... J.S.A. 258

Excerpts of Exhibits 1 and 2 to the Thompson Declaration,
Transcript of Deposition of Mario Capogrosso, dated
December 18, 2020, ECFs No. 221, 222 .........................................J.S.A. 261

Exhibit 3 to the Thompson Declaration, Letter from
C. McDonough re: "Improper Expulsion of Mario Capogrosso,
Esq.," dated January 25, 2012, ECF No. 223 .................................J.S.A. 300

Exhibit 4 to the Thompson Declaration, Article 78 Petition,
dated March 1, 2012, ECF No. 224 .................................................J.S.A. 303

Exhibit 5 to the Thompson Declaration, Report of
Dr. John T. McCann re: "Mario Capogrosso,"
dated June 14, 2012, ECF No. 225 ..................................................J.S.A. 319

Exhibit 6 to the Thompson Declaration, Article 78 Dismissal,
dated June 22, 2012, ECF No. 226...................................................J.S.A. 321

Exhibit 6 to the Thompson Declaration, Letter from
M. Capogrosso to E. Prickett-Morgan,
dated March 20, 2015, ECF No. 227 ...............................................J.S.A. 322

Report & Recommendation re: Motions for Summary Judgment,
dated February 1, 2011, ECF No. 278 ..............................................J.S.A. 324

Order Adopting Report & Recommendation,
dated September 29, 2022, ECF No. 293 ............................................J.S.A. 344

Judgment, dated September 30, 2022, ECF No. 294 .................................J.S.A. 353

# ORIGINAL    CV 18-2710

UNITED STATES DISTRICT COURT    EASTERN DISTRICT OF NEW YORK

**BRODIE, J.**

MARIO H. CAPOGROSSO,

        Plaintiff

**BLOOM, M.J.**

    -against-

VERIFIED COMPLAINT
JURY TRIAL DEMANDED

ALAN GELBSTEIN, in his official and individual capacity;
BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) in her official and individual capacity;
IDA TRASCHEN, in her official and individual capacity;
ELIZABETH PRICKETT-MORGAN, in her official and individual capacity;
JEAN FLANAGAN, in her official and individual capacity;
VINCENT PALMIERI, in his official and individual capacity;
DANIELLE CALVO, in her official and individual capacity;
SADIQ TAHIR, in his individual capacity;
PEC GROUP OF NY, INC.;
DAVID SMART, in his individual capacity;
JOHN AND JANE DOE.

        Defendants



RECEIVED
MAY 08 2018
PRO SE OFFICE

The Plaintiff, Mario H. Capogrosso, alleges the following on the basis of his personal knowledge as to himself and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.   In this action, the Plaintiff seeks money damages for violations of his Civil Rights under the Constitution of the United States and asserts his right to sue for said violations pursuant to 42 U.S.C.§1983, 42 U.S.C. §1985, 42 U.S.C. §1986 and 42 U.S.C. §1988, as well as pendent

–1–

JSA-001

causes of action under the Common Law of the State of New York.

2.    Plaintiff, at all times hereinafter mentioned, was and still is a member in good standing as a duly licensed attorney at law in the State of New York, as well as in the State of Connecticut.

3.    Between on or about April 2005 and May 11, 2015, Plaintiff practiced law almost exclusively in what is known as the Traffic Violations Bureau in the metropolitan New York City area, including the Brooklyn South office of that Bureau.

4.    The Traffic Violations Bureau is an agency of the State of New York, and the said offices of said Bureau are presided over by Administrative Law Judges.

5.    In December 2011, Plaintiff was temporarily suspended from practicing his profession in the Traffic Violations Bureau Courts as a result of complaints of misconduct, which were never determined to be true as no hearings were ever held in response thereto and Plaintiff was never given the opportunity to confront his accusers. Plaintiff was restored, as a result of a Stipulation of Settlement, several months later and all of his rights and privileges were also restored.    At the time that Plaintiff was temporarily suspended, he was advised that one of his accusers was Security Guard, David Smart, who is a Defendant in this action.

6.    That during the time that the Plaintiff practiced law in these various Traffic Violations Bureau locations during the period above set forth, Plaintiff accumulated a    clientele of approximately 850 people.    More specifically, Plaintiff represented these clients in response to traffic tickets issued by law enforcement personnel to these clients in the New York Metropolitan area.

7.    At all times hereinafter mentioned Defendant David Smart was a security guard under the direct supervision and control of the Traffic Violations Bureau, while at the same time the said

–2–

David Smart was an employee of Defendant, PEC Group of NY, Inc., a private security company engaging in contract work for the various offices of the Traffic Violations Bureau in the New York metropolitan area.

8.    That for a long period of time, prior to May 11, 2015, Plaintiff had been subjected to constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance by Defendant, David Smart, which interfered with Plaintiff's representation of his many clients.

9.    That in response to said harassment, and threats, Plaintiff reported the same to Defendant Alan Gelbstein, who was the Administrative Law Judge for the Traffic Violations Bureau in the Brooklyn South office. When Defendant Gelbstein refused to take any action on behalf of the Plaintiff to ensure that the disruptive and unlawful behavior of Defendant Smart would cease, that on March 20, 2015, Plaintiff wrote a formal letter of complaint to Defendant Elizabeth Prickett-Morgan, who was at the time an Assistant Attorney General in the New York City office.    Plaintiff also, in said letter, complained about Defendant Gelbstein alleging that Defendant Gelbstein was either complicit, incapable or incompetent to handle the ongoing issues that Plaintiff had been experiencing in the work place with Defendant Security Guard David Smart. Said Defendant Elizabeth Prickett-Morgan failed to respond to Plaintiff's written complaint; and upon information and belief, failed to take any action to abate the harassing and unlawful conduct of Defendant Smart toward the person of the Plaintiff.

10.    On Friday, May 8, 2015, Defendant Alan Gelbstein approached the Plaintiff, together with Defendant Danielle Calvo (Clerk supervisor of the Brooklyn South Traffic Violations office) and said, "Can't you go practice somewhere else...I saw what you wrote about me that I am complicit and incapable."    This occurred while Plaintiff was sitting in the Attorney's Room at

–3–

the Brooklyn South office of Traffic Violations Bureau.

11.   On May 11, 2015, Defendant David Smart once again approached the Plaintiff in an aggressive and threatening manner in an attempt to provoke the Plaintiff into a physical confrontation. Although Plaintiff refused to so engage Defendant Smart, within a few minutes thereafter, Defendant Calvo approached the Plaintiff with several New York City police officers and told the Plaintiff that he was no longer allowed at the Traffic Violations Bureaus and that Plaintiff was to leave the building immediately.   Plaintiff was also advised by Defendant Calvo that he should phone first Assistant Counsel Legal Bureau for the State of New York Department of Motor Vehicles, Defendant Ida Traschen for further instructions. Plaintiff phoned Defendant Traschen the same day after he had left the TVB Brooklyn South facility and was advised by Defendant Traschen that Plaintiff was permanently barred from representing any clients in the future at any of the TVB locations throughout the State.

12.   Following the May 11, 2015 phone call to Defendant Traschen, Plaintiff made follow up calls to said Defendant on May 12, 2015, May 26, 2015, August 4, 2015, August 7, 2015, August 10, 2015, August 12, 2015, and August 25, 2015 seeking clarification. However, Defendant Traschen would not take Plaintiff's calls.

13.   In an attempt to obtain a clarification for Plaintiff being barred from representing any clients at any of the TVB locations, Plaintiff wrote letters to the following agencies:

DMV Freedom of Information Law Office, 6 Empire State Plaza, Albany, New York 12228 on January 15, 2016;

State of New York Office of the Inspector General, Empire State Plaza, Agency Building 2, 16th Floor, Albany, New York 12223 in July 2015, April 28, 2016 and May 17, 2016;

-4-

JSA-004

State of New York Grievance Committee for the Second, Eleventh, Thirteenth Judicial Districts, Renaissance Plaza, 335 Adams Street, Suite 2400, Brooklyn, New York 11201-3745 on May 2, 2016;

State of New York Supreme Court, Appellate Division, Third Judicial Department, Committee on Professional Standards, 286 Washington Avenue Extension, Suite 200, Albany, New York 12203-6320 on May 5, 2016;

New York State Commission on Judicial Conduct, 61 Broadway, Suite 1200, New York, New York 10006 on March 12, 2016 and May 16, 2016;

New York State Department of Motor Vehicles, 6 Empire State Plaza, Room 512, Albany, New York 12226, in c/o supervising authority, on May 16, 2016;

Office of Traffic Violations, 801 Axinn Avenue, Garden City, New York 11530 in c/o supervising administrative judge, on May 16, 2016;

Brooklyn South TVB located at 2875 West 8th Street, Brooklyn, New York 11224, in c/o of the supervising administrative law judge, on June 20, 2016;

Office of Traffic Violations, 801 Axinn Avenue, Garden City, New York 11530, in c/o the supervising administrative law judge, on June 20, 2016; and

Ida Traschen, first Assistant Counsel Legal Bureau, State of New York Department of Motor Vehicles located at 6 Empire State Plaza, Albany, New York 12228, on June 2016.

14.    The only response Plaintiff received to any of his inquiries was that they could not or would not provide him with any clarification.

15.    At the time that Plaintiff was expelled from practicing law and representing clients at any of the locations of the Traffic Violations Bureau, Plaintiff was never provided with the reasons

–5–

or rationale for such action and Plaintiff has not been allowed to return to practice at any of the Traffic Violations Bureau sites since May 11, 2015. Further, Plaintiff was not provided with any documentation as to the identity of his accusers, the particulars or the nature of any complaints against him, nor was the Plaintiff given the opportunity to participate in a due process hearing.

16.  Plaintiff was legally entitled to a due process hearing because he had a property and/or liberty interest in practicing his profession in the Traffic Violations Bureau Court. The Traffic Violations Bureau Court is an agency of the New York State Motor Vehicle Department, a State government agency.

17.  Plaintiff has no adequate remedy under State law.


## PARTIES

18.  Plaintiff, MARIO H. CAPOGROSSO, is a citizen of the United States and a resident of the State of New York, and is an attorney duly licensed to practice in the States of New York and Connecticut. The Plaintiff is not and never has been an employee of the State of New York or any agency of the State of New York.

19.  Defendant, ALAN GELBSTEIN, is a citizen of the United States and a resident of the State of New York, who upon information and belief resides at 1510 East 7th Street, Brooklyn New York, 11230, and at all times hereinafter mentioned was an Administrative Law Judge in the Traffic Violations Bureau, Brooklyn South office, located at 2875 West 8th Street, Brooklyn, New York, 11224. This Defendant is being sued individually and in his official capacity.

20.  Defendant BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) is a citizen of the United States and a resident of the State of New York, and at all times hereinafter

–6–

mentioned was a Supervisory Administrative Law Judge at the Office of Traffic Violations, 801 Axinn Avenue, Garden City, New York, 11530. This Defendant is being sued individually and in her official capacity.

21. Defendant, IDA TRASCHEN, is a citizen of the United States and a resident of the State of New York, and at all times hereinafter mentioned was a first Assistant Counsel Legal Bureau for the State of New York Department of Motor Vehicles, with offices at 6 Empire State Plaza, Albany, New York 12228. This Defendant is being sued individually and in her official capacity.

22. Defendant ELIZABETH PRICKETT-MORGAN, is a citizen of the United States and a resident of the State of New York, and at all times hereinafter mentioned was an Assistant General of the State of New York, with offices at 120 Broadway, New York City, New York. This Defendant is being sued individually and in her official capacity.

23. Defendant, JEAN FLANAGAN, is a citizen of the United States and a resident of the State of New York, and upon information belief works in a supervisory capacity for either the Traffic Violations Bureau or the Department of Motor Vehicles of the State of New York, with offices, upon information and belief, at 6 Empire State Plaza, Albany, New York. 12228. This Defendant is being sued individually and in her official capacity.

24. Defendant VINCENT PALMIERI is a citizen of the United States and a resident of the State of New York, and upon information belief works in a supervisory capacity for either the Traffic Violations Bureau or the Department of Motor Vehicles of the State of New York with offices, upon information and belief, at 6 Empire State Plaza, Albany, New York. 12228. This Defendant is being sued individually and in his official capacity.

–7–

JSA-007

25.     Defendant, DANIELLE CALVO, is a citizen of the United States and a resident of the State of New York, and at all times hereinafter mentioned was the Clerk supervisor of the Brooklyn South Traffic Violations Bureau office, located at 2875 West 8th Street, Brooklyn, New York 11224.   This Defendant is being sued individually and in her official capacity.

26.     Defendant, SADIQ TAHIR, is a citizen and/or legal resident of the United States and a resident of the State of New York, who upon information and belief resides at 3092 Brighton 4th Street, Brooklyn New York 11235, and at all times hereinafter mentioned was a New York licensed attorney at law practicing in TVB Court in the metropolitan New York area.

27.     Defendant PEC GROUP OF NY, INC., is a private security company engaging in contract work for the various offices of the Traffic Violations Bureau in the New York metropolitan area, with offices upon information and belief at 352 Seventh Avenue, Suite 701, New York, New York 10001 and 935 S. Lake Blvd., #7, Mahopac New York 10541.

28.     Defendant DAVID SMART is a citizen of the United States and a resident of the State of New York, who upon information and belief resides at 2355 Batchelder Street, Brooklyn New York 11229, and at all times hereinafter mentioned was employed by the Defendant, PEC Group of NY, Inc., as a security guard, and was assigned as a security guard at the Brooklyn South Traffic Violations Bureau, Brooklyn office, located at 2875 West 8th Street, Brooklyn New York, 11229. While at said location, said Defendant was under the direct supervision and control of Defendants Gelbstein and Calvo.

## GENERAL ALLEGATIONS

29.     Defendants Gelbstein, Calvo, Vahdatlamas (Vahdat), Traschen, Prickett-Morgan, Flanagan and Palmieri, are being sued in his or her individual as well as their official capacities.

–8–

30.     The actions of the Defendants named in the previous paragraph were conducted under Color of State Law and in willful disregard of the rights of the Plaintiff to be free from retaliation for the exercise of his First Amendment rights, his right to freedom of speech, as well as the right to procedural and substantive due process under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

31.     The Defendants that are sued in their individual and official capacities either personally engaged in conduct that violated Plaintiff's Constitutional rights, or were policy makers employed by the agencies of the State of New York, including the Attorney General's Office, Department of Motor Vehicles, or Traffic Violations Bureau and either authorized, ratified, or condoned the conduct of their said fellow Defendant(s) in willful violation of Plaintiff's United States Constitutional rights.

32.     The Defendants' acts were done with malice and oppression warranting the assessment of exemplary or punitive damages against said Defendants.

## JURISDICTION AND VENUE

33.     This action is being brought pursuant to 42 U. S. C. §1983, §1985, §1986, and §1988, Fifth and Fourteenth Amendments of the United States Constitution.

34.     Jurisdiction is founded in 28 U. S. C. §1331 and §1343 (1), (2), (3) and (4).

35.     Venue properly lies with this Court pursuant to 28 U. S. C. §1391(b) because the events giving rise to Plaintiff's claims occurred in the Eastern District of New York.

**Alan Gelbstein**

36.     Upon information and belief, Defendant Gelbstein's unconstitutional and tortious

–9–

conduct, and consequently, his liability includes, but is not limited to, his conduct described in the following paragraphs:

37.  Defendant Gelbstein was at all relevant times, as set forth in Plaintiff's Complaint, an Administrative Law Judge in the Brooklyn South Traffic Violations Bureau office, (hereinafter referred to as TVB) located at 2875 West 8th Street, Brooklyn, New York. Defendant Gelbstein adjudicated traffic tickets at the TVB and at all relevant times was a policy maker for administrative and employment matters.

38.  Upon information and belief, Defendant Gelbstein actively participated in the decision to permanently bar (without the benefit of a "due process" hearing) the Plaintiff from practicing his profession in the TVB Courts in the State of New York.  The said Defendant was made fully aware of the constant and unrelenting threats and harassment on the part of Defendant David Smart and against the person of the Plaintiff, as a result of direct complaints made to him by the Plaintiff over a period of many months prior to May 11, 2015.

39.  Also, Defendant Gelbstein was aware of a written complaint made of and concerning him by the Plaintiff in the way he administered his Court, pursuant to a letter dated March 20, 2015, to Defendant Morgan, who was then acting as an Assistant Attorney General for the State of New York and the Department of Motor Vehicles.

40.  Upon information and belief, Defendant Gelbstein not only ignored Plaintiff's complaint about the conduct of Defendant Smart, but in fact encouraged Defendant Smart to continue to confront the Plaintiff in an attempt to "bait the Plaintiff" into a physical response to justify barring the Plaintiff permanently from practicing his profession in the TVB Courts.

41.  Upon information and belief, Defendant Gelbstein conspired with Defendant Calvo and in fact ordered and directed Defendant Calvo to summon New York City police officers to the

–10–

JSA-010

TVB Court at Brooklyn South on May 11, 2015 and directed and authorized Defendant Calvo to order the Plaintiff to leave the premises of the TVB Court and to use the presence of New York City police offices to facilitate that removal.

42. Plaintiff alleges that said Defendant was motivated to take such direct action against the Plaintiff in retaliation for Plaintiff exercising his First Amendment Rights in criticizing the way said Defendant administered his official office.

43. At all relevant times Defendant Gelbstein was acting in his administrative capacity and not in a judicial capacity and therefore said Defendant is not entitled to absolute immunity.

**Boshra Vahdatlamas, (Also Known as Bushra Vahdat)**

44. Upon information and belief, Defendant Vahdatlamas' unconstitutional and tortious conduct, and consequently, her liability includes, but is not limited to, her conduct described in the following paragraphs:

45. Defendant Vahdatlamas at all relevant times was acting as a Supervisory Administrative Law Judge.

46. At all relevant times, Defendant Vahdatlamas was in consultation with one or more of the remaining individual Defendants concerning issues raised by the Plaintiff of misconduct on the part of Defendants Smart and Gelbstein and treated the violation of Plaintiff's constitutional rights by fellow Defendants with complete indifference and/or ratified and condoned said unconstitutional acts as a supervisory person.

47. Defendant Vahdatlamas at all relevant times was acting in her administrative capacity and not in a judicial capacity and therefore said Defendant is not entitled to absolute immunity.

**Ida Traschen**

48. Upon information and belief, Defendant Traschen's unconstitutional and tortious

–11–

conduct, and consequently, his/her liability includes, but is not limited to, his/her conduct described in the following paragraphs:

49.   At all relevant times Defendant Traschen was acting as First Assistant Legal Counsel to the TVB and actively participated in the violation of Plaintiff's constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by directly informing the Plaintiff that he was no longer allowed to practice law in the TVB Courts.   Said Defendant also willfully ignored Plaintiff's many phone calls and letters seeking an explanation for his removal and demanding a right to be given a chance to confront any accusers, including a due process hearing.

**Elizabeth Prickett-Morgan**

50.   Upon information and belief, Defendant Prickett-Morgan's unconstitutional and tortious conduct, and consequently, her liability includes, but is not limited to, her conduct described in the following paragraphs:

51.   At all relevant times Defendant Prickett-Morgan was acting as an Assistant Attorney General for the State of New York.

52.   Upon information and belief, after receiving Plaintiff's letter dated March 20, 2015, in which Plaintiff complained of the conduct of Defendants Gelbstein and Smart, this Defendant conspired with the Defendants Gelbstein, Smart and one or more of the individual Defendants to cause or contribute to the violation of Plaintiff's First, Fourth, Fifth and Fourteenth rights under the United States Constitution.   Alternatively, said Defendant treated the violation of Plaintiff's said constitutional rights with deliberate indifference and/or condoned and ratified the violation of Plaintiff's said constitutional rights.

**Jean Flanagan and Vincent Palmieri**

−12−

53.     Upon information and belief, Defendants Flanagan and Palmieri's unconstitutional and tortious conduct, and consequently, their liability includes, but is not limited to, their conduct described in the following paragraphs:

54.     Upon information and belief, at all relevant times, Defendants Flanagan and Palmieri were acting in a supervisory capacity of Defendant, Danielle Calvo.

55.     Said Defendants were directly informed by Defendant Calvo that the Plaintiff was permanently barred from practicing law in the TVB Courts as of May 11, 2015 due to an alleged "work place violence incident." Said Defendants failed to direct that any further inquiries should be made to justify the conduct of Defendant Calvo.   As a consequence, said Defendants reacted to the violation of Plaintiff's constitutional rights with deliberate indifference and/or condoned and ratified the unconstitutional conduct of one or more of the remaining individual defendants.

**Danielle Calvo**

56.     Upon information and belief, Defendant Calvo's unconstitutional and tortious conduct, and consequently, her liability includes, but is not limited to, her conduct described in the following paragraphs:

57.     At all relevant times, Defendant Calvo was acting as the Clerk Supervisor of the Brooklyn South Traffic Violations Bureau office.

58.     On May 11, 2015, Defendant Calvo personally confronted the Plaintiff at the Brooklyn South TVB and advised the Plaintiff that he was no longer permitted to practice his profession in the TVB Courts and that he was to leave the premises immediately.   Defendant Calvo made these demands in the presence of a client of the Plaintiff and in the presence of multiple New York City police officers.   Plaintiff believes Defendant Calvo summoned the police officers to the site to remove Plaintiff.     Said Defendant gave no explanation to the Plaintiff as to why

–13–

she made these demands directly to the Plaintiff.

59. Said actions were motivated in retaliation for Plaintiff's exercise of his First Amendment Rights, and in particular his letter to Defendant Prickett-Morgan, dated March 20, 2015.

**David Smart**

60. Upon information and belief, Defendant Smart's unconstitutional and tortious conduct, and consequently, his liability includes, but is not limited to, his conduct described in the following paragraphs:

61. At all relevant times Defendant Smart was acting not only as an employee of an independent contractor but acting under the direct supervision and control of the TVB and more particularly, Defendants Gelbstein and Calvo. Therefore, Defendant Smart was acting as a direct agent of an agency of the State of New York and therefore he was acting under color of State law.

62. For a long period of time up to and including May 11, 2015, said Defendant continually harassed, annoyed and alarmed the Plaintiff and actively interfered with the Plaintiff including, but not limited to, Plaintiff's interaction with clients and potential clients. Said Defendant created a hostile work environment and conspired with Defendants Gelbstein and Calvo in making false allegations against the Plaintiff and attempting to provoke the Plaintiff in physical confrontations at the TVB for the purpose of getting the Plaintiff permanently barred from TVB in retaliation for Plaintiff's exercise of his First Amendment rights, wherein Plaintiff published a written complaint of and concerning said Defendant's conduct at the TVB regarding his aggressive behavior toward the Plaintiff.

63. More particularly, Defendant Smart's aberrant and hostile behavior toward the Plaintiff started on or about June 2012 when said Defendant, while at the TVB Court, pushed

–14–

Plaintiff from behind for no apparent reason in an attempt to reach and take Plaintiff's cell phone. Plaintiff complained to Defendant Gelbstein about this conduct, but Defendant Gelbstein did nothing in response to said complaint.    Between December 2011 and June 2012, Defendant Smart stole a fee from one of Plaintiff's clients, who came looking for the Plaintiff when Plaintiff was not at the TVB Brooklyn South.

64.   On three or four separate occasions between December 2012 and December 2014, Defendant Smart approached the Plaintiff in a hostile and aggressive manner, stood within inches of Plaintiff's personal space, stared and glared at Plaintiff, dipped his head to the side, hide his right hand and position his foot forward in a fighting stance.    On each of these occasions, Plaintiff asked Defendant Smart as to what was his problem, and Defendant Smart would respond "F... You, you are the problem".

65. On or about October 23, 2014, after Plaintiff had moved an umbrella, which was inadvertently left behind on top of a trash can by a motorist, so that Plaintiff could lay down a file, Defendant Smart approached Plaintiff by verbal assault stated to Plaintiff by staring, "do not touch that umbrella or else."

66.   In November 2014, Plaintiff verbally complained about Defendant Smart's conduct to Defendant Vahdatlamas at her office in Garden City, New York.

67.   On or about December 3, 2014, at approximately 9:20 a.m., as Plaintiff approached the front of the Clerk's motorist entry line, Defendant Smart got up and made the sign of the cross twice and directed a "rigid spear hand" directly at the Plaintiff.    Plaintiff verbally complained to Defendant Gelbstein about that incident.

68.   Between January 2015 and early May 2015, Plaintiff observed Defendant Smart enter the attorneys' room, and tamper with Plaintiff's files.

–15–

69.     On numerous occasions between January 2015 and March 2015, Plaintiff again complained to Defendant Gelbstein about the conduct of Defendant Smart and requested that Defendant Gelbstein look at security tapes, which Plaintiff believed would show Defendant Smart tampering with Plaintiff's files.     Defendant Gelbstein's response to Plaintiff was simply "a spade is a spade".

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS, ALAN GELBSTEIN, BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) IDA TRASCHEN, ELIZABETH PRICKETT-MORGAN JEAN FLANAGAN, VINCENT PALMIERI, DANIELLE CALVO, and DAVID SMART, IN THEIR INDIVIDUAL CAPACITIES

70.     Plaintiff realleges, reaffirms and incorporates herein each and every allegation of fact or allegation made on information and belief hereinbefore set forth in this Complaint.

71.     At the time that Plaintiff wrote and published his letter to Defendant Prickett-Morgan on March 20, 2015, complaining of the conduct of Defendants Gelbstein and Smart in the exercise of their positions at the TVB Court in Brooklyn South, Plaintiff was exercising his rights under the First Amendment of the United States Constitution as a private citizen and not as an employee of the State of New York or its Traffic Violations Bureau.

72.     At the time that Plaintiff published his letter of complaint to Defendant Prickett-Morgan, the Plaintiff had an interest protected by the First Amendment.     More particularly, Plaintiff had a right to practice his profession in the TVB Court free from harassment, threat, and threat of violence by Defendant Smart.     Also,     Plaintiff had a right to be free from threats, threats of violence and harassment, as well as other retaliatory actions for the exercise of his First Amendment rights by Defendants Gelbstein and Calvo.

–16–

JSA-016

73.   Upon information and belief, Defendants Vahdatlamas, Traschen, Prickett-Morgan, Flanagan and Palmieri in their supervisory capacities caused the Plaintiff's Constitutional rights to be violated by their deliberate indifference and/or condoned and ratified the conduct of Defendants Gelbstein, Calvo and Smart.

74.   The Defendants' actions in arbitrarily barring Plaintiff from practicing his profession in all of the TVB Court on May 11, 2015, without explanation, or an opportunity to be heard were motivated or substantially caused by Plaintiff's exercise of his First Amendment rights. Defendants' actions effectively chilled the exercise of Plaintiff's first Amendment rights.

75.   That as a result of the violation of Plaintiff's First Amendment rights by the above-named Defendants, Plaintiff has been economically damaged in an amount to be determined by the Court.

### AS AND FOR A SECOND, SEPARATE AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANTS, ALAN GELBSTEIN, BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) IDA TRASCHEN, ELIZABETH PRICKETT-MORGAN JEAN FLANAGAN, VINCENT PALMIERI. DANIELLE CALVO, and DAVID SMART IN THEIR INDIVIDUAL CAPACITIES

76.   Plaintiff realleges, reaffirms and incorporates herein each and every allegation of fact or allegation made on information and belief hereinbefore set forth in this Complaint.

77.   The above-named Defendants, sued in their individual capacities, are alleged to be either personally involved in actions taken against the Plaintiff on May 11, 2015, or caused these actions by their deliberate indifference and/or ratified or condoned said acts in their supervisory capacities to deprive the Plaintiff of protections to which he was entitled under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

−17−

78.   Plaintiff asserts that he enjoyed a property and/or liberty interest in his right to practice law and earn a living in Traffic Violations Bureau Courts in the State of New York.

