# 22-2827

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

❖❖❖

MARIO H. CAPOGROSSO,

*Plaintiff-Counter-Defendant-Appellant,*

—against—

ALAN GELBSTEIN, in his official and individual capacity, IDA TRASCHEN, in her official and individual capacity, DANIELLE CALVO, in her official and individual capacity, PEC GROUP OF NY, INC., MARK J.F. SCHROEDER, COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES,

*Defendants-Appellees,*

DAVID SMART, SADIQ TAHIR,

*Defendants-Counter-Claimants-Appellees,*

BOSHRA VAHDATLAMAS, in her official and individual capacity, AKA BUSHRA VAHDAT, ELIZABETH PRICKETT-MORGAN, in her official and individual capacity, JEAN FLANAGAN, in her official and individual capacity, VINCENT PALMIERI, in his official and individual capacity, JOHN and JANE DOE,

*Defendants.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE DAVID SMART

SHARON KATZ
AMELIA T.R. STARR
ANDREI GRIBAKOV JAFFE
ANNA LEE WHISENANT
YAO CHEN
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant-Appellee
David Smart*

# TABLE OF CONTENTS

PAGE

STATEMENT OF JURISDICTION................................................................1

STATEMENT OF ISSUES ..........................................................................1

SUMMARY OF ARGUMENT .....................................................................1

STATEMENT OF THE CASE......................................................................3

    A.  Factual History ............................................................................3

    B.  Procedural History .....................................................................10

    C.  The District Court Opinion .........................................................13

LEGAL STANDARD ...............................................................................15

ARGUMENT ..........................................................................................16

I.     The Record Does Not Support Appellant's Claims ......................16

    A.  Appellant Has Failed to Show That Mr. Smart Was a State Actor Under 42 U.S.C. § 1983 ...............................................16

    B.  Mr. Smart's Actions Did Not Violate Plaintiff's First Amendment Rights ...................................................................25

II.    Appellant's Discovery Challenges Are Untimely and Meritless .................29

    A.  Appellant Waived Appellate Review of the Challenged Discovery Orders ......................................................................30

    B.  Neither the District Court Nor the Magistrate Judge Abused Their Discretion ...............................................................31

CONCLUSION ........................................................................................37

# TABLE OF AUTHORITIES

_____

PAGE(S)

CASES

*Abdullahi v. Pfizer, Inc.*,
  562 F.3d 163 (2d Cir. 2009) ............................................................ 17

*Abu-Nassar v. Elders Futures, Inc.*,
  No. 88 Civ. 7906 (PKL), 1994 WL 445638 (S.D.N.Y Aug. 17, 1994) .......... 31

*In re Agent Orange Prod. Liab. Litig.*,
  517 F.3d 76 (2d Cir. 2008) ....................................................... 32, 33

*Applegate v. Top Assocs., Inc.*,
  425 F.2d 92 (2d Cir. 1970) ...................................................... 26, 29

*Atkinson v. B.C.C. Assocs.*,
  829 F. Supp. 637 (S.D.N.Y. 1993) ............................................. 19, 21

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001) ................................................................... 18

*Caidor v. Onondaga County*,
  517 F.3d 601 (2d Cir. 2008) ........................................................ 30

*Curley v. Village of Suffern*,
  268 F.3d 65 (2d Cir. 2001) ...................................................... 27, 28

*Doninger v. Niehoff*,
  642 F.3d 334 (2d Cir. 2011) ........................................................ 15

*Douglas v. Bughrara*,
  590 F. App'x 99 (2d Cir. 2015) ..................................................... 31

*Fappiano v. City of New York*,
  640 F. App'x 115 (2d Cir. 2016) ................................................... 35

*Fischer v. Forrest*,
  968 F.3d 216 (2d Cir. 2020) ........................................................ 31

*Fisk v. Letterman*,
  401 F. Supp. 2d 362 (S.D.N.Y. 2005) ............................................. 23

*In re Fitch, Inc.*,
    330 F.3d 104 (2d Cir. 2003) ............................................................... 35

*Fletcher v. Wal-Mart Stores, Inc.*,
    No. 05 Civ. 1859 (WHP), 2006 WL 2521187
    (S.D.N.Y. Aug. 28, 2006) ......................................................... 20, 21

*Gallagher v. "Neil Young Freedom Concert"*,
    49 F.3d 1442 (10th Cir. 1995) ........................................................ 20

*Garcia v. Hartford Police Dep't*,
    706 F.3d 120 (2d Cir. 2013) (per curiam) ....................................... 15

*Gill v. Pidlypchak*,
    389 F.3d 379 (2d Cir. 2004) ........................................................... 26

*Gordon v. Emmanuel*,
    No. 15-CV-2439 (CBA) (SJB), 2018 WL 4688935
    (E.D.N.Y. Sep. 28, 2018) .............................................................. 24

*Grogan v. Blooming Grove Volunteer Ambulance Corps*,
    768 F.3d 259 (2d Cir. 2014) ........................................................... 19

*Guiducci v. Kohl's Dep't Stores*,
    320 F. Supp. 2d 35 (E.D.N.Y. 2004) ....................................... 17, 22

*Herbert v. Lando*,
    441 U.S. 153 (1979) ...................................................................... 33

*Jackson v. Metro. Edison Co.*,
    419 U.S. 345 (1974) ...................................................................... 19

*Jeanty v. Cerminaro*,
    2023 WL 325012 (2d Cir. Jan. 20, 2023) ....................................... 31

*Jones v. Hirschfield*,
    219 F.R.D. 71 (S.D.N.Y. 2003) ..................................................... 33

*Josey v. Filene's, Inc.*,
    187 F. Supp. 2d 9 (D. Conn. 2002) ............................................... 17

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    336 F.R.D. 400 (S.D.N.Y. 2020) .................................................. 32

*Long Island Lighting Co. v. Barbash*,
779 F.2d 793 (2d Cir. 1985) ............................................................... 33

*Lowery v. Home Depot*,
No. 13-CV-3957 (JPO), 2014 WL 5151402 (S.D.N.Y. Oct. 14, 2014) ......... 23

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921 (2019) .......................................................... 17, 22

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013) ............................................................. 15

*Matsushita Elec. Indus. Co v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................................................ 15

*McKinney v. City of Middletown*,
49 F.4th 730 (2d Cir. 2022) .............................................................. 15

*Meadows v. United Servs.*,
963 F.3d 240 (2d Cir. 2020) ............................................................. 17

*Opals on Ice Lingerie v. Bodylines Inc.*,
320 F.3d 362 (2d Cir. 2003) ............................................................. 16

*Paddington Partners v. Bouchard*,
34 F.3d 1132 (2d Cir. 1994) ................................................... 31, 32, 37

*Pippins v. KPMG LLP*,
759 F.3d 235 (2d Cir. 2014) ............................................................. 16

*Prowisor v. Bon-Ton, Inc.*,
426 F. Supp. 2d 165 (S.D.N.Y. 2006) ......................................... 20, 21

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982) ........................................................................ 19

*Rojas v. Alexander's Dep't Store, Inc.*,
654 F. Supp. 856 (E.D.N.Y. 1986) ................................................... 18

*Scotto v. Almenas*,
143 F.3d 105 (2d Cir. 1998) ............................................................. 24

*Shumway v. United Parcel Serv., Inc.*,
118 F.3d 60 (2d Cir. 1997) ....................................................... 25, 28

iv

*Simmons v. County of Suffolk,*
No. 14-CV-3884 (JS)(ARL), 2015 WL 5794347 ........................................... 23

