# 22-2827

## United States Court of Appeals for the Second Circuit

---

MARIO H. CAPOGROSSO,

*Plaintiff-Counter-Defendant-Appellant,*

v.

ALAN GELBSTEIN, in his official and individual capacity,

*Defendants-Appellees.*

(caption continues inside front cover)

On Appeal from the United States District Court
for the Eastern District of New York

---

**BRIEF FOR APPELLEES ALAN GELBSTEIN, IDA TRASCHEN, DANIELLE CALVO, AND MARK J.F. SCHROEDER**

---

BARBARA D. UNDERWOOD
 *Solicitor General*
JUDITH N. VALE
 *Deputy Solicitor General*
CLELAND B. WELTON II
 *Assistant Solicitor General*
  *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for State Appellees
28 Liberty Street
New York, New York 10005
(212) 416-6197

Dated: June 6, 2023

*(caption continues from front cover)*

IDA TRASCHEN, in her official and individual capacity, DANIELLE CALVO, in her official and individual capacity, PEC GROUP OF NY, INC., MARK J.F. SCHROEDER, Commissioner of the New York State Department of Motor Vehicles,

*Defendants-Appellees*,

DAVID SMART, SADIQ TAHIR,

*Defendants-Counter-Claimants-Appellees*,

BOSHRA VAHDATLAMAS, in her official and individual capacity, AKA Bushra Vahdat, ELIZABETH PRICKETT--MORGAN, in her official and individual capacity, JEAN FLANAGAN, in her official and individual capacity, VINCENT PALMIERI, in his official and individual capacity, JOHN AND JANE DOE,

*Defendants.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ....................................................... 1

ISSUES PRESENTED ..................................................................... 3

STATEMENT OF THE CASE .......................................................... 4

    A.   The Traffic Violations Bureau ..................................... 4

    B.   Capogrosso's Misconduct and the Revocation of His
           Authorization to Practice ............................................. 6

    C.   The District Court Proceedings ................................. 13

SUMMARY OF ARGUMENT ...................................................... 18

STANDARDS OF REVIEW .......................................................... 21

ARGUMENT .................................................................................. 22

POINT I

THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT
TO THE STATE DEFENDANTS ................................................... 22

    A.   Judicial and Quasi-Judicial Immunity Bar Any Claim
           for Money Damages. ................................................. 22

    B.   Section 1983 Bars Any Claim for Injunctive Relief. ............. 26

    C.   No Rational Jury Could Find That the State Defendants
           Acted with Retaliatory Animus. ............................... 28

POINT II

CAPOGROSSO'S CHALLENGES TO THE DISTRICT COURT'S DISCOVERY
RULINGS ARE UNPRESERVED AND MERITLESS ....................... 35

CONCLUSION .............................................................................. 39

i

## TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Bacon v. Phelps*,
   961 F.3d 533 (2d Cir. 2020) ............................................................... 34

*Bliven v. Hunt*,
   579 F.3d 204 (2d Cir. 2009) ......................................................... 23, 26

*Caidor v. Onondaga County*,
   517 F.3d 601 (2d Cir. 2008) ............................................................... 35

*Catanzaro v. City of New York*,
   486 F. App'x 899 (2d Cir. 2012) ........................................................ 31

*Chris H. v. New York*,
   764 F. App'x 53 (2d Cir. 2019) .......................................................... 23

*Curley v. Village of Suffern*,
   268 F.3d 65 (2d Cir. 2001) ................................................................. 30

*District of Columbia v. Wesby*,
   138 S. Ct. 577 (2018).......................................................................... 34

*Doe v. Columbia Univ.*,
   No. 19-cv-5357, 2020 WL 1528545 (S.D.N.Y. Mar. 31, 2020) ........... 27

*Estle v. International Bus. Machs. Corp.*,
   23 F.4th 210 (2d Cir. 2022).......................................................... 22, 26

*Ex parte Young*,
   209 U.S. 123 (1908)............................................................................ 26

*Finn v. Anderson*,
   592 F. App'x 16 (2d Cir. 2014) .......................................................... 25

*Galella v. Onassis*,
   487 F.2d 986 (2d Cir. 1973) ............................................................... 21

*Gentile v. State Bar of Nevada*,
   501 U.S. 1030 (1991).......................................................................... 34

ii

| Cases | Page(s) |
|---|---|

*Gollomp v. Spitzer,*
   568 F.3d 355 (2d Cir. 2009) ............................................................... 24

*Gorman v. Rensselaer County,*
   910 F.3d 40 (2d Cir. 2018) .................................................................. 21

*Gross v. Rell,*
   585 F.3d 72 (2d Cir. 2009) .................................................................. 22

*Gubitosi v. Kapica,*
   154 F.3d 30 (2d Cir. 1998) .................................................................. 31

*Hartman v. Moore,*
   547 U.S. 250 (2006)............................................................................. 33

*Higginbotham v. Sylvester,*
   741 F. App'x 28 (2d Cir. 2018) ............................................................ 29

*Jackson v. Pfau,*
   523 F. App'x 736 (2d Cir. 2013) .......................................................... 24

*Kennedy v. Hirsch,*
   No. 21-3155, 2023 WL 2564026 (2d Cir. Mar. 20, 2023)..................... 21

*Lederman v. New York City Dep't of Parks & Recreation,*
   731 F.3d 199 (2d Cir. 2013) ......................................................... 21, 35

*Libertarian Party of Erie County v. Cuomo,*
   970 F.3d 106 (2d Cir. 2020) ...................................................... 23, 25-26

*LoSacco v. City of Middletown,*
   71 F.3d 88 (2d Cir. 1995) .................................................................... 21

*Matter of Jewish Press, Inc. v. New York City Police Dep't,*
   190 A.D.3d 490 (1st Dep't 2021)..................................................... 4, 25

*Matter of Rosenthal v. Hartnett,*
   36 N.Y.2d 269 (1975) ............................................................................ 4

| Cases | Page(s) |
|-------|---------|

*McKeown v. N.Y. State Comm'n on Jud. Conduct,*
377 F. App'x 121 (2d Cir. 2010) ..................................................... 24-25

*McPherson v. New York City Dep't of Educ.,*
457 F.3d 211 (2d Cir. 2006) ............................................................... 34

*Montero v. Travis,*
171 F.3d 757 (2d Cir. 1999) ......................................................... 23, 26

*National Rifle Ass'n of Am. v. Vullo,*
49 F.4th 700 (2d Cir. 2022) ............................................................... 27

*Nieves v. Bartlett,*
139 S. Ct. 1715 (2019) ......................................................................... 28

*Peoples v. Leon,*
63 F.4th 132 (2d Cir. 2023) .......................................................... 22-24

*Tangreti v. Bachmann,*
983 F.3d 609 (2d Cir. 2020) ............................................................... 28

