# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

# No. 22-2827

_____

Mario H. Capogrosso,
Appellant

v.

Alan Gelbstein, in his individual capacity, Ida Traschen, in her individual capacity, Danielle Calvo, in her individual capacity, Sadiq Tahir, PEC Group of New York, Inc., David Smart, and Mark Schroeder, in his official capacity as Commissioner of The New York State Department of Motor Vehicles,
Appellees

_____

*Appeal from the United States District Court for the
Eastern District of New York, Docket No. 2:18-cv-02710-MKB-LB
From The Order Dated September 29, 2022*

_____

## REPLY BRIEF OF APPELLANT

_____

Dated: June 25, 2023

Mario H. Capogrosso, Esq.
Appellant, Pro Se
21 Sheldrake Place,
New Rochelle, NY 10804
Tel: 914-806-3692
Email: nry4@aol.com

## **TABLE OF CONTENTS**

*Table of Authorities*                                                            3

**I. STATEMENT OF FACTS**                                                         5

**II. REPLY TO COUNTER-SUMMARY OF THE ARGUMENT**                                 12

**III. REPLY TO COUNTER-STATEMENT OF THE CASE**                                 14

**IV. REPLY TO APPELLEE'S LEGAL STANDARDS**                                      20

**V. REPLY TO APPELLEE'S ARGUMENT**                                              21

    **i. Appellant Has Shown Mr. Smart Qualifies As A State Actor**     20

    **ii. Trial Court Abused Its Discretion In Not Allowing The Appellee To Be Deposed Or Question Witnesses At The DMV.**     30

    **iii. State Defendants Are NOT Protected By Judicial And Quasi-Judicial Immunity For Their Unlawful And Unconstitutional Ban Of Appellant**     33

**VI. CONCLUSION**                                                               42

**VII. CERTIFICATE OF COMPLIANCE**                                              43

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

<u>Abdullahi v. Pfizer, Inc.</u>, 562 F.3d163, 211 (2d Cir. 2009)    20

<u>Apicella v. McNeil Labs</u>, 66 F.R.D. 78, 82 (E.D.N.Y. 1975)    31

<u>Bishop v. Toys "R" Us—NY LLC</u>, 414 F. Supp. 2d 385 (S.D.N.Y. 2006);    11

<u>Bliven v. Hunt</u>, 579 F.3d 204, 209 (2d Cir. 2009)    32

<u>*Ex parte Young*</u> , 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)    32

<u>Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC</u>, 783 F.3d 395,

405 (2d Cir. 2015).    19

<u>Fletcher v. Wal-Mart Stores, Inc.</u>, No. 05 Civ. 1859(WHP), 2006

WL 2521187, at *3 (S.D.N.Y. Aug. 28, 2006)    24

<u>Guiducci v. Kohl's Dept. Stores</u>, 320 F. Supp. 2d 35, 37-38 (E.D.N.Y. 2004)  11

<u>Grogan v. Blooming Grove Volunteer Ambulance Corps</u>, 768 F.3d

259, 264 (2d Cir. 2014)    23

<u>In re Agent Orange</u>, 517 F.3d at 103    32

<u>Harry v. Marchant</u>, 237 F.3d 1315, 1317 (11th Cir. 2001).    2

<u>Huminski v. Corsones</u>, 396 F.3d 53, 74 (2d Cir. 2005)    34

<u>Long Island Lighting Co. v. Barbash</u>, 779 F.2d 793, 795 (2d Cir. 1985)31

<u>McDonnell Douglas</u>, 411 U.S. at 802; (1973)    37

<u>McKinney v. Pate</u>, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc)    34

<u>Meadows v. United Servs</u>., 963 F.3d 240, 243 (2d Cir. 2020)    20

Maco v. Baldwin Union School Dist.. 726 Fed. App'x 37, 39 (2d Cir. 2018).  13

N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013)  19

*Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)  39

Palko v. Connecticut, 302 U.S. 319, 325 (1937).  34

Pippins v. KPMG LLP, 759 F.3d 235, 251 (2d Cir. 2014)  19

Price Waterhouse v. Hopkins, 490 U.S. 228, 271 (1989)  27

Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 158 (2d Cir. 2001). 28

Summa v. Hofstra Univ.. 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases);  13

Sims v. Blot, 534 F.3d 117, 132 (2d Cir. 2008)  31

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993)  38

Turkmen v. Hasty, 789 F.3d 218, 226 n.6 (2d Cir. 2015);  19

*VOPA* , 563 U.S. at 254–55, 131 S.Ct. 1632  32

Wills v. Amerada Hess Corp.., 379 F.3d 32, 51 (2d Cir. 2004).  19

Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014)  11

**Statutes:**

U.S. Const. Amd. XIV  38

## I. STATEMENT OF FACTS

The Appellees have misconstrued and misrepresented the facts in the instant matter in a manner that suits their narrative and omits various critical elements of the Appellant's underlying claims thereby warranting a clear restatement of the facts.

I, the Appellant, have done the right thing throughout this entire debacle at the Brooklyn Traffic Violations Bureau ("TVB"). I have done more than my duty. I have exposed corruption at this agency for which I am now being vilified and retaliated against.

In 2011 a lady named Tanya Rabinovich held an office outside the Brooklyn TVB. She was not an attorney. She would regularly come to the courthouse with 20-30 summonses. She would regularly go before the clerks of the court seeking new dates, continuing the matters and posting bonds on these motorists' behalf. I never saw this lady enter authorizations with the Court to proceed with the matters. I was regularly asked where "Tanya the attorney" was by motorists at the Brooklyn TVB. I reported this to the New York District Attorney. Subsequently Tanya Rabinovich was not seen at the Brooklyn TVB. She was removed. Shortly thereafter Defendant Gelbstein approaches and states to me "Who are you Don Quixote." (Dkt.236, page 61, 65, 66, 84). I did the right thing. Defendant Gelbstein

gets defended and protected. The Attorney General buries their head in the sand and looks the other way.