79.   Upon information and belief, said Courts were established and authorized under the supervision of the New York State Department of Motor Vehicles.

80.   That on May 11, 2015, while the Plaintiff was lawfully exercising his rights and responsibilities in representing clients before the TVB Court, Brooklyn South when Defendant Calvo confronted the Plaintiff with multiple New York City police officers while Plaintiff was counseling a client and demanded that the Plaintiff immediately vacate the premises without explanation.

81.   Upon information and belief, Defendant Calvo was directed to do so by Defendant Gelbstein, as well as one or more of the remaining above-named Defendants.   At the time that Plaintiff was ordered to leave by Defendant Calvo, Defendant Calvo did state to the Plaintiff that he should contact Defendant Traschen for further instructions.

82.   After leaving the Brooklyn South TVB Court, Plaintiff phoned Defendant Traschen who advised Plaintiff that he was permanently barred from practicing his profession in every TVB Court in the State of New York.

83.   The Plaintiff was not afforded with any semblance of due process in that the Defendants failed to adequately apprise the Plaintiff of the reasons for his arbitrary dismissal, failure to inform the Plaintiff that he was entitled to a hearing and confront any accusers.

84.   Upon information and belief, the supervising Defendants include Defendants Gelbstein, Vahdatlamas, Traschen, Prickett-Morgan, Flanagan, Palmieri, and Calvo.

85.   As a result of the denial of due process by the above-named Defendants in their individual capacities, Plaintiff has suffered monetary damages in an amount to be determined by

–18–

the Court.

## AS AND FOR A THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANTS, ALAN GELBSTEIN, BOSHRA VAHDATLAMAS, (also known as BUSHRA VAHDAT) IDA TRASCHEN, ELIZABETH PRICKETT-MORGAN JEAN FLANAGAN, VINCENT PALMIERI, and DANIELLE CALVO, IN THEIR OFFICIAL CAPACITIES

86. Plaintiff realleges, reaffirms and incorporates herein each and every allegation of fact or allegation made on information and belief hereinbefore set forth in this Complaint.

87. As recently as March 16, 2018, Plaintiff went to the TVB Court, Brooklyn South and was advised by Gelbstein that he would not be allowed to represent clients in the TVB Court here (Brooklyn South) and not in any traffic court.

88. Plaintiff seeks prospective injunctive relief enjoining said Defendants from excluding the Plaintiff from practicing law in any TVB Court in the metropolitan New York area or the State of New York in the future.

## NEW YORK COMMON LAW CLAIMS

## AS AND FOR A FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANT SADIQ TAHIR

89. Defendant SADIQ TAHIR practiced law in the TVB Court at Brooklyn South in 2015.

90. That the said Defendant was a competitor of the Plaintiff in efforts to attract, retain

–19–

JSA-019

and represent clients in the TVB Courts in the metropolitan New York area.

91.    That after Plaintiff was barred from the TVB Court, Plaintiff learned that Defendant Tahir filed some type of a work place violence report with one or more of his fellow Defendants alleging that the Plaintiff engaged in some type of work place violence.    Plaintiff had no knowledge of this report, nor was Plaintiff advised of such report at the time of his termination from the TVB Court.

92.    Plaintiff in fact did not have any type of a physical altercation with said Defendant Tahir in 2015 or at any other time; said report was presented or filed with a malicious intent for the sole purpose of interfering with the contractual relations that Plaintiff had with existing clients and for the further purpose of assisting and motivating the remaining Defendants from barring the Plaintiff from his TVB law practice so that said Defendant Tahir could take up representation of at least some of Plaintiff's existing clients as well as future potential clients.

93.    The conduct of said Defendant constituted tortious interference with advantageous contractual relations to financially benefit said Defendant.

94.    As a result of said Defendant's conduct in filing a false report against the Plaintiff, Plaintiff has suffered damages in an amount to be determined by the Court.

## AS AND FOR A FIFTH, SEPARATE AND DISTINCT
## CAUSE OF ACTION AGAINST DEFENDANT PEC GROUP OF NY, INC.,

95.    The said Defendant, PEC GROUP OF NY, INC, was negligent in the hiring and training of the individual Defendant, David Smart.

96.    That the Defendant PEC Group of NY, Inc., knew or should have known of the propensities of the Defendant David Smart to commit the tortious acts against the Plaintiff as

–20–

JSA-020

alleged in Plaintiff's Complaint.

97.    That in December 2014, as well as in March 2015, Plaintiff informed Defendant Smart's supervisors at Defendant PEC Group of NY, Inc., of the threatening and harassing acts toward the Plaintiff by Defendant Smart.

98.    In December 2014, Scott Benish, a representative of Defendant PEC Group of NY, Inc., came to the TVB and spoke to Plaintiff concerning the threatening behavior of Defendant Smart.    After Plaintiff reiterated to Mr. Benish, the various threatening behavior of Defendant Smart, Mr. Benish responded by stating, "they (TVB) love Smart and if we lay him off he will just get picked up by someone else".

99.    Defendant PEC Group of NY, Inc., failed to respond to Plaintiff's March 2015 complaint concerning the improper behavior of Defendant Smart.

100.    That the negligent hiring and training by said Defendant Smart contributed to the tortious conduct perpetrated by the individual Defendant against the Plaintiff

101.    That as a result of the tortious conduct of the Defendant's employee, David Smart, said Defendant is liable to respond in money damages to the Plaintiff.


**WHEREFORE** Plaintiff requests the following relief:

a.    Declaratory Judgment declaring that the Defendants have violated Plaintiff's rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by depriving Plaintiff of due process of law;

b.    Prospective injunctive relief enjoining the Defendants from denying the Plaintiff the right to practice law in the Traffic Violations Bureau Courts in the State of New York;

c.    Compensatory and punitive damages against all individual Defendants pursuant to

−21−

Plaintiff's claims in his First and Second Causes of Action in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined according to the proof;

    d.  Punitive damages against the individual Defendants in an amount in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined sufficient to deter and prevent future unlawful conduct;

    e.  Compensatory and punitive damages against Defendant SADIQ TAHIR in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined on his Fourth Cause of Action according to the proof;

    f  Compensatory and punitive damages in excess of twenty million ($20,000,000.00) dollars or in an amount to be determined against Defendant, PEC GROUP OF NY, INC, on his Fifth Cause of Action according to the proof;

    g.  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

    h.  Such other and further relief as appears reasonable and just.

JSA-022

## JURY TRIAL IS DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 7, 2018

Yours truthfully submitted,

Mario H. Capogrosso

21 Sheldrake Place
New Rochelle, New York. 10804
Tel.: 914-806-3692

JSA-023

# VERIFICATION

State of New York ) 
County of Kings ) ss.:

**I, MARIO H. CAPOGROSSO,** duly sworn, deposes and says that I am the Plaintiff in

the within action and have read the foregoing "Complaint" and know the contents thereof, that the

same is true to my own knowledge, except as to the matters therein stated to be alleged on

information and belief, and that as to those matters I believe it to be true.

Mario H. Capogrosso

Sworn to before me this

7 day of May 2018

Notary Public

ABIGAIL VILLAR
Notary Public- State of New York
No.01-VI6197570
Qualified in Kings County
My Commission Expires 12/01/2020

JSA-024

JS 44 (Rev. 11/27/17)

# CIVIL COVER SHEET

## CV18-2710

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MARIO H. CAPOGROSSO
21 SHELDRAKE PLACE
NEW ROCHELLE, NY 10804       (914) 806-3692

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se Plaintiff (SEE ABOVE)

### DEFENDANTS
GARAUFIS, J.

ALAN GELBSTEIN, BOSHRA VAHDATLAMAS (also known as Bushra Vahdat), IDA TRASCHEN, ELIZABETH PRICKETT-MORGAN, JEAN FLANAGAN, VINCENT PALMIERI, DANIELLE

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
CALVO, SADIQ TAHIR, PEC GROUP OF NY, INC, DAVID SMART AND JOHN AND JANE DOE.

BLOOM, M.J.

*ORIGINAL*
*SUMMONS ISSUED*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
"42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986 and  42 U.S.C.1988"
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE   RANDOM/RANDOM       DOCKET NUMBER   NONE

DATE
05/08/2018
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

JSA-025

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, _____, counsel for_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

- ☐ monetary damages sought are in excess of $150,000, exclusive of interest and costs,
- ☑ the complaint seeks injunctive relief,
- ☐ the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?　☐ Yes　☑ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?　☐ Yes　☑ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?　☑ Yes　☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?　☐ Yes　☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐ Yes　　☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes　(If yes, please explain　☐ No

I certify the accuracy of all information provided above.

Signature: _____

JSA-026

Last Modified: 11/27/2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

MARIO H. CAPOGROSSO,

      Plaintiff,

   -against-

ALAN GELBSTEIN, *in his official and individual capacity*,
BOSHRA VAHDATLAMAS, *in her official and individual*
*capacity, also known as Bushra Vahdat*, IDA TRASCHEN,
*in her official and individual capacity*, ELIZABETH
PRICKETT-MORGAN, *in her official and individual capacity*,
JEAN FLANAGAN,*in her official and individual capacity*,
VINCENT PALMIERI, *in his official and individual capacity*,
DANIELLE CALVO, *in her official and individual*
*capacity*, SADIQ TAHIR, *in his individual capacity*, PEC GROUP OF NY,
INC., DAVID SMART, and JOHN AND JANE DOES,

      Defendants.

--------------------------------------------------------------------------------X

**ORDER**
**18 CV 2710 (MKB)(LB)**

IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

☆ JUN 1 2 2018 ☆

BROOKLYN OFFICE

**BLOOM, United States Magistrate Judge:**

  *Pro se* plaintiff writes to object to defendant Gelberstein's request for an extension of time to respond to plaintiff's complaint. ECF No. 11. As stated in the Court's June 1, 2018 Order, the first extension request is generally granted as a courtesy. Although appearing *pro se*, plaintiff is an attorney. Thus, he should be aware of such a professional courtesy and conduct himself accordingly. Now that proof of service on all defendants has been filed with the Court, ECF No. 10, the Court orders all defendants to respond to plaintiff's complaint by July 16, 2018.

  The Court shall hold an initial conference on July 25, 2018 at 10:30 a.m. in Courtroom 11A South of the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York. The parties shall exchange their Rule 26(a)(1) initial disclosures and file their Rule 26(f) Meeting Report with the Court by July 23, 2018. Parties are advised that they must contact each other before making any request for an adjournment to the Court. A request for an adjournment must be received in writing at least forty-eight (48) hours before the scheduled conference.

SO ORDERED.

          /S/ Judge Lois Bloom

Dated: June 12, 2018         LOIS BLOOM
   Brooklyn, New York      United States Magistrate Judge

**JSA-027**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                Plaintiff,

     -against-

ALAN GELBSTEIN, *in his official and individual
capacity*, BORSHIRA VAHDATLAMAS, *in her
official and individual capacity, also known as
Bushra Vahdat*, IDA TRASCHEN, *in her official
and individual capacity*, ELIZABETH
PRICKETT-MORGRAN, *in her official and
individual capacity*, JEAN FLANAGAN, *in her
official and individual capacity*, VINCENT
PALMIERI, *in his official and individual
capacity*, DANIELLE CALVO, *in her official
and individual capacity*, SADIQ TAHIR, *in his
individual capacity*, PEC GROUP OF NY, INC.,
DAVID SMART, and JOHN AND JANE DOE,

                Defendants.
------------------------------------------------------------X

**REPORT & RECOMMENDATION
18 CV 2710 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

      Attorney Mario H. Capogrosso, proceeding *pro se*, brings this civil rights action pursuant

to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and New York state law against nine individually

named defendants[1] as well as PEC Group of NY, Inc. and "John and Jane Doe." Plaintiff alleges

that the State Defendants retaliated against him for exercising his First Amendment rights and

deprived him of his constitutionally protected interest in representing clients at the Traffic

Violations Bureau ("TVB") without due process.

      The State Defendants move to dismiss plaintiff's complaint pursuant to Federal Rules of

Civil Procedure ("FRCP") 12(b)(1), 12(b)(5), and 12(b)(6). The Honorable Margo K. Brodie

---

[1] The named defendants are: Alan Gelbstein, Boshra Vahdatlamas, Ida Traschen, Elizabeth Morgan (formerly
Elizabeth Prickett-Morgan), Jean Flanagan, Vincent Palmieri, and Danielle Calvo (hereinafter the "State
Defendants"); plaintiff also names Sadiq Tahir and David Smart who are not state defendants.

**JSA-028**

referred the motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the State Defendants' motion to dismiss should be granted in part and denied in part.

## BACKGROUND

Plaintiff does not file this civil rights action on a blank slate. Plaintiff and defendants have a contentious history well-documented in plaintiff's prior state court lawsuit. ECF Nos. 45–46. The current motion includes several documents from the prior case. Plaintiff's instant complaint brings three causes of action against the State Defendants. He alleges that the State Defendants violated his constitutional rights by retaliating against him for his protected First Amendment activity. ECF No. 1., Complaint, ("Compl.") ¶¶ 70–75. He further alleges that the State Defendants violated his constitutional rights by depriving him of his property and liberty interest in practicing law at the TVB without due process. Id. ¶¶ 76–85. Finally, plaintiff seeks prospective injunctive relief to enjoin the State Defendants from barring him from representing clients at any TVB location. Id. ¶¶ 86–88.

Plaintiff is an attorney licensed in New York and Connecticut. Id. ¶ 2. The TVB is a division within the Department of Motor Vehicles, an agency of the State of New York; Administrative Law Judges ("ALJs") preside over TVB proceedings. Id. ¶ 4. Between April 2005 and May 11, 2015, plaintiff practiced law at various locations of the TVB, including the Brooklyn South Office ("Brooklyn TVB"). Id. ¶ 3. Plaintiff represented approximately 850 clients in TVB proceedings throughout this time period. Id. ¶ 6.

In 2012, plaintiff was suspended from "practicing his profession" at the TVB Courts due to complaints of misconduct. Id. ¶ 5. According to plaintiff, the complaints of misconduct "were never determined to be true as no hearings were ever held in response thereto and Plaintiff was

2

never given the opportunity to confront his accusers." Id. During his suspension, plaintiff learned that one of his accusers was David Smart, a security guard employed at the TVB. Id. Plaintiff filed an Article 78 proceeding challenging his suspension. The case was settled and plaintiff's suspension was lifted. See generally ECF No. 46-7. Plaintiff returned to representing clients at the TVB after completing an anger management course. Id.; Compl. ¶ 5.

Plaintiff alleges that although security guard Smart was employed by defendant PEC Group of NY, Inc., he was under the "direct supervision and control" of the TVB. Compl. ¶ 7. According to plaintiff, Smart subjected him to "constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance" which disrupted plaintiff's representation of his clients. Id. ¶ 8. Plaintiff reported Smart's conduct to defendant ALJ Alan Gelbstein; however, Gelbstein "refused to take any action on behalf of [plaintiff] to ensure that the disruptive and unlawful behavior of [Smart] would cease[.]" Id. ¶ 9.

On March 20, 2015, plaintiff wrote to New York State Assistant Attorney General defendant Elizabeth Morgan. Id.; ECF No. 46-7 ("Morgan Letter"). He complained about Smart and stated his frustrations with Gelbstein's alleged inaction regarding Smart. Id. Morgan failed to respond to plaintiff's letter or take any action. Id.

Plaintiff alleges that Gelbstein and defendant Danielle Calvo, clerk supervisor at the Brooklyn TVB, approached plaintiff in the Brooklyn TVB attorney's room on May 8, 2015 and said "[c]an't you go practice somewhere else . . . I saw what you wrote about me that I am complicit and incapable." Id. ¶ 10. On May 11, 2015, plaintiff claims that Smart approached him in an "aggressive and threating manner in an attempt to provoke [him] into a physical confrontation." Id. ¶ 11. According to plaintiff, Calvo and several New York City police officers approached plaintiff a few minutes later and told him that "he was no longer allowed at the [TVB] and that

3

[he] was to leave the building immediately." Id. Calvo told plaintiff to call defendant Ida Traschen, Assistant Counsel Legal Bureau for the State of New York Department of Motor Vehicles, for "further instructions." Id.

Plaintiff contacted Traschen later that day and was informed that he was "permanently barred from representing any clients in the future at any TVB locations throughout the State." Id. Plaintiff alleges that he called Traschen to seek clarification on May 12, 2015, May 26, 2015, August 4, 2015, August 7, 2015, August 10, 2015, August 12, 2015, and August 25, 2015. Id. ¶ 12. Plaintiff also wrote to several agencies but never received any clarification. See id. ¶¶ 13–14.

Plaintiff claims defendants that Bushra Vahdatlamas, Supervisory ALJ, as well as Jean Flanagan and Vincent Palmieri, TVB supervisors, acted with complete or deliberate indifference and/or ratified and condoned the alleged violation of plaintiff's constitutional rights. Id. ¶¶ 46, 55.

Plaintiff alleges that he has been denied due process as he has been barred from representing clients at the TVB since May 11, 2015. Id. ¶ 15. Moreover, plaintiff alleges that he has not been provided with a rationale as to why he is barred nor a list of his accusers and their complaints. Id.

## PROCEDURAL HISTORY

Plaintiff filed the instant complaint against defendants on May 8, 2018. ECF No. 1. Proof of service was filed for Calvo, Gelbstein, Morgan, and Smart on June 8, 2018 and for PEC Group of NY, Traschen, and Vahdatlamas on July 27, 2018. ECF Nos. 10, 24. Defendants Smart and Tahir answered plaintiff's complaint and raised a counterclaim against plaintiff. ECF Nos. 6–7. Smart and Tahir's counterclaims were dismissed on October 17, 2018. ECF No. 50. The instant fully-briefed motion was filed on October 11, 2018. The State Defendants move to dismiss

4

plaintiff's complaint under FRCP 12(b)(1) for lack of standing, under FRCP 12(b)(5) for failure to serve, and under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 44, ("Memo"). Plaintiff opposes the motion, ECF No. 47 ("Opp.") and the State Defendants have filed a reply, ECF No. 49 ("Reply").

## STANDARD OF REVIEW

For the purposes of this motion, the Court accepts the well-pleaded allegations in plaintiff's complaint as true and draws all reasonable inferences in favor of the non-moving party. Hayden v. Paterson, 594 F.3d 150, 157, n.4 (2d Cir. 2010) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

### I.    Federal Rule of Civil Procedure 12(b)(1)

Motions to dismiss for lack of standing are governed by FRCP 12(b)(1). See Fed. R. Civ. P. 12(b)(1) (permitting dismissal for "lack of subject-matter jurisdiction"); Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (noting that a plaintiff must have standing under Article III of the Constitution to invoke a federal court's subject-matter jurisdiction). Plaintiffs bear the burden of proof of establishing that they have standing. Carter, 822 F.3d at 56 (plaintiffs have the burden of "alleg[ing] facts that affirmatively and plausibly suggest that [they] have standing to sue") (internal citations omitted). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice[.]" Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The court may also rely on evidence outside the complaint in deciding a Rule 12(b)(1) motion. Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted).

5

JSA-032

## II.     Federal Rule of Civil Procedure 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs., L.P. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006) (quoting Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)). Parties may challenge a lack of valid service by moving to dismiss pursuant to FRCP 12(b)(5).

Service of process is governed by FRCP 4. Rule 4(m) provides, in pertinent part, that:

> [i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). A party seeking an extension for good cause "bears a heavy burden of proof." Beauvoir v. U.S. Secret Serv., 234 F.R.D. 55, 56 (E.D.N.Y. 2006) (internal citation omitted). Courts in the Second Circuit determining good cause look to (1) the diligence and reasonableness of the plaintiff's efforts to serve, and (2) prejudice to the defendants from the delay. See Husowitz v. Am. Postal Workers Union, 190 F.R.D. 53, 57 (E.D.N.Y. 1999).

## III.    Federal Rule of Civil Procedure 12(b)(6)

### a.  Legal Standard

The purpose of a motion to dismiss for failure to state a claim under FRCP 12(b)(6) is to test the legal sufficiency of plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." Concord Assocs., L.P. v. Entm't Prop. Tr., 817 F.3d 46, 52 (2d Cir. 2016) (quoting Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d Cir. 2002)).

6

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

### b. Matters Outside the Pleadings

As a threshold matter, the Court cannot consider documents outside the pleadings on a motion to dismiss. Therefore, many documents submitted by the State Defendants in support of their instant motion to dismiss should not be considered. Likewise, many documents attached to plaintiff's opposition should not be considered.

The Court may consider some materials extraneous to the complaint on a Rule 12(b)(6) motion, but "plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough[.]" Chambers, 282 F.3d at 153. "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network Comme'n, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).

Here, the State Defendants' motion includes declarations with attached exhibits from Assistant Attorney Generals Mark Siegmund and Barbara Montena. Siegmund's Declaration attaches seven exhibits referencing plaintiff's prior litigation. ECF No. 46, Siegmund Declaration ("Siegmund Decl."). The Court may consider the exhibits from the prior state court proceeding, but not for the truth of the matters asserted. Ferrari v. Cty. of Suffolk, 790 F. Supp. 2d 34, 38, n.4

7

(E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."). Moreover, as plaintiff relies upon the Morgan Letter for his First Amendment retaliation claim, Compl. ¶¶ 42, 59, the Court may consider the letter. Chambers, 282 F.3d at 153 (a Court may consider a document that is integral to the complaint and that plaintiff relied upon in framing the complaint.).

The Siegmund and Montena Declarations as well as the exhibits attached to Montena's Declaration cannot be considered on the instant motion. These exhibits include complaints regarding plaintiff, copies of work place incident reports, an internal memorandum regarding plaintiff's conduct at the TVB, and an NYPD Incident Information Slip. See ECF No. 45, ("Montena Decl."). The State Defendants contend that all of the exhibits are "integral to Plaintiff's allegations that he was barred from the TVB[.]" Memo at 10, n.1. However, for a document to be considered "integral," the complaint must rely "heavily upon its terms and effect." Chambers, 282 F.3d at 153. "Merely mentioning a document in the complaint will not satisfy this standard; indeed even offering limited quotations from the documents is not enough." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (internal quotations and citations omitted). Although plaintiff mentions "complaints of misconduct" on one occasion, the Court cannot consider the exhibits that the State Defendants proffer on the instant motion. Accordingly, the Court declines to consider Exhibits 12–27 attached to the Montena Declaration. Chambers, 282 F.3d at 153.

With regard to plaintiff's response to the State Defendants' exhibits, courts generally do not consider matters raised for the first time in opposition to a motion to dismiss. Friedl v. City of N.Y., 210 F.3d 79, 83–84 (2d Cir. 2000). Accordingly, the Court does not consider the exhibits attached to plaintiff's declaration in opposition to the motion.

8

## IV.  Plaintiff is an Attorney

Although plaintiff filed this action *pro se*, he is an attorney and therefore he is not entitled to the solicitude afforded to *pro se* litigants. Leeds v. Meltz, 898 F. Supp. 146, 149 (E.D.N.Y. 1995), aff'd, 85 F.3d 51(2d Cir. 1996) (*pro se* attorney not entitled to liberality normally afforded to *pro se* litigants); Bliven v. Hunt, 478 F. Supp. 2d 332, 334 (E.D.N.Y. 2007) (same).

## DISCUSSION

## I.  Standing

The State Defendants contend that plaintiff does not have standing to bring this action. Standing is a "threshold question in every federal case" which "determin[es] the power of the court to entertain the suit." Davis v. Hain Celestial Grp., 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). The "irreducible constitutional minimum of standing" contains three elements that plaintiff must satisfy. Lujan, 504 U.S. at 560. First, plaintiff must show that he suffered an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical." Id. (internal citation and quotation marks omitted). Second, plaintiff must show that there is a "causal connection between the injury and the conduct complained of," or, in other words, that his injury is "fairly . . . traceable to the challenged action of [defendants.]" Id. (internal citation and quotation marks omitted). Third, plaintiff must show that his alleged injury "will be redressed by a favorable decision." Id. at 561 (internal citation and quotation marks omitted).

The State Defendants do not challenge that plaintiff satisfies the injury in fact or redressability elements of standing. See Memo at 20–21. The parties dispute whether plaintiff meets the causation element. The State Defendants argue that plaintiff lacks standing to seek

9

damages and injunctive relief because plaintiff was the primary cause of his own alleged injury.
Id.

"Not every infirmity in the causal chain deprives a plaintiff of standing." St. Pierre v. Dyer,
208 F.3d 394, 402 (2d Cir. 2000). Although courts have denied standing in some cases because
the injury was solely attributable to the plaintiff,

> [s]tanding is not defeated merely because the plaintiff has in some sense contributed
> to his own injury. . . . Standing is defeated only if it is concluded that the injury is
> so completely due to the plaintiff's own fault as to break the causal chain.

13 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure
§ 3531.5 (3d ed. 2018). The causal chain can be broken where a plaintiff's self-inflicted injury
results from his "unreasonable decision . . . to bring about a harm that he knew to be avoidable."
St. Pierre, 208 F.3d at 403. However, "[s]o long as the defendants have engaged in conduct that
may have contributed to causing the injury, it would be better to recognize standing[.]" Id. at 402
(internal citation omitted).

Here, the State Defendants' conclusory statement that plaintiff's injury, being permanently
barred from representing clients at any TVB location, was not due to "any illegal action by any of
the State Defendants" is insufficient to defeat plaintiff's proffer of standing. Memo at 20. Although
the State Defendants may argue that plaintiff caused his own injury, the Court cannot say on the
instant record that plaintiff's injury is so completely due to plaintiff's own fault that his proffer of
standing is defeated. Accordingly, the State Defendants' motion to dismiss for lack of standing
under Rule 12(b)(1) should be denied.

## II.     Service of Process on Flanagan and Palmieri

Next, the State Defendants argue that Flanagan and Palmieri were not timely served with
process. Memo at 19–20. Plaintiff filed his action on May 8, 2018. See Compl. Plaintiff was

10

required to serve process on defendants by August 6, 2018. See Fed. R. Civ. P. 4(m); see also ECF No. 4 (order regarding the Rule 4(m) August 6, 2018 deadline). The Court's record does not reflect that defendants Flanagan and Palmieri were properly served within the Rule 4(m) deadline.

Plaintiff asserts that proof of service on Flanagan was filed on May 8, 2018. Opp. at 2. However, review of the Court's record shows that plaintiff is mistaken; no such affidavit of service was filed. In fact, the State Defendants reminded plaintiff to serve Flanagan and Palmieri, but plaintiff failed to do so. ECF No. 20 at 1, n.1 (notifying plaintiff that as of July 13, 2018, Flanagan and Palmieri had not yet been served and that perhaps plaintiff had served a different person named Jean Flanagan).

Plaintiff does not dispute that Palmieri was not served. Although plaintiff contends that Flanagan was served, the Court should grant the State Defendants' motion to dismiss this action against Flanagan and Palmieri for failure to properly and timely serve them. See Thomas v. N.Y.C. Dept. of Educ., 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal citation omitted); Hertzner v. U.S.P.S., No. 05 CV 2371, 2007 WL 869585, at *6 (E.D.N.Y. Mar. 20, 2007) (holding that plaintiff's failure to timely serve defendants deprived the Court of personal jurisdiction where "it was the attorney's inadvertence, neglect, mistake or misplaced reliance that resulted in service not being effected in a timely manner."). Accordingly, the State Defendants' motion to dismiss plaintiff's complaint under FRCP 12(b)(5) should be granted as to Palmieri and Flanagan.[2]

---

[2] In the alternative, the Court should *sua sponte* dismiss plaintiff's claims against Palmieri and Flanagan pursuant to FRCP 4(m).