*Stewart v. Victoria's Secret Stores, LLC,*
851 F. Supp. 2d 442 (E.D.N.Y. 2012) ....................................... 23, 24

*In re Subpoena Issued to Dennis Friedman,*
350 F.3d 65 (2d Cir. 2003) ................................................ 33

*Sybalski v. Indep. Grp. Home Living Program, Inc.,*
546 F.3d 255 (2d Cir. 2008) ..................................... 18, 19

*Tancredi v. Metro. Life Ins. Co.,*
316 F.3d 308 (2d Cir. 2003) ............................................ 16

*Temple v. Albert,*
719 F. Supp. 265 (S.D.N.Y. 1989) .......................................... 18, 21

*Valaire v. City of Schenectady,*
862 F. Supp. 774 (N.D.N.Y.1994) ................................... 20

*Wade v. Byles,*
83 F.3d 902 (7th Cir. 1996) ...................................... 20, 21

*Watson v. Grady,*
No. 09-cv-3055 (NSR), 2015 WL 2168189 (S.D.N.Y. May 7, 2015) ........... 24

*Weinstock v. Columbia Univ.,*
224 F.3d 33 (2d Cir. 2000) ................................. 16, 24, 28

*Wills v. Amerada Hess Corp.,*
379 F.3d 32 (2d Cir. 2004) ........................................... 16

*Wolff v. State Univ. of N.Y. Coll. at Cortland,*
No. 1:13-CV-1397 (BKS/CFH), 2016 WL 9022503
(N.D.N.Y. Feb. 5, 2016) ............................................... 24

## Statutes & Rules

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1331 ......................................................................... 1

42 U.S.C. § 1983 ................................................................. *passim*

42 U.S.C. § 1985 ................................................................. 1, 10

42 U.S.C. § 1986 ................................................................. 1, 10

42 U.S.C. § 1988 ................................................................. 1, 10

Fed. R. Civ. P. 26(c) ........................................................... 33

Fed. R. Civ. P. 56(a) ........................................................... 15

Fed. R. Civ. P. 72(a) ........................................................... 30

## STATEMENT OF JURISDICTION

Plaintiff–Appellant Mario H. Capogrosso brought this suit under

42 U.S.C. §§ 1983, 1985, 1986, and 1988 in the United States District Court for the

Eastern District of New York.  The District Court has jurisdiction over the subject

matter pursuant to 28 U.S.C. § 1331.  This Court has jurisdiction pursuant to

28 U.S.C. § 1291, as this appeal arises from the District Court's final order on

September 29, 2022 (Komitee, J.) granting the motion for summary judgment filed

by Defendant–Appellee David Smart.  The Notice of Appeal was timely filed on

October 28, 2022.

## STATEMENT OF ISSUES

1.      Did the District Court Correctly Hold that There Was No Material
Dispute that Mr. Smart Was Not a State Actor?

2.      Does the Record Show There Was No Material Dispute that
Mr. Smart Did Not Violate Appellant's Constitutional Rights?

3.      Did Appellant Waive His Discovery Challenge that He Should Have
Been Permitted to Depose Mr. Smart?

4.      Did the District Court and the Magistrate Judge Correctly Exercise
Discretion in Rejecting Appellant's Discovery Challenges?

## SUMMARY OF ARGUMENT

Defendant–Appellee David Smart, a former private security guard, has been

caught in the crossfire between Appellant and numerous administrative law judges,

supervisors, attorneys, and others (the "State Defendants") since 2018.  Appellant

alleges that Mr. Smart was complicit in the State's 2015 decision to ban Appellant

from practicing law at Traffic Violations Bureaus for the State of New York Department of Motor Vehicles. Having lost on that theory before the District Court, Appellant now recycles the same arguments before this Court.

But the record has not changed. To prevail on a § 1983 claim, Appellant must present evidence that Mr. Smart was a state actor. There is no such evidence. Nothing in the record supports a conclusion that Mr. Smart was acting under the control of, or at the behest of, the State during his interaction with Appellant on May 11, 2015. Thus, Appellant's claims against Mr. Smart fail. Even if Mr. Smart were a state actor (he was not), the record is devoid of *any* evidence that he retaliated against Appellant in violation of Appellant's First Amendment rights. To the contrary, the undisputed facts demonstrate that Mr. Smart's actions and interactions with Appellant did not constitute retaliation and were not made with the intent to chill Appellant's exercise of his First Amendment rights.

Lastly, this Court should reject Appellant's untimely collateral attack on the Magistrate Judge's discovery orders below. Despite multiple opportunities to contest the discovery rulings at the District Court level, Appellant never timely did so. In any event, Appellant's discovery challenges are meritless. Neither the District Court nor the Magistrate Judge abused their discretion. The District Court correctly refused to consider Appellant's supplementary objections to the Magistrate Judge's report and recommendation. And the Magistrate Judge

correctly limited Appellant's discovery from Mr. Smart to interrogatories based on Appellant's history of "bad blood" with Mr. Smart and improper behavior to various State Defendants before and during the litigation.  Moreover, Appellant had an opportunity to question Mr. Smart, and has consistently failed to allege what new discovery he could obtain from Mr. Smart if he were given the opportunity to further depose him.

For all these reasons, this Court should affirm the District Court's judgment.

## STATEMENT OF THE CASE

### A.    Factual History

From 2007 to 2016, Mr. Smart worked as a security guard for the private security firm PEC Group of NY, Inc. ("PEC").  (J.S.A. 163–64, 191.)[1]  For much of his employment with PEC, including throughout the entirety of the relevant period, Mr. Smart was assigned to the Brooklyn South location of the Traffic Violations Bureau (the "TVB"), the administrative tribunal for the New York State Department of Motor Vehicles (the "DMV").  (J.S.A. 163–64.)  In his role as a private security guard at the TVB, Mr. Smart performed ministerial tasks, such as opening and closing the TVB and putting up the case calendar for the day. (J.S.A. 289–90.)

---

[1] Citations in the form "J.S.A. __" are to the Joint Supplemental Appendix submitted with the Appellees' briefs.  Citations in the form "A-__" are to the Appendix and "SA-__" are to the Special Appendix, both submitted with Appellant's opening brief ("App. Br.").

Mr. Smart became acquainted with Appellant through the TVB. (J.S.A. 289–90.) Appellant is an attorney and represented motorists at traffic violation hearings at the TVB from 2005 through 2015. (J.S.A. 263.) Appellant primarily practiced at the Brooklyn South location. (J.S.A. 264.)

### 1. Appellant's 2011 Suspension and Eventual Reinstatement

Other attorneys, staff, and even the judges at the TVB frequently complained about Appellant. (*See, e.g.*, J.S.A. 280 (Appellant acknowledging that TVB administrators "had [received] complaints against [him] from the clerical staff"); J.S.A. 218 (TVB employee complaining that Appellant was "yelling, cursing and insulting [her]" and "would walk past [her] station making comments and smirking").) Although the complaints largely centered on Appellant's reported lack of professionalism, several accused Appellant of engaging in threatening, and, at times, physically violent, behavior. (*See, e.g.*, J.S.A. 216 (report from a TVB employee complaining that Appellant was "screaming and yelling profanities" at another employee and "walk[ed] fast and hard toward her . . . bump[ing] real hard into her"); J.S.A. 219 (report from another attorney who practiced at the TVB complaining that Appellant "turned to [her] and called [her] a variety of vulgar and profane names and threatened [her] with violence to stay away from the Dep[artment] of Motor Vehicles").)