*Town of Orangetown v. Gorsuch,*
718 F.2d 29 (2d Cir. 1983) ................................................................. 27

*Town of Southold v. Wheeler,*
48 F.4th 67 (2d Cir. 2022) ................................................................. 27

*Tracy v. Freshwater,*
623 F.3d 90 (2d Cir. 2010) ................................................................. 21

*Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.),*
517 F.3d 76 (2d Cir. 2008) ................................................................. 21

*Walker v. NYS Just. Ctr. for Prot. of People with Special Needs,*
493 F. Supp. 3d 239 (S.D.N.Y. 2020) ............................................... 27

*Wrobel v. County of Erie,*
692 F.3d 22 (2d Cir. 2012) ................................................................. 29

## Laws, Regulations, & Rules                    Page(s)

*Federal*

42 U.S.C. § 1983 .................................................................. 19, 26

Fed. R. App. P. 30 ...................................................................... 5

Fed. R. Civ. P.
  45 ......................................................................................... 37
  56 ................................................................................. 21, 33
  61 ......................................................................................... 37
  72 ................................................................................. 35, 37

Fed. R. Evid. 602 ....................................................................... 34

*New York*

Vehicle and Traffic Law
  § 225 et seq. ............................................................................ 4
  § 227 ....................................................................................... 4

15 N.Y.C.R.R. § 124.2 ............................................................. 4, 6

## Miscellaneous Authorities

New York State Dep't of Motor Vehicles, *Mark J.F. Schroeder*,
  https://dmv.ny.gov/about-dmv/mark-jf-schroeder ............................... 5

## PRELIMINARY STATEMENT[1]

Plaintiff-appellant Mario Capogrosso is an attorney who formerly practiced before the Traffic Violations Bureau (TVB), an administrative tribunal within the New York State Department of Motor Vehicles (DMV). The DMV suspended Capogrosso from practice before the TVB in 2011, following a series of unprofessional and violent outbursts. The DMV reinstated Capogrosso in 2012, on the condition that any further violent conduct would result in his immediate and permanent expulsion from TVB practice. When Capogrosso breached that condition in 2015— by engaging in a renewed pattern of aggressive behavior that included physically assaulting a security guard—DMV responded by permanently expelling Capogrosso from TVB practice.

Capogrosso filed this lawsuit in the U.S. District Court for the Eastern District of New York in 2018, contending without basis that DMV personnel had violated the First Amendment by barring him from TVB practice in retaliation for a letter he had written to a government

---

[1] This brief is submitted on behalf of Alan Gelbstein, Ida Traschen, Danielle Calvo, and DMV Commissioner Mark J.F. Schroeder (together, the "state defendants"). Appellee David Smart is separately represented.

attorney with no relation to his case (as opposed to because he had assaulted a security guard, among other misconduct). The district court (Komitee, J.) granted summary judgment to the state defendants.

This Court should affirm. As the district court properly determined, the federal courts cannot grant relief premised on the state defendants' judicial act of barring Capogrosso from TVB law practice. Judicial and quasi-judicial immunity provide an absolute shield against monetary relief. And 42 U.S.C. § 1983 expressly precludes injunctive relief against a judicial officer's judicial act unless the act violates a prior declaratory decree—and Capogrosso has never obtained such a decree.

Because no relief is available, the Court need not reach the substance of Capogrosso's claim. But if the Court considers the merits, it should affirm. No reasonable jury could find that the state defendants banned Capogrosso from TVB practice because of retaliatory animus. The decision-makers attested that Capogrosso's letter had nothing to do with his expulsion, and Capogrosso produced no contrary evidence. In fact, the evidence shows—overwhelmingly—that the state defendants acted based on legitimate and well-documented concerns for the physical safety of TVB personnel and others with business before the DMV.

2

Finally, Capogrosso's attacks on the district court's discovery rulings are unpreserved; do not establish any abuse of discretion; and are not supported by any showing of prejudice.

## ISSUES PRESENTED

1.  Whether the district court correctly granted summary judgment to the state defendants on Capogrosso's First Amendment claim because:

    (a) judicial and quasi-judicial immunity preclude money damages premised on the judicial act of determining to expel Capogrosso from further law practice before the TVB;

    (b) 42 U.S.C. § 1983 precludes injunctive relief because the judicial act at issue did not violate any declaratory decree; and

    (c) there is no genuine issue going to whether any of the state defendants acted with retaliatory animus in determining to expel Capogrosso from further law practice before the TVB.

2.  Whether Capogrosso forfeited his challenges to the district court's discovery rulings, and whether the district court acted within its discretion in rendering those discovery rulings.

3

## STATEMENT OF THE CASE

### A.   The Traffic Violations Bureau

The TVB adjudicates noncriminal traffic violations committed in New York City. *See* Vehicle and Traffic Law § 225 et seq.; *see also Matter of Rosenthal v. Hartnett*, 36 N.Y.2d 269, 272-74 (1975). TVB proceedings are judicial in nature: Cases are heard by an impartial administrative law judge (ALJ), the People bear the burden of proof, and a motorist appearing before the TVB may be represented by an attorney. *See* Vehicle and Traffic Law § 227; 15 N.Y.C.R.R. § 124.2(a); *Matter of Jewish Press, Inc. v. New York City Police Dep't*, 190 A.D.3d 490, 491 (1st Dep't), *lv. denied*, 37 N.Y.3d 906 (2021). Attorneys practicing in the TVB system are obligated to "conform to the standards of conduct required of attorneys appearing before State courts." 15 N.Y.C.R.R. § 124.2(a).

The state defendants are current and former DMV employees. At the times relevant to this case, Alan Gelbstein served as a senior ALJ in the TVB's Brooklyn South branch (on Coney Island), where he heard cases and helped to oversee legal operations in a manner analogous to a federal court's chief judge. (Appellees' Joint Supplemental Appendix

(J.S.A.) 205-206.[2]) ALJ Gelbstein has since retired. (J.S.A. 205.) Ida Traschen served as DMV's first assistant counsel and was responsible for overseeing the entire TVB system. (J.S.A. 253.) Traschen has also retired. (J.S.A. 252.) Danielle Calvo served as a supervising clerk at the Brooklyn South TVB, carrying out the TVB's day-to-day functions with the help of a small staff. She now serves as a senior clerk in the New York State Office of Court Administration. (J.S.A. 194.) DMV Commissioner Mark J.F. Schroeder was appointed to his current role in 2019, after seven years as the elected comptroller of Buffalo.[3]

---

[2] The appendix that Capogrosso filed with the opening brief is not in compliance with Rule 30 of the Federal Rules of Appellate Procedure, including because it omits a substantial amount of pertinent record material. (Capogrosso failed to consult with the appellees concerning the appendix's contents. *See* Fed. R. App. P. 30(b)(1).) For the Court's convenience, the appellees have jointly prepared a supplemental appendix under Local Rule 30.1(g). CA2 ECF Nos. 135, 136.