Shortly thereafter the clerks of this court took a dislike to me personally. (Dkt. 236, page 64). By uncovering such corruption, I killed their golden goose.

Shortly thereafter while in the attorney's room a lawyer, Yakov Brody, is standing in front of my coffee placed under one of the benches in the Brooklyn TVB lawyer's room. I do the right thing. I say to this attorney "Excuse me can I get my coffee" Brody responds "excuse yourself go f*** yourself you Jew hater anti Semite" I leave to argue a case. I came back. Brody is again blocking my coffee. I do the right thing. I state "Excuse me can I get my coffee. "Brody responds. "Excuse yourself go f*** yourself you Jew hater anti Semite." I am required to take an anger management course. Brody gets protected and defended. He remains unpunished by defendant Gelbstein, senior administrative law judge Bushr Vahdat, and lead counsel Ida Traschen. (Dkt. 236-1, page 281).

In June of 2012 I returned to the practice of law at the Brooklyn TVB. I learned from a client that such client gave an 80 dollar legal fee to defendant Smart. The client indicates that Smart was collecting my attorney fees. I report the theft to defendant Gelbstein. (Dkt. 236-1, page 356). I do the right thing by reporting the theft. An investigation occurs. Smart agrees to taking the money. Defendant Smart is allowed to remain at the Brooklyn TVB. Defendant Gelbstein

6

conveniently forgets this theft in his oral deposition (Dkt. 235-2, page 57, Dkt. 235-2, page 51). Further defendant Gelbstein fails to investigate the veracity of any of the complaints made against by clerks or otherwise (Dkt. 235-2, page 36, Dkt. 235-3, page 13, 14, 32). I am not grieved before an Attorney Grievance Committee (Dkt. 235-2, page 76. Dkt. 235-3, page 21, Dkt. 236-1, page 435). Defendant Gelbstein is protected and defended by administrative law judge Bushra Vahdat, lead counsel Ida Traschen and defendant Commissioner Schroder. I did the right thing by reporting the theft. Defendant Smart remains and begins to harass me. The Attorney General buries their head in the sand and looks the other way.

I complained to defendant Gelbstein concerning Smart's harassment. (Dkt. 236, page 75, Dkt. 236-1, page 309. 358). Defendant Gelbstein laughs and giggles and responds "a spade is a spade." (Dkt. 236-1, page 412, 425, 433). I do the right thing by complaining about the harassment. Defendant Gelbstein gets protected and defended by administrative law judge Buhsra Vahdat, lead counsel Ida Taschen, and defendant Schroeder for his unresponsiveness to such harassment and racial slurs. The Attorney General buries their head in the sand and looks the other way.

In March 2015, I wrote a letter to the Attorney General seeking relief from Smart's continual harassment. (Dkt. 236, page 73, 236-1, page 308, 419). Smart would routinely get within 3-6 inches of my face. When I ask him what is the

7

problem he states "F*** you, you are the problem." I have no reason to have any

disagreement with a security guard. The Attorney General blatantly

mischaracterizes the facts. They state that I am staring at Smart. A blatant

mischaracterization of the facts. The Attorney General ignores my complaints of

harassment. They bury their head in the sand and look the other way. They reward

Smart, a thief who stole a legal fee and allow him to remain at the Brooklyn TVB.

On Friday May 8, 2015 defendant Gelbstein approaches me while in the

attorney's room at the Brooklyn TVB and states "Can't you go practice somewhere

else I saw what you wrote about me that I am complicit incapable and

incompetent". (Dkt. 236-1, page 416, 424, 444). On the following Monday May

11, 2015 defendant Smart approached me and once again got within three inches of

my face. I put my hand up and tell him to back up. I am removed from the

Brooklyn TVB. (Dkt. 236-1, page 308). Defendant Smart gets to remain and

continue his employment. Defendant Gelbstein is conveniently not present in the

Brooklyn TVB on the morning of May 11, 2015. (Dkt. 235-2, page 5). No witness

is identified that documents this alleged incident. (Dkt.235-2, page 10, 11). No

security tapes are looked at. (Dkt. 235-4, page 5). Defendant Smart gets protected

and defended by Gelbstein, administrative law judge Vahdat, lead counsel

Traschen and defendant Commissioner Schroeder The Attorney General buries

their head in the sand and looks the other way and throws me, a hard working truthful attorney under the bus.

I routinely see Jewish ticket brokers in defendant Gelbstein's office. (Dkt. 236, page 60). There is an appearance of impropriety. I do the right thing. I question defendant Gelbstein concerning it.  Gelbstein's only response is "They are friends of my wife. I have dinner with them but I don't know what they do for a living" Defendant Gelbstein states in one of his first meetings with the attorneys who practice at the Brooklyn TVB, "How do I get a piece of the action" (Dkt. 236 page 53, 56). The Attorney General takes no action. They bury their head in the sand and look the other way and throw me, a hard working truthful attorney under the bus.

I observe defendant Gelbstein entering guilty pleas on a sidebar before administrative law judge Bohmstein in the GE (General Requirements ) courtroom at the Brooklyn TVB. (Dkt. 235-2, page 85, 86, Dkt. 236, page 66).  I observe no appearance entered. Defendant Gelbstein is protected and defended by administrative law judge Vahdat, lead counsel Traschen, and Commissioner Schroeder. The Attorney General takes no action. They bury their head in the sand and look the other way and throw me, a hard working truthful attorney under the bus.

I have a conflict with another attorney, Eugene Gerbasi, concerning a summons we both were attempting to argue in one of the courtrooms at the Brooklyn TVB. Such an attorney states that he is covering the case for Gelbstein. (Dkt. 236, page 78). This Court must note there is no 18B Panel at this court. Defendant Gelbstein admits at his oral deposition that an attorney called his office asking that he have this case covered by another attorney. In essence he is acting as a ticket broker for this attorney. I reiterate there is no 18B panel at this court. (Dkt. 235-2. Page 87). Defendant Gelbstein is protected and defended by administrative law judge Vahdat, lead counsel Traschen, and Commissioner Schroeder. The Attorney General takes no action. They bury their heads in the sand and look the other way and throw me, a hard working truthful attorney under the bus.