11

### III. Claims Under 42 U.S.C. § 1983

Plaintiff alleges that the State Defendants violated his constitutional rights by retaliating against him for his protected speech when they permanently barred him from representing clients at any TVB location throughout the state. Compl. ¶ 11. The State Defendants raise several grounds for dismissal including that plaintiff fails to plausibly allege defendants retaliated against him for any protected First Amendment activity, that plaintiff's conduct is not protected by the First Amendment, that there is no constitutional right to represent clients at the TVB, that plaintiff has no property or liberty interest subject to due process protection, and that defendants are entitled to absolute and/or qualified immunity. Memo at 16–33.

#### a. Personal Involvement

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). To assert a Section 1983 claim "a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015) (internal citation and quotation marks omitted).

A plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation in order to state a claim for relief under Section 1983. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; Fowlkes v. Rodriguez,

12

584 F. Supp. 2d 561, 572 (E.D.N.Y. 2008) (discussing the necessity of personal involvement for damage claims against state officials) (citation omitted).

A supervisory official may be deemed to have been personally involved under Section 1983 in five circumstances: (1) if that official directly participated in the infraction; (2) if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong; (3) if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or (4) if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) if he or she was deliberately indifferent by failing to act on information that unconstitutional acts were continuing. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted); Raffaele v. City of N.Y., 144 F. Supp. 3d 365, 377 (E.D.N.Y. 2015) (citing the Colon factors). Supervisors may not be held liable under Section 1983 on the basis of respondeat superior. Iqbal, 556 U.S. at 676.

Here, plaintiff fails to plausibly allege that defendants Vahdatlamas and Morgan were personally involved in the decision to bar him from representing clients at the TVB.[3] Plaintiff's complaint alleges only that Gelbstein, Calvo, and Traschen were personally involved in the actions resulting in the injury he claims, being barred from representing clients at the TVB. See Compl. ¶¶ 38, 58. Plaintiff alleges that Gelbstein "actively participated in the decision to permanently bar plaintiff"; "ignored plaintiff's complaint about the conduct of Defendant Smart, [and] in fact encouraged Defendant Smart to continue to confront the Plaintiff in an attempt to 'bait the Plaintiff' into a physical response"; conspired with Calvo to summon the NYPD to remove plaintiff; and was motivated to take retaliatory action against plaintiff for the Morgan Letter. Id.

---

[3] As the Court recommends that defendants Flanagan and Palmieri should be dismissed on Rule 12(b)(5) grounds, Discussion, Part I, supra, the Court need not further consider plaintiff's claims against Flanagan and Palmieri. However, had Flanagan and Palmieri been properly and timely served, the claims against them would have been subject to dismissal for lack of personal involvement.

13

¶¶ 38, 40–42. Plaintiff alleges that Calvo "personally confronted" him with the decision to bar him and was motivated by retaliatory animus for plaintiff's comments in the Morgan Letter. Id. ¶¶ 58–59. Plaintiff alleges that Traschen "actively participated in the violation" by directly informing plaintiff that he was barred. Id. ¶ 49.

However, plaintiff alleges only that Vahdatlamas "in consultation" with the other State Defendants acted with "deliberate indifference and/or condoned and ratified said unconstitutional acts" Id. ¶ 46. The Court finds that the complaint fails to plausibly allege that Vahdatlamas was personally involved in the violation of plaintiff's rights.[4] Although plaintiff argues that "the Complaint makes clear that, without the actions of all the Defendants, the decision to bar him would not have been made," Opp. at 11, his allegations regarding Vahdatlamas are conclusory. See Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (conclusory allegations that a supervisor failed to monitor the actions of his subordinates is insufficient to establish personal involvement to support a finding of liability under Section 1983).

Similarly, the Court finds that plaintiff's allegations against Morgan fail to establish Morgan's personal involvement in the violation of plaintiff's rights. Plaintiff alleges that Morgan "failed to take any action to respond to [plaintiff's letter]," that she "conspired" with the other State Defendants to violate plaintiff's constitutional rights, and that she "treated the violation of Plaintiff's said constitutional rights with deliberate indifference and/or condoned and ratified the violation[s.]" Compl. ¶¶ 9, 52. These allegations are conclusory and fail to plausibly allege Morgan's personal involvement in the decision to bar plaintiff from representing clients at the TVB.[5] See Ridgeview Partners, LLC v. Entwhistle, 227 Fed. App'x 80, 81–82 (2d Cir. 2007)

---

[4] Similarly, plaintiff alleges only that Flanagan and Palmieri acted with "deliberate indifference and/or condoned and ratified the unconstitutional conduct." Compl. ¶ 55.

[5] Moreover, although the State Defendants assert that Morgan is entitled to absolute immunity, plaintiff only alleges Morgan's title in the Complaint, that she was an Assistant Attorney General for the State New York. On the instant

14

(summary order) (an official's refusal to consider or act upon a grievance is not conduct that violates the First Amendment.). Therefore, the State Defendants' motion to dismiss Vahdatlamas and Morgan should be granted as plaintiff's complaint against them fails to state a claim upon which relief can be granted.

## IV.  First Amendment Retaliation

"Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" Lane v. Franks, 573 U.S. 228, 235–36 (2014) (quoting Roth v. United States, 354 U.S. 476, 484 (1957)). The elements of a First Amendment claim under Section 1983 depend on the factual context of the case before the district court. Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008). To determine the elements required to state a First Amendment claim under Section 1983, the Court must first consider whether the claim is being made by a public employee or a private citizen. Compare Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (plaintiff was a private citizen) with Johnson v. Ganim, 342 F.2d 105, 112 (2d Cir. 2003) (plaintiff was a public employee). Although the elements of a public employee's claims are different than a private citizen's claims, many First Amendment cases muddle the standards. Moreover, the majority of First Amendment retaliation cases occur in the public employment context and a large number of private citizens' First Amendment retaliation cases concern land use. Plaintiff is a private citizen, but this is neither a public employment nor a land use First Amendment retaliation case. Compl. ¶¶ 18, 71.

---

record, the Court cannot determine whether Morgan would be entitled to absolute immunity. As the State Defendants' absolute immunity argument is only raised with regard to Morgan, and plaintiff's claims against Morgan should be dismissed for lack of personal involvement, the State Defendants' motion to dismiss based on absolute immunity should be denied without prejudice.

15

Where a private citizen asserts a First Amendment claim against a public official, the private citizen must allege: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right." Curley, 268 F.3d at 73. Retaliation claims that are "unsupported, speculative, and conclusory" may be dismissed on the pleadings. Corely v. City of N.Y., No. 14 Civ. 3202, 2017 WL 4357662, at *19 (S.D.N.Y. Sept. 28, 2017) (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)).

The State Defendants argue that plaintiff fails to plausibly allege retaliation for any speech protected by the First Amendment. They argue that plaintiff's claim of retaliation is "unsupported, speculative, and conclusory" and add that plaintiff admitted that he knew that complaints had been made against him and that he would sometimes "throw a punch" in the TVB. Memo at 22. However, as plaintiff correctly argues, his protected speech refers to his March 20, 2015 letter to Morgan stating his frustration with Gelbstein's administration of the Brooklyn TVB and alleging Smart's harassment. Opp. at 6; Compl. ¶ 72. For the purposes of this motion, plaintiff's letter to Morgan is protected by the First Amendment. See McDonald v. Smith, 472 U.S. 479, 482 (1985) (The right to petition the government to redress grievances is "cut from the same cloth as the other guarantees of [the First Amendment] and is an assurance of a particular freedom of expression."); Velez v. Levy, 401 F.3d 75, 97 (2d Cir. 2005) ("the Supreme Court has said 'that speech critical of the exercise of the State's power lies at the very center of the First Amendment'") (quoting Gentile v. State Bar of Nev., 501 U.S. 1030, 1034 (1991)).

Turning to the second element of a retaliation claim, "[t]o establish a causal connection sufficient to survive a motion to dismiss, the 'allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action.'" Davis v. Goord, 320 F.3d 346, 354

16

(2d Cir. 2003) (discussing First Amendment retaliation in a non-public employee context). A causal connection is often shown circumstantially, through allegations that the retaliation occurred in "close temporal proximity" to the protected activity. See id. "[D]irect evidence of retaliation may consist of 'conduct or statements by persons involved in the decisionmaking [sic] process that may be viewed as directly reflecting the alleged retaliatory attitude.'" McAvey v. Orange–Ulster BOCES, 805 F. Supp. 2d 30, 40 (S.D.N.Y. 2011) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir. 1997) (brackets omitted)).

Here, plaintiff alleges that Gelbstein and Calvo were aware of the Morgan Letter. Compl. ¶¶ 9–10, 39–41. Plaintiff further alleges that Gelbstein and Calvo used the May 11, 2015 incident with Smart as a pretext for prohibiting plaintiff from representing clients at the TVB in order to retaliate against him for his protected speech. Id. The Complaint alleges that Gelbstein, Calvo, and Traschen barred plaintiff from the TVB a month and a half after he sent the letter to Morgan. Id. Although there is no bright line rule regarding temporal proximity, a month and a half falls within the temporal range sufficient to raise a plausible inference of a retaliatory motive. Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases); cf. Maco v. Baldwin Union Free School Dist., 726 Fed. App'x 37, 39 (2d Cir. 2018) (summary order) (discussing that a lapse of ten months does not support an inference of causation). Moreover, plaintiff alleges that Gelbstein and Calvo knew about his letter to Morgan and stated, "[c]an't you go practice somewhere else . . . I saw what you wrote about me that I am complicit and incapable." Compl. ¶ 10.

The third element of a retaliation claim requires a plaintiff to allege that the retaliatory "official conduct actually deprived them of that right" by either silencing them or having some "actual, non-speculative chilling effect on [their] speech." See Williams, 535 F.3d at 78 (internal

17

citation omitted). While "private citizens claiming retaliation for their criticism of public officials have [generally] been required to show that they suffered an 'actual chill' in their speech as a result[,] . . . in limited contexts, other forms of harm have been accepted in place of this 'actual chilling requirement.'" Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011) (citing Spear v. Town of W. Hartford, 954 F.3d 63, 68 (2d Cir. 1992) and Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002)); see also Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 431 (S.D.N.Y. 2013) ("Thus, while a plaintiff asserting a First Amendment retaliation claim must allege some sort of harm, it is not necessary for that harm to be a chilling of speech in every case.") (internal citation and quotation marks omitted).

Here, plaintiff alleges that the State Defendants barred him from representing clients at all TVB locations based on retaliation. Compl. ¶¶ 11, 15. Plaintiff sufficiently alleges that the State Defendants' retaliatory conduct adversely affected him. Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled speech is not the *sine qua non* of a First Amendment claim."); Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (discussing that in a private citizen context, "[w]here the retaliation is alleged to have caused an injury separate from any chilling effect . . . an allegation as to a chilling effect is not necessary to state a claim.").

Defendants reliance on Heller is misplaced. In Heller, plaintiff's alleged speech constituted threats and posed a risk of physical harm that was not protected by the First Amendment. Heller v. Bedford Cent. Sch. Dist., 665 Fed. App'x 49, 52–53 (2d Cir. 2016) (summary order). ("A review of the record confirms that defendants were interested in [plaintiff's] communications only insofar as they raised the prospect of a shooting spree at the high school."). The facts of this case are distinguishable. Plaintiff's allegedly threatening conduct is entirely separate from the protected speech he alleges: the Morgan Letter.

18

Taken together and construing all reasonable inferences in plaintiff's favor, as the Court must, defendant Gelbstein, Calvo, and Traschen's motion to dismiss plaintiff's First Amendment retaliation cause of action for failure to state a claim upon which relief can be granted should be denied. The motion should be granted with respect to defendants Vahdatlamas and Morgan.

## V.  Due Process

Plaintiff alleges that the State Defendants violated his right to due process because they deprived him of a "property and/or liberty interest" in representing clients at the TVB and failed to afford him a due process hearing or make his accusers known to him. Compl. ¶¶ 76–85. The State Defendants raise several grounds for dismissal including plaintiff does not have a due process right to practice law at the TVB, that plaintiff had an adequate post-deprivation opportunity to be heard, and that they are entitled to either absolute or qualified immunity. Memo at 16–19.

The Due Process Clause of Fourteenth Amendment provides that the state may not deprive an individual of property or liberty without due process. See U.S. Const. amend. XIV. To prevail on a due process claim, plaintiff must identify a constitutionally protected property or liberty interest and demonstrate that the government has deprived him of that interest without due process of law. Weinstein v. Albright, 261 F.3d 127, 134 (2d Cir. 2001). The due process clause of the Fourteenth Amendment protects one's liberty to pursue an occupation from certain kinds of state infringement. Cityspec, Inc. v. Smith, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009) ("The liberty interests protected by the Fourteenth Amendment include the freedom 'to engage in any of the common occupations of life.'") (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 572 (1972)).

19

### a. Property Interest

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577. To possess a property right in a benefit, there must be a "legitimate claim of entitlement to it," more than an abstract desire for it. Id. The Court discerns no legitimate claim to a property right here. As plaintiff does not have any type of contract to practice law at the TVB, nor does he cite to any statutory or constitutional authority establishing employment at the TVB, his expectation to continue representing clients at the TVB was subjective and insufficient to establish a property right. See Schwartz v. Mayor's Cmte. on the Judiciary of the City of New York, 816 F.2d 54, 57 (2d Cir. 1987) (holding that plaintiff's "subjective expectation" of reappointment to the judicial bench did not to establish a protected property right). Accordingly, plaintiff fails to establish that he has a protected property interest in representing clients at the TVB.

### b. Liberty Interest

As to a potential liberty interest, the Fourteenth Amendment secures the liberty to follow a trade, profession, or other calling. Cityspec, 617 F. Supp. 2d at 169. The Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. See Conn v. Gabbert, 526 U.S. 286, 291 (1999) (discussing that due process is implicated only if plaintiff is deprived of a "liberty interest in practicing law"). The Due Process Clause does not stretch so far as to secure the right to specific jobs. Cityspec, 617 F. Supp. 2d at 169 (The liberty interest conferred by the Fourteenth Amendment "is not broad as to protect the right to a particular job."). "It is well settled that one must have no ability to practice one's

profession at all in order to state a claim for deprivation of a liberty interest." Rodriguez v. Margotta, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999) (citations omitted).

Here, plaintiff's ban from the TVB did not prevent him from practicing law. Plaintiff's claim that the "right and ability to practice at the TVB is the equivalent of depriving him of the right to continue in his chosen profession" is without merit. Opp. at 8. Defendants did not deprive plaintiff of his license to practice; he was at liberty to continue his law practice elsewhere. Accordingly, plaintiff fails to establish that defendants deprived him of a protected liberty interest. See Roth, 408 U.S. at 575 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another.") (citing Cafeteria and Rest. Workers Union v. McElroy, 367 U.S. 886, 895–96 (1961)).

### c. Post-Deprivation Opportunity to be Heard

Moreover, although plaintiff was not given a hearing prior to being barred from representing clients at the TVB, he could have challenged the bar by filing an Article 78 petition. "The opportunity to pursue an Article 78 proceeding in New York State Supreme Court constitutes a wholly adequate post-deprivation hearing for due process purposes." Rubin v. Swarts, No. 10 CV 4119, 2011 WL 1004838, at *4 (E.D.N.Y. Mar. 18, 2011) (discussing that an Article 78 proceeding in state court was the "proper forum" for a due process claim against the DMV). Although an Article 78 proceeding may not allow plaintiff to seek monetary damages, such a proceeding has still been held to "constitute[] a wholly adequate post-deprivation hearing for due process purposes." Locurto v. Safir, 264 F.3d 154, 176 (2d Cir. 2001) (dismissing Section 1983 claim alleging wrongful termination and seeking "monetary and injunctive relief" because plaintiffs could have brought an Article 78 proceeding). "[Plaintiff] cannot resuscitate its due process claim simply because an Article 78 proceeding is now barred by Article 78's four-month

21

statute of limitations." Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 881 (2d Cir. 1996).

Here, plaintiff could have commenced an Article 78 proceeding to contest his TVB ban. He clearly knew that such a proceeding was available to him as he had pursued an Article 78 proceeding after his suspension in 2011. He simply chose not to do so. Accordingly, even if the Court were to find that plaintiff had a protected property or liberty interest, plaintiff's due process claim would still be dismissed as he had the opportunity to pursue an adequate post-deprivation hearing by way of an Article 78 proceeding. Rubin, 2011 WL 1004838, at *4, n.4 (fact that plaintiff failed to commence an Article 78 proceeding within the four-month statute of limitations, "does not prevent this Court from taking into account the availability of such proceedings when determining whether he has been afforded due process.") (citation omitted).

## VI. Prospective Injunctive Relief

Plaintiff seeks prospective injunctive relief enjoining the State Defendants, in their official capacities, from excluding plaintiff from representing clients at the TVB Courts. Compl. ¶ 88. The State Defendants argue that because plaintiff's underlying substantive claims should be dismissed, plaintiff's third cause of action should also be dismissed. Memo at 33.

Under the Ex Parte Young doctrine, the Eleventh Amendment does not bar a plaintiff from suing a state official acting in his or her official capacity for prospective injunctive relief. Ex Parte Young, 209 U.S. 123, 155 (1908). "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002) (internal citation and quotation marks omitted). The exception to Eleventh

22

Amendment immunity, however, does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law. Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of Young . . . to claims for retrospective relief") (citations omitted).

To the extent that plaintiff is claiming that he is entitled to retrospective relief, his claims against the State Defendants should be dismissed. However, to the extent that plaintiff is suing Gelbstein, Calvo, and Traschen in their official capacities, his request for prospective injunctive relief "enjoining State Defendants from barring him [from representing clients in TVB Courts] . . . in the future" satisfies the requirements for the exception to Eleventh Amendment immunity set forth in Ex Parte Young.

The State Defendants' motion to dismiss plaintiff's claims for prospective injunctive relief should be denied. On the instant record, the Court cannot dismiss plaintiff's prospective challenge to the bar prohibiting him from representing clients in all TVB Courts throughout the state. Although the State Defendants rely on plaintiff's record of previous disruptions for the bar, this may not be adjudicated on the instant motion. The instant motion cannot establish that the State Defendants' decision to ban plaintiff from representing clients at all TVB Courts was reasonable and necessary.[6]

---

[6] In Barrett v. Volz, No. 16 cv 209, 2016 WL 4082640, at *1 (D. Vt. Aug. 1, 2016), a protestor sought to enjoin defendants from enforcing an order which prohibited the public from attending a hearing regarding a gas pipeline easement. The Court reasoned that "[a]lthough [defendants'] could relatively easily identify the members of the public who have disrupted . . . [public proceedings in the past], [they] cannot prospectively exclude members of the public on that basis." Id. at *7 (quoting Huminski v. Corsones, 396 F.3d 53, 83–84 (2d Cir. 2005) (ruling that state officials' blanket denial of access to court proceedings to a protestor violated the First Amendment)). The Barrett Court stated that "[e]xclusion . . . requires an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (internal citation and quotation marks omitted). The Barrett Court went on to state that the defendants' order prohibiting public attendance at a hearing violated plaintiff's rights because

23

Accordingly, the State Defendant's motion to dismiss plaintiff's claim for prospective injunctive relief should be denied with regard to Gelbstein, Calvo, and Traschen.[7]

### VII.    Conspiracy Under 42 U.S.C. §§ 1985 and 1986

To the extent that plaintiff alleges a conspiracy under Sections 1985 and 1986, the complaint should be dismissed. To state a claim under Section 1985, a plaintiff must allege with particularity "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). Particularly, "the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (citations omitted).

Similar to Section 1983, Section 1985 does not create any substantive rights but provides a "remedy for conspiracies to violate a person's right to equal protection of the laws." Soto v. Schembri, 960 F. Supp. 751, 760 (S.D.N.Y. 1997). see also Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (stating that, to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds[.]") (citation omitted). Although a plaintiff need not plead detailed factual allegations, the allegations in the complaint must be "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A Section 1985 conspiracy claim that is only supported by conclusory assertions cannot survive a motion to dismiss. Brito v. Arthur, 403 F. App'x 620, 621 (2d Cir. 2010) (summary order); Ganthier v. N. Shore-Long Island

---

it "neither target[ted] the previous disruptive behavior nor propose[d] anything other than a blanket prohibition in response to [defendants'] legitimate concerns." Id.

[7] Although the motion should be denied, it is unclear whether Gelbstein, Calvo, and Traschen are the proper state officials to lift the bar prohibiting plaintiff from representing clients at all TVB locations.

24

Jewish Health Sys., 298 F. Supp. 3d 342, 349 (E.D.N.Y. 2004) (dismissing plaintiff's Section 1985 claim because she failed to allege the elements of a conspiracy claim with particularity).

Plaintiff repeatedly alleges that defendants "conspired" against him, but he fails to allege facts to establish that the State Defendants' acted with any class-based discriminatory animus. See Dolan, 794 F.3d at 296 (dismissing Section 1985 claim because plaintiff did not satisfy the class-based animus requirement). As neither race nor class-based discriminatory animus is alleged, plaintiff's Section 1985 claim must be dismissed.

Moreover, because a Section 1986 claim must be predicated upon a valid Section 1985 claim, plaintiff likewise fails to state a claim under Section 1986. Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993); Gusler v. City of Long Beach, 823 F. Supp. 2d 98, 137 (E.D.N.Y. 2011). Accordingly, the State Defendants' motion to dismiss plaintiff's claims under Sections 1985 and 1986 should be granted.[8]

## VIII. Qualified Immunity

The State Defendants argue that they cannot be held individually liable for the federal violations alleged because they are entitled to qualified immunity. Plaintiff asserts that the Court must allow him to develop the facts before the Court can make such a determination. Opp. at 13.

Qualified immunity is an affirmative defense which typically "cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ., 33 F. Supp. 3d 158, 174 (E.D.N.Y. 2014) (citing Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983)). A court may find that immunity applies only when "the facts supporting the defense appear on the face of the complaint" and "it appears

---

[8] Plaintiff suggests discovery "shall reveal the extent of collusion between the various Defendants." Opp. at 5. However, "a plaintiff armed with nothing more than conclusions" may "not unlock the doors of discovery." See Iqbal, 556 U.S. 662, 678–79.

JSA-052

beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (citation omitted). Further, "in such situations, [a] 'plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.'" Id. at 437.

Qualified immunity "shields public officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For a constitutional right to be "clearly established" for purposes of determining whether an official is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*." Mollica v. Volker, 229 F.3d 366, 370–71 (2d Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (emphasis in original). Whether it was objectively reasonable for the official to believe that his or her acts did not violate plaintiff's rights has "its principal focus on the particular facts of the case." Kerman v. City of N.Y., 374 F.3d 93, 104 (2d Cir. 2004) (internal citation and quotation marks omitted). If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).

Here, the State Defendants circularly argue that they did not violate any of plaintiff's clearly established constitutional rights and that it was objectively reasonable for them "to believe that their actions were lawful." Memo at 23–24. The State Defendants fail to articulate the "clearly

26

established right" upon which they base their qualified immunity affirmative defense. Instead, they broadly assert that plaintiff "had *no* constitutional right to practice law at the TVB, to engage in violent or threatening behavior, or to an evidentiary hearing before being barred at the TVB." Memo at 44. Whereas the Court might agree with these assertions by the State Defendants, this does not resolve the question of whether plaintiff has alleged the violation of a clearly established right in this action. The State Defendants must do more than raise qualified immunity as a defense; they must articulate why plaintiff's claim fails to establish the violation of any clearly established law.

Moreover, although the State Defendants proffer voluminous complaints against plaintiff and cite his threatening conduct, these complaints cannot be considered on this motion to dismiss. As such, the Court cannot consider the State Defendants' professed safety concerns regarding plaintiff's conduct on this record. Accordingly, the State Defendants' qualified immunity defense is premature and their motion should be denied. See Pearson v. Callahan, 555 U.S. 223, 239 (2009) ("when qualified immunity is asserted at the pleading stage, the answer to whether there was a violation may depend on a kaleidoscope of facts not yet fully developed.") (internal citation omitted).

Although the State Defendants' list of plaintiff's claims that are not "clearly established law" misses the mark, the Second Circuit has described the "'chronic difficulty' of articulating the [clearly established] right with the appropriate specificity." African Trade & Info. Ctr. Inc. v. Abromaitis, 294 F.3d 355, 360 (2d Cir. 2003) (citing LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998)). "Few issues related to qualified immunity have caused more ink to be spilled than whether a particular right has been clearly established, mainly because courts must calibrate, on a case-by-case basis, how generally or specifically to define the right at issue." Golodner v. Berliner,

27

770 F.3d 196, 206 (2d Cir. 2014). For if the right is defined too narrowly, qualified immunity would be available in any situation. Id. On the other hand, if the right is defined too broadly, qualified immunity would rarely be available. Id.

Plaintiff's retaliation claim wades in the muddy First Amendment delta between public employees and private citizens. The parties do not point us to, nor has the Court found, case law on point with the facts presented herein. As few, if any, First Amendment retaliation cases involve private citizens in similar contexts to plaintiff here, it seems unlikely that the law was clearly established law in 2015 when plaintiff was barred from representing clients at TVB locations state-wide.

The Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." Kisela v. Hughes, 138 S.Ct. 1148, 1153 (2018) (per curiam) (internal citation and quotation marks omitted). In the instant case, the clearly established right could not be the very general right to be free from retaliation based on protected speech. See City of Escondido, Cal. v. Emmons, ___ S.Ct. ____ (2019) (per curiam) (in the Fourth Amendment context, "the Court of Appeals defined the clearly established right at a level of generality by saying only that the 'right to be free of excessive force' was clearly established . . . the Court of Appeals' formulation of the clearly established right was far too general."). However, the Circuit's decision in Huminski v. Corsones may be instructive.[9] 395 F.3d 53 (2d Cir. 2005) (although courthouses and the adjacent parking lots are non-public forums, notices of trespass barring a non-violent protestor from entering the grounds constituted an unreasonable restriction on plaintiff's First Amendment activity).

---

[9] This case may inform the parties' judgment regarding their qualified immunity arguments going forward.

JSA-055

As it is premature to rule on the State Defendants' entitlement to qualified immunity at this juncture, their motion to dismiss on grounds of qualified immunity should be denied.

### IX.   Leave to Replead

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may dismiss a plaintiff's claim without leave to amend for repeated failure to cure deficiencies by amendments previously allowed or for futility. Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty, 282 F.3d at 88 (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir.1991)).

Here, as plaintiff was not deprived of any property or liberty interest, plaintiff cannot state a due process claim. Moreover, as plaintiff's conspiracy claim is not based on any race or class-based discrimination, he cannot state a claim under Sections 1985 and 1986. Furthermore, plaintiff failed to timely serve Flanagan and Palmieri; plaintiff's claims against these defendants should be dismissed. As any amendment of these claims would be futile, leave to amend these claims should be denied.

However, should plaintiff request leave to amend his other claims against the remaining defendants in light of the Court's ruling, he should be granted leave to do so. See Loreley Financing v. Wells Fargo Secs., 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); Cresci v. Mohawk Valley Cmty. Coll., 693 Fed. App'x 21, 24–25 (2d Cir. 2017) (summary order) (reversing lower court and granting plaintiff, an attorney proceeding *pro se*, the opportunity to replead his First Amendment retaliation claim).

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the State Defendants' motion to dismiss should be granted in part and denied in part. The State Defendants' motion to dismiss should be granted as to plaintiff's due process and Sections 1985 and 1986 claims, as well as all claims against Vahdatlamas, Morgan, Flanagan, and Palmieri. The State Defendants' motion to dismiss plaintiff's First Amendment retaliation claim against Gelbstein, Calvo, and Traschen should be denied. Likewise, plaintiff's claims for prospective injunctive relief against Gelbstein, Calvo, and Traschen should be denied. The State Defendants' motion to dismiss based on qualified immunity should be denied without prejudice. Should this Report be adopted, plaintiff should be afforded fourteen days leave to file an amended complaint as set forth herein.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/ Judge Lois Bloom
LOIS BLOOM
United States Magistrate Judge

Dated: January 30, 2019
Brooklyn, New York

30

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

MARIO H. CAPOGROSSO,

                  Plaintiff,

       v.