4

On December 21, 2011, while in the lawyers' room at the TVB, Appellant

reportedly had a disagreement with Yaakov Brody, an attorney who also represents

motorists in traffic violation hearings.  (J.S.A. 224.)  A different attorney described

the incident:

> Mr. Yaakov Brody was sitting on the bench in the lawyers'
> room.  [Appellant] walked into the room and said "excuse
> me."  Mr. Brody moved to the side so that [Appellant]
> could reach to his bag lying on the floor.  He was looking
> so angry that he again said "excuse me" in a loud voice.
> Mr. Brody said you have enough room, why are you so
> rude.  [Appellant] got so upset that he started shouting
> against Jews. . . . Later, [an employee] came in the room
> and asked [Appellant] that he should apologize for his
> remarks. . . . [Appellant] said to [that employee] that I will
> send you to the hospital. . . . [Appellant] went out of the
> room and started hitting the wall and steel guards.

(*Id.*)  Appellant maintains that he did not punch the steel guards and did not engage

in any inappropriate conduct in the public spaces at the TVB.  (J.S.A. 284.)  It was

also reported that Appellant threw his coffee cup at Mr. Brody, (J.S.A. 221–23),

but Appellant maintains that he "threw a cup, an empty cup . . . in a garbage can

that [Mr.] Brody was sitting next to" (J.S.A. 283).

The next day, December 22, Appellant was indefinitely suspended from

practicing at the TVB in light of the repeated complaints about his alleged

misconduct and unprofessionalism.  (J.S.A. 229.)

Appellant retained an attorney and initiated an administrative proceeding

against the State to have his suspension lifted.  (J.S.A. 303–12; *see also* J.S.A.

5

253.)  The parties resolved the matter and agreed that Appellant would be readmitted to practice at the TVB if he attended an anger management course. (J.S.A. 287.)  Appellant completed the course and was reinstated in June 2012; however, the State cautioned Appellant that "he must strictly adhere to the standards of conduct required of attorneys appearing before State courts" and that "[t]hreatening conduct . . . , verbal threats of violence, and verbal abuse[,] including the use of ethnic slurs w[ould] not be tolerated." (J.S.A. 182.)  Future misconduct, the State warned, could lead to permanent disbarment from the TVB. (*Id.*)

Despite the State's clear admonition that unprofessional conduct would not be tolerated, the TVB continued to receive complaints about Appellant's behavior. (*See, e.g.*, J.S.A. 239–47.)  For instance, in February 2015, a motorist who Appellant had unsuccessfully represented asked him for a refund.  (J.S.A. 239.) Appellant "told [the motorist] to go f--- [him]self and that we can take it outside." (*Id.*)  Later that same month, an employee complained that Appellant told her, for no apparent reason, to "stick it where the sun don't shine."  (J.S.A. 241.)

Indeed, Mr. Smart himself is one of the many motorists, employees, and contractors working at the TVB who has complained about Appellant's behavior.

6

For instance, on February 3,[2] Mr. Smart filed a complaint that Appellant "deliberately walked into [him]." (J.S.A. 233.)

### 2. Appellant's Complaints About "Dave Sparks"

After Appellant was reinstated, he began complaining about Mr. Smart. Appellant's first run-in with Mr. Smart was in June 2012. (J.S.A. 288.) He accused Mr. Smart of pushing him from behind, unprovoked. (*Id.*) Administrative Law Judge Alan Gelbstein (a judge at the Brooklyn South TVB) reviewed the security camera footage and determined there was no need to take any further action. (*Id.*)

On March 20, 2015, Appellant sent a letter to Assistant Attorney General Elizabeth Prickett-Morgan, complaining about "Dave Sparks" and Judge Gelbstein's complicity in "Sparks's" behavior.[3] (J.S.A. 297.) He complained that he was not being treated the same as other lawyers practicing at the TVB, and that Judge Gelbstein was ignoring his complaints about Sparks. (*Id.*)[4]

---

[2] The complaint indicates the month and day, but not the year, of this incident. (J.S.A. 233.)

[3] At his deposition, Appellant clarified that he meant to refer to Appellee David Smart, but he "didn't know his name" at the time he authored the letter, so he mistakenly called him "Dave Sparks." (J.S.A. 297.)

[4] Mr. Capogrosso never received a response to his letter. (J.S.A. 265.)

### 3. Appellant Is Permanently Barred from Practicing at TVBs

Over the years, Appellant's reported unprofessionalism escalated. On May 5, 2015, he got into an altercation with Sadiq Tahir, another attorney who practiced at the TVB, in the lawyers' room. (J.S.A. 298.) The incident started with a disagreement over whether Mr. Tahir had been using a chair on which Appellant had placed his bag. (*Id.*) Mr. Tahir tried to move the bag, and Appellant told Mr. Tahir to "leave [his] bag alone."[5] (*Id.*) Incensed (and seeming to recognize that he could be suspended from practicing at the TVB if he overreacted), Appellant began ranting about Judge Gelbstein and an attorney who had previously practiced at the TVB but had been "thrown out." (*Id.*) Four witnesses, including other attorneys and staff at the TVB, filed reports about Appellant's rant, noting that Appellant was yelling "obscenities and threats," and that "customers were upset." (J.S.A. 299; *see also* J.S.A. 245.) Danielle Calvo, a supervisor at the TVB, reported this incident to the DMV's Division of Labor Relations. (J.S.A. 199–200.)

Less than a week later, on May 11, Appellant got into yet another altercation, this time with Mr. Smart. (J.S.A. 296.) The exact details of the interaction are unclear, but Appellant stated that Mr. Smart came into the TVB and

---

[5] It is reported that Mr. Capogrosso told Mr. Tahir "to not touch his f------ stuff," but Mr. Capogrosso denies "us[ing] those words." (J.S.A 298.)

"g[ot]" in Appellant's face. (J.S.A. 281.)  Mr. Smart, for his part, reported that

Appellant instigated the altercation. (J.S.A. 202.)  Mr. Smart stated that Appellant

asked him, unprovoked, "Are you looking at me?" and Mr. Smart responded, "You

are looking at me." (*Id.*)  Then, Appellant replied, "back up, back up" and "pushed

[Mr. Smart] in his chest." (*Id.*)  The witness statements corroborate Mr. Smart's

telling of events.  For instance, one of the witnesses reported that Appellant "yelled

at and pushed Mr. Smart" and "knocked [Mr. Smart] back into a pole." (J.S.A.

203.)

Police were called and two officers responded to the incident. (J.S.A. 202.)

Mr. Smart left the TVB with the officers and went to the precinct to file an official

report. (*Id.*)  The officers declined to arrest Appellant "because he pushed

[Mr. Smart] with an open hand not a closed fist." (*Id.*)

Judge Gelbstein directed Ms. Calvo "to go with officers from the police

room to tell Appellant that he must leave the building, and to give him legal's

phone number for any further details." (*Id.*)  There is no record evidence

suggesting that Mr. Smart was involved in the decision to ask Appellant to leave

the TVB or in the actual process of asking Appellant to leave the TVB.  Indeed, at

his deposition, Appellant conceded that only Judge Gelbstein, Ms. Calvo, and

Ida Traschen, counsel in the DMV's Legal Bureau, were involved in the decision

to have Appellant removed from the building in the aftermath of the incident:  he

9

testified that he was removed because "Danielle Calvo makes a call to Judge Gelbstein.  Gelbstein calls Traschen, and Traschen tells Calvo to have me removed."  (J.S.A. 266.)