[3] DMV, *Mark J.F. Schroeder*, https://dmv.ny.gov/about-dmv/mark-jf-schroeder (last visited June 6, 2023).

**B.** **Capogrosso's Misconduct and the Revocation of His Authorization to Practice**

Capogrosso is admitted to practice law in New York and Connecticut. He began practicing as an attorney at the Brooklyn South TVB in 2005—first as an assistant to another attorney and then, after a falling-out with his employer, on his own. (J.S.A. 262-263).

In a series of incidents dating back at least to 2009, Capogrosso repeatedly failed to conform to the applicable standards of conduct. *See* 15 N.Y.C.R.R. § 124.2(a). The record contains reports of incidents in which Capogrosso screamed profanities and obscenities while engaged in a physical confrontation with a female legal assistant (J.S.A. 207, 216-217); shouted curses and insults at a female TVB clerk (J.S.A. 207, 218); and used "a variety of vulgar and profane names" while threatening a female paralegal who was six months pregnant (J.S.A. 207-208, 219). Capogrosso admitted at his deposition that such incidents occurred, though he disputed some of the details. (*See* J.S.A. 270-274.)

After another altercation between Capogrosso and a TVB employee on January 5, 2011, eighteen Brooklyn South TVB employees (including Calvo) signed a petition attesting to their belief that Capogrosso's "unstable" behavior and "escalating" confrontational conduct "constitute[d]

6

a threat to [their] physical safety." (J.S.A. 198; *see* J.S.A. 195, 275-278.)
The petition "request[ed] that Mr. Capogrosso's behavior be dealt with
and that the management of this agency alleviates the threat to [the
employees'] physical safety." (J.S.A. 198.) ALJ Gelbstein and his super-
visor, Bushra Vahdatlamas (J.S.A. 206), responded to the petition by
meeting with Capogrosso and explaining that "his behavior was not
professional" and that "if he did not stop his foul language and his threats
we would have to take action and bar him from the TVB building." (J.S.A.
220; *see* J.S.A. 208.) Capogrosso promised to conduct himself appropriately
thereafter. (*See* J.S.A. 208, 220, 228.)

Capogrosso broke that promise. On December 21, 2011, Capogrosso
threatened to physically assault an attorney named Yaakov Brody, who
was sitting in the TVB's attorneys' lounge room. (J.S.A. 222.) After briefly
leaving the lounge, Capogrosso returned, threw a partially full cup of coffee
toward Brody, and began ranting that Brody was a "'jew fucking cunt'"
(repeating that phrase six or seven times) and that the TVB was "'run by
jews.'" (J.S.A. 222; *see* J.S.A. 220, 223-224, 281.) When another attorney,
Jeffrey Meyers, suggested to Capogrosso that he should apologize to Brody,
Capogrosso "became enraged" and physically threatened Meyers—brag-

ging that he could "'put [Meyers] in the hospital with just one punch.'" (J.S.A. 225; *see* J.S.A. 224.) Capogrosso left the room and punched the TVB facility's wall with enough force that his knuckles emerged "severely bruised." (*See* J.S.A. 220, 224; *see also* J.S.A. 225.)

ALJs Gelbstein and Vahdatlamas investigated this incident, interviewing witnesses including Capogrosso. (J.S.A. 220-221.) During his interview, Capogrosso "admitted to shouting the religious obscenities" and to physically confronting Meyers. (J.S.A. 220.) Capogrosso also acknowledged punching the facility's wall, indicating that he "was not remorseful" and stating that "he needs to punch the walls in [the TVB] office to let out steam." (J.S.A. 220.)

After completing their investigation, ALJs Gelbstein and Vahdatlamas concluded "that the wellbeing of the office was at risk," and therefore instructed Capogrosso to leave the TVB "and not to return till further notice." (J.S.A. 220.) In December 2011, the DMV suspended Capogrosso from practicing in any TVB location for three months, and suspended him from practicing at the Brooklyn South location indefinitely. (*See* J.S.A. 301.)

Capogrosso challenged his suspension by filing a special proceeding in New York State Supreme Court under C.P.L.R. article 78. (J.S.A. 303-

312.) Capogrosso's petition acknowledged both his verbal outburst against Brody and his physical intimidation of Meyers (J.S.A. 305), but sought a declaration annulling the suspension as "arbitrary, capricious, illegal, unlawful and an abuse of discretion" (*see* J.S.A. 311). Settlement discussions led to an agreement under which the DMV would lift the suspension, and Capogrosso would dismiss the article 78 proceeding, upon Capogrosso's successful completion of an anger-management course. (*See* J.S.A. 256-257, 286-287.)

As set forth in a letter memorializing the settlement agreement, Capogrosso's reinstatement was contingent on his promise to "strictly adhere to the standards of conduct required of attorneys appearing before State courts." (J.S.A. 256-257.) The letter expressly warned Capogrosso that any "[t]hreatening conduct[,] . . . verbal threats of physical violence, and verbal abuse including the use of ethnic slurs will not be tolerated." (J.S.A. 257.) And the letter further advised Capogrosso that if he were to "commit[] an act of physical violence, he shall be immediately and permanently barred from appearing on behalf of DMV licensees at TVB offices." (J.S.A. 257; *see* J.S.A. 296.)

9

In accordance with the parties' agreement, Capogrosso completed the required anger-management course (J.S.A. 319-320), the parties stipulated to dismiss the article 78 proceeding (J.S.A. 321), and the DMV lifted Capogrosso's suspension from TVB practice effective June 27, 2012 (J.S.A. 182).

Although Capogrosso avoided any major incidents for a period after his return to TVB practice, he ultimately resumed his pattern of inappropriate behavior. The record reflects that Capogrosso engaged in at least six instances of unprofessional conduct between May 2014 and March 2015, including inappropriate verbal and physical interactions with TVB clerks (J.S.A. 210-212, 230-232, 241), with a security guard named David Smart (J.S.A. 211, 233), with other attorneys practicing in the TVB (J.S.A. 211-212, 242-243, 293-294), and with one of Capogrosso's own clients—whom Capogrosso loudly instructed to "'go fuck [him]self'" (J.S.A. 234; *see* J.S.A. 211, 235-238, 291-292).

On March 20, 2015, during this string of incidents, Capogrosso sent a letter to Elizabeth Morgan, an assistant attorney general (AAG) in the New York State Office of the Attorney General. (J.S.A. 322-323.) Morgan had no connection to the earlier article 78 proceeding or to Capogrosso

10

more generally, and had no authority over the TVB; Capogrosso testified at his deposition that he found her name and address through a Google search. (*See* J.S.A. 295-296.) In the letter, Capogrosso alleged that Smart (to whom the letter repeatedly referred as "Dave Sparks") had engaged in purported threats and harassment. The letter also contained vague complaints that ALJ Gelbstein had failed to address Smart's supposed misconduct. (J.S.A. 322-323.)