I speak to other attorneys at the Brooklyn TVB with respect to their interaction with the clerks at the Brooklyn TVB. (Dkt. 236, page 82). A lawyer, Jeff Meyers, asks me "How much are you giving the clerks for Christmas", and states to me, "I am giving them 200 each and Roy more" I did the right thing. I do not give gifts to the clerks for Christmas trying to seek their favor.

A lawyer Sadiq Tahir indicated to me that he was paying one of the clerks "Lucy" money to prepare his caseload on a weekly basis. I did the right thing. I do not.

10

A lawyer, Terry Kalker, would give Christmas parties for the clerks every year. I did not. I did not seek favor with the clerks. I did the right thing.

Many of the attorneys would routinely solicit motorists as they entered the Brooklyn TVB. I did not. I did the right thing.

A senior lawyer Jeffrey Ziff stated to me why don't you buy the clerks breakfast or lunch. I did not. I was not going to pay for a favor. I did the right thing.

I reported the actions of Tanya Rabinovich as stated above. I did the right thing. The clerks took a dislike to me for these actions and for my failure to support them financially or otherwise as other attorneys admitted. (Dkt. 236, page 64). I did the right thing. The clerks got defended and protected by defendant Gelbstein, administrative law judge Vahdat, lead counsel Ida Traschen and defendant Schroeder. The Attorney General takes no action. They bury their head in the sand and look the other way and throw me, a hard working truthful attorney under the bus.

## II. REPLY TO COUNTER-SUMMARY OF THE ARGUMENT

The Appellee David Smart relies on his theory that he was not a state actor when acting as a private security guard which conflicts with well-established law that states that "a private security guard may act under state law if he is delegated state authority" or "if they are willful participants in the joint activity of the State or its agents". Bishop v. Toys "R" Us—NY LLC, 414 F. Supp. 2d 385 (S.D.N.Y. 2006); Guiducci v. Kohl's Dept. Stores, 320 F. Supp. 2d 35, 37-38 (E.D.N.Y. 2004) (collecting cases).

Therefore, the Appellee correctly highlights the legal error that was utilized by the District Court in issuing the summary judgment in the instant matter. Furthermore, an impartial reading of the facts demonstrates a close causal proximity between the adverse action experienced by the Appellant and the involvement of Appellee David Smart, who went as far as engaging in provocative confrontations with the Appellant after the Appellant exposed David Smart for taking money that did not belong to him unlawfully from a client of the Appellant after which the Appellee approached as close as 3 to 6 inches from the face of the Appellant and the Appellant asked him "What's your problem?" to which Appellee Smart responded "F*** You, you are the problem".

Clearly, an impartial reading of the facts in the instant matter demonstrates a close proximity between the Appellant's exposing of unlawful conduct by a legally

defined state actor and the retaliatory conduct engaged in under pretext to retaliate against the Appellant in the instant matter which is certainly sufficient to overcome summary judgment.

Lastly, the Appellee also highlights the District Court's legal error in refusing to allow the Appellant to depose witnesses pertaining to the instant matter which is a critical aspect of allowing the Appellant to be able to properly prosecute their case which also constitutes legal error and warrants reversal on appeal.

## III. REPLY TO COUNTER-STATEMENT OF THE CASE

**A. Factual History**

In the factual history portion of the Appellee's statement of the case, the Appellee highlights their employment with the Traffic Violations Bureau ("TVB") for the New York State Department of Motor Vehicles ("DMV"). What the Appellee commits from their factual history is the close proximity the Appellee maintained with the State Actor Appellees in the instant matter and their direct involvement in the facts and circumstances giving rise to the Appellant's claims in the instant matter.

The Appellee omits their regular communication with the Administrative Judge Gelbstein and their access to the Plaintiff's files on numerous occasions and the coincidental sequence of events from Administrative Judge Gelbstein asking the Appellant "can't you go practice somewhere else" and Appellee Smart's manufacturing of the altercation utilized as a pretext to cause the suspension of the Appellant in retaliation to reporting unlawful conduct on numerous occasions falls within the temporal proximity to raise a plausible inference of a retaliatory motive pursuant to <u>Summa v.</u> <u>Hofstra Univ</u>.. 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases); cf <u>Maco v. Baldwin Union</u> <u>Free School Dist</u>.. 726 Fed. App'x 37, 39 (2d Cir. 2018).

14

Subsequently, the Appellee begins to narrate a series of claims and events that were neither witnessed by them nor involving them in order to prejudice the Appellant in the instant matter. If anything, the Appellee goes through to highlight the various disputes of material fact that necessitated determination in a trial by jury in the instant matter and warrants reversal of the Trial Court's issuance of summary judgment in the instant matter.

**B. Procedural History**

On May 8, 2018, Appellant filed the underlying action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, alleging that Mr. Smart, as well as the State Defendants, violated his First Amendment and Due Process rights by unlawfully conspiring to ban him from entering—and practicing law at—the TVBs. (J.S.A. 1–24.) The Appellant alleges that the Defendants / Appellees acted together jointly and severally to engage in this adverse action against the Appellant in retaliation for the Appellant's reporting of unlawful conduct engaged in by the Appellees and the Appellant's first amendment rights thereby giving rise to the instant matter all together. Mr. Smart, proceeding pro se, filed his answer on May 30, 2018. (A-7.)

On December 10, 2020, Appellant moved to compel Mr. Smart to respond to Appellant's interrogatories, and to provide an email address or telephone number so that Appellant could depose Mr. Smart. (SA-76.) On December 16, 2020, Magistrate Judge Bloom denied Appellant's request to compel production of an

email or telephone number and deferred ruling on compelling interrogatory responses because Appellant did not provide copies of the interrogatories to the District Court. (J.S.A. 143–45.)