ALAN GELBSTEIN, in his official and individual
capacity, BOSHRA VAHDATLAMAS, in her official
and individual capacity, A/K/A Bushra Vahdat, IDA
TRASCHEN, in her official and individual capacity,
ELIZABETH PRICKETT-MORGAN, in her official
and individual capacity, JEAN FLANAGAN, in her
official and individual capacity, VINCENT PALMIERI,
in his official and individual capacity, DANIELLE
CALVO, in her official and individual capacity, SADIQ
TAHRIR, in his individual capacity, PEC GROUP OF
NY, INC., DAVID SMART, and JOHN and JANE
DOE,

                  Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-2710 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Mario H. Capogrosso, proceeding *pro se*, commenced the above-captioned

action on May 8, 2018, against Defendants Alan Gelbstein, Boshra Vahdatlamas, Ida Traschen,

Elizabeth Prickett-Morgan,[1] Jean Flanagan, Vincent Palmieri, Danielle Calvo, Sadiq Tahrir, PEC

Group of NY, Inc., David Smart, and John and Jane Doe.  (Compl., Docket Entry No. 1.)

Plaintiff alleges that Defendants, *inter alia*, violated his constitutional rights when they banned

him from representing clients in New York State traffic court proceedings.  (*Id.* ¶¶ 70–88.)  On

---

    [1]  Defendant Elizabeth Prickett-Morgan has since changed her name to Elizabeth
Morgan.  (Defs. Mem. in Supp. of Defs. Mot. to Dismiss ("Defs. Mem.") 1, Docket Entry No.
44.)  Though Morgan's name has not been changed in the case caption, for the purposes of this
Memorandum and Order, the Court will refer to her as "Morgan."

**JSA-058**

October 11, 2018, Defendants Gelbstein, Vahdatlamas, Traschen, Morgan, Flanagan, Palmieri, and Calvo (the "State Defendants") moved to dismiss the Complaint for lack of subject matter jurisdiction, failure to state a claim, and insufficient service of process pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(5), and 4(m) of the Federal Rules of Civil Procedure. (Defs. Mot. to Dismiss ("Defs. Mot."), Docket Entry No. 42; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 44.) Plaintiff opposes the motion. (Pl. Opp'n to Defs. Mot. ("Pl. Opp'n"), Docket Entry No. 41.) On November 5, 2018, the Court referred the motion to Magistrate Judge Lois Bloom for a report and recommendation. (Order dated Nov. 5, 2018.) By report and recommendation dated January 30, 2019, Judge Bloom recommended that the Court grant in part and deny in part the State Defendants' motion to dismiss ("R&R"). (R&R, Docket Entry No. 51.) On February 27, 2019, the parties filed timely objections to the R&R. (Defs. Obj. to the R&R ("Defs. Obj."), Docket Entry No. 59; Pl. Obj. to the R&R ("Pl. Obj."), Docket Entry No. 60.)

For the reasons set forth below, the Court adopts the R&R and grants in part and denies in part the State Defendants' motion to dismiss.

## I. Background

Plaintiff is an attorney licensed in New York and Connecticut.[2] (Compl. ¶ 2.) Between April of 2005 and May 11, 2015, Plaintiff represented clients at various locations of the Traffic Violations Bureau ("TVB") in the New York City metropolitan area. (*Id.* ¶ 3.) The TVB is a division of the Department of Motor Vehicles, an agency of the State of New York; Administrative Law Judges ("ALJs") preside over TVB proceedings. (*Id.* ¶ 4.) During this

---

[2] The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

period, Plaintiff represented "approximately 850" clients at various TVB locations in connection with traffic tickets they had received.  (*Id.* ¶ 6.)

In December of 2011, due to "complaints of misconduct," Plaintiff was temporarily suspended from practicing law in the TVB courts.  (*Id.* ¶ 5.)  Plaintiff was permitted to resume practicing in the TVB courts several months later in accordance with a "Stipulation of Settlement."  (*Id.* ¶ 5.)  At some point during his suspension, Plaintiff learned that one of his "accusers" was David Smart, a security guard employed by a private company that contracts with the TVB.  (*Id.* ¶¶ 5, 7.)

Plaintiff alleges that "for a long period of time . . . [he] had been subjected to constant harassment, threats, threats of physical violence, theft, and associated acts of malfeasance" by Smart.  (*Id.* ¶ 8.)  Plaintiff reported this alleged harassment to Alan Gelbstein, the ALJ at the Brooklyn South Office of the TVB.  (*Id.* ¶ 9.)  On March 20, 2015, after ALJ Gelbstein had "refused to take any action" to address Smart's behavior, Plaintiff wrote a "formal letter of complaint" (the "March 2015 Complaint") to Elizabeth Morgan, an Assistant Attorney General in the Office of the New York Attorney General.[3]  (*Id.* ¶ 9; Letter to Elizabeth Morgan dated Mar. 20, 2015, Docket Entry No. 46-7.)  Plaintiff informed Morgan that ALJ Gelbstein "was either complicit, incapable or incompetent to handle the ongoing issues" Plaintiff was experiencing with Smart.  (Compl. ¶ 9.)  Morgan did not respond to the March 2015 Complaint. (*Id.*)  Plaintiff alleges that Morgan "failed to take any action to abate the harassing and unlawful

---

[3]  The Court considers the March 2015 Complaint in assessing the motion to dismiss because it is integral to the Complaint.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

conduct of Defendant Smart." (*Id.*)

Plaintiff further alleges that on May 8, 2015, Gelbstein and Danielle Calvo, the clerk

supervisor in the Brooklyn South Office, approached Plaintiff while he was sitting in the

attorneys' room. (*Id.* ¶ 10.) Gelbstein then said to Plaintiff, "[c]an't you go to practice

somewhere else[.] I saw what you wrote about me that I am complicit and incapable." (*Id.*)

On May 11, 2015, three days after the confrontation with Gelbstein and Calvo, Smart

approached Plaintiff "in an aggressive and threatening manner in an attempt to provoke . . . a

physical confrontation." (*Id.* ¶ 11.) Plaintiff "refused to . . . engage . . . Smart." (*Id.*) Calvo

then came over to Plaintiff, accompanied by several officers from the New York Police

Department, and told Plaintiff "that he was no longer allowed at the [TVB] and that [he] was to

leave the building immediately." (*Id.*) Calvo directed Plaintiff to place a telephone call to Ida

Traschen, Assistant Counsel for the Legal Bureau of the DMV. (*Id.*) Plaintiff called Traschen

that same day, who informed him that he "was permanently barred from representing any clients

in the future at any of the TVB locations throughout the State." (*Id.*)

After their May 22, 2015 telephone conversation, Plaintiff placed a number of

"follow[-]up calls" to Traschen to seek further clarification of the ban, but she did not answer his

calls. (*Id.* ¶ 12.) In addition to his telephone calls, Plaintiff wrote letters to Traschen, as well as

to various states agencies seeking an explanation as to why he had been banned from

representing clients at all TVB locations. (*Id.* ¶ 13.) In response to his inquiries, Plaintiff was

told that the agencies he contacted were either unable or unwilling to provide him with any

clarification. (*Id.* ¶ 14.)

Plaintiff alleges that Vahdatlamas, a supervisory ALJ, "was in consultation with" other

Defendants regarding Plaintiff's complaints about Smart and Gelbstein and "treated the violation

of Plaintiff's constitutional rights . . . with complete indifference and/or ratified and condoned said unconstitutional acts as a supervisory person." (*Id.* ¶¶ 45–46.) Plaintiff further alleges that Defendants Flanagan and Palmieri, TVB supervisors, failed to conduct any further inquiries into Calvo's conduct after learning that Plaintiff had been barred from the TVB courts "due to an alleged 'work place violence incident,'" and "reacted to the violations of Plaintiff's constitutional rights with deliberate indifference and/or condoned and ratified . . . unconstitutional conduct." (*Id.* ¶¶ 54–55.)

Plaintiff asserts that he "was never provided with the reasons or rationale" for his ban from representing clients at all TVB locations, which has remained in place since May 11, 2015, and "was not provided with any documentation as to the identity of his accusers, the particulars or the nature of any complaints against him, [or] . . . the opportunity to participate in a . . . hearing." (*Id.* ¶ 15.)

Based on these allegations, Plaintiff asserts three causes of actions against the State Defendants. First, Plaintiff alleges that the State Defendants violated his First Amendment rights by banning him form the TVB courts in retaliation for his March 2015 Complaint to Morgan. (*Id.* ¶¶ 70–75.) Second, he alleges that the State Defendants violated his Fourteenth Amendment rights by depriving him of his liberty and property interest in practicing law at the TVB courts without due process. (*Id.* ¶¶ 76–85.) Third, Plaintiff seeks prospective injunctive relief enjoining the State Defendants from barring him from practicing law at any TVB location in New York State. (*Id.* ¶¶ 86–88.) Plaintiff brings these claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. (*Id.* ¶ 1.)

As relief for these alleged violations, Plaintiff seeks (1) a declaratory judgment that the

JSA-062

State Defendants have violated his First and Fourteenth Amendment rights;[4] (2) prospective injunctive relief enjoining the State Defendants from prohibiting Plaintiff from practicing law at the TVB courts in New York State; and (3) compensatory and punitive damages. (*Id.* ¶¶ 21–22.)

## II. Report and recommendation

By report and recommendation dated January 30, 2019, Judge Bloom recommended that the Court grant in part and deny in part the State Defendants' motion to dismiss. (R&R 2.)

First, Judge Bloom recommended that the Court deny the State Defendants' motion to dismiss for lack of standing under Article III because their "conclusory statement that [P]laintiff's injury . . . was not due to 'any illegal action by any of the State Defendants' is insufficient to defeat [P]laintiff's proffer of standing." (*Id.* at 10.)

Second, Judge Bloom recommended that the Court grant the motion to dismiss as to Palmieri and Flanagan for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure because neither Defendant was ever served. (*Id.* at 11.)

Third, Judge Bloom recommended that the Court grant the motion to dismiss Plaintiffs' section 1983 claims as to Vahdatlamas and Morgan for failure to allege that either Defendant was personally involved in the alleged violations of Plaintiffs' rights. (*Id.* at 12–15.)

Fourth, Judge Bloom recommended that the Court deny the motion to dismiss Plaintiff's First Amendment retaliation claim as to Gelbstein, Calvo, and Traschen for failure to state a claim upon which relief can be granted. (*Id.* at 19.) Judge Bloom found that Plaintiff had satisfied, for purposes of a motion to dismiss, the three elements of a First Amendment

---

[4] The Complaint also seeks a declaratory judgment that the State Defendants violated Plaintiff's Fourth and Fifth Amendment rights. (Compl. ¶¶ 21, 77.) Because Plaintiff has not made any factual allegations to support either claim, to the extent Plaintiff brings such claims, the Court dismisses them for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

6

retaliation claim. (*Id.* at 16–18.)

Fifth, Judge Bloom recommended that the Court grant the motion to dismiss Plaintiff's procedural due process claim because Plaintiff has not alleged that Defendants deprived him of a constitutionally protected liberty or property interest. (*Id.* at 20–21.) In the alternative, Judge Bloom concluded that Plaintiff had an adequate post-deprivation opportunity to be heard, because he could have challenged the ban in an available state court proceeding. (*Id.* at 21–22.)

Sixth, Judge Bloom recommended that the Court deny the motion to dismiss Plaintiff's claim for prospective injunctive relief because Plaintiff's request "satisfies the requirements for the exception to Eleventh Amendment immunity set forth in *Ex Parte Young*," and because the "instant motion cannot establish that the State Defendants' decision to ban plaintiff from representing clients at all TVB Courts was reasonable and necessary." (*Id.* at 23.)

Seventh, Judge Bloom recommended that the Court grant the motion to dismiss Plaintiff's conspiracy claims under section 1985 and section 1986 because Plaintiff "fails to allege facts to establish that the State Defendants[] acted with any class-based discriminatory animus." (*Id.* at 25.)

Eighth, Judge Bloom recommended that the Court deny the motion to dismiss on qualified immunity grounds because the State Defendants "fail to articulate the 'clearly established right' upon which they base their qualified immunity affirmative defense." (*Id.* at 26–27.)

Finally, Judge Bloom recommended that the Court deny Plaintiff leave to amend his claims against Flanagan and Palmieri, as well as his due process claim and his claims under sections 1985 and 1986, as amendment of these claims would be futile. (*Id.* at 29.)

7

## III.  Discussion

### a.  Standards of review

#### i.  Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *Id*.; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).  The clear error standard also applies when a party makes only conclusory or general objections.  *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain de novo review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758, (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

#### ii.  Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate

JSA-065

it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir.

2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*,

718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d

635, 638 (2d Cir. 2005)); *see also Chau v. S.E.C.*, 665 F. App'x 67, 70 (2d Cir. 2016).  The

plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether

the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true

and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown

affirmatively, and that showing is not made by drawing from the pleadings inferences favorable

to the party asserting it.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir.

2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010).  A court may consider matters outside of

the pleadings when determining whether subject matter jurisdiction exists.  *M.E.S., Inc. v. Snell*,

712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

### iii.  Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the

complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Kim v. Kimm*,

884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d

Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v.

N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this

tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.[5]

### b.  Objections to the R&R

Plaintiff objects to Judge Bloom's recommendation that the Court dismiss his claims

against Vahdatlamas and Morgan for failure to plausibly allege that they were personally

involved in the alleged violations of Plaintiff's rights.  (Pl. Obj. ¶¶ 7–18, 28–29.)  In addition,

Plaintiff objects to Judge Bloom's recommendations that the Court: (1) dismiss Plaintiff's due

process claim, (*id.* ¶¶ 19–24); (2) dismiss Plaintiff's section 1985 claim, (*id.* ¶¶ 25–26, 31); and

(3) deny Plaintiff leave to amend his First Amendment and civil rights claims, (*id.* ¶¶ 10, 30).[6]

The State Defendants object to Judge Bloom's recommendation that the Court deny their

motion to dismiss for lack of standing.  (Defs. Obj. 2–5.)  In addition, the State Defendants

object to Judge Bloom's recommendations that the Court: (1) deny the motion to dismiss

Plaintiff's First Amendment retaliation claim as to Gelbstein, Calvo, and Traschen, (*id.* at 5–9),

(2) deny the motion to dismiss on qualified immunity grounds, (*id.* at 10–13), and (3) deny the

---

[5]  Generally, in reviewing a *pro se* complaint, the Court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).  However, Plaintiff is an attorney.  (Compl. ¶ 2.)  Because "the rules afforded *pro se* litigants are not relaxed when that litigant is also an attorney . . . the Court need not construe [such a] plaintiff's pleadings liberally to raise the strongest arguments they suggest." *Harris v. Queens Cty. Dist. Attorney's Office*, No. 08-CV-1703, 2009 WL 3805457, at *3 (E.D.N.Y. Nov. 9, 2009) (citations and internal quotation marks omitted).

[6]  Plaintiff also purports to "object to [the R&R] taking the Defendants' representations of . . . fact as true."  (Pl. Obj. ¶¶ 5–6.)  However, as Plaintiff's objection is in fact to the Judge Bloom's recitation of Defendants' arguments and not to a finding or recommendation, it is not a valid objection and the Court declines to address it.  Plaintiff also argues Vahdatlamas and Morgan are not entitled to qualified immunity, but as Judge Bloom did not find they were, this is similarly not a valid objection to the R&R and the Court therefore declines to address it.  (*Id.* ¶ 27; R&R 14–15 n.5, 25–29.)

motion to dismiss Plaintiff's claim for prospective injunctive relief, (*id.* at 13–14).

The Court reviews these recommendations *de novo*.

### c. Unopposed findings and recommendations in the R&R

No party has objected to Judge Bloom's recommendation that the Court dismiss Plaintiff's claims against Flanagan and Palmieri for insufficient service of process. The Court therefore reviews this recommendation for clear error. Having reviewed the relevant portions of the R&R and finding no clear error, the Court adopts the recommendation pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the Court dismisses Plaintiff's claims against Flanagan and Palmieri.

### d. Standing

The State Defendants argue that Plaintiff lacks standing under Article III because Plaintiff's own conduct — not the State Defendants' — caused him to be banned from practicing in the TVB courts. (Defs. Mem. 11.)

In order to show standing, a plaintiff must establish three things: (1) an "injury in fact — an invasion of a legally protected interest which is . . . concrete and particularized and actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) redressability of the injury "by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see Pincus v. Nat'l R.R. Passenger Corp.*, 581 F. App'x 88, 89 (2d Cir. 2014) (describing the three elements of standing (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("[A] plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." (citing *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009))). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citations and internal quotation marks

JSA-068

omitted).

"[A] plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) (citing *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000)).  "An injury is 'self-inflicted' so as to defeat standing only if 'the injury is so completely due to the plaintiff's own fault as to break the causal chain.'"  *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (citation omitted) (quoting *St. Pierre*, 208 F.3d at 402).  However, "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing."  *St. Pierre*, 208 F.3d at 402 (quoting 13 Charles A. Wright et al., *Federal Practice and Procedure* § 3531.5 at 461 (2d ed. 1984)); *see also Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at *10 n.5 (E.D.N.Y. Sept. 9, 2013) ("Self-inflicted injury that results from a plaintiff's personal choices rather than a defendant's conduct will not confer standing." (citing *McConnell v. FEC*, 540 U.S. 93, 228 (2003), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010)) (citation omitted)); *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) ("A plaintiff cannot establish Article III standing to pursue a cause of action where that plaintiff is the primary cause of its own alleged injury." (citations omitted)).

Plaintiff contends that Defendants banned him from the TVB in direct response to his protected First Amendment activity.  (Compl. ¶¶ 71, 74.)  The State Defendants argue that Plaintiff lacks Article III standing because his ban from the TVB courts was "not because of any illegal action by any of the State Defendants," but rather was a result of Plaintiff's "violent, threatening and unprofessional conduct."  (Defs. Mem. 11.)  To support this argument, the State Defendants point to "the voluminous record of contemporaneous complaints and statements

regarding Plaintiff's conduct,"[7] (*id.*; *see also* Exs. 1–28, annexed to Decl. of Barbara Montena, Docket Entry Nos. 45-1–28), which they argue "demonstrates that [Plaintiff] was barred from the [TVB] because of his continued violent, threatening and unprofessional conduct, not in retaliation for his letter to defendant Morgan," (Defs. Obj. 2). The State Defendants further assert that the "record demonstrates that Plaintiff was banned from the TVB . . . as a direct result of[] his physical confrontation with security guard Smart," which was "the culmination of a long and well-documented history of violent and offensive behavior by Plaintiff." (*Id.* at 2–3.) In addition, in their objections to the R&R, Defendants rely on *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016), to assert that "Plaintiff may not merely 'rely on the allegations of the [complaint]' in responding to evidence showing lack of Article III standing," and argue that "Plaintiff's inability to 'come forward with evidence of [his] own to controvert' the . . . evidence that his ban . . . was caused by his own . . . conduct confirms that he lacks Article III standing." (*Id.* at 3 (citing *Carter*, 822 F.3d at 57 (citations omitted)).) However, *Carter* provides no support for Defendants' position. In *Carter*, the Second Circuit held that "plaintiffs are entitled to rely on the allegations in the [complaint] if the evidence proffered by the defendant . . . does not contradict plausible allegations that are themselves sufficient to show standing." *Carter*, 822 F.3d at 57. While the statements proffered by the State Defendants may be used to support an alternate theory of why the State Defendants banned Plaintiff from the TVB courts, they do not directly contradict Plaintiff's plausible allegations that he was injured by the State Defendants.

At this stage of the proceedings, and on the current record, the Court cannot conclude that Plaintiff's injury "is so completely due to [his] . . . own fault as to break the causal chain." *St.*

---

[7] Because the Court is assessing whether it has subject matter jurisdiction, it may rely on documents outside the Complaint. *See M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

*Pierre*, 208 F.3d at 402. Accordingly, the Court denies the State Defendants' motion to dismiss for lack of standing.

### e. Section 1983 claims

Plaintiff asserts two causes of action under section 1983 against the State Defendants for alleged violations of his constitutional rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment.

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Before discussing each claim, the Court determines whether Plaintiff has alleged personal involvement of the State Defendants.

### i. Personal involvement/supervisory liability

The State Defendants argue that Plaintiff fails to state a claim under section 1983 against Vahdatlamas, Traschen, and Morgan because Plaintiff has not adequately alleged that they were personally involved in violating his constitutional rights.[8] (Defs. Mem. 20–21.)

---

[8] The State Defendants also argue that Plaintiff has failed to adequately allege Palmieri and Flanagan's personal involvement in violating his rights. (Defs. Mem. 20–21.) Because the Court dismisses the claims against Palmieri and Flanagan on other grounds, the Court does not address whether Plaintiff has plausibly alleged their personal involvement in violating his constitutional rights.

14

"[T]he 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[A]ny complaint under [s]ection 1983 must plead specific facts that allege the personal involvement of each individual charged with violating [the plaintiff's] civil rights." *Doe v. City of New York*, No. 11-CV-3978, 2011 WL 3876990, at *2 (E.D.N.Y. Sept. 1, 2011) (citation omitted). "A defendant's supervisory authority is insufficient in itself to demonstrate liability under [section] 1983." *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)).

A plaintiff can demonstrate the personal involvement of a supervisory defendant by showing that:

> (1) [he or she] participated directly in the alleged constitutional violation, (2) [he or she], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) [he or she] created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom, (4) [he or she] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) [he or she] exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Brandon v. Kinter*, --- F.3d ---, ---, 2019 WL 4263361, at *10 (2d Cir. Sept. 10, 2019) (alterations in original) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Accordingly, "[i]n a damages suit brought pursuant to [section] 1983, supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." *Lewis v. Rawson*, 180 F. App'x 239, 240

(2d Cir. 2006) (internal quotation marks omitted) (quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)); *see also Cooper v. City of New York*, No. 17-CV-1517, 2019 WL 3642996, at *10 (E.D.N.Y. Aug. 5, 2019) (quoting same).

Plaintiff has not plausibly alleged that Morgan and Vahdatlamas were personally involved in the alleged violations of his constitutional rights. Plaintiff alleges that Morgan "failed to respond to Plaintiff's written complaint . . . [or] take any action to abate the [Plaintiff's harassment] by Defendant Smart," but the Complaint contains no factual allegations as to Morgan's involvement in the alleged response to the letter, i.e., Plaintiff's ban from the TVB, that is the basis for Plaintiff's section 1983 claims. (Compl. ¶ 9.) Plaintiff further alleges that after receiving the letter, Morgan "conspired with [other Defendants] . . . to cause or contribute to the violation of Plaintiff's [constitutional rights]," or, "[a]lternatively . . . treated the violation of Plaintiff's . . . constitutional rights with deliberate indifference and/or condoned and ratified the violation[s]." (*Id.*) These legal conclusions do not plausibly state a claim that Morgan was personally involved in the alleged violations of Plaintiff's constitutional rights.[9]

As to Vahdatlamas, Plaintiff alleges only that she "was in consultation" with other State Defendants regarding Plaintiff's complaints of Smart and Gelbstein's "misconduct," and "treated the violation of Plaintiff's constitutional rights . . . with complete indifference and/or ratified and condoned said unconstitutional acts as a supervisory person." (*Id.* ¶ 46.) Like the allegations against Morgan, these bare legal conclusions do not plausibly state a claim that Vahdatlamas was personally involved in the alleged violations of Plaintiff's constitutional rights.

---

[9] The State Defendants also argue that Morgan is entitled to absolute immunity because "as an attorney in the Office of the New York Attorney General, she has absolute immunity from any civil liability." (Defs. Mem. 22.) Because the Court dismisses the claims against Morgan on other grounds, the Court declines to address whether Morgan is entitled to absolute immunity.

Because Plaintiff has failed to plausibly allege that Morgan and Vahdatlamas were personally involved in violating Plaintiff's constitutional rights, the Court dismisses the claims against them.

As to Traschen, the Court finds that Plaintiff has adequately alleged her personal involvement. The State Defendants suggest that Plaintiff has only alleged that Traschen "ignored Plaintiff's phone calls and letters." (Defs. Mem. 21.) However, the Complaint specifically alleges that Traschen "actively participated in the violation of Plaintiff's constitutional rights . . . by directly informing . . . Plaintiff that he was no longer allowed to practice law in the TVB [c]ourts." (Compl. ¶ 49.) On a motion to dismiss, these allegations are sufficient to show that Traschen directly participated in the alleged violation. The Court therefore denies the State Defendants' motion as to this claim against Traschen.

### ii. First Amendment retaliation claim

The State Defendants argue that Plaintiff has failed to plausibly allege that they retaliated against him for any protected First Amendment activity. (Defs. Mem. 12–13.)

To prevail on a First Amendment retaliation claim, a plaintiff must show that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New* York, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Eyshinskiy v. Kendall*, 692 F. App'x 677, 677–78 (2d Cir. 2017); *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citation omitted); *Maco v. Baldwin Union Free Sch. Dist.*, 249 F. Supp. 3d 674, 678 (E.D.N.Y. 2017) ("Private citizens alleging retaliation for their criticism of public officials are generally required to show that they engaged in protected speech, persons acting under color

JSA-074

of state law took adverse action against them in retaliation for that speech, and

the retaliation resulted in actual chilling of their exercise of their constitutional right to free

speech." (citation and internal quotation marks omitted)), *aff'd*, 726 F. App'x 37 (2d Cir. 2018).

## 1. Protected speech

The First Amendment protects "the right of the people . . . to petition the government for

the redress of grievances."  U.S. Const. amend. I.  "The right to petition is . . . implicit in '[t]he

very idea of [republican] government," *McDonald v. Smith*, 472 U.S. 479, 482 (1985) (quoting

*United States v. Cruikshank*, 92 U.S. 542, 552 (1876)), and "allows citizens to express their

ideas, hopes, and concerns to their government and their elected representatives," *Borough of

Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011).  "A petition conveys the special concerns of

its author to the government and, in its usual form, requests action by the government to address

those concerns."  *Id.* at 388–89.  Because "speech critical of the exercise of the State's power lies

at the very center of the First Amendment," *Velez v. Levy*, 401 F.3d 75, 97 (2d Cir. 2005) (quoting

*Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991)), "'a section 1983 claim will lie where

the government takes negative action against an individual because of his exercise of rights

guaranteed' by the First Amendment," *Velez*, 401 F.3d at 97 (quoting *Friedl v. City of New York.*,

210 F.3d 79, 86–87 (2d Cir. 2000)); *see also Safepath Sys. LLC v. N.Y.C. Dep't of Educ.*, 563 F.

App'x 851, 857 (2d Cir. 2014) ("The rights to complain to public officials and to seek

administrative and judicial relief from their actions are protected by the First Amendment."

(quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir.

2002))).

Plaintiff plausibly alleges that he engaged in protected speech.  Plaintiff alleges that he

was banned from the TVB courts in response to his March 2015 Complaint to Morgan in her

capacity as an Assistant Attorney General in the New York State Office of the Attorney General.[10]  The March 2015 Complaint detailed Plaintiff's complaints about Smart and Gelbstein, both individuals employed at an office of a state agency.  (Mar. 2015 Compl.)  In the March 2015 Complaint, Plaintiff requested that Morgan "take any and all action to expedite and resolve these issues."  (*Id.*)  Plaintiff's March 2015 Complaint, in which he outlined his grievances against a state agency and asked a government official to address those grievances, is speech protected by the First Amendment.[11]  *See Safepath Sys. LLC*, 563 F. App'x at 857 (finding that plaintiff contractors engaged in protected speech when they "complain[ed] to" to the New York City Department of Investigation and the New York State Attorney General about city agency defendants' failure to comply with legal mandates).