Following these back-to-back incidents, Appellant was permanently suspended from practicing law at the TVB.  (J.S.A. 183.)  Again, there is no evidence that Mr. Smart was involved in the decision to suspend Appellant, nor is there evidence that could he have been, as he was not a TVB employee (let alone an employee with decisionmaking authority).  Even Appellant acknowledges this. On June 20, 2016, Appellant wrote to Ms. Prickett-Morgan complaining that he had "been improperly excluded from practicing law at the Department of Motor Vehicles Traffic Violations Tribunals" by three individuals:  Judge Gelbstein, Judge Bushra Vahdat, and Ms. Traschen.  (*Id.*)

### B.  Procedural History

On May 8, 2018, Appellant filed the underlying action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, alleging that Mr. Smart, as well as the State Defendants, violated his First Amendment and Due Process rights by unlawfully conspiring to ban him from entering—and practicing law at—the TVBs.  (J.S.A. 1–24.)  Appellant alleged that Mr. Smart violated his First Amendment rights because the actions of Mr. Smart and other defendants "in arbitrarily barring Plaintiff from practicing his profession in all of the TVB Court

10

. . . were motivated or substantially caused by Plaintiff's exercise of his First Amendment rights." (J.S.A. 17.)  In addition, Appellant included Mr. Smart in the header of the second cause of action, a purported due process claim.[6]  (*Id.*) Mr. Smart, proceeding *pro se*, filed his answer on May 30, 2018.  (A-7.)

On December 10, 2020, Appellant moved to compel Mr. Smart to respond to Appellant's interrogatories, and to provide an email address or telephone number so that Appellant could depose Mr. Smart.  (SA-76.)  On December 16, 2020, Magistrate Judge Bloom denied Appellant's request to compel production of an email or telephone number and deferred ruling on compelling interrogatory responses because Appellant did not provide copies of the interrogatories to the District Court.  (J.S.A. 143–45.)

Appellant moved to compel again on December 22, 2020, seeking the same relief and attached a copy of the interrogatories.  (A-7.)  On January 13, 2021, Magistrate Judge Bloom denied in part, and granted in part, the second motion to compel, ordering Mr. Smart to respond to Appellant's interrogatories.[7]

(J.S.A. 153–55.)  Appellant never objected to this order in the District Court.

---

[6] Although Appellant included Mr. Smart in the caption for his due process allegations, he did not identify which, if any, of Mr. Smart's actions constituted a violation of Appellant's due process rights.  (*See generally* J.S.A. 1–24.)

[7] Magistrate Judge Bloom declined "to revisit th[e] issue" of "plaintiff's motion to compel defendant Smart to provide plaintiff with an email address or phone number to conduct his deposition remotely" because she had previously denied it.  (J.S.A. 154.)  Magistrate Judge Bloom further concluded that "there is bad blood between Capogrosso and Smart," that "Smart's

11

Also on January 13, 2021, and 28 days after Magistrate Judge Bloom's December 16, 2020 order (J.S.A. 143–45), Appellant filed a belated motion for reconsideration with the District Court (J.S.A. 148–50).

On February 25, 2021, after Appellant filed a motion for sanctions because Mr. Smart had yet to respond to Appellant's interrogatories, Magistrate Judge Bloom set a March 16, 2021 conference date and ordered Mr. Smart to appear and respond to Appellant's interrogatories under oath orally on the record. (J.S.A. 156–57.)  Appellant never objected to this order in the District Court.

On March 16, 2021, Magistrate Judge Bloom held a conference. (J.S.A. 158.)  Mr. Smart responded to Appellant's interrogatories under oath and on the record.   (J.S.A. 162–68.)  Magistrate Judge Bloom denied Appellant's request to ask follow-up questions.  (*Id.*)  Appellant never objected to this ruling in the District Court.

Mr. Smart obtained limited-scope pro bono representation and, on May 17, 2023, filed a motion for summary judgment.  (A-27–28.)  Appellant opposed the motion on June 29, 2021.  (*Id.* at 32.)  Mr. Smart filed his reply on September 8, 2021.  (*Id.* at 34.)

---

responses to plaintiff's written interrogatories will be sufficient" and declined to "compel Smart to appear for a deposition under these circumstances."  (*Id.*)  However, Magistrate Judge Bloom ordered Mr. Smart to respond to Appellant's interrogatories.  (J.S.A. 154–55.)

In her Report and Recommendation dated February 1, 2022 (the "R&R"), Magistrate Judge Bloom recommended that the District Court grant Mr. Smart's motion for summary judgment. (J.S.A. 324–43.) Appellant filed objections to the R&R on February 14 and 16, 2021. (A-36.) Mr. Smart opposed Appellant's objections on March 3, 2022. (*Id.*) On September 29, 2022, the District Court adopted the R&R, denied Appellant's objections, and granted Mr. Smart's motion for summary judgment. (J.S.A. 344–52.)

Appellant timely appealed on October 25, 2022. (A-37.)

### C.   The District Court Opinion

In the R&R, Magistrate Judge Bloom concluded that Mr. Smart was indisputably a *private* security guard who was not acting under color of state law and thus could not be liable under Section 1983.[8] (J.S.A. 340–41.) In so concluding, Magistrate Judge Bloom rejected Appellant's argument that Mr. Smart was a state actor because Mr. Smart had called the police and in response to the May 11, 2015 incident and thus "was in fact a participant in the occurrences and decision that led to [Appellant's] administrative removal and preclusion from return[ing] to the TBV building." (*See* J.S.A. 341.) Magistrate Judge Bloom

---

[8] Mr. Smart also argued that he could not be liable under Appellant's First Amendment claims, even if Mr. Smart were deemed a state actor. The R&R did not reach this argument because Mr. Smart did not qualify as a state actor and thus could not be subject to the First Amendment claim. (J.S.A. 340.)

13

found this argument meritless because "[m]ere participation in an event that led to a state action does not confer the authority of state law on Smart," particularly since "[Mr.] Smart was not even involved with removing [Appellant] from the TVB." (J.S.A. 341–42.)

Magistrate Judge Bloom further determined that Appellant's "self-serving affidavit that merely reiterate[d] conclusory allegations in affidavit form" was insufficient "evidence to support his theory that [Mr.] Smart was in the decision to bar him from the TVB." (J.S.A. 342.) Appellant thus "fail[ed] to establish that [Mr.] Smart was involved in the decision to bar [Appellant] from the TVB." (*Id.*)

Appellant lodged over 65 pages of objections to the R&R across two filings. (A-36.) The District Court found most of these objections to be "disorganized and conclusory" and overruled them as meritless without further analysis. (*See* J.S.A. 350.) However, in its Memorandum and Order adopting the R&R, the District Court specifically addressed—and rejected—Appellant's contention that Mr. Smart "act[ed] under color of state law when he allegedly participated in [Appellant's] removal from the TVB premises." (J.S.A. 346.) The District Court adopted the R&R's twin conclusions that (1) Mr. Smart was not acting under color of state law when he called the police on Appellant; and (2) Appellant failed to present any competent evidence that Mr. Smart's actions were compelled by the

14

state "or that he participated in the later decision to bar [Appellant] from the TVB."

(J.S.A. 348–49.)

## LEGAL STANDARD

This Court reviews de novo a district court's grant of a motion for summary

judgment. *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013)

(per curiam). Summary judgment is proper when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law,"

*Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P.