Capogrosso's erratic and aggressive behavior continued and worsened. On May 5, 2015, an attorney named Sadiq Tahir moved a bag belonging to Capogrosso from one bench to another in the TVB attorneys' lounge. Capogrosso responded by hurling abuse at Tahir at such a loud volume that Calvo came from another room to investigate, and ultimately sought assistance from ALJ Gelbstein. (J.S.A. 196, 199-200, 213, 244; *see* J.S.A. 245-247.) One eyewitness to this incident wrote that he observed Capogrosso "ranting" that "if [ALJ Gelbstein] . . . was a man he would put a gun to his own head." (J.S.A. 246-247.) The same witness concluded his written report by observing that "over the past few weeks Mario Capogrosso has become more aggressive in both his words and demeanor and

11

has been creating an atmosphere of fear and threatening both attorneys and DMV staff." (J.S.A. 247.)

Finally, on May 11, 2015, Capogrosso instigated a brief verbal altercation with Smart and then abruptly pushed Smart in the chest with such force that Smart fell, catching himself on a railing to avoid hitting the ground. (*See* J.S.A. 164, 201-204.) Calvo reported this incident to ALJ Gelbstein and ultimately to Traschen. At Traschen's instruction, Calvo enlisted police officers to escort Capogrosso out of the TVB. (J.S.A. 196; *see* J.S.A. 214, 254-255.)

Considering Capogrosso's persistent inability to conduct himself appropriately, his physical violence against Smart, and the risks that his behavior posed to the safety of others, ALJ Gelbstein and Traschen determined to bar Capogrosso permanently from appearing before the TVB. (*See* J.S.A. 214-215, 255, 269.)

Although Capogrosso had challenged his temporary 2011 suspension in a state court article 78 proceeding (see *supra* at 8-10), he did not pursue such relief from the final decision permanently barring him from TVB practice. He testified during his deposition that he chose not to proceed

in state court in part because he could not get monetary damages through an article 78 challenge to administrative action. (*See* J.S.A. 267-268.)

## C. The District Court Proceedings

In May 2018, Capogrosso filed the complaint in this action in the U.S. District Court for the Eastern District of New York. (J.S.A. 1-23.) The complaint named as defendants ALJ Gelbstein, Traschen, Calvo, and Smart, among others. (J.S.A. 1, 6-8.) After ALJ Gelbstein, Traschen, and Calvo departed DMV service (see *supra* at 4-5), the district court added Commissioner Schroeder as a defendant under Federal Rule of Civil Procedure 25(d), as the appropriate official-capacity defendant on claims seeking relief against the DMV. (*See* J.S.A. 91.)[4]

---

[4] During the district court proceedings (where, as in this Court, Capogrosso represented himself pro se), Capogrosso engaged in a pattern of uncivil and unreasonable litigation behavior. For instance, Capogrosso responded to a routine request for an extension of time in which to answer the complaint (Dist. Ct. ECF No. 5) with an extended tirade (Dist. Ct. ECF No. 11) that led Magistrate Judge Bloom to ask Capogrosso to "be aware of . . . professional courtesy and conduct himself accordingly" (J.S.A. 27). And after Judge Brodie denied Capogrosso's baseless motion to disqualify Magistrate Judge Bloom (Dist. Ct. Minute Entry (Aug. 2, 2018)), Capogrosso sent a seven-page invective-laden letter to then–Chief Judge Irizarry complaining (again without basis) that he was "not being treated fairly" (Dist. Ct. ECF No. 70, at p. 2).

13

In decisions that Capogrosso does not challenge on appeal, the district court dismissed the bulk of the complaint at the pleading stage. (J.S.A. 28-57 (report & recommendation) (Bloom, Mag. J.), *adopted*, J.S.A. 58-90 (Brodie, J.).) The only remaining substantive claim against the state defendants was a claim alleging First Amendment retaliation. This claim was based on speculation that ALJ Gelbstein, Calvo, and Traschen barred Capogrosso from TVB practice because of his letter to AAG Morgan, rather than because of his extensive pattern of abusive and violent behavior. (*See* J.S.A. 11, 14, 16-17, 39-46, 74-80.) Capogrosso sought monetary damages (*see* J.S.A. 16-17) and injunctive relief prohibiting the DMV "from excluding [Capogrosso] from practicing law in any TVB Court in the metropolitan New York area or the State of New York in the future" (J.S.A. 19).

After narrowing Capogrosso's case at the pleading stage, the district court denied several of Capogrosso's discovery-related requests and ultimately granted summary judgment to the state defendants. Capogrosso's appeal is limited to these rulings (*see* Br. of Appellant (Br.) at 20-33), which are summarized below.

14

*First*, on January 10, 2020, Magistrate Judge Bloom denied Capogrosso's request for court authorization to physically enter the Brooklyn South TVB premises for the ostensible purpose of questioning purported witnesses about the incidents that had led ALJ Gelbstein and Traschen to bar Capogrosso from TVB practice nearly five years earlier. (*See* J.S.A. 91, 93-94.) The court explained that while Capogrosso was permitted to take discovery through the processes set forth in the Federal Rules of Civil Procedure, he "can't just walk in" to the TVB and "start taking depositions." (J.S.A. 94.) Given Capogrosso's history with the TVB and its personnel, the court also noted a need to avoid "further trouble" or "a situation where for no good reason things go out of hand." (*See* J.S.A. 94; *see also* J.S.A. 100-104, 110-111, 125.)

Capogrosso objected to these rulings, but the district court (Brodie, J.) overruled the objections on February 3, 2020. (J.S.A. 133-135.)

*Second*, on December 16, 2020, Magistrate Judge Bloom granted a protective order prohibiting Capogrosso from taking the deposition of DMV Commissioner Schroeder. (J.S.A. 143-145.) Magistrate Judge Bloom noted that Commissioner Schroeder is only a party to the case as the nominal DMV defendant on Capogrosso's official-capacity claims for injunctive

15

relief. (J.S.A. 144.) The court explained, moreover, that the requested deposition would have been inappropriate because Commissioner Schroeder was not appointed to his position until January 2019 (see *supra* at 5 & n.3) and thus had no firsthand knowledge of the events underlying Capogrosso's claims—the last of which had occurred in May 2015. (J.S.A. 143-144 (citing, inter alia, *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)).)

Although Capogrosso submitted objections to other aspects of Magistrate Judge Bloom's December 16 order, he did not object to the protective order. (*See* J.S.A. 148-150.)