Appellant moved to compel again on December 22, 2020, seeking the same relief and attached a copy of the interrogatories. (A-7.) On January 13, 2021, Magistrate Judge Bloom denied in part, and granted in part, the second motion to compel, ordering Mr. Smart to respond to Appellant's interrogatories. The Appellant objected and alleges that there was no grounds to deny the Appellant's request for a remote deposition; even if there was bad blood between Appellant and Appellee Smart, a remote deposition would not have presented the same risks as a deposition in person and therefore the Trial Court's reasoning for not allowing the Appellant to proceed with a deposition of the Appellee was unjustified and an abuse of discretion. Every case contains adversarial elements; but to preclude the Plaintiff from even remotely deposing the Defendants and questioning witnesses was fundamentally erroneous and unjustified.

Mr. Smart obtained limited-scope pro bono representation and, on May 17, 2023, filed a motion for summary judgment. (A-27–28.) Appellant opposed the motion on June 29, 2021. (Id. at 32.) Mr. Smart filed his reply on September 8, 2021. (Id. at 34.)

In her Report and Recommendation dated February 1, 2022 (the "R&R"),

16

Magistrate Judge Bloom recommended that the District Court grant Mr. Smart's motion for summary judgment. (J.S.A. 324–43.) Appellant filed objections to the R&R on February 14 and 16, 2021. (A-36.) Mr. Smart opposed Appellant's objections on March 3, 2022. (Id.) On September 29, 2022, the District Court adopted the R&R, denied Appellant's objections, and granted Mr. Smart's motion for summary judgment. (J.S.A. 344–52.). Appellant timely appealed on October 25, 2022. (A-37.).

**C. District Court Opinion**

In the R&R, Magistrate Judge Bloom concluded that Mr. Smart was indisputably a private security guard who was not acting under color of state law and thus could not be liable under Section 1983 which constitutes a legal error warranting reversal on appeal.

The decision conflicts with well-established law that states that "a private security guard may act under state law if he is delegated state authority" or "if they are willful participants in the joint activity of the State or its agents". Bishop v. Toys "R" Us—NY LLC, 414 F. Supp. 2d 385 (S.D.N.Y. 2006); Guiducci v. Kohl's Dept. Stores, 320 F. Supp. 2d 35, 37-38 (E.D.N.Y. 2004) (collecting cases).

Here, there is no dispute that the Appellee was working in direct proximity with the state actors in the instant matter and its agents thereby constituting Appellee as a state actor as a matter of law; however, the Appellant was precluded

17

from deposing the Appellant to fully uncover the scope of their employment and participation in the matter which in and of itself also constituted legal error and warrants reversal on appeal.

The District Court rejected the Appellant's contention that Appellee Smart 'acted under color of state law when he allegedly participated in Appellant's removal from the TVB premises'; however, it is not just the incident in question that is supposed to be looked into when determining whether or not the Appellee was acting under color of state law, but rather the participation of the Appellee in the activities of the State Actors as a whole.

Here, Appellant Smart admits in his own brief that he 'performed ministerial tasks, such as opening and closing the TVB and putting up the case calendar for the day. (J.S.A. 289–90.)'; in essence, Appellant Smart is admitting that he is a willful participant in the essential functioning of the TVB on a regular basis day in and day out. Clearly, the Appellee is more than a mere private security guard and acting under the color of state law in the instant matter both with regards to the incident described in the instant matter and with regards to the Appellee's conduct in general.

And then, lastly, the Trial Court's conclusion that the Appellant failed to present any competent evidence that Mr. Smart's actions were compelled by the state or that the participated in the later decision to bar the Appellant from the TVB

18

is erroneous because it is the Trial Court that precluded the Appellant from being able to depose the Appellee initially and the law clearly states the temporal proximity of a month and a half from engaging in protected conduct is sufficient enough to raise a plausible inference of a retaliatory motive pursuant to <u>Summa v. Hofstra Univ</u>.. 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases); cf <u>Maco v. Baldwin Union Free School Dist</u>.. 726 Fed. App'x 37, 39 (2d Cir. 2018). Therefore, even if there was insufficient evidence directly, there was enough circumstantial evidence in the instant matter to raise a plausible inference of a retaliatory motive and therefore dismissal in this regard was incorrect as well.

Based on the foregoing errors identified, the Appellant requests that the instant matter be reversed and remanded for further proceedings.

## IV. REPLY TO APPELLEE'S NARRATION OF LEGAL STANDARDS

This Court "review[s] de novo the summary dismissal of a complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013) (citation omitted).

Thus, factual disputes are inappropriate for resolution on a motion for summary judgment. Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 405 (2d Cir. 2015). Courts are "fundamentally unsuited to undertake," and in fact are not permitted to undertake, "credibility assessments" at the summary judgment stage. Turkmen v. Hasty, 789 F.3d 218, 226 n.6 (2d Cir. 2015); accord Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014)

This Court reviews a district court's discovery rulings for abuse of discretion. Pippins v. KPMG LLP, 759 F.3d 235, 251 (2d Cir. 2014). A "trial court enjoys wide discretion in its handling of pre-trial discovery," and this Court will "reverse a district court's discovery ruling only upon a clear showing of an abuse of discretion." Wills v. Amerada Hess Corp., 379 F.3d 32, 51 (2d Cir. 2004).

20

## V. REPLY TO APPELLEE'S ARGUMENT

### I. The Record Supports Appellant's Claims

### A. Appellant Has Shown Mr. Smart Qualifies As A State Actor

For a private individual or entity to be acting "under color" of state law, the alleged wrongful conduct must be "fairly attributable to the state." Id. (internal quotation marks and citation omitted); see also Meadows v. United Servs., 963 F.3d 240, 243 (2d Cir. 2020) ("State action requires both the exercise of some right or privilege created by the State and the involvement of a person who may fairly be said to be a state actor." (cleaned up)); Abdullahi v. Pfizer, Inc., 562 F.3d 163, 211 (2d Cir. 2009)

Appellant concedes that A private entity can qualify as a state actor. The circumstances in which a private entity can qualify as a state actor is "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019) (citations omitted).