---

[10]  The Complaint also asserts that "[a]t the time that Plaintiff published his letter of complaint . . . Plaintiff had an interest protected by the First Amendment, [i.e.,] . . . a right to practice his profession in the TVB court free from harassment, threat, and threat of violence." (Compl. ¶ 72.)  The Court agrees with the State Defendants that Plaintiff does not have a First Amendment right to practice law in the TVB courts.  *See Jacob & Meyers, LLP v. Presiding Justices of the First, Second, Third, and Fourth Judicial Dep'ts, Appellate Div. of the Supreme Court of the State of N.Y.*, 852 F.3d 178, 187–89 (2d Cir. 2017) ("Clients have First Amendment expressive rights for which litigation may provide a vehicle . . . . We are not aware of any judicial recognition of such an interest, however, when it comes to the lawyer's generic act of pursuing litigation on behalf of any client . . . . Of course, we do not question the right to petition a court, with the aid of a lawyer, for redress.  But in the context of for-profit law firms that serve their clients' interests as a business, that right belongs to the client, not the attorney.").  To the extent Plaintiff asserts a First Amendment retaliation claim on the basis that he has a constitutionally protected right to practice law in the TVB courts, the Court dismisses the claim.

[11]  The State Defendants argue that Plaintiff did not have a right protected by the First Amendment because the "violent and threatening behavior for which Plaintiff was banned is not protected by the First Amendment."  (Defs. Mem. 14.)  As Plaintiff's retaliation claim alleges that he was banned in response to the letter he sent to Morgan, the Court does not address this argument on the motion to dismiss.

19

## 2. Causation

The second element of a First Amendment retaliation claim requires a plaintiff to show that "the defendant's actions were motivated or substantially caused" by the plaintiff's First Amendment activity. *Dorsett*, 732 F.3d at 160. "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)); *see also Hampshire Recreation, LLC v. Vill. of Mamaroneck*, 664 F. App'x 98, 100 (2d Cir. 2016) (holding, in First Amendment retaliation case, that a "causal connection [is] established where protected activity is closely followed in time by [an] adverse action" (internal quotation marks omitted) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001))); *Gogol v. City of New York*, No. 15-CV-5703, 2017 WL 3449352, at *9 (finding, in a First Amendment retaliation case, that "temporal proximity is strong evidence of improper intent" (citation omitted)). "[D]irect evidence of retaliation may consist of 'conduct or statements by persons involved in the decision[-]making process that may be viewed as directly reflecting the alleged [retaliatory] attitude.'" *McAvey v. Orange-Ulster BOCES*, 805 F. Supp. 2d 30, 40 (S.D.N.Y. 2011) (alteration in original) (citation omitted) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997)). The Second Circuit "has declined to draw a bright line as to how close in time the [protected activity and the adverse action] must be" to establish the causation element of a First Amendment retaliation claim, and has "instead called on courts to exercise 'judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.'" *Brandon*, --- F.3d at ---, 2019 WL 4263361, at *14 (quoting *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2009)).

20

For purposes of the motion to dismiss, Plaintiff has established a causal link between his protected First Amendment activity and the State Defendants' actions banning him from the TVB courts. Plaintiff alleges that on May 8, 2015, seven weeks after Plaintiff sent the March 2015 Complaint, Gelbstein and Calvo approached him at the Brooklyn South Office of the TVB. (Compl. ¶ 10.) Gelbstein then stated, "[c]an't you go practice somewhere else[.] I saw what you wrote about me that I am complicit and incapable," (*id.*) — comments that not only indicate that Gelbstein and Calvo were aware of Plaintiff's letter and its contents, but that also "may be viewed as directly reflecting the alleged [retaliatory] attitude," *McAvey*, 805 F. Supp. at 40. Three days later, on May 11, 2015, Plaintiff was approached by Smart, who "attempt[ed] to provoke . . . Plaintiff into a physical confrontation." (*Id.* ¶ 11.) Despite Plaintiff's "refus[al] to engage" in a physical confrontation with Smart, Plaintiff was then approached by Calvo, who asked him to leave the building and informed him that he was no longer allowed at any TVB locations. (*Id.*) Later that same day, Plaintiff spoke to Traschen, who told him that he was "permanently barred from representing any clients in the future at any of the TVB locations." (*Id.*) Based on the circumstances of this case as alleged in the Complaint, the temporal proximity between Plaintiff's March 2015 Complaint and being banned from representing clients at all TVB locations is sufficient, on a motion to dismiss, to establish causation between Plaintiff's protected First Amendment activity and the State Defendants' actions.

In their objections to the R&R, the State Defendants argue that "neither temporal proximity nor Plaintiff's allegation regarding . . . [Gelbstein's] purported comment" are "sufficient to render his claim . . . plausible." (Defs. Obj. 5.) With respect to both claims, the State Defendants rely heavily on Plaintiff's "admitted physical confrontation with Smart," arguing that it was an "intervening event" that negates any inference of causation, and that "the

JSA-078

only plausible inference . . . is that, when Plaintiff was informed that he was being banned from the TVB because of his 'physical confrontation'" with Smart, that was "not mere pretext" but "the actual reason." (*Id.* at 6, 9.)

The State Defendants misconstrue the allegations in the Complaint. Plaintiff explicitly denies that he and Smart had a physical confrontation on the day Plaintiff was banned from the TVB courts, alleging instead that he "refused to engage" with Smart's attempt to bait him into a confrontation. (Compl. ¶ 11.) Furthermore, Plaintiff does not allege that he was ever told he was being banned because of an altercation with Smart. To the contrary, the Complaint states numerous times that Plaintiff was never given a reason for the ban, despite his efforts to obtain an explanation. (*Id.* ¶¶ 12–15, 83.)[12]

---

[12] The State Defendants also argue that there can be no inference of causation based on temporal proximity, because Plaintiff was previously banned from the TVB. (Defs. Obj. 7.) In support of this proposition, the State Defendants cite a few cases in which courts in this Circuit have found, in the employment context, that an inference based on temporal proximity is undercut where adverse employment actions began prior to a plaintiff's protected speech. (*Id.*) Primarily, the State Defendants cite a Second Circuit case, in which the Court of Appeals found no inference of retaliation where "the adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline' which began when [the employer] . . . diminished [the plaintiff's] . . . job responsibilities *a full five months prior* to his filing of the EEOC charges." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (emphasis in original). However, the cases cited by the State Defendants are distinguishable from the facts before the Court.

Plaintiff was previously suspended from the TVB courts in response to complaints of misconduct, and then subsequently permitted to resume his practice after fulfilling the agreed-upon terms. (Compl. ¶ 5.) Unlike in *Slatterly*, where the employee filed his complaint amid continuously escalating adverse consequences, Plaintiff sent the March 2015 Complaint several years after his prior disciplinary action had been settled. 248 F.3d at 95. The State Defendants' suggestion that Plaintiff's 2011 ban categorically and indefinitely precludes him from establishing causation based on temporal proximity in a retaliation claim such as this one is unpersuasive.

### 3. Injury

The third element of a First Amendment retaliation claim requires a plaintiff to show that "the defendant's actions caused [plaintiff] some injury." *Dorsett*, 732 F.3d at 160 (citing *Curley v. Vill. of Suffern*, 286 F.3d 65, 73 (2d Cir. 2001)). A plaintiff is not required to show that his "speech has been adversely affected by the government retaliation," and can instead show "that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160.

Plaintiff has plausibly alleged that the State Defendants' actions caused him injury. Plaintiff "practiced law almost exclusively" in the TVB courts over a ten-year period. (Compl. ¶ 3.) As a result of the State Defendants' actions, Plaintiff has been barred indefinitely from representing clients in any of the TVB courts across the State of New York. This is a concrete harm for the purposes of a First Amendment retaliation claim.

The Court finds that Plaintiff has plausibly alleged a First Amendment retaliation claim as to Gelbstein, Calvo, and Traschen. Accordingly, the Court denies the motion to dismiss Plaintiff's First Amendment retaliation claim as to these Defendants.

### iii. Due process claim

Plaintiff also raises a procedural due process claim, claiming that he "enjoyed a property and/or liberty interest in his right to practice law and earn a living" in the TVB courts. (*Id.* ¶ 78.) Plaintiff asserts that the State Defendants deprived him of that protected interest without due process when they "failed to adequately apprise [him] of the reasons for his arbitrary dismissal . . . [or] to inform [him] that he was entitled to a hearing and [to] confront any accusers." (*Id.* ¶ 83.)

The State Defendants argue that Plaintiff cannot state a due process claim because he "does not have a protected liberty or property interest in continuing to practice law at the TVB." (Defs. Mem. 17.) In addition, the State Defendants argue that even if Plaintiff did have a

23

protected interest in his TVB court practice, the DMV's "exercise of discretion" in enforcing its regulation against Plaintiff cannot support a due process claim and, further, Plaintiff had an adequate post-deprivation opportunity to be heard because he could have pursued an available remedy in the state courts. (*Id.* at 17–19.)

The Constitution imposes "constraints," ordinarily in the form of notice and a pre-deprivation hearing, on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause" of the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015) (citing *Mathews*, 424 U.S. at 332). Because the requirements of procedural due process "apply only to the deprivation of interests encompassed by the [Constitution's] protection of liberty and property" and because "the range of interests protected by procedural due process is not infinite," *see Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972), the "first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty,'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). If the court finds that the plaintiff has been deprived of such an interest, it evaluates whether the government's procedures comport with due process. *See id.*

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 576. Such a claim is "created and . . . defined by existing rules or understandings that stem from an independent source such as state law." *Polito v. City of New York*, No. 15-CV-2301, 2016 WL 3676425, at *4 (E.D.N.Y. Jul. 7, 2016) (quoting *Roth*, 408 U.S. at 577).

"The liberty interests protected by the Fourteenth Amendment include the freedom 'to

JSA-081

engage in any of the common occupations of life.'" *Roth*, 408 U.S. at 572 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). However, "the Supreme Court, [the Second] Circuit, and the other Circuits addressing the issue have all indicated that the right of occupational choice is afforded Due Process protection only when a plaintiff is 'complete[ly] prohibit[ed]' from engaging in his or her chosen profession." *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (alterations in original) (quoting *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)); *see also Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009) ("[I]t is only when the challenged action effectively prohibits one from engaging in a profession, or pursuing any job in a given field that there is a deprivation entitled to protection."). The Fourteenth Amendment does not "protect the right to a particular job." *Cityspec, Inc.*, 617 F. Supp. 2d at 169.

Plaintiff does not allege facts that would establish either a property or liberty interest. Plaintiff does not suggest any basis for a legitimate claim of entitlement to his continued representation of clients in the TVB courts. That "the effect of the [ban] . . . is that the Plaintiff's long and chosen career path [—] lawyering at the TVB [—] has been eliminated," (Pl. Opp'n 7), does not establish that he had anything more than "an abstract need . . . desire . . . [or] unilateral expectation" that he be able to continue his traffic court practice. *Roth*, 408 U.S. at 576.

Plaintiff has similarly not established that he has been deprived of a protected liberty interest. In imposing the TVB ban, the State Defendants did nothing to prohibit Plaintiff from practicing law anywhere other than the TVB courts. Plaintiff himself notes that "[w]hile he potentially could work elsewhere within the same field, [Plaintiff] has an established client base and has created a career at TVB." (Pl. Opp'n 7–8.) In his objections to the R&R, Plaintiff states that he "is not a[t] liberty to practice elsewhere" because he will be required to explain the basis for his expulsion from the TVB courts if he seeks admission to practice in any state or federal

25

jurisdiction, and is unable to do so.  (Pl. Obj. ¶ 22.)  However, Plaintiff does not cite to any authority to support his claim that this constitutes a complete ban from the profession for the purposes of due process analysis.

Because Plaintiff has not plausibly alleged a protected property or liberty interest in his law practice before the TVB courts, the Court grants State Defendants' motion and dismisses the due process claim.

### f.  Sections 1985 and 1986 conspiracy

The State Defendants argue that Plaintiff's claims under sections 1985 and 1986 should be dismissed because the allegations are conclusory and because Plaintiff "fails to allege any class-based, invidiously discriminatory animus."  (Defs. Mem. 13–14.)

In response, Plaintiff argues that his "allegations . . . are more than detailed enough to assert more than conclusory assertions of discovery," and asserts his belief that "the extent of the collusion between the various Defendants" will be revealed through discovery.  (Pl. Opp'n 5.)

To state a claim for conspiracy in violation of section 1985(3), a plaintiff must allege (1) a conspiracy, (2) with the intent or purpose to deprive a person of equal protection of the law, (3) an act in furtherance of the conspiracy, (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right.  *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015); *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000).  "In order to maintain an action under [s]ection 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation and internal quotation marks omitted).  In addition, a plaintiff must allege that she is a member of a protected class and that the conspirators acted with class-based discriminatory motivation.  *See*

*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006); *Ali v. Connick*, 136 F. Supp. 3d 270, 277 (E.D.N.Y. 2015).

"[Section] 1986 provides a cause of action against anyone who, 'having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so.'" *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d at 1085, 1088 (2d Cir. 1993) (citation omitted). Thus, "a [section] 1986 claim must be predicated on a valid [section] 1985 claim." *Id.*; *Kalamaras v. Cty. of Nassau*, No. 17-CV-1068, 2019 WL 4452281, at *13 (E.D.N.Y. Sept. 16, 2019) (same).

Plaintiff's conclusory statements that the State Defendants "conspired" against him do not state a claim under sections 1985 or 1986. (Compl. ¶¶ 10, 12, 14.) More fundamentally, Plaintiff does not allege any facts to suggest that the State Defendants acted with any class-based discriminatory motivation. In his objection to the R&R, Plaintiff argues that he has alleged the required discriminatory intent because he is "an Italian American . . . in a Jewish community of lawyers and judges." (Pl. Obj. ¶ 26.) However, Plaintiff has not alleged any facts to suggest that Defendants' conduct was motivated by his identity as an Italian American. *See Radin v. Tun*, No. 12-CV-1393, 2015 WL 4645255, at *12 (E.D.N.Y. Aug. 4, 2015) (adopting report and recommendation) (finding plaintiff failed to state a claim under section 1986 because she did "not allege any discernable connection between her membership in a protected class and her federal claims"). Because Plaintiff has not stated a claim for conspiracy under section 1985, Plaintiff also fails to state a claim under section 1986. Accordingly, the Court dismisses Plaintiff's claims under sections 1985 and 1986.

### g. Prospective injunctive relief

In his third cause of action, Plaintiff seeks prospective injunctive relief enjoining the

State Defendants, in their official capacities, from "excluding . . . [Plaintiff] from practicing law in any TVB [c]ourt in . . . the State of New York." (Compl. ¶ 88.)

The Eleventh Amendment bars suits in federal court against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States cannot be sued by private individuals in federal court." (citation omitted)); *Browdy v. Karp*, 131 F. App'x 751, 752–53 (2d Cir. 2005) ("To the extent [the plaintiff] sues defendants in their official capacity as employees of [a state agency] his . . . claims for money damages are barred by the Eleventh Amendment." (internal quotation marks omitted) (first citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); and then citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984))). "However, 'a plaintiff may sue a state official acting in his official capacity [—] notwithstanding the Eleventh Amendment [—] for prospective, injunctive relief from violations of federal law.'" *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)) (finding that plaintiffs' claims for injunctive relief to remedy state defendants' alleged ongoing retaliation for plaintiffs' political affiliation and union membership were not barred by the Eleventh Amendment); *see D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 352 (S.D.N.Y. 2017) ("[T]o the extent that claims are brought here against a defendant in an official capacity, state officers may be properly sued in that capacity for prospective relief under the doctrine of *Ex parte Young*."); *Ali v. Hogan*, No. 12-CV-104, 2013 WL 5503321, at *9 (N.D.N.Y. Sept. 12, 2013) ("[U]nder the doctrine of *Ex Parte Young* . . . a suit may proceed against a state official in his or her official capacity — notwithstanding the Eleventh Amendment — when a plaintiff '(a) alleges an ongoing

28

violation of federal law and (b) seeks relief properly characterized as prospective.'" (quoting *In re Deposit Ins. Agency*, 482 F.3d at 618)); *see also In re Deposit Ins. Agency*, 482 F.3d at 618 ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))).

The State Defendants argue that Plaintiff's claim for prospective injunctive relief should be dismissed because he has failed to plausibly allege his underlying substantive claims, and therefore does not allege an "ongoing violation of federal law."  (Defs. Mem. 24; Defs. Obj. 13–14.)  Because the Court finds that Plaintiff has plausibly alleged that Gelbstein, Calvo, and Traschen violated his First Amendment rights when they banned him from the TVB courts, and the ban remains in place indefinitely, Plaintiff has alleged an ongoing violation of federal law and Plaintiff's claim for injunctive relief is proper under *Ex Parte Young*.

Accordingly, the Court denies the motion to dismiss Plaintiff's claim for prospective injunctive relief.

### h. Qualified Immunity

"Qualified immunity protects officers from suit so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) ("Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for

29

the defendant to believe that his action did not violate such law." (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007))).

Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231–32 (2009)). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion" to dismiss, but "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if 'the facts supporting the defense appear on the face of the complaint.'" *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004)). As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* (quoting *McKenna*, 386 F.3d at 436).

The State Defendants argue that they are entitled to qualified immunity because "to the extent" they were "personally involved in the DMV's decision to permanently ban Plaintiff from the TVB in 2015 for his violent and threatening behavior, they did not violate any of Plaintiff's clearly established constitutional rights." (Defs. Mem. 23.) Defendants further argue that Plaintiff has not "demonstrat[ed] a violation of any clearly established constitutional rights, [because] Plaintiff had *no* constitutional right to practice law at the TVB, to engage in violent and threatening behavior, or to an evidentiary hearing before being barred from the TVB." (*Id.* at 24 (emphasis in original); *see also* Defs. Obj. 11 ("In any event, Plaintiff failed to demonstrate the violation of a clearly established right because the law was clear when Plaintiff was banned

30

from the TVB . . . that no constitutional rights are violated if a person is banned from a judicial or quasi-judicial forum for violent or offensive behavior.").)

The State Defendants' arguments frame the question of whether Plaintiff has alleged a violation of clearly established rights based not on Plaintiff's allegations, as they must on a motion to dismiss, but instead on the State Defendants' view of the facts. Furthermore, the State Defendants' arguments rely on facts not properly before the Court on a motion to dismiss. Beyond referencing the "complaints of misconduct" that led to Plaintiff's temporary suspension from the TVB in 2011, (Compl. ¶ 5), the Complaint contains no facts regarding Plaintiff's alleged history of violent or offensive behavior at the TVB, nor does it rely on any of those complaints of misconduct to state the claims in the Complaint. The appropriate inquiry is whether the Court can find, at this stage of the litigation, that the State Defendants did not violate any of Plaintiff's clearly established constitutional rights when they banned him from the TVB in retaliation for his protected First Amendment speech, as alleged in the Complaint. If Plaintiff succeeds in demonstrating the State Defendants retaliated against him for his protected First Amendment speech, the Court may find at that point that the State Defendants violated Plaintiff's clearly established constitutional right. *See Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 342 (S.D.N.Y. 2015) ("[The] right imperiled by [Defendants] . . . was well-ingrained at the time of disputed conduct. Retaliation claims have long been a fixture of First Amendment law.")

Because the Court cannot determine based on the Complaint that the State Defendants' conduct did not violate clearly established law of which a reasonable person would have known, the Court denies without prejudice the motion to dismiss on qualified immunity grounds.

### i. Leave to amend

Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely

give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283). However, motions to amend "should generally be denied in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

The Court grants Plaintiff leave to amend the Complaint as to Morgan's and Vahdatlamas's personal involvement in the alleged violation of Plaintiff's First Amendment rights, as well as to Plaintiff's claims against Palmieri and Flanagan. The Court finds that amendment would be futile as to Plaintiff's due process and conspiracy claims against all State Defendants. Accordingly, the Court denies Plaintiff leave to amend these claims. Plaintiff must file any amended complaint within thirty (30) days of this Memorandum and Order.

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part the State Defendants' motion to dismiss. The Court grants the motion to dismiss as to Plaintiff's due process and section 1985 and section 1986 claims, as well as all claims against Vahdatlamas, Morgan, Flanagan, and Palmieri. The Court denies the motion to dismiss for lack of standing. The Court also denies the motion to dismiss Plaintiff's First Amendment retaliation claim and claim for prospective injunctive relief against Gelbstein, Calvo, and Traschen. Finally, the Court

32

denies without prejudice the motion to dismiss on qualified immunity grounds.  The Court grants

Plaintiff leave to file an amended complaint within thirty (30) days of this Memorandum and

Order.


Dated:  September 25, 2019
        Brooklyn, New York

                                        SO ORDERED:


                                        _____s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge

**JSA-090**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                    Plaintiff,

      -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                    Defendants.
-----------------------------------------------------------------X

                    **ORDER**
              **18 CV 2710 (MKB)(LB)**

**BLOOM, United States Magistrate Judge:**

      The Court held a conference in this case on January 10, 2020.[1] The State defendants' request to add DMV Commissioner Mark Schroeder in his official capacity regarding plaintiff's claim for prospective injunctive relief pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is granted.[2] ECF No. 96. As discussed, plaintiff's request to enter TVB premises to conduct discovery is denied. ECF No. 91. Plaintiff shall comply with Rules 26–37 of the Federal Rules of Civil Procedure and the Court's November 14, 2019 Order regarding discovery.[3] As previously set, the parties shall complete all discovery by May 15, 2020 and shall file any pre-motion conference request by June 5, 2020. Electronic Order dated Nov. 14, 2019.

SO ORDERED.

                              _____/S/_____

Dated: January 10, 2020               LOIS BLOOM
      Brooklyn, New York          United States Magistrate Judge

---

[1] David Smart and Sadiq Tahir did not appear for the conference. The Court excuses their appearances. The Court also excuses plaintiff from registering for mandatory electronic case filing in this case.

[2] The Clerk of Court is directed to amend the caption of this case as set forth above. The State defendants' counsel waived service on behalf of Schroeder on the record.

[3] Any deposition of defendants shall occur at the Courthouse. The parties shall call my Chambers at (718) 613-2170 once they have selected dates that work for both sides to schedule use of a room at the Courthouse for these depositions.

**JSA-091**

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                        :
 4   MARIO H. CAPOGROSSO,               :
                                        :  18-CV-02710 (MKB)
 5             Plaintiff,               :
                                        :  225 Cadman Plaza
 6          v.                          :  Brooklyn, New York
                                        :
 7   GELBSTEIN, et al.,                 :
                                        :
 8             Defendants.              :  January 10, 2020
     ------------------------------------X
 9

10        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
                 BEFORE THE HONORABLE LOIS BLOOM
11               UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13

14   For the Plaintiff:        MARIO H. CAPOGROSSO, Pro Se
                               21 Sheldrake Place
15                             New Rochelle, New York 10804

16   For Alan Gelbstein; Ida   JAMES M. THOMPSON, ESQ.
     Traschen; Danielle Calvo: Office of the New York State
17                                 Attorney General
                               28 Liberty Street
18                             New York, New York 10005

19

20
     Court Transcriber:        RUTH ANN HAGER, C.E.T.**D-641
21                             TypeWrite Word Processing Service
                               211 North Milton Road
22                             Saratoga Springs, New York 12866