56(a)), and a court on review must "construe the evidence in the light most

favorable to the non-moving party and draw all reasonable inferences in its favor,"

*McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022) (internal

quotation marks and citation omitted).[9] No genuine dispute of material fact exists

when "the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party." *Id.* at 737–38 (internal quotation marks and citation

omitted). To defeat a motion for summary judgment, the nonmovant needs to "do

more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986). "The mere existence of a scintilla of evidence in support of the non-

---

[9] Appellant conflates the applicable standard for summary judgment with that for a motion to dismiss. (*See* App. Br. 6, 19, 31.)

movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013). "[U]nsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). As such, neither "conclusory statements, conjecture, or speculation," nor "fanciful, frivolous, gauzy, spurious, [or] irrelevant" facts are sufficient to defeat summary judgment. *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003).

This Court reviews a district court's discovery rulings for abuse of discretion. *Pippins v. KPMG LLP*, 759 F.3d 235, 251 (2d Cir. 2014). A "trial court enjoys wide discretion in its handling of pre-trial discovery," and this Court will "reverse a district court's discovery ruling only upon a clear showing of an abuse of discretion." *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 51 (2d Cir. 2004).

## ARGUMENT

### I. The Record Does Not Support Appellant's Claims

#### A. Appellant Has Failed to Show That Mr. Smart Was a State Actor Under 42 U.S.C. § 1983

A plaintiff asserting a claim under § 1983 for deprivation of a constitutional right is "required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (explaining that the "under color of law" requirement for § 1983 has been consistently treated as "state action" under the Fourteenth

16

Amendment).  For a private individual or entity to be acting "under color" of state law, the alleged wrongful conduct must be "fairly attributable to the state."  *Id.* (internal quotation marks and citation omitted); *see also Meadows v. United Servs.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action requires both the exercise of some right or privilege created by the State and the involvement of a person who may fairly be said to be a state actor." (cleaned up)); *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 211 (2d Cir. 2009) ("[I]n most cases, a finding of state action must be premised upon the fact that the State is responsible for that specific conduct." (internal quotation marks omitted)).  A private entity can qualify as a state actor in a few limited circumstances:  "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity."  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (citations omitted).

Here, Appellant has failed to show that Mr. Smart was a state actor under § 1983.  District courts in this Circuit have held with near uniformity that the acts of private security guards generally do not constitute state action for purposes of § 1983, and district courts have found otherwise in only two circumstances:  when a security guard is "given the authority of state law," or when a security guard is a "willful participant[] in the joint activity of the State or its agents."  *Guiducci v.*

17

*Kohl's Dep't Stores*, 320 F. Supp. 2d 35, 37 (E.D.N.Y. 2004) (citing *Josey v. Filene's, Inc*., 187 F. Supp. 2d 9, 16 (D. Conn. 2002)). Neither of those circumstances applies here: Mr. Smart was a private security guard that was never given any state authority, and there is no evidence that he was a willful participant in joint activity with the State.[10] As such, the District Court was correct in concluding that Appellant's § 1983 claim against Mr. Smart must fail.

### 1. Mr. Smart Was a Private Security Guard Who Had No State Authority

A private security guard might be deemed a state actor when acting with delegated state authority to assume police powers. *See Temple v. Albert*, 719 F. Supp. 265, 267 (S.D.N.Y. 1989) (finding officers to be state actors where they were designated as "Special Patrolmen" by the city police commissioner under the city's administrative code); *Rojas v. Alexander's Dep't Store, Inc.*, 654 F. Supp. 856 (E.D.N.Y. 1986) (finding a store security guard to be a "state actor" who had been sworn in as a special patrolman by the city police department and served as a quasi-peace officer). As with other private entities, a private security guard might also be deemed a state actor if delegated by the state the authority to perform a public function. *See Sybalski v. Indep. Grp. Home Living Program*, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (noting that the actions of a nominally private entity are

---

[10] Appellant does not contend that Mr. Smart's actions were "compelled" by the State. In any case, the record is devoid of any evidence so suggesting.

attributable to the state "when the entity 'has been delegated a public function by the state'" (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). "Public function" refers to powers "traditionally *exclusively* reserved to the state." *Sybalski*, 546 F.3d at 259 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)) (holding that providing care for the mentally ill is not a "public function"). Therefore, a private party is not delegated with any public function merely by contracting with the government to provide services. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41 (1982) ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Atkinson v. B.C.C. Assocs.*, 829 F. Supp. 637, 646 (S.D.N.Y. 1993) ("The mere existence of a contract between a governmental agency and a private party is insufficient to create state action."). Instead, the activity that has been contracted out to the private entity need be one that "traditionally has been the exclusive, or near exclusive, function of the State." *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014) (internal quotation marks omitted) (holding that government contractors who provided medical care and general ambulance services were not state actors because such services are not "traditionally exclusive state functions"). Courts have found only a handful of activities to be an "exclusive, or near exclusive, function of the State," including

19

the provision of medical care for prison inmates, conducting local primary elections, animal control, and fire protection. *See id*. at 265 (collecting cases).

Calling the police or cooperating with a state official is not considered a public function. *See Fletcher v. Wal-Mart Stores, Inc.*, No. 05 Civ. 1859(WHP), 2006 WL 2521187, at *3 (S.D.N.Y. Aug. 28, 2006) ("A mere general understanding that security guards can call the police for assistance is insufficient to establish state action." (citing *Valaire v. City of Schenectady*, 862 F. Supp. 774, 777–78 (N.D.N.Y.1994))); *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 170–71 (S.D.N.Y. 2006) (concluding that a private security guard was not a state actor where he had merely called the police). Further, other Circuits have held that a security guard tasked with providing general security services such as "opening doors" is not a state actor, even when they perform such duties on public property. *See Wade v. Byles*, 83 F.3d 902, 906 (7th Cir. 1996) (noting that to meet the state action requirement, the activities must be "so closely associated with government that a state cannot limit its accountability for their performance, even if they are carried out by private parties"); *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1442, 1457 (10th Cir. 1995) (providing security services, including conducting pat-down searches, is not a public function even at a building leased from government).

Here, although Mr. Smart was working at a public building, there is no evidence that Mr. Smart was ever given any authority to act with police powers or to perform any public function. Appellant does not dispute that Mr. Smart was employed by the private security firm PEC at all relevant times. (*See* J.S.A. 8.) Although PEC contracted with the State to provide security services, there is no indication that the State delegated to the firm any police powers or designated any security guard like Mr. Smart as a "special patrolman." *See Atkinson*, 829 F. Supp. at 646 (holding that the mere existence of a contract between the state and a private entity is insufficient to create state action); *Temple*, 719 F. Supp. at 267 (holding that a private security guard may be a state actor when deputized as a "special patrolman"). The record shows that Mr. Smart's responsibilities as a security guard at the TVB were limited to ministerial activities such as opening and closing the building and setting out the calendar for the day. (*See* J.S.A. 190–91.) Such ministerial tasks are not "traditionally the exclusive prerogative of the state," and do not transform Mr. Smart into a state actor. *See Wade*, 83 F.3d at 906. As the District Court correctly observed, Appellant does not claim that Mr. Smart removed or arrested him, nor can he point to any evidence showing that Mr. Smart had the power to do so. Indeed, the record evidence shows only that Mr. Smart *called* the police to complain about Appellant, but that is not a public function and

does not transform a private security guard into a state actor. *See Fletcher*, 2006 WL 2521187, at *3; *Prowisor*, 426 F. Supp. 2d at 170–71.