*Third*, in the same December 16 order, Magistrate Judge Bloom declined Capogrosso's request to take the deposition of Smart (who was at that time proceeding pro se). (J.S.A. 144-145; *see also* J.S.A. 153-155.) The court stated that allowing Capogrosso to take Smart's deposition was "not in the interest of justice" because of the "bad blood" (J.S.A. 154 & n.2) arising from the prior physical confrontations between Smart and Capogrosso, which had led to Capogrosso being removed from the DMV (J.S.A. 144-145).

In lieu of a deposition, the court directed Smart to respond to written interrogatories provided by Capogrosso to the court. (*See* J.S.A. 145, 154-155 & n.2.) During a telephonic hearing held before Magistrate Judge Bloom on March 16, 2021, Capogrosso confirmed that Smart had provided written responses to his interrogatories. (J.S.A. 160-161.) Smart also participated in the hearing, and gave sworn testimony in response to Capogrosso's questions on the record. (J.S.A. 162-166.) Magistrate Judge Bloom stated on the record that by testifying under oath, Smart had eliminated any need for Capogrosso to conduct an out-of-court deposition. (*See* J.S.A. 166.) Capogrosso did not pursue the issue further.

*Fourth*, the district court granted the state defendants' motion for summary judgment. (J.S.A. 324-343 (report & recommendation) (Bloom, Mag. J.), *adopted*, J.S.A. 344-352 (Komitee, J).) The court first ruled that Capogrosso's claim for money damages is barred by absolute judicial and quasi-judicial immunity. (J.S.A. 333-336, 349-350.) The court further concluded that Capogrosso's request for an injunction is barred by 42 U.S.C. § 1983's prohibition on granting injunctive relief against a judicial officer "unless a declaratory decree was violated or declaratory relief was

17

unavailable." (*See* J.S.A. 339-340 (quotation marks omitted); *see also* J.S.A. 350-351.)

The court also ruled that, in any event, Capogrosso's First Amendment claim failed on the merits because there is "no evidence of a causal relationship between [Capogrosso's] letter [to AAG Morgan] and [Capogrosso's] permanent bar from the TVB" (J.S.A. 337-338), nor any competent evidence that any of the state defendants acted with an improper motive (J.S.A. 337-339 & n.26; *see also* J.S.A. 350-351).

Finally, the court granted Smart's separate motion for summary judgment (J.S.A. 340-342, 346-349) and declined to exercise supplemental jurisdiction over Capogrosso's state-law claims (J.S.A. 342-343, 351). In September 2022, the district court entered final judgment for defendants. (J.S.A. 353.)

## SUMMARY OF ARGUMENT

The district court's grant of summary judgment should be affirmed.

First, any damages claim against the state defendants is barred by judicial and quasi-judicial immunity, which ensure that adjudicative officials (including ALJs, court officials, and their support staffs) fulfill their roles without concern for monetary liability arising out of judicial

18

acts. Barring Capogrosso from practice before the TVB was analogous to a determination to disbar an attorney, which is a quintessential judicial act to which absolute immunity attaches.

Second, injunctive relief is foreclosed by 42 U.S.C. § 1983, which directs that in a lawsuit challenging a judicial act, "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." No such declaratory decree exists or has been violated here. And such relief was not "unavailable"—Capogrosso simply chose not to pursue it. As the statutory precondition is not met, Capogrosso cannot obtain an injunction.

Third, Capogrosso's claim fails on the merits. He was barred from TVB practice because of his extended and escalating pattern of unprofessional and violent conduct—not because he wrote a letter to an AAG who had nothing to do either with the TVB or with Capogrosso's case. No reasonable jury could find in Capogrosso's favor, and the state defendants accordingly are entitled to judgment as a matter of law.

Finally, the Court should reject Capogrosso's challenges to the district court's discovery rulings. Capogrosso waived two of his three challenges by failing to object to the magistrate judge's rulings. And he

has not come close to demonstrating an abuse of discretion for any of the discovery rulings at issue. The magistrate judge properly directed Capogrosso to pursue discovery under the Federal Rules of Civil Procedure rather than trespassing on TVB property to attempt ad hoc and unscheduled witness interviews. The magistrate judge also properly rejected Capogrosso's request to take the deposition of Commissioner Schroeder, who has no firsthand knowledge of the events at issue because he took office years after they transpired. And the magistrate judge properly allowed Smart to respond to Capogrosso's questions in writing and at a hearing, rather than submit to a one-on-one deposition with Capogrosso— who had assaulted Smart in the incident that triggered Capogrosso's expulsion from TVB practice. In any event, any purported error in the discovery rulings was harmless because Capogrosso has not shown that any of the requested discovery would have yielded relevant evidence—let alone evidence that might have defeated summary judgment.

## STANDARDS OF REVIEW

The district court's determination to grant summary judgment is reviewed de novo. *Gorman v. Rensselaer County*, 910 F.3d 40, 44 (2d Cir. 2018). Summary judgment "shall" be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The district court's discovery rulings are reviewed for abuse of discretion. *See Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 202 (2d Cir. 2013); *Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 102 (2d Cir. 2008); *Galella v. Onassis,* 487 F.2d 986, 997 (2d Cir. 1973).

Although Capogrosso is representing himself in this litigation, he is a licensed attorney and therefore is not entitled to the solicitude ordinarily afforded to pro se litigants. *See, e.g.*, *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010); *Kennedy v. Hirsch*, No. 21-3155, 2023 WL 2564026, at *2 (2d Cir. Mar. 20, 2023) (summary order); *see also LoSacco v. City of Middletown*, 71 F.3d 88, 92-93 (2d Cir. 1995).

21

# ARGUMENT

## POINT I

### THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO THE STATE DEFENDANTS

**A.  Judicial and Quasi-Judicial Immunity Bar Any Claim for Money Damages.**

The district court correctly determined that judicial and quasi-judicial immunity preclude Capogrosso's claims for money damages against the state defendants. (J.S.A. 333-334, 349-350.) Capogrosso does not challenge that ruling on appeal, waiving any argument on this point. *See, e.g.*, *Estle v. International Bus. Machs. Corp.*, 23 F.4th 210, 215 n.3 (2d Cir. 2022).[5]

The district court's ruling was in any event correct. As this Court has explained, judges and other officials in adjudicatory roles are absolutely immune from suits for money damages arising out of "acts 'committed within their judicial jurisdiction.'" *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985)); *see also Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009) (federal immunity

---

[5] Capogrosso notes (Br. at 29) that common-law judicial immunity does not apply to claims for injunctive relief, but that is irrelevant to the question whether he can obtain money damages. And as shown below (at 26-27), Capogrosso's request for an injunction is barred by statute.

law applies to state officials sued on federal claims). This immunity provides "a complete shield to claims for money damages," *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999), and ensures that adjudicatory officers are "free to act upon [their] own convictions, without apprehension of personal consequences," *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020) (quotation marks omitted), *cert. denied*, 141 S. Ct. 2797 (2021); *see, e.g.*, *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order). The doctrine covers all "types of acts that are infused with adjudicatory discretion," *Peoples*, 63 F.4th at 140 (emphasis omitted), regardless of the formality or informality of the judicial act and regardless of whether the proceeding was adversarial or ex parte, *Libertarian Party*, 970 F.3d at 123. The question is whether the act at issue is properly characterized as a judicial one—i.e., "whether it is a function normally performed by a judge." *Bliven v. Hunt*, 579 F.3d 204, 209-10 (2d Cir. 2009) (quotation marks omitted).