In the instant matter, it is clear that Appellee Smart qualifies as a state actor. Appellee concedes in his own brief that he 'performed ministerial tasks, such as opening and closing the TVB and putting up the case calendar for the day. (J.S.A.

21

289–90.)'; in essence, Appellant Smart is admitting that he is a willful participant in the essential functioning of the TVB on a regular basis day in and day out.

Appellee Smart also omits from his brief the close proximity he maintained between himself and the other State Actors giving rise to the instant matter; in essence, the Appellee's are all alleged to have engaged in the manufacturing of the incident in the instant matter to be used as a pretext against the Appellant in retaliation for the Appellant's opposing of unlawful conduct engaged in by the Defendants.

Appellee admits in his own brief that ("[I]n most cases, a finding of state action must be premised upon the fact that the State is responsible for that specific conduct." (internal quotation marks omitted)). Abdullahi v. Pfizer, Inc., 562 F.3d 163, 211 (2d Cir. 2009).

There is no dispute in the instant matter that the Appellee was responsible for administering the entry and exit of citizens in and out of the TVB facility which intertwines the Appellee's conduct with the functioning and administration of state law; notwithstanding Appellee's conduct described in the individual incident giving rise to the instant matter.

Put simply, if the Appellee was not a specific member in the functioning of state law operations in the instant matter, the Appellee would not have to have been confronted by the Appellee while entering the facility on numerous occasions and

22

being told "F*** You; You're The Problem" by the Appellee specifically. However, it is because the Appellee is specifically intertwined with the functioning of state law operations that the Appellant cannot even enter the facility in question without passing through Appellee Smart which in and of itself makes Appellee Smart an implicit component of state law.

And while Appellee Smart in his brief claims that he was never a willful participant in joint activity with the State, <u>Summa v.</u> <u>Hofstra Univ</u>.. 708 F.3d 115, 128 (2d Cir. 2013) holds that close proximity between a set of circumstances is sufficient enough to establish an inference of plausibility that a particular course of conduct was connected or related to another.

Here, there is no mere coincidence, like the Appellee would like this Court to believe, that Administrative Judge Gelbstein would issue the condescending remarks of "Can't You Go Practice Somewhere Else?" to the Appellant and then subsequently the following business day Administrative Judge Gelbstein is not present and instead the Appellant is met with the confrontation described between himself and Appellee Smart who essentially assaulted the Appellant by shoving him without any reason or provocation; clearly the proximity between these events and the Appellant's underlying reporting of misconduct engaged in by the Appellees is sufficient enough to establish a plausible inference that these events were connected with one another and that Appellee Smart was acting as an arm of

23

the state in manufacturing this pretext to cause the Appellant's underlying suspension giving rise to the instant matter; however, this is a question of material fact to be determined by the jury at trial.

Notwithstanding this incident, however, it is clear that the intertwined involvement of Appellee Smart and the regular day to day operations of state law with regards to the TVB which warrants a finding that the Appellee David Smart was an actor under the color of state law in the instant matter and the Court committed legal error in finding otherwise.

**B. None Of The Cases Cited By Appellee In Their Brief Reflect Appellee Smart's Role In This Matter**

In support of their erroneous claim that Appellee Smart was not a state actor within the legal understanding of the term, the Appellee cites a series of cases which are entirely inapplicable to the role and function of Appellee Smart in the instant matter.

In support of their position, the Appelle cites <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 840–41 (1982) which holds that public contractors (presumably in construction) do not constitute state actors because their conduct is not consisted 'public function' which is 'traditionally exclusively reserved to the state'; which is understandable.

Appellee further goes on to cite <u>Grogan v. Blooming Grove Volunteer</u>

Ambulance Corps, 768 F.3d 259, 264 (2d Cir. 2014) which holds that government contractors providing medical care are also not state actors because their conduct is not 'traditionally exclusive state function'; which is also understandable.

However, none of these contexts is applicable to Appellee Smart who is neither a construction contractor nor a medical care provider. Instead, Appellee Smart is intimately involved with the fundamental operation of state law by administering the entry and exiting of citizens through the TVB as well as overseeing the administration of this very basic function of state law which is entirely different than merely providing construction or medical services as a government contractor; the conduct of Appellee Smart is intimately intertwined with the essential function exclusively reserved by the state to hold administrative proceedings and administer the entry and exit of citizens on public property.

Furthermore, Appellee's citation to Fletcher v. Wal-Mart Stores, Inc., No. 05 Civ. 1859(WHP), 2006 WL 2521187, at *3 (S.D.N.Y. Aug. 28, 2006) is also misguided because Appellee Smart is not a mere security guard at a local Wal-Mart but is instead employed as a private security guard *at a state institution;* particularly one where citizens are compelled to enter and exit frequently for the exclusive state purpose of administering traffic law.

Therefore, as a matter of law, Appellee Smart's arguments that Appellee Smart's conduct does not qualify as a state actor indisputably fails as a matter of

law considering the undisputed facts relating to the position of Appellee Smart in the instant matter. It is clear that Appellee Smart's conduct is so closely associated with government that a state cannot limit its accountability for their performance, even if they are carried out by private parties.

If, for example, Appellant Smart engaged in conduct that was discriminatory on the basis of race with regards to the entry of African-Americans vs. non-African Americans as a 'private security guard' at the TBV, clearly the TBV would be liable for Appellant Smart's conduct in violating the fourteenth amendment of the U.S. Constitution by engaging in discrimination on the basis of race; the conduct complained of in the instant matter is no different and it cannot be said that Appellee Smart was not a state actor for the purposes of this matter.