23

24

25


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
```

**JSA-092**

2

1   (Proceedings began at 10:50 a.m.)

2          THE CLERK:  Civil cause for status conference,

3   docket number 18-CV-02710, <u>Capogrosso v. Gelbstein, *et al.*</u>

4          Will the parties please state your names for the

5   record?

6          MR. CAPOGROSSO:  Marion Capogrosso, 21 Sheldrake

7   Place, New Rochelle, New York, representing myself.

8          MR. THOMPSON:  James M. Thompson from the Office of

9   the New York State Attorney General, representing defendants

10  Gelbstein, Traschen, Calvo and also non-party of the New York

11  State Department of Motor Vehicles.

12         THE CLERK:  The Honorable Lois Bloom presiding.

13         THE COURT:  Good morning, Mr. Capogrosso and

14  Mr. Thompson.  This is a status conference in plaintiff's

15  civil rights action.  We had a conference on November 14th at

16  which time I ordered the State defendants to answer the

17  complaint and I ordered the parties to exchange initial

18  disclosures by December 4th.  On December 2nd plaintiff filed

19  a letter seeking to physical enter DMV to gather information

20  for discovery.  And then there were back and forth between

21  Mr. Thompson and Mr. Capogrosso about the answer and about DMV

22  being substituted in.  And so I just thought that it would be

23  best to have today's conference so I could get the parties on

24  track.  Okay.

25         So Mr. Capogrosso, you are entitled to conduct

3

1   discovery but that does not mean that you go to DMV and try to

2   question people.  There is the Federal Rules of Civil

3   Procedure, sir.  The Federal Rules of Civil Procedure provide

4   for five methods.  I put it in my order to you.  Under Rule 33

5   you can send requests to Mr. Thompson for him or any of the

6   defendants to answer under oath interrogatories.  That's Rule

7   33.  Rule 34 you can make a request to Mr. Thompson for them

8   to produce documents.

9          Under Rule 30 you can conduct depositions.  But the

10  way that you went about thinking that you were going to walk

11  into DMV and start questioning people, that is not provided

12  for in the Federal Rules of Civil Procedures, sir.  And I

13  don't want this to become a situation where for no good reason

14  things go out of hand and I don't want there to be further

15  trouble because you're trying to get information in your case.

16  There's a right way to conduct discovery and there's an

17  improper way.  You can't just walk in and think you're going

18  to start taking depositions by walking in.

19         So let me just say I would like to address discovery

20  today.  I would also like to address what the defendants are

21  intending to do regarding naming of the DMV commissioner.  I'm

22  not sure that I understood, Mr. Thompson, so I'd like you to

23  explain it.  I do understand that under Federal Rule 26(d), D

24  as in David, an officer's successor is automatically

25  substituted as a party, but I want to make sure so that

4

1  Mr. Capogrosso knows that doesn't mean that you are

2  eliminating Gelbstein, Traschen and Calvo who are in the case

3  as individuals.

4          MR. THOMPSON:  Absolutely not.

5          THE COURT:  Okay.  So I wanted that to be clear on

6  the record that we're only adding the commissioner of DMV so

7  that you can get perspective injunctive relief against

8  somebody who is at DMV currently in his official capacity if

9  you were to prevail in this action.  Is that correct,

10 Mr. Thompson?

11         MR. THOMPSON:  Yes, Your Honor.  Defendants

12 Gelbstein, Traschen and Calvo have all moved on from the

13 positions they held, so if Your Honor or Judge Brodie were to

14 enjoin them, none of them has the power to readmit

15 Mr. Capogrosso to TVB, even if he were to prevail.  And --

16         THE COURT:  I just wanted this to be on the record,

17 Mr. Capogrosso.  So it wasn't something that the Court ordered

18 that you didn't really understand.  They're not trying to get

19 rid of your case against the individuals.  They're adding the

20 Department of Motor Vehicles Commissioner so that if there was

21 prospective injunctive relief ordered by the Court the order

22 could be effectuated.  Is that correct?

23         MR. THOMPSON:  That's correct, Your Honor.

24         MR. CAPOGROSSO:  I made it very clear in my reply

25 dated January 8th, Your Honor.  I made that very clear that I

5

1  wanted addition to, not substitution of -- I don't know if you

2  received my reply.

3          THE COURT:  I did receive it but can I also tell

4  you, sir --

5          MR. CAPOGROSSO:  Yes, Judge.

6          THE COURT:  You've been filing things that you

7  should not be filing.  You gave 70 pages of exhibits that were

8  attached, some of which were attached to the motion to

9  dismiss.  This is not how you litigate in federal court.  This

10 is not how you do things here.

11         So I don't need five different filings from both

12 sides on things that are fairly routine.  Again, I understand

13 that when they first filed this request for the substitution

14 you may not have been clear that this was an addition and not

15 to take the place of because substitution may sound like it's

16 to take the place of.

17         Now that we understand, let me just ask one more

18 question, Mr. Thompson.  If we include the commissioner of the

19 Department of Motor Vehicles that's in their -- in their

20 official capacity is that what you're asking to do or just the

21 Department?

22         MR. THOMPSON:  We think the commissioner is the

23 right person because it's not necessarily clear who the

24 individual successors of the defendants are and there's no

25 question that Commissioner Schroeder has the ability to order

6

1    DMV to do that.

2              THE COURT:  And Commissioner Schroeder's first name

3    is?

4              MR. THOMPSON:  Mark.

5              THE COURT:  M-A-R-K?

6              MR. THOMPSON:  M-A-R-K.

7              THE COURT:  And how do you spell the last name?

8              MR. THOMPSON:  It is S-C-H-R-O-E-D-E-R.

9              THE COURT:  Any objection to adding Commissioner

10   Mark Schroeder of DMV to the complaint?

11             MR. CAPOGROSSO:  As long as it's in addition to, not

12   substitution of --

13             THE COURT:  That's what we just went over.

14             MR. CAPOGROSSO:  No objection.  Yes.

15             THE COURT:  Okay.  My question is, we're going to

16   add him to the complaint but we don't need to serve him.

17   You're going to accept service for him?

18             MR. THOMPSON:  Yes, I can do that.

19             THE COURT:  Very good.  So I'm going to direct the

20   Clerk of Court to amend the case to include Commissioner Mark

21   Schroeder of the DMV.  Do we need to actually get you served

22   with any new process?

23             MR. THOMPSON:  I don't think so, Your Honor.

24             THE COURT:  Okay.  So it will be deemed amended to

25   include and the State has agreed to accept service.  And it's

7

1   only in his official capacity and there is no Fourteenth

2   Amendment argument that's going to be made because it's only

3   for prospective injunctive relief.  Is that correct?

4              MR. THOMPSON:  That's my understanding.

5              THE COURT:  So let the record reflect that the Court

6   is directing the clerk to add Commissioner Mark Schroeder of

7   DMV in his official capacity for prospective injunctive relief

8   solely.  Do you understand, Mr. Capogrosso?

9              MR. CAPOGROSSO:  And who's going to be making that

10  amendment, Your Honor?

11             THE COURT:  I'm directing the clerk to make that

12  amendment.

13             MR. CAPOGROSSO:  Fine, Judge.

14             THE COURT:  So you consent?

15             MR. CAPOGROSSO:  Yes.

16             THE COURT:  Very good.  And the defendants have said

17  that we don't need to get service made so that eliminates that

18  step.  Okay.  Moving right along.

19             The problem that I have, Mr. Capogrosso, is that I

20  put out an order to you the last time that laid out -- it's

21  the order I give to litigants who are not lawyers so that they

22  understand what the rules are.  It set the rules in it and yet

23  for some reason when you walked into the DMV you thought that

24  you could wave something and say that I had ordered that

25  people be deposed just because you walked in the door.

8

1      MR. CAPOGROSSO:  May I reply?

2      THE COURT:  It's not a reply, sir.

3      MR. CAPOGROSSO:  Well --

4      THE COURT:  It's -- I'm trying to understand.

5      MR. CAPOGROSSO:  Your initial disclosures ask that I

6  produce witnesses.  Witnesses are not defendants.  Witnesses

7  are people and persons at the location at the date on May 11th

8  who saw this incident.  For me to do that, Judge, I have to go

9  back to the location --

10      THE COURT:  No, you do not, sir.

11      MR. CAPOGROSSO:  Well, I -- that's where I had a

12  dis -- I was trying to --

13      THE COURT:  May 11th happened already, sir.

14  Going --

15      MR. CAPOGROSSO:  -- comply with the Court.

16      THE COURT:  -- back to the place that it happened

17  isn't going to help you identify.  Either you know who was

18  there or you don't.  And if you don't know who was there then

19  you don't list them as witnesses.  It's simple.  It's not

20  rocket science.

21      MR. CAPOGROSSO:  I know main add -- I don't know

22  addresses, I don't know phone numbers.

23      THE COURT:  That's fine.

24      MR. CAPOGROSSO:  Initial -- your Rule 26 initial

25  disclosure.

1          THE COURT:  It's not my Rule 26.  It's the Federal

2    Rules of Civil Procedure.

3          MR. CAPOGROSSO:  I -- you ordered me to comply with

4    Rule 26(a).

5          THE COURT:  It's to give known witnesses.  Known

6    witnesses.

7          MR. CAPOGROSSO:  I'm trying to comply with your

8    order, Judge.

9          THE COURT:  Mr. Capogrosso, I'm not here to defeat

10   your getting your claim heard.  I am here to make sure that

11   you abide by the Federal Rules of Civil Procedure.  And you're

12   an attorney, so you're held to know what these rules mean.

13         MR. CAPOGROSSO:  I understand the rules, Judge,

14   but --

15         THE COURT:  So when it says list all witnesses --

16         MR. CAPOGROSSO:  -- the rule --

17         THE COURT:  -- if you don't know their addresses why

18   is going to DMV going to help you?

19         MR. CAPOGROSSO:  I was going to try to get them for

20   you and for me to question them so I know which witnesses are

21   favorable and which witnesses are unfavorable.

22         THE COURT:  That's not --

23         MR. CAPOGROSSO:  If --

24         THE COURT:  -- what the rule requires.  And so going

25   to DMV to conduct your investigation of your case may cause a

10

1   disruption to the business of the DMV.

2           MR. CAPOGROSSO:  Well, I don't know why.

3           THE COURT:  Do you see how that might happen?

4           MR. CAPOGROSSO:  No, I don't.

5           THE COURT:  Look --

6           MR. CAPOGROSSO:  I will abide by this court order.

7   I will abide, but I've never heard of an attorney not allowed

8   to go to the scene of the incident and talk to witnesses who

9   might have observed it, take names.  I've never heard of it.

10          THE COURT:  Well, now you're hearing it.

11          MR. CAPOGROSSO:  Fine.  I'll abide by this court

12  order.

13          THE COURT:  What I'm trying to say to you is --

14          MR. CAPOGROSSO:  And take pictures of the incident.

15          THE COURT:  Mr. Capogrosso, what happened, happened

16  years ago.  You can't take pictures of what happened because

17  it happened years ago.

18          MR. CAPOGROSSO:  I can take pictures of the

19  location.  Now, defendants come out and approach me from 30 or

20  40 feet away in an aggressive manner.  I'd like to take a

21  picture of that area --

22          THE COURT:  You do not.

23          MR. CAPOGROSSO:  -- where it occurred.

24          THE COURT:  That has no bearing on this case

25  because, guess what?  That's not what this case is about.

**JSA-101**

11

1    MR. CAPOGROSSO:  I don't know what this case is
2 about, then.
3    THE COURT:  Well, you brought the case.
4    MR. CAPOGROSSO:  Well --
5    THE COURT:  If you don't know what it's about, I
6 will tell you to re-read Judge Brodie's opinion.
7    MR. CAPOGROSSO:  I will.
8    THE COURT:  And re-read my opinion because what this
9 is about is that they barred you, not about did Smart approach
10 you, did Smart not approach you.  It's not about that.  It's
11 whether or not them barring you gave you notice and an
12 opportunity to be heard.  It's not about Smart and your
13 altercation.
14    So going back to DMV to take pictures is likely
15 going to get this matter to advance to a different predicament
16 where they may be calling in other security.  Mr. Smart is no
17 longer there.  And taking pictures in a state facility if you
18 tried to take pictures in the courthouse there may be
19 ramifications that you're not considering.
20    MR. CAPOGROSSO:  Well, Your Honor, I'm trying to get
21 to the truth as to what happened.  I know Defendant Gelbstein
22 and Defendant Traschen are no longer working at this location.
23 They are not.  You're telling me Defendant Smart is no longer
24 there.  He's not.
25    THE COURT:  I didn't tell you that.

**JSA-102**

12

1          MR. CAPOGROSSO:  Well --

2          THE COURT:  I said this is not about whether Smart

3     and you had an altercation.  And Mr. Capogrosso, you're an

4     attorney.  You're held to a higher standard because you're an

5     attorney and you're telling me that you're still going on

6     about whether or not Smart punched you or you punched --

7          MR. CAPOGROSSO:  I didn't punch -- he didn't punch

8     me and he did not.  I never said he put his hands on me.  I

9     said he approached me in an aggressive and belligerent manner.

10         THE COURT:  It doesn't matter, sir.  To the point of

11    this case it does not matter.

12         MR. CAPOGROSSO:  I don't know why I can't get to the

13    truth as to who saw what on December 11th, Judge, and question

14    without having to take deposition and interrogatories and --

15         THE COURT:  That's the process, sir.  You are in

16    federal court and the process is set forth by the Federal

17    Rules of Civil Procedure.  If you want to put postings out

18    there on the internet, did anybody see anything on this date

19    at the DMV, go right ahead, but this is the process for when

20    one party sues another party in federal court and I am going

21    to hold you to the rules that I hold everybody else to.

22         MR. CAPOGROSSO:  Your Honor, respectfully, Attorney

23    Thompson and the State defendants had questioned numerous

24    witnesses.  Numerous.

25         THE COURT:  Did they do it at the DMV, sir?  Did

**JSA-103**

13

1  they walk into the DMV --

2          MR. CAPOGROSSO:  I think they probably --

3          THE COURT:  -- and start waving around papers --

4          MR. CAPOGROSSO:  No, [indiscernible] --

5          THE COURT:  -- saying, Judge Bloom said --

6          MR. CAPOGROSSO:  -- Alan Gelbstein's office and into

7  the DMV and questioned, of course, I think they did that.

8          THE COURT:  Again, sir --

9          MR. CAPOGROSSO:  I will abide by this Court's order.

10          THE COURT:  You are permitted to depose the

11  defendants.  You have to notice them through Mr. Thompson and

12  arrange for a court reporter.  That's what a deposition under

13  Rule 30 requires.  If you don't want to do that, you don't

14  have to do that.  I didn't say that you're required to do

15  that.  I said that it would be advisable to get their version

16  of the events, why did they take the actions that they took.

17  You don't want to do that.  That's your prerogative.

18          What is not your prerogative is walking into the DMV

19  office and waving around papers saying, "Judge Bloom ordered

20  me" --

21          MR. CAPOGROSSO:  I didn't say that, Judge.  I said,

22  "I have a federal court order to provide initial disclosures,

23  26(a), which was to provide a witness list."  Now, I don't

24  know how I'm going to get a witness list unless I can go to

25  the scene and talk to witnesses.

14

1          THE COURT:  I'm telling you, sir, that's not what

2     you're supposed to do under 26(a).

3          MR. CAPOGROSSO:  Well, how am I --

4          THE COURT:  What you're supposed to do is, if you

5     know the names of people you must provide them.

6          MR. CAPOGROSSO:  How am I going to question a

7     witness?  I can depose defendants.  How am I going to question

8     witnesses?

9          THE COURT:  Again, witnesses to your conversation

10    with Gelbstein, Traschen and Calvo is what matters here.

11         MR. CAPOGROSSO:  Fine.

12         THE COURT:  Not witnesses --

13         MR. CAPOGROSSO:  And I think there are people at the

14    DMV who know that on the morning of May 11th that these

15    defendants approached Defendant Smart and asked him to

16    approach me and began -- and incite this incident which led to

17    my --

18         THE COURT:  And you think --

19         MR. CAPOGROSSO:  -- removal.

20         THE COURT:  -- that but you have no knowledge of

21    that.  And if you want to list the people that you think know

22    that, go right ahead and list their names.  But you do not go

23    back into the DMV and start asking people were they there on

24    May 11th to witness these events.  That's not how you go about

25    this.  Have I made myself clear?

15

1        MR. CAPOGROSSO:  I will abide by your order, Judge.

2        THE COURT:  Very good.

3        MR. CAPOGROSSO:  But I have done investigations in

4   other cases and I've gone places --

5        THE COURT:  Mr. Capogrosso --

6        MR. CAPOGROSSO:  -- where things have happened, but

7   I will abide by your order.

8        THE COURT:  Mr. Capogrosso, Federal Rule of Civil

9   Procedure 45 governs subpoenas.  If you believe there are non-

10  parties that have information, you may serve a subpoena which

11  under Rule 45 requires for you to get -- it can't be served by

12  you.  It has to be served by somebody who's over 18 and not a

13  party to the action and they have to get a witness fee and it

14  has to be that you're serving them a request for a subpoena

15  for either documents.  If it's for their testimony it has to

16  be a deposition taken in front of somebody who's authorized to

17  take it.

18       MR. CAPOGROSSO:  How do I get their address, Judge,

19  so I know where to serve them?  Can I go ask them where they

20  live?

21       THE COURT:  Go on the internet.  You can find out a

22  lot of information on the internet.  You could wait outside

23  the DMV office if you believe they go in and out every day and

24  you could ask them are they willing to speak to you.  What you

25  cannot do is say "I have a federal court order that you have

16

1    to talk to me."

2          MR. CAPOGROSSO:  No, I didn't say that, Judge, that

3    "You have to talk to me."  I went down to try to get

4    information.  I'm sure Attorney Thompson and the state

5    defendants and their attorney have gone to the DMV and

6    questioned witnesses and people that can almost guarantee

7    that.

8          THE COURT:  Guess what?

9          MR. THOMPSON:  If I may --

10         THE COURT:  That's their client.  Go ahead.

11         MR. CAPOGROSSO:  The witnesses are not.

12         MR. THOMPSON:  I can represent to the Court and to

13   Mr. Capogrosso I have never been to the TVB in South Brooklyn.

14   I suspect that my predecessor on this case, aka Siegmund, has

15   not as well.

16         THE COURT:  And if you need to contact people --

17         MR. THOMPSON:  That's not what we have done.

18         THE COURT:  -- that work for the DMV you call them

19   and you ask them to come to your office.  And again, I am

20   telling you that the same rules apply to you, Mr. Capogrosso,

21   that apply to everybody else.  Please look at the rules.

22         MR. CAPOGROSSO:  I will abide by your order, Judge.

23         THE COURT:  Well, again, Mr. Capogrosso, I'm trying

24   to say I've already set the deadlines for discovery.  I don't

25   generally get the back and forth that I've gotten as in this

17

1   case.

2          MR. CAPOGROSSO:  Well, respectfully, Judge, if I

3   could --

4          THE COURT:  Yes.

5          MR. CAPOGROSSO:  -- you brought this issue up.  The

6   State's defendants turned this into a motion -- their motion

7   to dismiss.  It's a motion for summary judgment.  They --

8          THE COURT:  They did not, sir.  There's no motion.

9          MR. CAPOGROSSO:  They said --

10         THE COURT:  There is no motion pending before the

11  Court at this point in time.

12         MR. CAPOGROSSO:  They presented facts after fact

13  after fact --

14         THE COURT:  We're not looking at any motions now.

15         MR. CAPOGROSSO:  I understand but you've told me

16  that I'm filing paperwork which is not appropriate.

17         THE COURT:  Yes, that's -- that I am.

18         MR. CAPOGROSSO:  The State's defendants have

19  supplied reams of complaints against me here --

20         THE COURT:  That was in the motion.

21         MR. CAPOGROSSO:  -- that I had a right to reply to.

22         THE COURT:  Was it the motion?

23         MR. CAPOGROSSO:  It was in a motion.

24         THE COURT:  But the motion has already been granted

25  in part and denied in part, so it's no --

**JSA-108**

1          MR. CAPOGROSSO:  And they wrote a letter --

2          THE COURT:  It is no longer before the Court, but it

3    gives you a very good road map of what their case is going to

4    be about.  And so again, if I was in your shoes I would be

5    using that to strategically plan the discovery that I would

6    take.  You are entitled to depose the defendants.  You have

7    Rule 45 if you need non-parties, but you must follow the

8    rules, Mr. Capogrosso.

9          MR. CAPOGROSSO:  I will abide by your order, Judge,

10   and I think I have, but I will abide by your orders.  And I

11   will only be pri -- every letter that I receive I reply to the

12   December 6th letter and the December 11th letter that the

13   State defendants have filed with this court and I have a right

14   to reply to those letters.

15         THE COURT:  Mr. Capogrosso, I'm not trying to deny

16   you any of your rights, sir.

17         MR. CAPOGROSSO:  You're indicating I'm filing reams

18   of paper with the court.

19         THE COURT:  You did.  You just --

20         MR. CAPOGROSSO:  I'm only going to reply to what

21   the --

22         THE COURT:  Except that the motion has already been

23   denied, sir.

24         MR. CAPOGROSSO:  I'm only --

25         THE COURT:  You're filing things --

```
 1          MR. CAPOGROSSO:  -- replying.
 2          THE COURT:  -- that you think the Court should read
 3   I am telling you is a waste of your resources.  There is no
 4   motion pending before the Court, sir.
 5          MR. CAPOGROSSO:  Well, Judge, respectfully, if the
 6   State defendants are going to file letters I have a right to
 7   reply.
 8          THE COURT:  I didn't say you didn't have a right to
 9   reply.
10          MR. CAPOGROSSO:  You indicated to me initially that
11   you would.
12          THE COURT:  But I said that you have no right to go
13   on DMV property to try to depose --
14          MR. CAPOGROSSO:  I will not do that, Judge.
15          THE COURT:  -- witnesses.  Very good.
16          MR. CAPOGROSSO:  I'm going to abide by that order.
17   Now, do I have the right to go to the DMV and check my
18   license -- my driver's license?  I've been driving in this
19   state for four --
20          THE COURT:  I didn't say anything about going to
21   DMV.
22          MR. CAPOGROSSO:  Well, I just wondered what --
23          THE COURT:  I just said you can't go in there and
24   say that the court has ordered you to do discovery --
25          MR. CAPOGROSSO:  That will not happen.
```

20

```
 1          THE COURT:  -- and try to question people.
 2          MR. CAPOGROSSO:  Well, that will not happen.
 3          THE COURT:  So now you understand.
 4          MR. CAPOGROSSO:  Yes.
 5          THE COURT:  Okay.
 6          MR. CAPOGROSSO:  Now, but I do need to clarify
 7  because declaration of Claudio Commons [ph.], who's now the
 8  supervising judge there, indicates that the legal department
 9  has permanently banned -- indicating myself -- from entering
10  the office.  Now, I called Defendant Traschen when this
11  initially occurred.  I called her.  I said, "Am I allowed in
12  the DMV to check my license?  Am I allowed in the DMV" because
13  I had a numerous amount of clients who wanted money back on
14  these cases to return money to them.  "Do I have a right to go
15  to the court, the -- beginning the -- the entrance of this
16  building and have a cup of coffee where I always go?" and she
17  said yes.  Now --
18          THE COURT:  Let me just ask the defendant.  What
19  is --
20          MR. CAPOGROSSO:  Well, I'd like to know.
21          THE COURT:  I would like to know, too.
22          What is the position of the defendant?
23          MR. THOMPSON:  My understanding from conferring with
24  DMV counsel is that the petitioner is not welcome at any of
25  the TVD facilities.  As to checking his license, as you'll see
```

**JSA-111**

21

1  in ALJ Collins's declaration, he just did that two weeks ago.

2  There were no points on his license or fees.

3          THE COURT:  This is the part that I don't

4  understand, Mr. Thompson.  Does your client really think that

5  this is going to hold up, that they put out a letter and

6  they're banning him forever from a building that's a state-run

7  building?  Do they really think that's going to hold up?  I

8  understand they think he's a nuisance, he'll cause problems if

9  he goes in, I get all that.  But do they really think at the

10  end of the day that just sending a letter saying, "You're

11  banned from all facilities" is going to work here?

12          MR. THOMPSON:  Well, what I'd say that, Your Honor,

13  is that if the petitioner had wanted to challenge that he

14  should have filed an Article 78 proceeding within --

15          THE COURT:  He's brought a federal civil rights

16  action that asks for prospective injunctive relief.

17          MR. THOMPSON:  But the due process aspect of that --

18          THE COURT:  The due process part has gone away, but

19  the prospective injunctive relief is about re-entering the

20  premises.  There is no order of the court that he may re-

21  enter.  But do you really think that this is the wise position

22  for your client to take?

23          MR. THOMPSON:  Well, certainly when a federal judge

24  asks that question it's always worth --

25          THE COURT:  Again, I have no idea what Traschen

22

1  said.  I don't even know what he's holding up to the court

2  saying --

3          MR. CAPOGROSSO:  I would like to be able to check my

4  license at liberty when I want to.  This is ridiculous.

5          THE COURT:  Again, Mr. Capogrosso, if you go into

6  the DMV the way that you're coming into the court,

7  interrupting the court, arguing with the court, it's -- you

8  know, again, sir, you're creating --

9          MR. CAPOGROSSO:  No, I want to --

10         THE COURT:  You're creating your own record here.

11         MR. CAPOGROSSO:  Fine.  That's fine.  I'll accept it

12  and I'll stand by it.  I want to know why my rights are being

13  curtailed in going to a DMV and checking my license when I

14  feel like it.

15         THE COURT:  Because they basically think that you

16  are --

17         MR. CAPOGROSSO:  On what basis?

18         THE COURT:  -- banned.

19         MR. CAPOGROSSO:  On what basis?

20         THE COURT:  That's what the case is about.  I'm

21  trying to get at it and you keep wanting to go on all these

22  sidetracks about what happened with David Smart and I'm trying

23  to get at the --

24         MR. CAPOGROSSO:  No, I don't.  I want to know if

25  I --

1          THE COURT:  -- prospective injunctive relief and
2   you're like I don't want to really get to that, Judge.
3          MR. CAPOGROSSO:  No, I want to know if I can go to
4   the DMV without getting arrested.  I'm not --
5          THE COURT:  Again, were you ever arrested?
6          MR. CAPOGROSSO:  Well, I'm wondering --
7          THE COURT:  Were you ever arrested?
8          MR. CAPOGROSSO:  I was escorted out, Judge.
9          THE COURT:  Excuse me, sir.  Were you ever arrested?
10         MR. CAPOGROSSO:  I was escorted out.  Now, they
11  should be able to answer this.
12         THE COURT:  Now, this was when you went in thinking
13  that you were going to depose witnesses --
14         MR. CAPOGROSSO:  No, on May 11th --
15         THE COURT:  -- and waving around --
16         MR. CAPOGROSSO:  No, I did not.  That's not what I
17  did.  I walked out voluntarily.  If you read the affidavit of
18  Defendant Collins, I walked out voluntarily.  Nobody escorted
19  me out.  On May 11th they did.  Now, I do need to know if I
20  have to go down there for a cup of coffee or to see if --
21         THE COURT:  Why do you have to get a cup of coffee
22  at DMV?
23         MR. CAPOGROSSO:  Well, because I have a right to,
24  Judge.
25         THE COURT:  Oh, please.  You have a right to do a

24

1   lot of things --
2            MR. CAPOGROSSO:  I'm not being told --
3            THE COURT:  -- that you are now -- you know, a cup
4   of coffee?  That's what you need to go to the DMV for?
5            MR. CAPOGROSSO:  I'm free to.  I'm free to.
6            THE COURT:  Obviously there's a problem here.
7   They're saying that you're banned.
8            MR. CAPOGROSSO:  I'm banned for practicing law.
9   That's what was initially told to me, practicing law.  Not
10  entering a building and checking my license and go and have a
11  cup of coffee which every other U.S. citizen in this country
12  can do.
13           THE COURT:  So then if you do that and there are bad
14  results that will be case number two.
15           MR. CAPOGROSSO:  I'll pay the consequences.
16           THE COURT:  That will be case number two.
17           MR. CAPOGROSSO:  Fine.  Let it be.
18           THE COURT:  That's right.
19           MR. CAPOGROSSO:  Right.  I will not be allowed to
20  practice law.  I will abide by your court order.  I will.
21  I've not been -- I was attempting to abide by your order and I
22  will and I will not get anybody [indiscernible] waving an
23  order in anybody's face.  I said I was there to comply with a
24  court -- with initial disclosures.  Fine.  But I will go down
25  there and if I get arrested, fine.  Then there'll be another

25

1  lawsuit pending.

2           I have a right to check my license.  I have a right

3  to go to the restaurant in the [indiscernible] building.

4           MR. THOMPSON:  Your Honor, I would question whether

5  there's a good faith need to check his license three weeks

6  after.

7           THE COURT:  It doesn't matter.  His bigger point is

8  this is a state-run office and that you're saying he had to

9  bring in Article 78.  That only applied to whether or not he

10 could practice at the TVB.  He's now talking about entering.

11 As long as he doesn't cause a disturbance and that --

12          MR. CAPOGROSSO:  I never did.

13          THE COURT:  But, Mr. Capogrosso, I'm telling you if

14 people cause disturbances --

15          MR. CAPOGROSSO:  Well --

16          THE COURT:  -- in state or federal or city buildings

17 that's why people get removed.

18          MR. CAPOGROSSO:  I never did.

19          THE COURT:  But if you don't, I can't imagine that

20 there will be a problem.

21          MR. CAPOGROSSO:  Fine.  I never did.  I'll look

22 online.  I'll check my license [indiscernible].

23          MR. THOMPSON:  Your Honor, if --

24          MR. CAPOGROSSO:  If I'm being prohibited, there's

25 going to be a second lawsuit.

26

```
 1              THE COURT:  And that's what they'll get.  They'll
 2   get a second lawsuit.
 3              MR. CAPOGROSSO:  They will and they will.
 4              MR. THOMPSON:  Your Honor, if I may.
 5              THE COURT:  Yes.
 6              MR. THOMPSON:  It's the TVB's position that -- or
 7   it's the DMV's position rather that the Traffic Violations
 8   Bureau is open to the public unless you've been banned from
 9   it.
10              THE COURT:  But he was banned to practice there.  He
11   wasn't banned from the building.
12              MR. THOMPSON:  He was also banned from the premises.
13              THE COURT:  Where is that?
14              MR. THOMPSON:  I think it's all over the complaint.
15              MR. CAPOGROSSO:  It's nowhere on the complaint.  I
16   was ban -- I talked to Ida Traschen about it.  I was banned
17   from practicing law.
18              THE COURT:  Again, I think that you need to talk to
19   your clients about this because I think you're creating an
20   issue.  If it's a public service building he doesn't have the
21   right to stay there if he's causing a disturbance.  He doesn't
22   have the right to light the place on fire.  He doesn't have
23   the right to go there and do other things, but he has the
24   right like every other citizen.
25              MR. CAPOGROSSO:  There are murderers walking into
```

27

1 the DMV.

2 THE COURT: Again, sir, you're not helping yourself

3 with me by interrupting every time --

4 MR. CAPOGROSSO: Well, that's how I feel, Judge.

5 THE COURT: You're interrupting me every time I

6 speak, Mr. Capogrosso. I will let you speak. I think you see

7 that I'll let you speak.

8 So you know, Mr. Thompson, if you have something

9 that you're going to present when he brings case number two

10 saying that he was banned from walking in, I think that you

11 should have legal support for that.

12 MR. THOMPSON: Your Honor, based on our conversation

13 today I'll confer with my clients.

14 THE COURT: Again, if he goes in and for whatever

15 reason he causes a disturbance then the -- the State has its

16 avenues to -- to foreclose that. But again, I don't think

17 that Mr. Capogrosso's point misses the mark. This is a public

18 building just like coming into the federal court is a public

19 building. I will tell you that if people create disturbances

20 in the federal court that there are ways that they're dealt

21 with. That's the end of it.

22 MR. CAPOGROSSO: Your Honor, I created no

23 disturbance on May 11th. I was approached by Defendant Smart.

24 I didn't create a disturbance.

25 THE COURT: Mr. Capogrosso --

28

1          MR. CAPOGROSSO:  The cameras -- you informed me I'm

2  allowed to speak.

3          THE COURT:  No, I am not interested in you going --

4          MR. CAPOGROSSO:  I'm allowed -- you told me I was

5  allowed to speak.

6          THE COURT:  You're going back to May 11th and what

7  happened --

8          MR. CAPOGROSSO:  Well, you keep bringing up the fact

9  of disturbance.  I've never created a disturbance.  Defendant

10  Smart came at me to create a disturbance.

11          THE COURT:  What I'm saying to you, sir, is you're

12  now raising that you want to go down to the DMV not to

13  practice law --

14          MR. CAPOGROSSO:  No.

15          THE COURT:  -- but because you're a citizen.

16          MR. CAPOGROSSO:  Yes.

17          THE COURT:  And what I'm saying is every citizen has

18  the privilege of going into public buildings, I don't know

19  that it's a right.  I know it's a privilege.  And if you are

20  not having --

21          MR. CAPOGROSSO:  I'll tell you exactly what I'm

22  going to do.  I'm going to stand in line.  I'm going to go to

23  the front.  I'm going to review my license and I'm going to

24  check my license.  Then I'm going to get a cup of coffee and

25  then I'm going to leave.

29

```
 1          THE COURT:  Wonderful.  Sounds like a great day.