In short, Mr. Smart was not a state actor because the undisputed evidence shows that he was a private security guard who had no state authority to assume police powers or to perform any "traditional, exclusive public function." *See Guiducci*, 320 F. Supp. 2d at 37.

### 2. Mr. Smart Was Not a Willful Participant in Any State Action

Mr. Smart also was not a state actor because he was not willfully involved in any state actions. *See Guiducci*, 320 F. Supp. 2d at 37; *see also Manhattan Cmty. Access*, 139 S. Ct. at 1928. Appellant identifies only two state actions in which he claims Mr. Smart was a willful participant: (1) calling the police to respond to the May 11, 2015 incident between himself and Appellant, and (2) the DMV's decision to bar Appellant from practicing before the TVB. (*See* App. Br. 12 (alleging that, during the May 11, 2015 incident, Mr. Smart "left the scene and filed a false report with the police," and that he "manufactured the confrontation under the tacit consent of Gelbstein to utilize the incident as a pretext to initiate administrative action against [Appellant]").) Even if these events happened as Appellant alleges (they did not), neither establishes that Mr. Smart was a state actor.

22

The record shows that, on May 11, 2015, Mr. Smart was at the receiving end of unsolicited verbal harassment and physical violence—including by being "knocked back into a pole"—from Appellant.  (*See* J.S.A. 203.)  Mr. Smart left the scene to talk to the police (*see id.*), and when the police arrived, Ms. Calvo directed Appellant to leave (*see* J.S.A. 187–88).  By the time Mr. Smart returned from the police station, Appellant had already left the building.  (*See* J.S.A. 164–65.)  There is no evidence that Mr. Smart acted in conjunction with the police or the TVB employees to remove Appellant from the building.  Indeed, Appellant implicitly concedes that Mr. Smart did nothing more than speak with the police.  (J.S.A. 266.)

Nor does the fact that Mr. Smart spoke with police transform him into a state actor.  District courts in this Circuit have uniformly held that "[t]he provision of information to or summoning of police officers, even if that information . . . results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983."  *Simmons v. County of Suffolk*, No. 14-CV-3884(JS)(ARL), 2015 WL 5794347, at \*5 (E.D.N.Y. Sep. 30, 2015) (collecting cases); *see also Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 446 (E.D.N.Y. 2012) (providing information to law enforcement does not make one a state actor even if the information is false); *Lowery v. Home Depot*, No. 13-CV-3957 (JPO), 2014 WL 5151402, at \*2 (S.D.N.Y. Oct. 14, 2014) ("[A]

private party who calls police officers for assistance or provides them with information that may lead to an arrest of an individual does not become a state actor rendering that party liable under § 1983." (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 367 (S.D.N.Y. 2005))).

As for the State's decision to bar Appellant from practicing before the TVB, Appellant argues that Mr. Smart was among the "accusers" who ultimately caused him to be barred, and that Mr. Smart "act[ed] under the guidance and instruction of the Administrate Law Judge" and "conspired with defendant Gelbstein" to permanently bar him from practicing before TVB.  (*See* App. Br. 9, 31.)  First, as explained above, the mere provision of information to a state actor does not turn the provider of such information into a state actor.  *See Stewart*, 851 F. Supp. 2d at 446; *Wolff v. State Univ. of N.Y. Coll. at Cortland*, No. 1:13-CV-1397 (BKS/CFH), 2016 WL 9022503, at *15 (N.D.N.Y. Feb. 5, 2016).  Second, as the District Court correctly observed, there is simply no evidence to support Appellant's barebone assertion that Mr. Smart acted under the instruction of or conspired with Judge Gelbstein in any way.  Appellant's "unsupported allegations do not create a material issue of fact."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000); *see also Gordon v. Emmanuel*, No. 15-CV-2439 (CBA) (SJB), 2018 WL 4688935, at *10 (E.D.N.Y. Sep. 28, 2018) ("[A] litigant may not rebut a summary judgment motion by providing 'unsubstantiated speculation to suggest' that

24

something 'untoward took place' during conversations between state and private actors." (quoting *Scotto v. Almenas*, 143 F.3d 105, 115 (2d Cir. 1998))); *Watson v. Grady*, No. 09-cv-3055 (NSR), 2015 WL 2168189, at *30 (S.D.N.Y. May 7, 2015) (granting summary judgment and dismissing § 1983 claims where the plaintiff "contend[ed] that [there] remain[ed] a factual dispute appropriate for jury determination, [but did] not point to any evidence that would support his contention").

As such, Appellant has failed to present sufficient evidence to allow a jury to find that Mr. Smart was a state actor under § 1983, and the District Court properly granted summary judgment to Mr. Smart, dismissing the claims against him.

### B. Mr. Smart's Actions Did Not Violate Plaintiff's First Amendment Rights

Even if Mr. Smart acted under color of state law (which he did not), the Court should still affirm the judgment below for an independent reason—the record lacks *any* evidence that Mr. Smart violated Appellant's constitutional rights. *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997) ("[A]n appellate court may affirm the judgment of the district court on any ground appearing in the record."). As Judge Bloom concluded, "there is *no* evidence in the record to support [Appellant's] conclusory assertions that Smart engaged in *any* retaliatory action against him." (J.S.A. 340.) This Court should thus affirm the judgment even if Mr. Smart was a state actor.

25

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) his conduct was protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by the plaintiff's exercise of that right; and (3) the defendant's actions chilled the plaintiff's free speech or caused the plaintiff some other concrete harm. *Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004). Appellant cannot rely on "conclusory allegations" and "unsupportable claims" to meet his burden. *Applegate v. Top Assocs., Inc.*, 425 F.2d 92, 96 (2d Cir. 1970) ("Summary judgment . . . is a valuable tool for piercing conclusory allegations and disposing of unsupportable claims prior to trial."). Appellant fails at prongs (2) and (3).

### 1. Mr. Smart's Actions Did Not Chill Plaintiff's Speech

First and foremost, there is nothing in the record to support that Mr. Smart engaged in *any* retaliatory action adverse to Appellant, let alone any action that caused a chilling of Appellant's speech. Where a private plaintiff brings a claim involving "criticism of public officials by private citizens," the plaintiff must demonstrate that the defendant's actions effectively chilled the exercise of his First Amendment right. *Gill*, 389 F.3d at 381. Based on the evidence in the record, Appellant cannot demonstrate that Mr. Smart's actions chilled his First Amendment rights.

26

According to Appellant, Mr. Smart "conspired with Defendants Gelbstein and Calvo . . . for the purpose of getting [Appellant] permanently barred from TVB" because "[Appellant] published a written complaint of and concerning [Mr. Smart's] conduct at the TVB regarding his aggressive behavior toward the Plaintiff." (J.S.A. 14.)  Discovery leaves these allegations completely bare.  As previously discussed, witness reports from the May 11, 2015 incident state that Appellant physically accosted Mr. Smart, after which police officers led Appellant out of the Brooklyn South TVB at the direction of Ms. Calvo.  (J.S.A. 202–04; *see also* J.S.A. 187–89.)  There is no suggestion that Mr. Smart in any way discussed this ban with the State Defendants, let alone engaged in a "conspiracy" to enact it.[11]

### 2. None of Mr. Smart's Actions Was Motivated by Plaintiff's Exercise of His First Amendment Rights

Nor can Appellant point to *any* evidence in the record to suggest that Mr. Smart's actions were motivated or substantially caused by Appellant's exercise