Judicial and quasi-judicial immunity are "justified and defined by the *functions* [they] protect[] and serve[], not by the person to whom [they] attach[]." *Id.* (quotation marks omitted); *see Libertarian Party*, 970 F.3d at 123. Immunity therefore is not limited to persons who formally serve

23

in the judicial branch; it also protects executive-branch officials "'who perform functions closely associated with the judicial process,' such as . . . administrative law judges." *Peoples*, 63 F.4th at 138 (quoting *Cleavinger*, 474 U.S. at 200). The doctrine further extends to clerks, support staff, and administrative personnel who support the adjudicative process or act at the behest of or in coordination with adjudicatory officers. *See, e.g.*, *Gollomp v. Spitzer*, 568 F.3d 355, 363, 365 (2d Cir. 2009) (clerks); *Jackson v. Pfau*, 523 F. App'x 736, 737 (2d Cir. 2013) (summary order) (clerks and administrative officials); *McKeown v. N.Y. State Comm'n on Jud. Conduct*, 377 F. App'x 121, 124 (2d Cir. 2010) (summary order) (similar in attorney discipline matter).

Here, ALJ Gelbstein and Traschen's determination to bar Capogrosso from TVB practice is protected by judicial and quasi-judicial immunity. ALJ Gelbstein acted directly as an adjudicatory officer in his role as senior ALJ. (*See* J.S.A. 206.) Traschen, as the official in charge of the entire TVB traffic-court system, acted in an administrative role analogous to that occupied by employees of the Administrative Office of the U.S. Courts. (*See* J.S.A. 253.) And Calvo acted as a supervising clerk in the TVB system, supporting that system's administration of justice. (*See* J.S.A. 194.) Each

24

of these defendants played a key role in the TVB system of administrative adjudication, and each is entitled to absolute immunity.

Moreover, the act on which Capogrosso bases his claim is a judicial one for which the state defendants are immune from suit. *See generally Matter of Jewish Press*, 190 A.D.3d at 491 (TVB proceedings are "judicial" in nature (quotation marks omitted)). The complaint seeks to impose liability on the state defendants based on ALJ Gelbstein and Traschen's joint determination—following internal deliberation and consideration of the evidence—that Capogrosso's long history of violent and abusive behavior justified barring him from further TVB law practice. (*See* J.S.A. 214-215, 255.) That determination was the administrative-court analog of disbarring an attorney—which, as this Court has recognized, "is a judicial act" over which the adjudicatory authorities cannot be sued. *See Libertarian Party*, 970 F.3d at 124; *see also Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (summary order) (immunity extends to attorney grievance investigators); *McKeown*, 377 F. App'x at 124 (immunity extends to judicial actions in respect of alleged attorney misconduct). And it is immaterial that the determination was informal and ex parte; the fact that the act

25

at issue was akin to disbarment is enough to trigger immunity. *See Libertarian Party*, 970 F.3d at 123; *Bliven*, 579 F.3d at 210.

## B. Section 1983 Bars Any Claim for Injunctive Relief.

The district court also correctly ruled that 42 U.S.C. § 1983 itself bars Capogrosso's claims insofar as they seek injunctive relief. (*See* J.S.A. 339-340, 350-351.) As with the district court's ruling with respect to common-law immunity, Capogrosso's opening brief makes no attempt to identify error in the district court's application of § 1983—waiving the issue. *See, e.g.*, *Estle*, 23 F.4th at 215 n.3.[6]

In any event, the district court correctly applied § 1983, which states: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. This exception applies to judicial acts taken by executive-branch officials like ALJs. *See, e.g.*, *Montero*, 171 F.3d

---

[6] Capogrosso notes (Br. at 29) that federal courts generally may issue injunctions against state officials under *Ex parte Young*, 209 U.S. 123 (1908), but § 1983 strips the courts of jurisdiction to grant such injunctions in cases arising out of judicial acts.

at 761; *Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 248 (S.D.N.Y. 2020).

Section 1983's bar on injunctive relief against judicial officers plainly applies here. ALJ Gelbstein, Traschen, and Calvo acted as judicial officers, and the lawsuit challenges an act (expelling Capogrosso from TVB law practice) that was undertaken in a judicial capacity. See *supra* at 24-26. And no defendant violated any declaratory decree—Capogrosso declined the opportunity to seek such relief through an article 78 petition in state court.[7] (*See* J.S.A. 267-268.)

---

[7] Although Capogrosso's complaint in this case asserted a cursory demand for declaratory relief (J.S.A. 21), he abandoned any such claim by failing to pursue it either in the district court or in this Court. *See, e.g.*, *National Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 721 n.16 (2d Cir. 2022); *Town of Southold v. Wheeler*, 48 F.4th 67, 86 (2d Cir. 2022), *cert. denied*, No. 22-789, 2023 WL 2959412 (U.S. Apr. 17, 2023). In any event, such a claim would be both substantively meritless and barred by the four-month limitations period that would apply to an analogous article 78 proceeding. *See Town of Orangetown v. Gorsuch*, 718 F.2d 29, 41 & n.11 (2d Cir. 1983); *Doe v. Columbia Univ.*, No. 19-cv-5357, 2020 WL 1528545, at *4 (S.D.N.Y. Mar. 31, 2020).

**C.  No Rational Jury Could Find That the State Defendants Acted with Retaliatory Animus.**

Because Capogrosso's claims against the state defendants are barred by judicial immunity and § 1983, this Court need not address the substance of the First Amendment claim. But if the Court reaches the merits, it should affirm because there is no genuine issue of material fact requiring a trial.