Appellee Smart was neither acting as a private guard at a Wal-Mart; nor was he acting as a construction contractor or medical provider. Appellee Smart was charged with administrating the entry and exit of citizens on to public property for the purpose of quasi-judicial proceedings in traffic court which is entirely connected to the function and administration of state-law as opposed to the unrelated examples cited by the Appellee in their brief.

Therefore, as a matter of law, this Court *must* find that Appellee David Smart was acting under color of state law for the purposes of the instant matter.

26

**C. Smart Was Not Only A Willful Participant In The Underlying Conduct; He Was The Driving Force Behind It.**

The law has already held that close proximity between a set of circumstances is sufficient enough to establish an inference of plausibility that a particular course of conduct was connected or related to another. Summa v. Hofstra Univ.. 708 F.3d 115, 128 (2d Cir. 2013).

In the instant matter, Administrative Judge Gelbstein provides the condescending remarks of "Can't You Go Practice Somewhere Else" to the Appellant thereby expressing a desire to no longer see the Appellant practicing at the TBV. Subsequently, the following business day, the altercation between Appellee Smart and the Appellant is manufactured to provide a pretext for Administrative Judge Gelbstein to bar Appellant from continued practice in the TVB.

The close proximity between these events is enough to support a plausible inference that the two were interconnected with one another and this is a genuine dispute of material fact resulting from an inference of the circumstances pertaining to the instant matter that was supposed to be determined in a trial by jury.

Therefore, based on the foregoing, the granting of summary judgment in the instant matter constitutes legal error and warrants reversal on appeal.

**D. Mr. Smart's Actions Support A Plausible Inference That He (And Others) Retaliated Against The Appellant For Exercising Their First Amendment Rights.**

It is already well established that Summa v. Hofstra Univ.. 708 F.3d 115, 128 (2d Cir. 2013) holds that alleged retaliatory conduct taking place within a month and a half of another falls within the temporal proximity to raise a plausible inference of a retaliatory motive pursuant to Summa v. Hofstra Univ.. 708 F.3d 115, 128 (2d Cir. 2013) (collecting cases); cf Maco v. Baldwin Union Free School Dist.. 726 Fed. App'x 37, 39 (2d Cir. 2018).

Here, the mere proximity between the events pertaining to the instant matter and the Appellant's reporting of unlawful conduct to authorities supports a plausible inference of retaliatory motive; therefore, even if there exists no direct evidence of the same (which is unlikely in a case of retaliation), retaliation may be found entirely on the basis of circumstantial evidence and inference.

Courts recognize that "direct evidence of intentional discrimination (or retaliation) is hard to come by," Price Waterhouse v. Hopkins, 490 U.S. 228, 271 (1989) (O'Connor, J. concurring), and that plaintiffs will rarely be able to produce "'eyewitness' testimony as to the employer's mental processes." USPS Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983). Accordingly, the Courts recognize that a showing of discrimination or retaliation can be established entirely on the

28

basis of circumstantial evidence and inferences with regards to the same. Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 158 (2d Cir. 2001).

In the instant matter, the Appellant claims a series of facts and circumstances in close proximity with their reporting of unlawful activity to authorities which led to the underlying matters complained of including but not limited to the remarks of Administrative Judge Gelbstein "Can't You Go Practice Somewhere Else?" and the subsequent incident entirely manufactured by Appellee Smart where Appellee Smart essentially assaulted the Appellant and then provided this incident as a pretext for Administrative Judge Gelbstein to administratively ban the Appellant from practicing with the TVB.

There exists sufficient proximity between the incident complained of and the adverse action taken against the Appellant based on the totality of the facts and circumstances in the instant matter to substantiate a plausible inference that the underlying incident was motivated entirely by the Appellant's opposition and reporting of unlawful conduct in the instant matter which constitutes retaliation against the Appellant for exercising their first amendment rights.

This determination of whether or not the conduct of the Appellant was motivated by the Plaintiff's exercise of his first amendment rights is a genuine dispute of material fact to be determined in a trial by jury and therefore it was

incorrect for the Trial Court to grant summary judgment in favor of the Appellee in the instant matter thereby warranting reversal of the same.

## II. Trial Court Abused Its Discretion In Not Allowing The Appellee To Be Deposed Or Question Witnesses At The DMV.

In the instant matter, the Trial Court bases its decision on a purported 'lack of evidence'; however, a significant part of this 'lack of evidence' is caused directly by the Trial Court who refused to allow the Appellant to depose the Appellee on a presumption that there existed 'bad blood' between the parties; this characterization was prejudicial to the Appellant as, had there actually been 'bad blood', there would have been subsequent altercations between the parties and not just a mere civil litigation. This, in and of itself, was insufficient to preclude the Appellant from being able to conduct the deposition sought on more than one occasion in the instant matter as there were many different solutions that could have been implemented.

The Appellant merely requested a telephone number or email address in order to depose the Appellee; if the Court found issue with the Appellant obtaining a telephone number or email, the Appellee could have utilized a third-party telephone number or email for the purposes of conducting the discovery thereby allowing the Appellant to conduct the deposition of the Appellee while at the same time not disclosing the private contact information belonging to the Appellee.

Here, the Court arbitrarily and capriciously precluded the Appellant from conducting a deposition altogether, which the Appellant objected to on numerous occasions, and then based its decision in dismissing the instant matter on summary judgment on the grounds that 'there existed a lack of evidence'. This was entirely unfair to the Appellant and also infringes on the Appellant's fundamental due process rights to be able to effectively conduct a civil litigation.

The Appellant was also not allowed to enter the DMV to question witnesses. Important to note is that the Appellant was barred from practicing within the DMV, not banned from the premises all together. The Appellant had a fundamental right to be able to question witnesses and obtain information and evidence in support of their position in the underlying proceedings which was wrongfully denied by the Defendants and the Court affirmed this wrongful denial without any consideration for the due process rights of the Appellant. The Appellant was also not allowed to question Defendant Schroeder which also impacted the ability of the Appellant to prepare evidence for the underlying proceedings and constituted an abuse of discretion.