 2          MR. CAPOGROSSO:  Now, if that's a disturbance better

 3  have your cameras working.

 4          THE COURT:  Again, Mr. Capogrosso, don't try to

 5  interview people about --

 6          MR. CAPOGROSSO:  I never -- fine.  I don't

 7  understand your ruling on this.  I was trying to comply and I

 8  was trying to get to the truth as to what happened here.

 9          THE COURT:  Again, you're --

10          MR. CAPOGROSSO:  We got two of the defendants in

11  this matter who no longer work there.

12          THE COURT:  You're still entitled to depose them.

13  You just have to serve a notice on Mr. Thompson --

14          MR. CAPOGROSSO:  And I will.

15          THE COURT:  -- and you have to come up with a date

16  that they are available, that you are available, and you have

17  to under Rule 28 have a court reporter who swears them to the

18  truth of the testimony and then you could take their

19  deposition.  That's your right under the Federal Rules.

20          MR. CAPOGROSSO:  And I will, Judge.

21          MR. THOMPSON:  Your Honor, one point on that.  If I

22  recall in the previous conference you had indicated

23  depositions could take place at the courthouse.  Is that still

24  the case?

25          THE COURT:  If you make the arrangements.  So you
```

1  first have to agree to a date.  I'm not going to give you the

2  right to just pick a date out of thin air but if you and

3  Mr. Capogrosso agree that on such-and-such a date there's

4  going to be a deposition of Gelbstein or Traschen or Calvo and

5  you come up with a date and you're responsible for getting the

6  court reporter if it's your deposition of the party, I will

7  get a room at the courthouse.  That's not a problem.

8         MR. CAPOGROSSO:  Well, just so now I can understand,

9  my understanding in the last conference was that you required

10 that I depose Smart here in the courthouse, not --

11        THE COURT:  You have to depose anybody.  Do you have

12 a law office within the Eastern District?

13        MR. CAPOGROSSO:  Yes, I work at a firm.

14        THE COURT:  Where is the firm?

15        MR. CAPOGROSSO:  It's in Brooklyn.

16        THE COURT:  Where is it?  So they have a

17 conference --

18        MR. CAPOGROSSO:  Well, 44th Street but they're not

19 going to come there.  I will get there.

20        THE COURT:  Well, if they're not coming there

21 they'll come --

22        MR. CAPOGROSSO:  I can go to the court reporter's

23 office to depose the defendants here.  I can do that.

24        Now, am I required to bring -- to depose Gelbstein,

25 Traschen and Calvo here in the -- in the --

31

1          THE COURT:  That's what the defendants have asked.

2          MR. CAPOGROSSO:  -- courtroom?

3          THE COURT:  And I'll agree to that.

4          MR. CAPOGROSSO:  All three?

5          THE COURT:  Yes.

6          MR. CAPOGROSSO:  I don't see why [indiscernible] --

7          THE COURT:  It doesn't matter.

8          MR. CAPOGROSSO:  I thought it was Smart.

9          THE COURT:  It's free to you.  It's a service --

10         MR. CAPOGROSSO:  I thought -- I thought it was Smart

11  that you wanted --

12         THE COURT:  -- that we're providing.

13         MR. CAPOGROSSO:  -- me to depose, see, but that's

14  fine.  I'll abide by that order too.  You want all the

15  defendants deposed in the courtroom.

16         THE COURT:  If you're deposing the defendants the

17  defendants' attorney has asked that they be deposed in the

18  courthouse.  Why you would have a problem with that, I don't

19  know.  We'll give you a nice room.  You get the court reporter

20  and it's the same as doing it at the court recorder's office.

21         MR. CAPOGROSSO:  Well, the reason I have a problem,

22  Judge, is there might be a timing issue.  If I go to a court

23  reporter who has an office who does it, there's not going to

24  be an issue of getting --

25         THE COURT:  Why is there a timing issue?

1        MR. CAPOGROSSO: Because you indicated I have to

2  make arrangements with the court in order to get the re -- in

3  order to set it up.

4        THE COURT: Again, sir, if you ask Mr. Thompson and

5  you and Mr. Thompson agree to dates, I will do everything to

6  accommodate the dates that you've selected. Why are you

7  creating an issue where there's no issue?

8        MR. CAPOGROSSO: I'm not creating an issue. If I go

9  to a court reporter they have dates available all the time,

10  Judge.

11        THE COURT: And I'm not saying that you won't have

12  dates available all the time at the court. I'm just saying

13  that you'll have to ask the court to make the arrangement.

14  That's all.

15        MR. CAPOGROSSO: So I'm required to hold depositions

16  here in the courtroom.

17        THE COURT: Because they have made the case to the

18  court that you have a difference of opinion with all three of

19  these State or former State employees, I am giving

20  Mr. Thompson the ability to have the depositions at the

21  courthouse. It's in my discretion. I'm doing that.

22        You're here today. It's a nice courthouse. There's

23  no --

24        MR. CAPOGROSSO: It has nothing to do with that.

25  You know, I'm being -- it has nothing to do with that. I

1   should be free to take a deposition where I want.  I'll abide

2   by your court order.  Again, I will.

3           THE COURT:  You basically said that it wouldn't be

4   at your office.  It would be at a court reporter's office.

5           MR. CAPOGROSSO:  Right.

6           THE COURT:  I don't understand why you're making an

7   issue of it.

8           MR. CAPOGROSSO:  The issue with it is there's more

9   times available and my time is limited.  There are more times

10  available with a court reporter than there might be here in

11  this courtroom.

12          THE COURT:  You have no idea and it's not in the

13  courtroom, so let's get to that when we get to that.

14          MR. CAPOGROSSO:  That's fine.

15          THE COURT:  Once you contact Mr. Thompson so you

16  have to give him a notice of deposition.

17          MR. CAPOGROSSO:  I understand.

18          THE COURT:  And then you have to come up with dates

19  that you both are available.  He'll have to check with Calvo,

20  Traschen and Gelbstein to get their availability.  That's who

21  he represents in this matter.  Okay.

22          Were there other matters that you needed to address

23  to the Court today, Mr. Capogrosso?

24          MR. CAPOGROSSO:  Well, I'd like a response from

25  opposing counsel as to -- you know, I enter this DMV to check

34

1   my license, to get a cup of coffee or to see a client and

2   return money -- I returned all the money that's been asked

3   already.  But if I have to do that am I going to have a

4   problem and is the State's -- and is the DMV going to hold it

5   against me because I will not create a incidence.

6           THE COURT:  If you don't create an incident, sir,

7   then I'm telling them that I don't see anything that would

8   prohibit you from going down and check your license.

9           MR. CAPOGROSSO:  Fine.  If I'm prohibited then there

10  will be a second lawsuit.

11          THE COURT:  Mr. Thompson, I do think your client

12  needs to think these things through.

13          MR. THOMPSON:  And if I may, Your Honor --

14          THE COURT:  Yes.

15          MR. THOMPSON:  -- given the potential for a second

16  lawsuit as Mr. Capogrosso just said, we would request that,

17  you know, we be given some short period of time to confer in

18  which --

19          THE COURT:  This is not part of this lawsuit.  I

20  want both of you to understand.  This is not part of this

21  lawsuit.  And so again, the letter from Mr. Capogrosso seeking

22  entrance to DMV, TVB and it's a statement by him which is ECF

23  91, I've addressed it by telling him he should not go there to

24  conduct discovery.

25          MR. CAPOGROSSO:  I understand.

1    THE COURT:  But that is the extent to what his

2  limits are.  It's a public service institution and I do not

3  believe that there is anything I've seen in any of the papers

4  which would prohibit a citizen from going to a DMV.  He cannot

5  practice law there.  That's what this case is about but I'm

6  not reaching any of these other issues.  And then ECF 96,

7  which is the letter motion to substitute the official capacity

8  claims to name Commissioner Mark Schroeder, solely for the

9  purpose of prospective injunctive relief is granted and I will

10  direct the clerk of court to add Schroeder and there will be

11  no additional summons needed and there will not be service

12  needed.

13    Mr. Capogrosso, were there other matters --

14    MR. CAPOGROSSO:  One more issue, if I could.  Now,

15  it's come to my knowledge because it turns out they put me on

16  notice to it that the two -- three -- all three of the

17  defendants no longer hold their positions.

18    Now, Rule 8.3 of the Rules of Professional Conduct

19  require "A lawyer who knows that a judge has committed a

20  violation of applicable rules of judicial conduct that raises

21  a substantial question as to the judge's fitness for office

22  shall inform the appropriate authority."

23    MR. THOMPSON:  Your Honor, if I may.

24    THE COURT:  I don't think there's anything to

25  respond to.  I don't know what he's talking about.

36

1          MR. CAPOGROSSO:  Well, for what reason was the judge

2    removed?

3          THE COURT:  You can ask any of these questions at a

4    deposition, sir.  This is not the purpose of today's

5    conference.

6          MR. CAPOGROSSO:  Well --

7          THE COURT:  People retire, people move on.  I don't

8    know why Gelbstein moved on.  You could ask him at his

9    deposition.

10          MR. CAPOGROSSO:  Well, shall inform or shall

11   inform --

12          THE COURT:  Excuse me.  Is there anything you needed

13   to --

14          MR. CAPOGROSSO:  That's it.

15          THE COURT:  -- address today?

16          MR. CAPOGROSSO:  No.

17          THE COURT:  And Mr. Thompson, was there anything

18   further that needed to be addressed?

19          MR. THOMPSON:  Two very quick housekeeping matters.

20          THE COURT:  Yes.

21          MR. THOMPSON:  And the first one may very well be an

22   issue on our end.  We exchanged initial disclosures as ordered

23   on the 18th of December.  I received Mr. Capogrosso's initial

24   disclosures which said it was a supplement to his initial

25   disclosures.  It didn't include a damages calculation as

1   required.  That said, it's entirely possible that he submitted

2   previous initial disclosures.  That I just didn't get as part

3   of our file and I would just request that if there were

4   previous initial disclosures I'd love a copy.  And otherwise,

5   I'd just request a damages calculation.

6           THE COURT:  Mr. Capogrosso, do you --

7           MR. CAPOGROSSO:  I filed two initial disclosures.

8   One was the first one --

9           THE COURT:  So he's saying he didn't get it and did

10  that include -- did that include --

11          MR. CAPOGROSSO:  I'll resend it.

12          THE COURT:  Did that include your calculation of

13  damages, sir?

14          MR. CAPOGROSSO:  The first one I did lay out the

15  damages, yes.

16          THE COURT:  Okay.  Very good.  Then you'll just give

17  him another copy of that.  Thank you very much.

18          Next?

19          MR. THOMPSON:  And one last item which might not

20  actually be worth bringing up but --

21          THE COURT:  Well, I'll hold you there.  If it's not

22  worth bringing up, think twice.

23          MR. THOMPSON:  One of -- one of my clients believed

24  when I brought up a defendant to hear that he had passed away

25  we have no personal knowledge that we can base the suggestion

38

1  of death on.  I was wondering if Mr. Capogrosso had heard

2  anything to that effect because we keep sending mail and --

3          THE COURT:  Everything has been returned to the

4  court, so again --

5          MR. CAPOGROSSO:  Are we done [ph.] [indiscernible]?

6          THE COURT:  If he has passed away and anybody gets

7  any information I will direct you to file suggestion of death

8  on the record and I will tell you that if somebody died and

9  you want to try to substitute their estate, the rules provide

10  for procedure.  You only have a limited amount of time to

11  substitute an estate and serve the estate.

12          Anything else today, Mr. Capogrosso?

13          MR. CAPOGROSSO:  No, Your Honor.

14          THE COURT:  Anything further, Mr. Thompson?

15          MR. THOMPSON:  No, Your Honor.

16          THE COURT:  Then I'm hopeful that everybody will --

17          MR. CAPOGROSSO:  I'm sorry, Judge.  I could -- I

18  did -- and I apologize for interrupting if I've been -- I've

19  interrupted you.  My request -- per my complaint of

20  prospective injunctive relief, now am I going to have to wait

21  for this case to go to trial in order to -- before -- and make

22  a motion prior to trial?

23          THE COURT:  Only after discovery has been completed.

24          MR. CAPOGROSSO:  Fine.

25          THE COURT:  And that's what summary judgment is all

39

1   about.

2           MR. CAPOGROSSO:  All right.

3           THE COURT:  Okay.

4           MR. CAPOGROSSO:  Okay.

5           THE COURT:  With that we are adjourned.  Thank you.

6           MR. THOMPSON:  Thank you, Your Honor.

7           THE COURT:  Oh, I'm sorry.  Can we go back on for a

8   half-second?  Are we back on the record?  I'm sorry.  I

9   adjourned the case but I just want to bring one thing to your

10  attention, Mr. Capogrosso.  There is an administrative order

11  of the court that requires all parties -- it's a mandatory

12  policy -- to file electronically.  You are admitted in the

13  Eastern District of New York?

14          MR. CAPOGROSSO:  No, I'm not.  I'm admitted in state

15  court, not in federal court.

16          THE COURT:  And so that's why you're not on ECF to

17  receive --

18          MR. CAPOGROSSO:  I've got to have the paper copies.

19  I don't want to file on ECF, no.  Mail it to them.

20          THE COURT:  Look, sir.

21          MR. CAPOGROSSO:  Yes.

22          THE COURT:  This is not my rule.  It's the

23  District's rule and it's the chief judge who made it

24  mandatory.  Now, there can be exceptions for good cause and,

25  again, *pro se* cases are exempted but because you're an

**JSA-130**

40

1     attorney you're not exempted.  And just to be clear, in this

2     case I will excuse you from mandatory ECF filing but if

3     there's any case where you are appearing as an attorney in

4     this court, you need *pro hac vice* and you need mandatory ECF.

5     Are we clear?

6             MR. CAPOGROSSO:  No, I'm not admitted in this court,

7     Judge.

8             THE COURT:  No, but are we clear that in this

9     case --

10            MR. CAPOGROSSO:  Yes, I --

11            THE COURT:  -- I will as an accommodation not

12     require any ECF --

13            MR. CAPOGROSSO:  Fine.

14            THE COURT:  Any ECF to be mandatory and will

15     continue to file -- send you things paper, but in any other

16     case if you're appearing as an attorney before the court and

17     it's not your own case, you are required under Administrative

18     Order 2004-08 to be registered and you must get *pro hac vice*

19     and you must file everything electronically.

20            MR. CAPOGROSSO:  I understand that, Judge.

21            THE COURT:  Okay.  With that, we're adjourned.

22     Thank you.

23            MR. CAPOGROSSO:  Thank you.

24     (Proceedings concluded at 11:32 a.m.)

25                  * * * * * *

**JSA-131**

41

1          I certify that the foregoing is a court transcript

2     from an electronic sound recording of the proceedings in the

3     above-entitled matter.

4                                   _Ruth Ann Hager_

5     _____

6                            Ruth Ann Hager, C.E.T.**D-641

7     Dated:  January 15, 2020

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
MARIO H. CAPOGROSSO,

                         Plaintiff,

        v.

ALAN GELBSTEIN, IDA TRASCHEN,
DANIELLE CALVO, SADIQ TAHRIR, PEC
GROUP OF NY, INC., DAVID SMART and
MARK J.F. SCHROEDER,

                    Defendants.
---------------------------------------------------------------

**ORDER**
18-CV-2710 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

      On December 2, 2019, Plaintiff Mario H. Capogrosso, proceeding *pro se*, filed a motion

seeking a court order directing the New York Department of Motor Vehicles (the "DMV") to

allow Plaintiff access to the Brooklyn Traffic Violations Bureau (the "TVB") to conduct

discovery. (Pl. Mot. Seeking Entrance to DMV TVB ("Pl. Mot.") 2, Docket Entry No. 91.)

Defendants Danielle Calvo, Alan Gelbstein, Ida Traschen, and Mark J.F. Schroeder opposed the

motion. (Defs. Opp'n to Pl. Mot., Docket Entry No. 93; Defs. Suppl. Opp'n to Pl. Mot., Docket

Entry No. 101.) On January 10, 2020, Magistrate Judge Lois Bloom held a conference with the

parties and denied Plaintiff's request to enter the TVB and conduct discovery ("Judge Bloom's

Order"). (Order dated Jan. 10, 2020 ("Jan. 2020 Order"), Docket Entry No. 104; Tr. of Jan. 10,

2020 Conference ("Tr."), Docket Entry No. 105.) Judge Bloom ordered Plaintiff to "comply

with Rules 26–37 of the Federal Rules of Civil Procedure," as well as previous court orders

regarding discovery in this case. (Jan. 2020 Order.)

On January 15, 2020, Plaintiff filed a letter objecting to Judge Bloom's Order directing

him "not to attempt to enter the [TVB] . . . to gather witness statements, witness names, and

witness telephone numbers as well as gather evidence by way of photographs." (Pl. Obj. to Jan.

2020 Order ("Pl. Obj."), Docket Entry No. 106.) The Court construes Plaintiff's letter as an

objection to Judge Bloom's Order pursuant to Rule 72 of the Federal Rules of Civil Procedure.

For the reasons set forth below, the Court declines to set aside or modify Judge Bloom's Order.

Under the Federal Magistrates Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of

Civil Procedure, "[a] magistrate judge is authorized 'to make findings as to non-dispositive

pretrial matters, such as discovery matters, which may not be disturbed by a district judge absent

a determination that such findings were clearly erroneous or contrary to law.'" *Ebo v. N.Y.*

*Methodist Hosp.*, No. 12-CV-4432, 2015 WL 4078550, at *4 (E.D.N.Y. July 6, 2015) (quoting

*McNamee v. Clemens*, No. 09-CV-1647, 2014 WL 1338720, at *2 (E.D.N.Y. Apr. 2, 2014)); *see*

*also Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). An order is clearly erroneous if,

based on all the evidence, a reviewing court "is left with the definite and firm conviction that a

mistake has been committed." *In re Gordon*, 780 F.3d 156, 158 (2d Cir. 2015) (internal

quotations omitted) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)); *Ebo*,

2015 WL 4078550, at *4. An order is only contrary to law if it misapplies existing law and the

district judge is convinced that a mistake has been made. *In re Gordon*, 780 F.3d at 158.

Under this highly deferential standard, magistrate judges are "afforded broad discretion in

resolving discovery disputes, and reversal is appropriate only if that discretion is abused."

*McNamee*, 2014 WL 1338720, at *2 (first citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900

F.2d 522, 524 (2d Cir. 1990); and then citing *United States v. Dist. Council*, 782 F. Supp. 920,

922 (S.D.N.Y. 1992)). Therefore, "a party seeking to overturn a discovery order [by a magistrate

judge] bears a heavy burden." *Bachayeva v. Americare Certified Special Servs.*, No. 12-CV-1466, 2013 WL 4495672, at *1 (E.D.N.Y. Aug. 20, 2013) (quoting *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y 2011)). "[T]he magistrate judge's findings should not be rejected merely because the court would have decided the matter differently." *Pall Corp. v. Entegris*, *Inc.*, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008) (quoting *Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007)).

The Court has reviewed Judge Bloom's Order, denying Plaintiff's request for a court order giving him access to the TVB and directing Plaintiff to comply with the Federal Rules of Civil Procedure regarding discovery, and finds that it was not "clearly erroneous or contrary to law." *Ebo*, 2015 WL 4078550, at *4 (quoting *McNamee*, 2014 WL 1338720, at *2). Accordingly, the Court declines to modify or set aside Judge Bloom's Order.

Dated: February 3, 2020
       Brooklyn, New York

                              SO ORDERED:

                                    _____s/ MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge

**JSA-135**



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

Writer's Direct Dial: (212) 416-6556

February 25, 2020

**Via ECF**

The Honorable Lois Bloom
United States District Court for the Eastern District of New York
Theodore Roosevelt United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

     Re:    <u>Capogrosso v. Gelbstein, et al.</u>, No. 18 Civ. 2710 (EK) (LB)

Dear Judge Bloom,

     This Office represents Defendants Alan Gelbstein, Ida Traschen, and Danielle Calvo, in their individual capacities, and Mark Schroeder, Commissioner of the New York State Department of Motor Vehicles, in his official capacity (collectively, the "State Defendants") in the above-referenced matter. I write on behalf of the State Defendants and Plaintiff Mario Capogrosso, pursuant to Your Honor's February 18, 2020 Order, Dkt. No. 111, to update the Court regarding an agreement on deposition times for the individual State Defendants.

     Mr. Capogrosso has requested to hold the deposition of Alan Gelbstein at 9:00 a.m. on April 29, 2020, to be followed by the depositions of Ida Traschen at 11:00 a.m. and Danielle Calvo at 12:30 p.m. The State Defendants have agreed to these times. Mr. Capogrosso anticipates deposing additional parties and witnesses during the afternoon.

     Additionally, the Plaintiff and the State Defendants have agreed on the date of April 28, 2020 for the State Defendants to take the Plaintiff's deposition, and respectfully request that a room at the courthouse be made available on that date. We thank the Court for its time and attention to these matters.

               Respectfully submitted,

               James M. Thompson
               Assistant Attorney General
               james.thompson@ag.ny.gov

**JSA-136**

Cc:    All counsel of record (via ECF)

      Mario Capogrosso (via First-Class Mail)
      21 Sheldrake Place
      New Rochelle, NY 10804

      David Smart (via First-Class Mail)
      2875 West 8th Street
      Brooklyn, NY 11224

      Sadiq Tahir (via First-Class Mail)
      2994 Coney Island Avenue
      Brooklyn, NY 11235

28 Liberty Street, New York, New York 10005 ● Tel.: (212) 416-8610 ● Fax: (212) 416-6075 (Not For Service of Papers)
www.ag.ny.gov

JSA-137

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                Plaintiff,

      -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                Defendants.

------------------------------------------------------------------X

                                        **ORDER**
                         **18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

        The parties confirm that they plan to conduct depositions on April 28 and April 29, 2020.

ECF No. 113. The Court has reserved Room 402 South in the Brooklyn Courthouse, 225 Cadman

Plaza East, Brooklyn, New York 11201 on April 28 and 29, 2020 from 9:00 a.m. to 5:00 p.m. The

parties are reminded that they are responsible for arranging for their own court reporters. As

previously set, the parties shall complete all discovery by May 15, 2020 and shall file any pre-

motion conference request in accordance with Judge Komitee's Individual Rules by June 5, 2020.

Electronic Order dated Nov. 14, 2019.

SO ORDERED.

                                   _____/S/_____
                                    LOIS BLOOM
                                    United States Magistrate Judge

Dated: February 26, 2020
       Brooklyn, New York

**JSA-138**

```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK

-----------------------------X Docket#
CAPOGROSSO,                    : 18-cv-02710-EK-LB
            Plaintiff,         :
                               :
    - versus -                 : U.S. Courthouse
                               : Brooklyn, New York
                               :
                               :
GELBSTEIN, et al.,             : May 5, 2020
            Defendants         : 11:01 AM
-----------------------------X

    TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
          BEFORE THE HONORABLE LOIS BLOOM
          UNITED STATES MAGISTRATE JUDGE
```

**A    P    P    E    A    R    A    N    C    E    S:**


**For the Plaintiff:**           **Mario H. Capogrosso, pro se**
                                 21 Sheldrake Place
                                 New Rochelle, NY 10804


**For the Defendants:**          **James M. Thompson, Esq.**
                                 Office of the New York State
                                 Attorney General
                                 28 Liberty Street
                                 New York, NY 10005


**Transcription Service:**       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

**JSA-139**

17

Proceedings

1   if that's what you want, it will be mailed to you by the

2   Court.  It will not be mailed to you by the AG.  He has

3   no requirement to mail you anything, unless he is told,

4   and he did mail that last piece that he was told to mail

5   to you, and that's it.  We're done with this.

6          Your motion did not comply with the procedural

7   safe harbor provisions in Federal Rule of Civil Procedure

8   11.  You also failed to demonstrate that defendant's

9   counsel is acting in bad faith or objectively

10  unreasonable.  So sanctions are not warranted under

11  either Rule 11 or the Court's inherent power.

12          Even though I understand this case is important

13  to you, Mr. Capogrosso, and I am trying, even though I

14  have 570 cases, and Mr. Thompson, I am sure has more than

15  this case, I am trying to make it, I won't say easy for

16  you, but as you know, I ruled that all of the depositions

17  would be at the courthouse.  Well, the courthouse is

18  closed, sir.  It's not closed for business.  We're doing

19  business remotely, but everything is being done by

20  telephone.  We do not have any ability to have

21  depositions at the courthouse.  We do not have any

22  ability to bring jurors to the courthouse.  We are not

23  doing business as usual.

24          And you have the choice which you're making

25  clear that you don't want the Court to give you anything

**JSA-140**

Proceedings

1   by email, and you don't want Mr. Thompson to send you

2   anything by email, that's your choice, sir, but that

3   doesn't mean that there are sanctions warranted against

4   Mr. Thompson, and that this whole pile of papers that you

5   created is your choice in how to litigate.  You've

6   already been warned by Judge Brodie in her prior orders.

7            I will remind you she, in her August 2nd

8   conference transcript, says there is no basis -- she said

9   there's absolutely no basis for me to impose sanctions

10  here.  She said the attorney, who at that time was the

11  Assistant Attorney General Siegmund, didn't act

12  inappropriately in anyway, and I am not -- I'm not going

13  to tolerate any false accusations.

14           And she went onto say you've brought a lawsuit,

15  so let the lawsuit take place, but it doesn't help when

16  you accuse your adversary of doing things

17  inappropriately.

18           So I am echoing Judge Brodie's concerns which

19  were stated in the August 2nd conference, and I am

20  telling you, Mr. Capogrosso, don't put your health at

21  stake here by running down to the courthouse to file

22  letters which are repeating the same argument that you

23  filed in your documents 121 and 123 -- I'm sorry, 120 and

24  123.  When you put on the record what your April 31st

25  letter says, it's exactly what you've already said, sir.

23

Proceedings

1   if there's a new order, I will obey it.

2           THE COURT:  Mr. Capogrosso, I appreciate that

3   but I do not appreciate being screamed at.  I'm doing my

4   job --

5           MR. CAPOGROSSO:  I'm not screaming, I'm stating

6   my position.

7           THE COURT:  Sir, I'm doing my job to the best

8   of my ability, and I am telling you that if you do not

9   want anybody to give you anything by email, that's a

10  choice, but that means it will take longer for things to

11  get to you.

12          If what you are saying is now in light of the

13  Court's new order, you will agree to accepting by email,

14  please make yourself clear because I am

15  (indiscernible) --

16          MR. CAPOGROSSO:  Fine, I will make myself

17  clear.

18          THE COURT:  Good.

19          MR. CAPOGROSSO:  Fine.  And based on your new

20  order, based on your last order, I was in obedience to

21  your last order.  Based on your new order, he doesn't

22  have to serve me by physical mail, fine, I'll accept

23  email but I'm not going to correspond with him.

24          THE COURT:  Email --

25          MR. CAPOGROSSO:  I'll correspond with me -- he

JSA-142

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MARIO H. CAPOGROSSO,

                Plaintiff,

     -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                Defendants.

-------------------------------------------------------------X

                            **ORDER**
                          **18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

On December 10, 2020, plaintiff requested a Court Order that defendant Commissioner

Schroeder be produced for a deposition.[1] ECF No. 147. Defendants request a protective order,

pursuant to Federal Rule of Civil Procedure 26(c), prohibiting plaintiff's deposition of

Commissioner Schroeder. ECF No. 146. For the reasons set forth below, defendants' motion for

a protective order is granted.

"[T]o depose a high-ranking government official, a party must demonstrate exceptional

circumstances justifying the deposition." Lederman v. N.Y. City Dep't of Parks & Rec., 731

F.3d 199, 203 (2d Cir. 2013). "The Second Circuit has found that exceptional circumstances

exist if 'the official has unique first-hand knowledge related to the litigated claims or that the

necessary information cannot be obtained through other, less burdensome or intrusive means.'"

---

[1] The Court notes that although plaintiff proceeds *pro se*, he is an attorney.

**JSA-143**

Boggs v. Town of Riverhead, No. 17 Civ. 5411, 2020 WL 1929076, at *3 (E.D.N.Y. Apr. 20, 2020) (quoting Lederman, 731 F.3d at 203).

"The Supreme Court has stated that 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' In an official capacity suit, 'the real party in interest . . . is the governmental entity and not the named official.'" Tanvir v. Tanzin, 894 F.3d 449, 458-59 (2d Cir. 2018) (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)).

Here, Commissioner Schroeder was only added to the case as a Rule 25(d) substitute for plaintiff's official-capacity claims against Defendants Gelbstein, Traschen, and Calvo, each of whom has left his or her former positions at the DMV since this lawsuit was filed and accordingly, no longer have any "official capacity" in which to be sued. Additionally, the Court finds that Commissioner Schroeder cannot have "unique first-hand knowledge" as he was appointed to his position in January of 2019, approximately four years after the events that give rise to plaintiff's case. Accordingly, as Commissioner Schroeder is a high-ranking state official who is only a party to this lawsuit in his official capacity, defendants' request for a protective order is granted.

In his December 10, 2020 letter to the Court, plaintiff also requests that defendant Smart be ordered to respond to his interrogatories dated August 25, 2020 and that defendant Smart provide plaintiff with an email address or phone number to conduct his deposition remotely. Defendant Smart is proceeding in this matter *pro se*. Defendant Smart was employed by a private security company which supplied guards at the Department of Motor Vehicles. Plaintiff and defendant Smart got into a physical confrontation which led to plaintiff being removed from the DMV. Although plaintiff states that he served interrogatories on defendant Smart, he has not

2

provided them to the Court. Therefore, the Court cannot rule on plaintiff's request to compel defendant Smart to respond. Whereas plaintiff is permitted to pursue discovery, the Court will not compel defendant Smart to provide his email address or phone number to plaintiff. Plaintiff may provide the interrogatories that are outstanding to the Court for the Court to consider them. This will be the one exception to the parties' deadline to complete all discovery by December 22, 2020. Defendants' counsel shall communicate this order to plaintiff by all available means.

SO ORDERED.

_____/S/_____

LOIS BLOOM
United States Magistrate Judge

Dated: December 16, 2020
      Brooklyn, New York

**JSA-145**

## INTERROGATORIES AND REQUEST FOR PRODUCTION

**Interrogatories**

**Defendant David Smart**

1. Identify your job title and description, as well as the starting and termination date for your employment at the Brooklyn South Traffic Violations Bureau (TVB) as located at 2875 West 8th Street Brooklyn NY.

2. Are you still currently working at the Brooklyn South TVB located at 2875 West 8th Street Brooklyn NY.

3. Who is your current employer while you are currently working at the Brooklyn South TVB.

4. Are you currently working at the Brooklyn South.

5. Who told you to approach me, plaintiff Mario H. Capogrosso, on the morning of May 11, 2105 and create the incident which resulted in my removal from the Brooklyn TVB.

6. Did defendant Alan Gelbstein, defendant Ida Traschen, defendant Danielle Calvo and/or Bushra Vahdat tell you to approach me on the morning of May 11, 2015 and create the incident which resulted in my removal form the Brooklyn TVB.

7. If the answer to any part of question 6 above is yes, which of the person or persons identified in question 6 told you to approach me, plaintiff Mario H. Capogrosso, on the morning on May 11, 2015 and when did such person or persons have such conversation with you.

8. What is your email address and telephone number so I may hold your remote electronic oral deposition via a Zoom deposition.

3

**Request for Production**

1. Produce all documents relating to any disciplinary action taken against you relating to your employment, whether it be by and employer, the Department of Motor Vehicles or any administrative law judge while you were or as currently working at the Brooklyn South TVB from your initial date of employment to the present time.

Dated: August 25, 2020
New Rochelle, NY

Submitted,

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, NY 10804
(914) 806-3692

Received by the Pro Se Office
1/13/2021-KC

Hon. Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 1 3 2021 ★

**BROOKLYN OFFICE**



United States Magistrate Judge Bloom
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

January 13, 2021

Re: Capogrosso v. Gelbstein et al, No. 18-cv-2710, Review and reversal of Court order (Dkt. #148)

Judge Komitee:

Pursuant to Local Civil Rule 6.3 and or F.R.C.P. 60, and reserving any right to appeal, I seek your review of J. Magistrate's Bloom's order dated December 16, 2020 (Dkt. 148).

I seek review and reversal of the following portion of such order:

J. Magistrate Bloom writes,

"plaintiff states that he served interrogatories on defendant Smart, he has not provided them to the court. Therefore the Court cannot rule on plaintiff's request to compel defendant Smart to respond. Whereas plaintiff is permitted to pursue discovery, the Court will not compel defendant Smart to provide his email address or phone number to plaintiff."

With respect to this order:

J. Magistrate Bloom has indicated to me at a pretrial conference in June 2020 that the Court, your Court (U.S. Eastern District Court) was open for business, in light of the Covid-19 pandemic, when I questioned her concerning my ability to depose defendant Smart at the Court house located at 225 East Cadman Plaza, Brooklyn New York. At such pretrial conference, J. Magistrate Bloom also indicated I would not be able to depose defendant Smart at the Court but must conduct all depositions remotely and electronically.

I was further ordered by J. Brodie in a pretrial conference in August 2018 that I was not to contact defendant Smart by telephone and I was to communicate with defendant Smart by written correspondence.

1

**JSA-148**

Defendant Smart has refused to produce his email address and has refused to respond my discovery demands. I attach my discovery demands upon defendant Smart as **Exhibit A.** I also attach **Exhibit B** which show letters from defendant Smart to myself, which were served upon me after my service of interrogatories and Request for Production of Documents upon him on August 25, 2020 and a request for an email address on September 2, 2020, that I not write him any longer and directs me to communicate with "PEC" or the "City Bar Justice Center." for my answers. Neither has put in an appearance for defendant Smart and therefore are unable to respond to any deposition notice or provide a response to my interrogatories. Defendant Smart has not appeared at our last two pre-trial conferences.

Depositions, Interrogatories, and Requests for Production are acceptable manners of discovery. (Fed Rules 30, 33 and 34).

A subpoena pursuant to Fed Rule 45 provides me no relief, wherein I have been ordered J. Magistrate Bloom to hold all depositions electronically and remotely, and thus have no ability to summon defendant Smart, by such subpoena, to appear at a particular location.

I am a pro se plaintiff, guided by your manual, A Manual For Pro Se Litigants Appearing Before the United States District Court for the Southern District (Jan, 2011), provided by the clerk of your Court and indicated by the clerk of the Court that this manual was applicable to the Eastern District. Your manual page 79, par. 3, attached as **Exhibit C,** Federal Rule 5 and Local Rule 5.1 are clear. Discovery documents are not to be sent to the Court. Pursuant thereto, I sent no discovery documents as attachments to my letter motion of December 10, 2020 (Dkt. #147).


Further

With respect to my letter motion to the Court dated December 10,2020 (Dkt. #147) I sought an extension of time to depose two nonparty witnesses. J. Magistrate Bloom chose not to address this portion of my motion in her order of December 16, 2020 (Dkt. #148).

Specifically, I seek to depose two non-party witnesses. They are Cindy (last name unknown), and Marisol Cervini, both of whom were clerks at the Brooklyn TVB in May 2015. I have been ordered by this Court not to appear at the Brooklyn TVB; I have been ordered to hold all depositions remotely (therefore I cannot subpoena these nonparty witnesses to appear at the courthouse, my office or a court reporters office), I cannot gather any information from these nonparty witnesses by interrogatories as they are nonparties. In addition, I have been given subpoena documents from your clerk, **Exhibit D,** which require that any depositions be taken at your Courthouse, which I am not allowed to do. I have made several phone calls to your pro se clerk and have received no clarification concerning the subpoena documents provided. Only on December 23, 2020 after discovery was closed was I provided the proper subpoena documents, attached as **Exhibit E.** by the clerk of your Court. I am not admitted in your Court and therefore do not feel it proper to create my own subpoena documents.

2

**JSA-149**

Relief Sought

    I seek review and reversal of J. Magistrate Bloom's order dated December 16, 2010 (Dkt. # 148) and pursuant thereto

    1) defendant Smart provide answers to my interrogatories and respond to my demand for production of documents dated August 25, 2020 and be made to produce an email and requisite laptop so I may conduct a Zoom deposition or in the alternative to provide a telephone number so I can hold his deposition telephonically, 2) defendant Smart be made to appear at such deposition, 3) the State's Attorney Thompson produce the two clerks I choose to depose at a Zoom conference or produce a telephone number so that I can hold their deposition telephonically, and 4) I be given an extension of time of sixty days from the date of this letter to complete such discovery.

Respectfully truthfully stated and submitted,

Mario H. Capogrosso

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIO H. CAPOGROSSO,

        Plaintiff

  -against-

                                 **AFFIRMATION**
                                 **OF SERVICE**

                                 **Case No. CV-18-2710**

ALAN GELBSTEIN, et al

        Defendants

     I, Mario H. Capogrosso, declare under penalty of perjury that I have served a copy of the

attached Plaintiff's Letter seeking review and reversal of Court order (Dkt.#148) upon:

James Thompson, Esq.
Assistant Attorney General
28 Liberty Street
New York, NY 10005

Sadiq Tahir
2994 Coney Island Avenue
Brooklyn, NY 11235

Pec Group of NY
935 S. Lake Blvd. #7
Mahopac, NY 10541

David Smart
2875 West 8th Street
Brooklyn, NY 11224

**JSA-151**

via U.S. Postal Service First Class Mail, this 13th day of January 2021.

New Rochelle, NY
January 13, 2021

Mario H. Capogrosso
21 Sheldrake Place
New Rochelle, NY 10804
(914) 806-3692

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

MARIO H. CAPOGROSSO,

                Plaintiff,

     -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO, *in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                Defendants.

--------------------------------------------------------------X

**ORDER**
**18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff[1] moves the Court to compel discovery. Specifically, plaintiff seeks a Court

Order that defendant Smart answer his interrogatories and "produce an email and requisite

laptop" so that plaintiff can conduct Smart's deposition, that defendant Smart be ordered to

appear at a deposition, that the State's Attorney produce two clerks he wishes to depose, and that

the discovery deadline be extended by 30 days. ECF No. 149. The State defendants oppose

plaintiff's requests to conduct additional depositions and to extend discovery. For the reasons set

forth below, plaintiff's requests are granted in part and denied in part.

      The deadline for the parties to complete all discovery in this case was December 22,

2020. ECF No. 145. Plaintiff's letter requesting a subpoena is dated December 21, 2020, literally

the eve of the deadline to complete all discovery. Subpoena practice is governed by Federal Rule

of Civil Procedure 45 which provides in relevant part that an attorney may issue and sign a

subpoena or the clerk must issue a subpoena to a party who requests it.  Fed. R. Civ. P. 45(a)(3).

---

[1] Mr. Capogrosso is an attorney who is proceeding *pro se*.

A deposition subpoena must be served before the discovery deadline. See Juliao v. Charles Rutenberg Realty, Inc., No. 14 Civ. 808, 2018 WL 5020167, at *5 (E.D.N.Y. July 23, 2018) (quashing subpoena and noting that "[w]hile Rule 45 does not define 'reasonable time [to provide advance notice of a deposition subpoena], many courts have found fourteen days from the date of service as presumptively unreasonable.") In this case, the parties have had well over a year to conduct discovery. See ECF No. 82. Plaintiff could have requested and served a subpoena at any time during the discovery period, but instead waited until the deadline to do so. Further, the Court's December 22, 2020 Order stated that its consideration of plaintiff's interrogatories would be "the one exception to the parties' deadline to complete all discovery by December 22, 2020." See ECF No. 148. Therefore, the Court denies plaintiff's request to depose the two clerks and to extend the discovery deadline. The Court has already denied plaintiff's motion to compel defendant Smart to provide plaintiff with an email address or phone number to conduct his deposition remotely.[2] ECF Nos. 147-148. The Court declines to revisit this issue.

Plaintiff maintains that he served interrogatories on defendant Smart before the discovery deadline, however defendant Smart never responded. Plaintiff has now sent the Court a copy of the interrogatories dated August 25, 2020. ECF No. 149-1. The Court has reviewed the interrogatories. Defendant Smart shall, to the best of his ability, respond in writing to plaintiff's

---

[2] The Court declined to compel defendant Smart, who is also proceeding *pro se* in this matter, to appear for a deposition, or to provide his email address or phone number to plaintiff. There is bad blood between Capogrosso and Smart. Requiring these two pro se parties to do anything together is not in the interest of justice. Defendant Smart was employed by a private company which supplied security guards at the Department of Motor Vehicles from which plaintiff was banned. Plaintiff and defendant Smart got into a confrontation which led to plaintiff being removed from the DMV. That confrontation is what plaintiff claims caused his ban from the DMV office. Assuming this is true, plaintiff fails to demonstrate that defendant Smart acted under color of state law in connection with his alleged role in this lawsuit. The lack of state action was not properly raised by Smart in his motion to dismiss. Although he is named as a defendant, the Court finds Smart's responses to plaintiff's written interrogatories will be sufficient and declines to compel Smart to appear for a deposition under these circumstances.

2

interrogatories No. 1-7[3] by February 12, 2021. Fed. R. Civ. P. 33(b)(2).[4] Discovery in this matter is otherwise closed.

Plaintiff's deadline to respond to the State defendant's pre-motion conference request, ECF No. 151, pursuant to Judge Komittee's individual rules, is extended. Plaintiff shall respond to the State defendant's pre-motion conference request by February 19, 2021. Defendants' counsel shall communicate this order to plaintiff and to defendant Smart by all available means. SO ORDERED.

_____/S/_____

LOIS BLOOM
United States Magistrate Judge

Dated: January 13, 2021
      Brooklyn, New York

---

[3] Defendant Smart need not respond to interrogatory No. 8, which requests his email address and telephone number, as discussed above.

[4] Defendant Smart may contact The Federal Pro Se Legal Assistance Project, a free, limited-scope legal clinic operated by the City Bar Justice Center of the New York City Bar Association to seek assistance in responding to the interrogatories. A copy of the City Bar Justice Center's flyer is included with this Order.

**JSA-155**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARIO H. CAPOGROSSO,

                       Plaintiff,

       -against-

ALAN GELBSTEIN, *in his individual capacity*, IDA
TRASCHEN, *in her individual capacity*, DANIELLE
CALVO*, in her individual capacity*, SADIQ TAHIR,
*in his individual capacity*, PEC GROUP
OF NY, INC., DAVID SMART, and DMV
COMMISSIONER MARK SCHROEDER,
*in his official capacity*,

                       Defendants.
---------------------------------------------------------------X

                                  **ORDER**
                          **18 CV 2710 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

     The Court ordered Defendant David Smart to respond to plaintiff's interrogatories dated

August 25, 2020 by February 12, 2021. ECF No 154. Plaintiff reports that Defendant Smart has

not responded to his interrogatories and moves the Court to impose sanctions on Defendant

Smart. ECF No. 157. The state defendants oppose plaintiff's motion. ECF No. 158. Plaintiff's

request is denied without prejudice.

     Defendant Smart proceeds in this matter *pro se*, and unlike plaintiff, Mr. Smart is not an

attorney. The Court shall therefore give Mr. Smart another chance to comply with the Court's

Order. The Court shall hold a conference in this action on March 16, 2021 at noon. Instead of

providing written responses to plaintiff's interrogatories, **Defendant Smart shall call the**

**Chambers telephone conference line at (888) 363-4734 and use the access code 4444221 at**

**12:00p.m. on March 16, 2021**. At the conference, the Court shall swear Defendant Smart to the

truth of his testimony and Defendant Smart shall answer plaintiff's interrogatories orally on the

record. The Clerk of Court is respectfully requested to serve a copy of this order upon Defendant

Smart via overnight delivery.

      SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: February 25, 2021
      Brooklyn, New York

**JSA-157**

<pre>
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

        ------------------------------X  **Docket#**
        CAPOGROSSO,                    : 18-cv-02710-EK-LB
                       Plaintiff,      :
                                       :
            - versus -                 : U.S. Courthouse
                                       : Brooklyn, New York
                                       :
                                       :
        GELBSTEIN, et al.,             : March 16, 2021
                       Defendants      : 11:01 AM
        ------------------------------X

          TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
                 BEFORE THE HONORABLE LOIS BLOOM
                 UNITED STATES MAGISTRATE JUDGE

        A   P   P   E   A   R   A   N   C   E   S :
</pre>

**For the Plaintiff**:        **Mario H. Capogrosso, pro se**
                              21 Sheldrake Place
                              New Rochelle, NY 10804


**For the Defendants**:       **James M. Thompson, Esq.**
                              Office of the New York State
                              Attorney General
                              28 Liberty Street
                              New York, NY 10005

**For Defendant Smart**:      **David Smart, pro se**
                              2355 Batchelder St.
                              Apartment 3E
                              Brooklyn, NY 11229


**Transcription Service**:    **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              laferrara44@gmail.com


        Proceedings recorded by electronic sound-recording,
        transcript produced by transcription service

2

Proceedings

 1          THE CLERK:  Civil Cause for Telephone Status

 2  Conference, docket number 18-cv-2710, Capogrosso v.

 3  Gelbstein, et al.

 4          Will the parties please state your names for

 5  the record?

 6          MR. CAPOGROSSO:  Mario Capogrosso, plaintiff,

 7  21 Sheldrake Place, New Rochelle, NY 10804.

 8          MR. THOMPSON:  Good morning.

 9          James Thompson from the Office of the New York

10  State Attorney General for the state defendants and I'm

11  joined by Barbara Montina (ph.) who is in-house counsel

12  for DMV.

13          MR. SMART:  Yeah, my name is Mr. David Smart.

14  I'm here on my behalf.

15          THE CLERK:  The Honorable Lois Bloom presiding.

16          THE COURT:  Good morning, Mr. Capogrosso, Mr.

17  Thompson, Ms. Montina and Mr. Smart.

18          This is a telephone status conference in

19  plaintiff's civil rights action.  I last spoke with  the

20  parties on May 5th, 2020.

21          On December 22nd, 2020, discovery closed in

22  this matter and Mr. Capogrosso, you wrote to the Court

23  and stated that you had served interrogatories on Mr.

24  Smart before the discovery deadline.  However, Mr. Smart

25  never responded.

3

Proceedings

1   And I directed you to provide the

2 interrogatories to the Court to review and I informed the

3 parties that this would be the one exception to the

4 discovery deadline.  That's in ECF entry number 148.

5   I reviewed your interrogatories and I directed

6 Mr. Smart to respond to the interrogatories and I

7 extended his deadline to do so. That's ECF entry number

8 154.

9   When Mr. Smart did not respond, Mr. Capogrosso

10 moved for a default junction and sanctions against Mr.

11 Smart.  That's ECF 157.

12   As Mr. Smart is like Mr. Capogrosso, proceeding

13 pro se, although Mr. Smart is not an attorney like Mr.

14 Capogrosso, I denied the request for default judgment and

15 sanctions and set today's telephone conference to get Mr.

16 Smart to answer the interrogatories orally on the record.

17 That's ECF entry number 159.

18   Mr. Smart has since informed the Court by

19 letter, that he is receiving assistance from the City Bar

20 Justice Center Pro Se project and that he is drafted

21 responses to the interrogatories and the letter was from

22 back in February and he said that they were going to be

23 served.

24   Mr. Capogrosso, have you gotten Mr. Smart's

25 responses to the interrogatories?

**JSA-160**

4

Proceedings

1      MR. CAPOGROSSO:  I did receive a document.  It
2  is not signed, Judge, and that was one of the comments I
3  wanted to make.  It's not signed by defendant Smart.  So
4  I don't know who wrote it and whether it's relevant or
5  material.  It is also dated after the date that you
6  required defendant Smart to respond by.  It's dated
7  February 24th.  You required him to respond by February
8  12th.

9      There's also -- it replies with the words
10  "information and belief" and according to -- Black's
11  Dictionary indicates information and belief is
12  information not made on firsthand knowledge but based on
13  secondhand knowledge.

14      THE COURT:  So again, as far as the timeliness,
15  Mr. Smart's letter which is ECF 59, requested an
16  extension of time nunc pro tunc to serve his responses
17  and I granted that request at ECF number 162.  And I kept
18  today's conference as scheduled to ensure that you have
19  responses and if you're saying that the responses sent
20  were not signed, I'm sure that's an oversight but in
21  order to correct it, I'm willing to go through this on
22  the record as I intended with Mr. Smart.

23      Mr. Smart?

24      MR. SMART:  Yeah.

25      THE COURT:  Are you willing today to answer

5

                          Proceedings

1   some of these questions on the record, so that we could

2   get this matter completed?

3            MR. SMART:  Yeah.

4            THE COURT:  Okay, sir.  So Mr. Smart, I am

5   going to ask you to raise your right hand, please.

6            MR. SMART:  Yeah.

7   D A V I D   S M A R T ,

8       having been first duly sworn, was examined and

9       testified as follows:

10           THE COURT:  And can you state your full name,

11  sir?

12           MR. SMART:  Yeah, my name is David Smart.

13           THE COURT:  And Mr.  Smart, were you employed

14  at the Brooklyn South Traffic Violations Bureau located

15  at 2875 West 8th Street in Brooklyn, New York, sir?

16           MR. SMART:  Yeah, I was once employed there but

17  I am no longer there.

18           THE COURT:  Okay.  So that answers question 1

19  and 2.  What was your job when you were working there,

20  sir?

21           MR. SMART:  I was a security guard.

22           THE COURT:  And who was your employer?  Who

23  paid your wages when you were employed there?

24           MR. SMART:  Yeah, the -- I started with a

25  company called PEC, started -- I started on 2/7 to '16,

                 Transcriptions Plus II, Inc.

**JSA-162**

6

Proceedings

1   2016.  I was there the 2015 when this (indiscernible)

2   occurred with PEC.  And then I resumed -- when PEC left,

3   I resumed working with Explorer (ph.) from 2/20 to --

4   2/2016 to October 8, 2020.

5           THE COURT:  So you're not currently working at

6   Brooklyn South Traffic Violations Bureau; is that

7   correct, sir?

8           MR. SMART:  No, yes, it's correct because I

9   left there since October 20, 2020 -- October 8th, sorry,

10  October 8th, 2020.

11          THE COURT:  So October 8th of 2020, you stopped

12  working at the Brooklyn South Traffic Violations?

13          MR. SMART:  Yeah, yeah, I was working for

14  Explorer at the -- at that time.

15          THE COURT:  Okay.  And from -- I think you said

16  2016 until 2020, you were working at the Brooklyn South

17  Traffic Violations Bureau; is that correct?

18          MR. SMART:  Yeah, with Explorer Company, a

19  different company, not PEC.  PEC left and we were -- they

20  were replaced by Explorer, a security company located on

21  the 151st Street -- 60 51st Street in Manhattan.

22          THE COURT:  So you're basically saying there

23  were different names of the employer because different

24  security firms got the contract but you were there from

25  2015 until 2020; is that --

**JSA-163**

7

Proceedings

1          MR. SMART:  Yeah, yes, yes.  It's how we did --

2    we had -- we had about five -- five different security

3    companies, replacing one another.

4          THE COURT:  Okay.  So now I am going to ask you

5    the question that Mr. Capogrosso wrote at number 5, this

6    is on document 149-1.  He asked, who told you to approach

7    Mario Capogrosso on the morning of May 11th, 2015?

8          MR. SMART:  Nobody -- nobody told me anything.

9    He was -- he was -- he -- he -- he came in.  I was really

10   by the door, he came in -- he came in aggressively,

11   raised his hand up and went to the line and then

12   continuously looking at me, you know?

13          So I am looking and looking, we were looking at

14   each other, and so -- and I say -- I say, wait a minute,

15   let me do -- what's going on here?  So I went -- I said

16   oh, why are you looking at me?  You see, I'm the one that

17   looking at him.  I said you are looking at me so like you

18   want to start something.  He say I was -- I was the one

19   that was looking at him.

20          You know, all of the sudden -- all of the

21   sudden, I was shocked though because I was knowing -- I

22   was knowing for a long time.  I was shocked.  He just

23   punched me in the chest and I had to hold onto the rail.

24   I had to hold onto the rail and then some police officer

25   came, everybody came around.  Then they say hey, you ave

**JSA-164**

8

Proceedings

1  to do something about this guy.  So I -- I say no, I'm

2  going to go and -- Danielle (ph.) came to me and said

3  what happened.  I said, my -- my response was say well go

4  61 on him, so I went to 6-0, I got 6-1 on him and two

5  police officers came with me, not too long, they came

6  with me.  Then they wanted to talk to him and he was

7  nowhere around.  They waited for quite a while and trying

8  to be -- they look around.  I checked -- they checked the

9  restroom.  They checked many other places.  He wasn't

10  anywhere on the ground.  He was gone.

11         THE COURT:  Okay.

12         MR. SMART:  And then they told me that the only

13  thing I can do, I can contact the One Police Plaza.  I

14  went back to the 6-0 and they gave me a form to fill out

15  and I sent out the -- the -- to One Police Plaza and One

16  Police Plaza sent me a response that -- they -- they

17  going to have a conversation with him or I was going to

18  say, or they're going to send me a letter and the rest

19  was history.

20         THE COURT:  Mr. Smart, I'm going to ask you

21  question number 6 which is similar to question number 5.

22  Did defendant Alan Gelbstein, defendant Ida Trachin,

23  defendant Danielle Calvo and/or Boshra Vahdat, tell you

24  to approach Mr. Capogrosso on the morning of May 11th,

25  2015?

**JSA-165**