---

[11] Appellant concedes as much.  Indeed, in his Response to the State Defendants' Interrogatory Number 5, which asked to identify the basis for Appellant's contention "that each remaining defendant was personally involved in the decision to bar [Appellant] from practice before the TVB," Appellant does not even mention Mr. Smart—a tacit admission that Mr. Smart's actions played no role in any chilling of his speech.  (J.S.A. 180–81 (Response to Interrogatory Number 5).)  Further, in his June 20, 2016 letter to Ms. Prickett-Morgan alleging that he had been "improperly excluded" from practicing law at the TVBs, Appellant did not identify Mr. Smart on the lists of individuals he believed excluded him.  (J.S.A. 183.)

of his First Amendment rights. "Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

There is no such "specific proof" to support Appellant's allegation that Mr. Smart's actions were motivated by Appellant's letter to Ms. Prickett-Morgan complaining of a Mr. "Sparks." (*See* J.S.A. 14.) Indeed, Appellant does not allege, nor is there evidence to suggest, that Mr. Smart was even *aware* of the letter. (*See* J.S.A. 3.) Not only this, but the letter complained only of the conduct of a Mr. "Sparks," (*see* J.S.A. 322), and nothing in the record shows that Appellant told any defendant prior to litigation that he meant to refer to Mr. Smart (*see* J.S.A. 297). Simply put, absent knowledge of the complaint, it was functionally impossible for Mr. Smart to harbor the requisite "retaliatory" motive to sustain Appellant's claim.[12]

Here, Appellant offers nothing more than conclusory allegations in his complaint and in his deposition, with no basis in fact, that he was retaliated against and, thus, there is no evidence from which to create a genuine issue of material fact for trial. *See Weinstock.*, 224 F.3d at 41 (2d Cir. 2000) ("[U]nsupported

---

[12] Moreover, even if there had been evidence that Mr. Smart knew of the letter (which there is not), there is still no "specific proof" that his conduct on May 11, 2015 was born from retaliatory motives aside from Appellant's spurious and conclusory allegations, rendering appropriate summary judgment in favor of Mr. Smart. *See Curley*, 268 F.3d at 73.

allegations do not create a material issue of fact.")  As such, this Court may affirm the District Court's judgment on this basis alone.  *See Shumway*, 118 F.3d at 63.

### 3. Plaintiff's Due Process Claims Are Unsupported and Insufficiently Pled

Lastly, to the extent Appellant challenges summary judgment on the basis of his allegations against Mr. Smart for violations of Appellant's due process rights, such claims also fail.  Mr. Smart is named in the header of the second cause of action, a due process claim.  (*See* J.S.A. 17–18.)  But Appellant fails to identify in any document any specific basis for a due process claim against Mr. Smart. Without any evidence, or even any allegations, to support this claim, Mr. Smart is entitled to summary judgment as to any due process claim.  *See Applegate*, 425 F.2d at 96 (remarking that summary judgment is an appropriate means of disposing of unsupported allegations).

## II. Appellant's Discovery Challenges Are Untimely and Meritless

Having lost on the merits before the District Court, Appellant falls back on impermissibly attacking discovery rulings by the Magistrate Judge he never timely challenged below.  Appellant contends that the District Court "effectively denied [him] the ability to produce the requisite evidence necessary to overcome the defendants' motion for summary judgment" by preventing him from deposing Mr. Smart or the Commissioner of the DMV, Mr. Schroeder, and from questioning unidentified witnesses at the DMV.  (App. Br. at 23.)  Appellant's untimely

argument is waived.  And even if this Court were to consider such a belated

argument, Appellant cannot show any abuse of discretion by the District Court or

the Magistrate Judge.

### A.  Appellant Waived Appellate Review of the Challenged Discovery Orders

As a threshold matter, Appellant waived any appellate review of the

Magistrate Judge's discovery orders.  "[A] pro se litigant who fails to object timely

to a magistrate's order on a non-dispositive matter waives the right to appellate

review of that order, even absent express notice from the magistrate judge that the

failure to object within [fourteen] days will preclude appellate review."  *Caidor v.*

*Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008).  The discovery orders

Appellant now challenges are non-dispositive discovery matters governed by

Federal Rule of Civil Procedure 72(a).  *Id.* at 605.  However, Appellant never

objected within the 14-day limit imposed by Rule 72(a) to Magistrate Judge

Bloom's order denying Appellant's request to depose Mr. Smart.  Magistrate Judge

Bloom denied Appellant's requests on December 16 and January 13.  (*See*

J.S.A. 143–45, 153–55.)  Appellant's motion for reconsideration as to the

December 16 order was filed 28 days later, and nothing in Appellant's motion for

reconsideration, or indeed in any filing since, states that he was belatedly served

with the Magistrate Judge's December 16 order.  (J.S.A. 151–52.)  Nor did

Appellant ever timely object to the Magistrate Judge's January 13 order.  Because

Appellant failed to timely object under Rule 72(a) to the District Court, he waived "the right to appellate review of [these] orders." *Caidor*, 517 F.3d at 605; *see also Jeanty v. Cerminaro*, 2023 WL 325012, at *3 n.2 (2d Cir. Jan. 20, 2023) (same); *Douglas v. Bughrara*, 590 F. App'x 99, 99 (2d Cir. 2015) (same).

### B.    Neither the District Court Nor the Magistrate Judge Abused Their Discretion

Even if Appellant did not waive the right to appellate review of the challenged discovery rulings (and he did), there was no abuse of discretion by the District Court or the Magistrate Judge.

### 1.    The District Court Correctly Refused to Consider Arguments Not Raised to the Magistrate Judge During Summary Judgment Proceedings

This Court has routinely held that a district court need not consider new arguments or evidence raised for the first time in objections to a magistrate judge's report. *See Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020) (no abuse of discretion when "argument was raised for the first time in his objections" to the magistrate report and "had not been raised during summary judgment proceedings before the Magistrate Judge."); *see Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137–38 (2d Cir. 1994) (no abuse of discretion by the district court in "apparently" refusing to consider new evidence not raised to the magistrate). This rule arises from the principle that "litigants" should not have "the option of waiting until a Report is issued to advance additional arguments." *Abu-Nassar v. Elders*

31

*Futures, Inc.*, No. 88 Civ. 7906 (PKL), 1994 WL 445638, at *4 (S.D.N.Y Aug. 17, 1994). The District Court thus did not abuse its discretion in refusing to consider Appellant's discovery-related objections to the R&R, which Appellant failed to raise before the Magistrate Judge during summary judgment proceedings. *See Fisher*, 968 F.3d at 221; *Paddington Partners*, 34 F.3d at 1137–38.

### 2. The Magistrate Judge Correctly Limited Appellant's Discovery of Mr. Smart to Written Questions

Nor was there any abuse of discretion by the Magistrate Judge. In her December 16, 2020 order, Magistrate Judge Bloom declined Appellant's request to depose Mr. Smart. (J.S.A. 143.) Noting that Appellant and Mr. Smart "got into a physical confrontation" in the events leading to Appellant's lawsuit, Magistrate Judge Bloom denied Appellant's request for an order requiring Mr. Smart to provide an email address or telephone number for a deposition: "[w]hereas plaintiff is permitted to pursue discovery, the Court will not compel defendant Smart to provide his email address or phone number to plaintiff." (J.S.A. 144–45.)

Appellant identifies *no* abuse of discretion, much less error, with Magistrate Judge Bloom's order. "A district court has wide latitude to determine the scope of discovery," and the Second Circuit "ordinarily defer[s] to the discretion of district courts regarding discovery matters." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (brackets and internal quotation marks omitted); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D.