Capogrosso's First Amendment claim rests on the theory that ALJ Gelbstein, Traschen, and Calvo barred him from TVB practice as an act of retaliation for his having sent a letter of complaint to AAG Morgan on or about March 20, 2015. (*See* J.S.A. 39-46, 74-80, 337-338; Br. at 11.) Even accepting arguendo that Capogrosso's letter receives First Amendment protection (*but see* J.S.A. 337-338), the district court correctly granted summary judgment. Liability must be established on a defendant-by-defendant basis, *see Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020), and here there is no genuine dispute concerning whether any of the state defendants was motivated by an improper retaliatory purpose in barring Capogrosso from TVB practice. *See, e.g.*, *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (First Amendment claim requires proof that retaliation for protected speech was a "but-for" cause of plaintiff's injury

28

(quotation marks omitted)); *Higginbotham v. Sylvester*, 741 F. App'x 28, 31 (2d Cir. 2018) (summary order) (affirming grant of summary judgment where plaintiff failed to raise genuine issue going to causation). Quite the contrary, the record establishes that ALJ Gelbstein and Traschen barred Capogrosso from TVB practice on account of his repeated acts of violence, aggression, and unprofessional conduct, which led to a "litany of complaints" from TVB staff and others who felt unsafe because of Capogrosso's continued presence. (J.S.A. 338-339.)

*First*, the record does not establish that Calvo was even aware of Capogrosso's letter to AAG Morgan, or that she knew the letter's contents, at the time that Capogrosso was banned from TVB practice. (*See* J.S.A. 196.) Absent evidence permitting a finding that Calvo *knew* what Capogrosso had written, a rational jury could not conclude that she took adverse action against Capogrosso *because of* the letter. *See, e.g.*, *Wrobel v. County of Erie*, 692 F.3d 22, 32 (2d Cir. 2012). And even if Calvo had been aware of the letter's contents, she did not cause (and could not have caused) Capogrosso's asserted injury because, as a clerk, she had no authority to expel him from TVB practice. (*See* J.S.A. 194, 197.) Rather, ALJ Gelbstein and Traschen made that determination in consultation

with one another. (J.S.A. 214-215, 255.) As Calvo did not cause Capo-grosso's injury, she cannot be liable under § 1983.

*Second*, there is no evidence that Traschen acted with retaliatory animus towards Capogrosso, let alone the "[s]pecific proof of improper motivation" that is required to survive summary judgment on a First Amendment retaliation claim. *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). To the contrary, Traschen attested that Capogrosso's letter to AAG Morgan played *no* role in the decision to ban Capogrosso from TVB practice. (J.S.A. 254-255.)

Instead, Traschen explained, she and ALJ Gelbstein acted based on Capogrosso's "history of hostile and unprofessional behavior, the fact that he had been suspended from practice once before," and his "increasing pattern of aggression." (J.S.A. 255.) That pattern included at least two incidents that postdated Capogrosso's March 20, 2015 letter to AAG Morgan: the May 5 incident during which he screamed at Tahir for mov-ing a bag and ranted that "if [ALJ Gelbstein] was a man he would put a gun to his own head" (J.S.A. 246-247; *see* J.S.A. 196, 213, 244-245), and the May 11 physical assault against Smart (*see* J.S.A. 196-197, 201-204). This misconduct violated the conditions under which Capogrosso had been

allowed to return to practice (*see* J.S.A. 256-257, 296), and it forecloses his suggestions (Br. at 11, 14-15, 27) that causation should be inferred solely from the purported temporal proximity between his letter to AAG Morgan and his expulsion from TVB practice. *See, e.g.*, *Gubitosi v. Kapica*, 154 F.3d 30, 33 (2d Cir. 1998) (significant intervening events defeated inference of causation in First Amendment retaliation case); *Catanzaro v. City of New York*, 486 F. App'x 899, 902 (2d Cir. 2012) (summary order) (similar).

*Third*, there also is no genuine issue of fact as to whether ALJ Gelbstein acted with improper motivation. Consistent with Traschen's account, ALJ Gelbstein attested that Capogrosso's expulsion from TVB practice was based on "his long history of aggressive behavior, which seemed to only be getting worse," the "multitude of complaints that had accumulated about him," and the fact that his hostile conduct had escalated to physical violence. (J.S.A. 214-215.) ALJ Gelbstein further attested that Capogrosso's "letter to the Attorney General's Office was not discussed" in connection with the decision to bar Capogrosso from TVB practice, that the letter "played no role in that decision," and that Capogrosso would have been banned based on his conduct "whether or

31

not he had sent a letter to the Attorney General months before."
(J.S.A. 215.) Those facts are unrebutted. And as explained, it is undisputed
that at least two serious incidents occurred in the time period between
Capogrosso's letter to AAG Morgan and the ultimate decision to ban him
from practicing before the TVB. (*See* J.S.A. 195-197, 201-204, 213.) On
this record, no reasonable jury could conclude that ALJ Gelbstein acted
on the basis of retaliatory animus.

Capogrosso points (Br. at 12, 15, 27) to an allegation in his complaint
that ALJ Gelbstein asked him on May 8, 2015, to "'go practice somewhere
else'" (J.S.A. 3), but that allegation is uncorroborated—and it is directly
refuted by ALJ Gelbstein's sworn attestation that he "never spoke to
[Capogrosso] about the letter" and never "asked [Capogrosso] to practice
somewhere else" (J.S.A. 213). The district court correctly concluded that
Capogrosso's allegation is insufficient to create a genuine dispute that
could defeat summary judgment. (J.S.A. 339.)

Even if Capogrosso's allegation were accepted, it could not support
reversal because it does not go to any *material* fact. As the district court
correctly recognized, the alleged comment (even if proven) would not
supply the requisite "specific proof" that ALJ Gelbstein acted with a

32

retaliatory purpose in determining that Capogrosso's unprofessional and violent conduct warranted his removal from TVB practice. (*See* J.S.A. 339 (citing *Perez de Leon-Garritt v. State Univ. of N.Y. at Buffalo*, 785 F. App'x 896, 899 (2d Cir. 2019) (summary order)).) Nor can Capogrosso's allegation carry his burden to show that any purported retaliatory animus on the part of ALJ Gelbstein, who was the junior member of a two-person decision-making team (*see* J.S.A. 214-215, 255), played a but-for causal role in the ultimate determination to bar Capogrosso from TVB practice. *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 260 (2006) ("retaliatory animus" alone is insufficient absent proof of a "causal connection between unconstitutional motive and resulting harm").