This Court has held that the "right of litigants to discover and present relevant evidence in civil litigations is given great weight in federal courts." Apicella v. McNeil Labs, 66 F.R.D. 78, 82 (E.D.N.Y. 1975). ("A district court has abused its discretion if it [has] based its ruling on an erroneous view of the law or

31

on a clearly erroneous assessment of the evidence or [has] rendered a decision that cannot be located within the range of permissible decisions." <u>Sims v. Blot</u>, 534 F.3d 117, 132 (2d Cir. 2008) (citations, 8 alterations, and internal quotation marks omitted). Appellee cites that "a court has discretion to circumscribe discovery even of relevant evidence by making 'any order *which justice requires* to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" <u>Jones v. Hirschfield</u>, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).

Appellee further concedes that "A district court abuses its discretion only 'when the discovery is so limited as to affect a party's substantial rights.'" <u>In re Agent Orange</u>, 517 F.3d at 103 (quoting <u>Long Island Lighting Co. v. Barbash</u>, 779 F.2d 793, 795 (2d Cir. 1985)).

Here, it certainly went against the Appellant's substantial rights to not be able to depose the Appellee remotely when there existed so many different alternatives and solutions for being able to conduct the same without causing undue burden or hardship that it can easily be said that the Court abused its discretion in precluding the Appellant from being able to depose the Appellant all together.

Notwithstanding the errors engaged in by the Trial Court with regards to the conducting of discovery in the instant matter, the decision of the Trial Court to summarily dismiss the instant matter when there clearly existed genuine disputes

of material fact and close proximity between the conduct complained of and the adverse action taken by the Appellee's toward the Appellant constitutes legal error and warrants reversal in and of itself notwithstanding the discovery abuses of discretion engaged in by the Trial Court in the instant matter as well.

### III. State Defendants Are NOT Protected By Judicial And Quasi-Judicial Immunity For Their Unlawful And Unconstitutional Ban Of Appellant

The Magistrate Court incorrectly applied the premise that judges generally have "absolute immunity from suits for money damages for their judicial actions" and thus "even allegations of bad faith or malice cannot overcome judicial immunity." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) but conveniently misses important exceptions to this immunity.

An "important limit" to that rule allows federal suits against state *officials* in certain circumstances. *Id.* at 254–55, 131 S.Ct. 1632. Under the *Ex parte Young* doctrine, a state official is "stripped of his official or representative character" and thereby deprived of the State's immunity, *Ex parte Young* , 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), when he commits an "ongoing violation of federal law." *VOPA* , 563 U.S. at 254–55, 131 S.Ct. 1632(quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.* , 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) ). A person who is aggrieved may therefore seek prospective relief by suing him in his official capacity.

33

Federal courts can exercise jurisdiction when the state attempts to deny a civil right to a citizen, in violation of the Fourteenth Amendment. For this to happen, Congress must specifically intend for the statute to abrogate the state's immunity. Quern v. Jordan, 440 U.S. 332 (1979).

The Magistrate Court admits judges are not immune from liability if the action was taken in the complete absence of jurisdiction or "if the action in question is not judicial in nature, as when the judge performs an administrative, legislative, or executive act." Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2005). But the Magistrate Court conveniently omits the exception to this as it pertains to violations of the 14th Amendment as expressed in Quern v. Jordan, 440 U.S. 332 (1979).

Furthermore, as a rule, "federal courts may not entertain a private person's suit against a State" unless the State has waived its immunity or Congress has permissibly abrogated it. *Va. Office for Prot. & Advocacy v. Stewart* , 563 U.S. 247, 253–54, 131 S.Ct. 1632, 179 L.Ed.2d 675 (2011) [hereinafter *VOPA* ]. Here, the State has waived immunity / Congress has abrogated immunity for 14th Amendment due process / equal protection violations when it ratified the 14th Amendment.

Therefore, the conclusion that the individuals acting under the color of state law are absolutely immune is erroneous and incorrect as a matter of law. If the

34

State Defendants are accused of violating the 14th Amendment of the U.S. Constitution, they are most certainly capable of being sued both in their official and individual capacity.

Furthermore, the Magistrate Court acknowledges that the deprivation complained of was done without hearing and this in and of itself violates procedural and substantive due process.

The Fourteenth Amendment's Due Process clause provides two types of protection: (1) substantive due process (relating to outcomes) ; and (2) procedural due process (relating to procedure). McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc). The substantive component of the clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325 (1937).

Procedural due process is a guarantee of fair procedures whereby the state may not deprive a person of life, liberty or property without providing "appropriate procedural safeguards." Daniels v. Williams, 474 U.S. 327 (1986). "The fundamental requirement of [procedural] due process is the opportunity to be heard." Parratt v. Taylor, 451 U.S. 527, 540 (1981).

Therefore, the miscategorization that the State Defendants' violations of the 14th Amendment of the U.S. Constitution done entirely ex parte and on erroneous

bases is precisely the violation complained of that absolves immunity in this particular situation.

A conflict exists between the Magistrate Court's miscategorization of immunity as it applies to the facts and circumstances in the instant matter with the fundamental due process rights of the Plaintiff in the instant matter. However, pursuant to the Supremacy Clause of the U.S. Constitution, obligations to the U.S. Constitution are supreme to any subsequent rights and interests. Even if the Appellant does not receive monetary compensation for the unlawful acts committed against him by the State Defendants, the Federal Court at least, at a minimum, has jurisdiction to lift he unlawful ban of the Appellant from practicing at the TVB which is why, conveniently, State Appellee's arguments have shifted from arguing that the "Appellee is absolutely immune" to "Appellee is absolutely immune *from money damages*". Appellee concedes that the State Appellees are not absolutely immune from prospective injunctive relief with regards to the matters complained of herein which makes the lower court's summary dismissal of the instant matter erroneous and warranting reversal on appeal for this matter alone.