400, 403 (S.D.N.Y. 2020) ("[a] magistrate judge's discovery orders are" subject to a "highly deferential" standard of review "and magistrates are afforded broad discretion in resolving discovery disputes" (citations and internal quotation marks omitted)).

Moreover, "a court has discretion to circumscribe discovery even of relevant evidence by making 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Jones v. Hirschfield*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003) (quoting Fed. R. Civ. P. 26(c) and citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).  Indeed, "courts should not neglect their power to restrict discovery," *id.* (quoting *Herbert*, 441 U.S. at 177), and "it is settled that 'judges may prevent [a] proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship,'" *id.* (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003)).  "A district court abuses its discretion only 'when the discovery is so limited as to affect a party's substantial rights.'" *In re Agent Orange*, 517 F.3d at 103 (quoting *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985)).

As the undisputed record shows, restricting Appellant's discovery of Mr. Smart to only written interrogatories was especially appropriate in light of Appellant's prior conduct in the litigation (and his history with Mr. Smart prior to

being banned from the TVB).  Despite being a lawyer, Appellant failed to comply with rules, misinterpreted orders, and was repeatedly admonished for his conduct. (*See, e.g.*, J.S.A. 096 ("You've been filing things that you should not be filing."); J.S.A. 140 ("Your motion did not comply with the procedural safe harbor provisions in Federal Rule of Civil Procedure 11.  You also failed to demonstrate that defendant's counsel is acting in bad faith or objectively unreasonable."); J.S.A. 141 ("[S]anctions [are not] warranted . . . [and] this whole pile of papers that you created is your choice in how to litigate.  You've already been warned . . . in prior orders. . . . I'm not going to tolerate any false accusations."); J.S.A. 142 ("THE COURT:  [Appellant] . . . I do not appreciate being screamed at.  I'm doing my job – [APPELLANT]:  I'm not screaming, I'm stating my position.").)  At one point in the litigation, it appears that Appellant walked into the TVB where he used to practice and began demanding that random employees speak to him, claiming they had to do so under the court's order.  (*See* J.S.A. 098 ("The problem that I have, [Appellant], is that I put out an order to you the last time that laid out . . . the rules in it and yet for some reason when you walked into the DMV you thought that you could wave something and say that I had ordered that people be deposed just because you walked in the door."); J.S.A. 100–01 ("Going to DMV to conduct your investigation of your case may cause a disruption to the business of the DMV.").)

It is against this backdrop—and the "bad blood between [Mr.] Capogrosso and [Mr.] Smart"—that Magistrate Judge Bloom allowed Appellant to submit specific written questions to Mr. Smart in lieu of a deposition. (*See* J.S.A. 153–55.) Given Appellant's difficult behavior and his threadbare allegations setting forth a doomed claim against Mr. Smart, the court was well within its discretion to conclude that ordering Mr. Smart's deposition would not serve "the interest of justice." (*Id.*) Indeed, allowing specific written questions in lieu of deposition testimony is "well within the 'range of permissible decisions'" and not an abuse of discretion. *See Fappiano v. City of New York*, 640 F. App'x 115, 121 (2d Cir. 2016) (quoting *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (no abuse of discretion when magistrate judge barred plaintiff from deposing his prior victims but ordered the victims to answer his written questions).

Moreover, Appellant fails to show how his inability to depose Mr. Smart substantially affected his rights when he was able to obtain discovery from Mr. Smart via other means. Mr. Smart provided sworn testimony directly addressing Appellant's central contention—Mr. Smart unequivocally denied that anyone instructed him to initiate an altercation with Appellant in order to ban Appellant from the TVB. (*See* J.S.A. 158–79.) This alleged conspiracy was the principal focus of the interrogatories Appellant directed at Mr. Smart. (*See* J.S.A. 146–47.) On March 16, 2021, Magistrate Judge Bloom held a telephone

conference and, with Appellant on the phone, asked Mr. Smart to answer Appellant's interrogatories under oath. (J.S.A. 158–79.) When asked "who told you to approach Mario Capogrosso on the morning of May 11th, 2015," Mr. Smart responded "Nobody—nobody told me anything." (J.S.A. 164; *see also* J.S.A. 146 ("Who told you to approach me, plaintiff Mario H. Capogrosso, on the morning of May 11, [2015] and create the incident which resulted in my removal from the Brooklyn TVB.").) Magistrate Judge Bloom then asked whether "defendant Alan Gelbstein, defendant Ida Traschen, defendant Danielle Calvo and/or Boshra Vahdat, [told him] to approach Appellant on the morning of May 11th, 2015," to which Mr. Smart replied, "No way. No way." (J.S.A. 165–66; *see also* J.S.A. 146 ("Did defendants Alan Gelbstein, defendant Ida Traschen, defendant Danielle Calvo and/or Bushra Vahdat tell you to approach me on the morning of May 11, 2015 and create the incident which resulted in my removal [from] the Brooklyn TVB.").)

And the State Defendants could not have been more clear in their deposition testimony—no individual instructed Mr. Smart to get in an altercation with Appellant to enable the State to bar Appellant from practicing at the TVBs. (*See, e.g.*, App'x at 147 (Appellant asking Judge Gelbstein if he "t[old] Defendant Smart to approach me on the morning on May 11, 2015," and Judge Gelbstein responding, "No"); *id.* at 197 (Ms. Traschen testifying, in response to Appellant's

questioning, that she did not "ha[ve] Defendant Smart approach [Appellant] on the morning of May 11, 2015 and initiate th[e] incident").)

To date, Appellant has failed to identify what additional discovery of Mr. Smart would have supported Appellant's claims against Mr. Smart,[13] and Mr. Smart has flatly denied any joint effort with the State Defendants to persecute Appellants. Mr. Smart's sworn statements are fatal to Appellant's § 1983 claims against Mr. Smart. Nor does Appellant provide any reasons that Mr. Smart would provide different answers under deposition. *See Paddington Partners*, 34 F.3d at 1138 ("[A] bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment." (cleaned up)). As such, Appellant's discovery challenges are meritless and offer no basis to vacate the summary judgment below.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court.

---

[13] Indeed, Mr. Capogrosso appeared to view the March 16, 2021 telephone conference as an actual deposition of Mr. Smart. (*See* J.S.A. 168 ("[W]ill I be getting a copy of this deposition, your Honor?").)

Dated: June 6, 2023
New York, New York

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

_/s/ Amelia T.R. Starr_

Sharon Katz
Amelia T.R. Starr
Anna Lee Whisenant
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
sharon.katz@davispolk.com
amelia.starr@davispolk.com
anna.whisenant@davispolk.com

 – and –

Andrei Gribakov Jaffe
Yao Chen
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
andrei.jaffe@davispolk.com
xueyao.chen@davispolk.com

_Attorneys for Defendant–Appellee_
_David Smart_

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because this brief contains 8,925 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: June 6, 2023

/s/ Amelia T.R. Starr
Amelia T.R. Starr

Counsel for Defendant-Appellee
David Smart

## CERTIFICATE OF SERVICE

I, Amelia T.R. Starr, hereby certify that on June 6, 2023, I caused the

foregoing Brief for Defendant-Appellee David Smart to be filed with the Clerk of

the Court for the U.S. Court of Appeals for the Second Circuit by using the

appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and

that service will be accomplished by the appellate ECF docket system.

Dated: June 6, 2023

*/s/ Amelia T.R. Starr*
Amelia T.R. Starr

*Counsel for Defendant-Appellee*
*David Smart*