*Finally*, Capogrosso fails to identify a genuine issue of material fact concerning his allegation that Smart "manufactured the confrontation" between the two men on May 11, 2015, "under the tacit consent of Gelbstein to utilize the incident as a pretext to initiate administrative action." *See* Br. at 28. Capogrosso attempts to support this assertion with a vague citation to the entirety of his own deposition. But even setting aside his failure to cite "particular parts" of the record, *see* Fed. R. Civ. P. 56(c)(1)(A), Capogrosso has no competent basis to testify about an alleged tacit agree-

ment between two other people, *see* Fed. R. Evid. 602. Capogrosso's specu-

lation is inadmissible and insufficient to defeat summary judgment. *See,*

*e.g.*, *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 n.4

(2d Cir. 2006).[8]

---

[8] Although the district court did not reach the issue, the state defendants are also entitled to summary judgment based on qualified immunity. Capogrosso had no "clearly established" First Amendment right to practice law in the TVB, a forum in which he had engaged in repeated and escalating acts of aggression and physical violence. *See, e.g.*, *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (existence of "clearly established" law must be addressed in the "particular circumstances" presented (quotation marks omitted)); *Bacon v. Phelps*, 961 F.3d 533, 545 (2d Cir. 2020) (question cannot be addressed at "a high level of generality" (quotation marks omitted)). To the contrary, it is long settled that "[e]ven outside the courtroom," attorneys are officers of the court whose speech "may be regulated under a less demanding standard" than that which applies to ordinary citizens. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071, 1074 (1991). If this Court were to conclude that the district court's summary-judgment ruling was in error, it should at minimum remand the case with instructions to consider qualified immunity in the first instance.

## POINT II

**CAPOGROSSO'S CHALLENGES TO THE DISTRICT COURT'S DISCOVERY RULINGS ARE UNPRESERVED AND MERITLESS**

There is also no merit to Capogrosso's challenges to the district court's discovery rulings. *See* Br. at 20-26.

*First*, Capogrosso forfeited his challenge (*id.* at 23) to Magistrate Judge Bloom's determination to grant a protective order barring the proposed deposition of DMV Commissioner Schroeder (J.S.A. 143-144). Capogrosso made no timely objection to that determination (*see* J.S.A. 148-150), and he therefore cannot challenge the protective order on appeal. *See* Fed. R. Civ. P. 72(a); *Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008).

In any event, Capogrosso failed to demonstrate the exceptional circumstances that are required to justify taking the deposition of a high-ranking government official like Commissioner Schroeder. *See Lederman*, 731 F.3d at 203. Capogrosso did not identify with particularity the information he sought to obtain through the deposition.[9] And given that Commis-

---

[9] Commissioner Schroeder responded to interrogatories that Capogrosso served on the DMV. Those responses have not been filed on the

*(continued on the next page)*

sioner Schroeder was not appointed to his position until January 2019 (see *supra* at 5 & n.3), Capogrosso did not show (and could not have shown) that Commissioner Schroeder had firsthand knowledge about the events that led to Capogrosso's expulsion from TVB practice in May 2015. Capogrosso's assertion that the protective order "had a substantial impact" on his "ability to produce evidence to substantiate [his] position" (Br. at 23) is conclusory and baseless, and does not establish an abuse of discretion.

*Second*, Capogrosso also waived his challenge (*id.* at 23-24) to the procedure through which he obtained Smart's sworn testimony. The district court ordered Smart to respond to Capogrosso's written interrogatories (*see* J.S.A. 145, 154-155 & n.2, 161), and then allowed Capogrosso to elicit Smart's sworn testimony during a court hearing (J.S.A. 162-166). Capogrosso did not dispute the court's conclusion that this procedure eliminated the issue concerning Smart's deposition (*see* J.S.A. 166), did not request that the court pose additional questions to Smart, and did not make any further objection on this subject in the district court.

---

district court docket, but Capogrosso has never contended that the responses were inadequate.

36

Capogrosso cannot assign error to a discovery procedure in which he acquiesced. *See* Fed. R. Civ. P. 72(a).

In any event, Capogrosso identifies no abuse of discretion in the district court's procedure. As the court observed, allowing Capogrosso to depose Smart was not in the interest of justice because of the "bad blood" and prior physical confrontations between the two men. (J.S.A. 154-155 & n.2.) In other words, compelling Smart to appear for a deposition would have been unduly burdensome. *See* Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv).

In any event, the district court's procedure did not prejudice Capogrosso's case. *See* Fed. R. Civ. P. 61. Capogrosso claims (Br. at 23-24) that Smart's deposition was necessary for him to ascertain whether the state defendants were somehow involved in instigating the physical altercation on May 11, 2015—but Smart answered that precise question on the record and under oath, testifying that none of the state defendants had anything to do with precipitating the incident (J.S.A. 164-166). Given that Smart answered Capogrosso's question on the record, any possible error in declining to permit an out-of-court oral deposition was harmless and cannot support reversal. *See* Fed. R. Civ. P. 61.

37

*Finally*, contrary to Capogrosso's contention (Br. at 24-26), the district court did not prevent him from questioning witnesses about the incidents underlying this case. Rather, the court properly declined to order the state defendants to permit Capogrosso to physically access the TVB facility. (J.S.A. 91.) As the court explained to Capogrosso, physical access was neither necessary nor warranted, because Capogrosso was free to seek discovery using the tools provided in the Federal Rules of Civil Procedure. (J.S.A. 93-94.) Those tools include initial disclosures under Rule 26(a)(1) and interrogatories under Rule 33—which empowered Capogrosso to identify witnesses and pursue depositions under Rule 30, to issue any necessary subpoenas under Rule 45, and to move to compel compliance under Rule 37. And in fact, Capogrosso obtained interrogatory responses and deposition testimony from ALJ Gelbstein, Traschen, and Calvo. (*See, e.g.*, J.S.A. 136, 138, 185-193.[10]) Capogrosso, an attorney, cannot obtain reversal of summary judgment based on his own failure to take additional discovery under the rules.

---

[10] Other than excerpts of Calvo's deposition, these discovery materials have not been filed on the district court docket. But Capogrosso has not contended that the state defendants' responses were inadequate.

38

## CONCLUSION

The judgment should be affirmed.

Dated:  New York, New York
        June 6, 2023

Respectfully submitted,

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for State Appellees

By:   */s/ Cleland B. Welton II*
CLELAND B. WELTON II
Assistant Solicitor General

BARBARA D. UNDERWOOD
 *Solicitor General*
JUDITH N. VALE
 *Deputy Solicitor General*
CLELAND B. WELTON II
 *Assistant Solicitor General*
     *of Counsel*

28 Liberty Street
New York, NY 10005
(212) 416-6197

39

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Kelly Cheung, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 7,411 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

 /s/ Kelly Cheung

## CERTIFICATE OF SERVICE

I hereby certify that, on June 6, 2023, I served or caused to be served one copy of the accompanying Brief for Appellees Alan Gelbstein, Ida Traschen, Danielle Calvo, and Mark J.F. Schroeder by United States Postal Service first class/priority mail upon the following named person(s):

Mario H. Capogrosso, Esq.  Sadiq Tahir
21 Sheldrake Pl.     2994 Coney Island Ave.
New Rochelle, NY 10804  Brooklyn, NY 11235

PEC Group of NY, Inc.
352 7th Ave., Ste. 701
New York, NY 10001

_/s/  Cleland B. Welton II_