**A. The Lack Of Declaratory Decree Does Not Preclude Injunctive Relief And, In Fact, Supports Appellant's Claim Of Due Process Violation**

Appellee further emphasizes the due process violation with regards to the instant matter by claiming that the act at issue does not violate any declaratory

decree. Appellee concedes that injunctive relief is available in a § 1983 claim in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity. Rather than addressing the substantive merits of the Appellant's claims, the Appellee relies on mere procedural technicalities in support of their position which is not only unethical but also fundamentally flawed.

The Fourteenth Amendment's Due Process clause provides two types of protection: (1) substantive due process (relating to outcomes) ; and (2) procedural due process (relating to procedure). McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc). Therefore, even if assuming, arguendo, that there is some form of procedural defect with regards to the Appellant's claims (which there is not because the Appellee concedes that the Appellant asserted a demand for declaratory relief in their original complaint), precluding the Appellant from seeking such relief on the basis of a mere technicality would not be the appropriate outcome considering that the Appellant is still banned from practicing at the TVB through the present moment unjustly and unlawfully which is in violation of the Appellant's substantive due process rights in and of itself. Therefore, State Appellee's arguments that the Appellee's arguments fails as a matter of law because the law already recognizes that even if there is some procedural defect in a particular claim that the specific claim may still proceed in the interests of substantive due process

**B. The Determination Of Retaliatory Animus Is Supposed To Be Determined In A Trial By Jury**

The Court's already recognize and understand that "direct evidence of intentional discrimination (or retaliation) is hard to come by," <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 271 (1989) (O'Connor, J. concurring). Accordingly, the Courts recognize that a showing of discrimination or retaliation can be established entirely on the basis of circumstantial evidence and inferences with regards to the same. <u>Robinson v. Metro-North Commuter R.R.</u>, 267 F.3d 147, 158 (2d Cir. 2001).

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) (Title VII case).

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Bashara v. Black Hills Corp.</u>, 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a

non-discriminatory reason or reasons for its action. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." Id. at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. <u>Aucutt v. Six Flags Over Mid-America, Inc</u>., 85 F.3d 1311, 1316 (8th Cir. 1995). A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. <u>St. Mary's Honor Center</u>, 509 U.S. at 511. As a result, the inference of intentional discrimination is left to be determined by a jury at trial based on a preponderance of the evidence.

The characterization that no rationale or reasonable jury would find in favor of the Appellant is arbitrary and capricious; the Appellant already established a *prima facie* case of first amendment retaliation which therefore shifts the burden of proof on the Defendant to provide a non-retaliatory reason for the conduct complained of. The Appellee's justification was the altercation with Defendant Smart with regards to which the Appellant provided responses indicating that Smart's conduct was directly in retaliation for the Appellant's objection to unlawful activity. Therefore, based on the foregoing, the inference of

discrimination was supposed to be made in a trial by jury and not by the Trial Court Judge in summary judgment.

Summary judgment is a useful tool for federal trial courts, but summary judgment is abused when in determining disputed facts it becomes a substitute for trial by jury. *Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (Noonan Dissenting). Therefore, it was legal error for the Trial Court Judge to act as the jury in the process of summary judgment and summarily adjudicate the Appellant's claims in summary judgment rather than making all reasonable inferences in favor of the Appellant and allowing the matter to be forwarded to be determined in a trial by jury.

If the Trial Court is simply permitted to adjudicate cases on summary judgment, cases involving inferences such as the instant matter would never make it to a jury to be determined which is not the proper process for adjudicating civil cases. The standard for summary judgment is much higher than the standard for succeeding in a trial by jury and the Court is not permitted to substitute a trial by jury for the summary determination and whim of a Trial Court Judge. There are many passionate and patriotic Americans who could rationally and reasonably sympathize and agree with the Appellant in the instant matter that what took place at the Brooklyn TVB was wrong, unconstitutional, objected to by the Appellant, and that the subsequent incidents that took place were in direct retaliation against

the Appellant for opposing this unlawful activity based on the totality of the facts and circumstances in the instant matter.

Appellant did not wake up one morning and face the hostility of the various characters and Defendants named in the instant matter randomly; it was specifically the Appellant's opposition to unlawful conduct that triggered the animosity and subsequent incidents that took place which resulted in explicit statements made by officials as high as Defendant Gelbstein as explicit as "can't you go practice somewhere else, I read what you said about me". This, in addition to Defendant Smart's explicit animosity upon being exposed for stealing attorney fees belonging to the Appellant, is about as explicit of retaliatory animosity that can possibly be obtained in a retaliation case and, if true, certainly implicates an inference of unlawful retaliation that can certainly be inferred by a jury via a preponderance of the evidence. Therefore, it was unlawful for the Trial Court Judge to substitute their judgment and opinion of the case in place of the jury in this matter where there exists genuine dispute of material fact, particularly inferences therefrom, which should have been determined a trial. The standard for trial and summary judgment are not the same and the Court erred in not making all reasonable inferences in favor of the Appellant in the instant matter thereby warranting reversal and remanding for further proceedings.

41

## VI. CONCLUSION

WHEREFORE, for the foregoing reasons, the Appellant request that this Court REVERSE AND REMAND the decision entered by the lower court granting summary judgment in the instant matter.

DATED: June 25, 2023

For the Appellant/Plaintiff,

Mario H. Capogrosso, Esq.
Appellant, Pro Se
21 Sheldrake Place,
New Rochelle, NY 10804
Tel: 914-806-3692
Email: nry4@aol.com

## VII. CERTIFICATE OF COMPLIANCE

I hereby certify that: 1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,161 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). 2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

DATED: June 25, 2023

For the Appellant/Plaintiff,

Mario H. Capogrosso, Esq.
Appellant, Pro Se
21 Sheldrake Place,
New Rochelle, NY 10804
Tel: 914-806-3692
Email: nry4@aol.com